## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

      Plaintiff,

v.                                                    Case No.

ROBERT HARDWICK,
in his official capacity as Sheriff of St. Johns County,
MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office,
UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

      Defendants.

                                      /

## COMPLAINT

Plaintiff, WILLIAM LEE LAWSHE ("Plaintiff"), sues Defendants, ROBERT HARDWICK, in his official capacity as Sheriff of St. Johns County, MIKAYLA PRESTON, in her induvial capacity as a Detective for St. Johns County Sheriff's Office, UNIVERSITY OF FLORIDA BOARD OF TRUSTEES, and KATHLEEN DULLY, in her individual capacity as medical director of the UF Child Protection Team, and alleges:

1.    This is an action pursuant to 42 U.S.C. § 1983.

1

## COMMON ALLEGATIONS - THE ARREST

2.    The Plaintiff William Lee Lawshe resides in St. Augustine, St. Johns County, Florida.

3.    Until the events which are the subject of this action, Mr. Lawshe was a respected and valued law enforcement officer with the Florida Fish and Wildlife Conservation Commission (here-in-after referred to as FWC) for over 15 years.

4.    FWC officers are highly trained, versatile law enforcement officers with full police powers and statewide jurisdiction.

5.    In 2014, Mr. Lawshe was named both FWC Officer of the Year and National Wildlife Officer of the Year for his distinguished service.

6.    Prior to joining FWC, Mr. Lawshe served as a Non-Commissioned Officer in the United State Army.

7.    Mr. Lawshe served as a light infantry fire team leader, completed airborne school, Air Assault School and Ranger R.I.P training. Mr. Lawshe received an honorable discharge in 1994.

8.    At all times material to this action, Defendant, Robert Hardwick was the elected Sheriff of St. Johns County, Florida and the administrative head of the St Johns County Sheriff's Office (hereinafter referred to as SJSO).

9. SJSO is a law enforcement agency acting on behalf of and pursuant to the power vested to it by the State of Florida pursuant to Fla. Stat. § 30.15.

10. Defendant Mikayla Preston is a detective employed with the SJSO, assigned to the Special Victims Unit (SVU).

11. Det. Preston is a member of the North Florida Internet Crimes against Children Task Force, who holds herself out as an expert in the investigation of crimes involving the online sexual-solicitation and exploitation of children. This expertise specifically includes specialized high-tech training and experience in investigating the collection and trading of images of Child Sexual Abuse Material (CSAM) and child pornography.

12. On April 12, 2023, Det. Preston, arrested Plaintiff William Lee Lawshe on charges of Possession of CSAM pursuant to F.S.S. 827.071(5), which makes the knowing possession of child pornography a felony.

13. Prior to the arrest, Det. Preston knew that the charge of possession of child pornography carried a severe social stigma and that the mere allegation (whether proven or not) would likely destroy Mr. Lawshe's personal and professional reputation.

14. Despite the certainty of injury to the Plaintiff, the arrest was made without a reasonable investigation into the truth of the allegations and represented a reckless disregard for the rights of Plaintiff.

15. The arrest was made without warning, under the guise of a ruse designed to trick Plaintiff into believing that he was aiding in an official investigation, rather than being the target of an imminent arrest.

16. Mr. Lawshe was not confronted with the facts or evidence supporting these accusations prior to his arrest.

17. In fact, Mr. Lawshe's employer FWC, which was not an investigative agency in this matter, was informed of the charges prior to Mr. Lawshe. As a result, Mr. Lawshe was confronted by his superior officer (FWC) at the SJSO facility just moments after his arrest and was forced to resign or be fired, having been threatened with the loss of his pension.

18. Upon making the arrest, SJSO alerted media outlets and publicized Plaintiff arrest.

19. On April 13, 2023, acting in the place and function of a complaining witness, Assistant State Attorney (ASA) Kaitlyn Payne affirmed and verified the allegations of possession of CSAM without ever viewing the alleged images or vetting any evidence to support the charges. ASA Payne's

verification was a necessary predicate used to file formal charges against Plaintiff for possession of CSAM.

20. In the following days, numerous media outlets published news articles and TV segments describing the arrest and allegations against Mr. Lawshe. His name was smeared on social media platforms, and he was ostracized from the community that he had dedicated his professional life to serving.

