[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13303

_____

LEE ANNE SAVOIA-MCHUGH,
JOHN SAVOIA-MCHUGH,

                                        Plaintiffs-Appellees,

*versus*

MICHAEL S. GLASS,

                                        Defendant-Appellant,

PHILIP KRISPIN, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cv-02018-MCR-HTC

_____

Before NEWSOM, BRANCH, and LUCK, Circuit Judges.

BRANCH, Circuit Judge:

Lee Anne and John Savoia-McHugh sued Michael Glass in July of 2019. Over the next 15 months, Glass did not respond to the complaint, the amended complaint, written discovery requests, a motion to compel, or a subpoena. The McHughs requested entry of a clerk's default, which was entered. After a magistrate judge issued an order cautioning Glass that failure to comply with discovery requests could result in a finding of contempt or sanctions, Glass engaged counsel. Glass then moved to set aside the default, arguing that his delayed appearance was not willful, that he established meritorious defenses, and that setting aside the default would not prejudice the McHughs. The district court denied Glass's motion and later entered a default judgment against Glass. Glass appealed.

After careful review and with the benefit of oral argument, we conclude that the district court did not err in denying Glass's motion because Glass willfully defaulted. We affirm.

## I.    Background

The McHughs sued Glass, among others, on July 10, 2019, alleging misconduct arising from certain real estate investment

22-13303                Opinion of the Court                          3

transactions.[1]  A legal assistant to the McHughs' counsel, Debra
Fogarty, signed a declaration saying that she forwarded the
summons and complaint to the process server, Terry Bumgardner,
on July 11, 2019.  Bumgardner signed a declaration saying he
"received the Summons and Complaint to be served
upon . . . Glass[]" on July 16, 2019, and "personally served Glass at
his residence" with the summons and complaint on July 18, 2019.[2]

_____

[1] We note that one of the McHughs' claims was for civil theft under Florida
law.  Pursuant to Florida Statute § 772.11(1), "[b]efore filing an action for
damages [for civil theft], the person claiming injury must make a written
demand for $200 or the treble damage amount of the person liable for
damages[.]"  Thus, a year earlier, on July 3, 2018, counsel for the McHughs
sent Glass a formal demand letter via e-mail, Federal Express, and certified
mail.  The letter demanded "treble damages in the amount of $3,329,520.00"
pursuant to Fla. Stat. § 772.11 within 30 days "based upon the funds
misappropriated by [Glass] from [the McHughs.]"  The letter also requested
that Glass advise the McHughs "promptly" if he intended to contest the claims
against him.  And it also said that if Glass "fail[ed] to comply with [the] demand
within the time provided, [the McHughs] intend[ed] to vigorously pursue
their full legal remedies[.]"  Glass did not respond to the demand letter.

[2] While Fogarty's and Bumgardner's declarations are unsworn, they carry the
same force as a sworn affidavit under 28 U.S.C. § 1746 because Fogarty and
Bumgardner signed and dated their documents, and "declare[d] under penalty
of perjury that" their statements "[are] true, correct[,] and made in good faith."
*See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 n.2 (11th Cir. 2016)
(clarifying that "[a]n affidavit is made under oath," while "a declaration is not
sworn, but is subject to the penalty of perjury" and that under § 1746
"declarations are afforded the same legal weight as affidavits, and are treated
accordingly" (alteration in original) (quotations omitted)); *Roy v. Ivy*, 53 F.4th
1338, 1348 (11th Cir. 2022) ("[U]nder § 1746, a declaration executed within the
United States will substitute for a sworn affidavit if the declarant dates and
subscribes the document as true under penalty of perjury in substantially the

4                    Opinion of the Court                    22-13303

Bumgardner also signed a sworn affidavit of service saying he personally served Glass with the summons and complaint at his residence.[3]

The summons informed Glass that the McHughs sued him and that he was required to respond to the suit:

> A lawsuit has been filed against you.
>
> Within 21 days after service of this summons on you (not counting the day you received it)—or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3)—you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.[4]   The answer or motion must be served on the plaintiff or plaintiff's attorney . . . .
>
> If you fail to respond, judgment by default will be entered against you for the relief demanded in the

---

following form: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" (quoting 28 U.S.C. § 1746(2)).

[3] In his declaration and sworn affidavit of service, Bumgardner also described Glass's age, race, height, weight, and hair.

