## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                                              Case No. 3:24-cv-00044-MMH-MCR

ROBERT HARDWICK,
in his official capacity as Sheriff of St. Johns County,
MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

       Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT HARWICK'S MOTION TO DISMISS

Defendant Hardwick moves to dismiss Plaintiff's Second Amended Complaint arguing that it fails to state a cause of action. Specifically, Hardwick argues that the Plaintiff has failed to allege facts sufficient to meet the requirements of *Monell v. Dep't of Soc. Servs. of City of New York* and its progeny. 436 U.S. 658, 694 (1978) In order to state a cause of action against a state official in his official capacity, the Plaintiff must allege (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or

1

custom caused the violation.'" *Jennings v. Stewart*, 461 F. Supp. 3d 1198, 1200 (N.D. Fla. 2020) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)). The Plaintiff has sufficiently alleged all three requirements. Therefore, the Motion should be denied.

## I.    STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). In applying this standard, the Court will accept as true all well-pleaded factual allegations and the reasonable inferences to be drawn from those allegations and view those facts and inferences in a light most favorable to the non-moving party. *Cromer-Tyler v. Teitel*, 2005 U.S. Dist. LEXIS 37762 (M.D. Ala. 2005)

There is no heightened pleading standard in § 1983 cases. *Hoefling v. City of Miami*, 811 F.3d 1271, 1275-76 (11th Cir. 2016) Rather, courts have applied the "plausibility" standard announced in *Twombley* and *Iqbal:*

> The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. ... To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009)

## II.    CONSTITUTIONAL VIOLATION

Det. Preston never had probable cause to search Plaintiff's private digital content, nor did she have probable cause to arrest the Plaintiff. A warrantless arrest without probable cause violates the Fourth Amendment and forms the basis for a § 1983 claim. *Faile v. City of Leesburg*, 2024 U.S. App. LEXIS 11636 (11th Cir 2024). Likewise, a search, even where a warrant has been issued, can violate the Fourth Amendment under certain circumstances. Specifically, a law enforcement officer may be held liable when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Figures v. Gordon,* 2023 U.S. App. LEXIS 1662 (11th Cir 2023) quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) Furthermore, an affidavit supporting a warrant violates the Fourth Amendment when it contains omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit." *United States v. Martin,* 615 F.2d 318, 329 (5th Cir.1980). A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it "is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." *Id.* See also *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-1327 (11th Cir. 1997)

Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Rankin v. Evans*, 133 F.3d 1425 (11th Cir. 1998)

Probable cause requires more than a mere suspicion. *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir. 1992). Furthermore, conclusory statements made by a law enforcement officer are insufficient to support the issuance of a search warrant. " *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) see also In *Goesel v. State*, 305 So. 3d 821, 824-825 (Fla 2nd DCA 2020) (An officer's bare conclusion that an image contained child pornography was insufficient to support a finding of probable cause.)[1]

To begin the assessment of probable cause, courts look to the elements of the charged crime. Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2007)  The subject crime, Florida Statute § 827.071(5), contains two separate elements of intent. *Schmitt v. State*, 590 So. 2d 404, 413-414 (Fla. 1991). It requires proof that a person (1) *knowingly* possesses any photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, he (2) *knows* to include any sexual conduct by a child. *Id.*  In other words, the statute proscribes "the *intentional* exploitation of children." *Id.*  Therefore, the issue, in this case, is

---

[1] Defendant Hardwick relies on the case *United States v. Koelling*, 992 F.2d 817 (8th Cir. 1993) for the proposition that nothing more than an officer's conclusions and conclusory statements are sufficient to support a finding of probable cause. Defendant's reliance is misplaced, as the facts and holdings of *Koelling* are entirely different than the case *sub judice*. In *Koelling*, the affidavit supporting a search warrant contained multiple pieces of compelling evidence, including the fact that law enforcement positively identified the victim "in the photo as a seventh-grade student." Defendant also cites to the Eleventh Circuit case of *United States v. Orr*, 819 Fed. Appx. 756, 765.  This reliance is equally misplaced.  In that case, the application for a search warrant "demonstrated that Mr. Orr knew "Emily" [the victim] was a minor and that he was seeking and requesting sexually explicit visual depictions of a minor." Again, the case is not analogous.

whether there was probable cause to believe that the content (1) depicted a minor and (2) the Plaintiff *believed* that the content depicted a minor.

