# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

      Plaintiff,

v.

                                    Case No. 3:24-cv-44-MMH-MCR

ROBERT HARDWICK, in his
official capacity as Sheriff of St.
Johns County, et al.,

      Defendants.

---

# O R D E R

**THIS CAUSE** is before the Court on Defendant Sheriff Hardwick's Motion to Dismiss Second Amended Complaint (Doc. 44; Sheriff's Motion), filed June 3, 2024, and Defendant Kathleen Dully's Motion to Dismiss Count VII of Plaintiff's Second Amended Complaint (Doc. 45; Dr. Dully's Motion), filed June 19, 2024. In their respective motions, Defendants request that the Court dismiss Plaintiff William Lee Lawshe's Second Amended Complaint (Doc. 40) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)).[1] Lawshe timely filed responses to both motions. See Plaintiff's Response to Defendant Hardwick's Motion to Dismiss (Doc. 46; Response to Sheriff's

---

[1] In the alternative, Dr. Dully requests that Lawshe be required to provide "a more definite statement regarding Count VII[.]" Dr. Dully's Motion at 6.

Motion), filed June 24, 2024; Plaintiff's Response to Defendant Kathleen Dully's Motion to Dismiss (Doc. 47; Response to Dr. Dully's Motion), filed July 12, 2024. Accordingly, this matter is ripe for review.

### I.   Background[2]

On February 20, 2023, the St. Johns County Sheriff's Office (SJSO) received a cyber tip from the National Center for Missing and Exploited Children that Lawshe was in possession of one image of "Apparent Child Pornography (Unconfirmed)." Second Amended Complaint ¶¶ 35, 36. Detective Mikayla Preston reviewed the cyber tip, along with the alleged image of child sex abuse material (CSAM) attached to it, and initiated an investigation. Id. ¶ 45. As part of this investigation, Detective Preston presented the alleged image of CSAM to Dr. Kathleen Dully (the medical director of the University of Florida Child Protection Team) to receive an opinion on the estimated age of the individual. Id. ¶¶ 96, 99.[3] After reviewing the image, Dr. Dully informed Detective Preston that it was her medical opinion that the individual "appear[ed] to be younger than the age of 18" and was possibly "as young as 12

---

[2] In considering the Motions, the Court must accept all factual allegations in the Second Amended Complaint as true, consider the allegations in the light most favorable to Lawshe, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Second Amended Complaint, and may well differ from those that ultimately can be proved.

[3] The University of Florida Child Protection Team is an organization established by Florida law, and it is tasked with aiding "state investigations into allegations of child abuse in its various forms." Second Amended Complaint ¶ 207.

years old." Id. ¶ 106. With this information, Detective Preston sought and obtained a search warrant for Lawshe's cell phone provider. Id. ¶ 109. After executing the search warrant, Detective Preston presented Dr. Dully with a second image that was retrieved from Lawshe's phone. Id. ¶¶ 122, 124. Dr. Dully informed Detective Preston that it was her opinion that the individual in the second image appeared to be "less than or equal to 9–13.5 years old." Id. ¶ 125. Based upon this information, Detective Preston arrested Lawshe for the knowing possession of CSAM. Id. ¶ 129.

After being arrested, Lawshe personally financed "an investigation into the allegations" against him, and "was able to conclusively prove that the charges and allegations . . . were objectively false and entirely baseless." Id. ¶¶ 31, 32. Specifically, Lawshe was able to prove that the individuals in the two images were "consenting adult[s]." Id. ¶ 53. And that no CSAM was present "on his phone, computer, cloud storage, hard drive, thumb drive or any other electronic storage device owned or controlled by" him. Id. ¶ 23. After presenting this "exculpatory evidence to the [state attorney's office]" the charges against Lawshe were dropped. Id. ¶ 33.

