UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIAM LEE LAWSHE,
an individual,

        Plaintiff,

v.                                    Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

        Defendants.
_____/


**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST KATHLEEN DULLY**


      Plaintiff hereby moves this Court for Partial Summary Judgment, pursuant to Fed. R. Civ. Pro. 56, on the issue of liability under 42 U.S.C. § 1983 against Defendant, Kathleen Dully.

**FACTUAL BACKGROUND**

      Defendant Dully is a board-certified child abuse pediatrician employed with the University of Florida's Child Protection Team (CPT). (*Dully Deposition April 28, 2025* p.6 ln. 9-15, attached as Exhibit A) The CPT is created by and is an arm of the State of Florida. *Fla. Stat. §39.303.* It functions as a body of experts

1

that consult for DCF and law enforcement on suspected cases of child abuse. (*Dully Deposition April 28, 2025* p.6 ln.21 – p.7 ln. 5) They offer opinions or determinations on the likelihood of child abuse, including crimes involving child sexual abuse material. (*Dully Deposition April 28, 2025* p.6 ln.21 – p.7 ln. 5; *Dully Report February 22, 2023*, Exhibit B) Dr. Dully understands that her opinions can have serious legal consequences (*Dully Deposition April 28, 2025* p. 49 ln.17-24) and knows that her opinions may be presented in a court of law. (*Dully Deposition April 28, 2025* p. 49 ln.25 -.p50 ln.19)

Sexual Maturity Rating

Sexual Maturity Rating (SMR) (sometimes referred to as the Tanner Scale) is a clinical assessment designed to help doctors monitor a patient's progress through puberty. (*Dully Deposition April 28, 2025* p.19) It is not designed to estimate chronological age. (*Dully Deposition April 28, 2025* p.21 ln.5-17)

SMR applies Grade levels of 1-5 to both breast development (in females) and pubic hair growth. Grade 1 is pre-pubescent to Grade 5, which is fully developed. Although it should be noted that adult women, depending on certain variables, can appear Grade 4 for their entire life. (*Dully Deposition April 28, 2025* p.35-43)

There is no scientific or medically reliable way to apply SMR to pornographic images published on the internet. There is no factual dispute on this point. Dr. Dully has testified:

> Q.    Do you agree that it is not scientifically

2

reliable to use SMR ratings to determine the actual chronological age of a model depicted in a pornographic image on the internet?

A.    Yes.

(*Dully Deposition, April* P.46 ln.13-18) Dully has known this for years prior to the subject events described in the operative complaint. (*Dully Deposition April 28, 2025* p. 45 ln. 19 – p.46 ln.18)

<u>Meeting with Defendant Det. Preston</u>

On February 22, 2023, in her capacity as a medical doctor with the CPT, Dr. Dully met with Defendant Preston, a detective with SJSO. Preston had contacted Defendant Dully for the purpose of evaluating an image which had been reported in the CyberTip report #153739160 from the National Center for Missing and Exploited Children (NCMEC). (*Dully Report February 22, 2023*, Exhibit B).

During the meeting, Preston presented Dully with one pornographic image on a law enforcement laptop. (*Dully Report February 22, 2023*, Exhibit B). Preston communicated to Dully that the image was reported by NCMEC. *Id.*

<u>Dr. Dully's Report- February 22, 2023</u>

On February 22, 2023, Dully presented Preston with a report. This report was addressed to Det. Preston as a law enforcement officer and made on CPT letterhead. (*Dully Report February 22, 2023*, Exhibit B) Dully's opinions are as follows: "This female child appears younger than 18 years of age. She would have reached this genital appearance of SMR IV at 12-15 years of age. She does not

appear to be shaved as her anterior pubic hair is still present." Dully used only SMR to reach her opinions. (Dully Deposition April 28, 2025 p.61 ln.20 – p.62 ln.21)

<u>Dr. Dully's Second and Third Reports – April 5, 2023</u>

On April 5, 2023, Preston met once again with Dr. Dully to review four additional images.  First, Preston identified two additional photographs from the same photoshoot which was the subject of the CyberTip Report #153739160. These images depicted the same model in different poses. (see *Dully Report #1 April 5*, Exhibit C) These are identified as files 0059 and 0065(1). *Id*. Again, Dr. Dully opined that the model initially depicted in NCMEC CyberTip Report#153739160 was Grade IV and was a minor. *Id*.

