# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

      Plaintiff,

v.                              Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

      Defendants.

_____/

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT PRESTON

Plaintiff hereby moves this Court for Partial Summary Judgment, pursuant to Fed. R. Civ. Pro. 56, on the issue of liability under 42 U.S.C. § 1983 against Defendant, Mikayla Preston.

## FACTUAL BACKGROUND

On February 20, 2023, the Internet Crimes Against Children (ICAC) taskforce of St. Johns County Sherriff's Office received the CyberTipline Report #153739160 from the National Center for Missing and Exploited Children (NCMEC). (*see Affidavit for Search Warrant February 28, 2023*, Exhibit A) The CyberTipline Report, which was originated by the electronic service provider, Verizon and their cloud service provider Synchronoss, identified that a subscriber by the name of William Lawshe was in possession of a single image, described by

1

the provider as the "lascivious exhibition" of a "prepubescent minor." (see *CyberTipline Report #153739160*, Exhibit B). NCMEC characterized the content in the CyberTip as "CP-unconfirmed."[1][2]

Assignment for Investigation

The supervisor of the ICAC division, Sergent Eugine Tolbert, who initially evaluated the report, immediately recognized the customer identified as a law enforcement officer employed with Florida Fish and Wildlife Commission.

SJSO investigators cannot rely solely on NCMEC Cybertip Reports to establish probable cause[3]. (*Tolbert Deposition* p.36 ln.7-15, attached as Exhibit C) (*Greene Deposition* p.59 ln.3-9, attached as Exhibit D) An investigation is required to establish whether the content is child pornography. *Id.* Therefore, Det. Tolbert assigned the image to Defendant Det. Mikayla Preston for investigation. (*Tolbert Deposition* p.7 ln. 13-15) At that time, he informed Det. Preston that Mr. Lawshe was a law enforcement officer. (*Tolbert Deposition* p.29 ln. 22 – p30 ln.3)

At the time of the assignment, Det. Preston had been an ICAC detective for only a "couple of months." (*Preston Deposition, March 13th 2025*, p.88 ln.2 – P.89 ln.1, Exhibit F).  She had not completed ICAC training (*Id.*) and had no

---

[1] Unconfirmed "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted." (*NCMEC Corp. Rep. Deposition* p. 22 ln.18-24, Exhibit E)

[2] Plaintiff does not dispute that he possessed pornographic images. Mr. Lawshe has testified that he had struggled with low libido and erectile dysfunction for years and had been medically treating for this condition.  He was open with his wife about this use of pornography.

[3] Somewhere around 50 percent of CyberTips are not actionable by looking at the image. (*Tolbert Deposition* p.35 ln.7-19)

specialized training in distinguishing images of minor children from those of adults. (*Preston Deposition, March 13th 2025*, P.88 ln2 – P.89 ln.1)

<u>The Image</u>

Det. Preston admits that some people, including other detectives, could have interpreted the individual depicted in the subject image as at least 18 years old. (*Preston Deposition, March 13th 2025*, P.93, ln. 6-23) She also agrees that those people would not be "wrong" in that opinion. *Id.*[4] Furthermore, the model in the image was not portrayed as or pretending to be a minor. (*Preston Deposition, March 13th 2025*, P.62, ln.7-25) However, upon viewing the image attached to the CyberTipline Report, Det. Preston's subjective opinion was that the model displayed in the image was under the age of 18. (*Preston Deposition, November 2023* p.172 ln.14-19)

Det. Preston testifies that although she and Det. Tolbert[5] felt the model was "CSAM" (*Preston Deposition, March 13th 2025*, P.96, ln.12-17), there was disagreement in the department about how to interpret the image. (*Preston*

---

[4]
Q Do you agree that some people could have looked at this model and said, oh, she's 18?
A That could be.
Q Some people could say that; right?
A Yeah.
Q Detective Greene could come to that conclusion?
A Yes.
Q You -- you wouldn't testify under oath that Dr. Greene -- I mean that Detective Greene is wrong in his opinion that this person could have been 18 years old?
A No.

