**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

Case 3:24-cv-00044-MMH-MCR

WILLIAM LEE LAWSHE, an individual,

            Plaintiff,

-vs-

ROBERT HARDWICK, in his official capacity as Sheriff of St. Johns County, MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sheriff's Office, and KATHLEEN DULLY, in her individual capacity as medical director of the UF Child Protection Team,

            Defendants.

_____/

            REMOTE DEPOSITION OF DENNIS CAMDEN

            Taken on Behalf of the Plaintiff

            DATE TAKEN:   Tuesday, December 17, 2024
            TIME:         3:04 p.m. - 3:55 p.m.
            PLACE:        Remotely via Zoom

            Deposition of the witness taken before:

                  Maureen Hall, RPR, FPR

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 2

APPEARANCES:
Counsel for Plaintiff:

　　　　MICHAEL K. ROBERTS, ESQUIRE
　　　　LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI
　　　　1680 Emerson Street
　　　　Jacksonville, Florida 32207
　　　　mroberts@nrhnlaw.com

Counsel for Defendants, Robert Hardwick and Mikayla Preston:

　　　　MATTHEW JOSEPH CARSON, ESQUIRE
　　　　SNIFFEN & SPELLMAN, P.A.
　　　　123 Monroe Street
　　　　Tallahassee, Florida 32301-1509
　　　　mcarson@sniffenlaw.com

Counsel for Defendant, Kathleen Dully:
　　　　AMY K. SHEVLIN, ESQUIRE
　　　　BUCHANAN & BUCHANAN, P.A.
　　　　1900 Southeast 18th Avenue, Suite 300
　　　　Ocala, Florida 34471-8237
　　　　ashevlin@rbtrial.com

Page 3

I N D E X

REMOTE ZOOM DEPOSITION OF DENNIS CAMDEN

DIRECT EXAMINATION BY MR. ROBERTS:　　　　4

Page 4

　　　　　　PROCEEDINGS
Whereupon,
　　　　DENNIS CAMDEN, called as a witness by the Plaintiff, having been first duly sworn, testified as follows:
　　　　THE WITNESS:  I do.
　　　　　　DIRECT EXAMINATION
BY MR. ROBERTS:
　　　Q.　Can you state your name for the record.
　　　A.　Dennis Camden.
　　　Q.　And what do you do for a living?
　　　A.　I am a detective with the St. Johns County Sheriff's Office.
　　　Q.　How long have you been a detective there?
　　　A.　I've been a detective maybe four years.
　　　Q.　And what did you do before that?
　　　A.　Prior to becoming a -- well, I'm currently the corporal in the ICAC unit, which is internet crimes against children.  Prior to becoming the corporal of the ICAC Unit, I was a detective in the ICAC unit, and then prior to that, I worked patrol.
　　　Q.　So how long have you been in the ICAC unit?
　　　A.　Almost four years, I believe, three or four years.
　　　Q.　Can you just tell me a little bit about the

Page 5

training and what goes into being an ICAC detective?
　　　A.　So we are governed through an ICAC Task Force, North Florida ICAC Task Force.  Our headquarters are out of Gainesville, Florida.  We have -- is it quarterly training through them?  We go through training through any type of digital forensic's company, if you're able to do it, anything to another ICAC task force, anything, but it -- it's a lot.
　　　Q.　Is there some sort of certification that you achieve prior to becoming an ICAC detective?
　　　A.　No, sir, not that I know of.
　　　Q.　So is it -- and I just want to understand. Is it that you get sort of transferred to the ICAC team at St. John's County Sheriff's Office, and you become an ICAC detective, and then from there you begin your quarterly or periodic training after that?
　　　A.　Yes, sir.
　　　Q.　Okay.  So I'm here to ask you some questions about the investigation of Mr. William Lawshe.  Do you recall any of that case?
　　　A.　I took no part in the investigation of that case, but I am aware of what you're talking about.
　　　Q.　Okay.  Do you know Detective Preston?
　　　A.　Yes, sir.
　　　Q.　Is she an ICAC detective in your department?

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 6

A. Yes, sir.

Q. Is she your subordinate now?

A. Now, yes.

Q. At the time of this investigation, were you guys colleagues?

A. Yes.

Q. And peers on the chain of command?

A. Yes, sir.

Q. So she would not have reported to you, and you would not have reported to her?

A. Correct.

Q. Did she ever ask you to help her to investigate Mr. Lawshe's case?

A. No, sir. I took no part in this investigation. I was not housed out of this office. I was part of the federal task force housed out of Jacksonville, Florida.

Q. I had your name as being like at least disclosed as maybe going to the house or doing something like that in the search?

A. I did do that. I got a phonecall that asked me to sit on a house. I conducted a sweep, and that was it.

Q. Okay. Did you ever view the images, any of the images related to Mr. Lawshe's case?

Page 7

A. No, sir.

Q. Did you ever form any opinions about whether or not there was probable cause to arrest Mr. Lawshe?

A. No, sir.

Q. Same question, I guess, is, did you ever form any opinion about whether or not there was probable cause to seek a search warrant in Mr. Lawshe's case?

A. No, sir.

Q. Have you ever had an opportunity to discuss this investigation -- understand that you are not a part of it -- with anyone else?

A. No, sir, I did nothing involved in the investigation.

Q. Did you ultimately hear that Mr. Lawshe's case was dropped by the Assistant State Attorney?

A. I understand that there were complications involved in the -- or complications of the case, yes, sir.

Q. Do you have any information as to why, what you call complications, why the case was dropped?

A. No, sir, not -- I had nothing. It had nothing to do with me.

Q. Okay. Do you know anything about a website called metart.com?

A. Yes, sir.

Page 8

Q. What do you know about that?

A. I know -- I couldn't give you dates. Through an open source, you can see that Metart used to be involved in CSAM. They had a photographer that was taking CSAM photographs. The website got under investigation. The photographer got arrested, and the site was down for a while.

Q. All right. Where did you find this information?

A. Google.

Q. When did you Google this information?

A. Metart has images that come and go through multiple investigations. I looked into it when I learned about -- after all this happened.

So Metart has been involved in multiple investigations through CSAM. I Googled it after all this came about.

Q. So at the time that decision for probable cause was made, you did not know anything about metart.com?

A. No.

Q. Did you investigate Metart because of Mr. Lawshe's case?

A. I didn't investigate Metart. I did a Google search.

Page 9

Q. Okay. I mean -- but I mean, did you do the Google search because you heard that it was involved with Mr. Lawshe's case?

A. Yes.

Q. Tell me about that. How did you come to learn that it was involved with Mr. Lawshe's case?

A. I just explained it. I heard Metart was involved, so I Googled it.

Q. Yeah. But I'm asking how did you hear that Metart was involved?

A. I don't know. It's been a while ago. I -- the name came up.

Q. Was anyone with you when you were Googling metart.com?

A. Not that I know of, no, sir.

Q. Was it Detective Preston that told you about metart.com?

A. I couldn't tell you. I don't know.

Q. Do you -- you said it was -- I think you said open source platform. Is that what you said?

A. Open source platform. Meaning, you type in information and get things for it.

Q. Right. Do you recall the source of the information that you're referring to?

A. No, sir. It was just a random Google search.

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 10

Q.   Well, I -- I'm familiar with Google.  Google is --

A.   I just don't remember the link I clicked on for it.  I just started reading stuff.

Q.   All right.  Okay.  It wasn't Google that told you, though.  Like there was some source that had this, right?

A.   Yes.  That's how Google works, yes, sir.

Q.   Right.  You just don't have any recollection of what the source was?

A.   No.

Q.   Do you have any -- do you know if it's a credible source?

A.   I don't think I was that far into it because this wasn't my investigation.

Q.   Right.  I just -- but -- well --

A.   No, I couldn't --

Q.   I understand.

A.   I would assume, based off what I looked up and what led to the stuff with Russia, I can't say if it's credible or not.

