**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

   Plaintiff,

vs.                         CASE NO.:   3:24-cv-00044-MMH-MCP

MIKAYLA PRESTON,
in her individual capacity
as a Detective for St. Johns
County Sheriff's Office, and
KATHLEEN DULLY, in her individual
capacity as medical director of the
UF Child Protection Team,

   Defendant.

_____

CONTINUED
REMOTE VIDEO
DEPOSITION OF:     KATHLEEN M. DULLY, M.D.


DATE:              June 18th, 2025


TIME:              3:05 p.m. - 5:10 p.m.


PLACE:             Videoconference


STENOGRAPHICALLY
REPORTED BY:       Deborah J. Guest, RPR
                   Shorthand Reporter


                   (1 - 89)

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 2

A P P E A R A N C E S:

(All parties appearing via Zoom.)

MICHAEL K. ROBERTS, II, ESQUIRE
OF:  Nooney, Roberts, Hewett & Nowicki
1680 Emerson Street
Jacksonville, FL 32207-6104
Office:  904-398-1992
Cell:  904-398-1992
E-mail:  mroberts@nrhnlaw.com
  Appearing on behalf of the Plaintiff,
William Lee Lawshe

MATTHEW J. CARSON, ESQUIRE
OF:  Sniffen & Spellman, P.A.
123 North Monroe Street
Tallahassee, FL 32301-1509
Office: 850-205-1996
E-mail:  mcarson@sniffenlaw.com

Appearing on behalf of the Defendant,
Mikayla Preston
-and-
JOHN A. WILSON, ESQUIRE
OF:  Howell, Buchan & Strong
2898 Mahan Drive
Suite 6
Tallahassee, FL 32308-5462
Office:  850-877-7776
E-mail:  johnwilson@jsh-pa.com
  Appearing on behalf of the Defendant,
Kathleen M. Dully, M.D.


ALSO PRESENT:  Cameron Hodges, Videographer

Page 3

          I N D E X
TESTIMONY OF KATHLEEN M. DULLY, M.D.
                              PAGE
Review of previously marked exhibits - no
video...................................... 4
Direct Examination by Mr. Roberts.......... 7
Cross-Examination by Mr Carson............. 78
Cross-Examination by Mr. Wilson............ 84
Redirect Examination by Mr. Roberts........ 85
Certificate of Oath........................ 88
Certificate of Reporter.................... 89

          INDEX OF EXHIBITS
                              PAGE
        (DR. DULLY'S FIRST DEPOSITION)
  (Previously marked - attached to first deposition)
No. 3 (a demonstrative diagram of the
pubertal stages).......................... 37

No. 4 (composite exhibit of three letters
written by Dr. Dully in this case)......... 18,50,69
        (DETECTIVE PRESTON'S DEPOSITION)
        (Previously marked - not attached)

8-A (image YCBLVVFQ)...................... 69

8-B (image B06FE687)...................... 23

8-C (0059)................................ 15,25

8-D (0065(1))............................. 25

8-E (20230122_174408DuckDuckGo.jpg)....... 53

            - - -

        S T I P U L A T I O N S
     It is hereby stipulated and agreed by and
among the counsel for the respective parties and the
Defendant that the reading and signing of the Zoom
video deposition transcript be waived.

Page 4

          P R O C E E D I N G S
               * * * *
     MR. WILSON:  Counsel, will you be sharing exhibits today?
     MR. ROBERTS:  Maybe.
     MR. WILSON:  Maybe.
     MR. ROBERTS:  I don't know that there will be any other ones, but I'll simply refer to the images either by their file name or -- and we can go on the record -- but they were attached in letter form to Detective Preston's deposition as lettered exhibits, and so we can refer to them in both ways.  But we'll make sure that we're on the same page before we begin discussing the exhibit.  Fair enough?
     MR. WILSON:  Yes.  Can we go through the exhibits for clarity that were attached to the first deposition?
     MR. ROBERTS:  Yes.  Exhibit 1 was a journal article, Exhibit 2 was the affidavit of the Plaintiff's expert, Dr. Krugman, Exhibit 3 was a demonstrative diagram of the pubertal stages, and Exhibit 4 was the -- it's a composite exhibit of three letters written by Dr. Dully all in this case.

Page 5

     MR. WILSON:  And you are prepared to show those on the screen as they come up, if necessary?
     MR. ROBERTS:  Yes.  I mean, I am not going to plow the same field.  We're not going to -- you know, I may ask her a question about one or two, and it may become relevant.
     But as this is a continuation of the prior deposition, you know, I will assume that these exhibits are going to be attached as exhibits to this deposition as well.
     THE VIDEOGRAPHER:  Counselor, is this a continuation?
     MR. ROBERTS:  It is a continuation, yes.
     THE VIDEOGRAPHER:  All right, perfect.  Are there any other housekeeping matters?
     MR. WILSON:  I believe Mr. Carson called in and dropped off of the call.  I do not know what has happened to Mr. Carson.
     MR. CARSON:  I'm still here.
     MR. WILSON:  Okay, thank you.
     MR. CARSON:  I am trying not to clog the gallery.  I will probably just stay hidden until or unless I need to say anything.
     MR. ROBERTS:  All right, thank you.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 6

THE VIDEOGRAPHER:  All right, then. Counsel, are we ready to begin?

MR. ROBERTS:  Yes.

(Discussion off the record.)

THE VIDEOGRAPHER:  Good afternoon.  We're now on the record at 3:10 p.m. this June 18th, 2025.  This begins the continued deposition of Dr. Kathleen Dully, taken in the matter of William Lee Lawshe versus Mikayla Preston, et al. This deposition is being conducted remotely via Zoom.

My name is Cameron Hodges.  I am the videographer.  The court reporter is Deborah Guest.  We represent Huseby Global Litigation.

Will counsel please introduce themselves, after which will the court reporter please swear in the witness.  Thank you.

MR. ROBERTS:  Michael Roberts for Mr. Lawshe, the Plaintiff.

MR. WILSON:  John Wilson for Dr. Dully.

MR. CARSON:  Matt Carson for Detective Mikayla Preston.

COURT REPORTER:  Doctor, would you raise your right hand, please.

Do you solemnly swear the testimony you're

Page 7

about to give in this cause today will be the truth, the whole truth, and nothing but the truth?

THE DEFENDANT:  I do.

COURT REPORTER:  Thank you.

KATHLEEN DULLY, M.D., having been duly sworn to tell the truth, testified as follows:

DIRECT EXAMINATION

BY MR. ROBERTS:

Q    All right.  Doctor, it is good to see you again.  Where are you currently located?

A    In this particular room?

Q    What building?

A    This is the Forensic Pediatrics Office, sort of that administrative office which is one building over from the clinic building.

Q    And when you say "clinic building," what are you referring to?

A    Well, there's two buildings for this division.  And one has the clinic where we actually see children and have our offices and exam rooms and equipment and medication, and then this is an administrative building with a xerox machine and this very nice Zoom/conference room.

Q    And when you say -- and I just made this a

Page 8

little more obvious, but this is the Child Protection Team.  When you say "division," you are talking about the Child Protection Team?

A    No, this is not the Child Protection Team office.  This is the Division of Forensic Pediatrics for the University of Florida, and the Child Protection Team is part of the division and major activity.

Q    What does forensics mean?

A    Open to debate.

Q    So that is what -- if you say, "I am a forensic PD -- pediatrician," that means it's up for debate, pediatrics?

A    That we specialize in the debates of pediatrics, yes.  In this case, I think that applies.

Q    Okay.  Sometimes I have heard -- maybe it's colloquially, but forensics as being a subspecialty of either medicine or engineering, some science which attempts to examine or offer opinions on legal questions.

Is that -- are you not familiar with that use of the word forensics?

A    No.  I use it as part of pediatrics.

Q    Okay.

A    I don't engage in those other activities.

Page 9

Q    You don't practice -- you don't offer opinions in legal proceedings?

A    I do if I am subpoenaed.

Q    Okay.  But isn't that like part of your job, to offer opinions in legal proceedings on behalf of the State of Florida?

A    That is part of my job as a pediatrician, and the American Board of Pediatrics does not like to use the term forensics.  That's why they call it child abuse pediatrics.

Q    And, in fact, the statute that establishes the Child Protection Team directs that the Child Protection Team will investigate and support law enforcement activities in regards to child abuse allegations, doesn't it?

A    I don't know the statute by heart.  It probably says that or something about like that.  It does establish the Child Protection Teams throughout Florida.

Q    Okay, all right.  So have you -- this is a continuation of our prior deposition.

Since that time, have you spoken with any representatives of Detective Preston?

A    No.

Q    Have you spoken with Detective Preston?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 10

A    No.

Q    Have you spoken with anyone other than your attorney about the facts or circumstances arising out of this case?

A    No, but the attorneys did change.  So I have spoken to two attorneys, the previous and then also Mr. Wilson.

Q    Has anyone from Verizon or Synchronoss Corporations reached out to you about this case?

A    No.

Q    Have you made any statements or conducted any -- or have been part of any interviews regarding the facts and circumstances of this case since we last met?

A    No.

Q    All right.  So have you had an opportunity to review your deposition transcript prior to today's continuation of that deposition?

A    I went through it one time today.

Q    Okay, all right.  So we ended the last deposition because you did not have the photographs or the digital images which were the subject of your reports in this case.  Did I understand that correctly?

A    Yes.  And I had not seen them in two years

Page 11

and could not recollect.

Q    Sure.  And today, do you have them?

A    I have them, yes.

Q    And have you had a chance to review them prior to us getting on the record here today?

A    Yes.

Q    Okay.  So let's -- I am just going to -- we left off in your deposition talking about opinions in general -- your opinions in general, and let's pick up today with your -- your interactions with -- just to set the scene, I guess, so to speak, with -- your interactions with Detective Preston and reviewing these particular photographs because you have them now, and that's really what I intend to go through today.

So at some point, you received an e-mail from Detective Preston introducing herself.  Do I understand that correctly?

A    At some point, she was introduced to me at CPT, but I don't remember the specifics.

Q    Do -- have you reviewed any e-mails she sent to you attempting to set up a meeting regarding this particular case?

A    She did send one e-mail between the two dates -- I don't know the date -- asking for another

Page 12

appointment.

Q    So you had one meeting with her on February 22nd, 2023; is that correct?

A    Yes.

Q    And in that meeting, you examined a single colored photograph that she showed you on a law enforcement laptop; is that correct?

A    Yes.

Q    That file name -- I am not going to read the entire file name, but it begins with D263B; is that correct?

A    Yes.

Q    All right.  You met with her again on April 5th, 2023; is that correct?

A    Yes.

Q    And you reviewed additional photographs, which we'll get into in a second.

So I believe you testified in your original deposition you do have some recollection of meeting with Detective Preston; correct?

A    Yes.

Q    All right.  And when you met with her, you explained to her that you could not offer her scientific reliable opinions regarding the actual age of the models depicted in these images, correct?

Page 13

A    Yes.

Q    You told her that you could only offer her an opinion about what the sexual maturity rating of the appearance of the image was, correct?

A    Yes.

Q    And I think we went through this in your prior deposition.  For example, if you were shown a photograph that just showed belly button to thighs and it showed genitals, if there was no pubic hair development, your opinion would be that that is a sexual maturity rating of a woman, correct?

A    In general, yes.

Q    You do not consider the possibility of digital altering of the photograph to make it appear as though there is no pubic hair?

A    That is not my expertise.

Q    And you do not consider that possibility in rendering your opinions?

A    That is always a possibility.  However, I am commenting on appearance, not knowing anything more about the photograph.

Q    And you made that clear to Detective Preston in your meeting on February 22nd?

A    I think that's obvious.  That's what the investigation is for, which is not something that I

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 14

do.

Q    Whether you think it is obvious or not, your testimony is that you made that clear to Detective Preston in your meeting?

A    Well, it's in writing that it's appearance, and I said it's appearance.

Q    Your prior testimony even today was that you explained to her that you could not give her a scientifically reliable opinion about the actual age of the model depicted, correct?

A    Well, those are your words.  That's not my words.  I never used the word scientific.  It is not -- it's a medical question, and those are your words, not mine.  And it has been two years, and I don't remember my exact words.

Q    I am not -- I am not asking you your exact words.  I am asking if you related to her -- in whatever words you chose but related to her in what you consider to be a clear manner that you could not offer her a medical opinion about the actual age of the individual depicted in these images, correct?

A    Yes.

Q    All right.  One second.

I would like for you to pull up on the laptop the file 0059, and just tell me when you have

Page 15

that image up for you to view.

A    And which letter is that?

(Exhibit 8-C, previously marked in Detective Preston's deposition, was identified for the record.)

BY MR. ROBERTS:

Q    If you can just pull the image up, and then I'll ask questions and direct you.  While you are pulling it up, I am going to, for the record, identify this.

The redacted image was attached to Detective Preston's deposition as Exhibit C.  Do you have this pulled up in front of you, 0059?

A    That is what the label says, yes.

Q    Okay.  This depicts a female model with it looks like a pink lace lingerie -- wearing like a pink lace lingerie.  Do you see that?

A    Yes.

Q    A red background?

A    I would call that orange, but yes.

Q    Okay.  Maybe we got a different color tone on our screen.

All right.  And the model appears to even have her eyes closed or be looking down towards the floor?

A    Yes.

Page 16

Q    All right.  This model clearly has utilized some form of grooming of her pubic hair, correct?

A    She may have and so -- you know, maybe, yeah.

Q    It appears -- now, you are a medical doctor and you -- we talked a lot about this in your -- in your prior -- in your original testimony in the beginning of this case.

The appearance of pubic hair is the -- I guess the leading determining factor in the sexual maturity rating as it pertains to female individuals, correct?

A    Yes.

Q    All right.  And we went through diagrams about what Grade I, Grade II, Grade III, Grade IV, Grade V pubic hair development looks like, did we not?

A    Yes.

Q    This appearance of pubic hair does not match any of the diagrams that -- or the depictions on the diagrams that we saw, does it?

A    Not very well.  It is in the midline and anterior which is how it develops.

Q    Right.  But this clearly -- this model has clearly either shaven or waxed or groomed in some way

Page 17

her pubic hair, correct?

A    I don't know if that is clearly, but I think that is a possibility, yes.

Q    Well, your medical opinions are based on the appearance of pubic hair in this case, correct?

A    Yes.  To a large degree, yes.

Q    Would you say that by looking at this you cannot determine whether or not this model has utilized some sort of grooming, shaving, waxing, some sort of hair removal process?

A    No.  I am saying that she may have --

Q    Okay.

A    -- but I don't know for sure.  Usually I ask the child.

Q    Okay.  You can't ask the child, though, when you are reviewing images pulled off of the internet, can you?

A    Correct.  That's what the investigation is for.

Q    Right.  Your opinions were part of the investigation, though, correct?

A    I think I am assuming that they must be because here we are.

Q    Right?

A    But, no, I never know what role my

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 18

statements play.

