# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**WILLIAM LEE LAWSHE,**

    **Plaintiff,**

**v.**                                                     **Case No. 3:24-CV-00044-MMH-MCR**

**MIKAYLA PRESTON, in her individual
capacity as a Detective for St. Johns County
Sheriff's Office, and KATHLEEN
DULLY, in her individual capacity as
medical director of the UF Child Protection Team,**

    **Defendants.**

_____/

## DEFENDANT DETECTIVE PRESTON'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT PATRICK SIEWERT

Defendant, **MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sheriff's Office**, by and through undersigned counsel, and pursuant to Rule 702, Federal Rules of Evidence, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Local Rule 3.01, respectfully requests that this Court enter an order excluding the opinions of Plaintiff's proffered expert witness, Patrick Siewart.

## INTRODUCTION

Plaintiff brings this action in connection to an April 12, 2023, arrest by the St. Johns County Sheriff's Office. Defendant Detective Preston was the investigating officer on the case. Prior to Plaintiff's arrest, Defendant Dr. Kathleen Dully, a board-

certified specialist in child abuse pediatrics, opined on the ages of the individuals in the photographs on Plaintiff's phone, and determined they were well under the age of eighteen (18).

Plaintiff was arrested for multiple counts of the possession of child sexual abuse material ("CSAM"). The State Attorney for the Seventh Judicial Circuit of the State of Florida brought charges in connection to the arrest, however, ultimately, the charges were dropped.

The following claims remain pending before this Court:

| | | | |
|---|---|---|---|
| **Count I** | **Fourth Amendment – Unreasonable Search** | **Detective Preston** | |
| **Count III** | **Fourth Amendment – Unreasonable Arrest** | **Detective Preston** | |
| **Count V** | **First Amendment – Freedom of Speech** | **Detective Preston** | |
| **Count VII** | **Fourteenth Amendment – Due Process** | **Dr. Dully** | |

On February 3, 2025, Plaintiff disclosed his experts, including Patrick Siewert, "a law enforcement and investigative expert." Mr. Siewert's curriculum vitae ("cv") is filled with experience in digital forensics involving computers and mobile phones (*see* **Exhibit 1**); however, he listed almost no education, training, or experience in investigating CSAM. Moreover, Mr. Siewert's two-page "expert report" is nothing more than a draft trial brief which stands for the position that Detective Preston's investigation was not up to par with unidentified (presumably Mr. Siewert's own) standards. *See* **Exhibit 2**.

Mr. Siewert is not qualified to offer these opinions, and his opinions are not reliable. Also, they will not help the trier of fact. For these reasons, Mr. Siewert should be excluded from providing any testimony in this matter.

2

## MEMORANDUM OF LAW

### I.    Legal Standard

In *Daubert v. Merrill Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court of the United States assigned to trial courts the responsibility of serving as "gatekeeper" to determine the admissibility of expert testimony under Rule 702, *Federal Rules of Evidence*. Admissibility of expert testimony under Rule 702 hinges on a preliminary finding by the trial court of whether the proposed expert testimony is both relevant and reliable. *Id.* at 580.

> Federal Rule of Evidence 702 states:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Fed. R. Evid.* 702.

Under Rule 702 and *Daubert*, trial courts must determine whether the expert testimony is admissible by "conducting 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"

*Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (quoting *Daubert*, 509 U.S. at 592-93). Moreover, to fulfill their gatekeeping role, trial courts must engage in a "rigorous three-part inquiry" to assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). "While there is inevitably some overlap among the basic requirements – qualification, reliability, and helpfulness – they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The party attempting to admit expert testimony bears the burden of demonstrating, by a preponderance of the evidence, that the testimony satisfies each prong of the inquiry. *Hendrix*, 609 F.3d at 1194.

Importantly, nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by *the ipse dixit* of the expert. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (citing *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F. 3d 915, 921 (11th Cir. 1998) (quotations omitted). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Thus, a trial court may

exclude expert testimony that is "imprecise and unspecific," or whose factual basis is not adequately explained. *Id.* (citing *Frazier*, 387 F.3d at 1263).