21. Furthermore, his employer FWC published to media outlets false and defamatory statements that Plaintiff had "betrayed the oath that all law enforcement officers take to protect the public" and promised that Mr. Lawshe would "be held accountable for his actions."

22. Despite the devastating injury to his reputation and career, Mr. Lawshe never viewed, downloaded, searched for, clicked on, or sought out, in any way, images of CSAM.

23. No CSAM was ever found on his phone, computer, cloud storge, hard drive, thumb drive or any other electronic storage device owned or controlled by Mr. Lawshe.

24. No analog photographs of CSAM were ever found in Mr. Lawshe's possession.

25. No images of CSAM were ever found in an email account or attachments to emails either sent to or received by Mr. Lawshe.

26. No virtual or artificial intelligence generated images mimicking CSAM were ever viewed, possessed, controlled or downloaded by Mr. Lawshe.

27. Mr. Lawshe never visited or sought out any "dark web" or message boards which were known to trade in images of CSAM.

28. At all times relevant, including prior to the arrest, there was known or readily discoverable exculpatory evidence, easily accessible and available to the SJSO and the SJSAO which proved Mr. Lawshe's innocence.

29. In fact, there was never any competent evidence to support the allegation that Mr. Lawshe had knowingly possessed CSAM.

30. Despite knowledge of the total lack of competent evidence, ASA Payne, with the approval of her supervisors, attempted to coerce Plaintiff to plead guilty to the charges, by withholding access to the evidence against Plaintiff. This tactic was specifically designed to thwart justice and significantly delayed the outcome of the case.

31. As a result of these baseless charges, Mr. Lawshe was forced to personally finance an investigation into the allegations, at a significant expense.

32. Fortunately, through these private efforts, Mr. Lawshe was able to conclusively prove that the charges and allegations against him were objectively false and entirely baseless.

33. After presenting the exculpatory evidence to the SAO on December 20, 2023 via email, the charges were dropped on December 27, 2023, just three business days later.

## COMMON ALLEGATIONS – THE INVESTIGATION

34. The facts and circumstances surrounding the investigation of William Lee Lawshe on charges of possession of CSAM show a conscious disregard and reckless indifference to the truth, to the Constitution of the United States and the rights of the Plaintiff thereunder.

35. The subject case was opened on February 20, 2023, when SJSO received a cyber tip (#153739160) from the National Center for Missing and Exploited Children (NCMEC).

36. This cyber tip report stated that William Lawshe was in possession of 1 (one) image of "Apparent Child Pornography (Unconfirmed)."

37. NCMEC is a non-profit organization which operates a cyber tip line receiving and reporting allegations of CSAM. The tip line functions as a

clearing house of CSAM, funded and regulated by the laws of the United States of America.

38.   In addition to describing the report as "unconfirmed," the NCMEC cyber tip (#153739160) stated that the content had "not been viewed by NCMEC staff."

39.   Det. Preston and other officers of SJSO knew or should have known that it was the policy of NCMEC to forward all cyber tip reports to law enforcement, regardless of their veracity.

40.   Moreover, Det. Preston, and other officers of SJSO, knew that there had been prior false reports of CSAM made by NCMEC to SJSO.

41.   Based on the circumstances, it was not reasonable for a law enforcement officer or agency to rely on the assertions of criminal conduct in the NCMEC cyber tip (#153739160) .

42.   The cyber tip report (#153739160) indicated that the image had been identified as suspected child pornography by the Plaintiff's Electronic Service Provider (ESP) Verizon through the use of an encryption and algorithm "hash." A "hash," is nothing more than a digital flag or marker designed to identify images through the use of image recognition technology or artificial intelligence.

43.    A copy of the subject image was attached to the cyber tip report.

44.    This image (#153739160) did not contain CSAM.

45.    On February 20, 2023, Det. Preston viewed the subject image attached to the NCMEC report.

46.    The cyber tip described the image as containing a "prepubescent" female. Det. Preston knew this description was false from her review of the subject image.

47.    Upon review of the image, Det. Preston saw, acknowledged and recorded that the image contained a watermark of the website domain: Met-art.com. Watermarks are commonly used to indicate legal copyright and/or ownership of the subject image.

48.    At the time of review, Det. Preston believed that Met-art.com had published, owned or controlled the subject image.

49.    Det. Preston, due to her high-tech training in the investigation of cyber exploitation, understood that the Met-art.com domain was public and easily accessible through any internet service provider.