[4] Rule 12 provides that a defendant must serve a responsive pleading "within 21 days after being served with the summons and complaint[.]"  Fed. R. Civ. P. 12(a)(1)(A).

22-13303                Opinion of the Court                        5

complaint.  You must also file your answer or motion
with the court.

Glass did not respond to the complaint or defend the action in any way.

Four months later, in November 2019, the McHughs filed an amended complaint, supplementing allegations of diversity of citizenship.  The amended complaint reiterated the allegations against Glass.  Fogarty attested in her declaration that she mailed the amended complaint to Glass's residence via U.S. Mail.  Glass did not respond to the amended complaint.

The McHughs next served requests for the production of documents and interrogatories upon Glass on June 22 and July 7 of 2020.  Glass did not respond to the discovery requests.

On July 9, the McHughs moved for the entry of a clerk's default and a default judgment against Glass.[5]  A clerk's default was entered immediately, but the requested judgment was not.[6]

---

[5] The certificate of service for the motion for default judgment reads: "**I HEREBY CERTIFY** that on the 9th day of July, 2020, a true and correct copy of the foregoing was filed via the CM/ECF system, which will send a notification of electronic filing to all counsel or parties of record on the Service List."  Glass, however, had not yet appeared in the case.

[6] Entry of the default must precede entry of a default judgment.  Fed. R. Civ. P. 55(a)–(b).  Pursuant to Fed. R. Civ. P. 55(b)(2), in order to determine the amount of the default judgment when it is not a sum certain (or capable of computation to make it such), "[t]he court may conduct hearings or make referrals" to "conduct an accounting;" "determine the amount of damages"

6                          Opinion of the Court                    22-13303

The deadline for written discovery passed on August 6, 2020. The overall discovery deadline was extended to March 31, 2021.

On September 2, 2020, the McHughs filed a motion to compel Glass "to fully comply with [their] request for documents and interrogatories[,]" serving Glass via Federal Express to his last known address. Glass did not respond to the motion to compel. The next day, according to Bumgardner's declaration, Bumgardner "personally served a discovery subpoena" on Glass "at his residence[.]"

A magistrate judge granted the motion to compel later that month, ordering Glass to "provide full and complete discovery responses" within two weeks and expressly cautioning Glass that a "failure to comply . . . may result in a finding of contempt or other sanctions." The magistrate judge directed the clerk to mail a copy of the order to Glass at his residence.

Upon receiving the magistrate judge's order, Glass obtained counsel, who filed a notice of appearance and responded to the McHughs' written discovery requests in early October 2020. Then, on October 12, 2020, Glass moved to set aside the default. He argued that his delayed appearance in the lawsuit was not intentional or willful, that he established "several meritorious defenses,"[7] and that setting aside the default would not prejudice

---

that the defaulting defendant must pay; "establish the truth of any allegation by evidence;" or "investigate any other matter."

[7] In an attached affidavit, Glass presented four statements as his defenses:

22-13303              Opinion of the Court                    7

the McHughs.  Glass attached a sworn affidavit to his motion in which he claimed that he never received a number of pleadings:

- He claimed that he "was never personally served with a copy of the Summons and [original] Complaint."
- He claimed that he "never received a copy of the Amended Complaint[.]"
- He claimed that he "never received a copy of the Motion to Compel[.]"

But Glass admitted he received four other legal documents:

- He "received a copy of the [original] Complaint in this lawsuit via FedEx delivery in or around July 2019."
- He "received via FedEx delivery copies of interrogatories and requests for production of documents" in June 2020.

---

17. I have reviewed the Amended Complaint filed in this lawsuit, and I dispute many of the allegations asserted against me.

18. I absolutely deny that I ever made any false representations or omissions to the McHughs.

19. I further deny that I committed any act of theft or conversion of funds provided by the McHughs.

. . .

21. It is my understanding that there [are] a number of legal defenses that can and should be asserted in response to the Amended Complaint.

8                    Opinion of the Court                    22-13303

- He "received via personal service . . . a subpoena requesting production of documents" in September 2020.
- He "received via regular mail a copy of the [magistrate judge's] Court Order granting the McHugh[s'] Motion to Compel" in September 2020.

Glass attests that he only understood that "action by [him] was necessary" after he received the magistrate judge's order compelling discovery responses.