Although an officer does not have to prove every element of the charged crime, "her knowledge that an element isn't met—or is exceedingly unlikely to be met—will preclude a finding of probable cause." *Butler v. Smith,* 85 F.4th 1102, 1116 (11th Cir. 2023)

This is particularly important in the context of a law which criminalizes the possession of speech solely based on its content. The requirement that the criminal suspect knows that a particular image depicts a minor is not merely statutory. The First Amendment demands proof of a defendant's mindset to establish an obscenity case. *Counterman v. Colorado*, 600 U.S. 66, 76-77 (2023) citing *Hamling* v. *United States*, 418 U. S. 87, 122-123, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) (Obscenity is obscenity, whatever the purveyor's mental state. But we have repeatedly recognized that punishment depends on a "vital element of scienter"— often described as the defendant's awareness of "the character and nature" of the materials he distributed.)

If an objective officer would have found it exceedingly unlikely that Plaintiff was *intentionally* exploiting children, there could be no probable cause. This is precisely what Plaintiff has alleged. After receiving the NCMEC report, Det. Preston knew that plaintiff was in possession of a pornographic image obtained from public website. (¶¶ 36-48) She knew that the photograph was watermarked, indicating the website had claimed copyright over the image. (¶ 47) She knew that

the model's age appeared consistent with that of an adult. (¶56f, 57) She knew, contrary to the Cyber Tip report, the model had experienced puberty. (¶46) Based on these facts, without more, it would be extremely unlikely to establish that the Plaintiff was in possession of an image he knew to be of a child. (¶ 58) Det. Preston was not free to ignore these facts.

A law enforcement officer is required to conduct a reasonable investigation to establish probable cause. *Rankin v. Evans,* 133 F.3d 1425, 1435-1436 (11th Cir 1998) quoting *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a "cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable...")[2]  A detective "may not close his or her eyes to facts that would help clarify the circumstances of probable cause," nor are they "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004) *cf. Hernandez v. United States*, 939 F.3d 191, 208 (2d Cir. 2019) see also *Alcocer v. Mills*, 800 Fed. Appx. 860, 866 (11th Cir. 2020)  Therefore, even if there remained a suspicion in Det. Preston's mind that Plaintiff was in knowing possession of child pornography, after viewing the image, she had an obligation to

---

[2] The standard for determining whether probable cause exists is the same under Florida and federal law. Rankin v. Evans, 133 F.3d 1425, 1435

obtained readily and easily available information which bore on the nature of Plaintiff's conduct.

Here, Det. Preston knew the location of material and exculpatory evidence.[3] Simply visiting the website would have provided (1) the general context of publication (2) representations of age of the model (3) the availability of age verification documentation and (4) the name and contact information of the website's record custodian. (¶ 56a-f) All of this information could have been gathered and evaluated in a very short time, with very little effort, from the detective's desk. *See Brinegar, supra*, 338 U.S. at 177 (probable cause determination depends on the circumstances) Tillman v. Coley, 886 F.2d 317, 321. Furthermore, a simple Google search would have revealed that the record's custodian was a member of the California Bar. (¶56d) A simple email would have resulted in production of age verification documents of the model(s) in question. (¶ 56a-f; 130-131)

Defendant Preston holds herself out as an expert in the investigation of internet crimes involving CSAM. (¶ 11) Det. Preston was aware that many adult websites maintain federally required age verification documentation. (¶59-60) And yet, she never visited the website and she never sought any documentation of the model's age. (¶75-76)

A probable cause analysis must charge the detective with possession of all the information reasonably discoverable by an officer acting reasonably under the

---

[3] Production of age verification documentation resulted in the immediate dropping of charges.