However, as a result of being falsely accused of possessing CSAM, Lawshe lost his job as a Florida Fish and Wildlife Conservation officer, and "was ostracized from the community that he had dedicated his professional life to serving." Id. ¶¶ 17, 20. Lawshe subsequently brought this action alleging that

Detective Preston and the SJSO violated his constitutional rights. See generally Second Amended Complaint. Specifically, Lawshe asserts that Detective Preston conducted a constitutionally infirm investigation by (1) failing to obtain federally mandated age verification information from Met-art.com (the host of the alleged images of CSAM) which would have confirmed that the individuals in the images were consenting adults; (2) relying on Dr. Dully's opinion that the individuals in the images were underage when there "is no scientifically accepted medical test or methodology" to validly reach this conclusion; and (3) omitting from her search warrant affidavit that the images were not confirmed to be CSAM. Id. ¶¶ 47, 97, 112. Lawshe further alleges that Detective Preston's actions were taken pursuant to the policies and customs of the SJSO. Id. ¶¶ 70, 92, 112. And that had the SJSO not implemented these customs and policies, he would not have been falsely accused of possessing CSAM. Id. ¶ 28.

## II.    Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. See Jackson

v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## III.   Discussion

In the Second Amended Complaint, Lawshe asserts three claims against Sheriff Hardwick, in his official capacity as the Sheriff of St. Johns County, for (1) unreasonable search under 42 U.S.C. § 1983, (2) unreasonable arrest under 42 U.S.C. § 1983, and (3) a violation of the First Amendment under 42 U.S.C. § 1983. See Second Amended Complaint at 27, 30, 34.[4] Lawshe also asserts one claim against Dr. Dully, in her individual capacity, for a violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Id. at 36.[5] Sheriff Hardwick argues that the claims brought against him should be dismissed because Lawshe has failed allege that his constitutional rights were violated, and that even if he had, he cannot show that these violations were the result of

---

[4] As to the claims brought against Sheriff Hardwick in his official capacity as the Sheriff of St. Johns County, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, references to Sheriff Hardwick in this Order should be construed as referring to the St. Johns County Sheriff's Office. Moreover, the claims are effectively claims against the governmental entity, that is the municipality of St. Johns County. Id. at 165–66; see also Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) ("When . . . the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, [St. Johns] County." (citations omitted)).

[5] In the Second Amended Complaint, Lawshe also asserts three claims against Detective Preston, in her individual capacity, for (1) unreasonable search under 42 U.S.C. § 1983, (2) unreasonable arrest under 42 U.S.C. § 1983, and (3) a violation of the First Amendment under 42 U.S.C. § 1983. See Second Amended Complaint at 25, 28, 32. However, as Detective Preston does not move to dismiss these claims, the Court does not address those claims in this Order.

the SJSO's customs and policies. Sheriff's Motion at 4, 9. In response, Lawshe argues that he has sufficiently alleged that his constitutional rights were violated and that these violations were the direct result of the SJSO's customs and policies. Response to Sheriff's Motion at 3, 12. As to Dr. Dully, she argues that the claim brought against her should be dismissed because she is immune from suit under the Eleventh Amendment, Dr. Dully's Motion at 3, while Lawshe contends that this claim is not barred by sovereign immunity, Response to Dr. Dully's Motion at 5. For the reasons discussed below, Sheriff Hardwick's Motion is due to be granted and Dr. Dully's Motion is due to be denied.

### A.   Sheriff Hardwick's Motion

In Counts II, IV, and VI, Lawshe brings claims against Sheriff Hardwick, in his official capacity, for (1) unreasonable search under 42 U.S.C. § 1983, (2) unreasonable arrest under 42 U.S.C. § 1983, and (3) a violation of the First Amendment under 42 U.S.C. § 1983. See Second Amended Complaint at 27, 30, 34. Lawshe bases each of these claims on the actions of Detective Preston. Specifically, Lawshe alleges that Detective Preston (1) lacked probable cause to search his phone, (2) lacked probable cause to arrest him for the knowing possession of CSAM, and (3) wrongfully arrested him for possessing lawful pornography. Id. ¶¶ 135, 161, 188. Lawshe alleges that these actions violated his constitutional rights, and that these violations occurred as a direct result of the customs and policies established by the SJSO. Id. ¶ 14. Assuming for the

purposes of this Order that Lawshe's constitutional rights were violated, for the reasons discussed below, Lawshe fails to state a claim against the SJSO.