At this April 5, 2023 meeting, Det. Preston presented another image of who she believed was the same person depicted in the CyberTipline Report #153739160.  This model was later identified by the name "Melania D." This image is identified as ycbLVVFQ_0.jpg. *Id*. (see *Dully Report #2 April 5*, Exhibit D). Dully opined that this model was SMR I or prepubescent.

Finally, Preston identified one last image which she characterized as CSAM.  This image depicted a model's body from the stomach to the knees, along with a partially exposed vagina.   This image is identified in the report as "Screenshot_20230122_174408_DuckDuckGo.jpg." *Id*.  Again, Dully opined that because there appeared to be no pubic hair development, the model was SMR I,

4

pre-pubescent, and therefore, appeared developmentally less than 9-13.5 years old.  (*see Dully Report #2 April 5, Exhibit D*)

### "Appearance" of SMR

Dully claims that she was not offering an opinion about the chronological age of these two models in her reports. Rather, she claims that she was offering an opinion about the "appearance of age." Dully testifies:

> Q.  Do you use sexual maturity rating to chronologically estimate the age of individuals in digital pornographic photographs?
>
> A.· ·It is not to estimate the age, it's to estimate the appearance of the age, yes.
>
> Q.· ·What does that mean?
>
> A.· ·The appearance of the age is not the same thing as knowing the chronological age. (*Dully Deposition April 28,2025* p.21 ln.5-13)

Dully testifies that this opinion of "appearance" means that if a model does not appear to have pubic hair in a digital photograph, for whatever reason, then that model would be a SMR 1 or pre-pubescent:

> Q.· ·Well, I guess for whatever reason, right, I'm just asking, brunette, red head or whatever[1], if you look at an image and you do not see any pubic hair, that would result in a sexual maturity rating of one in terms of appearance?
>
> A.· ·Yes.

(*Dully Deposition April 28, 2025* p.72 ln.6-11)

---

[1] Dully suggested that Blonde hair could be more difficult to see and may affect the "appearance" of SMR.

5

The folly of this "method" is illustrated by Dully's opinion of the model depicted in image *ycbLVVFQ_0.jpg*. Dully writes in her report dated April 2, 2023, that the individual's:

> *breasts are partially visible and could be SMR IV-V [fully mature], however her genitals are plainly visible with her thighs splayed widely-apart and showing she is SMR I with-respect-to-public hair. This developmental appearance is ≤ 9-13.5 years of age.*

According to Dully, the model has potentially adult breasts, but no pubic hair. Therefore, she is pre-pubescent. (*Dully Deposition April 28, 2025* p.81-84) This is an eye-brow-raising conclusion. (see *Expert Report of Krugman*, Exhibit E)

Remarkably, Dr. Dully believes that this image (*ycbLVVFQ_0.jpg*) depicts ***an older version*** of the Melania D. shown in files 0059 and 0065(1)) but rates her as SMR I or pre-pubescent – as opposed to the SMR IV previously given:

> Q· · ·Do you recognize this model as the same
> model which is the subject of the knees-to-chest and
> 0059 and 0065(1)?
>
> A· · ·I think she is the same model.· She looks
> older to me, but I think she is the same model based
> on appearance.
>
> Q· · ·And the appearance to you is that this is
> an older version of the model, correct?
>
> A· · ·Yes.
>
> Q· · ·All right.· Despite that, when in the
> knees-to-chest 0059 you have this model, we'll call
> her Melania D, as a Grade III or IV sexual maturity
> rating, now, even though you think that she appears
> older, you have the same model as a sexual maturity
> rating of I, prepubescent. Can you please explain that?

6

A· · ·That is based on the view of her pubic hair
being completely absent.

Q· · ·Right.· But you just testified under oath
that looking at her, she appears to be older than
when she was depicted in 0059, correct?

A· · ·I think so, yes.· That is my opinion.

(*Dully Deposition June 18, 2025* p. 70 ln7 – p.71 ln3, attached as Exhibit F) This testimony demonstrates the total lack of any scientific or medical reliability of Dr. Dully's opinions.  Furthermore, it illustrates how her opinions are in no way related to chronological age.  Her opinions are nothing more than – if I cannot see pubic hair – then the model is prepubescent. Her opinions totally ignore the possibility or probability that the model has engaged in grooming that cannot be seen or the image has been digitally altered for cosmetic purposes:

Q.· Now, you know, as a medical doctor that
there can be multiple explanations for a model in an
image not having the appearance of pubic hair,
correct?

A.· ·There can be, yes.