[5] Det. Tolbert has no training or expertise in the determination of whether a particular model is a minor or an adult. However, his testimony under oath was that if someone produced identification that showed the model was 18, he would also accept that. (*Tolbert Deposition* P. 17 Ln. 8-21)

*Deposition, March 13th 2025*, P. 101, ln.5-16) Another, unidentified detective thought that the model was "age difficult." (*Preston Deposition, March 13th, 2025*, P.96, ln.17-19; P.169, ln. 2-17). "Age difficult" is a term used to describe an individual who may appear to be an adult. (*Preston Deposition, March 13th, 2025*, P.57, ln.25 – P.58, ln.3; p.181, ln.1-13) Although Det. Preston cannot recall who, among her colleagues, questioned whether the model was a minor, SJSO Det. Kevin Greene believed the model was age difficult and that a reasonable person could believe the model to be an adult or a minor. [6] (*Greene Deposition* p.65 ln. 7-13)

<u>Origin of Image</u>

When reviewing the subject image, Det. Preston observed a watermark of the website, metart.com on the image.  Preston acknowledges that the water mark could have been a sign of ownership or a notification of who to contact if there were questions about the image.  (*Preston Deposition, March 13th 2025*, P.30, ln. 3-24)

Based on the watermark, Preston had reason to believe that this image was published on a public website. Virtually all models published on public pornographic websites are represented to the public as being adults. (*Preston Deposition, March 13th, 2025*, P. 67, ln 23 – P.68, ln.1) Likewise, Det. Eugine Tolbert, Preston's supervisor at the time of this investigation, testifies that the fact that a model is being represented to the public or a potential suspect as a

_____

[6] Det. Greene is a former ICAC investigator and was the forensic detective working on this case with Det. Preston.

verified adult is an important factor in reaching a probable cause decision. (*Tolbert Deposition,* P.26 Ln. 1-12). Her current supervisor, Det. Dennis Camden, also acknowledges that public websites almost always portray models as adults to the consumer.  (*Camden Deposition* p. 23 ln.7-15, attached as Exhibit G)

<u>No Evidence to Support Material Element of the Crime</u>

A conviction for the crime of possession of child pornography requires the State to prove beyond a reasonable doubt that the defendant knowingly possess  a photograph or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child. § 827.071(5), Fla. Stat.  *Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020)

Det. Preston had no evidence to support a reasonable belief that Mr. Lawshe knew or believed that the image (CyberTipline Report#153739160) depicted a minor.  In fact, she testifies that any guess as to his knowledge or opinion of the model's age would require her to "speculate," something she was unwilling to do:

> Q All right. What I'm saying is what evidence did you have that led you to believe that Mr. Lawshe thought that this was a minor?
>
> A So I can't speak on his opinion because I'm not him. So I can't say that yes, he for sure thought that that was an adult or he for sure thought that that was something else. Like, I can't speak on somebody else's opinion because I'm not them.
>
> Q Right.
>
> A So I don't want to speculate.

(*Preston Deposition, March 13th, 2025*, P.172, ln. 20 – P.174, ln. 9)

5

As the testimony leading up to this exchange shows, Det. Preston acknowledges that some of her colleagues believed that that image could have depicted an adult:

> Q. But you agree that someone else in the sheriff's department expressed concern that it might look like an adult; correct?
>
> A. Age-difficult but yes.
>
> Q Age-difficult but that means that it may be an adult; correct?
>
> A. And it may be a child. So age-difficult, like we said, it's -- it could be a child, or it could potentially be an adult. That's why it's age-difficult. We don't know what age range it is.