Q.   What stuff with Russia are you talking about?

A.   I believe it was Russia where the photographer got arrested.

Q.   Okay.

Page 11

A.   I didn't pay any attention to it.  I just did a Google search.

Q.   All right.  Hold on one second.

A.   Sure.

Q.   Did you communicate any of this information that you gleaned from the Google search to Detective Preston?

A.   Yes, sir.  I told her what I had found.

Q.   And did you tell her something like what you have told me?

A.   I did, yes, sir.

Q.   Okay.  And did you tell her the source of that information or do you recall?

A.   No, sir.

Q.   All right.  No, you don't recall or --

A.   I don't recall.  I don't know if I told her or not.  It was a quick conversation, like, Hey this is what I Googled.  This is what I found.

Q.   Okay.  So based on this Google search, not knowing the source, not knowing the credibility, would you be willing to swear under oath that Metart was involved with a criminal investigation for CSAM?

A.   Would I swear in -- would I be willing to swear under oath that Metart was involved in a criminal investigation?

Page 12

Q.   Regarding CSAM.

A.   I did swear under oath what I read, yes, sir.

Q.   No, that's not the question that I'm asking you.  The question that I'm asking you is could you swear under oath that Metart is a known source of CSAM?

A.   Yes, sir, I think I could, yeah.

Q.   Based on an article that you can't tell me where it came from?

A.   No, not based off that, no.

Q.   What would it be based off --

I don't understand your answer.  Can you explain it?

A.   I'm not able to swear under oath based off a random article, so, no, I can't do that, no, sir.

Q.   Just so we can clear it up, I think we were talking over each other.

So you would not be willing to go under oath and swear that Metart had been the subject of a CSAM investigation or shutdown, anything like that?

A.   So I would be willing to go under oath and state that, yes.  I would not be willing to go under oath simply based off an article, no.  Metart has been involved in multiple -- it has a history of being involved in CSAM cases.

Q.   Okay.  So your information is based on more

Page 13

than your Google search?

A.   Yes, sir.  Yeah.

Q.   Earlier you just said that you had Googled it, and that's where you got the information from.

A.   Oh, yes, it was that -- those -- I don't know where it was, what country it was, that the photographer was involved in it, yes, sir.

Q.   Do you know that metart.com was involved with it?

A.   No, sir.  No.

Q.   Okay.  I mean, I'm not trying to play with you.

A.   I don't even know if I'm explaining it correctly, because I am trying to --

Q.   Yeah, I'm just going to tell you, I have an e-mail from the records custodian, it's a licensed attorney in California, and says that they have never been criminally prosecuted for CSAM.  Do you have any reason to disagree with that?

A.   No, sir.  No.  Thank you.  No.

Q.   Yeah.

A.   Right.

Q.   And you wouldn't go under oath and tell a judge that you knew that they displayed CSAM?

A.   No.  Okay.  I understand what you're saying,

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 14

but no.

Q. Right.

A. Okay. I was going to get to that.

Q. Yeah. So are there other investigations where you have -- strike that, because I think we went through that. I think we've muddled through that.

Do you know if Detective Preston did any other research into metart.com other than what you told me?

A. I don't know.

Q. I assume that you have investigated allegations of possession of child pornography?

A. Yes, sir.

Q. And in investigating those, you are aware that there are federal age verification statutes that require publishers to maintain records by the age of their models, are you not?

You are aware of the federal statute, and I think it's 18 U.S.C. 2257, federal age verification law?

A. No, sir, I'm not aware of that specific statute.

Q. Have you ever been to a pornographic website that has a disclaimer that the models have been verified and it has the federal statute?

Page 15

A. I think I know what you're talking about, yes, sir.

Q. You've been personally to websites where they have that?

A. Yes, sir. I believe so.

Q. And you understand that that is at least purporting that they have a records custodian who is maintaining records on the images that they are publishing?

A. Yes, sir.

Q. Have you ever utilized that statutory mechanism to seek age verification from one of these websites?

MR. CARSON: Object to form.

You can answer, if you can, sir.

MS. SHEVLIN: Join.

THE WITNESS: I haven't used a federal statute to do any investigation that I know of, no, sir.

BY MR. ROBERTS:

Q. Have you ever e-mailed a records custodian for them to provide you with age verification information of a model?

A. I haven't, no, sir.

Q. You're aware that you have the ability to do

Page 16

that, as a detective, though, correct?

A. Yes, sir.

Q. Do you agree that an investigator or detective who is investigating the potential for child sexual abuse material should attempt to identify the alleged victim if it's possible?

A. If they know of it, it's possible, but...

Q. All right. And so if they know where the image is published, would you agree that going to that location of where the image is published may help them identify who that alleged minor is?

A. Based off of what you're saying, if they knew of it, yes, sir.

Q. If they knew where it was published, a detective such as yourself could, if you were trying to identify this model, a place to start would be to go to the website and see if there was any identifying information of that model on the website, correct?

A. Yes, sir.

Q. Also, you understand that not only is it a crime to knowingly possess an image -- a pornographic image of a minor, it's also a crime to publish such an image on the internet, right?

A. Yes, sir.

Q. And so it also would be part of your job as a

Page 17

detective to go to that website to see if you could identify that criminal who is potentially publishing child sexual abuse material?

A. Yes, sir.

Q. So if a detective has information in their possession of the location or potential location of publication, would you agree that a reasonable investigation of that image and that potential victim would include going to the website to determine whether or not the potential victim could be identified or whether or not there was other crimes occurring?

MR. CARSON: Object to form.

You can answer if you can, sir.

THE WITNESS: Okay. Can you restate the question? I'm sorry.

MR. ROBERTS: Maybe Madam Court Reporter can read it back. I'm terrible at re-asking the same thing.

(Thereupon, the requested portion of the record was read back.)

THE WITNESS: Yes, sir.

THE COURT REPORTER: Did you say no, sir, or yes, sir? Sorry.

THE WITNESS: Yes. Sorry. Yeah.

THE COURT REPORTER: Yes, sir. Okay.

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 18

BY MR. ROBERTS:

Q. Okay. Investigating allegations of possession of child pornography, you do, through your work, spend time observing adult pornography; is that correct?

A. Yes.

Q. And through your work, you have become familiar with what is usual and customary on legal public pornography websites?

A. Correct.

Q. There's no other question in your mind that the private possession of adult pornographic material is legal and protected by the First Amendment of the Constitution of the United States?

A. Yeah, if it's --

Q. Yeah.

THE COURT REPORTER: I'm sorry, you said, If it's, and you glitched out on my end. If it?

THE WITNESS: Yes. If it's adults, yes.

THE COURT REPORTER: Thank you.

BY MR. ROBERTS:

Q. You also understand that possession of child sexual abuse material is only illegal if the individual possessing it knows that the image depicts the child?

MR. CARSON: Object to form.

Page 19

THE WITNESS: You -- so you're -- are you questioning if they had the intent of knowing that they have CSAM?

BY MR. ROBERTS:

Q. Yes, that to -- Ma'am Court Reporter can read the question back, but, yes, they know -- they have to know that they are in possession of images that they know are of a child?

A. That's correct.

Q. It is not a crime in the State of Florida for someone to possess an image which they think is an adult, but it turns out it is a 17 year old, for example?

MR. CARSON: Object to form.

THE WITNESS: I wouldn't say it's a crime, but you have probable cause to do an investigation, yes.

BY MR. ROBERTS:

Q. You believe there would be probable cause for an investigation if you knew or had reason to know that the individual possessing it believed that it was an adult?

MR. CARSON: Object to form.

THE WITNESS: If the image is still of a child, it's of a child. You have -- you have

Page 20

probable cause to conduct an investigation.

BY MR. ROBERTS:

Q. Okay. But would you have a probable cause to arrest an individual if your investigation revealed that he most likely believed that it was an adult?

MR. CARSON: Object to form.

MS. SHEVLIN: Join.

THE WITNESS: So you conducted an investigation on supposed CSAM?

BY MR. ROBERTS:

Q. Right.

A. The suspect is stating he didn't know he was -- it was CSAM?

Q. No. All of the evidence suggests that the image -- well, let me just -- let me just ask it in a little bit different way. Okay? I understand. All right.