Q    Well, what did you surmise when a detective, a law enforcement detective, asked you to render some opinions about some images, some pornographic images?  Did you not -- did you not surmise that they were contacting you as part of their investigation?

MR. WILSON:  Object to form, but go ahead.

A    They were contacting me, asking for an opinion.  What they do next, I don't know.  And I don't know that they ever used these until now.

Q    Well --

A    You are telling me so.

Q    And I am sorry for cutting you off.  But you know that the detectives -- you knew that the detective was investigating a potential crime, correct?

A    Yes.  By the 5th of April, I surmised that because she came back with more.

Q    Right.  And you knew that she was coming to you as part of that investigation, did you not?

A    It would be likely.

Q    Yes.

A    I did not pin her down.

(Plaintiff's Exhibit No. 4, previously marked, was

Page 19

identified for the record.)

BY MR. ROBERTS:

Q    Okay.  I am going to share my screen which is Plaintiff's Exhibit 4.

I'm trying to move that.  I don't know what that is on there.  I don't know what this blue line is, I apologize, but do you see this?

A    Yes.

Q    Okay.  I am going to show you what is marked February 22nd.  That is the date that you have.  We looked at this letter, okay?

April 5th, do you see this letter?

A    Yes.

Q    Do you agree that the first paragraph is largely a copy and paste from the February 22nd, 2023 letter?

A    Oh.  It would appear that that is true, yeah.

Q    Can you read the second paragraph of your letter --

A    April --

Q    -- from April 5th, 2023?

A    "Today you have shown me two additional images" --

Is that what you are referring to?

Page 20

Q    Yes.

A    -- "of the same female child, and these confirm my previous determination that she is depicted to be at most sexual maturity of maybe III or IV and, therefore, again less than 12 to 15 years of age."

Q    There is one more sentence.

A    Oh.  "The file names for these photos are 0059 and 0065(1)."

Q    Now, the last sentence of the first paragraph says, "She does not appear to be shaved as her anterior pubic hair is still present."

But on April 5th, 2023, when you saw the 0059 image, you knew that this model had been shaved, waxed, or removed her pubic hair in some way, correct?

A    No.

MR. WILSON:  Object to form.

A    No.

Q    You just testified that the 0059 -- that she very well may have used some form of hair removal process.  Did I understand that correctly?

A    You misstate my testimony.

Q    Please restate it --

A    It was --

Page 21

Q    -- for me.  Please restate it.

A    It was possible, and that's what the investigation is for.

Q    Well, you are the expert on pubic hair development, correct?

A    Yes, but not depilatories, waxes, lasers, and you brought up electrolysis, as I recall.

Q    Or chemical hair removal or just digital alterations of images or all the things that I brought up.  But you made the affirmative statement on April 5th, 2023 that this model does not appear to be shaved, correct?

A    I said that on February 22, and I did not change it on April 5.

Q    That was an untrue statement, though, correct?

A    Not correct.

Q    So is it your testimony that the model depicted in 0059 does not appear to be shaved?

A    Is 0059 the same image as the D2635841644B390?  You know, I don't know if that is actually the same image or not.

Q    It's not the same image.  It's an image taken from the exact same photo shoot.

A    I don't know that.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 22

Q    Well, why don't you look -- why don't you open up the files for -- I'll give you the file number. Why don't you just open up the file that starts in D263B, open that up for me, and also open up 0065. And tell me when they are open.

A    Is this supposed to be --

COURT REPORTER: Ma'am, I can't hear.

THE DEFENDANT: I don't know what I am looking at. I am sorry, I am trying to figure out what I am looking at. This is a different file. I don't know what is what. I don't know what is what.

BY MR. ROBERTS:

Q    So let me read the file name for you, okay? It's B06F --

A    To what? A file name to what? There is more than one file. B06F, that is what that one says here.

Q    Knees-to-chest. So the image that you are looking for is a female model with knees-to-chest.

A    That is not the file name that I looked it up as according to my statements in 2023.

MR. WILSON: Yes. Mr. Roberts, if I may interject for a moment, the file names that we have as evidence in this case for Exhibit 8-B of

Page 23

Detective Preston's interview and the one that is referenced in the first paragraph of the February 22nd letter, they are a different file name than is shown on Dr. Dully's letters here. But the description matches, and it is the image marked for identification purposes in other testimony in this case.

MR. ROBERTS: Thank you, John. I appreciate that.

(Exhibits 8-B and 8-D, previously marked in Detective Preston's deposition, were identified for the record.)

BY MR. ROBERTS:

Q    Let's look at the image that you are describing rather than the file name, okay?

Can you -- can you open the file where it shows the model sitting on a wooden floor in a knees-to-chest position with her lower legs and ankles parted to expose her genital for the camera. I have that -- and it may have been miswritten in the report, but I have that as B06FE687.

A    That is what is on this photo that says Exhibit 8-B.

Q    Okay. Do you agree that that photograph showing the female in the knees-to-chest position was

Page 24

taken at the same photo shoot, the same time as the other two images --

A    I --

Q    -- that you reference in that letter, 0059?

A    I have no idea.

Q    Can you explain why -- can you explain that, why you have no idea?

A    I wasn't at the photo shoot. I have no idea.

Q    Well, does she appear to be wearing the same clothes?

A    What is --

Q    Well, first of all -- sorry, strike that. Strike that.

Is it the same model?

A    What is the second picture that you are referring to?

Q    Okay, all right.

MR. WILSON: I will go ahead and interject again.

MR. ROBERTS: Okay.

MR. WILSON: We have on the screen on this laptop Exhibit 8-B, which we were previously discussing, and Exhibit 8-D, which is also marked in Dr. Dully's reports as image 0065(1). Those

Page 25

are the two images that are currently on the laptop screen.

BY MR. ROBERTS:

Q    Okay. So 0065(1), gotcha, 0059, that is the image that we were originally talking about today, let's just talk about those two images first, okay?

Do you agree that those two images were taken at the same photo shoot around the same time?

MR. WILSON: Let -- let me pull up those two images.

(Exhibits 8-C and 8-D, previously marked in Detective Preston's deposition, were identified for the record.)

MR. WILSON: All right, and now we have on the laptop screen Exhibit 8-C 0059 and Exhibit 8-D 0065(1), both displayed side by side.

MR. ROBERTS: Okay.

BY MR. ROBERTS:

Q    Having a look at those, do they appear to be taken from the same photo shoot?

A    It is all the same accoutrements, so they could be. But, otherwise, I don't actually know.

Q    It's the same model --

A    Probably.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 26

Q    -- correct?

Well, you say -- I think you say it is the same model in your letter of -- let's see.

A    Detective Preston told me that.

Q    April 5th, 2023, you indicate that you show me two -- pardon me, "Today you show me two additional images of the same female child."  Did I read that correctly?

A    Yes.

Q    Okay.  So it is the same female model that is depicted in the original image which you described as sitting on a wooden floor in a knees-to-chest position, correct?

A    She told me they were the same child, and I did not know any way to validate that.  So I accepted it.  I do think it looks like the same child, but I am not the investigating person, so...

Q    Okay.  She's wearing the same earrings, correct?

A    Oh, I didn't notice the earrings.  Sorry.

Q    Yes?  Wearing the same earrings?

A    No, I don't know what the earrings are.  Maybe you better go back to another screen.

Q    Oh, I am sorry.

MR. ROBERTS:  Can you pull this back up?

Page 27

MR. WILSON:  They are up.

THE DEFENDANT:  No, he's talking back now about the one I saw in February.

MR. WILSON:  Oh, okay.

MR. ROBERTS:  I'm talking about -- let's pull all three up, okay, the image from February with the knees-to-chest and then the two subsequent images that you viewed April 5th, which are 0059 and 0065(1).  And just tell me when you have them up.

THE DEFENDANT:  Thank you.

MR. WILSON:  You're very welcome.

I am working on it.

THE DEFENDANT:  It's going to be very small.

MR. WILSON:  All right.  I have got all three up, side by side, on the laptop screen.

MR. ROBERTS:  Okay.

BY MR. ROBERTS:

Q    So, Dr. Dully, you weren't able to tell me whether or not these appeared to be from the same photo shoot taken at approximately the same time, so I am going to ask you:  Is the model wearing the same earrings in all three photographs?

A    It looks like the same earrings, yes.

Page 28

Q    Is her hairstyle the same in all three photographs?

A    Well, with partial views, I -- I think they could be, but I can't really see her whole hairstyle in the first photo.

Q    Wearing the same clothes?

A    No, I don't see the same clothes.  I see her knees and her legs and her bare arms.

Q    Do you see some pink lace on the floor?

A    There is something on the floor.  I can't see what it is.

Q    Does it appear to be consistent with pink lace --

A    It could --

Q    -- lingerie?

A    Yeah, it could be.  Yes.

Q    The same pink lingerie that she's wearing in 0059 and 0065(1)?

A    It could be, yes.

Q    Yeah.  The wall color in the background is the same on all three images?

A    Yes.

Q    The drapes are the same in all three images?

A    They look like it, yes.

Page 29

Q    The house plants in the image all appear to be the same house plants?

A    The ones that I can see, yes.

Q    So all indicia seem to be that these were taken at the same location at approximately the same time?

A    No, I don't know that.

Q    Okay, all right.

A    This is a costume.

COURT REPORTER:  I'm sorry, ma'am.  Could you repeat that, please?

THE DEFENDANT:  This is a costume.

BY MR. ROBERTS:

Q    What does that mean?

A    Something that you can put on every time it's time to put it on.

Q    Sure.  All clothes are costumes in that way, though, right?

A    No.

Q    I mean, you can put on the dress that you are wearing any time that you want, right?

THE DEFENDANT:  Do I have to answer that?

MR. WILSON:  Yes.

MR. ROBERTS:  Yes, you do.

A    Yes.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 30

Q    Okay.  So to the extent that these appear to be -- and I guess I'll just have to ask it in a hypothetical way:  These appear to be part of the same photo shoot.  The model depicted does appear to have, as you put it, shaved her pubic hair, correct?

A    No, not in all three images.  I don't know that it's the same photo shoot.  I think it's likely it's not the same photo shoot, and it is not necessarily something that happened all at one time.  And you are putting words in my mouth, and I --

Q    Ms. Dully -- Dr. Dully, you realize you are under oath today, correct?

A    Yes, I am under oath --

Q    And you swore to tell the truth?

A    -- and you are telling me what I said, and that's not what I said.

Q    Okay.  And you are sworn to tell the truth.  What makes you believe in the original image, knees-to-chest, that her pubic hair grooming is any different than it is in 0059?

A    Because it is different, it is not the same view, and she looks younger to me.

Q    She looks younger to you?  What do you mean by that?

A    She has an immature face, she has large

Page 31

eyes, she has a prominent forehead, she has her labia very well exposed, and she only has a little tiny bit of anterior pubic hair, which is exactly what early pubic hair in puberty looks like.  She still looks young to me.

Q    Why --

A    She's not old- --

Q    Why didn't you include any of that in your letter?

A    No one asked.  You didn't ask.  I did not change my opinion.  It's there in the letter.

Q    So let's just break it down.  On 0059, you agree that there is a -- as you put it, a possibility that she is groomed, correct?

A    Which one is 0059?

Q    That's the one where you can see what I think in common parlance is referred to as a landing strip of pubic hair.

A    Okay, that's the middle image here?

Q    Right.  Do you agree that there is at least a possibility that that is -- that she has shaved or used some sort of grooming?

A    Yes, I said that.  Yes.

Q    Yeah.  Generally, pubic hair doesn't grow

Page 32

in that way, like in a straight line, a straight line up towards your belly button, does it?

A    Not as uniformly, no.

Q    No.  So -- just so we understand and it's clear for the record, if a model has groomed, you cannot offer any opinions about the sexual maturity rating of that model as it pertains to the development of pubic hair, correct?

MR. WILSON:  Object to form.  But go ahead.

A    It is an appearance, and it was not just one photograph.

Q    Well, according to you, on the day that 0059 was taken -- because you, I think, testified earlier that it is likely that these were taken on different days, correct?

A    I think it's likely that the knees exposure is younger but not necessarily the same time.

Q    So like developmentally younger, like her facial features are different, things like that?

A    Yes.

Q    So we're talking years younger in your opinion?

A    No, not necessarily.  Puberty is all happening in a year or two.

Q    Okay.  So I just want to make sure:  Under

Page 33

oath, your testimony is it's your opinion right now that the knees-to-chest was taken how much earlier than 0059 and 0065(1)?

A    It appears to be earlier.  I cannot say how many days or weeks or months.

Q    And so when I read your letter of February -- of April 5th where you write that these two additional photographs confirm your prior opinion, that would be incorrect then, correct?

A    No.  She is older and she was younger, and that's consistent.

Q    But your prior opinion was that she was Grade IV in the -- in the February 22nd letter, correct, a sexual maturity rating IV?

A    That is what it says.

Q    You actually say in your letter that from the second two images, 0059, 0065(1) -- you say III to IV in those images.  So you actually in your letter place her as being younger in the 0059 and the 0065 [sic] than in the knees-to-chest version of the image, correct?

A    Can you say that again?  I didn't follow it.

Q    Yeah.  So on the original image, the February letter that you wrote, you placed the sexual

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 34

maturity rating at Grade IV, correct?

A    That is what I typed.

Q    Now, you've testified today that you believe that the model was younger, developmentally younger --

A    Yes.

Q    -- in the knees-to-chest picture that was subject of the February 22nd letter, correct?

A    Yes, she appears younger.

Q    But in your letter, you actually put -- of April 5th, you actually state that it confirms your opinion that she's a Grade III or IV by looking at the 0059 and the 0065(1) images, correct?

A    Yes.

Q    So you actually have those as being developmentally younger than the original picture, of the knees-to-chest picture?

A    Well, I did not change my statement in terms of her age.  But based on those photographs, I didn't type the exact same thing, no.

Q    What is the appearance of the model -- sexual maturity rating -- what is the appearance of her genitals in terms of sexual maturity rating in the 0059?

A    Okay, which one is the 0059?

Page 35

Q    That's the one with the straight line of pubic hair --

A    Okay, sorry.

Q    -- anterior, I think, to her genitals.

A    She has midline pubic hair development and anterior, like a low maturity that could be a III. That is a distribution that we do see.

I do agree that there is a uniformity that suggests that she could also be altered in one of the ways you already suggested.

Q    And if she has altered her pubic hair, you could not offer any appearance -- any opinion even of her appearance, could you?

A    It's her appearance, and a III and a IV is possible.  And I am told it's the same child, and I've already said she's a IV.  And now this view, she could also be a III.  But I don't think it fits perfectly, no.

Q    That is not my question.

A    She --

Q    Ma'am, that is not my question.

A    What is your question?

Q    In your -- the original part of your deposition, we went through, I thought, in quite a bit of detail regarding the difference between III,

Page 36

IV, and V, the appearance of pubic hair development. And you made it very clear in your deposition that the distinction between a IV and a V or a III and a IV was the distribution of the pubic hair, correct?

A    Yes.