An "imprecise and unspecific" expert opinion does not assist the jury; rather, an "imprecise opinion easily could serve to confuse the jury, and might well [mislead] it." *Frazier*, 387 F. 3d at 1266. "Because of the powerful and potentially misleading effect of expert evidence, … sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Id.* at 1263. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.*

Courts have determined that "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260-61. However, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, "[i]f the witness is relying solely or primarily on experience, then the witness must *explain how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* at 1261 (emphasis added). Indeed, simply because an expert may be qualified by experience does not mean that "experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Id.* "[O]ur caselaw plainly establishes that one may be considered an expert but still offer unreliable

testimony." *Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1342 (11th Cir. 2003).

The district court has "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (citation and quotation omitted). "[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted). Thus, the inquiry into reliability must focus on "principles and methodology" and not the expert witness's conclusions. *Daubert,* 509 U.S. at 595. Because "one may be considered an expert but still offer unreliable testimony," it remains a basic foundation for admissibility under Rule 702 and *Daubert* that proposed expert testimony must be based on "good grounds." *Frazier*, 387 F.3d at 1261 (citation omitted). The trial court's gatekeeping function requires more than simply "'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000 amends.); *see also Daubert* (on remand), 43 F.3d 1311, 1316 (9th Cir. 1995) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough").

The reliability-related factors that *Daubert* contemplates include whether it "has been a subject of peer review or publication," the "known or potential rate of error," and the "degree of acceptance ... within the relevant scientific community." *Carmichael*

6

*v. Samyang Tires, Inc.*, 923 F. Supp. 1514, 1520 (S.D. Ala. 1996) (*rev'd on other grounds*) (citing *Daubert*, 509 U.S. at 589-95). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Frazier*, 387 F.3d at 1261.

The third part of the inquiry courts must engage in to evaluate and assess the admissibility of expert testimony is whether the testimony will assist the trier of fact. *Id.* at 1266. In evaluating this factor, expert testimony is admissible "if it concerns matters that are beyond the understanding of the average lay person." *Id.* at 1262 (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63 (citing 4 Weinstein's Federal Evidence § 702.03[2] [a]).

## II.    Mr. Siewert is Not Qualified to Offer an Opinion on Detective Preston's Investigation

An expert may be determined to be qualified based on not only scientific training or education, but also, experience. If an expert relies solely or primarily on experience, the expert witness must explain how that experience leads to the conclusions reached. In his report, Mr. Siewert merely states, as to all opinions, "My opinions are based on this review and my experience and training in investigations of possession of CSAM." **Exhibit 2**, p. 2.

A review of Mr. Siewert's cv shows that his last relevant work experience in the area of crimes against children was between 2008 and 2013, when he worked as a Deputy Sheriff for the Louisa County Sheriff's Office in Louisa, Virginia. **Exhibit 1**, p. 1.  This experience was apparently not directed specifically to investigating CSAM crimes, but rather, detective work in digital forensics and special operations. **Id.** Similarly, Mr. Siewert's training and expert witness experience has primarily focused on digital forensics, as opposed to investigating CSAM.

Here, Mr. Siewert offers the following opinions:

a.) The models depicted in photographs are appropriately described as "age difficult," meaning that it is not possible for a law enforcement investigator to determine whether the individual is over or under the age of 18 by simply looking at the models.

b.) The fact that a nude image is published on the public internet and on a legitimate modeling website makes it likely that the model is being portrayed to viewers as an adult.

c.) Det. Preston identified the likely source of the image prior to application for a search warrant, as Met-Art.com and included this information in her initial probable cause affidavit. Standard investigative practice would involve visiting the website in question. The purpose of visiting the website would include, but not be limited to: 1) learning whether or not the model was portrayed as an adult to the public 2) verifying the publication of potential CSAM on the public website, 3) to request age verification documentation of the model, 4) to identify the ownership and legal contact(s) for the website and 5) potentially identify the suspected victim. This investigative technique would be standard for any image which was discovered to be published on a public website.