50.    The cyber tip report stated that the that the image was not available publicly. Det. Preston knew this was a false statement.

51. Met-art.com, through its public website, operates a business engaged in the publication of adult entertainment material and images of consenting adults.

52. As indicated on the image, Met-art.com had, in fact, published the image which was the subject of the cyber tip report (#153739160).

53. The model, who was known as "Milena D.," was a consenting adult and paid model at the time the image was taken and published, in 2010.

54. At the time of the incident which is the subject of this action, the subject image (#153739160) was and continues to be available through a common Google search.

55. The subject image (#153739160) contains partial nudity in a professional "photo shoot" setting consistent with a "centerfold" type photograph found in any number of print publications, such as Playboy or Penthouse.

56. Det. Preston, given her extensive training, experience and expertise in investigating CSAM knew or should have known that the subject model was a consenting adult based on the following available information:

   a) The website in question (Met-art.com) clearly and unequivocally states that the subject model was over 18 years of age.

b) Met-art.com describes the model as "verified" and states that it operates in compliance with 18 USC §2257, 28 CFR 75, which requires publishers of pornographic images to keep and maintain records verifying the age of all models.

c) Met-art.com provides a link to a representative along with legal compliance and contact information.

d) The identified legal representative, Jeffrey J. Douglas, is a licensed attorney in the State of California. He is also the designated records custodian of Met-art.com.

e) Met-Art.com, in fact, maintains records verifying the age of all models and makes those records available to any appropriate investigating authority.

f) Additionally, there is no indicia, description, suggestion, information, depiction, or other objective reason found on the image itself or the Met-art.com website that would lead a reasonable person to believe that the model in the subject image was a minor.

57.    At no time did Det. Preston or any other officer of SJSO officer, have a reasonable basis to believe that the image contained CSAM.

58. Additionally, because the internet publication claimed that the model was an adult, and nothing on the images or the website would lead a reasonable person to believe that the representations of age were false, it would be highly unlikely for any law enforcement agency to prove, establish or believe that possession of the image could ever constitute knowing possession of CSAM.

59. However, even if there were some indication that the model may have been a minor, Det. Preston knew or should have known that compliance with 18 USC §2257 was specifically designed and intended to reduce the risk of CSAM and make age verification by law enforcement easy and accessible.

60. Det. Preston knew or should have known that compliance with 18 USC §2257 required Met-art.com to make records readily available which would verify the age of any model.

61. At no time, prior to the arrest, did Det. Preston, or any other representative of SJSO, contact Met-art.com or its legal representative to obtain age verification of the subject model.

62. Failure to investigate the publishing website and failure to utilize the provisions of 18 USC §2257 was a conscious decision and wanton

dereliction of duty which would cause a reasonable person to question the motives of the investigative authorities.

63. Significantly, no one from SJSO ever pursued criminal action or investigation against the owner and publisher of the alleged child pornography, Met-art.com, including but not limited to referral to another appropriate law enforcement agency.

64. Rather, SJSO and Det. Preston singled out Plaintiff William Lee Lawshe, at least in part, due to his position as a respected law enforcement officer and the potential for publicity associated with arresting a law such an officer.

65. On February 20, 2023, after viewing the subject image Det. Preston and SJSO knew or should have known that there was no competent evidence to establish a reasonable belief that the Plaintiff was in knowing possession of child pornography.

66. Thereafter, Det. Preston and SJSO's SVU unit devised a scheme to manufacture the illusion of evidence in an attempt to thwart the judicial process, including but not limited to the search warrant requirement of the Fourth Amendment of the Constitution of the United State of America.

67. In execution of this scheme, Det. Preston communicated with and/or conspired with Defendant, Dr. Kathleen Dully for the purpose of

13

manufacturing false, misleading, unsupported evidence in the form of fake or pseudo-scientific opinions.

68. Dr. Kathleen Dully is a medical doctor, board certified in both pediatrics and child abuse. She is an associate professor of pediatrics at the University of Florida. She is aware of the scope and limitations of medical science and her role as a physician.

69. Despite the availability of objective proof of the subject model's age (photograph of valid issued government ID), Det. Preston requested that Dr. Dully estimate the age of the model by viewing the studio produced photograph which was the subject of the NECMEC cyber tip report (#153739160).