The McHughs responded to Glass's motion to set aside the default, saying it "must be denied . . . because the record establishes that he has displayed an intentional, willful[,] and reckless disregard for these judicial proceedings on multiple levels" and Glass could not establish "good cause" to set aside the default.

The district court agreed with the McHughs and denied Glass's motion to set aside the default. Turning first to what it called the "factual dispute" of whether Glass was personally served with the complaint, it noted it need not resolve it because "Glass admit[ted] he received a copy of the [original] Complaint by FedEx in July 2019, and thus, he was actually aware of the suit." The district court also observed that, despite Glass's contentions to the contrary, he was properly served the amended complaint. It explained that "Glass repeatedly ignored legal papers mailed to him," as well as the language of the summons and the subpoena, which informed him of the consequences of not responding. Thus, the court concluded that "Glass's response and appearance,

22-13303                     Opinion of the Court                        9

well over a year after he admittedly had actual notice of the case and three months after [the McHughs] filed a motion for default and default judgment, [were] too little too late." The district court found that Glass "willfully defaulted and displayed an intentional or reckless disregard for the judicial proceedings[.]" (quotations omitted).

The district court added that "[c]onsideration of the additional factors"—whether Glass presented meritorious defenses and whether allowing Glass to enter the suit would prejudice the McHughs—did not change its decision. It found that "Glass has not demonstrated a meritorious defense" because "[h]e offered only blanket general denials" and "offered no facts to lend plausibility to his defenses." And the court said that "to allow Glass to enter the suit at this late date would cause prejudice to [the McHughs]" because they would "hav[e] to duplicate their efforts" in the litigation: "the deadline to serve written discovery between the parties" had passed and the McHughs had already "expended a significant amount of time and expense" litigating their case. The court therefore concluded that Glass could not prevail on the additional considerations of meritorious defenses and prejudice to the McHughs.

The McHughs then moved for entry of final default judgment against Glass, to which Glass did not respond. The district court granted the motion. This appeal followed.

## II.    Standard of Review

We review a district court's denial of a motion to set aside the entry of default for an abuse of discretion. *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *In re Rasbury*, 24 F.3d 159, 168 (11th Cir. 1994) (quotations omitted). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (quotations omitted).

"We review *de novo* whether the district court had personal jurisdiction over a nonresident defendant." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

## III.    Discussion

On appeal, Glass argues that the district court erred because his delay in engaging with the litigation was not willful—rather, it was a misunderstanding. He maintains that, before the magistrate judge's order, he did not "understand or appreciate" any action was required of him. But once he received the magistrate judge's order, he explains, he promptly engaged with the litigation. Glass also challenges the district court's determination that he did not have

22-13303                    Opinion of the Court                    11

meritorious defenses and that the McHughs would be prejudiced if Glass entered the suit.

We start with whether the default was willful. Pursuant to Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A court "may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). We have said that "'good cause' is not susceptible to a precise formula, but some general guidelines are commonly applied." *Compania Interamericana*, 88 F.3d at 951. Courts have considered these three factors: (1) "whether the default was culpable or willful," (2) "whether the defaulting party presents a meritorious defense," and (3) "whether setting [the default] aside would prejudice the adversary[.]" *Id.* "[T]hese factors are not 'talismanic[.]'" *Id.* For example, "courts have examined other factors including . . . whether the defaulting party acted promptly to correct the default."[8] *Id.* "[I]f a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951–52.

---

[8] Courts have also examined "whether the public interest was implicated" and "whether there was significant financial loss to the defaulting party." *Compania Interamericana*, 88 F.3d at 951. But we need not examine these two factors because the parties did not raise them.

12                          Opinion of the Court                    22-13303

The district court properly concluded that Glass intentionally or recklessly disregarded judicial proceedings because "[he] repeatedly ignored legal papers mailed to him[.]"  Glass denies being personally served with a copy of the summons and complaint, and he says he never received the amended complaint or a copy of the motion to compel.[9]  But he acknowledges receipt of everything else the McHughs sent him between July 2019 and September 2020—(1) a copy of the original complaint in July 2019, (2) written discovery requests in June 2020, and (3) the subpoena requesting the production of documents in September 2020—all at the very same address where the process server swears he served Glass with the summons and original complaint, and where copies of the amended complaint and motion to compel were mailed.[10]