circumstances *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004) citing *Be Vier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)  Where a warrant is involved, probable cause will depend on whether there were intentional or reckless false statements or omissions in the warrant affidavit. *Id* quoting *Bracey v. Jolley*, 2012 U.S. Dist. LEXIS 192276 (N.D. Ga. 2012) *See also Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997). This determination "will depend not only on the information defendants actually possessed, but also information they could have possessed had they investigated reasonably." *Id*

Detective Preston is charged with possession of the following facts:

a. That the subject Cyber Tip was "unconfirmed" and that there was a reasonable chance that the model was an adult.

b. That the image was publicly available on the internet and watermarked with the specific website's name: Met-Art.com.

c. That the website publisher described the model was an adult.

d. That the website publisher claimed compliance with federal age verification laws, specifically, 18 USC §2257.

e. That the website publisher identified the name and contact information of a records custodian in compliance with 18 USC §2257.

f. That the records custodian was  a member of the California Bar

g. That the models depicted were over the age of 18 at the time of the professional photoshoots in question, by review of government issued ID and affidavit of the record's custodian.

(¶ 56a-f; 130-131). Under these facts, probable cause did not exist.

### a. NCMEC Cyber Tip Report

The NCMEC report did not raise a basis for probable cause. In fact, the report raised only questions and contradictions that would have led any reasonable officer to question its veracity and reliability.

To begin, Plaintiff has alleged (and there will be no dispute) that NCMEC reports regularly contain false reports of child pornography. (¶ 40). This fact, in and of itself, would cause a reasonable detective to approach these reports with due caution and thorough investigation.

Second, while the Cyber Tip indicated that there was a report of possession of child pornography, the report specifically qualified that allegation as "unconfirmed." As quoted by Hardwick, NCMEC employs the label of child pornography "unconfirmed" when it believes "there may be [a] question of the age of the individual seen in that particular image." *United States v. Williamson*, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023) NCMEC also uses the terms "age indeterminate" and "age difficult" for this category of content. *Id.* Obviously, the age of the individual involved is ***the sole distinction*** between child pornography and legitimate, adult pornography. The labeling of an image as "unconfirmed" CSAM raises serious doubts as to probable cause where there is no other

information or evidence to suggest that the age of the individual was known to the suspect.[4]

Finally, there were known and obvious contradictions between the Cyber Tip report and the contents of the image. Specifically, the report stated (1) the subject content was not available to the public and (2) that the content depicted a "prepubescent" child. These statements were false, and Detective Preston knew they were false. (¶ 46,50)

Reliance on false, contradictory or unreliable information goes to the heart of the probable cause analysis. An uncorroborated tip is insufficient, standing alone, to establish probable cause. *United States v. Rollins,* 699 F.2d 530, 533 (11th Cir.1983).

### b. Dr. Kathleen Dully's Opinions

The opinion of Dr. Kathleen Dully adds no weight to the Defendant's argument that probable cause existed. As stated above, Detective Preston is charged with knowledge of the facts readily available through a reasonable investigation – *such as the fact that the models were, in fact, over the age of 18.* But setting those facts aside, there are serious problems with the opinions of Dr. Dully and no objective officer would have found her opinion to be reliable. (¶ 88)

---

[4] Not all NCMEC reports characterize the content as "unconfirmed." NCMEC also reports content which it has labeled "apparent." According to NCMEC, "apparent" child pornography involves content in which it is "overtly clear" that a minor is depicted. *United States v. Williamson,* 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023)

Dr. Dully offers an opinion of the age of the models in question based solely on the appearance (or lack) of pubic hair in a professionally produced, digital photograph.[5]  Moreover, Dr. Dully's evaluation of pubic hair is entirely predicated on the absence of the visible aftereffects of shaving (presumably redness, irritation, razor burn). In all five instances of reviewing the digital images, Dr. Dully separately repeats the observation, verbatim, that the model "does not appear to be shaved." [6]

All of the images charged (and reviewed) in this case were professionally produced for publication on the internet.  (¶ 96,123)  By professionally produced it is reasonably inferred and commonly understood that such images are regularly edited, altered and manipulated for cosmetic purposes.