The Court begins by noting that "[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents." Vineyard v. County of Murray, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (citation omitted). Therefore, Lawshe's claims against Sheriff Hardwick in his official capacity are municipal liability claims against the SJSO, and as noted above, the claims against the SJSO are effectively claims against the municipality of St. Johns County. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). Indeed, the Supreme Court of the United States has soundly rejected the theory of respondeat superior as a basis for liability in § 1983 actions. See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Instead, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged

constitutional deprivation. See Monell, 436 U.S. at 693–94. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483–84 (1986)). A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell, 392 F.3d at 1289. The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489.

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the [municipality] may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390. However, failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 388–89. Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998); see also Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021). The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." Gold, 151 F.3d at 1351. Indeed, "the need for such training must be plainly obvious to [a municipality's] decisionmakers," such as where there is "evidence of a history of widespread prior abuse." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990); see also Rocker v. City of Ocala, 355 F. App'x

312, 314 (11th Cir. 2009) (per curiam).[6]  Notably, the Supreme Court, in dictum, has left open the possibility that in some instances "a need to train could be 'so obvious,'" that a municipality could be held liable even without a pattern of prior constitutional violations. Gold, 151 F.3d at 1352 (quoting City of Canton, 489 U.S. at 390). As an example, the Supreme Court pointed to the need to train officers in the use of deadly force where the officers are provided firearms. See City of Canton, 489 U.S. at 390 n.10.

Here, Lawshe alleges that the SJSO had three policies or customs that resulted in the violation of his constitutional rights: "(1) a policy or custom to ignore claims of age verification on the internet (2) a policy or custom to employee [sic] unreliable pseudoscientific opinions in probable cause affidavits for CSAM and (3) a policy or practice to omit the label of 'unconfirmed' child pornography from probable cause affidavits." Response to Sheriff's Motion at 13; Second Amended Complaint ¶¶ 70, 93, 112. The Court will discuss each alleged custom or policy in turn.

Age Verification. Lawshe alleges that the SJSO "devised and implemented policies and procedures for the investigation of internet crimes involving possession of child pornography," but that these "policies and

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see also Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

procedures did not require, suggest, or encourage detectives to utilize age verification documentation[.]" Second Amended Complaint ¶¶ 64, 67. Sheriff Hardwick contends that these allegations are insufficient to hold the SJSO liable. <u>See</u> Sheriff Hardwick's Motion at 7.

As explained previously, "[a] policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." <u>Sewell</u>, 117 F.3d at 489. There are generally three theories a plaintiff can rely on to establish that a municipal policy or custom caused a violation of their constitutional rights. <u>See</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 60–62 (2011). First, a plaintiff can establish the existence of an official municipal policy by showing that lawmakers or policymaking officials took direct action. <u>Id.</u> at 61. Second, a plaintiff can establish the existence of an official municipal policy by showing the existence of "practices so persistent and widespread as to practically have the force of law." <u>Id.</u> And finally, inadequate training can rise to the level of an actionable policy when the "failure to train . . . employees in a relevant respect . . . amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" <u>Id.</u> (quoting <u>City of</u> <u>Canton</u>, 489 U.S. at 388). Under any of these theories, Lawshe has failed to plausibly allege that the SJSO had a policy or custom of failing to investigate age verification compliance.