Q.· ·Right. One of those is that the image has just
been digitally altered to remove evidence of pubic
hair, correct?

A.· ·Yes.

Q.· ·One of those would be waxing or
electrolysis or some form of hair removal that did
not leave any visible evidence of hair, correct?

A.· ·Yes.

7

Q.· ·All right.· One of the explanations would be that the model has not reached a certain level of puberty, correct?

A.· ·Yes.

Q. So as a medical doctor, this would be what we call kind of a differential diagnosis, correct? You got -- you got three different things that could explain what you are observing; is that a fair characterization?

A.· ·Potentially, yes.

Q.· ·What makes you think that pubertal development would be more likely than digitally altering the image or some sort form of hair removal that you couldn't see on the picture?

A.· ·I am not saying how likely or unlikely it is, I'm only saying what the appearance is.

Q.· ·So when you're entering these opinions, you're not saying with any degree of reliability that they're correct?

A.· ·It's not chronological age, their appearance.

(*Dully Deposition April 28, 2025* p. 78 ln.25 – p.80 ln.8)

There is no factual dispute that Dully's opinions are not reliable or useful in making a determination of chronological age. Her own testimony establishes this:

Q. If I was someone who was being asked to make a factual determination about whether or not a model depicted in a pornographic image on the internet was a minor; in fact, a minor, would your opinion about the appearance be a reliable opinion for me to base that decision on?

A. No, that's what the investigation is for.

(*Dully Deposition, April 28,2025* p.30 ln.9-19)

<u>Willfully False Information Contained in Dully's Report</u>

These opinions were willfully misleading and false. At the time that Dr. Dully wrote all three reports to Det. Preston, she knew there was no reliable scientific method to determine or estimate the chronological age of a model from a digital photograph.

Dully's opinions were not within a reasonable degree of medical probability. In fact, they were not scientific at all:

> Q.· ·Do you mean that, in part, that your opinions are not enough to establish the actual age of the individuals depicted from a medical standpoint?
>
> A.· ·Right. (Dully 70 13-17)

Again:

> Q. You have not -- in these -- in these three reports that I have that you produced in this case, you have not rendered a reliable medical opinion on the actual age of the individuals depicted in this -- in these images, correct?
>
> A.· ·Correct.

(*Dully Deposition April 28, 2025* p.71 ln.5-10) Put another way, Dully testifies that "What I see on the image does not necessarily give an indication of the actual chronological age that may be discovered during investigations." (*Dully Deposition, April* 28, 2025 p.35 ln 1-4). There is no warning or disclaimer about the lack of reliability or scientific method underlying the "opinions" contained in these reports.

9

<u>Dully's Verbal Warning to Preston Regarding Use of Report</u>

Dully knew there was a lack of medical/scientific reliability regarding her report at the time she produced the report. Dully testifies repeatedly that she informed Preston, during their meetings, that her opinion was not a reliable medical opinion as to the age of the individual depicted:

> Q.· ·So when Detective Preston came to you with these images and she left, you would have told her that you cannot give her any reliable information about the actual age of this individual depicted in this image?
>
> A.· ·Yes. (*Dully Deposition, April 28, 2025 P. 47* ln. 12-17)

Again, in Defendant Dully's continued deposition she confirmed the warning to Preston:

> Q. So I believe you testified in your original deposition you do have some recollection of meeting with Detective Preston; correct?
>
> A· · ·Yes.
>
> Q· · ·All right.· And when you met with her, you explained to her that you could not offer her scientific reliable opinions regarding the actual age of the models depicted in these images, correct?
>
> A· · ·Yes.

(*Dully Deposition June 18, 2025* p. 12 ln.18 – p.13 ln.1) Additionally, Dr. Dully understands that she has the ability to tell law enforcement that she cannot help them medically with offering opinions about SMR or age. (*Dully Deposition April 28, 2025* p.67). But for reasons that can only be explained by a malicious

disregard for the truth or consequences of her actions, Dully still writes three reports containing opinions about the chronological age of the individual's depicted.

Intent to Deceive

Dr. Dully' knew that she could not and was not offering a reliable medical opinion regarding the actual age of the individuals depicted in the subject images. Despite this, she repeatedly describes each model as a "child" or under the age of 18.  Clearly, Dully intended for anyone reading her reports to believe that she was offering a medical opinion about the actual age of the individuals.