(*Preston Deposition March 13, 2025*, p. 172 ln 20 - p.173 ln.9)

<u>Unreasonable Investigation</u>

Despite all of this, Preston never went to the website watermarked on the subject image (metart.com). (*Preston Deposition, March 13th 2025*, P.55, ln. 3-14) She has no explanation for this omission in her investigation. (*Preston Deposition, March 13th, 2025*, P.67, ln. 4-9; P.185, ln.25 – P.186, ln.13) When asked why she did not go to the website to further her investigation, Det. Preston simply replies, "I don't know." *Id.*

In other investigations of NCMEC CyberTips, Preston has visited pornographic websites as part of her investigation. (*Preston Deposition, March 13th 2025*, P. 66, ln. 18 – P.67, ln. 9; P.145, ln. 1-7) Furthermore, Preston admits that she had the ability to go the website in this case and could have easily verified that the subject model was on the website. (*Preston Deposition, March*

6

*13th, 2025,* P.68, ln.21 – P.69, ln. 1) Preston further admits that she was aware that federal age verification law requires producers and publishers of child pornography to maintain age documentation and that websites are supposed to have records custodians to maintain that documentation.  (*Preston Deposition, March 13th, 2025,* P.141 ln.15-21)

SJSO officers have testified that a reasonable investigation of possession of CSAM, under these circumstances, would include visiting the website identified on the images themselves. (*Greene Deposition, December 17th, 2024,* P.46, ln. 13-19; *Camden Deposition* p40 ln. 20-24) ICAC investigators are trained to attempt to identify suspected victims of child sexual abuse. (*Tolbert Deposition, December 17th,* 2024, p.46, ln. 5-8) and every effort should be made to identify the victim in these cases. (*Greene Deposition* p. 61 ln. 15-24)

When asked if Preston's failure to attempt to identify the alleged victims was a violation of her oath as a SJSO detective, Tolbert described her conduct as "sloppy police work." (*Tolbert Deposition, December 17th,* 2024, P.46, ln. 9-16). Her colleague, Det. Greene expressed regret over the investigation and admitted:

> *"I think they should have taken more time. Honestly, I think they have probably rushed a little bit and, you know, taken more time and -- and gone through things a little longer."*
> *(Greene P. 14 Ln. 2-13)*

Under oath, Det. Preston refused to take a position on whether it was reasonable or not to investigate the image on met-art.com.[7] (*Preston Deposition, March 13th, 2025,* P.185 ln. 25 – P.186 ln.13)

---

[7] "I wouldn't say that it's unreasonable, and I wouldn't say that it's reasonable"

<u>Exculpatory Information Readily Available</u>

Only after Mr. Lawshe was arrested[8], and his criminal defense team met with Det. Greene, did someone from SJSO attempt to locate the model(s) on the internet.[9] (*Greene Deposition*, December 17th, 2024, p.33 ln.12 - p.35 ln.11) It took Det. Greene approximately 20-30 minutes to locate both models on two or three websites. All of the information needed to locate the models on the internet was available and included on the images, themselves.  Each of the websites described the subject model as a verified adult and purported to comply with federal age verification laws.  *Id.*

After the meeting with Det. Greene, Mr. Lawshe's criminal defense team located the contact information of the website's records' custodian (published on the website) and promptly received records with documentation of the models' age. The website's records custodian provided a statement that the models were adults at the time of the photographs. In the statement, the records custodian states that it is the policy of metart.com to obtain age verification documents at the time any content is obtained. (*Age Verification Documents,* Exhibit H) He also provided redacted copies of photographs of the models holding passports. (*Age Verification Documents*, Exhibit H)

Probable cause would not have existed for a search warrant or an arrest had SJSO been in possession of the age verification documentation from the

---

[8] As detailed later, Mr. Lawshe was ultimately charged with possession of two images of the Cybertip model (later identified as Melania D.) taken during the same photo shoot and one image of another model (Sanija a/k/a Kacey Lane), which was not the subject of any NCMEC report.