So, hypothetically you have an image published on metart.com. Follow me?

A. Yes.

Q. A suspect goes to metart.com, sees an individual who is advertised, or there's a disclaimer that they are an adult. You have no evidence that he has sought out child pornography. The website says that the model was an adult. The website says that it

Page 21

is following federal age verification laws to ensure that the model is an adult. That's all of the evidence that you have. Do you believe that there is probable cause that that individual is in knowing possession of child pornography?

MR. CARSON: Object to form.

THE WITNESS: Knowing possession if he received -- if from that website directly, I don't -- based off of what you're saying, no.

BY MR. ROBERTS:

Q. Right. You -- in other words, people can't be tricked into committing the crime of possession of child sexual material, right?

MR. CARSON: Object to form.

MS. SHEVLIN: Form.

THE WITNESS: It's hard to come across websites that have CSAM just openly.

BY MR. ROBERTS:

Q. Sure.

A. But you said unknowingly be in possession of it in this area that you're provided with.

Q. And I -- and I appreciate you saying that. That's the point I want to make.

It is extremely rare that there would be actual child sexual abuse material published on the

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 22

public web and described as pornographic images of a child. That's extremely rare?

A. Unfortunately, it's there, and you can get to it through Google. And it's not rare to unknowingly be in possession of it. It happens, specifically the scenario that you're speaking of. Like if you thought it was legal and you download it, you have it.

Q. That's a pretty common situation?

A. Yes.

Q. All right. Now, but -- but what I'm getting at is, how often have you come across on the internet on a public website Pornhub, metart.com, whatever, YouPorn.com, whatever, pick a website, how often in your investigation or any other experience, come across an image that that website described the model as under the age of 18?

MR. CARSON: Object to the form.

THE WITNESS: Not that I know of.

BY MR. ROBERTS:

Q. Right. That would be extremely rare, almost unheard of, that a public website would tell its viewer that it is viewing a minor, correct?

A. Correct.

Q. Right. So you would agree that the fact that an image is found on a public website is evidence that

Page 23

most likely it is being portrayed as an adult, even if it turned out that that person is 17?

MR. CARSON: Object to form.

BY MR. ROBERTS:

Q. Correct?

A. I'm trying to understand the way you said it.

Q. Right. So what I'm saying is, any image that you look at, right, the fact that you find it on a public website makes it more likely than not that that model is being portrayed as an adult to the person who found it on that website?

MR. CARSON: Object to form.

MS. SHEVLIN: Join.

THE WITNESS: The way you're saying it, yes, sir.

BY MR. ROBERTS:

Q. Yes. And so I understand that sometimes the information is not correct on those websites, and there may be -- and I think this is what you're describing -- times where people have unknowingly viewed a child sexual abuse material on a public website, thinking that it was an adult. Is that -- that's the situation you were describing, correct?

A. Yes, sir.

Q. All right. Lack of pubic hair does not mean

Page 24

that a model is a minor, does it?

A. Lack of pubic --

MS. SHEVLIN: Form.

MR. CARSON: Join.

BY MR. ROBERTS:

Q. So let me just run through this, right? In your job you -- you have to view adult pornographic sites on a regular basis, correct?

A. Yes, sir.

Q. And you are aware that even in your opinion, there are adult models on those websites who have taken measures, grooming measures, to remove their pubic hair, correct?

A. Yes.

Q. And that's a widespread practice in the porn industry, right?

A. Yes.

Q. It's actually a widespread practice in like the real world, to your knowledge, right?

A. Yes, sir.

Q. Yes, sir?

A. Yes, sir.

Q. Right. I mean, people groom themselves when it comes to pubic hair, right?

A. Yes.

Page 25

Q. Right. And in your experience, do individuals take steps to make that grooming seem less obvious, like not have razer burn or redness or rashes or things like that?

MS. SHEVLIN: Form.

MR. CARSON: Join.

BY MR. ROBERTS:

Q. You can say you don't know.

A. It -- when somebody says something, it kind of -- my speaker gets weird.

Q. Right. So they were objecting.

But I'm just asking you, is it in your experience, do people take measures, when they do groom themselves, to make that esthetically appear as though they're not shaving or waxing or using chemicals or things like that?

MS. SHEVLIN: Form.

MR. CARSON: Join.

THE WITNESS: I don't know the specifics of what you're saying. I just know it is common to groom yourself.

BY MR. ROBERTS:

Q. Right. And do you agree --

A. The grooming is a common practice, but the details he's speaking of, I don't know how far -- if

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 26

that would go that far.

Q.   Okay.  Would you agree, in your investigations, research, or interactions with adult pornography, is sometimes it's difficult to tell whether someone has waxed, or shaved; it just looks like they don't have any hair?

A.   Yes, I have come across cases of possible -- you don't know if it's prepubescent or if it's just an adult that's groomed.

Q.   Right.  And it's hard to tell from a digital image sometimes?

A.   Sometimes it is different.

Q.   And you're aware that digital images can be altered, and they can be touched-up --

A.   Yes, sir.

Q.   -- right?

And that happens not just in pornography, but in like wedding pictures, family pictures, people -- photographers now edit almost every photograph that they take, don't they?

A.   Yes, sir.

MS. SHEVLIN:  Form.

BY MR. ROBERTS:

Q.   And as an investigator, you know that, right?  You know that like the physical appearance of pubic

Page 27

hair is difficult to determine from simply looking at a digital image?

A.   Yes.

Q.   As an investigator, right now I'm just talking like as a detective, you know that it can be difficult looking at a digital image to tell whether or not that person has groomed or whether they just don't have any pubic hair?

A.   Correct.  Yes, sir.

Q.   Now, you know who Dr. Kathleen Dully is, don't you?

A.   I know of her.  I've never worked with her.

Q.   You've never had an opportunity -- have you ever used some other Child Protection Team doctor to render some opinions or estimations of age of potential CSAM?

A.   I have never been in a position where I had to use CPT for a case.

Q.   Why is that?

A.   I just haven't been in a position where I need to use them.

Q.   I mean, is it because you -- when you make a decision to prosecute a case, it's obvious child pornography?

A.   Okay.  Yes, sir.

Page 28

Q.   I understand that from -- I talked to Detective Greene earlier, I talked to Detective Tolbert, that in the industry, people sometimes describe images that is age-difficult.  Have you ever heard that terminology?

A.   Yes, sir.

Q.   Would you agree that that means that by simply looking at the individual, it can be difficult to determine whether that person is 18, 19 or 16 or 17?

A.   Yes, sir.

Q.   That's how you would understand age-difficult.  It's just difficult to tell her age?

A.   Yes, sir.

Q.   So are you testifying you never found a probable cause or decided to take action in a case where you look at an image and thought that it was age-difficult?

A.   I can't say that off the top of my head.  I just know I've never used CPT.

Q.   Okay.  Let me ask you -- I mean, you're the supervisor of ICAC currently, right?

A.   Yes.

Q.   Is it your understanding that best practice, the best practices that you wish to be in place, that prior to the decision for probable cause on any

Page 29

suspected image of CSAM, there be either obvious child pornography or some other evidence that this individual is a minor?

A.   Yes, there would need to be evidence.

Q.   And you never felt in any of the cases that you personally investigated, that you needed to go to an expert to determine what the age of that person was?

A.   No, sir, I don't believe so.  I don't believe I did.

Q.   All right.  I mean, is that because like in your opinion, like if it's close, and someone could reasonably believe that this is an adult, that there should not be a probable cause finding?

A.   I just don't think I've ever had a case presented that I felt that I had to use CPT.

Q.   I understand that testimony.  I'm just understanding -- I'm trying to understand why.  You've certainly looked at age-difficult images over the course of your several years now in the ICAC division, correct?