Q    All right.  If the pubic hair has been removed so that you cannot see the biological -- the natural distribution of pubic hair, how could you possibly offer an opinion about a sexual maturity rating based on the pubic hair distribution?

A    Because it's based on appearance.

Q    Right.  But the appearance here is that she has been shaved.

A    That is your opinion.  I think it's possible --

Q    Well, you've acknowledged -- you've acknowledged that that is a -- that that is a possibility here that is consistent with grooming, that this image is consistent with grooming.

And my question to you is:  If you saw that she had been groomed, why would you not tell Detective Preston, "Hey, I can't help you here; she's being groomed; I don't know what her pubic hair distribution is"?

MR. WILSON:  Object to form.

Page 37

A    I still have the first image.

Q    Let's talk about the first image.  Before we do that, I want to share what was originally an exhibit.  It was Exhibit 3 -- Exhibit 3 to your -- to this deposition.

(Plaintiff's Exhibit No. 3, previously marked, was identified for the record.)

BY MR. ROBERTS:

Q    Now, you previously testified that this diagram roughly -- and it is a pen and ink drawing -- displays the development through the stages of pubic hair and breast development, correct?

A    It's close, yes.

Q    All right.  And we talked in detail that the development of -- and this is what you said, was a triangle or an inverted triangle in the area above the genitals was the determining or one of the determining factors in assessing whether or not someone was a sexual maturity rating of a III, IV, or a V, correct?

A    If you only have an anterior view, that is what you see.  And you see it on your diagram on III, IV, and V.

Q    Right.  So I want you to go back now to the knees-to-chest image, the original image that

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 38

Detective Preston brought to you on February 22nd.

MR. ROBERTS: Tell me when that's up. I know it takes some time.

MR. WILSON: It's up. All three images are still open.

MR. ROBERTS: Okay, they're still up.

BY MR. ROBERTS:

Q    Isn't it true, ma'am, that in the knees-to-chest position, you cannot see the anatomical area of the body which is displayed in these diagrams?

A    In your limited diagram, it does not show the same view.

Q    It does not show the area above the genitals, does it?

A    You mean the photograph?

Q    I mean the photograph, yes.

A    It does not. It's not showing the same view at all.

Q    It is impossible for you to tell whether or not that is a III, IV, or V distribution of pubic hair based on the positioning of that model in that photograph, correct?

A    No, not true.

Q    Can you see how the pubic hair is

Page 39

distributed in the inverse triangle that you've described earlier in your testimony?

A    It is not the same view, no.

Q    So you can't?

A    Not with your limited diagram, no.

Q    Is there another diagram that you would refer me to?

A    There are lots of them.

Q    And are there any diagrams that would show females in a knee-to-chest positioning?

A    There certainly are, and there are other positions as well.

Q    Tell me about those. Can you tell me the names of those diagrams? Where can I find them?

A    There are some.

Q    I can't -- I can't see them. What -- can you just tell me the name of the book you are referring to?

A    "Assessment of Sexual Maturity Stages In Girls," American Academy of Pediatrics.

Q    And in that book, does it have diagrams of where doctors are assessing a sexual maturity rating of girls from images where they are on their knees-to-chest, in a knees-to-chest position?

A    It has similar exposures. But, no, they're

Page 40

certainly not in that position.

Q    Okay. Why is that?

A    Because this is not pornography. That is.

Q    Right. The entire test that you are talking about was never intended to use it as you are using it, correct?

A    That is not necessarily true.

Q    Well, the book you just referred to me is a clinical -- clinical treatise, correct?

A    It has diagrams and photographs and answers your question.

Q    But you are not answering my question, Dr. Dully, which is: The book that you are referring to is designed to help clinicians assess the sexual maturity rating of their patients in a clinical setting, does it not?

A    Including me, yes.

Q    And it's also designed to -- really what it's designed to do is to ensure that young people are appropriately developing through the stages of puberty and to help diagnose any sort of disorders that they may have in that regard?

A    In clinical medicine, that is how I use it.

Q    That is, in fact, what the test was designed to do, correct?

Page 41

A    That was what Dr. Tanner did in the 1950s. It certainly has another purpose now as well.

Q    But that other purpose is not to provide reliable opinions on the actual age of models depicted in pornographic images, is it?

A    Only appearance.

Q    Right. And -- and appearance -- there's really no value to your opinion regarding appearance, is there?

A    I am not sure -- I am not doing the investigation. I provide the consultation because I am required to and requested to.

Q    But I am not -- I'm going to ask you the question again.

There really is no value to your opinion regarding the appearance of a sexual maturity rating in a pornographic image, is there?

MR. WILSON: Object to form.

A    I don't --

Q    It's a yes or no. Is there value or is there not value?

A    There is value. In my opinion, there is value.

Q    Okay. You can't tell me if these pictures appear to be from the same day, can you?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 42

A    I cannot.

Q    You can't really tell me -- you don't actually believe they are from the same photo shoot?

A    I do not.

Q    You think that in between some of these photographs, this model groomed her pubic hair; is that right?

A    I think that she matured, and she may have groomed.  I cannot rule that out because I would normally ask the patient.

Q    And is there any evidence, like actual evidence, for that testimony that you have today?

A    Well, from many hours of it, I would say, yes.

Q    Tell me -- tell me:  What is the evidence that -- between the original knees-to-chest photograph and 0059 that this model groomed her pubic hair?

A    I don't know that she groomed her pubic hair.  I think you are testifying she did, but I don't know that.  I --

Q    Okay.  And I guess that is my point, right?  That if you can't even tell if somebody has groomed or not groomed, what is the value of your testimony?

A    Ask law enforcement.  They ask for these

Page 43

all the time.

Q    I am asking you.  You -- you hold yourself out as an expert to law enforcement in sexual maturity rating, correct?

A    Yes.

Q    And you can't even tell me, as we sit here today with hindsight, whether or not this model in 0059 has groomed her pubic hair; you can't tell me that, can you?

A    No.

Q    So what -- if you can't even say that, how can you in good faith offer any -- any opinions about the sexual maturity rating of these models?

MR. WILSON:  Object to form.  And your tone is getting awfully accusatory for a deposition.

MR. ROBERTS:  All right.  Well, hold on.  For the record, it is accusatory.

THE DEFENDANT:  Yes, I would agree.

BY MR. ROBERTS:

Q    I am telling you, it is accusatory.  You cannot tell me whether or not this woman has groomed, can you?

A    That is what the investigation is for.  Asked and answered.

Q    I am not asking about the investigation,

Page 44

Dr. Dully.  I am asking you.

A    Not what I do.  That is not what I do, and I have never offered myself as an expert in pubic hair grooming.

Q    Ma'am, I am going to ask you to go back to your letters in this case.  You say, "She does not appear to be shaved."

A    She does not --

Q    You offered that opinion?

A    -- appear to be shaved.  Yes, she does not --

Q    And there's no basis for that opinion; is there?

COURT REPORTER:  Sir, I didn't get your question.  This is the court reporter.

BY MR. ROBERTS:

Q    You offered the opinion to Detective Preston that this model was not shaved; isn't that true?

A    That's my opinion.  It is still true.

Q    But today you can't tell me whether or not she was shaved or not?

A    I cannot.  That is what the investigation is for.

Q    Do you understand that most people

Page 45

generally understand that to be a false statement?  If you told the detective something and now you say, "I don't know if it is true or not," that would be a false statement, wouldn't it be?

A    No.  It is a statement for investigation.

Q    Do you endeavor to give truthful statements to an investigation?

A    Of course.

Q    Why would you say that this model does not appear to be shaved if you cannot tell whether or not she was shaved?

A    We're talking about two different images.  So the first image, she does not appear to be shaved.  The second image, she could be groomed.  I can't say for sure, and the investigation should clear that up.

Q    How would an investigation clear up whether or not she was shaved on the day of this image?

A    When they find her, they can ask her, if they find her.

Q    Why did you not include in your report when you were talking and describing 0059 that this image may represent that it appears she may have groomed or shaved, as you put it?

A    I find it is also possible that she is a III.  I did not know which it was, but it is based on

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 46

appearance.

Q    But the appearance -- in every other image, you talk about whether or not they appear to be shaved or not shaved.

I am asking you:  In regards to 0059, why did you not include in your report that it may be that this model has shaved?

A    I don't know.  I don't see that as my expertise.  I think that that needed more investigation.  And that was clearly what was, you know, probably underway because she was back for a second time.

Q    Is it true that you only include a notation on shaving when you say that they do not appear to be shaved?

A    No.  I do that on every medical assessment.

Q    Well, then, why didn't -- I am going to ask you again.  If you do that on every medical assessment, and 0059 you have acknowledged may be shaved, why did you not -- why did you not note that?

A    The comment I make is if they appear to be shaved and usually the answer is yes.

And in this case, I didn't think I could know that statement and the investigation needs to proceed.  In photograph number one, she does not

Page 47

appear to be shaved.

Q    But you don't -- let me ask you this.  If you look at 0059 and the original image, knees-to-chest --

A    The knees-to-chest one, the first one -- yes.  Go ahead.

Q    -- and 0059 that has the very regular, vertical strip of pubic hair, okay, those two presentations of pubic hair are perfectly consistent, correct?

A    No.  They are consistent with a change in age and a change in habits, potentially, but they are not, you know, the same thing twice, no.

Q    The original knees-to-chest image does not show the area of pubic hair that is depicted in 0059, does it?

A    Ah, let me see here.  It's not exactly the same, but the views are -- I would say the second photo is a little more exposed than your diagrams, and then the first photo is a completely different view.

Q    It is a completely different view, and that view hides the area that is exposed in 0059, correct?

A    Partially.

Q    Yeah.  To the extent that you can't tell

Page 48

what her pubic hair looks like above the area that is exposed, can you?

A    Above what area?

Q    There is an area of exposed pubic hair in the original knees-to-chest image, correct?

A    I --

Q    You can see pubic hair exposed in that image, can you not?

A    At the very top of her labial opening, yes.

Q    Above that area of exposed pubic hair, you cannot see that area because of her body positioning, correct?

A    Up towards her belly button and her lower abdomen, I cannot see those areas.

Q    And so it may be that her pubic hair is exactly the same in Image 1, where she has got the knees to the chest, as it is in 0059; there is no way for you to know because you just can't see that area, can you?

MR. WILSON:  Object to form.

A    I disagree.

Q    Okay.  You said earlier that Detective Preston told you that this was the same model.  Do you recall that testimony?

A    Yes.

Page 49

Q    Were you not able to surmise from your review of these images that it was the same model?

A    I suspected they were the same, and she said yes.

Q    Do you agree?  Is there any question in your mind that they are the same model?

A    Well, they appear to be the same model. That's all I have.  But investigators would know better.

Q    When you say "investigators," ma'am, you are a forensic investigator in this case, are you not?

A    I am not.

Q    You didn't offer forensic opinions in this case to Detective Preston?

A    A forensic medical opinion.

Q    Did you offer a forensic medical opinion to Detective Preston in this case?

A    Yes.  On her request, yes.

Q    So you are part of the investigation; you agree with that?

A    It would appear that I am.

Q    Did you not know that at the time?  Did you not realize that at the time?

A    I knew that there was some likelihood, yes.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 50

Q   Okay.

A   I did not know what was happening next.

Q   Now, you say -- you have talked about -- and we talked about this in appearance.  And you have testified, I think to be fair, that in your opinion it was obvious that you were not offering any opinions about the actual age of the models in question from the way you wrote your reports.  Did I understand that correctly?

A   I think I am pretty clear that it is appearance.

(Plaintiff's Exhibit No. 4, previously marked, was identified for the record.)

BY MR. ROBERTS:

Q   Okay.  I want to share again Exhibit 5 -- I mean, I am sorry, Exhibit 4 from the original deposition, and let me go to the February 22nd.  I am going to read a line.  You say, "This female child appears younger than the age of 18."

Is that what you mean when you say "appears," that makes it obvious that you are just talking about appearance, not her actual age?

A   Yes.

Q   Okay.  April 5th, and I am moving down to the third letter in our exhibit, in the second

Page 51

paragraph you wrote, "This image shows a female child with her black top parted and her underwear down around her parted thighs, exposing her genital area clearly."

You didn't use the word appear in that sentence.  Why not?

A   I don't know why not.  Maybe I did or maybe I didn't.  What does it say?  It is very easy to see.  She has -- she's prepubertal.

Q   You say, "This image shows a female child with her black top parted and underwear down around her parted thighs, exposing her genital area clearly," but you don't say anything about appearances or appear in that.

A   "She appears to have no pubic hair development in" --

Q   Right.  But did you call her a female child?  Do you see if I read that sentence how a person might interpret that as you saying that this person is a child, an actual child?

A   Well, I hope so, yes, but I don't know that.

Q   Wait, wait, wait, wait.  You hope that someone would interpret this as you -- as you offering the opinion that this was actually a child,

Page 52

like her actual age was under the age of 18?

A   Her age is indeterminant.  But she is well under the age of 18, and that is her appearance.

Q   So are you offering an opinion now on this image that the actual age of the model -- not just the appearance, but the actual age of the model is under the age of 18?

A   No.  Her appearance is under the age of 18 very clearly.

Q   Because she doesn't have pubic hair?

A   We'll need to pull up the image because you are missing the basics.

Q   I am missing what?

A   The basics.

Q   I am missing the basics?  Like, what are the basis?

A   I am pulling up the image so I can review them with you.  Would you like to pull yours up?  I'm not -- what is this one?  Is this the DuckDuckGo one?

Q   Correct.  This is the one with no face, no breasts, only a magazine cover with belly button to knees.  Tell me:  What am I leaving out?

MR. WILSON:  Before she answers, I am pulling up on the laptop screenshot 20230122_174408DuckDuckGo.jpg which was listed in

Page 53

Detective Preston's deposition as 8-E.  And it is focused on the top image that has been colloquially referred to in this case at the Bay Heart image.

MR. ROBERTS:  Thank you, John.

(Exhibit 8-E, previously marked in Detective Preston's deposition, was identified for the record.)

BY MR. ROBERTS:

Q   So you said that I was leaving stuff out.  What am I leaving out?

A   This child has no pubic hair.  It is a very clear view.  She has the labial majora that meet right in the middle.  She does not have labial minora development as an older child or teen would have.  And you can also see her hand.  And she is a child by looking at this.

This is an appearance.  This is what they look like on the exam table.

Q   You keep saying this is a child.  But you are not actually testifying that in chronological age, this person is under the age of 18, are you?

A   I am not giving a chronological age.  I am telling you what she looks like.

Q   Right.  And so when you say "what she looks like," you are talking about a frontal view of the

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 54

genitals where she is vertically standing I think on her knees, correct?

A    Yes.  It's not just frontal.  You can see her labial majora and the cleft between them and her buttocks behind those a little bit, just the medial portion, because her legs are parted.

Q    I want you to Zoom in on that image for me.

MR. WILSON:  On?

BY MR. ROBERTS:

Q    When you Zoom in, I want you -- I want you to see how far you can Zoom in before it becomes pixilated.

A    On this particular -- yeah.