d.) After visiting the website, Det. Preston should have requested age verification documentation from the website's record custodian. Investigators trained and experienced in the investigation of CSAM, should be aware of the potential availability of Federally mandated age verification documentation. Compliance with these age verification laws

makes this evidence readily available to investigators, such as Det. Preston.

e.) Investigators specializing in CSAM should be aware that the practice of grooming body hair is common in the adult pornography industry. Additionally, investigators should be aware that the practice of cosmetically altering digital images is common in the pornography industry.

f.) It is not part of the ICAC Investigative Guidelines or training standards to obtain an opinion from a medical doctor as to the age of an individual, when the images involve age difficult persons, published on the public internet.

**Exhibit 2**, pp. 1-2. None of these opinions are clearly tied to or based on Mr. Siewert's experience or training in digital forensics, rather, Mr. Siewert is opining as a purported expert in investigating CSAM, which is not backed by his training, education, or experience.

Moreover, Mr. Siewert refers to "standard investigative practice[s]" in his report, but nowhere does he cite to any standards or practices, or purport to be certified or trained in any standard investigative practices for investigating CSAM. **Exhibit 2**. He also does not include any standards or practices in the materials he reviewed. Thus, it is entirely unclear what standards or practices Mr. Siewert is relying on or referring to. Mr. Siewert only mentions the "ICAC Investigative Guidelines" and miscellaneous "training standards" — which he does not include in his report — to say that the guidelines do not include obtaining an opinion from a medical doctor. **Exhibit 2**, p. 2. Interestingly, Mr. Siewert does not say that the ICAC Investigative Guidelines provide that an investigator should (a) deem "age difficult" cases "impossible"; (b) assume nude images on the public internet are "being portrayed" as "adult"; (c)/(d) rely on

9

information provided by the website of the potentially violative distributor as to the age of the individuals in the photographs; or (e) presume the grooming of body hair or the cosmetic alteration of digital images are the reason an individual looks underage, all of which Mr. Siewert seems to suggest are "standard" or "best" practice in law enforcement investigations. In other words, Mr. Siewert does not establish his opinion is in line with or derived from the ICAC Investigative Guidelines or based on anything other than his pure conjecture.

Mr. Siewert used to be a detective. Mr. Siewert has a ton of experience in digital forensics involving computers and mobile devices. Mr. Siewert has reported minimal education, training, experience in investigating CSAM crimes. He is not qualified to provide the opinions stated in his report.

### III.    Mr. Siewert's Opinions Lack Any Reliability

The *Daubert* standard requires that any scientific or technical testimony or evidence admitted is not only relevant, but reliable. "In the context of police practices, an opinion may be based on experience, as long as the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" *Adkins v. Roberts*, 5:18CV271-MCR/MJF, 2022 WL 1272403, at *4 (N.D. Fla. Mar. 31, 2022) (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)). Moreover, "[a] police practices expert may present factors that might inform an officer's decision regarding standards such as probable cause … because such testimony speaks to prevailing standards in law enforcement and may be quite helpful to the jury in conducting its own analysis of a false arrest claim." *Day v. Edenfield*, No.

5:19CV505-MCR/MJF, 2022 WL 972430, at *4 (N.D. Fla. Mar. 31, 2022) (quotations and citations omitted). However, an expert may not simply list conclusory statements without any foundation. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 429-30 (S.D. Fla. 2017). Indeed, as stated above, the witness relying on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Mr. Siewert fails on all three obligations.