70. There is no scientifically accepted medical test or methodology to estimate the precise age of a female, from review of professionally produced photographs.

71. Despite knowing that there is no scientific method for precisely establishing the age of a female from viewing professionally produced photographs, Dr. Dully agreed to the scheme suggested by Det. Preston.

72. On February 22, 2023, Det. Preston met Dr. Dully and presented her with the single image of the alleged CSAM which was subject of the NCMEC cyber tip report (#153739160).

73. Prior to or during the review, Det. Preston told Dr. Dully that the image had been reported by NCMEC as CSAM.

74. During the review of February 22, 2023, Det. Preston failed to disclose that the image was publicly available on the internet through a public domain website.

75. During the review of February 22, 2023, Det. Preston failed to disclose that the model was purported to be 18 years of age and had been claimed to be verified as such by the image's publisher.

76. During the review of February 22, 2023, Dr. Dully intentionally misapplied a clinical rating scale, known as the "Tanner Scale" or Sexual Maturity Rating (SMR).

77. The Tanner Scale or SMR is a method by which clinicians can measure and quantify the sexual development of children into and through the process of puberty. It was specifically designed to ascertain whether young persons were developing appropriately, and as a tool to diagnose endocrinological decease which could cause either premature or delayed puberty.  It is not a

15

scientific or medically accepted method of determining the age of a patient/individual.

78. Dr. Dully knew that the Tanner or SMR evaluation was not a method of determining a person's age with any reasonable degree of medical certainty or probability.

79. In a report dated February 22, 2023, Dr. Dully stated that the model "appears to be younger than the age of 18" estimating that the model was as young as 12 years old.

80. The model was, in fact, a consenting adult, over the age of 18.

81. Dr. Dully knew or should have known that this report would be presented to the Court and/or used in some other official capacity to aid a criminal investigation against the Plaintiff.

82. Thereafter, Det. Preston continued the scheme to manufacture probable cause by drafting an affidavit for presentation to a court of competent jurisdiction, for the purpose of obtaining a search warrant directed to the Plaintiff's phone/internet service provider, Verizon.

83. This affidavit represents a conscious scheme to deprive a judicial officer of the then known or knowable facts and obtain a warrant by unlawful means.

84.    The affidavit contains multiple statements which were false, misleading and omit substantial exculpatory evidence then known to SJSO:

    (a) Det. Preston swore, under oath, that the website met-art.com "has a known history of displaying CSAM of teenage girls…"

    This statement is false. No CSAM exists or has ever been published on Met-art.com. The website has consistently and thoroughly complied with the requirements of 18 USC §2257.[1]

    (b) The affidavit represents that the image was not publicly available.

    This representation was false and Det. Preston knew that it was false. The availability of a particular image on a public website is a significant indication that the image is not CSAM.

    (c) The Affidavit, as written, suggests that the tip or allegation was reviewed, vetted or validated by NCMEC. While tips from citizen groups could be relevant (even presumptively truthful) the "tip" in this case stated that the report was "unconfirmed." In fact, the cyber tip report stated that "NCMEC staff have not viewed the

---

[1] Although objectively false, this statement raises the horrifying probability that there are currently individuals in prison who were not able to afford the expense of a private investigation to disprove similar false allegations.

following uploaded files and have no information concerning the content of the uploaded files."

Although certain sections of the report were quoted directly in the Affidavit to the Court, this section or the information contained in it was omitted and never related to the Court.

(d) Detective Preston did not show the subject image to the Court making the determination of Probable Cause.

Because there is no objective information, representation or depiction which would tend to prove or even suggest that the model was a minor, it was exculpatory by its very nature.

(e) The Detective did not inform the Court, through her affidavit, that the published image was purportedly that of an adult.

(f) The Detective did not inform the Court that the publisher of the image claimed to be in compliance with 18 USC §2257 and the models were purportedly verified.

(g) Det. Preston included the non-expert, subjective and false opinion of Dr. Dully who she knew or should have known is not an expert in determining the age of young women from a photograph with any degree of certainty.

18

Presenting the subjective lay opinion of a medical doctor that the model "appears to be younger than the age of 18," created a false and misleading impression that the opinion was scientific or expert in some way.  It was not.

85. The scheme of Det. Preston and SJSO succeeded in obtaining a warrant directed to the Plaintiff's phone/internet service provider, Verizon.