---

[9] While Glass says he "never received a copy of the Motion to Compel[,]" the motion to compel's certificate of service suggests otherwise.  It reads: "**I HEREBY CERTIFY** that on the 2nd day of September, 2020, a true and correct copy of the foregoing was filed . . . by serving a copy of the foregoing via Federal Express to the last known address of Defendant Michael Glass."  Pursuant to Federal Rule of Civil Procedure 5, a written motion is properly served by "mailing it to the person's last known address—in which event service is complete upon mailing[.]"  Fed. R. Civ. P. 5(b)(2)(C).  Because Glass was mailed a copy of the motion to compel via Federal Express to his last known address, we conclude that Glass was properly sent the filing.  And even if he was not, Glass's argument would still fail.  Under that same rule, no service was required on Glass because he was "in default for failing to appear."  Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear.").

[10] Interestingly, in his filings before this Court and the district court, Glass neglects to mention the July 3, 2018 demand letter sent to him via e-mail,

From the documents he admits receiving, Glass was clearly aware that the McHughs had sued him and were expending time and money pursuing the lawsuit. Yet Glass only obtained counsel after the magistrate judge threatened him with a finding of contempt. From Glass's intentional disregard of a number of legal documents he received by mail, Federal Express, and personal service over the course of fifteen months, it is clear that he displayed an intentional or reckless disregard for the judicial proceedings. Accordingly, we conclude that the district court did not abuse its discretion in finding that Glass willfully defaulted, negating a finding of good cause to set aside the default. *In re Rasbury*, 24 F.3d at 168; *Compania Interamericana*, 88 F.3d at 951.

Glass resists this conclusion for three reasons, none of which have merit.

First, Glass argues that the district court erred in finding his default was willful because a "factual dispute exists" as to whether he was properly served with the summons and original complaint. He swears he was not personally served with the summons and original complaint and only received a copy of the original complaint (without the summons) in the mail. Thus, allegedly deprived of a summons, he claims he did not have notice of the lawsuit. But Glass does not win the dispute simply by saying he was not personally served. We have said that "[w]here, as here, the defendant submits affidavits" challenging personal jurisdiction,

---

Federal Express, and certified mail that appraised him of the McHughs' "[intention] to vigorously pursue their full legal remedies[.]"

14                          Opinion of the Court                          22-13303

"the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[.]" *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). "Where the plaintiff's . . . supporting evidence conflict[s] with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* Here, the plaintiffs met their burden. As an initial matter, the McHughs filed an affidavit of service from Bumgardner swearing he "personally served" Glass at his home address with a copy of the summons and complaint. Glass put the matter into dispute by submitting an affidavit swearing he "was never personally served with a copy of the Summons and Complaint." In response, however, the McHughs submitted additional evidence proving service of process. Fogarty signed a declaration saying that she forwarded the summons and complaint to Bumgardner, and Bumgardner submitted a second statement asserting that he "personally served Glass at his residence" and that "Mr. Glass is a bald, white man, approximately 56 years old, weighing approximately 220 [pounds] and about 6'01" in height." Because the evidence from the McHughs and Glass conflict, the district court was free to "construe all reasonable inferences" in favor of the McHughs as the plaintiffs. *Meier ex rel. Meier*, 288 F.3d at 1269. On our *de novo* review, *Mosseri*, 736 F.3d at 1350, we conclude that Glass was personally served with the summons and original complaint.

Our conclusion of personal service is bolstered by what Glass did not do. At no point—after admittedly receiving several filings in the case—did Glass move to dismiss the complaint for

insufficient service of process under Federal Rule of Civil Procedure 12, thus forfeiting such a challenge. Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 21 days after being served with the summons and complaint[.]"); Fed. R. Civ. P. 12(b)(5) (defense of insufficient service of process must be asserted before the responsive pleading); *see Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (stating "[c]hallenges to service of process will be waived . . . if not raised under [Rule 12,]" and once waived, courts may not "dismiss on that ground"). Furthermore, Glass failed to raise insufficient service of process as one of his defenses in his motion to set aside the default (or any other document). Having waived the defense, he cannot assert it now.