Probable cause is "judged not with clinical detachment but with a common sense view to the realities of normal life." *Marx v. Gumbinner,* 905 F.2d 1503, 1506 (11th Cir.1990) (internal citation omitted); *see also Revels,* 666 So. 2d at 215. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998)   All of us, including Det. Preston and Dr. Dully, knows that this editing includes the smoothing or concealing of skin irregularities, blemishes, irritation, even the appearance of hair. Although a detective does not have to rule out every possibility of innocence, it is

---

[5] Dr. Dully's reports have been filed in the records as Exhibits to Preston's Answer.
[6] This is classic "inference stacking" - Dr. Dully is inferring that the photo has not been altered and then stacking the inference that there is no evidence of shaving on top of that.  These are not medical inferences and are completely speculative.

unreasonable to simply assume that such digital photography has not been edited in some way.

Dr. Dully was not an expert in digital forensics. She not an expert in determining whether a professional photograph has been altered to conceal imperfections. (¶ 95)  Even if Dully were expert in this technical knowledge, she did not apply that expertise to these photographs.  Moreover, Det. Preston knew that such opinions were outside the field of medicine. (¶ 111g)

Dr. Dully's lack of expertise in digital photo editing cannot be viewed in isolation. She is also not an expert on personal grooming techniques. (¶ 95)  Again, the realities of normal life bear on the probable cause analysis.  Certainly, Dr. Dully and Det. Preston knew that a substantial percentage of young women employ some method of grooming or hair removal. This practice is widespread. Moreover, as the choice is an aesthetic one, many people take significant effort to make it appear as though they were not "shaved." Det. Preston knew this and it was unreasonable, for her to assume that the models had not engaged in some level of personal grooming.

Dr. Dully's lack of expertise in digital photo forensics and personal hair removal techniques renders any subsequent opinion entirely speculative.  A detective trained in the investigation of CSAM should be able to discern that this is not reliable scientific opinion.

## III.    POLICY OR CUSTOM

Plaintiff has plead that SJSO had multiple customs or policies that were facially unconstitutional or constituted deliberate indifference to the Plaintiff's rights: (1) a policy or custom to ignore claims of age verification on the internet (2) a policy or custom to employee unreliable pseudoscientific opinions in probable cause affidavits for CSAM and (3) a policy or practice to omit the label of "unconfirmed" child pornography from probable cause affidavits.

### a. Federal Age Verification Laws

Plaintiff has alleged a set of facts which establish a facially unconstitutional policy: (1) SJSO knew that in certain instances federal law required producers/publishers of pornography to maintain records verifying the age of the individual models.  (2) SJSO failed to require, suggest or encourage detectives to utilize this information in the investigation of CSAM and (3) it was the practice and custom of SJSO to not obtain or inquire as to the existence of federally mandated age verification records. (¶ 62-72)

Defendant Hardick does not explain why he believes that these allegations do not meet the pleading requirements of federal law and *Monell*.  These are clearly not "threadbare recitals of the elements of the cause of action."

In essence, Plaintiff has alleged that SJSO does not investigate evidence of federally mandated age verification where possession of child pornography is concerned.  This is their policy, their practice and their custom.  *Defendant Hardwick does not dispute the plausibility of Plaintiff's allegation that this is his policy*.  Rather, Hardwick's position is that his detectives *should not* consider

information published on the internet when evaluating probable cause in these cases.  In fact, he states, unequivocally, that the idea "probable cause is diminished if something to the contrary [such as alleged compliance with federal age verification law] is on the internet, is ludicrous." (Hardwick Motion to Dismiss P.12)

This is plausibly the policy or custom of SJSO.  Policies are not required to be written or included in a manual or legislative act. *Bakst v. Tony*, 2019 U.S. Dist. LEXIS 237636 (S.D. Fla 2019) (where the court found the sheriff's verbal instructions to staff amounted to a policy for purposes of *Monell* liability) Similarly, an act performed pursuant to a "custom"  that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) "Official policy" often refers to formal rules or understandings -- often but not always committed to writing -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-481  (1985)

Furthermore, the policy, practice or custom may be proved by direct or circumstantial evidence. *Matthews v. Atlanta*, 699 F. Supp. 1552 (N.D. Ga. 1988) citing  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985). In other words, like any other allegation, the Plaintiff is permitted to submit testimony or other competent evidence establishing that there existed a

policy or custom to ignore claims of compliance with federal age verification laws in CSAM investigations.[7] *See generally, Williams v. Dixon*, 2024 U.S. Dist. LEXIS 92285 (M.D. Fla 2024) (Plaintiff was not required to prove at the motion to dismiss stage that defendant had a custom, policy, or practice.)