First, Lawshe has failed to plausibly allege that the SJSO had an official policy of directing its detectives not to investigate age verification compliance. To be sure, Lawshe alleges throughout the Second Amended Complaint that this was the SJSO's "policy and/or custom," but fails to provide any factual allegations to support these bare legal conclusions. See Second Amended Complaint ¶¶ 68, 72; Hall v. Smith, 170 F. App'x 105, 107–08 (11th Cir. 2006) ("Vague and conclusory allegations will not support a claim under § 1983."). Indeed, there are no factual allegations in the Second Amended Complaint identifying a policy that has been "officially adopted by the [SJSO]," nor are there any allegations identifying an official policy that was adopted by "an official of such rank [such] that he or she could be said to be acting on behalf of the municipality." Sewell, 117 F.3d at 489. This is unsurprising, considering that a municipality will rarely have an officially-adopted policy that permits a particular constitutional violation. See Grech, 335 F.3d at 1330.

Second, Lawshe has failed to allege that the SJSO had a "persistent and widespread" custom of failing to investigate age verification compliance. Connick, 563 U.S. at 61. Again, Lawshe alleges that this custom was "widespread, known to and approved by the leaders and policymakers of SJSO," but fails to allege any facts to support this conclusion. Second Amended Complaint ¶ 74. Notably, Lawshe has failed to identify a single incident, outside of his own case, where the SJSO failed to investigate age verification

compliance. This proves fatal, as "random acts or isolated incidents are [normally] insufficient to establish a custom or policy." <u>Depew v. City of St. Marys, Georgia</u>, 787 F.2d 1496, 1499 (11th Cir. 1986).

Finally, Lawshe has failed to allege that the SJSO inadequately trained its detectives on the use of age verification compliance. Lawshe alleges that the SJSO "provided training to its [d]etectives in the investigation of crimes involving possession of child pornography," but that this training did not "encourage detectives to utilize age verification documentation[.]" Second Amended Complaint ¶¶ 65, 67. However, Lawshe alleges no incidents, outside of his own, to support the conclusion that specialized training on age verification compliance was necessary. <u>See</u> <u>Derossett v. Ivey</u>, No. 6:20-cv-716ORL37GJK, 2020 WL 4547780, at *4 (M.D. Fla. Aug. 6, 2020) ("[A]llegations of a single incident, without facts supporting notice of a need to train or supervise or an official policy or widespread practice, aren't enough to state a <u>Monell</u> claim.").[7] Thus, Lawshe asserts no well pled factual allegations in the Second Amended Complaint that would allow the Court to infer that the SJSO "knew of a need to train and/or supervise" its detectives on age verification compliance, and that it "made a deliberate choice" to not provide this training. <u>Gold</u>, 151 F.3d at 1350.

---

[7] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

Although Lawshe argues that the need for this training is "plainly obvious," Response to Sheriff's Motion at 17, the Court does not find this case to represent the rare circumstance where "a need to train could be 'so obvious,'" that a municipality could be held liable even without a pattern of prior constitutional violations. Gold, 151 F.3d at 1352 (quoting City of Canton, 489 U.S. at 390).

For these reasons, Lawshe has failed to show that the SJSO had a policy or custom of failing to investigate age verification compliance. Accordingly, to the extent Counts II, IV, and VI are premised on the SJSO having a custom or policy of failing to investigate age verification compliance, the Sheriff's Motion is due to be granted.[8]

Dr. Dully's Medical Opinions. Lawshe alleges that it was the custom or policy of the SJSO to utilize Dr. Dully "to manufacture pseudo-scientific opinions regarding photographic images depicting individuals whose age was indeterminate or difficult to determine by visual inspection." Second Amended Complaint ¶¶ 84, 86. Sheriff Hardwick contends that these allegations are insufficient to hold the SJSO liable. See Sheriff's Motion at 7.

First, Lawshe has failed to allege that the SJSO had an official policy of directing its detectives to utilize the medical opinions of Dr. Dully. Although

---

[8] In his response, Lawshe argues that the SJSO's policy or custom of failing to investigate age verification compliance is facially unconstitutional. See Response to Sheriff's Motion at 13. However, as Lawshe has failed to plausibly allege that this was a policy or custom that the SJSO even had, the Court need not address the constitutionality of this purported policy.