Although proof of intent is often a matter of circumstantial evidence.  Dr. Dully offers direct proof that she intended to deceive in her reports:

> Q· · ·Okay.· I want to share again Exhibit 5 -- I
> mean, I am sorry, Exhibit 4 from the original
> deposition, and let me go to the February 22nd.· I am
> going to read a line.· You say, "This female child
> appears younger than the age of 18."
> Is that what you mean when you say
> "appears," that makes it obvious that you are just
> talking about appearance, not her actual age?[2]
>
> A· · ·Yes.
>
> Q· · ·Okay.· April 5th, and I am moving down to
> the third letter in our exhibit, in the second
> paragraph you wrote, "This image shows a female child
> with her black top parted and her underwear down
> around her parted thighs, exposing her genital area
> clearly." You didn't use the word appear in that
> sentence.· Why not?

---

[2] In earlier testimony, Dully claims that the use of the word "appears" in her report makes it obvious that she is talking about something other than chronological age. (*Dully Deposition April 28, 2025,* p. 50)

A· · ·I don't know why not.· Maybe I did or maybe I didn't.· What does it say?· It is very easy to see. She has -- she's prepubertal.

Q· · ·You say, "This image shows a female child with her black top parted and underwear down around her parted thighs, exposing her genital area clearly," but you don't say anything about appearances or appear in that.

A· · ·"She appears to have no pubic hair development in" –

Q· · ·Right.· But did you call her a female child?· Do you see if I read that sentence how a person might interpret that as you saying that this person is a child, an actual child?

A· · ·Well, I hope so, yes, but I don't know that.

Q· · ·Wait, wait, wait, wait.· You hope that someone would interpret this as you -- as you offering the opinion that this was actually a child, like her actual age was under the age of 18?

A· · ·Her age is indeterminant.· But she is well under the age of 18, and that is her appearance.

Q· · ·So are you offering an opinion now on this image that the actual age of the model -- not just the appearance, but the actual age of the model is under the age of 18?

A· · ·No.· Her appearance is under the age of 18 very clearly.

Dully fully understood and intended to communicate that the models were children under the age of 18.  She did this with clear language that could only be

interpreted as a medical opinion of chronological age, specifically that the models were under the age of 18.

<u>Reliance on Dully's Opinion for Criminal Charges</u>

There is no factual dispute that Dr. Dully's opinions were the critical factor in deciding to move forward with the investigation, search warrant and charges. Det. Preston establishes this in her testimony taken in this case:

> Q You believed that she [Dully] had more qualifications
> than you to determine who's -- what the age of an
> individual is on a digital photograph?
>
> A Yes, sir.
>
> Q And was it true that, I mean, that
> expertise -- did you get the understanding that that
> expertise was sort of the reason why, when there was
> disagreement, that you guys would kind of go and defer
> to Dr. Dully?
>
> A What do you mean?
>
> THE WITNESS: Like, her, I guess, opinion was
> kind of like our -- I guess are you saying, like,
> the reason that pushed us further into continuing with the case?
>
> Q Yes.
>
> A Yes, uh-huh.
>
> Q You guys might have disagreed, but you've said
> that you're not really an expert on determining if
> someone is an adult or a minor; correct?
>
> A Yes, sir.
>
> Q But if this doctor, who has specialized
> knowledge, can say whether it was an adult or a minor,
> then -- then you would rely on that?

13

A Yes, sir.

Q Okay. And that's what you did in this case?

A Yes, sir.

(*Preston Deposition April 28, 2025* p.125 ln.6 – p.125 ln.13, attached as Exhibit G) All of the testimony in this case will be that Dully was the deciding factor in the criminal investigation of Mr. Lawshe.

## Undisputed Facts

1.  Dr. Dully produced three separate reports in the investigation of Mr. Lawshe.

2.  She knew that these reports were part of a criminal investigation and may be used in court.

3.  These reports were written on UF Child Protection Team letterhead with all indicia that they were reliable medical opinions, signed by the medical director.

4.  In each of these reports, Dr. Dully offers opinions, in clear plain language, that the individuals depicted were children, under the age of 18.

5.  Dr. Dully intended and hoped that anyone reading these reports would understand that she, as medical director of the Child Protection Team, was offering an opinion about the actual chronological age of the individuals depicted.

14

6. At the time these reports were produced, Dr. Dully knew that there was no medically reliable method of determining the chronological age of an individual from digital photographs.

7. She knew that these opinions were not probative of the actual chronological age of the individuals depicted or helpful to a finder of fact trying to determine the actual age of the individuals depicted.