[9] Due to the alleged nature of the images, Mr. Lawshe's criminal defense team could not possess the subject images. Therefore, they could only view and search the images at SJSO facilities with SJSO staff.

records custodian. (*Tolbert Deposition* p. 53 ln.22 – p.54 ln. 13) Preston acknowledges that the age verification documents "obviously would have changed the entirety of the investigation." (*Preston Deposition, March 13th 2025*, P.154, ln. 12-20)

This age verification information was readily available, prior to the probable cause determination. (*Tolbert Deposition* p.54 ln. 14-24 and *Greene Deposition* p. 41 ln. 6-11) Even Det. Preston admits that she had all of the information that she needed readily available in order to reach out to met-art.com's record custodian to request age verification information prior to making a probable cause decision. (*Preston Deposition, March 13th, 2025* p.147 ln.12-18)

### Child Protection Team Investigation

Rather than make any attempt to identify the alleged "child" depicted in the CyberTipline Report #153739160, at the suggestion of her supervisor, Detective Preston took the image to Dr. Kathleen Dully, a pediatrician employed with the UF Child Protection Team (CPT). This was the custom when there was disagreement among detectives about the age of a subject model. (*Preston Deposition March 13, 2025*, p.96 ln.7-27; *Greene Deposition* p.43 ln.2 – p.44 ln.4)

Preston met with Dully on Feb 22, 2023. Preston does not recall any of the contents of their conversation or discussion. (Preston Deposition March 13, 2025, p. 102 ln.1-23; p.114; p.276 ln. 8) Other than knowing that Dr. Dully was a medical doctor, Preston knew almost nothing about Dr. Dully's qualifications,

9

methods or reliability in estimating the chronological age of a model from review of digital images prior to the meeting. (*Preston Deposition, March 13, 2025* see generally p.101-106) She does not understand what a Sexual Maturity Rating (SMR) is or how it relates to the opinions of Dr. Dully. (*Preston Deposition, March 13, 2025* see generally p.116; p.206) She does not think that Dr. Dully is an expert on grooming of pubic hair or determining whether a model is groomed from a digital image. (*Deposition of Preston, March 13, 2025* P.119, ln 1-11; P.120, ln.22 – P.121, ln.18) Finally, Preston admits that digital images are often modified or edited for aesthetic reasons, and she does not know whether the subject images were edited or modified. (*Preston Deposition, March 13, 2025* p.77-78*)*

Dr. Dully's Report

On February 22, 2023, Dully presented Preston with a Report and her opinion on the age of the model depicted in image attached to the CyberTipline Report #153739160. (*Dully Reports*, Exhibit I) Dully's opinions are as follows: "This female child appears younger than 18 years of age. She would have reached this genital appearance of SMR IV at 12-15 years of age. She does not appear to be shaved as her anterior pubic hair is still present."

Willfully False Information Contained in Dully's Report

These opinions were willfully misleading and false. At the time that Dr. Dully wrote this letter, she knew there was no reliable scientific method to determine or estimate the chronological age of a model from a digital

photograph.  Dully's opinions were not within a reasonable degree of medical probability. In fact, they were not scientific at all:

> Q.    Do you agree that it is not scientifically reliable to use SMR ratings to determine the actual chronological age of a model depicted in a pornographic image on the internet?
>
> A.    Yes.

(*Dully Deposition, April 28, 2025 p.*46 ln.13-18, attached as Exhibit J) Again, asked a different way:

> Q     If I was someone who was being asked to make a factual determination about whether or not a model depicted in a pornographic image on the internet was a minor; in fact, a minor, would your opinion about the appearance be a reliable opinion for me to base that decision on?
>
> A.    No, that's what the investigation is for.

(*Dully Deposition, April 28,2025* p.30 ln.9-19) Put another way Dully testifies that "What I see on the image does not necessarily give an indication of the actual chronological age that may be discovered during investigations." (*Dully Deposition, April* 28, 2025 p.35 ln 1-4).

There is no warning or disclaimer about the lack of reliability or scientific method underlying this "opinion" contained in these reports.

<u>Dully's Verbal Warning to Preston Regarding Use of Report</u>

Dr. Dully knew there was a lack of medical/scientific reliability regarding her report, at the time she produced the report. In fact, Dully testifies repeatedly that she informed Preston that her opinions were not reliable medical opinions as to the age of the individual depicted:

11

> Q.· ·So when Detective Preston came to you with these images and she left, you would have told her that you cannot give her any reliable information about the actual age of this individual depicted in this image?
>
> A.· ·Yes. (*Dully Deposition, April 28, 2025 P. 47* ln. 12-17)

Again, in Defendant Dully's continued deposition she confirmed the warning to Preston:

> Q. So I believe you testified in your original deposition you do have some recollection of meeting with Detective Preston; correct?
>
> A· · ·Yes.
>
> Q· · ·All right.· And when you met with her, you explained to her that you could not offer her scientific reliable opinions regarding the actual age of the models depicted in these images, correct?
>
> A· · ·Yes.