A.   Yes.

Q.   All right.  Is part of your job getting the NCMEC reports and disseminating them to your subordinates?

A.   Now it is, yes, sir.

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 30

Q. So, I mean, you see all the NCMEC reports, right?

A. Not all of them, but yes, sir.

Q. And many of those have what's been referred to as unconfirmed child pornography?

A. Yes, sir. Yes, sir.

Q. You know that NCMEC categorizes some images as unconfirmed?

A. Yes.

Q. Okay. What does that mean to you?

A. The photograph or video, the analyst or whoever through NCMEC cannot possibly identify that is of a child.

Q. Right. I know it may not always be because the image is age-difficult, but it could be that the image is age-difficult, and that's why they can't confirm that it is a child.

MR. CARSON: Object to form.

THE WITNESS: It's one of the reasons.

BY MR. ROBERTS:

Q. Right. So you've seen age-difficult images in your time as a detective and now as a supervisor at St. Johns County Sheriff's Office, correct?

A. Yes, sir.

Q. And have you charged someone with possession

Page 31

of child pornography in a case where you found it to be difficult to determine the age of the model?

A. Based off -- no, not that I -- no. No, sir.

Q. And that's what I'm getting at. From your personal practice, if you look at an image, and it's difficult to determine whether this person is 18 or -- is an adult or a minor, you personally, in your professional capacity, make the decision to find no probable cause and do not seek a search warrant or do not arrest that individual?

MR. CARSON: Object to form.

THE WITNESS: I've never had a case solely that it was -- all I had was age-difficult images. So I think for the most part, that's the reason I never had to use CPT for an investigation.

BY MR. ROBERTS:

Q. So you never had a case like Mr. Lawshe's case, where there was just images that came in, and they were published on a website, public website, and it's a model that could be 18. She could be '17. She could be 19. You've never had that scenario?

A. I've never seen the photographs --

MR. CARSON: Object to form.

THE WITNESS: I've never seen the photographs involved in Mr. Lawshe's case.

Page 32

BY MR. ROBERTS:

Q. Well, I'm describing to you, they're -- they're -- they're centerfold type pictures, partial nudity, published on a website. You've never had anything like that, where you looked at an image, it's from a website, and it could be an adult, or it could not be an adult, you've never had anything like that?

MR. CARSON: Object to form.

THE WITNESS: Solely just that and not a hundred percent confirmed, no.

BY MR. ROBERTS:

Q. Okay. So that would be unusual, that scenario would be an unusual scenario in your experience as an ICAC investigator?

MR. CARSON: Object to form.

THE WITNESS: Me personally, I just never experienced it.

BY MR. ROBERTS:

Q. Yeah. I mean, you're -- but you're the supervisor now, right?

A. Yes.

Q. When you say you have other things, like what are the other things that you have in the NCMEC report other than the image?

A. Meaning?

Page 33

Q. You're saying that you never had just like an age-difficult image to review without something else, right?

A. Well, there's always -- unfortunately, you can tell they're babies. You can tell they're toddlers.

Q. Those are not age-difficult, right? Those are just obvious child pornography?

A. That's what I'm saying. I've never had just a case of age-difficult. That's the only --

Q. Oh, okay. All right. What if you did just get an image that was age-difficult and there was a website on it, what would you do with that?

A. I would conduct an investigation.

Q. You would do what?

A. Conduct an investigation.

Q. Okay. And what would that investigation include?

A. I'd try to confirm if it was a pre-pubescent or pubescent, if it was a child or an adult.

Q. Would you go to the website and see the context of which it was published?

A. If I had access to the website or if I had added information, I would -- yeah, in the beginning, yes.

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 34

Q.   Sure.  So like if there was a watermark that said metart.com on the picture, you would go to metart.com to see if you can locate that picture?

A.   I wouldn't say I would follow watermarks because there's a lot of people initially placing watermarks on CSAM.  I don't know if he personally followed the watermarks website.

Q.   Detective Greene, do you know who he is?

A.   Yes.  Yes.

Q.   His testimony is that all three images had website information on the images that allowed him and Mr. Pierce, the attorney for Mr. Lawshe, to find and identify these models, within about 20 minutes, on the public web.  If you had that kind of access to information, would you do it?

A.   Yes, sir.

MR. CARSON:  Object to form.

BY MR. ROBERTS:

Q.   Okay.  Have we discussed anything about Mr. -- and I know you said you didn't have anything to do with Mr. Lawshe's case, other than, it sounds like Ms. Preston asked you about Metart, or she brought up metart.com, and you Googled that?

A.   Yes, sir.

Q.   And then you communicated that to her.  Other

Page 35

than that, did you do anything else in this investigation?

A.   I wasn't even part of the investigation.  That was well after everything.  I just wanted to know what the website was.

Q.   Was that after the arrest was made?

A.   I couldn't tell you a timeline.  I don't know.  I've not -- I wasn't here in this office, so it would have just had to be coming and going.  So I'm not going to know --

Q.   You're sure -- I mean, you're sure that Detective Preston brought up metart.com to you at some point in relation to Mr. Lawshe's case?

A.   I can't say a hundred percent it was her.  I just heard it being brought up.

Q.   Okay.  I thought you testified that you had told her about what you saw in --

A.   Yeah, I did tell her what I -- what I Googled, yes.

Q.   Okay.

A.   But he brought it up.  I -- I -- it could be her.  It could have just been brought up.  I have no idea.

Q.   I mean, have you looked at the affidavit in this case, the affidavit for probable cause for the

Page 36

search or the arrest?

A.   No.

Q.   Would it surprise you to know that something similar to what you testified to today is actually part of that affidavit?

A.   Something I have testified today is part of that affidavit?

Q.   I'm just going to pull it up so you have it.  Right here in the middle, this is the affidavit for the Synchronoss subpoena.  It says, To note, there's a watermark of www.metart.com on the offending image.  This site has a known history of displaying CSAM images of teenage girls, and CSAM content from this site has been encountered by other IPAC investigators in past investigations.

My question is, you didn't know that that information was in the affidavit?

A.   No, I had no part in this at all, no.

Q.   Okay.  When you were being asked or you made that comment to Ms. Preston, you did not think -- and I'm not saying she did -- but you did not intend that the information that she was going to be -- you were giving to her would be used in an affidavit to support probable cause, did you?

A.   No, this --

Page 37

Q.   MR. CARSON:  Form.

THE WITNESS:  -- was nowhere close to that timeframe.  This was as you -- So what was that PC for, because I was not involved or knew anything about anything involving search warrant, arrest, or anything.

BY MR. ROBERTS:

Q.   Doesn't it -- I asked you if you know when she had the conversation about metart.com, and I recall you saying you're not sure when that happened.

A.   Oh, I learned about all this after all this was over with.

Q.   So your testimony now is, is that you gave her this information long after the arrest happened?

A.   Yes, sir.  That's always been -- that's always been my testimony.

Q.   Well, I asked you if it happened at or before, and you said you don't remember what the time-frame was.

A.   I'm referring to like after all this was over, I have no clue when I told her about it.

Q.   Okay.  So your testimony is there's no way that she's referring to you in this affidavit?

A.   Oh, yes, sir, a hundred percent.  There's no way.

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 38

Q.   So if she were to testify that, Oh, Dennis Camden, he's the ICAC investigator that told me this, you would say that's not true?

A.   Yes, sir.  That's a hundred percent.

Q.   That would not be true, right?  It wouldn't be true?

So she was not referring to you when she said other ICAC investigators have been involved with Metart?

A.   Correct.

Q.   All right.  At that time, how many ICAC investigators were there in the office?

A.   Two.

Q.   Two?

A.   Two.  A serg and then a digital forensics. They're required to be there.

Q.   Yeah.  Yeah.  So if you didn't tell her, if Detective Tolbert didn't tell her and Detective Greene didn't tell her this information about Metart, were there any other ICAC investigators in the department that could have told her about this Metart?

MR. CARSON:  Object to form.

THE WITNESS:  I have no idea.

BY MR. ROBERTS:

Q.   Okay.  Have you ever been involved in any

Page 39

investigations where Detective Preston was modeled as a 15 year old?