Q    You testified earlier in your deposition that if the quality of the photograph isn't good enough, you wouldn't be able to see things like a razor burn or stuff like that.

I am going to ask your opinion:  Is quality of this photograph good enough for you to see whether or not there's evidence of grooming, shaving, waxing, those kinds of things?

A    Yes.

Q    It is good enough?

A    Yes.

Q    Okay.  And so was that a misstatement when

Page 55

you said, "This image shows a female child with her black top parted and underwear down around her parted thighs, exposing her genital area clearly?  Did you mean to say, "This is what appears to be a female child"?

A    This appears to be a female child, and I specified that.  She has no pubic hair development.  None.

Q    And you say here again, "She does not appear to be shaved"?

A    She does not.

Q    And what is that based on?

A    She is immature.  She does not need to shave.

Q    Has anyone related -- you know that this is an adult, right?

MR. WILSON:  Form.

A    No, I don't know that.  You are saying so.

Q    Well, not just me.

A    I don't know that.

Q    Okay.  You are saying, though, that this child doesn't need to shave; that's your -- that's your medical opinion today?

A    My medical opinion is she is so immature, she does not need to shave and she does not appear

Page 56

shaved.  She has all the immature anatomy appearance of a child who has not entered puberty.

Q    And you can tell all of that by this photograph?

A    Yes.

Q    And if I showed you a passport and the date of this picture, you would still say that she is prepubescent?

A    Well, I would not know when this picture was taken versus the passport picture taken that --

Q    No, I just said -- I just told that to you.  I said if I -- if I showed you the passport and the date that this photograph was taken -- it's actually on the image that you are looking at.

But if I showed you that, you would disagree and you would say, "No, no, she's not an adult"?

A    I would -- I would not presume that those are the same two people.

Q    That is not my question.  You would say, "I don't care what her passport says, I don't care what the date of the photograph is, this is not an adult"?

A    This does not appear to be an adult, and I do not know if there is a passport linked to it or not or if it's a valid passport.  I don't know.

Page 57

Q    Do you know whether or not she waxed?

A    She does not need to wax.

Q    Do you know if this image has been digitally altered?

A    It doesn't appear so, but there are other experts to look at that.

Q    When you say, "it doesn't appear so," what is that based on?

A    How it looks.

Q    Do you have any expertise in that?

A    In how it looks?  Yes.

Q    In what a digitally altered photograph looks like?

A    I do not have the expertise to find out if that's occurred or not.

Q    Why would you be willing to offer an opinion about it appearing not to be digitally altered, then?

A    Because it doesn't appear to be digitally altered.

Q    What do you mean --

A    But there are other experts that can look at that.  It doesn't --

Q    But I am asking you.  You have said it.  What is your basis for saying that?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 58

A    This is what little girls look like.  No alteration required or involved.

Q    So I'm very -- you're looking at me in this way and I will be honest with you, I am confused by your testimony, because now you seem to be very emphatically offering an opinion about the actual age of this person and not the appearance.

A    Well, that's your opinion, but that's not what I have said.  She appears to be a child, and she appears to be a child for the reasons that I have stated.  And I have no burden to provide computer-based testimony or expertise in that area.

        This is the beginning of looking at images.  This is not necessarily -- sorry, the conclusion that would be reached if a good investigation occurred.  I am not involved in that.  I don't know how that went.

Q    So you -- you indicate in this letter, you say, "She appears to have no pubic hair development."  Why do you put that she does not appear to be shaved?

A    Because she does not.

Q    No, but today you have testified that she doesn't need to shave.

A    She does not appear to need to shave.  Her skin is perfectly smooth.

Q    Why didn't you put that in your report?

Page 59

A    Because that is more information for testimony.  I don't put all the transcript [sic] that I might say in the future in one letter.

Q    So these letters don't include the basis -- all of the bases for your opinions?

A    No.  It is not possible.

Q    Okay.  So "she does not appear to be shaved," that was just -- you just wrote that -- even though you didn't think that she needed to shave, you say "she does not appear to be shaved."  Because to me that sounds like you are saying, "Hey, she might shave but it appears like she hasn't shaved."

    MR. WILSON:  Object to form if that -- if there was a question there.

    THE DEFENDANT:  I think asked and answered would be good.

    MR. ROBERTS:  I think you are not an attorney.

    THE DEFENDANT:  I think you are right.

BY MR. ROBERTS:

Q    "She does not appear to be shaved" -- "she does not appear to be shaved," why did you write that?

A    Because she does not appear to be shaved.

Q    Does she appear to be waxed?

Page 60

A    No.  She has perfectly smooth skin.  There are no signs of a pubic hair that would still be there.  There's no folliculitis.  She does not have the signs of somebody who is doing things that they don't even need to do.  She is a -- looks like a child.

Q    We talked a little bit earlier in your deposition the last time we were here about your opinions regarding the model who had the Grade IV to V breasts, but you had her at sexual maturity I.  Do you recall that testimony?

A    Yes.

Q    What do you recall about it?  You are shaking your head for a reason, I guess.  What do you recall about it?

A    I said she could have mature breasts but I could not see them well, so I did not assess them for her maturity rating.  So I can see in that statement that she could be mature which would be, you know, a IV or V.

Q    You said you did not assess her breasts for a sexual maturity rating.

A    Correct.  You cannot see it, which is what my statement says, as I recall.

Q    Well, you do --

Page 61

A    That's what I said in the last deposition as well.

Q    You do say that she could be a sexual maturity rating of a IV or V.

A    Right.  I just said that.

Q    I mean, it seems like that is an assessment.

A    That she could be a IV or a V?

Q    Correct.

A    No, it is a concession.  It is not an assessment.  It is a concession.

Q    What do you mean by concession?

A    I am conceding that I cannot exactly assess her breast development because I cannot see that well, so she could be mature.  I cannot see that well.  And if she was mature, she could be a IV or a V.

Q    Is that in the same way you couldn't really see the pubica -- pubert- -- pubic hair development in the knees-to-chest image?

A    No.

Q    Do you agree that you couldn't really see the area of pubic hair development in the knees-to-chest photograph?

A    I do not agree.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 62

Q    You think you could see the lower abdomen above the genitals where the thighs meet the lower stomach; you think you could see that in that image?

A    We talked about that, no, and that is not the only thing to look at.

Q    Right.  But it is difficult to see that area, correct --

A    That area --

Q    -- in that image?

A    Yes.

Q    In that image?

A    In that image, that area is not well seen or seen at all, but the rest of the genitals are very well-exposed.

Q    Well, why didn't you give the same concession on that knees-to-chest image that you were talking about with the breasts?

A    Because the genitals are well-exposed, and I can see them and so can you.

Q    But the only opinion that you offer is to pubic hair development.

A    Right.

Q    And you cannot see the area where your pubic hair develops clearly in the knees-to-chest photograph, can you?

Page 63

A    Wrong.

Q    Well, I guess the image speaks for itself. I guess people can just make their own opinion about what it shows.

A    No.

Q    But your testimony is is that it does not show the area where pubic hair begins to develop in children?

A    Yes.

Q    Because your earlier testimony was that it begins in an inverse triangle above the genitals. That was your earlier testimony.

A    That is what you wanted from your diagram which is very limited.  I am trying to help you with your diagram.

Q    Actually --

A    That is not the only exposure, and her knee-chest is not that exposure.

Q    I am going to share with you your deposition transcript.  This is page 37 going into 38.  I am asking you to describe the grades of sexual maturity rating.  On page 37, I ask about III.  And on 38, I ask about Grade IV.  Can you read your answer for the jury, please?

A    I will read my answer, but there is no

Page 64

jury.  Where am I starting?

Q    Ma'am, this very well may be played in front of a jury.  I hope you understand that.

But it is -- the question is:  At line 2 and Grade IV, can you read your answer at 3?

A    What is Grade IV?  Line 2, Grade IV.

Q    Line 3.

MR. WILSON:  Can you give us the page, please?

MR. ROBERTS:  38.

THE DEFENDANT:  Oh, 38.  Line 2 and Grade IV.  Grade IV, that was it on the end.  Okay, Grade IV --

BY MR. ROBERTS:

Q    Page 38, line 3, can you read your answer when I ask you to describe Grade IV?

A    "Grade IV fills out the entire triangle shape of the labial majora, the anterior commissure, and the mons pubis over to, but not involving, where the thighs join the pelvis."

Q    You could not see -- that's your answer, correct; that's not my -- my words?

A    That is my answering you on asking me what the stage is.  That is not about one of the photographs.

Page 65

Q    And then on -- keep that -- keep that there because I ask you:  "What do you mean by triangle?" Can you answer that?

A    Is that a question?

Q    Can you read your answer?  Can you read your answer?

A    "That is the shape when the legs are together of the hair-bearing parts over the mons pubis in front of the anterior commissure.  And on either side, it's wider.  In between the legs, it will come to" -- it's supposed to say -- "a point so that it may look like an inverted triangle."

Q    So I asked you to describe the difference between -- or what a Grade IV was.  You told me about an inverted triangle, correct?

A    From your diagram, yes.

Q    Actually, if you go back and look, I don't think I had shown the diagram at that point.

A    I don't know.

Q    Okay.  Are you answering this question on page 38 based on what my diagram was or were you just answering just what Grade IV is?

A    Well, we need to go back and read, then, because I don't --

Q    Take as much time as you'd like.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 66

THE DEFENDANT:  Lower.  I am getting paged.  Let's see.

A    You were asking me for a basic description, so I was giving you a description by each grade.

Q    And you identified the triangle and distribution of the pubic hair within that triangle, inverted triangle, as the definition for Grade III, Grade IV, and Grade V, correct?

A    Well, that is how we teach the basics, yes.

Q    You cannot see the development of a triangle in the model depicted in the knees-to-chest image, can you?

A    No.

Q    And in the 0059, there is no triangle on that model, is there?

A    No.

Q    And that would indicate the possibility that she has groomed, correct?

A    There is a possibility that she groomed.

Q    And if the model had groomed, you would not be able to use what you described earlier in your testimony as the definition of Grade IV and Grade V?  You would not be able to use that to sexual maturity -- to do a sexual maturity rating of her pubic hair, would you?

Page 67

A    I can't use your oversimplified, basic description that you asked me for as the sole source of information for a completely different exposure.

So the first image of the knee-chest is a different exposure and it is a good one, and she does not appear to have mature pubic hair there.  It is not in the basic diagram that you have.

The subsequent photograph does not look like it is the same moment in time or the same photo shoot, and there is a possibility that she is groomed.

Also, there are children who can be a sexual maturity rating II to III, or III, and it is on either side of the cleft like this.  I think it would be part of the investigation.  Or had she been brought to me, I could have asked her and take it from there.  I don't think that is different than anything I have tried to keep explaining.

Q    So on the date you reviewed these -- let me just ask you a hypothetical question, okay, because I guess we're just not going to agree.

If these images were taken during the same photo shoot at approximately the same time and location, would the fact or the possibility that this model had groomed alter your ultimate opinions that

Page 68

you offered to Detective Preston?

A    I don't know if I had seen them all.  I don't think so because I do think this child in the knee-chest looks younger, and I don't think so.  But, of course, that is not what happened.

Q    Well, on April 5th, you did have all three images in front of you, correct?

A    Not at the same time, but it would appear I had several.  I am sorry, there are so many file names I don't know.

Q    So you are saying at the time of April 5th when you wrote the letter regarding 0059 and zero, zero, six, paragraph one [sic], you formed the opinion that these images were taken at different times?

A    Yes.

Q    And it was your opinion back then that she possibly had groomed between the first knees-to-chest image and then the 059 image?

A    No.  She had aged and developed more pubic hair and could have groomed.

Q    But you formed that opinion on April 5th, 2023?

A    Yes.

Q    You just didn't include it in your -- in

Page 69

your letter?

A    Well, it is included because it doesn't change my original determination on the first photo.  But I didn't go on for pages about it, no.

Q    Well, I am not asking if you went on for pages.  But you didn't say something like, "These pictures appear to be taken at different times, at different ages, of the same model"?

A    I did not say that.

Q    But that was, in fact, your opinion back then?

A    Yes.

(Plaintiff's Exhibit No. 4, previously marked, was identified for the record.)

BY MR. ROBERTS:

Q    Okay.  I am going to share again Exhibit 4, and I am going to go to the first paragraph this time.

This is the YCBLVVFQ.  Can you pull this image up?

(Exhibit 8-A, previously marked in Detective Preston's deposition, was identified for the record.)

MR. WILSON:  I am pulling up on the laptop what was marked in Detective Preston's deposition as Exhibit 8-A, YCBLVVFQ, it looks like,

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 70

underscore 0.

MR. ROBERTS:  Thank you, John.

BY MR. ROBERTS:

Q     Have you had a chance to look at that, Doctor?

A     I see it, yes.

Q     Do you recognize this model as the same model which is the subject of the knees-to-chest and 0059 and 0065(1)?

A     I think she is the same model.  She looks older to me, but I think she is the same model based on appearance.

Q     And the appearance to you is that this is an older version of the model, correct?

A     Yes.

Q     All right.  Despite that, when in the knees-to-chest 0059 you have this model, we'll call her Melania D, as a Grade III or IV sexual maturity rating, now, even though you think that she appears older, you have the same model as a sexual maturity rating of I, prepubescent.

Can you please explain that?

A     That is based on the view of her pubic hair being completely absent.

Q     Right.  But you just testified under oath

Page 71

that looking at her, she appears to be older than when she was depicted in 0059, correct?

A     I think so, yes.  That is my opinion.

Q     This isn't Benjamin Button, though, is it?  I mean, she gets older over time; her puberty gets more developed over time, correct, not less developed?  Do I understand that correctly?

A     Yes.  That would be the normal sequence, yes.

Q     Yeah.  Can you please explain how an older version of Melania D has a lower sexual maturity rating, a prepubescent maturity rating?

A     Well, if she is the same child, then she would be altered.

Q     Is it your testimony that this is an altered image?

A     It could be.  I don't know that it is the same child.  I am assuming that --

Q     I -- sorry, sorry.  I didn't mean to cut you off.  Go ahead.

A     I don't know that it is the same child.  I am assuming that it is possible that she is the same child.

Q     So when you say "altered," what do you mean?

Page 72

A     That her pubic hair is missing if she is the same child because it would appear she had it before.

Q     Well, in this letter, you specifically say she -- in regards to this image, that she does not appear to be shaved.  Was that a lie?

A     Which letter are you talking about?

Q     April 5th --

A     Oh --

Q     -- YCBL.  You told the detective that she does not appear to be shaved.  Today you are testifying that she must be altered in some way.  I am asking:  Was that a false statement that you gave Detective Preston?

A     No, I didn't know it was the same child, if it is.

Q     You just testified, Doctor, that you believe that this is the same child but older.  Is that not your opinion?

A     I testified that this could be the same child in my opinion, but I don't know.

Q     So you don't know if this model has been shaved or waxed or the image has been digitally altered at all, do you?

A     No, I don't.