Mr. Siewert's explanation that his opinions are based on his review of the documents and experience is the equivalent to an *ipse dixit* opinion. *See Jarvis v. City of Daytona Beach*, No. 6:23-CV-508-JSS-RMN, 2024 WL 3325938, at *3 (M.D. Fla. July 8, 2024) ("As it relates to expert opinions on customs, '[a]bsent a reasoned analysis supported by data, identified standards, or comparison with practices in other sheriff's offices, [an expert's opinions] are conclusory and unreliable, based on mere conjecture, assumption, credibility calls, and amount[s] to no more than *ipse dixit*, which is neither reliable nor helpful.'") (citations omitted). Nowhere does Mr. Siewert identify or describe any sound professional standards or point out departures from them, nor does he explain how his experience forms the basis of any of his opinions. Mr. Siewert does not even meet the bare requirements of Rule 26(a)(2)(B)(i) ("The report must contain … a complete statement of all opinions the witness will express *and the basis and reasons for them*.") (emphasis added). At best, Mr. Siewert's report provides considerations or possibilities to consider in investigating CSAM, that is no more scientific than (and frankly, perhaps identical to) Plaintiff's own legal arguments.

11

In *Diczok v. Celebrity Cruises, Inc.*, the United States District Court for the Southern District of Florida addressed whether an expert's experience alone satisfies the reliability requirement. No. 16-21011-CIV, 2017 WL 7795456, at *2 (S.D. Fla. June 21, 2017). In finding that experience alone was insufficient in that case, the Court compared its own case to the case of *Bussey-Morice v. Kennedy*, 2012 WL 7992419 (M.D. Fla. December 28, 2012), stating, "But the expert in *Bussey*—a former police officer opining on police practices—supported his experience-based conclusions with case studies involving the practices at issue. Mr. Backer provides nothing to show how or why his experience is reliable as applied to the facts of this case." Likewise, here, Mr. Siewert provides no insight as to how his experience backs any of his opinions.

For instance, in opinion "a," Mr. Siewert opines that the individuals in the photographs are "age difficult" making it impossible for an investigator to determine whether the individual is over or under the age of 18 by simply looking at them. **Exhibit 2**, p. 1. However, Mr. Siewert does not provide an explanation as to why he opines the individuals in the photographs are "age difficult." Notably, he does not opine that Detective Preston should not have continued to investigate an "age difficult" case, or should only have done so under certain circumstances. Nor did he provide any basis whatsoever for this opinion.

In opinion "b," Mr. Siewert opines the fact that a nude image is on the public internet "makes it likely that the model is being portrayed to viewers as an adult." **Exhibit 2**, p. 1. Why Mr. Siewert cares how a photograph is "portrayed" versus what it actually is entirely unclear. Mr. Siewert seems to suggest that photographs

12

"portrayed" as adult are not CSAM, which is certainly not in line with any sound professional standard.

In opinions "c" and "d," Mr. Siewert opines standard practice includes visiting the website where the photograph is from, "1) learning whether or not the model was portrayed as an adult to the public[,] 2) verifying the publication of potential CSAM on the public website, 3) [requesting] age verification documentation of the model, 4) [identifying] the ownership and legal contact(s) for the website[,] and 5) potentially identify[ing] the suspected victim." **Exhibit 2,** p. 1. Further, Mr. Siewert opines that Detective Preston should have requested age verification documentation from the website's record custodian. **Id.** Mr. Siewert offers no support or basis for these opinions, neither through his experience nor any set forth standard or procedure.

In opinion "e," Mr. Siewert states investigators should be "aware" of the practice of those in the adult pornography industry of grooming their own body hair. **Id.** He also opines they should also be aware of cosmetic alteration of digital photographs in the porn industry as "common." **Id.** at pp. 1-2. However, Mr. Siewert does not opine Detective Preston was not "aware" of either of these matters. Notably, Mr. Siewert does not opine that this "awareness" should have caused Detective Preston to stop her investigation, nor has he provided any sound basis for the same.

Finally, in opinion "f," Mr. Siewert makes a statement about what is not included in ICAC's Investigative Guidelines. **Id.** at p. 2. Stated differently, Mr. Siewert opines that Detective Preston took the additional step of asking Dr. Dully for her

13

opinion regarding the ages of the individuals in the images even though that step is not explicitly suggested (nor prohibited) by the Guidelines. How this amounts to a deviation of any best practices or otherwise related to any issue in this litigation is entirely unclear.