86. The search warrant was executed upon the Plaintiff's Electronic Service Provider (ESP) on February 28, 2023.

87. On April 4, 2023, the ESP complied with the subject search warrant.

88. On or about that date, Det. Preston and SJSO had full access to all of Plaintiff's private content available on his phone.

89. No images of CSAM were discovered within the data review or contained in the files provided by the ESP.

90. Despite the fact that no CSAM was present, Det. Preston and SJSO chose, apparently at random, another image of a second model, which was also published on the Met-art.com website.

91. Again, this image was of a model who was purportedly verified as an adult and the image was consistent with a partial-nudity professional photoshoot, similar to those published in a Playboy or Penthouse centerfold article.

92.   Again, this image was taken to Defendant, Dr. Kathleen Dully.

93.   Again, knowing that she was not expert in determining age from a professionally produced photograph, on April 5, 2023, Dr. Dully estimated, based entirely on the fact that the model did not have visible pubic hair (SMR I), that the model was less than or equal to 9 – 13.5 years old.

94.    This second model was, in fact a consenting adult, over the age of 18.

95.   Dr. Dully knew this opinion would be used in an official capacity and/or presented to a court.  This opinion represented a knowing and intentional misrepresentation of fact to the court, as it was not supported by any scientific or medical principle.

96.   Furthermore, Det. Preston and SJSO knew or should have known that the opinion was baseless and not grounded in scientific probability or reality.

97.   After discovering no CSAM in the possession of Plaintiff, SJSO arrested Plaintiff on charges of Knowing Possession of CSAM pursuant to F.S.S. 827.071(5), on April 12, 2023.

98.   After substantial discovery and multiple depositions to understand the facts set forth above, representatives of Plaintiff contacted the legal representative of Met-art.com on December 18, 2023.

99. The following day, December 19, 2023, Met-art.com's representative forwarded photographic imagines of government issued ID of both models along with the dates of the photography sessions. He confirmed that no CSAM has ever been published on their website and age verification exists for all models pursuant to 18 USC §2257.

## COUNT I – DET. PRESTON - VIOLATION OF THE FOURTH AMENDMENT - UNREASONABLE SEARCH

100. Plaintiff realleges the allegations contained in paragraphs 1-99.

101. At all times material, Defendant Det. Preston was acting under color of state law.

102. At all times material, Defendant was acting within the course and scope of her duty as law enforcement officers.

103. Defendant sought and obtained search warrants from a Court of competent jurisdiction without probable cause to believe the Plaintiff had or was imminently planning to commit a crime.

104. Defendant obtained a search warrant by making false statements in an affidavit presented to a judicial officer.

21

105. At the time the false statements were made, Defendants knew that the statements were false or would have known they were false had they not recklessly disregarded the truth.

106. Defendant obtained a warrant by omission of facts, then known or reasonably knowable, that any reasonable person would have known the judge would wish to have brought to his attention.

107. These false statements and/or omissions of fact were material.

108. The right to be free from unreasonable search and seizure is protected by the Fourth Amendment to the Constitution of the United States of America.

109. At all times material to this action, the right to be free from unreasonable search and seizure was well and clearly established.

110. Defendant violated Plaintiff's Fourth Amendment rights, as the search was intentional and unreasonable.

111. Furthermore, Defendant's conduct exhibited and was motivated by a malicious or reckless indifference to the rights of Plaintiff.

112. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal

prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT II – SJSO - VIOLATION OF THE FOURTH AMENDMENT - UNREASONABLE SEARCH

113. The Plaintiff incorporates by reference the allegations contained in paragraphs 1-102.

114. The actions, investigation and application for the above referenced search was approved and ratified by SJSO.

115. The actions, investigation and application for the above referenced search was authorized by the Defendant SJSO's policy and procedures.

116. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT II – DET. PRESTON - VIOLATION OF THE FOURTH AMENDMENT, UNREASONABLE ARREST

117. Plaintiff incorporates the allegations contained in paragraphs 1-102.

118. Defendant's decision to effectuate an arrest and determination of probable cause was based entirely on the possession of material which was legal and protected by the First Amendment of the Constitution of the United States of America.

119. Furthermore, the material was published on a website which alerted the public and law enforcement that the material was legal and published in compliance with federal law.

120. An objectively reasonable and prudent law enforcement officer would not have believed that that Plaintiff had or was committing a crime solely by the possession of legal and constitutionally protected material.