Second, Glass says the district court erred in finding his default was willful because he promptly engaged with the litigation "[w]ithin two weeks of receiving the magistrate judge's order." It is true that, as part of an inquiry into whether there is good cause to excuse a default, "courts have examined . . . whether the defaulting party acted promptly to correct the default." *Compania Interamericana*, 88 F.3d at 951. But in the words of the district court, "[Glass's] actions [were] far from 'prompt.'" Even looking only to the pleadings he admits receiving, fifteen months passed between when he received a copy of the original complaint via Federal Express and his counsel's appearance in this suit. And he admits receiving a number of other legal documents in between. Thus, the district court is correct that Glass's efforts are "too little too late."

16                           Opinion of the Court                           22-13303

Third, Glass argues that the district court erred in finding his default was willful because any delay was due to a misunderstanding as he did not "understand or appreciate" any action was required of him before receiving the magistrate judge's order. We, however, have said that a party's excuse that he is "confus[ed]" about his responsibility to respond to litigation does not satisfy "good cause." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990). Glass's excuse is simply not enough, particularly in light of the pile of legal documents he admits he received concerning the suit.[11] Further, the language of the summons (with which we have already concluded he was served) required a response and warned him of the consequence of not responding. Glass's intentional disregard of the suit, therefore, does not satisfy good cause, despite his assertion that he did not "understand or appreciate" a need to act.

For all these reasons, we conclude that the district court did not abuse its discretion in finding that Glass willfully defaulted by attempting to avoid the suit. Because no additional findings are necessary to deny relief, *Compania Interamericana*, 88 F.3d at 951–

---

[11] Moreover, a year before the litigation started, counsel for the McHughs sent Glass a demand letter via e-mail, Federal Express, and certified mail demanding "treble damages in the amount of $3,329,520.00" pursuant to Fla. Stat. § 772.11 within 30 days. The letter said that if Glass "fail[ed] to comply with [the] demand within the time provided, [the McHughs] intend[ed] to vigorously pursue their full legal remedies[.]"

22-13303               Opinion of the Court                    17

52, we need not address the additional considerations of meritorious defenses and prejudice to the McHughs.[12]

---

[12] But considering these two factors would not change our conclusion, as Glass did not present meritorious defenses and allowing him to participate in the suit would prejudice the McHughs.

Glass failed to offer anything remotely resembling a meritorious defense. He only presented four conclusory and superficial statements that (1) he "dispute[s] many of the allegations asserted against [him];" (2) he "den[ies] that [he] ever made any false representations or omissions;" (3) he "den[ies] that [he] committed any act of theft or conversion of funds;" and (4) "there [are] a number of legal defenses that can and should be asserted in response to the Amended Complaint." Accordingly, the district court did not abuse its discretion in finding that Glass failed to present meritorious defenses. *See, e.g.*, *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014) ("When we say the defendant must show a 'meritorious defense' to the lawsuit, we mean more than bare legal conclusions[.]"); *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984) (concluding that no meritorious defense was presented under Rule 55(c) because the party "was extremely superficial and unusually equivocal" when it "merely stated that the fee motion raised 'substantial issues of law'" and that a meritorious defense "may" exist).

Turning to whether it would prejudice the McHughs to allow Glass to participate in the suit, Glass argues that no prejudice exists because costs incurred by the McHughs would be "simply a cost of litigating the case on the merits, not an increased cost as a result of the default/delay," and the district court "easily could control" any prejudice through "an order with reasonable discovery limitations[.]" But by arguing that the court could ameliorate any prejudice to the McHughs, he implicitly concedes that prejudice exists. And exist it does. Prejudice may exist where a party faces "additional expense caused by the delay." 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2700 (4th ed. 2023) ("The most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues."). Setting aside the default would prejudice the McHughs by forcing them to pay additional costs to restart

## IV.    Conclusion

The district court did not abuse its discretion in denying Glass's motion to set aside the default because Glass "willfully default[ed] by displaying either an intentional or reckless disregard for the judicial proceedings." *Compania Interamericana*, 88 F.3d at 951–52.  We therefore affirm.

**AFFIRMED.**

---

litigation that had already proceeded over the course of 15 months against multiple other defendants.  *Cf. United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 326 (6th Cir. 2010) (concluding prejudice did not exist where plaintiff-appellee "never explain[ed] how setting aside default . . . would increase litigation costs to a greater degree than would naturally occur in all cases of setting aside default").  Furthermore, by the time Glass filed his motion to set aside the default, the deadline for written discovery had passed and the McHughs had already conducted several depositions.  Thus, the district court did not abuse its discretion when it concluded that allowing Glass to participate in the suit at this point would prejudice the McHughs.