For Hardwick to be liable for a policy or custom, Plaintiff must show the policy, practice or custom itself violated federal law or directed employees to take unconstitutional action (i.e. the policy was unconstitutional on its face), *or*, that a facially lawful policy was adopted or maintained with "deliberate indifference" to the "known or obvious consequences" that constitutional violations would result. *Bakst v. Tony*, 2019 U.S. Dist. LEXIS 237636 (S.D. Fla 2019) citing *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)

Congress has provided law enforcement with a powerful tool to aid in distinguishing legal protected content from illegal and unprotected CSAM. A policy, practice or custom which ignores the existence of readily available exculpatory evidence in probable cause determinations is facially unconstitutional. *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004). Additionally, because the private possession of adult pornography is protected, a policy which

---

[7] Apart from the statement of Hardwick in his motion, Plaintiff will present testimony from persons involved with and known to the criminal investigation who will substantiate the existence of this policy or custom. After the return of the subpoena, Det. Preston investigated 4 separate and additional images. CITE At no time did she did seek age verification or visit these websites. CITE Again, this failure was not an isolated mistake made by Det. Preston. CITE. Rather, it was the custom of SJSO detectives to ignore this type of exculpatory evidence

ignores claims of age verification, would violate the First Amendment's requirement that the suspect *know* that the content depicts a child. *Counterman v. Colorado*, 600 U.S. 66, 76-77 (2023) citing *Hamling* v. *United States*, 418 U. S. 87, 122-123, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974)

It does not matter how long the policy has been in place or whether other individuals have had their rights violated *Gebru v. City of Atlanta*, 2014 U.S. Dist. LEXIS 89919 (N.D. Ga 2014). (Finding policies which authorized arrests without probable cause facially unconstitutional) *Alcocer v. Mills*, 800 Fed. Appx. 860, 866 (11th Cir. 2020) (finding that failure to perform an easily accessible database check in an immigration detention was presumptively a violation of the fourth amendment)

 Plaintiff is not required to show a pattern of constitutional violations.  This is distinct from situations where the policy is facially valid but widespread violations of that policy are required to establish a customary "deliberate indifference" to constitutional rights. *Bakst v. Tony*, 2019 U.S. Dist. LEXIS 237636 (S.D. Fla 2019); see also *Williams v. Dixon*, 2024 U.S. Dist. LEXIS 92285 (M.D. Fla 2024)

Even if the policy was not facially unconstitutional, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting

an obvious potential for constitutional violations." *Bakst v. Tony*, 2019 U.S. Dist. LEXIS 237636 (S.D. Fla 2019) citing *Barney*, 143 F.3d at 1308 (quoting *Brown v. Bd. of Cty Comm'rs*, 117 S. Ct. at 1391) [8]   It is plainly obvious that failure to investigate age verification compliance, when such evidence is available, could result in a constitutional violation.

Further, "liability may attach when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *City of Canton v. Harris*, 489 U.S. 378, 388-389 (1989)  Even a single violation of federal rights, accompanied by a showing that a county has failed to train its employees to handle recurring situations, presenting an obvious potential for such a violation, could trigger municipal liability. *Id.*

### b. Use of Medical Doctor's Testimony

Plaintiff has alleged, with particularity, that it was the policy or custom of SJSO to "manufacture pseudo-scientific opinions regarding photographic images depicting individuals whose age was indeterminate or difficult to determine by visual inspection. (¶ 84-86)[9]  This was the practice and custom of SJSO, even when there existed age verification documentation pursuant to 18 USC §2257. (¶ 87)

---

[8] Hardwick cites to cases requiring widespread prior constitutional violations in Monell claims.  These cases involve facially valid policies result in unconstitutional results or there is a policy of failing to investigate and correct unconstitutional behavior.  Those cases are different.  A finding of deliberate indifference or pattern of constitutional violations in not required when the policy is facial unconstitutional. *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006)

[9] Discovery in the underlying criminal case confirm that the practice is regular and widespread.