Lawshe alleges that this "was the policy or custom of SJSO," he provides no factual allegations to support this bare legal conclusion. <u>See</u> Second Amended Complaint ¶ 86; <u>Hall</u>, 170 F. App'x at 107–08. Second, Lawshe has failed to allege that the SJSO had a "persistent and widespread" custom of using Dr. Dully's medical opinions. <u>Connick</u>, 563 U.S. at 61. Lawshe alleges that this "practice was widespread . . . and was known to and approved by policymakers," but, again, fails to provide any factual allegations to support this conclusion. Second Amended Complaint ¶ 85. Indeed, Lawshe fails to allege a single incident, outside of his own, where the SJSO used Dr. Dully's opinion. Accordingly, to the extent that Counts II, IV, and VI are premised on the SJSO having a custom or policy of using Dr. Dully's medical opinions, the Sheriff's Motion is due to be granted.[9]

   <u>Probable Cause Affidavits</u>. Lawshe alleges that it "was the policy, procedure and custom of SJSO that detectives not include the description of 'unconfirmed' child pornography in application[s] for search warrants." <u>Id.</u> ¶ 112. Sheriff Hardwick contends that this allegation is insufficient to hold the SJSO liable. <u>See</u> Sheriff's Motion at 7.

---

   [9] In his response, Lawshe also argues that the SJSO's policy or custom of using Dr. Dully's medical opinions is facially unconstitutional. <u>See</u> Response to Sheriff's Motion at 18. However, as Lawshe has failed to plausibly allege that this was a policy or custom that the SJSO even had, the Court need not address the constitutionality of this purported policy.

Lawshe has failed to allege that the SJSO had an official policy of omitting the label "unconfirmed" from probable cause affidavits. As with his other claims, Lawshe does allege that this "was the policy, procedure[,] and custom of SJSO," but similarly fails to provide any factual support for this conclusion. Second Amended Complaint ¶ 112. And again, Lawshe has failed to allege that the SJSO had a "persistent and widespread" custom of omitting the label "unconfirmed" from probable cause affidavits. Connick, 563 U.S. at 61. Although Lawshe alleges that this "practice was widespread and regularly employed," he has failed to allege a single incident, outside of his own, where this has occurred. Second Amended Complaint ¶ 114; Depew, 787 F.2d at 1499. Accordingly, to the extent Counts II, IV, and VI are premised on the SJSO having a custom or policy of omitting the label "unconfirmed" from probable cause affidavits, the Sheriff's Motion is due to be granted.[10]

In sum, Lawshe has failed to plausibly allege that the SJSO had: (1) a policy or custom of failing to investigate age verification compliance, (2) a policy or custom of using Dr. Dully's medical opinions, and (3) a policy or custom of omitting the label of "unconfirmed" child pornography from probable cause

---

[10] In his response, Lawshe argues that the SJSO's policy or custom of omitting the label "unconfirmed" from probable cause affidavits is facially unconstitutional. See Response to Sheriff's Motion at 19. However, as Lawshe has failed to plausibly allege that this was a policy or custom that the SJSO even had, the Court need not address the constitutionality of this purported policy.

affidavits. Thus, because Lawshe has failed to show that the SJSO can be held liable, the Sheriff's Motion is due to be granted.

### B.   Dr. Dully's Motion

In Count VII, Lawshe brings a claim against Dr. Dully, in her individual capacity, for a violation of the Fourteenth Amendment under 42 U.S.C. § 1983. See Second Amended Complaint at 36. Specifically, Lawshe alleges that Dr. Dully violated his right to due process when she opined that the individuals in the images appeared to be minors, despite knowing that there "is no scientifically accepted medical test or methodology to estimate the precise age of a female," and knowing that this opinion would be used in Lawshe's criminal prosecution. Id. ¶¶ 97–98. Dr. Dully moves to dismiss Count VII, arguing that it is barred by Eleventh Amendment sovereign immunity. See Dr. Dully's Motion at 3.