8. Det. Preston relied on these opinions to make the probable cause determination for a search and arrest.

9. These opinions were quoted in both Affidavits in support of the search warrants in this case.

Dr. Dully has confessed to fabricating false and misleading evidence in a criminal investigation. And there is no dispute that it was the major contributing factor in charges being brought against Mr. Lawshe.

## MEMORANDUM OF LAW

### Standard for Summary Judgment

In seeking summary judgement on any issue, the moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether

15

a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011).

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citations omitted). As such, "speculation [is] insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015)

<u>Fabrication of Evidence</u>

In the Eleventh Circuit, a fabrication-of-evidence claim is really just a species of malicious prosecution. *Watkins v. Session*, No. 19-60810, 2021 U.S. Dist. LEXIS 31032, 2021 WL 663762, at \*10 & n.6 (S.D. Fla. Feb. 19, 2021) Put differently, in this Circuit, the right a fabrication-of-evidence claim vindicates is

16

the right not to be prosecuted with fabricated evidence. *See, e.g.*, *Kingsland*, 382 F.2d at 1234 ("Kingsland also asserts a § 1983 claim for malicious prosecution based on the defendants' alleged fabrication of evidence against her.) see also *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) ("Williams's malicious prosecution claim against Baaske is based upon Baaske's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and [*27] misleading evidence."). *accord* Ashley v. City of New York, 992 F.3d 128, 2021 WL 1149115, at *1 n.1 (2d Cir. 2021) ("[A] claim for fabricated evidence does not require that a plaintiff have been subjected to trial; it is enough that the fabrication results in a deprivation of the plaintiff's liberty."); [*16] Mills v. Barnard, 869 F.3d 473, 484 (6th Cir. 2017) ("The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" (citation omitted)); Black v. Montgomery County, 835 F.3d 358, 371 (3d Cir. 2016) ("[W]e hold that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged.")" Foulke v. Morgan, 2021 U.S. Dist. LEXIS 270319, *15-16.

When forensic experts, working as state employees, fabricate evidence used by law enforcement to bring charges, there is a violation of due process. The case

17

of *Aguirre-Jarquin v. Hemmert* is instructive. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, \*21 (Fla M.D. 2023)  In that case, the District Court was presented with allegations that an FDLE forensic fingerprint expert had fabricated a false match with the plaintiff in an underlying criminal investigation and prosecution.

In denying summary judgment for the defendant, the court writes that drawing all "inferences from this evidence in the light most favorable to Aguirre, reasonable jurors could conclude that Birks [the fingerprint expert] intentionally sent the print in Aguirre's case to McQuay for an unquestioned verification—indicating Birks knew the match was false or harbored serious doubts about the veracity of her findings." *Id.*  Where a state actor fabricates false or misleading evidence intentionally or with serious doubts about its veracity, and that evidence is used to bring about a deprivation of liberty, they have violated the due process clause.

### Qualified Immunity

Government officials sued for violating constitutional rights under § 1983 may invoke qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The inquiry has two steps: first, the government official must show she was engaged in a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Second, the plaintiff must show: (1) the official violated his constitutional right; and (2) the right was clearly established at the time of the violation. *Id*. To be

"clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). *Aguirre-Jarquin v. Hemmert*, 2023 U.S. Dist. LEXIS 46013, *21 (Fla. M.D. 2023)

It has long been clearly established that fabricating incriminating evidence violates the right to due process. Aguirre-Jarquin v. Hemmert, 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023) citing *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) ("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights.")

**ARGUMENT**

Here, unlike the facts in *Aquirre-Jarquin*, Dully does not deny the lack of scientific reliability in her reports.   Under oath, she states plainly that they are not scientific or medically reliable opinions about the age of the models in question. Moreover, she admits that they would not be useful to a finder of fact in determining whether the models in question were in fact under the age of 18.

Despite this knowledge, she clearly and unequivocally labels the models as children and below the age of eighteen in her written report to law enforcement. When confronted in her deposition with the risk that readers may interpret these reports as an opinion on chronological age, Dully unabashedly acknowledges her intent and hope that they would.

Dr. Dully has disclosed no expert which may rehabilitate her testimony or positions in this case. Therefore, her testimony on the reliability of her opinions is the only defense she can present. Taking all her testimony in the light most favorable to her, she cannot prevail and there is no material factual dispute for a jury to decide.  Plaintiff is entitled to Partial Summary Judgment on the issue of liability.

Dated: August 12, 2025

**LAW OFFICES OF NOONEY,
ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff

20