(*Dully Deposition June 18, 2025* p. 12 ln.18 – p.13 ln.1, attached as Exhibit K)

<u>First Affidavit for Search Warrant</u>

On February 28th, 2023, Preston swore out an affidavit in support of a search warrant. To establish probable cause, the affidavit cites three sources of information: (1) The NCMEC CyberTipline Report (2) Dr. Dully's report and (3) Preston's personal knowledge of the website met-art.com. (*Affidavit for Search Warrant, February 28, 2023*, Exhibit A)[10] Specifically, Preston swore that "There is a watermark of <u>www.met-art.com</u> on the offending image. This site has a known history of displaying CSAM images of teenage girls and CSAM content

---

[10] Preston did not include her subjective opinion of the age of the individual depicted in the CyberTip.

from this site has been encountered by other ICAC investigators in past investigations." (*Affidavit for Search Warrant*, February 28, 2023, Exhibit A)

In this Affidavit Preston made material false and/or misleading statements. Furthermore, she omitting material exculpatory evidence. She did not attach or include the subject image. (*Affidavit for Search Warrant, February 28, 2023*, Exhibit A)

1. Preston omits from her affidavit that NCMEC specifically categorized the image as "unconfirmed" child pornography. This categorization meant that NCMEC determined that the image depicted a model of indeterminant age. (NCMEC Corp. Rep. Deposition p. 22 ln.18-24)

2. Preston omits that there was a material disagreement among detectives about whether the image depicted an adult.

3. Preston knew that Dr. Dully's opinion was not a reliable medical opinion. Despite that, Preston included the report in the Affidavit as though contained reliable opinions.

4. Preston has no personal knowledge about whether or not there is a known history of illegal content on this site.  When questioned, she states that she got the information from a "google" search.  (*Preston Deposition November 21, 2023* p.30 ln.3-19, attached as Exhibit L) She cannot recount any details of the source or the accuracy of this statement. In fact, she freely acknowledges, specifically regarding the history of metart.com, "you can't believe everything you read on google." *Id*.  Not even Preston believed the statement made about metart.com was reliable. *Id*.

5. Preston did not know any ICAC investigators who had encountered this website in past investigations.  Under oath, Preston identifies Det. Greene as the ICAC investigator she refers to. (*Preston Deposition March 13, 2025* p.51) However, Det. Greene denies any part in a past investigation of this site and any personal reliable knowledge of whether illegal content has ever been published on met-art.com.  (*Greene Deposition* p.52-53; p.80 ln24 – p.81 ln.4; p.87 ln.22 – p.88 ln.11)

Based on these false statements and omissions of exculpatory evidence, the judge executed the Search Warrant.

Compliance with Search Warrant

Based on the Affidavit of Preston, the search warrant was issued to the service provider. On March 3rd, 2023, SJSO received compliance from the ESP, containing all digital information stored in Mr. Lawshe's cell phone cloud storage.

From review of the contents, Preston identified two additional photographs from the same photoshoot which was the subject of the CyberTipline Report #153739160. These images depicted the same model in different poses. (see *Dully Reports*, Exhibit I) These are identified as files 0059 and 0065(1). *Id.*  In addition to these images, Det. Preston identified another image of who she believed was the same person depicted in the CyberTipline Report #153739160.  (*Preston Deposition March 13, 2023* p.234 ln.17 – p.235 ln.7) This image is identified as ycbLVVFQ_0.jpg. *Id.* This model was later identified by the name "Melania D." (see Age Verification Documents, Exhibit H)