A.   Yes.

Q.   You have been part of those?

A.   I have been there when she used undercover photos, yes.

Q.   Were you part of like the taking of the pictures?

A.   No.

Q.   Who helped her take those pictures?

A.   I don't know.

Q.   Okay.  Were you involved in the investigations where those photographs were used?

A.   I've been a case agent on a chat.  I don't know.  It's possible.

Q.   Okay.  You are aware that those -- those photographs have successfully convinced a suspect that Ms. Preston was actually 15 years old?

A.   Yes, I've seen that.

Q.   Yeah.  And at the time, how old was she?

A.   Oh, I have no idea.  She might be 30.  I hope I got that right.

Q.   You're safe.  I think she's 30.

A.   Okay.  Okay.

Q.   I think she's 30.

Page 40

A.   Don't let her know I said that.  I don't know.

Q.   No, I mean, I think you're right on, so it's not offensive.  And just as an aside note, I mean, it's kind of amazing, don't you think, that she can pass for a 15 year old?

A.   The way that they're age regressed, I could pass as a 14 year old.

Q.   What do you mean as "age regressed"?  What do you mean?

A.   I can just upload my photo and make it look like a child with the press of a button.

Q.   Is that what they did with Ms. Preston's photographs?

A.   I don't know specifically how she does hers. I'm speaking on mine.

Q.   Have you posed as a 14 year old before?

A.   I have, yes, sir.

Q.   So you're aware that technology makes it very easy to make people younger than they appear on a digital image?

A.   Yes, sir.

Q.   Yeah.  Do you guys have any way of like running these NCMEC images through some sort of program that can tell if they've been altered in any way?

Page 41

A.   Not that I know of.

Q.   Okay.  But are you concerned that innocent people might be arrested for possession of child pornography in St. Johns County?

MR. CARSON:  Object to form.

THE WITNESS:  I'm concerned if any innocent person would be arrested.

BY MR. ROBERTS:

Q.   And --

A.   But it's what you know at the time of the arrest.

Q.   Well, it's what you know at the time of the arrest or what is knowable at the time of the arrest, correct?

MR. CARSON:  Object to form.

THE WITNESS:  No, I would -- I would say it's what you knew at the time of the arrest, acting in good faith.

BY MR. ROBERTS:

Q.   You don't think that officers just have the right to ignore easily assessable information that's relevant to the case, do you?

A.   No.

Q.   Right.  You agree that you are required as an officer of the law to conduct a reasonable

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

Page 42

investigation prior to making a determination of probable cause?

MR. CARSON:  Object to form.

THE WITNESS:  Yes.

BY MR. ROBERTS:

Q.   And in a case where you know the image is published on a public website, that reasonable investigation would include at the very least visiting that website and attempting to obtain the context in which that image was published?

MR. CARSON:  Object to form.

MS. SHEVLIN:  Join.

THE WITNESS:  It's what you know at the time, not after -- like right now we know about it afterwards.  At the time I don't know what information was known.  But if you're -- the watermark, the website, like going to the website, is that what you're asking?

BY MR. ROBERTS:

Q.   Yeah, a reasonable investigation would include visiting the website where potentially the image is published.

MR. CARSON:  Object to form.

THE WITNESS:  Yes.

Page 43

BY MR. ROBERTS:

Q.   And it may lead to a dead end, right?  It may not be published on there, right, or -- or it could be lots of different things, but that's what an investigation is, right, is trying to uncover what is available and what's not available, right?

MR. CARSON:  Object to form.

THE WITNESS:  Right.

MR. ROBERTS:  Okay.  I don't have any other questions.  I appreciate your time, and I'm sorry it's under these circumstances that -- that we met, but, you know, it is what it is.

THE WITNESS:  I'm sorry that my Zoom was so bad, so I apologize.  Thank you for not getting more frustrated at me.

MS. SHEVLIN:  I don't believe I have any questions either, sir.  Thank you.

THE WITNESS:  All right.  Thank you.

MR. CARSON:  All right.  Detective Camden, my name is Matt Carson.  I represent Detective Preston in this action.  I don't have any questions for you either.  In the event this transcript is ordered, he can read through me.

Yeah, we'll order.  We'll order it.

THE COURT REPORTER:  Okay.  Matthew the same

Page 44

and Amy?

MR. CARSON:  Same order, yes, ma'am.  Thank you.

MS. SHEVLIN:  Same order.

THE COURT REPORTER:  Okay.

MS. SHEVLIN:  Thank you.

(Thereupon, the remote deposition was concluded at 3:55 p.m. and the signature and formalities were not waived.)

Page 45

CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF JACKSONVILLE

I, the undersigned authority, certify that the aforementioned witness Kevin Greene, personally appeared before me via remote teleconference and was duly sworn on Tuesday, December 17, 2024.

Dated this 27th day of December, 2024

MAUREEN HALL, RPR, FPR
Notary Public - State of Florida
My Commission Expires:  3/17/25
My Commission No.:  HH065896
Identification presented by Deponent: License

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
**Dennis Camden on 12/17/2024**

**Page 46**

C E R T I F I C A T E

STATE OF FLORIDA

COUNTY OF JACKSONVILLE

I, MAUREEN HALL, Registered Professional Reporter and Notary Public duly commissioned and qualified in and for the State of Florida at Large, do hereby certify that I was authorized to and did stenographically report the foregoing remote deposition; and that the transcript is a true record of the testimony given by the witness.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, parties' attorney, or counsel connected with the action, nor am I financially interested in this action.

Dated this 27th day of December, 2024.

_maureen Webelacker Hall_

_____
MAUREEN HALL, RPR, FPR
Notary Public - State of Florida

**Page 47**

DENNIS CAMDEN
C/O MATTHEW JOSEPH CARSON, ESQUIRE
SNIFFEN & SPELLMAN, P A.
123 North Monroe Street
Tallahassee, Florida 32301-1509
mcarson@sniffenlaw.com

IN RE:  WILLIAM LEE LAWSHE VS. ROBERT HARDWICK, MIKAYLA PRESTON AND KATHLEEN DULLY,

CASE NO.:  3:24-cv-00044-MMH-MCR

Dear Mr. Carson,

The deposition of Dennis Camden, taken in the above-styled cause on December 17, 2024 is now ready for signature of the witness.  Please contact our office to make arrangements for the witness to sign the same; or, if you wish to waive the signature of the deposition, please so advise.

If this deposition has not been signed by January 27th, 2025, or the signature thereto waived, we shall consider such delay a refusal to sign under Rule 1.310(e) of the Florida Rules of Civil Procedure.

If you have any reason which you would like for me to place on the deposition as to the witness' failure to sign the same, please advise.

Very truly yours,

HUSEBY COURT REPORTING, COURT REPORTER

_maureen Webelacker Hall_

By:  _____
Maureen Hall, RPR, FPR

Dated:  December 27, 2024
cc:  Counsel of Record

**Page 48**

E R R A T A   S H E E T

IN RE:  WILLIAM LEE LAWSHE VS. ROBERT HARDWICK, MIKAYLA PRESTON AND KATHLEEN DULLY

DEPO OF:  DENNIS CAMDEN

DATE TAKEN:  12/17/24

DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE

Page No._____Line No._____Change to:_____
_____
Reason for change:_____
Page No._____Line No._____Change to:_____
_____
Reason for change:_____
Page No._____Line No._____Change to:_____
_____
Reason for change:_____
Page No._____Line No._____Change to:_____
_____
Reason for change:_____

Please forward the original signed errata sheet to this office so that copies may be distributed to all parties.