Page 73

Q     And yet you told Detective Preston that it did not appear that she had been shaved, right?

A     It does not appear that she was shaved.  It does not appear, no.

Q     But now your testimony is that it does appear that she may be shaved.

A     No, your testimony is.  She is -- if she is the same child and the child had pubic hair before, then we would know that she could be altered one way or the other, or grooming or computer manipulation.  But she does not appear to be shaved in this image.

I -- I don't know if she is the same child.  I do think that's possible that it could be her sister or some other child of a same heritage.  But the investigation should clear that up.

Q     So you had all of these images on the same day, April 5th, correct?

A     Eventually, there were more images, yes.

Q     On April 5th, you had both 0059 and the YCBLVVFQ, correct?

A     Yes.

Q     And at that time, you thought that they might be the same person, correct?

A     I did not know this was the same person but I thought that they could be.  The -- this is not the

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 74

same outfit, the same earrings, the same hair, the same background. None of that is there. This looks pretty different. I don't know if it is the same child or not at a different age in her time of growing up, and it looks pretty clearly like a different photo shoot. If --

Q    Okay. You already testified -- I am sorry. I am sorry.

Yeah, it is clearly a different photo shoot. I agree with you, yes. But I think you testified that you thought that this was an older version possibly of the Melania D that was described in 0059, correct?

A    I am conceding that that is possible.

Q    Right. And so on the day that you wrote this letter, April 5th, you knew -- you knew about this possibility that this was the same model and that she had shaved between the first photo shoot and then this photo shoot, correct? You knew that at the time that you wrote this letter?

A    No, I did not know that. I am still not sure of that. I --

Q    I am not asking you -- sorry, ma'am. I am not asking if you are sure. I said you knew about the possibility that this was the same model that was

Page 75

older; you knew that was a possibility on April 5th when you looked at all of these images, correct?

A    I don't remember assessing that, no.

Q    Well, as we assess it today, do you have any concerns about your affirmative statement to Detective Preston that she does not appear to be shaved?

A    No. I mean, I would concede for a jury that this could have turned out to be the same child at a different age. It's in the separate letter along with the other Bay Heart, and it is not one of the two that she told me was the same female child. And I don't remembering thinking that it was, and it is not the same photo shoot.

Q    Right. Today you've testified that you think maybe it's the same model but she is older, correct?

A    Yeah. And now that I see them in this sequence, it could be the same child. But I said I did not know that.

Q    Well, you had all of these photographs on April 5th in front of you with Detective Preston, correct?

A    And she said the other two were the same child.

Page 76

Q    Right. What I am trying to understand, as we sit here today, is how is it possible that you have given the opinion that an older version of Melania D has a lower or more immature sexual maturity rating?

A    I have conceded that she could be the same person, but I did not know that and I do not know that. If she is the same person, then her pubertal development continued and that would be consistent with -- I'm introducing another term -- her using some sort of alteration, technique, or the computer being done for her.

This was not represented to me as the same person, and I don't know that it is. I am conceding that it could be, but I did not know that and I don't know that now.

Q    While we're conceding things, will you concede that the first three images -- the knees-to-chest, 0059, and 0065(1) -- could be all from the same photo shoot?

A    The child with the knee-chest position looks younger to me. It does not look like the same moment in time to me.

Q    Would you concede that it could be, though?

A    I don't think it looks that way. It is a

Page 77

costume in a set, and the child looks different.

Q    Let me ask the converse. Your entire opinion that you offered to Detective Preston is predicated on the opinion that these photographs were taken at different times, substantially different times?

A    I don't know what "substantially different times" means. I've already said I don't know how many weeks or months might have gone by.

Q    But your entire opinion to Detective Preston is predicated on your opinion that the knees-to-chest photo was taken weeks, months, some time prior to 059 and 0065(1)?

A    That's how it appears to me, yes.

Q    Okay. And when did you develop that opinion that they are different times -- that they were different times? When did you develop that opinion?

A    I don't think I've changed it.

Q    That was your opinion on February -- on April 5th?

A    My assessment on April 5th did not change what I said on February 22.

MR. ROBERTS: Okay. We have been going for a little while. Let me take a break. Everybody

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 78

take a comfort break. We may not have that much longer. Thank you.

THE VIDEOGRAPHER: We're off the record at 4:48 p.m.

(Recess from 4:48 p.m. to 4:55 p.m.)

THE VIDEOGRAPHER: This begins media unit 2. We're back on the record at 4:55 p.m.

MR. ROBERTS: Okay. Dr. Dully, I do not have any other questions. I will turn it over to Mr. Carson.

THE DEFENDANT: Thank you.

CROSS-EXAMINATION

BY MR. CARSON:

Q    Hi, Dr. Dully.

A    Hello. Good afternoon.

Q    Yeah, good afternoon. My name is Matt Carson. We have met one other time I think at your deposition. My law firm represents Detective Preston who has also been sued in this litigation.

I have just a few questions for you just to get on the record kind of what your overall experience is in helping law enforcement as a member of the Child Protective Team.

I think you testified about this a little bit at your first deposition, but there have been

Page 79

other instances where you have had the opportunity to assist law enforcement, correct?

A    Yes.

Q    And would some of those have been when you have been shown pictures, images, videos, and asked to opine on the appearance of the age of the individual in the photograph image or video, correct?

A    Yes.

Q    And those -- have those been mostly close calls? Meaning, does law enforcement come to you when there is -- and, unfortunately, this is, I imagine, part of the work that you do as well as my client -- instances where it is a six-year-old or an eight-year-old or somebody who is, you know, clearly very, very young?

A    That has happened. It used to happen in the past. But now I think most law enforcement agencies are not bringing us the easy ones. They are bringing us the in between children where they might decide to use a medical opinion; they might not.

Q    And is it your understanding that that was a major -- I am sorry, there is background noise.

Is that your understanding, that that is what Detective Preston was asking you to help with?

A    Yes.

Page 80

Q    We talked a little bit about an investigation maybe resulting in the location of the individual in the photograph, correct?

A    Possibly --

Q    Possibly.

A    -- yes.

Q    In your experience, if you know, how often is the individual that is in these photos and these images local or, otherwise, able to be identified and located?

A    I see the patients and am told about the images that have been found but don't see those. But if they have a patient, they will bring me the patient and handle the images on their own.

However, I don't know a number of how many cyber tips go out there and how each law enforcement functions and what the different state laws and UCMJ may be saying now, so I follow law enforcement's leads since they know their local policies and procedures and laws.

Q    Do you understand that at least some of the time that you work with law enforcement in providing an opinion about the age of an individual and an image, that the individual will never be located?

A    I believe that that is probably true very

Page 81

often but I don't know a number.

Q    Does it follow, then, that you understand that a lot of times the investigation is into potential charges for possession of child pornography?

A    That can happen. That is really not my interest. It is in finding the local victims which is the reason that I participate.

Q    Did Detective Preston ever tell you what she was investigating with respect to any of the photographs she showed you?

A    All I knew is this was a National Center For Missing and Exploited Children cyber tip, and that this law enforcement agency had been chosen because there might be proximity. I mean, that is all I knew.

Q    And proximity to what, ma'am, or to who?

A    That maybe this ZIP Code or this area of Florida or that that particular office might have a role to play. I don't know if that's the victim or the possessor or what, but it -- for some reason, the National Center would have picked St. John's Sheriff, and I assume there's a logical reason.

Q    You assist other law enforcement agencies in your general geographic area, correct?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 82

A     Yes.

Q     Like the Jacksonville Sheriff's Office, Nassau Sheriff's Office, that sort of thing?

A     Yes.

Q     Okay.  Same --

A     Clay.

Q     Clay, right.  Same type of work, different law enforcement agencies with a different jurisdiction?

A     Yes.

Q     You understand that when these agencies come to you and ask you to provide your opinion on the appearance of an individual in these images, that they are going to use that opinion, at least in part, in their decision-making moving forward; is that correct?

A     Yes.

Q     For example, if they are going to decide whether or not they are going to seek a search warrant, they might use your opinion in that decision; is that correct?

A     Yes.

Q     In getting the search warrant, they might tell the Judge, "We have shown this image to Dr. Dully, she has these qualifications, and it was

Page 83

her opinion that the individual appeared to be of X or Y age."

Do you understand that that happens from time to time?

A     Yes.

Q     You understand that if you would have looked at any of these pictures and said to Detective Preston that the individual -- let me -- let me start my question all over again.

If law enforcement comes to you and you give an opinion that you believe the individual in an image appears to be 18 years or older, that that would impact the course of the investigation?

A     Yes.

Q     Have you ever been deposed in any other case involving your opinions as it relates to the appearance of individuals in an image?

A     I have testified to them.  The military doesn't do depositions.  They do Article 32s.  And California doesn't do depositions.  I did three in 20 years there.

So, no, I was probably never deposed in these cases, but I was testifying in a handful of them.

Q     And in those cases, were any of those of

Page 84

situations where the individual in the image was not found?

I can ask that in a different way.  Were these possession of child pornography cases?

A     To my knowledge, yes.

Q     Okay.  To your knowledge, was anybody -- law enforcement, anyone else -- ever able to locate the individuals in these photographs?

A     Not to my knowledge, no.

MR. CARSON:  Dr. Dully, that is all the questions I have for you.  Thank you very much.

THE DEFENDANT:  Thank you.

MR. WILSON:  All right.  This is John Wilson for Dr. Dully.  I just have a couple questions for you.

CROSS-EXAMINATION

BY MR. WILSON:

Q     The first is:  Do you know the Plaintiff in this case, William Lee Lawshe?

A     No.

Q     After April 5th when you provided your letters to the detective on this case, did you have any further involvement in the case at all?

A     No.

Q     When was the next time you heard about the

Page 85

case after you authored your April 5th letters?

A     In the Spring of 2024, I was told there had been an article in the newspaper about this particular case, and that's all I knew.

Q     So you didn't participate in a search warrant?

A     No.

Q     And you didn't participate in or were consulted beyond your letters in any sort of decision to make an arrest or file a charge?

A     Not at all.

MR. WILSON:  Thank you.  That is all the questions I have.

MR. ROBERTS:  I just have one -- kind of a follow-up with maybe one or two questions.

REDIRECT EXAMINATION

BY MR. ROBERTS:

Q     But, Dr. Dully, if you were told in this case after rendering your opinions that the models in question had been located and identified and that a licensed attorney in California who was a records custodian had produced age verification information, the dates of the photographs that established that the models were 18 at the time of the images, would you have testified in that case consistent with your

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 86

opinions that you wrote in these three letters?

MR. WILSON:  Object to form.  But go ahead.

MR. CARSON:  Join.

A    I would testify about my work, yes.  But I would concede that I am not the end of the case at all and not part of the investigation determinations.

MR. ROBERTS:  Okay, thank you.  I don't have any other questions.

So we'll order a transcript.  And do you guys want to read or waive, Mr. Wilson?

MR. WILSON:  Do you know what that question is?

THE DEFENDANT:  Oh, I always waive.

MR. WILSON:  Okay.  We'll waive.

THE VIDEOGRAPHER:  Any other transcript orders or video orders, Counsel?

MR. WILSON:  Yes.  One for John Wilson, Dr. Dully's transcript.

THE VIDEOGRAPHER:  We are off the record at 5:06 p.m.  This concludes the deposition.

COURT REPORTER:  Mr. Wilson, are you ordering a copy, then, of the transcript?

MR. WILSON:  Yes.

COURT REPORTER:  Mr. Carson, do you need a copy?

Page 87

MR. CARSON:  No, ma'am.

(Continued video Zoom deposition concluded at 5:10 p.m.)

* * *

Page 88

CERTIFICATE OF OATH

STATE OF FLORIDA          )

COUNTY OF HILLSBOROUGH  )

I, Deborah J. Guest, RPR, Notary Public, State of Florida, do hereby certify that the witness, KATHLEEN M. DULLY, M.D., remotely appeared before me on June 18th, 2025, and was duly sworn and showed her work identification.

Signed the 25th day of June, 2025.

Deborah J. Guest
_____
Deborah J. Guest
Notary Public, State of Florida
Commission Number:  HH 280696
Expires:  August 6th, 2026

Page 89

CERTIFICATE OF REPORTER

STATE OF FLORIDA          )

COUNTY OF HILLSBOROUGH  )

I, Deborah J. Guest, RPR, Notary Public, State of Florida, certify that I was authorized to and did stenographically report the continued remote video deposition of KATHLEEN M. DULLY, M.D., that a review of the transcript was not requested; and that the foregoing transcript, pages 4 through 87, is a true and accurate record of my stenographic notes.

I further certify that I am not a relative, employee, or attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this the 25th day of June, 2025.

Deborah J. Guest
_____
Deborah J. Guest, RPR
Shorthand Reporter

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Index: 0..actual

**0**

0    70:1

0059    14:25
  15:12 20:9,
  14,20 21:19,
  20 24:4
  25:4,16 27:9
  28:18 30:20
  31:13,16
  32:13 33:3,
  17,19 34:13,
  24,25 42:17
  43:8 45:21
  46:5,19
  47:3,7,15,23
  48:17 66:14
  68:12 70:9,
  17 71:2
  73:19 74:13
  76:19

0065    22:5
  33:20

0065(1)    20:9
  24:25 25:4,
  17 27:9
  28:18 33:3,
  17 34:13
  70:9 76:19
  77:13

059    68:19
  77:13

**1**

1    4:19 48:16

12    20:5

15    20:5

18    50:19
  52:1,3,7,8
  53:21 83:12
  85:24

18th    6:6

1950s    41:1

**2**

2    4:20 64:4,
  6,11 78:7

20    83:21

2023    12:3,14
  19:15,22
  20:13 21:11
  22:22 26:5
  68:23

20230122_
174408duckduckgo
.jpg    52:25

2024    85:2

2025    6:7

22    21:13
  77:23

22nd    12:3
  13:23 19:10,
  15 23:3
  33:13 34:8
  38:1 50:17

**3**

3    4:21 37:4,6

64:5,7,15

32s    83:19

37    63:20,22

38    63:21,23
  64:10,11,15
  65:21

3:10    6:6

**4**

4    4:23 18:25
  19:4 50:12,
  16 69:13,16

4:48    78:4,5

4:55    78:5,7

**5**

5    21:14 50:15

5:06    86:20

5:10    87:3

5th    12:14
  18:18 19:12,
  22 20:13
  21:11 26:5
  27:8 33:7
  34:11 50:24
  68:6,11,22
  72:8 73:17,
  19 74:16
  75:1,22
  77:21,22
  84:21 85:1