Mr. Siewert's "'theor[ies],' if one can call [them] that, 'cannot be tested and, in any event, the Court has no basis for finding that his technique — whatever it may be — is generally accepted in the relevant scientific community.'" *Perez v. City of Sweetwater*, No. 16-24267-CIV, 2017 WL 8231079, at *5 (S.D. Fla. July 14, 2017). For this reason, Mr. Siewert's opinions are not reliable and should be excluded.

## IV.    Mr. Siewert's Opinions are Not Helpful to the Trier of Fact

Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1262. Expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Id.* at 1262-63.

Expert testimony can be powerful and potentially misleading. *Id.* at 1263. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.* Here, Plaintiff should be prohibited from presenting testimony from Mr. Siewert regarding unidentified (and perhaps merely personal) standards and procedures based on undefined experience and training.

Here, Mr. Siewert's testimony would not assist the jury. Mr. Siewert's opinions do not contain the application of scientific, technical, or specialized expertise that will assist the trier of fact to understand the evidence or to determine a fact in issue. Nor do Mr. Siewert's opinions address any of the relevant elements or evidence for Plaintiff's claims. Rather, Mr. Siewert merely says something akin to "this is how I would have done the investigation." That's fine, but that is not an issue in this case, and such an opinion is entirely unhelpful to a jury.

Looking past the fact that he lacks the expertise necessary to provide admissible expert testimony regarding investigation of CSAM crimes (vs. digital forensics related to same), no part of Mr. Siewert's opinions convey any specialized knowledge or are based upon any sound professional standards, and his opinions would not assist the jury in understanding the evidence or determining a relevant fact in issue. Plaintiff argues that Detective Preston lacked probable cause to seek a search warrant or to arrest Plaintiff and ignored readily available exculpatory information. Mr. Siewert does not opine that Detective Preston lacked probable cause at either juncture, but does opine that he would have dug a little deeper and might have found some sort of age verification information. Mr. Siewert does not even opine that had he found some sort of age verification information, probable cause would be diminished. Should this case go to a jury, it will be their province to decide if Detective Preston ignored readily available exculpatory evidence or not. Mr. Siewert's opinions provide no explanation for issues outside the understanding of the average juror, and are therefore, not helpful to the trier of fact. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th

15

Cir. 1990) (expert may "testify as to his opinion on an ultimate issue of fact" provided the expert does not "merely tell the jury what result to reach").

Mr. Siewert has not – and at this time, cannot – establish that he is qualified to provide expert testimony regarding the investigation of CSAM crimes (unrelated to digital forensics), that his opinions are reliable, or that his opinions will help the trier of fact. By all accounts, Mr. Siewert's opinions are nothing more than his own unsupported and conclusory *ipse dixit* which read more like "an advocacy-based narrative of the facts, as opposed to expert opinion." *Day*, 2022 WL 972430 at *7. Mr. Siewert is free to tell anyone who cares to listen that he *believes* this is the way a CSAM investigation should occur; however, under applicable law and rule, he must be precluded from presenting his personal opinions in this litigation. For these reasons, his opinions and testimony should be excluded in their entirety.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Detective Mikayla Preston respectfully requests this honorable Court grant the instant Motion and enter an Order precluding Plaintiff from using the opinions of his proffered expert witness, Patrick Siewart, and granting such other relief the Court deems just and proper.

16

## LOCAL RULE 3.01(g) CONFERRAL

The undersigned counsel certifies that he conferred with Plaintiff's counsel via email on September 3, 2025, and can represent that Plaintiff opposes the relief sought herein.

Dated this 5th day of September 2025.

Respectfully submitted,

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**
Florida Bar No.  0827711
Email: mcarson@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida  32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Attorneys for Defendant Mikayla Preston*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of September, 2025, a true and correct copy of the foregoing was electronically filed in the United States District Court for the Middle District of Florida using the CM/ECF system, which will serve counsel of record.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**

17