121. The private possession of publicly available, constitutionally protected speech cannot be the basis for arrest in a free society.

122. The arrest was made without probable cause.

123. The right to be free of an unreasonable arrest is protected by the Fourth Amendment of the Constitution of the United States of America.

124. The right is well and clearly established.

125. The Defendant violated the Plaintiff's Fourth Amendment Right.

126. The Defendant's conduct exhibited and was motivated by a malicious or reckless indifference to the rights of Plaintiff.

127. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT IV – SJSO - VIOLATION OF THE FOURTH AMENDMENT, UNREASONABLE ARREST

128. The Plaintiff incorporates the allegations contained in paragraphs 1-102 and 117-126.

129. The investigation and arrest was approved and ratified by SJSO.

130. The investigation and arrest was the result of policies and procedures of SJSO.

131. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT V – DET. PRESTON VIOLATION OF THE FIRST AMENDMENT

132. Plaintiff incorporates the allegations contained in paragraphs 1-102.

133. At all times material, Plaintiff was in possession of material which was protected by the First Amendment of the Constitution of the United States.

134. This right is clearly established.

135. The Defendant arrested Plaintiff based on the possession of constitutionally protected material.

136. Arrest would chill a person of ordinary firmness from continuing to engage in the protected activity.

137. Plaintiff's possession of the constitutionally protected material was a substantial or motivating factor in the arrest.

138. The arrest violated the protections afforded by the First Amendment.

139. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

27

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT VI – SJSO VIOLATION OF THE FIRST AMENDMENT

140. Plaintiff reincorporates the allegations in paragraphs 1-102 and 132-138.

141. The arrest was the result of SJSO policy and procedure.

142. The arrest was approved and/or ratified by SJSO.

143. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT VII – DR. KATHLEEN DULLY - VIOLATION OF FOURTEENTH

## AMENDMENT – DUE PROCESS

144.   Plaintiff incorporates the allegations contained in paragraphs 1-99.

145.   At all times relevant, the UF Child Protection Team was an organization authorized and established by F.S.S. 39.303 to aid state investigations into allegations of child abuse in its various forms.

146.   At all times relevant, Dr. Kathleen Dully was the Medical Director of the UF Child Protection Team.

147.   At all times, Dr. Kathleen Dully was acting under color of State Law.

148.   At all times relevant, Defendant Dully was acting in the course and scope of her role as the Medical Director of the UF Child protection team.

149.   The Fourteenth Amendment protects against being subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the defendant.

150.   This right was well and clearly established.

151.   Defendant Dully provided deliberately false and fabricated evidence which she knew would be used in the criminal charge and prosecution of Plaintiff.

152. Defendant Dully provided false or misleading evidence which was the result of a deliberate indifference to the Plaintiff's innocence which she knew would be used in the criminal charge and prosecution of Plaintiff.

153. Defendant Dully intentionally applied techniques which would yield false information, which was then used to charge or prosecute the Plaintiff.

154. These actions violated the Fourteenth Amendment to the Constitution of the United States of America.

155. Defendant Dully's conduct evidences and was motivated by a malicious or reckless indifference to the Plaintiff's rights.

156. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

## COUNT VIII – UNIVERSITY OF FLORIDA BOARD OF TRUSTEES  - VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS

157.   Plaintiff incorporates the allegations contained in paragraphs 1-99 and 144-155.

158.   UF Child Protection Team is a division and organization within the University of Florida system and controlled by The Board of Trustees.

159.   This conduct was approved or ratified by UF Child Protection Team, as Dr. Dully was the Medical Director of the organization.

160.   This conduct was the result of the then policy and procedures of the UF Child Protection Team.

161.   As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees related to the subsequent criminal prosecution, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

**WHEREFORE**, Plaintiff, WILLIAM LEE LAWSHE, demands judgement for compensatory damages, punitive damages and reasonable attorney's fees and cost against Defendant. Plaintiff demands a jury trial.

Dated on this 12th day of January 2024.

<div style="margin-left: 45%;">

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

_____

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
**Jeffery S. Nooney, Esquire**
Florida Bar No. 1011565
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
(904) 858-9943 facsimile
mroberts@nrhnlaw.com
jnooney@nrhnlaw.com
Attorney for Plaintiff

</div>