Such a policy or custom is facially unconstitutional and shows a conscious indifference to the rights of Plaintiff and anyone similarly situated. Probable cause must be based on information which is reliable. It is well established that the intentional offering of false evidence or fabricating incriminating evidence violates constitutional rights. *see Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002) citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

### c. Omission of the label "Unconfirmed" from Warrant Applications

Plaintiff has alleged that it was the custom or policy of SJSO to omit specific details of NCMEC Cyber Tip reports from affidavits which would materially affect the judicial determination of probable cause. Specifically, Plaintiff has alleged that it was the practice of SJSO to omit NCMEC's characterization of the tip and content as "unconfirmed" in affidavits seeking a search warrant.

This practice turns an unconfirmed tip made by an unknown individual (or simply a computer algorithm) at the Plaintiff's cell phone provider, into evidence that appears to be confirmed information provided by the national clearinghouse for CSAM. This is material and it is a misrepresentation. Furthermore, this practice obviously violates long standing constitutional requirements that the "totality of the circumstances" determine whether an informant's tip establishes probable cause. *Illinois v. Gates*, 462 U.S. 213 (1983) An informant's "veracity," "reliability," and "basis of knowledge" -- remain "highly relevant in determining the value of his report." *Ala. v. White*, 496 U.S. 325, 328

(1990)  citing *Illinois v. Gates*, 462 U.S. 213 (1983) Omitting information which calls into question a tips reliability or veracity from an application for a warrant is patently unconstitutional and exhibits a deliberate indifference to the requirements of probable cause.

## IV.    CAUSATION

Plaintiff has alleged that SJSO had a policy or custom which was unconstitutional. In cases where the county's action itself violates federal law, or directs an employee to do so, resolving issues of fault and causation is straightforward." *Gebru v. City of Atlanta*, 2014 U.S. Dist. LEXIS 89919 (N.D. Ga 2014) citing " *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397 (1997)  Where a policy or custom is facially unconstitutional satisfies the causation element of *Monell* where the policy was the moving force behind the violation. *Id.*

The policies involved in this case limited the scope and nature of probable cause determinations in violation of the constitution and directed officers to use inherently unreliable information in warrant applications.  They are not ancillary or adjacent to the violation in this case.  The policies and customs alleged present obvious and predictable constitutional problems. Where such policies are concerned, "the high degree of predictability may also support an inference of causation." *Gebru v. City of Atlanta*,  2014 U.S. Dist. LEXIS 89919 (N.D. Ga 2014) citing " *Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397 (1997)

It could be fairly stated that had SJSO's customs or policies been different, or not existed, there would not have been a violation of Plaintiff's rights.  See *Gebru*

*v. City of Atlanta*,  2014 U.S. Dist. LEXIS 89919 (N.D. Ga 2014) (Where a police search conducted pursuant to a policy that permitted searches without probable cause, satisfied the causation element on *Monell*) Simply following the direction of SJSO, without more, would have resulted in the present constitutional violations. The allegations and inferences drawn from them, support the conclusion that the subject polices cause the subject constitutional violations.

## V.    CONCLUSION

Plaintiff has alleged a violation of his constitutional rights. Furthermore, he has alleged that the violation was caused by facially unconstitutional policies implemented by the Defendant. Wherefore, Plaintiff asks that the Defendant's Motion be denied. In the alternative, Plaintiff requests leave to amend any deficiencies in his pleading.

Dated this 24th day of June 2024.

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*
_____
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
**Jeffery S. Nooney, Esquire**
Florida Bar No. 1011565
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
jnooney@nrhnlaw.com
Attorneys for Plaintiff

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on June 24, 2024, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.


*/s/ Michael K. Roberts*

_____

**Michael K. Roberts, Esquire**