At the outset, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [s]he takes under color of state law." Graham, 473 U.S. at 165. Whereas "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. (quoting Monell, 436 U.S. at 690 n.55). This distinction is critical because "Eleventh Amendment immunity bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the

states' immunity." <u>Nichols v. Alabama State Bar</u>, 815 F.3d 726, 731 (11th Cir. 2016). And this immunity extends to cases where "the State or one of its agencies or departments is named as the defendant[,]" or when a state official is being sued in their official capacity. <u>Papasan v. Allain</u>, 478 U.S. 265, 276 (1986) (quotation omitted).

Here, the parties agree that the University of Florida Child Protection Team is an arm of the state and is immune from suit. <u>See</u> Dr. Dully's Motion at 5; Response to Dr. Dully's Motion at 4 n.2. However, the parties dispute whether Dr. Dully is being sued in her official capacity, <u>see</u> Dr. Dully's Motion at 5, or in her individual capacity, <u>see</u> Response to Dr. Dully's Motion at 3. Specifically, Dr. Dully contends that because she is being sued as the "medical director" of the Child Protection Team, Count VII is actually an official capacity claim. <u>See</u> Dr. Dully's Motion at 5. The Court, however, is not convinced that this is the case. Notably, Lawshe explicitly alleges that he is suing Dr. Dully "in her <u>individual capacity</u>." Response to Dr. Dully's Motion at 3; Second Amended Complaint at 1. Lawshe further clarifies that he is not suing Dr. Dully "<u>because she [has] the title of medical director</u>," but because that "is the title of the job she [has]." Response to Dr. Dully's Motion at 4 n.1. Indeed, Lawshe is suing Dr. Dully "because of her personal acts or omissions." <u>Id.</u> at 3; Second Amended Complaint ¶¶ 213–215. And is seeking to recover "compensatory damages" from Dr. Dully for these actions. Second Amended Complaint at 37. As explained by

the Eleventh Circuit, "[w]hether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffer or from the individual's assets." Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1513 (11th Cir. 1986) (footnote omitted). Therefore, if "the damage award was obviously sought from the state treasury, the suit will be deemed to be one against the officer in an official capacity, and the Eleventh Amendment will . . . preclude such relief." Id. (citing Edelman v. Jordan, 415 U.S. 651, 664–65 (1974)). "If, however, the plaintiff seeks damages from the state officer personally for redress of that officer's particular unconstitutional acts, '[a]n award of damages against . . . [that] official in his personal capacity can be executed only against the official's personal assets.'" Id. (quoting Graham, 473 U.S. at 166). For this reason, "the only way in which [a] plaintiff can recover damages is by suing the officer individually." Id. at 1513 n.5. Based upon the allegations in the Second Amended Complaint, and the representations made by Lawshe, the Court finds that Lawshe is suing Dr. Dully in her individual capacity. As such, the claim in Count VII is not barred by sovereign immunity, and Dr. Dully's Motion is due to be denied.[11]

---

[11] As to Dr. Dully's request for Lawshe to provide a more definite statement, the Court finds that this request is due to be denied as moot.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that Sheriff Hardwick's Motion is due to be granted, while Dr. Dully's Motion is due to be denied. Specifically, the Court will dismiss Counts II, IV, and VI (the § 1983 claims against Sheriff Hardwick). But will not dismiss Count VII (the § 1983 claim against Dr. Dully).

Accordingly, it is

**ORDERED:**

1.  Defendant Sheriff Hardwick's Motion to Dismiss Second Amended Complaint (Doc. 44) is **GRANTED**, and Counts II, IV, and VI of the Second Amended Complaint are **DISMISSED with prejudice**. The Clerk of the Court is **directed** to terminate this Defendant.

2.  Defendant Kathleen Dully's Motion to Dismiss Count VII of Plaintiff's Second Amended Complaint (Doc. 45) is **DENIED**.

3.  Defendant Kathleen Dully shall respond to Plaintiff's Second Amended Complaint on or before **November 13, 2024**.

**DONE AND ORDERED** in Jacksonville, Florida this 29th day of October, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Lc32

Copies to:
Counsel of Record