Finally, Preston identified an additional image which she characterized as CSAM.  This image depicted a model's body from the knees to the stomach, along with a partially exposed vagina.   This image is "Screenshot_20230122_174408 _DuckDuckGo.jpg." *Id.*  Preston cannot articulate what caused her to believe that this model was a minor.  (*Preston Deposition March 13, 2023* p. 158-159) The image is cut off and does not show the model's face or breasts. (*Preston Deposition March 13, 2023* p.157 ln. 20 – p.158 ln.5) This image contained a website, QR code and identified the model as "Sanija." (Preston Deposition

March 13, 2025 p. 224-229, 244-245) This model also went by the stage name of Kacey Lane. (see *Age Verification Documents*, Exhibit H)

Preston brought these additional images to Dr. Dully for evaluation. Again, Dr. Dully opined that the model initially depicted in NCMEC CyberTipline Report#153739160 was Grade IV and was a minor.  As to the model Sanija/Kacey Lane, Dully opinined that because there appeared to be no pubic hair development, the model was SMR I, pre-pubescent, and therefore appeared developmentally less than 9-13.5 years old.  (*see Dully's Reports*, Exhibit I)

After taking these images to Dr. Dully for review, Preston sought a search warrant for Mr. Lawshe's home. (see *Affidavit for Search Warrant April 12, 2023,* Exhibit M) This was granted on the same knowingly false evidence of probable cause as presented before, including Preston's alleged knowledge of the website and Dr. Dully's reports *Id*.  Upon execution of the warrant, no additional images of CSAM were identified by SJSO.

Thereafter, Preston determined that there was probable cause to arrest Mr. Lawshe and effectuated that arrest. (*Arrest Report*, Exhibit N) He was charged with images 0059, 0065(1) and screenshot_20230122_174408_DuckDuckGo.jpg. (*Charging Document*, Exhibit O)

After Mr. Lawshe's criminal defense team presented the age verification documents of the two models to the Assistant State Attorney, all charges were dropped. (*Emails to ASA and Nolle Proscequi*, Exhibit P)

15

## MEMORANDUM OF LAW

<u>Standard for Summary Judgment</u>

In seeking summary judgement on any issue, the moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011).

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) If the evidence produced by the nonmoving party is merely colorable or is not significantly probative summary judgment must be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) As such, "speculation [is] insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015)

16

## Requirement of Probable Cause

An arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) The requirement of probable cause applies to applications for a search warrant. *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)

Probable cause exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing a criminal offense. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). However, mere speculation is insufficient to establish probable cause. *Whitaker v. Estelle*, 509 F.2d 194, 196 (5th Cir. 1975).

## False Statements

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant violates the Fourth Amendment if the affidavit supporting the warrant contains  statements that are deliberately false or made with reckless disregard for the truth and such statements are necessary to a finding of probable cause. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). The rule in *Franks* also extends to omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit" if the inclusion of such omissions

17

"would have prevented a finding of probable cause." *Id.* at 1326-27 "It is clearly established that officers cannot knowingly make false statements in a warrant application where those misstatements are necessary to probable cause. ..." *Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021) For purposes of Qualified immunity, it is clearly established that intentionally or recklessly omitting material information from a warrant affidavit violates the Fourth Amendment. *See* Paez, 915 F.3d at 1287 (considering it clearly established that a warrant affiant cannot omit known material facts) *Butler v. Smith*, 85 F.4th 1102, 1112. (11th Cir. 2023)

<u>Lack of an Essential Element</u>

"Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends on the elements of the crime." *Crosby v. Monroe County,* 394 F.3d 1328, 1333(11th Cir. 2004).  While an officer needn't prove every element of the charged crime, knowledge that an element isn't met—or is exceedingly unlikely to be met—will preclude a finding of probable cause." *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023) citing *Holmes v. Kucynda*, 321 F.3d 1069, 1080 (11th Cir. 2003)

<u>Requirements for a Reasonable Investigation</u>

In establishing probable cause, an arresting officer is required to conduct a reasonable investigation. <u>Rankin v. Evans, 133 F.3d 1425</u> (1998) quoting *Tillman,* 886 F.2d at 321 and *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a "cautious man' that further investigation is justified before instituting a proceeding, liability may