DATE:_____

SIGNATURE OF DEPONENT:_____

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024                    Index: 14..brought

**1**

**14**   40:8,17

**15**   39:2,18 40:6

**16**   28:9

**17**   19:12 23:2 28:9

**18**   14:19 22:16 28:9 31:6,20

**19**   28:9 31:21

**2**

**20**   34:13

**2257**   14:19

**3**

**30**   39:21,23, 25

**3:55**   44:8

**A**

**ability**   15:25

**abuse**   16:5 17:3 18:23 21:25 23:21

**access**   33:23 34:14

**achieve**   5:10

**acting**   41:17

**action**   28:15 43:21

**actual**   21:25

**added**   33:24

**adult**   18:4,12 19:12,22 20:5,23,25 21:2 23:1, 10,22 24:7, 11 26:3,9 29:12 31:7 32:6,7 33:20

**adults**   18:19

**advertised**   20:22

**affidavit**   35:24,25 36:5,7,9,17, 23 37:23

**age**   14:15,16, 19 15:12,22 21:1 22:16 27:15 28:12 29:7 31:2 40:7,9

**age-difficult**   28:4,12,17 29:18 30:15, 16,21 31:13 33:2,7,10,12

**agent**   39:14

**agree**   16:3,9 17:7 22:24 25:23 26:2

**action**   28:7 41:24

**allegations**   14:12 18:2

**alleged**   16:6, 11

**allowed**   34:11

**altered**   26:14 40:25

**amazing**   40:5

**Amendment**   18:13

**Amy**   44:1

**analyst**   30:11

**apologize**   43:14

**appearance**   26:25

**area**   21:21

**arrest**   7:3 20:4 31:10 35:6 36:1 37:5,14 41:11,13,17

**arrested**   8:6 10:24 41:3,7

**article**   12:7, 14,22

**assessable**   41:21

**Assistant**   7:15

**assume**   10:19 14:11

**attempt**   16:5

**attempting**   42:9

**attention**   11:1

**attorney**   7:15 13:17 34:12

**aware**   5:22 14:14,18,21 15:25 24:10 26:13 39:16 40:19

**B**

**babies**   33:5

**back**   17:17,20 19:6

**bad**   43:14

**based**   10:19 11:19 12:7, 9,10,13,22, 25 16:12 21:9 31:3

**basis**   24:8

**be'17**   31:20

**begin**   5:15

**beginning**   33:24

**believed**   19:21 20:5

**bit**   4:25 20:16

**brought**   34:22

35:12,15,21, 22

burn   25:3

button   40:12

## C

California 13:17

call   7:20

called   4:3 7:24

Camden   4:3,10 38:2 43:19

capacity   31:8

Carson   15:14 17:12 18:25 19:14,23 20:6 21:6,14 22:17 23:3, 12 24:4 25:6,18 30:18 31:11, 23 32:8,15 34:17 37:1 38:22 41:5, 15 42:3,11, 23 43:7,19, 20 44:2

case   5:20,22 6:13,25 7:7, 15,17,20 8:23 9:3,6 27:18,23 28:15 29:14

31:1,12,17, 18,25 33:10 34:21 35:13, 25 39:14 41:22 42:6

cases   12:24 26:7 29:5

categorizes 30:7

centerfold 32:3

certification 5:9

chain   6:7

charged   30:25

chat   39:14

chemicals 25:15

child   14:12 16:4 17:3 18:3,22,24 19:8,25 20:24 21:5, 13,25 22:2 23:20 27:14, 23 29:1 30:5,13,17 31:1 33:8,20 40:12 41:3

children   4:19

circumstances 43:11

clear   12:15

clicked   10:3

close   29:11 37:2

clue   37:21

colleagues   6:5

command   6:7

comment   36:20

committing 21:12

common   22:8 25:20,24

communicate 11:5

communicated 34:25

company   5:7

complications 7:16,17,20

concerned 41:2,6

concluded   44:8

conduct   20:1 33:14,16 41:25

conducted   6:22 20:8

confirm   30:17 33:19

confirmed 32:10

Constitution 18:14

content   36:13

context   33:22 42:9

conversation 11:17 37:9

convinced 39:17

corporal   4:18, 19

correct   6:11 16:1,18 18:5,10 19:9 22:22,23 23:5,18,23 24:8,13 27:9 29:20 30:23 38:10 41:14

correctly 13:14

country   13:6

County   4:12 5:14 30:23 41:4

Court   17:16, 22,25 18:17, 20 19:5 43:25 44:5

CPT   27:18 28:19 29:15 31:15

credibility 11:20

credible 10:13,21

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024                                    Index: crime..fact

crime   16:21, 22 19:10,15 21:12

crimes   4:18 17:11

criminal   11:22,24 17:2

criminally   13:18

CSAM   8:4,5,16 11:22 12:1, 5,18,24 13:18,24 19:3 20:9,13 21:17 27:16 29:1 34:6 36:12,13

custodian   13:16 15:7, 21

customary   18:8

**D**

dates   8:2

dead   43:2

decided   28:15

decision   8:18 27:23 28:25 31:8

Dennis   4:3,10 38:1

department

5:25 38:20

depicts   18:24

deposition   44:7

describe   28:4

describing   23:19,23 32:2

details   25:25

detective   4:12,14,15, 20 5:1,10, 15,23,25 9:16 11:7 14:7 16:1,4, 15 17:1,5 27:5 28:2 30:22 34:8 35:12 38:18 39:1 43:19, 21

determination   42:1

determine   17:9 27:1 28:9 29:7 31:2,6

difficult   26:4 27:1,6 28:8, 12 31:2,6

digital   5:6 26:10,13 27:2,6 38:15 40:21

DIRECT   4:7

directly   21:8

disagree   13:19

disclaimer   14:24 20:22

disclosed   6:19

discuss   7:9

discussed   34:19

displayed   13:24

displaying   36:12

disseminating   29:23

division   29:19

doctor   27:14

download   22:7

dropped   7:15, 20

Dully   27:10

duly   4:4

**E**

e-mail   13:16

e-mailed   15:21

earlier   13:3 28:2

easily   41:21

easy   40:20

edit   26:19

encountered   36:14

end   18:18 43:2

ensure   21:1

esthetically   25:14

estimations   27:15

event   43:22

evidence   20:14,23 21:2 22:25 29:2,4

EXAMINATION   4:7

experience   22:14 25:1, 13 32:14

experienced   32:17

expert   29:7

explain   12:12

explained   9:7

explaining   13:13

extremely   21:24 22:2, 20

**F**

fact   22:24

23:8

**faith**   41:18

**familiar**   10:1
18:8

**family**   26:18

**federal**   6:16
14:15,18,19,
25 15:17
21:1

**felt**   29:5,15

**find**   8:8 23:8
31:8 34:12

**finding**   29:13

**Florida**   5:3,4
6:17 19:10

**follow**   20:19
34:4

**force**   5:3,8
6:16

**forensic's**   5:6

**forensics**
38:15

**form**   7:2,5
15:14 17:12
18:25 19:14,
23 20:6
21:6,14,15
22:17 23:3,
12 24:3
25:5,17
26:22 30:18
31:11,23
32:8,15

34:17 37:1
38:22 41:5,
15 42:3,11,
23 43:7

**formalities**
44:9

**found**   11:8,18
22:25 23:11
28:14 31:1

**frustrated**
43:15

---

### G

**Gainesville**
5:4

**gave**   37:13

**girls**   36:13

**give**   8:2

**giving**   36:23

**gleaned**   11:6

**glitched**   18:18

**good**   41:18

**Google**   8:10,
11,24 9:2,25
10:1,5,8
11:2,6,19
13:1 22:4

**Googled**   8:16
9:8 11:18
13:3 34:23
35:19

**Googling**   9:13

**governed**   5:2

**Greene**   28:2
34:8 38:18

**groom**   24:23
25:13,21

**groomed**   26:9
27:7

**grooming**   24:12
25:2,24

**guess**   7:5

**guys**   6:5
40:23

---

### H

**hair**   23:25
24:13,24
26:6 27:1,8

**happened**   8:14
37:10,14,17

**hard**   21:16
26:10

**head**   28:18

**headquarters**
5:3

**hear**   7:14 9:9

**heard**   9:2,7
28:5 35:15

**helped**   39:10

**Hey**   11:17

**history**   12:23
36:12

**Hold**   11:3

**hope**   39:21

**house**   6:19,22

**housed**   6:15,16

**hundred**   32:10
35:14 37:24
38:4

**hypothetically**
20:18

---

### I

**ICAC**   4:18,20,
22 5:1,2,3,
8,10,13,15,
25 28:21
29:19 32:14
38:2,8,11,20

**idea**   35:23
38:23 39:21

**identified**
17:10

**identify**   16:5,
11,16 17:2
30:12 34:13

**identifying**
16:17

**ignore**   41:21

**illegal**   18:23

**image**   16:9,
10,21,22,23
17:8 18:24
19:11,24
20:15,18

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024                    Index: images..learn