**8**

8-A    69:21,25

8-B    22:25
  23:10,23
  24:23

8-C    15:3
  25:12,16

8-D    23:10
  24:24 25:12,
  17

8-E    53:1,6

**A**

abdomen    48:14
  62:1

absent    70:24

abuse    9:10,14

Academy    39:20

accepted    26:15

accoutrements
  25:22

accusatory
  43:15,17,20

acknowledged
  36:16,17
  46:19

activities
  8:25 9:14

activity    8:8

actual    12:24
  14:9,20 41:4

42:11 50:7, 22 51:20 52:1,5,6 58:6

**additional** 12:16 19:23 26:7 33:8

**administrative** 7:15,23

**adult** 55:16 56:17,22,23

**affidavit** 4:20

**affirmative** 21:10 75:5

**afternoon** 6:5 78:15,16

**age** 12:24 14:9,20 20:6 34:19 41:4 47:12 50:7, 19,22 52:1, 2,3,5,6,7,8 53:21,22 58:6 74:4 75:10 79:6 80:23 83:2 85:22

**aged** 68:20

**agencies** 79:18 81:24 82:8, 11

**agency** 81:14

**ages** 69:8

**agree** 19:14 23:24 25:8 31:13,21 35:8 43:18 49:5,21 61:22,25 67:21 74:10

**ahead** 18:8 24:19 32:9 47:6 71:20 86:2

**allegations** 9:15

**alter** 67:25

**alteration** 58:2 76:11

**alterations** 21:9

**altered** 35:9, 11 57:4,12, 18,20 71:14, 16,24 72:12, 24 73:9

**altering** 13:14

**American** 9:8 39:20

**anatomical** 38:10

**anatomy** 56:1

**ankles** 23:19

**answering** 40:12 64:23 65:20,22

**answers** 40:10 52:23

**anterior** 16:23 20:12 31:3 35:4,6 37:21 64:18 65:9

**apologize** 19:7

**appearance** 13:4,20 14:5,6 16:9, 19 17:5 32:10 34:21, 22 35:12,13, 14 36:1,11, 12 41:6,7,8, 16 46:1,2 50:4,11,22 52:3,6,8 53:17 56:1 58:7 70:12, 13 79:6 82:13 83:17

**appearances** 51:14

**appeared** 27:21 83:1

**appearing** 57:17

**appears** 15:22 16:5 33:4 34:9 45:22 50:19,21 51:15 55:4,6 58:9,10,18 59:12 70:19 71:1 77:14

83:12

**applies** 8:15

**appointment** 12:1

**appropriately** 40:20

**approximately** 27:22 29:5 67:23

**April** 12:14 18:18 19:12, 21,22 20:13 21:11,14 26:5 27:8 33:7 34:11 50:24 68:6, 11,22 72:8 73:17,19 74:16 75:1, 22 77:21,22 84:21 85:1

**area** 37:16 38:10,14 47:15,23 48:1,3,4,10, 11,18 51:3, 12 55:3 58:12 61:23 62:7,8,12,23 63:7 81:18, 25

**areas** 48:14

**arising** 10:3

**arms** 28:8

arrest   85:10

article   4:20
  83:19  85:3

assess   40:14
  60:17,21
  61:13  75:4

assessing
  37:18  39:22
  75:3

assessment
  39:19  46:16,
  19  61:7,11
  77:22

assist   79:2
  81:24

assume   5:9
  81:23

assuming   17:22
  71:18,22

attached   4:10,
  17  5:10
  15:10

attempting
  11:22

attempts   8:19

attorney   10:3
  59:18  85:21

attorneys
  10:5,6

authored   85:1

---

**B**

B06f   22:15,17

B06fe687   23:21

back   18:19
  26:23,25
  27:2  37:24
  44:5  46:11
  65:17,23
  68:17  69:10
  78:7

background
  15:18  28:20
  74:2  79:22

bare   28:8

based   17:4
  34:19  36:10,
  11  38:22
  45:25  55:12
  57:8  65:21
  70:11,23

bases   59:5

basic   66:3
  67:1,7

basics   52:12,
  14,15  66:9

basis   44:12
  52:16  57:25
  59:4

Bay   53:3
  75:11

begin   4:14
  6:2

---

beginning   16:8
  58:13

begins   6:7
  12:10  63:7,
  11  78:6

behalf   9:5

belly   13:8
  32:2  48:13
  52:21

Benjamin   71:4

biological
  36:7

bit   31:2
  35:25  54:5
  60:7  78:25
  80:1

black   51:2,11
  55:2

blue   19:6

Board   9:8

body   38:10
  48:11

book   39:17,21
  40:8,13

break   31:12
  77:25  78:1

breast   37:12
  61:14

breasts   52:21
  60:10,16,21
  62:17

bring   80:13

---

bringing
  79:18,19

brought   21:7,
  10  38:1
  67:16

building   7:13,
  16,17,23

buildings   7:19

burden   58:11

burn   54:17

buttocks   54:5

button   13:8
  32:2  48:13
  52:21  71:4

---

**C**

California
  83:20  85:21

call   5:18  9:9
  15:19  51:17
  70:17

called   5:17

calls   79:10

camera   23:19

Cameron   6:12

care   56:21

Carson   5:17,
  19,20,22
  6:21  78:10,
  13,17  84:10
  86:3,24  87:1

case 4:25 8:15 10:4,9, 13,23 11:23 16:8 17:5 22:25 23:7 44:6 46:23 49:11,15,18 53:3 83:16 84:19,22,23 85:1,4,19,25 86:5

cases 83:23, 25 84:4

Center 81:12, 22

chance 11:4 70:4

change 10:5 21:14 31:11 34:18 47:11, 12 69:3 77:22

changed 77:19

charge 85:10

charges 81:4

chemical 21:8

chest 48:17

child 8:1,3, 4,6 9:10,12, 14,18 17:14, 15 20:2 26:7,14,16 35:15 50:18 51:1,10,18,

20,25 53:11, 14,15,19 55:1,5,6,22 56:2 58:9,10 60:6 68:3 71:13,18,21, 23 72:2,15, 18,21 73:8, 12,14 74:4 75:9,12,19, 25 76:21 77:1 78:23 81:4 84:4

children 7:21 63:8 67:12 79:19 81:13

chose 14:18

chosen 81:14

chronological 53:20,22

circumstances 10:3,13

clarity 4:17

Clay 82:6,7

clear 13:22 14:3,19 32:5 36:2 45:15, 16 50:10 53:12 73:15

cleft 54:4 67:14

client 79:13

clinic 7:16, 17,20

clinical 40:9, 15,23

clinicians 40:14

clog 5:22

close 37:13 79:9

closed 15:23

clothes 24:11 28:6,7 29:17

Code 81:18

colloquially 8:17 53:3

color 15:20 28:20

colored 12:6

comfort 78:1

comment 46:21

commenting 13:20

commissure 64:18 65:9

common 31:18

completely 47:20,22 67:3 70:24

composite 4:23

computer 73:10 76:11

computer-based 58:12

concede 75:8 76:18,24 86:5

conceded 76:6

conceding 61:13 74:14 76:14,17

concerns 75:5

concession 61:10,11,12 62:16

concluded 87:2

concludes 86:20

conclusion 58:14

conducted 6:10 10:11

confirm 20:3 33:8

confirms 34:11

confused 58:4

consistent 28:12 33:11 36:18,19 47:9,11 76:9 85:25

consultation 41:11

consulted 85:9

contacting 18:6,9

**continuation**
 5:8,13,14
 9:21 10:18

**continued**  6:7
 76:9 87:2

**converse**  77:2

**copy**  19:15
 86:22,25

**Corporations**
 10:9

**correct**  12:3,
 7,11,14,20,
 25 13:4,11
 14:10,21
 16:2,12
 17:1,5,18,21
 18:17 20:16
 21:5,12,16,
 17 26:1,13,
 19 30:5,12
 31:15 32:8,
 15 33:9,14,
 21 34:1,8,13
 36:4 37:12,
 20 38:23
 40:6,9,25
 43:4 47:10,
 23 48:5,12
 52:20 54:2
 60:23 61:9
 62:7 64:22
 65:15 66:8,
 18 68:7
 70:14 71:2,6
 73:17,20,23
 74:13,19

 75:2,17,23
 79:2,7 80:3
 81:25 82:16,
 21

**correctly**
 10:24 11:18
 20:22 26:8
 50:9 71:7

**costume**  29:9,
 12 77:1

**costumes**  29:17

**counsel**  4:3
 6:2,15 86:16

**Counselor**  5:12

**couple**  84:14

**court**  6:13,
 16,23 7:4
 22:7 29:10
 44:14,15
 86:21,24

**cover**  52:21

**CPT**  11:20

**crime**  18:16

**CROSS-
EXAMINATION**
 78:12 84:16

**custodian**
 85:22

**cut**  71:19

**cutting**  18:14

**cyber**  80:16
 81:13

————————
**D**
————————

**D2635841644b390**
 21:21

**D263b**  12:10
 22:4

**date**  11:25
 19:10 56:6,
 13,22 67:19

**dates**  11:25
 85:23

**day**  32:12
 41:25 45:17
 73:17 74:15

**days**  32:15
 33:5

**debate**  8:10,13

**debates**  8:14

**Deborah**  6:13

**decide**  79:20
 82:18

**decision**  82:21
 85:9

**decision-making**
 82:15

**DEFENDANT**  7:3
 22:8 27:2,
 11,14 29:12,
 22 43:18
 59:15,19
 64:11 66:1
 78:11 84:12
 86:13

**definition**
 66:7,22

**degree**  17:6

**demonstrative**
 4:22

**depicted**  12:25
 14:10,21
 20:4 21:19
 26:11 30:4
 41:5 47:15
 66:11 71:2

**depictions**
 16:20

**depicts**  15:14

**depilatories**
 21:6

**deposed**  83:15,
 22

**deposition**
 4:11,18 5:9,
 11 6:7,10
 9:21 10:17,
 18,21 11:8
 12:19 13:7
 15:4,11
 23:11 25:13
 35:24 36:2
 37:5 43:15
 50:17 53:1,7
 54:14 60:8
 61:1 63:20
 69:22,24
 78:18,25
 86:20 87:2

**depositions**

83:19,20

**describe** 63:21 64:16 65:13

**describing** 23:15 45:21

**description** 23:5 66:3,4 67:2

**designed** 40:14,18,19, 25

**detail** 35:25 37:14

**detective** 4:11 6:21 9:23,25 11:12,17 12:20 13:22 14:4 15:3,11 18:3,16 23:1,10 25:12 26:4 36:22 38:1 44:17 45:2 48:23 49:15, 18 53:1,6 68:1 69:21, 24 72:10,14 73:1 75:6,22 77:3,10 78:18 79:24 81:9 83:7 84:22