18

attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information."). An officer, however, need not take "every conceivable step ... at whatever cost, to eliminate the possibility of convicting an innocent person." *Tillman,* 886 F.2d at 321; *see also State v. Riehl,* 504 So. 2d 798, 800 (Fla. 2d DCA 1987)

In evaluating probable cause, an officer may not 'unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her or electing not to obtain easily discoverable facts' that might tend to exculpate a suspect." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (alterations in original) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004)). In other words, a detective "may not close his or her eyes to facts that would help clarify the circumstances of probable cause," nor are they "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami, 382 F.3d 1220, 1228* (11th Cir 2004) *cf. Hernandez v. United States*, 939 F.3d 191, 208 (2d Cir. 2019) see also *Alcocer v. Mills*, 800 Fed. Appx. 860, 866 (11th Cir. 2020) *also Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) ("Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest . . . must charge him with possession of all the information *reasonably discoverable* by an officer acting reasonably under the circumstances." (emphasis added)

19

<u>Qualified Immunity</u>

Nevertheless, officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). First, the plaintiff must show both that the defendant's conduct violated a statutory or constitutional right and the right was clearly established.  Here, the requirement of probable cause, an objectively reasonable investigation and the prohibition against false statements to judicial authorities were clearly established. *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004)

Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) However, a qualified immunity analysis must charge the officer with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances. *Kingsland v. City of Miami*, 382 F.3d 1220, 1222 citing  *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)

<u>ARGUMENT</u>

At the time of the subject events, it was clearly established that an officer may not unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her' or electing not to obtain easily discoverable facts' that might tend to exculpate a suspect. *See generally Rankin* and *Kingsland*. In this matter, there is no factual dispute that, prior to any probable cause determination, Det. Preston knew:

20

1. The image could be reasonably interpreted as depicting an adult. (*Preston Deposition, March 13th 2025*, P.93, ln. 6-23)

2. The image was watermarked with a public website (*Preston Deposition March 13,2023* p.32; see also *Affidavit for Search Warrant, February 28, 2023*, Exhibit D)

3. Virtually all models published on public pornographic websites are represented to the public as being adults. (*Preston Deposition, March 13th, 2025*, P. 67, ln 23 – P.68, ln.1)

4. Producers and publishers of pornographic websites are required by federal law to maintain age verification evidence which would be exculpatory. (*Preston Deposition, March 13th, 2025,* P.141 ln.15-21)

5. That the website and potential age verification evidence was readily available. (*Preston Deposition, March 13th, 2025* p.147 ln.12-18)

She admits these facts in her sworn testimony.

There is no factual dispute that under the circumstances, a reasonable investigation would have required going to the website to discover the circumstances of the image's publication. This is the testimony of essentially every SJSO officer who has testified.  (*Greene Deposition, December 17th, 2024,* P.46, ln. 13-19; *Camden Deposition* p40 ln. 20-24; *Tolbert Deposition, December 17th*, 2024, p.46, ln. 5-8)

Even Preston does not contest this assertion (*Preston Deposition, March 13th, 2025,* P.185 ln. 25 – P.186 ln.13) and her refusal to take a position on whether she should have sought age verification documentation does not create a material factual dispute. The fact is that Preston has investigated other similar allegations by visiting the relevant websites in those cases.  She has no

explanation of why she did not do the same in this case. (*Preston Deposition, March 13th 2025*, P. 66, ln. 18 – P.67, ln. 9; P.145, ln. 1-7)

There is simply no evidence which would create a material factual dispute about the reasonableness and ease with which Preston could have discovered the exculpatory information.  As shown in email exchanges between Lawshe's criminal counsel and the records custodian, obtaining the documents took minimal effort. (*Age Verification Documents*, Exhibit D) The only evidence is that she inexplicably ignored this known source of information, in the face of obviously ambiguous facts. This is precisely the conduct prohibited by *Rankin*, *Kingsland*, *Sevigny* and their progeny.