22:15,25 23:7 26:11 27:2,6 28:16 29:1 30:15, 16 31:5 32:5,24 33:2,12 36:11 40:21 42:6,10,22

**images** 6:24,25 8:12 15:8 19:7 22:1 26:13 28:4 29:18 30:7, 21 31:13,18 34:10,11 36:12 40:24

**include** 17:9 33:18 42:8, 21

**individual** 18:23 19:21 20:4,22 21:4 28:8 29:2 31:10

**individuals** 25:2

**industry** 24:16 28:3

**information** 7:19 8:9,11 9:22,24 11:5,13 12:25 13:4 15:23 16:18 17:5 23:18

33:24 34:11, 15 36:17,22 37:14 38:19 41:21 42:16

**initially** 34:5

**innocent** 41:2, 6

**intend** 36:21

**intent** 19:2

**interactions** 26:3

**internet** 4:18 16:23 22:11

**investigate** 6:13 8:22,24

**investigated** 14:11 29:6

**investigating** 14:14 16:4 18:2

**investigation** 5:19,21 6:4, 15 7:10,13 8:6 10:15 11:22,25 12:19 15:18 17:8 19:17, 20 20:1,4,9 22:14 31:15 33:14,16,17 35:2,3 42:1, 8,20 43:5

**investigations** 8:13,16 14:4

26:3 36:15 39:1,13

**investigator** 16:3 26:24 27:4 32:14 38:2

**investigators** 36:14 38:8, 12,20

**involved** 7:12, 17 8:4,15 9:2,6,8,10 11:22,24 12:23,24 13:7,8 31:25 37:4 38:8,25 39:12

**involving** 37:5

**IPAC** 36:14

---

**J**

---

**Jacksonville** 6:17

**job** 16:25 24:7 29:22

**John's** 5:14

**Johns** 4:12 30:23 41:4

**Join** 15:16 20:7 23:13 24:4 25:6,18 42:12

**judge** 13:24

---

**K**

---

**Kathleen** 27:10

**kind** 25:9 34:14 40:5

**knew** 13:24 16:12,14 19:20 37:4 41:17

**knowable** 41:13

**knowing** 11:20 19:2 21:4,7

**knowingly** 16:21

**knowledge** 24:19

---

**L**

---

**Lack** 23:25 24:2

**law** 14:20 41:25

**laws** 21:1

**Lawshe** 5:19 7:3 34:12

**Lawshe's** 6:13, 25 7:7,14 8:23 9:3,6 31:17,25 34:21 35:13

**lead** 43:2

**learn** 9:6

learned   8:14
   37:11

led   10:20

legal   18:8,13
   22:7

licensed   13:16

link   10:3

living   4:11

locate   34:3

location   16:10
   17:6

long   4:14,22
   37:14

looked   8:13
   10:19 29:18
   32:5 35:24

lot   5:8 34:5

lots   43:4

───────────
         M
───────────

Madam   17:16

made   8:19
   35:6 36:19

maintain   14:16

maintaining
   15:8

make   21:23
   25:2,14
   27:22 31:8
   40:11,20

makes   23:9

40:19

making   42:1

material   16:5
   17:3 18:12,
   23 21:13,25
   23:21

Matt   43:20

Matthew   43:25

Meaning   9:21
   32:25

means   28:7

measures   24:12
   25:13

mechanism
   15:12

met   43:12

Metart   8:3,12,
   15,22,24
   9:7,10
   11:21,24
   12:5,18,22
   34:22 38:9,
   19,21

metart.com
   7:24 8:20
   9:14,17 13:8
   14:8 20:21
   22:12 34:2,
   3,23 35:12
   37:9

metart.com.
   20:19

middle   36:9

mind   18:11

mine   40:16

minor   16:11,
   22 22:22
   24:1 29:3
   31:7

minutes   34:13

model   15:23
   16:16,18
   20:25 21:2
   22:15 23:10
   24:1 31:2,20

modeled   39:1

models   14:17,
   24 24:11
   34:13

muddled   14:6

multiple   8:13,
   15 12:23

───────────
         N
───────────

NCMEC   29:23
   30:1,7,12
   32:23 40:24

needed   29:6

North   5:3

note   36:10
   40:4

nudity   32:4

───────────
         O
───────────

oath   11:21,24

12:2,5,13,
   17,20,22
   13:23

Object   15:14
   17:12 18:25
   19:14,23
   20:6 21:6,14
   22:17 23:3,
   12 30:18
   31:11,23
   32:8,15
   34:17 38:22
   41:5,15
   42:3,11,23
   43:7

objecting
   25:11

observing   18:4

obtain   42:9

obvious   25:3
   27:23 29:1
   33:8

occurring
   17:11

offending
   36:11

offensive   40:4

office   4:13
   5:14 6:15
   30:23 35:8
   38:12

officer   41:25

officers   41:20

open   8:3
  9:20,21

openly   21:17

opinion   7:6
  24:10 29:11

opinions   7:2
  27:15

opportunity
  7:9 27:13

order   43:24
  44:2,4

ordered   43:23

---

**P**

p.m.   44:8

part   5:21
  6:14,16 7:11
  16:25 29:22
  31:14 35:3
  36:4,6,18
  39:4,7

partial   32:3

pass   40:5,8

past   36:14

patrol   4:21

pay   11:1

PC   37:3

peers   6:7

people   21:11
  23:20 24:23
  25:13 26:18
  28:3 34:5

40:20 41:3

percent   32:10
  35:14 37:24
  38:4

periodic   5:16

person   23:2,10
  27:7 28:9
  29:7 31:6
  41:7

personal   31:5

personally
  15:3 29:6
  31:7 32:16
  34:6

phonecall   6:21

photo   40:11

photograph
  26:19 30:11

photographer
  8:4,6 10:24
  13:7

photographers
  26:19

photographs
  8:5 31:22,24
  39:13,17
  40:14

photos   39:6

physical   26:25

pick   22:13

picture   34:2,3

pictures   26:18

32:3 39:8,10

Pierce   34:12

place   16:16
  28:24

placing   34:5

Plaintiff   4:4

platform   9:20,
  21

play   13:11

point   21:23
  35:13

porn   24:15

Pornhub   22:12

pornographic
  14:23 16:21
  18:12 22:1
  24:7

pornography
  14:12 18:3,
  4,9 20:24
  21:5 26:4,17
  27:24 29:2
  30:5 31:1
  33:8 41:4

portion   17:19

portrayed
  23:1,10

posed   40:17

position
  27:17,20

possess   16:21
  19:11

possessing
  18:24 19:21

possession
  14:12 17:6
  18:3,12,22
  19:7 21:4,7,
  12,20 22:5
  30:25 41:3

possibly   30:12

potential   16:4
  17:6,8,10
  27:15

potentially
  17:2 42:21

practice
  24:15,18
  25:24 28:23
  31:5

practices
  28:24

pre-pubescent
  33:19

prepubescent
  26:8

presented
  29:15

press   40:12

Preston   5:23
  9:16 11:7
  14:7 34:22
  35:12 36:20
  39:1,18
  43:21

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024                    Index: Preston's..represent

Preston's
 40:13

pretty  22:8

prior  4:17,
 19,21 5:10
 28:25 42:1

private  18:12

probable  7:3,6
 8:18 19:16,
 19 20:1,3
 21:3 28:15,
 25 29:13
 31:9 35:25
 36:24 42:2