**detectives** 18:15

**determination**

20:3 69:3

**determinations** 86:6

**determine** 17:8

**determining** 16:10 37:17, 18

**develop** 63:7 77:15,17

**developed** 68:20 71:6,7

**developing** 40:20

**development** 13:10 16:16 21:5 32:8 35:5 36:1 37:11,12,15 51:16 53:14 55:7 58:18 61:14,19,23 62:21 66:10 76:9

**developmentally** 32:18 34:4, 16

**develops** 16:23 62:24

**diagnose** 40:21

**diagram** 4:22 37:10,22 38:12 39:5,6 63:13,15 65:16,18,21

67:7

**diagrams** 16:14,20,21 38:11 39:9, 14,21 40:10 47:19

**difference** 35:25 65:13

**difficult** 62:6

**digital** 10:22 13:14 21:8

**digitally** 57:4,12,17, 19 72:23

**direct** 7:8 15:7

**directs** 9:12

**disagree** 48:21 56:16

**discussing** 4:14 24:24

**discussion** 6:4

**disorders** 40:21

**displayed** 25:17 38:10

**displays** 37:11

**distinction** 36:3

**distributed** 39:1

**distribution**

35:7 36:4,8, 10,24 38:21 66:6

**division** 7:20 8:2,5,7

**doctor** 6:23 7:10 16:5 70:5 72:17

**doctors** 39:22

**drapes** 28:23

**drawing** 37:10

**dress** 29:20

**dropped** 5:18

**Duckduckgo** 52:19

**Dully** 4:24 6:8,20 7:5 27:20 30:11 40:13 44:1 78:8,14 82:25 84:10, 14 85:18

**Dully's** 23:4 24:25 86:18

**duly** 7:6

―――――――――
E
―――――――――

**e-mail** 11:16, 24

**e-mails** 11:21

**earlier** 32:14 33:2,4 39:2

48:22 54:14 60:7 63:10,12 66:21

**early** 31:3

**earrings** 26:18,20,21,22 27:24,25 74:1

**easy** 51:8 79:18

**eight-year-old** 79:14

**electrolysis** 21:7

**emphatically** 58:6

**end** 64:12 86:5

**endeavor** 45:6

**ended** 10:20

**enforcement** 9:14 12:7 18:3 42:25 43:3 78:22 79:2,10,17 80:16,22 81:14,24 82:8 83:10 84:7

**enforcement's** 80:18

**engage** 8:25

**engineering** 8:18

**ensure** 40:19

**entered** 56:2

**entire** 12:10 40:4 64:17 77:2,10

**equipment** 7:22

**establish** 9:18

**established** 85:23

**establishes** 9:11

**et al** 6:9

**Eventually** 73:18

**evidence** 22:25 42:11,12,15 54:20

**exact** 14:15,16 21:24 34:20

**exam** 7:21 53:18

**EXAMINATION** 7:8 85:16

**examine** 8:19

**examined** 12:5

**exhibit** 4:14,19,20,21,23 15:3,11 18:25 19:4 22:25 23:23

24:23,24 25:16,17 37:4,6 50:12,15,16,25 53:6 69:13,16,21,25

**exhibits** 4:4,12,17 5:10 23:10 25:12

**experience** 78:22 80:7

**expert** 4:21 21:4 43:3 44:3

**expertise** 13:16 46:9 57:10,14 58:12

**experts** 57:6,22

**explain** 24:6 70:22 71:10

**explained** 12:23 14:8

**explaining** 67:18

**Exploited** 81:13

**expose** 23:19

**exposed** 31:2 47:19,23 48:2,4,7,10

**exposing** 51:3,12 55:3

**exposure** 32:16 63:17,18 67:3,5

**exposures** 39:25

**extent** 30:1 47:25

**eyes** 15:23 31:1

---

**F**

**face** 30:25 52:20

**facial** 32:19

**fact** 9:11 40:24 67:24 69:10

**factor** 16:10

**factors** 37:18

**facts** 10:3,13

**fair** 4:15 50:5

**faith** 43:12

**false** 45:1,4 72:13

**familiar** 8:21

**features** 32:19

**February** 12:3 13:23 19:10,15 21:13

23:3 27:3,6 33:7,13,25 34:8 38:1 50:17 77:20,23

**female** 15:14 16:11 20:2 22:20 23:25 26:7,10 50:18 51:1,10,17 55:1,4,6 75:12

**females** 39:10

**field** 5:5

**figure** 22:9

**file** 4:9 12:9,10 14:25 20:8 22:2,3,11,14,16,17,21,24 23:3,15,16 68:9 85:10

**files** 22:2

**fills** 64:17

**find** 39:14 45:18,19,24 57:14

**finding** 81:7

**firm** 78:18

**fits** 35:17

**floor** 15:24 23:17 26:12 28:9,10

**Florida** 8:6 9:6,19 81:19

**focused** 53:2

**folliculitis** 60:3

**follow** 33:22 80:18 81:2

**follow-up** 85:15

**forehead** 31:1

**forensic** 7:14 8:5,12 49:11,14,16,17

**forensics** 8:9,17,22 9:9

**form** 4:11 16:2 18:8 20:18,21 32:9 36:25 41:18 43:14 48:20 55:17 59:13 86:2

**formed** 68:13,22

**forward** 82:15

**found** 80:12 84:2

**front** 15:12 64:3 65:9 68:7 75:22

**frontal** 53:25 54:3

**functions** 80:17

**future** 59:3

---

### G

**gallery** 5:23

**gave** 72:13

**general** 11:9 13:12 81:25

**generally** 31:25 45:1

**genital** 23:19 51:3,12 55:3

**genitals** 13:9 34:23 35:4 37:17 38:15 54:1 62:2,13,18 63:11

**geographic** 81:25

**girls** 39:20,23 58:1

**give** 7:1 14:8 22:2 45:6 62:15 64:8 83:11

**giving** 53:22 66:4

**Global** 6:14

**good** 6:5 7:10 43:12 54:15,19,23 58:15 59:16 67:5

78:15,16

**gotcha** 25:4

**grade** 16:15,16 33:13 34:1,12 60:9 63:23 64:5,6,11,12,13,16,17 65:14,22 66:4,7,8,22 70:18

**grades** 63:21

**groomed** 16:25 31:14 32:5 36:21,23 42:6,9,17,19,23,24 43:8,21 45:14,22 66:18,19,20 67:11,25 68:18,21

**grooming** 16:2 17:9 30:19 31:23 36:18,19 44:4 54:20 73:10

**grow** 31:25

**growing** 74:5

**guess** 11:11 16:10 30:2 42:22 60:14 63:2,3 67:21

**Guest** 6:14

**guys** 86:10

### H

habits  47:12

hair  13:9,15
  16:2,9,16,19
  17:1,5,10
  20:12,15,21
  21:4,8 30:5,
  19 31:3,4,
  19,25 32:8
  35:2,5,11
  36:1,4,6,8,
  10,23 37:12
  38:22,25
  42:6,18,20
  43:8 44:4
  47:8,9,15
  48:1,4,7,10,
  15 51:15
  52:10 53:11
  55:7 58:18
  60:2 61:19,
  23 62:21,24
  63:7 66:6,25
  67:6 68:21
  70:23 72:1
  73:8 74:1

hair-bearing
  65:8

hairstyle
  28:1,4

hand  6:24
  53:15

handful  83:23

handle  80:14

happen  79:16
  81:6

happened  5:19
  30:9 68:5
  79:16

happening
  32:24 50:2

head  60:14

hear  22:7

heard  8:16
  84:25

heart  9:16
  53:4 75:11

helping  78:22

heritage  73:14

Hey  36:22
  59:11

hidden  5:23

hides  47:23

hindsight  43:7

Hodges  6:12

hold  43:2,16

honest  58:4

hope  51:21,23
  64:3

hours  42:13

house  29:1,2

housekeeping
  5:16

Huseby  6:14

hypothetical
  30:3 67:20

### I

idea  24:5,7,9

identification
  23:6

identified
  15:4 19:1
  23:11 25:13
  37:7 50:13
  53:7 66:5
  69:14,22
  80:9 85:20

identify  15:9

II  16:15
  67:13

III  16:15
  20:4 33:17
  34:12 35:6,
  14,17,25
  36:3 37:19,
  22 38:21
  45:25 63:22
  66:7 67:13
  70:18

image  13:4
  15:1,6,10
  20:14 21:20,
  22,23 22:19
  23:5,14
  24:25 25:5
  26:11 27:6
  29:1 30:18
  31:20 33:21,

24 36:19
37:1,2,25
41:17 45:13,
14,17,21
46:2 47:3,14
48:5,8,16
51:1,10
52:5,11,17
53:2,4 54:7
55:1 56:14
57:3 61:20
62:3,9,11,
12,16 63:2
66:12 67:4
68:19 69:20
71:16 72:5,
23 73:11
79:7 80:24
82:24 83:12,
17 84:1

images  4:9
  10:22 12:25
  14:21 17:16
  18:4,5 19:24
  21:9 24:2
  25:1,6,8,11
  26:7 27:8
  28:21,24
  30:6 33:17,
  18 34:13
  38:4 39:23
  41:5 45:12
  49:2 58:13
  67:22 68:7,
  14 73:16,18
  75:2 76:18
  79:5 80:9,
  12,14 82:13

85:24

imagine   79:12

immature   30:25
  55:13,24
  56:1  76:4

impact   83:13

impossible
  38:20

include   31:8
  45:20  46:6,
  13  59:4
  68:25

included   69:2

Including
  40:17

incorrect   33:9

indeterminant
  52:2

indicia   29:4

individual
  14:21  79:7
  80:3,8,23,24
  82:13  83:1,
  8,11  84:1

individuals
  16:11  83:17
  84:8

information
  59:1  67:3
  85:22

ink   37:10

instances
  79:1,13

intend   11:14

intended   40:5

interactions
  11:10,12

interest   81:7

interject
  22:24  24:19

internet   17:17

interpret
  51:19,24

interview   23:1

interviews
  10:12

introduce   6:15

introduced
  11:19

introducing
  11:17  76:10

inverse   39:1
  63:11

inverted   37:16
  65:12,15
  66:7

investigate
  9:13

investigating
  18:16  26:17
  81:10

investigation
  13:25  17:18,
  21  18:7,21
  21:3  41:11

43:23,25
  44:23  45:5,
  7,15,16
  46:10,24
  49:20  58:15
  67:15  73:15
  80:2  81:3
  83:13  86:6

investigator
  49:11

investigators
  49:8,10

involved   58:2,
  16

involvement
  84:23

involving
  64:19  83:16

IV   16:15  20:5
  33:13,14,18
  34:1,12
  35:14,16
  36:1,3,4
  37:19,23
  38:21  60:9,
  20  61:4,8,16
  63:23  64:5,
  6,12,13,16,
  17  65:14,22
  66:8,22
  70:18

---

**J**

---

Jacksonville
  82:2

job   9:5,7

John   6:20
  23:8  53:5
  70:2  84:13
  86:17

John's   81:22

join   64:20
  86:3

journal   4:19

Judge   82:24

June   6:6

jurisdiction
  82:9

jury   63:24
  64:1,3  75:8

---

**K**

---

Kathleen   6:8
  7:5

kind   78:21
  85:14

kinds   54:21

knee-chest
  63:18  67:4
  68:4  76:21

knee-to-chest
  39:10

knees   28:8
  32:16  48:17
  52:22  54:2

knees-to-chest
  22:19,20

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**          Index: knew..makes

23:18,25 26:12 27:7 30:19 33:2,20 34:7,17 37:25 38:9 39:24 42:16 47:4,5,14 48:5 61:20,24 62:16,24 66:11 68:18 70:8,17 76:19 77:12

**knew** 18:15,20 20:14 49:25 74:16,19,24 75:1 81:12,16 85:4

**knowing** 13:20

**knowledge** 84:5,6,9

**Krugman** 4:21

### L

**label** 15:13

**labia** 31:1

**labial** 48:9 53:12,13 54:4 64:18

**lace** 15:15,16 28:9,13

**landing** 31:18

**laptop** 12:7 14:25 24:23 25:2,16

27:17 52:24 69:23

**large** 17:6 30:25

**largely** 19:15

**lasers** 21:6

**law** 9:13 12:6 18:3 42:25 43:3 78:18,22 79:2,10,17 80:16,18,22 81:14,24 82:8 83:10 84:7

**laws** 80:17,20

**Lawshe** 6:9,19 84:19

**leading** 16:10

**leads** 80:19

**leaving** 52:22 53:9,10

**Lee** 6:9 84:19

**left** 11:8

**legal** 8:19 9:2,5

**legs** 23:18 28:8 54:6 65:7,10

**letter** 4:11 15:2 19:11,12,16,20 23:3 24:4 26:3 31:9,11

33:6,13,16,19,25 34:8,10 50:25 58:17 59:3 68:12 69:1 72:4,7 74:16,20 75:10

**lettered** 4:12

**letters** 4:24 23:4 44:6 59:4 84:22 85:1,9 86:1

**licensed** 85:21

**lie** 72:6

**likelihood** 49:25

**limited** 38:12 39:5 63:14

**lingerie** 15:15,16 28:15,17

**linked** 56:24

**listed** 52:25

**litigation** 6:14 78:19

**local** 80:9,19 81:7

**locate** 84:7

**located** 7:11 80:10,24 85:20

**location** 29:5

67:24 80:2

**logical** 81:23

**longer** 78:2

**looked** 19:11 22:21 75:2 83:7

**lot** 16:6 81:3

**lots** 39:8

**low** 35:6

**lower** 23:18 48:13 62:1,2 66:1 71:11 76:4

### M

**M.D.** 7:5

**machine** 7:23

**made** 7:25 10:11 13:22 14:3 21:10 36:2

**magazine** 52:21

**major** 8:7 79:22

**majora** 53:12 54:4 64:18

**make** 4:13 13:14 32:25 46:21 63:3 85:10

**makes** 30:18 50:21

manipulation 73:10

manner 14:19

marked 15:3 18:25 19:10 23:6,10 24:24 25:12 37:6 50:12 53:6 69:13, 21,24

match 16:20

matches 23:5

Matt 6:21 78:16

matter 6:8

matters 5:16

mature 60:16, 19 61:15,16 67:6

matured 42:8

maturity 13:3, 11 16:11 20:4 32:6 33:14 34:1, 22,23 35:6 36:9 37:19 39:19,22 40:15 41:16 43:4,13 60:10,18,22 61:4 63:22 66:24 67:13 70:18,20 71:11,12

76:5

Meaning 79:10

means 8:12 77:8

media 78:6

medial 54:5

medical 14:13, 20 16:5 17:4 46:16,18 49:16,17 55:23,24 79:20

medication 7:22

medicine 8:18 40:23

meet 53:12 62:2

meeting 11:22 12:2,5,19 13:23 14:4

Melania 70:18 71:11 74:12 76:4

member 78:22

met 10:14 12:13,22 78:17

Michael 6:18

middle 31:20 53:13

midline 16:22 35:5

Mikayla 6:9,22

military 83:18

mind 49:6

mine 14:14

minora 53:13

missing 52:12, 13,15 72:1 81:13

misstate 20:23

misstatement 54:25

miswritten 23:20

model 14:10 15:14,22 16:1,24 17:8 20:14 21:11, 18 22:20 23:17 24:15 25:24 26:3, 10 27:23 30:4 32:5,7 34:4,21 38:22 42:6, 17 43:7 44:18 45:9 46:7 48:24 49:2,6,7 52:5,6 60:9 66:11,15,20 67:25 69:8 70:7,8,10, 11,14,17,20 72:22 74:17, 25 75:16

models 12:25 41:4 43:13 50:7 85:19, 24

moment 22:24 67:9 76:23

mons 64:19 65:8

months 33:5 77:9,12

mouth 30:10

move 19:5

moving 50:24 82:15

—————————

N

names 20:8 22:24 39:14 68:10

Nassau 82:3

National 81:12,22

natural 36:8

necessarily 30:9 32:17, 23 40:7 58:14

needed 46:9 59:9

newspaper 85:3

nice 7:24

noise 79:22

normal   71:8

notation   46:13

note   46:20

notice   26:20

number   22:3
  46:25 80:15
  81:1

**O**

oath   30:12,13
  33:1 70:25

Object   18:8
  20:18 32:9
  36:25 41:18
  43:14 48:20
  59:13 86:2

obvious   8:1
  13:24 14:2
  50:6,21

occurred   57:15
  58:15

offer   8:19
  9:1,5 12:23
  13:2 14:20
  32:6 35:12
  36:9 43:12
  49:14,17
  57:16 62:20

offered   44:3,
  9,17 68:1
  77:3

offering   50:6
  51:25 52:4
  58:6

office   7:14,15
  8:5 81:19
  82:2,3

offices   7:21

old-   31:7

older   33:10
  53:14 70:11,
  14,20 71:1,
  5,10 72:18
  74:11 75:1,
  16 76:3
  83:12

open   8:10
  22:2,3,4,5
  23:16 38:5

opening   48:9

opine   79:6

opinion   13:3,
  10 14:9,20
  18:10 31:11
  32:22 33:1,
  9,12 34:12
  35:12 36:9,
  14 41:8,15,
  22 44:9,12,
  17,20 49:16,
  17 50:5
  51:25 52:4
  54:18 55:23,
  24 57:17
  58:6,8 62:20
  63:3 68:14,
  17,22 69:10
  71:3 72:19,
  21 76:3

77:3,4,10,
  11,16,18,20
  79:20 80:23
  82:12,14,20
  83:1,11

opinions   8:19
  9:2,5 11:8,9
  12:24 13:18
  17:4,20 18:4
  32:6 41:4
  43:12 49:14
  50:7 59:5
  60:9 67:25
  83:16 85:19
  86:1

opportunity
  10:16 79:1

orange   15:19

order   86:9

ordering   86:22

orders   86:16

original   12:18
  16:7 26:11
  30:18 33:24
  34:16 35:23
  37:25 42:16
  47:3,14 48:5
  50:16 69:3

originally
  25:5 37:3

outfit   74:1

oversimplified
  67:1

**P**

p.m.   6:6
  78:4,5,7
  86:20 87:3

paged   66:1

pages   69:4,6

paragraph
  19:14,19
  20:11 23:2
  51:1 68:13
  69:17

pardon   26:6

parlance   31:18

part   8:7,23
  9:4,7 10:12
  17:20 18:6,
  21 30:3
  35:23 49:20
  67:15 79:12
  82:14 86:6

parted   23:19
  51:2,3,11,12
  54:6 55:2

partial   28:3

Partially
  47:24

participate
  81:8 85:5,8

parts   65:8

passport   56:6,
  10,12,21,24,
  25

past  79:17

paste  19:15

patient  42:10
  80:13,14

patients  40:15
  80:11

PD  8:12

pediatrician
  8:12 9:7

pediatrics
  7:14 8:5,13,
  15,23 9:8,10
  39:20

pelvis  64:20

pen  37:10

people  40:19
  44:25 56:19
  63:3

perfect  5:15

perfectly
  35:18 47:9
  58:24 60:1

person  26:17
  51:19,20
  53:21 58:7
  73:23,24
  76:7,8,14

pertains  16:11
  32:7

photo  21:24
  23:22 24:1,8
  25:9,21
  27:22 28:5

30:4,7,8
42:3 47:19,
20 67:9,23
69:3 74:6,9,
18,19 75:14
76:20 77:12

photograph
  12:6 13:8,
  14,21 23:24
  32:11 38:16,
  17,23 42:17
  46:25 54:15,
  19 56:4,13,
  22 57:12
  61:24 62:25
  67:8 79:7
  80:3

photographs
  10:21 11:13
  12:16 27:24
  28:2 33:8
  34:19 40:10
  42:6 64:25
  75:21 77:4
  81:11 84:8
  85:23

photos  20:8
  80:8

pick  11:9

picked  81:22

picture  24:16
  34:7,16,17
  56:7,9,10

pictures  41:24
  69:7 79:5
  83:7

pin  18:24

pink  15:15,16
  28:9,12,17

pixilated
  54:12

place  33:19

Plaintiff  6:19
  84:18

plaintiff's
  4:21 18:25
  19:4 37:6
  50:12 69:13

plants  29:1,2

play  18:1
  81:20

played  64:2

plow  5:5

point  11:16,
  19 42:22
  65:11,18

policies  80:19

pornographic
  18:5 41:5,17

pornography
  40:3 81:5
  84:4

portion  54:6

position
  23:18,25
  26:13 38:9
  39:24 40:1
  76:21

positioning
  38:22 39:10
  48:11

positions
  39:12

possession
  81:4 84:4

possessor
  81:21

possibility
  13:13,17,19
  17:3 31:14,
  22 36:18
  66:17,19
  67:10,24
  74:17,25
  75:1

possibly  36:9
  68:18 74:12
  80:4,5

potential
  18:16 81:4

potentially
  47:12

practice  9:1

predicated
  77:4,11

prepared  5:1

prepubertal
  51:9

prepubescent
  56:8 70:21
  71:12

present   20:12

presentations   47:9

Preston   6:9,22 9:23,25 11:12,17 12:20 13:23 14:4 26:4 36:22 38:1 44:18 48:23 49:15,18 68:1 72:14 73:1 75:6,22 77:3,11 78:18 79:24 81:9 83:8