Likewise, there is no dispute that had Preston gone to the website and obtained the age verification information, there would not have been probable cause or arguable probable cause. As noted in *Kingsland* and *Sevigny,* the probable cause and arguable probable cause analysis *must charge Preston with the facts that were reasonably discoverable*. Charging Preston with possession of the facts reasonably discoverable, she would have (1) possession of an image depicting an individual that reasonable people could interpret as an adult, (2) published on a website which claims the model is an adult, (3) published on a website which claims compliance with federal age verification laws and, (4) documents provided by a licensed attorney (records custodian) that the models depicted were adults at the time of the photography.  No objectively reasonable and competent law enforcement officer would believe that probable cause exists under those facts.

22

Again, Preston does not contest this fact. Preston acknowledges that the age verification documents "obviously would have changed the entirety of the investigation." (*Preston Deposition, March 13th 2025*, P.154, ln. 12-20)[11]

Despite the lack of an objectively reasonable investigation, Preston never had probable cause to seek a search warrant or make an arrest because there was a complete lack of reasonably trustworthy information to support the search warrant. First, it is established that Dr. Dully's opinions are not medically or scientifically reliable. (*Dully Deposition, April* P.46 ln.13-18)  Dully testifies that she was not even offering an opinion about the chronological age of the models. The undisputed evidence is that Dr. Dully warned Preston that her opinions regarding age were not reliable. (*Dully Deposition June 18, 2025* p. 12 ln.18 – p.13 ln.1) Preston has not disputed this[12] and has testified that she has no recollection of any of the conversations she had with Dully. (*Preston Deposition March 13, 2025*, p. 102 ln.1-23; p.114; p.276 ln. 8)

Furthermore, Preston has admitted that her statement that met-art.com "has a known history of displaying CSAM images of teenage girls" was not reliable.  She has no knowledge of the source of this information, other than

---

[11] Preston complains that the redacted passports and statements of the records custodian do not prove that the models were adults at the time of the photography.  This misses the point. They are evidence that the models were adults at the time of the photography.  Possession of these documents establishes a reasonable basis to believe the models were adults and any reasonably cautious or prudent officer would not believe that there was probable cause if they had possession of this information.

This argument is not predicated on Dr. Dully's opinion in any way. Because the models are at best age-difficult, possession of age verification documentation would have prohibited a finding of probable cause, even if Preston reasonably believed that there was some reliability to Dully's opinions.

[12] Neither Preston nor Dully have disclosed any expert in this matter which would create a factual issue as to the reliability of Dully's opinions.

"google." (Preston Deposition November 21, 2023 p.30 ln.3-19) And freely admits that "you can't believe everything you read on google." *Id*. Inclusion of this information in the affidavit represents knowingly false statements or statements made with a reckless disregard for the truth.

When this evidence is removed, all that is left to consider is (1) a report of "unconfirmed" child pornography and (2) an image which even Preston admits could be reasonably characterized as depicting an adult and (3) contained a watermark of a public website. Preston has admitted that she had no evidence to suggest that Mr. Lawshe knew the images portrayed a minor and acknowledged that it would require speculation to discern how Mr. Lawshe interpreted the images in question. This information would be insufficient to establish probable cause that Mr. Lawshe knowingly possessed a sexually explicit image which he knew to depict a minor. § 827.071(5), Fla. Stat.

Conclusion

The search and arrest in this matter were conducted without probable cause. Taking all the evidence in a light most favorable to Det. Preston and accepting her testimony as true, there is no factual dispute that Det. Preston violated the Plaintiff's constitutional rights.  Because Defendant Preston's conduct violated clearly established rights and no objectively reasonable officer would have believed that probable cause existed under the undisputed facts, Det. Preston is not entitled to qualified immunity for these violations. Therefore, Plaintiff is entitled to judgement as a matter of law on the issues of (1) the

violation of his right to be free of unreasonable search and seizure and (2) that Defendant is not entitled to qualified immunity under 42 U.S.C. § 1983.

Dated: August 12, 2025

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff

25