PROCEEDINGS
 4:1

professional
 31:8

program  40:24

prosecute
 27:23

prosecuted
 13:18

protected
 18:13

Protection
 27:14

provide  15:22

provided  21:21

pubescent
 33:20

pubic  23:25
 24:2,12,24

26:25 27:8

public  18:9
 22:1,12,21,
 25 23:9,21
 31:19 34:14
 42:7

publication
 17:7

publish  16:22

published
 16:9,10,14
 20:19 21:25
 31:19 32:4
 33:22 42:7,
 10,22 43:3

publishers
 14:16

publishing
 15:9 17:2

pull  36:8

purporting
 15:7

_____

**Q**
_____

quarterly  5:5,
 16

question  7:5
 12:3,4 17:15
 18:11 19:6
 36:16

questioning
 19:2

questions  5:18

43:10,17,22

quick  11:17

_____

**R**
_____

random  9:25
 12:14

rare  21:24
 22:2,4,20

rashes  25:3

razer  25:3

re-asking
 17:17

read  12:2
 17:17,20
 19:5 43:23

reading  10:4

real  24:19

reason  13:19
 19:20 31:14

reasonable
 17:7 41:25
 42:7,20

reasons  30:19

recall  5:20
 9:23 11:13,
 15,16 37:9

received  21:8

recollection
 10:9

record  4:9
 17:20

records  13:16
 14:16 15:7,
 8,21

redness  25:3

referred  30:4

referring  9:24
 37:20,23
 38:7

regressed
 40:7,9

regular  24:8

related  6:25

relation  35:13

relevant  41:22

remember  10:3
 37:18

remote  44:7

remove  24:12

render  27:15

report  32:23

reported  6:9,
 10

Reporter
 17:16,22,25
 18:17,20
 19:5 43:25
 44:5

reports  29:23
 30:1

represent
 43:20

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024                    Index: requested..stuff

**requested** 17:19

**require** 14:16

**required** 38:16 41:24

**research** 14:8 26:3

**restate** 17:14

**revealed** 20:4

**review** 33:2

ROBERTS 4:8 15:20 17:16 18:1,21 19:4,18 20:2,10 21:10,18 22:19 23:4, 16 24:5 25:7,22 26:23 30:20 31:16 32:1, 11,18 34:18 37:7 38:24 41:8,19 42:5,19 43:1,9

**run** 24:6

**running** 40:24

**Russia** 10:20, 22,23

—————
S
—————

**safe** 39:23

**scenario** 22:6 31:21 32:13

**search** 6:20 7:7 8:25 9:2,25 11:2, 6,19 13:1 31:9 36:1 37:5

**seek** 7:7 15:12 31:9

**sees** 20:21

**serg** 38:15

**sexual** 16:5 17:3 18:23 21:13,25 23:21

**shaved** 26:5

**shaving** 25:15

**Sheriff's** 4:13 5:14 30:23

**SHEVLIN** 15:16 20:7 21:15 23:13 24:3 25:5,17 26:22 42:12 43:16 44:4,6

**shutdown** 12:19

**signature** 44:8

**similar** 36:4

**simply** 12:22 27:1 28:8

**sir** 5:11,17, 24 6:1,8,14

7:1,4,8,12, 18,21,25 9:15,25 10:8 11:8,11,14 12:2,6,14 13:2,7,10,20 14:13,21 15:2,5,10, 15,19,24 16:2,13,19, 24 17:4,13, 21,22,23,25 23:15,24 24:9,20,21, 22 26:15,21 27:9,25 28:6,10,13 29:8,25 30:3,6,24 31:3 34:16, 24 37:15,24 38:4 40:18, 22 43:17

**sit** 6:22

**site** 8:7 36:12,13

**sites** 24:8

**situation** 22:8 23:22

**solely** 31:12 32:9

**sort** 5:9,13 40:24

**sought** 20:24

**sounds** 34:21

**source** 8:3 9:20,21,23 10:6,10,13 11:12,20 12:5

**speaker** 25:10

**speaking** 22:6 25:25 40:16

**specific** 14:21

**specifically** 22:5 40:15

**specifics** 25:19

**spend** 18:4

**St** 4:12 5:14 30:23 41:4

**start** 16:16

**started** 10:4

**state** 4:9 7:15 12:21 19:10

**States** 18:14

**stating** 20:12

**statute** 14:18, 22,25 15:18

**statutes** 14:15

**statutory** 15:11

**steps** 25:2

**strike** 14:5

**stuff** 10:4, 20,22

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024                              Index: subject..utilized

subject   12:18

subordinate
  6:2

subordinates
  29:24

subpoena   36:10

successfully
  39:17

suggests   20:14

supervisor
  28:21 30:22
  32:20

support   36:23

supposed   20:9

surprise   36:3

suspect   20:12,
  21 39:17

suspected   29:1

swear   11:21,
  23,24 12:2,
  5,13,18

sweep   6:22

sworn   4:4

Synchronoss
  36:10

---
**T**
---

taking   8:5
  39:7

talked   28:1,2

talking   5:22

10:22 12:16
15:1 27:5

task   5:2,3,8
  6:16

team   5:13
  27:14

technology
  40:19

teenage   36:13

terminology
  28:5

terrible   17:17

testified   4:4
  35:16 36:4,6

testify   38:1

testifying
  28:14

testimony
  29:16 34:10
  37:13,16,22

thing   17:18

things   9:22
  25:4,16
  32:22,23
  43:4

thinking   23:21

thought   22:6
  28:16 35:16

time   6:4 8:18
  18:4 30:22
  38:11 39:20
  41:10,12,13,
  17 42:13,15

43:10

time-frame
  37:19

timeframe   37:3

timeline   35:7

times   23:20

today   36:4,6

toddlers   33:6

Tolbert   28:3
  38:18

told   9:16
  10:5 11:8,
  10,16 14:8
  35:17 37:21
  38:2,21

top   28:18

touched-up
  26:14

training   5:1,
  5,6,16

transcript
  43:23

transferred
  5:13

tricked   21:12

true   38:3,5,6

turned   23:2

turns   19:12

type   5:6 9:21
  32:3

---
**U**
---

U.S.C.   14:19

ultimately
  7:14

unconfirmed
  30:5,8

uncover   43:5

undercover
  39:5

understand
  5:12 7:10,16
  10:18 12:11
  13:25 15:6
  16:20 18:22
  20:16 23:6,
  17 28:1,11
  29:16,17

understanding
  28:23 29:17

unheard   22:21

unit   4:18,20,
  22

United   18:14

unknowingly
  21:20 22:4
  23:20

unusual   32:12,
  13

upload   40:11

usual   18:8

utilized   15:11

**WILLIAM LEE LAWSHE vs ROBERT HARDWICK, ET AL.**
Dennis Camden on 12/17/2024    Index: verification..Zoom

---

### V

**verification** 14:15,19 15:12,22 21:1

**verified** 14:25

**victim** 16:6 17:8,10

**video** 30:11

**view** 6:24 24:7

**viewed** 23:20

**viewer** 22:21

**viewing** 22:22

**visiting** 42:8, 21

---

### W

**waived** 44:9

**wanted** 35:4

**warrant** 7:7 31:9 37:5

**watermark** 34:1 36:11 42:17

**watermarks** 34:4,6,7

**waxed** 26:5

**waxing** 25:15

**web** 22:1 34:14

**website** 7:23 8:5 14:23 16:17,18 17:1,9 20:24,25 21:8 22:12, 13,15,21,25 23:9,11,21 31:19 32:4,6 33:13,21,23 34:7,11 35:5 42:7,9,17,21

**websites** 15:3, 13 18:9 21:17 23:18 24:11

**wedding** 26:18

**weird** 25:10

**widespread** 24:15,18

**William** 5:19

**words** 21:11

**work** 18:4,7

**worked** 4:21 27:12

**works** 10:8

**world** 24:19

**www.metart.com** 36:11

---

### Y

**year** 19:12 39:2 40:6,8, 17

**years** 4:15, 23,24 29:19 39:18

**younger** 40:20

**Youporn.com** 22:13

---

### Z

**Zoom** 43:13

---