Preston's   4:11 15:4,11 23:1,11 25:13 53:1,7 69:22,24

presume   56:18

pretty   50:10 74:3,5

previous   10:6 20:3

previously   15:3 18:25 23:10 24:23 25:12 37:6,9 50:12 53:6 69:13,21

prior   5:8 9:21 10:17 11:5 13:7

14:7 16:7 33:8,12 77:13

procedures   80:20

proceed   46:25

proceedings   9:2,5

process   17:10 20:22

produced   85:22

prominent   31:1

Protection   8:1,3,4,7 9:12,13,18

Protective   78:23

provide   41:3, 11 58:11 82:12

provided   84:21

providing   80:22

proximity   81:15,17

pubert-   61:19

pubertal   4:22 76:8

puberty   31:4 32:23 40:21 56:2 71:5

pubic   13:9,15

16:2,9,16,19 17:1,5 20:12,15 21:4 30:5,19 31:3,4,19,25 32:8 35:2,5, 11 36:1,4,6, 8,10,23 37:11 38:21, 25 42:6,17, 19 43:8 44:3 47:8,9,15 48:1,4,7,10, 15 51:15 52:10 53:11 55:7 58:18 60:2 61:19, 23 62:21,24 63:7 66:6,25 67:6 68:20 70:23 72:1 73:8

pubica   61:19

pubis   64:19 65:9

pull   14:24 15:6 25:10 26:25 27:6 52:11,18 69:19

pulled   15:12 17:16

pulling   15:8 52:17,24 69:23

purpose   41:2,3

purposes   23:6

put   29:15,16, 20 30:5 31:14 34:10 45:23 58:19, 25 59:2

putting   30:10

---

### Q

qualifications   82:25

quality   54:15, 18

question   5:6 14:13 35:19, 21,22 36:20 40:11,12 41:14 44:15 49:5 50:8 56:20 59:14 64:4 65:4,20 67:20 83:9 85:20 86:11

questions   8:20 15:7 78:9,20 84:11,15 85:13,15 86:8

---

### R

raise   6:23

rating   13:3,11 16:11 32:7 33:14 34:1,

22,23 36:10 37:19 39:22 40:15 41:16 43:4,13 60:18,22 61:4 63:22 66:24 67:13 70:19,21 71:12 76:5

**razor** 54:17

**reached** 10:9 58:15

**read** 12:9 19:19 22:14 26:8 33:6 50:18 51:18 63:23,25 64:5,15 65:5,23 86:10

**ready** 6:2

**realize** 30:11 49:24

**reason** 60:14 81:8,21,23

**reasons** 58:10

**recall** 21:7 48:24 60:11, 13,15,24

**received** 11:16

**recess** 78:5

**recognize** 70:7

**recollect** 11:1

**recollection** 12:19

**record** 4:10 6:4,6 11:5 15:4,8 19:1 23:12 25:14 32:5 37:7 43:17 50:13 53:7 69:14, 22 78:3,7,21 86:19

**records** 85:21

**red** 15:18

**redacted** 15:10

**REDIRECT** 85:16

**refer** 4:8,12 39:7

**reference** 24:4

**referenced** 23:2

**referred** 31:18 40:8 53:3

**referring** 7:18 19:25 24:17 39:18 40:13

**regard** 40:22

**regular** 47:7

**related** 14:17, 18 55:15

**relates** 83:16

**relevant** 5:7

**reliable** 12:24

14:9 41:4

**remember** 11:20 14:15 75:3

**remembering** 75:13

**remotely** 6:10

**removal** 17:10 20:21 21:8

**removed** 20:15 36:7

**render** 18:4

**rendering** 13:18 85:19

**repeat** 29:11

**report** 23:21 45:20 46:6 58:25

**reporter** 6:13, 16,23 7:4 22:7 29:10 44:14,15 86:21,24

**reports** 10:23 24:25 50:8

**represent** 6:14 45:22

**representatives** 9:23

**represented** 76:13

**represents** 78:18

**request** 49:19

**requested** 41:12

**required** 41:12 58:2

**respect** 81:10

**rest** 62:13

**restate** 20:24 21:1

**resulting** 80:2

**review** 10:17 11:4 49:2 52:17

**reviewed** 11:21 12:16 67:19

**reviewing** 11:12 17:16

**Roberts** 4:5,7, 19 5:4,14,25 6:3,18 7:9 15:5 19:2 22:13,23 23:8,13 24:21 25:3, 18,19 26:25 27:5,18,19 29:13,24 37:8 38:2,6, 7 43:16,19 44:16 50:14 53:5,8 54:9 59:17,20 64:10,14 69:15 70:2,3

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**                Index: role..sort

77:24 78:8
85:14,17
86:7

role 17:25
81:20

room 7:12,24

rooms 7:21

roughly 37:10

rule 42:9

—————————
**S**
—————————

scene 11:11

science 8:18

scientific
12:24 14:12

scientifically
14:9

screen 5:2
15:21 19:3
24:22 25:2,
16 26:23
27:17

screenshot
52:24

search 82:19,
23 85:5

seek 82:19

send 11:24

sentence 20:7,
10 51:6,18

separate 75:10

sequence 71:8
75:19

set 11:11,22
77:1

setting 40:16

sexual 13:3,11
16:10 20:4
32:6 33:14,
25 34:22,23
36:9 37:19
39:19,22
40:14 41:16
43:3,13
60:10,22
61:3 63:21
66:23,24
67:13 70:18,
20 71:11
76:4

shaking 60:14

shape 64:18
65:7

share 19:3
37:3 50:15
63:19 69:16

sharing 4:3

shave 55:14,
22,25 58:22,
23 59:9,12

shaved 20:11,
14 21:12,19
30:5 31:22
36:13 44:7,
10,18,22
45:10,11,13,

17,23 46:4,
7,15,20,22
47:1 55:10
56:1 58:19
59:8,10,12,
21,22,24
72:6,11,23
73:2,3,6,11
74:18 75:7

shaven 16:25

shaving 17:9
46:14 54:20

Sheriff 81:22

Sheriff's
82:2,3

shoot 21:24
24:1,8 25:9,
21 27:22
30:4,7,8
42:3 67:10,
23 74:6,10,
18,19 75:14
76:20

show 5:1 19:9
26:5,6
38:12,14
39:9 47:15
63:7

showed 12:6
13:8,9 56:6,
12,15 81:11

showing 23:25
38:18

shown 13:7
19:23 23:4

65:18 79:5
82:24

shows 23:17
51:1,10 55:1
63:4

sic 33:20
59:2 68:13

side 25:17
27:17 65:10
67:14

signs 60:2,4

similar 39:25

simply 4:8

single 12:5

Sir 44:14

sister 73:14

sit 43:6 76:2

sitting 23:17
26:12

situations
84:1

six-year-old
79:13

skin 58:24
60:1

small 27:15

smooth 58:24
60:1

sole 67:2

solemnly 6:25

sort 7:15

17:9,10 31:23 40:21 76:11 82:3 85:9

sounds   59:11

source   67:2

speak   11:11

speaks   63:2

specialize 8:14

specifically 72:4

specifics 11:20

spoken   9:22,25 10:2,6

Spring   85:2

St   81:22

stage   64:24

stages   4:22 37:11 39:19 40:20

standing   54:1

start   83:8

starting   64:1

starts   22:4

state   9:6 34:11 80:17

stated   58:11

statement 21:10,15

34:18 45:1, 4,5 46:24 60:18,24 72:13 75:5

statements 10:11 18:1 22:22 45:6

statute   9:11, 16

stay   5:23

stomach   62:3

straight   32:1 35:1

strike   24:13, 14

strip   31:19 47:8

stuff   53:9 54:17

subject   10:22 34:8 70:8

subpoenaed   9:3

subsequent 27:8 67:8

subspecialty 8:17

substantially 77:5,7

sued   78:19

suggested 35:10

suggests   35:9

support   9:13

supposed   22:6 65:11

surmise   18:2,6 49:1

surmised   18:18

suspected   49:3

swear   6:16,25

swore   30:14

sworn   7:6 30:17

Synchronoss 10:8

---

**T**

table   53:18

takes   38:3

talk   25:6 37:2 46:3

talked   16:6 37:14 50:3,4 60:7 62:4 80:1

talking   8:2 11:8 25:5 27:2,5 32:21 40:5 45:12, 21 50:22 53:25 62:17 72:7

Tanner   41:1

teach   66:9

Team   8:2,3,4, 7 9:12,13 78:23

Teams   9:18

technique 76:11

teen   53:14

telling   18:13 30:15 43:20 53:23

term   9:9 76:10

terms   34:19, 23

test   40:4,24

testified   7:6 12:18 20:20 32:13 34:3 37:9 50:5 54:14 58:21 70:25 72:17, 20 74:7,11 75:15 78:24 83:18 85:25

testify   86:4

testifying 42:20 53:20 72:12 83:23

testimony   6:25 14:3,7 16:7 20:23 21:18 23:7 33:1 39:2 42:12, 24 48:24

58:5,12 59:2 60:11 63:6, 10,12 66:22 71:15 73:5,7

**thighs** 13:8 51:3,12 55:3 62:2 64:20

**thing** 34:20 47:13 62:5 82:3

**things** 21:9 32:19 54:16, 21 60:4 76:17

**thinking** 75:13

**thought** 35:24 73:22,25 74:11

**time** 9:22 10:19 24:1 25:9 27:22 29:6,15,16, 21 30:9 32:17 38:3 43:1 46:12 49:23,24 60:8 65:25 67:9,23 68:8,11 69:18 71:5,6 73:22 74:4, 20 76:23 77:13 78:17 80:22 83:4 84:25 85:24

**times** 68:15 69:7 77:5,6, 8,16,17 81:3

**tiny** 31:2

**tip** 81:13

**tips** 80:16

**today** 4:4 7:1 10:19 11:2, 5,10,15 14:7 19:23 25:6 26:6 30:12 34:3 42:12 43:7 44:21 55:23 58:21 72:11 75:4, 15 76:2

**today's** 10:17

**told** 13:2 26:4,14 35:15 45:2 48:23 56:11 65:14 72:10 73:1 75:12 80:11 85:2, 18

**tone** 15:20 43:14

**top** 48:9 51:2,11 53:2 55:2

**transcript** 10:17 59:2 63:20 86:9, 15,18,22

**treatise** 40:9

**triangle** 37:16 39:1 63:11 64:17 65:2, 12,15 66:5, 6,7,11,14

**true** 19:17 38:8,24 40:7 44:19,20 45:3 46:13 80:25

**truth** 7:1,2,6 30:14,17

**truthful** 45:6

**turn** 78:9

**turned** 75:9

**type** 34:20 82:7

**typed** 34:2

U

**UCMJ** 80:17

**ultimate** 67:25

**underscore** 70:1

**understand** 10:23 11:18 20:22 32:4 44:25 45:1 50:9 64:3 71:7 76:1 80:21 81:2 82:11 83:3,6

**understanding** 79:21,23

**underway** 46:11

**underwear** 51:2,11 55:2

**uniformity** 35:8

**uniformly** 32:3

**unit** 78:6

**University** 8:6

**untrue** 21:15

**utilized** 16:1 17:9

V

**valid** 56:25

**validate** 26:15

**verification** 85:22

**Verizon** 10:8

**version** 33:20 70:14 71:11 74:12 76:3

**versus** 6:9 56:10

**vertical** 47:8

**vertically** 54:1

**victim** 81:20

**victims** 81:7

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
Kathleen M. Dully, M.D. on 06/18/2025      Index: video..Zoom/conference

video  79:7 86:16 87:2

videos  79:5

view  15:1 30:22 35:16 37:21 38:13, 19 39:3 47:21,22,23 53:12,25 70:23

viewed  27:8

views  28:3 47:18

---
### W

wait  51:23

waive  86:10, 13,14

wall  28:20

wanted  63:13

warrant  82:20, 23 85:6

wax  57:2

waxed  16:25 20:15 57:1 59:25 72:23

waxes  21:6

waxing  17:9 54:20

ways  4:13 35:10

wearing  15:15

24:10 26:18, 21 27:23 28:6,17 29:21

weeks  33:5 77:9,12

well-exposed 62:14,18

wider  65:10

William  6:9 84:19

Wilson  4:3,6, 16 5:1,17,21 6:20 10:7 18:8 20:18 22:23 24:19, 22 25:10,15 27:1,4,12,16 29:23 32:9 36:25 38:4 41:18 43:14 48:20 52:23 54:8 55:17 59:13 64:8 69:23 84:13, 14,17 85:12 86:2,10,11, 14,17,21,23

woman  13:11 43:21

wooden  23:17 26:12

word  8:22 14:12 51:5

words  14:11,

12,14,15,17, 18 30:10 64:22

work  79:12 80:22 82:7 86:4

working  27:13

write  33:7 59:22

writing  14:5

written  4:24

Wrong  63:1

wrote  33:25 50:8 51:1 59:8 68:12 74:15,20 86:1

---
### X

xerox  7:23

---
### Y

YCBL  72:10

YCBLVVFQ 69:19,25 73:20

year  32:24

years  10:25 14:14 20:5 32:21 83:12, 21

young  31:5

40:19 79:15

younger  30:22, 23 32:17,18, 21 33:10,19 34:4,5,9,16 50:19 68:4 76:22

---
### Z

ZIP  81:18

Zoom  6:11 54:7,10,11 87:2

Zoom/conference 7:24