**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**WILLIAM LEE LAWSHE,**
**an individual,**

     **Plaintiff,**

**v.**                     **CASE NO: 3:24-cv-00044-MMH-MCR**

**MIKAYLA PRESTON,**
**in her induvial capacity as a Detective for St. Johns County Sheriff's Office,**
**and KATHLEEN DULLY, in her individual capacity as**
**medical director of the UF Child Protection Team,**

     **Defendants.**
_____/

**DEFENDANT KATHLEEN DULLY'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Defendant Kathleen Dully ("Dr. Dully" or "Defendant"), by and through her undersigned counsel and pursuant to Federal Rules of Civil Procedure 56, files this Response in opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. 66]. In support therefore, Defendant states the following:

     **I.**     **INTRODUCTION AND SUMMARY OF ARGUMENT**

     This case considers a prior investigation into Plaintiff's possession of child sexual abuse materials and his subsequent arrest. Plaintiff now brings this suit against those whom he considers to have been responsible for his investigation. A singular count of the Second Amended Complaint—Count VII—was brought

1

against Dr. Dully in her individual capacity, alleging a violation of the 14th Amendment Due Process Clause pursuant to 42 U.S.C. § 1983. [Doc. 40, ¶¶ 206-218]. Dr. Dully's involvement in the matter was limited to reviewing five images (*Exhibits A - E*) and authoring three opinions (*Exhibits F - H*) at the request of law enforcement. Each opinion stated that the individual pictured appears to be under 18 years of age based on their visible anatomical signs of sexual maturity pursuant to a Sexual Maturity Rating (SMR).

On August 12, 2025, Plaintiff filed his Motion for Partial Summary Judgment against Dr. Dully. Plaintiff's Motion alleges that Dr. Dully willfully and maliciously fabricated false evidence as demonstrated by the following "Undisputed Facts" provided by Plaintiff: (1) Dr. Dully produced three separate reports in the investigation of Plaintiff; (2) Dr. Dully knew that the reports were part of a criminal investigation and may be used in court; (3) the reports were written on UF Child Protection Team letterhead with all indicia that they were reliable medical opinions, signed by the medical director; (4) in each of these reports, Dr. Dully offered opinions in clear, plain language that the individuals depicted were children, under the age of 18; (5) Dr. Dully intended and hoped that anyone reading the reports would understand that she, acting as the medical director of the UF Child Protection Team, was offering an opinion about the actual chronological age of the individuals depicted; (6) when the reports were produced, Dr. Dully knew that there was no

medically reliable method of determining the chronological age of an individual from digital photographs; (7) Dr. Dully knew that the opinions she offered were not probative of the actual chronological age of the individuals depicted or helpful to a finder of fact engaged in determining the actual age of the individuals depicted; (8) Detective Preston relied on these opinions to make the probable cause determination for a search and arrest; and (9) Dr. Dully's opinions were quoted in both affidavits supporting the search warrants issued in this case.

Contrary to Plaintiff's assertions, Defendant Dully does, in fact, dispute numbers 4, 5, and 7 of his Undisputed Facts. Notably, the testimonial and documentary evidence in the record proves the opposite of what Plaintiff has claimed; Dr. Dully did not opine as to the chronological age of the individuals depicted in the images she reviewed, Dr. Dully does believe her opinions have probative value, and Dr. Dully conveyed the inherent limitations of SMR directly to Detective Preston. As such, Plaintiff failed to prove that Dr. Dully fabricated false and misleading evidence in her minimal involvement in the investigation of Plaintiff. Of note, this list of undisputed facts avoids entirely a crucial element of his singular claim against Dr. Dully – that her reports were false or fabricated. Plaintiff does not even attempt to establish their falsehood, much less Dr. Dully's actual knowledge of their falsehood.

3

Accordingly, Plaintiff's Motion for Summary Judgment should be denied for the following reasons: (1) There are genuine disputes as to material facts related to Dr. Dully's alleged willful and malicious fabrication of evidence as presented by Plaintiff; (2) Dr. Dully is entitled to complete immunity from liability for civil and criminal claims against her in this matter pursuant to 34 U.S.C. § 20342 and qualified immunity because Plaintiff failed to provide evidence that Dr. Dully fabricated her reports.

## II.    STATEMENT OF FACTS

### A. The Initiation of the Investigation

On or about February 20, 2023, the St. Johns County Sheriff's Office (the "Sheriff's Office") received a cyber tip (#153739160) from the National Center for Missing and Exploited Children reporting that Plaintiff was in possession of "Apparent Child Pornography (Unconfirmed)." [Doc. 40, ¶¶ 35-36]. After receiving the tip, detective Mikayla Preston was assigned to the case, and she reviewed the image of unconfirmed child sex abuse material ("CSAM") that accompanied the tip and initiated an investigation. [Doc. 40, ¶¶ 45-55]. Plaintiff does not allege, nor offer any proof that the investigation did not begin in good faith.

Dr. Dully is employed by the University of Florida College of Medicine as the medical director of the Child Protection Team ("CPT"), which assists with suspected or advertised child maltreatment cases for much of northern Florida. *Dr. Dully's*

4

*Deposition*, 6:9-7:5. Dr. Dully and the CPT provide their services to law enforcement—both in this matter and in other matters—gratuitously. *Eugene Tolbert's Deposition*, 75:10-13; *Detective Preston's Deposition*, 268: 14-16. Before assuming this position, Dr. Dully worked in various occupations related to child maltreatment starting as early as 1989 when she passed the general pediatric specialty board examinations, and she proceeded to receive her board certification in child abuse pediatrics in 2009. *Dr. Dully's Deposition*, 7:6-10:8. Starting in 1994, Dr. Dully began using the sexual maturity rating ("SMR") or Tanner scale to review pornographic images to estimate the sexual maturity of the appearance of the individuals who were in them. *Dr. Dully's Deposition*, 23:15-21.

**B. Dr. Dully's Review of the Images**

When Detective Preston presented the first image (*Exhibit A – Filename f6a487 (last six characters)*) to Dr. Dully on a law enforcement laptop, she explained the image was the subject of a law enforcement investigation into a NCMEC cyber tip. After reviewing the image, Dr. Dully offered her medical opinion that the individual "appear[ed] to be younger than the age of 18" and could have been as young as 12. [Doc. 40, ¶¶ 103-106]. Dr. Dully used the SMR to evaluate the appearance of the individual in the image and provide an estimated age range; however, she did not attempt to state or estimate the exact chronological age of the individual. *Dr. Dully's Deposition*, 21:2-23. Contrary to Plaintiff's assertion in his

**Commented [JK1]:** If depo transcript is exhibit, we need to add the cite here and continue citing throughout by Exhibit number instead of typing out the full "Dr. Dully's Deposition" --it will save some words too  Same goes for cites to other depos that follow

5

Motion, it is within the standard of care for medical professionals to use SMR when evaluating the age of a patient in any context. *Dr. Krugman's Deposition*, 27:12-17. Dr. Dully provided a letter to Detective Preston on February 22, 2023, explaining that the developmental genital appearance of the individual in the image was SMR IV and would be achieved at 12-15 years of age. *Exhibit F – February 22 Letter*. It is more likely than not that an individual evaluated at SMR IV for breast development is younger than 18 years old. *Dr. Krugman's Deposition*, 26:1-20. This process of reviewing images to determine the SMR that Dr. Dully followed is the same—or at least similar to—the process the Plaintiff's expert, Dr. Krugman, follows when working with law enforcement on CSAM issues. *Dr. Krugman's Deposition*, 18:17-19:17.

Detective Preston returned to Dr. Dully on April 5, 2023, with more images to review. Detective Preston told Dr. Dully that two of the images appeared to depict the same individual as the first image she reviewed, but provided no other investigative information. *Exhibit B – Filename 0065(1) and C – Filename 0059*. Dr. Dully provided a second opinion letter to Detective Preston on April 5, 2023, explaining that Detective Preston showed her two additional images of the what appears to be the same individual in the first image, and that Dr. Dully opined that the appearance of the individual in those images depicts development of SMR III or IV which would be achieved at 12-15 years of age. *Exhibit G – First April 5 Letter.*

6

The same day, Detective Preston presented two additional images to Dr. Dully that were retrieved from Plaintiff's phone. *Exhibit D – Filename DuckDuckGo (last phrase) and E – Filename VVFQ_o (last six characters)*. [Doc. 40, ¶¶ 122, 124]. After reviewing these images presented to her by Detective Preston, Dr. Dully offered her medical opinion that the individuals appeared to be "less than or equal to 9-13.5 years old." [Doc. 40, ¶¶ 122-126]. Dr. Dully provided a separate letter to Detective Preston on April 5, 2023, explaining that she made this opinion based on the depicted appearance of the individuals' breasts and genital areas. *Exhibit H – Second April 5 Letter*.

### C. Scope of Dr. Dully's Review

When offering these opinions, Dr. Dully assumed that other information outside of her opinions would be considered by Detective Preston in conducting the investigation, and Dr. Dully did not know that her opinions would be used in a probable cause affidavit to seek a search warrant. *Dr. Dully's Deposition*, 48:14-24. Moreover, Dr. Dully did not consider the opinions she offered about sexual maturity from the appearance of a model in a pornographic image to be reliable as a sole basis for law enforcement to base their decision to make an arrest. *Dr. Dully's Deposition*, 32:9-19, 70:13-17. Similarly, the Plaintiff's expert, Dr. Krugman, would have expected law enforcement agents who requested his medical opinion to do more than

7

solely request and review that opinion in their investigation. *Dr. Krugman's Deposition*, 14:4-12.

As required by statute, Dr. Dully provided assistance in a law enforcement investigation of suspected child abuse. She did not endeavor to establish as a scientific certainty, solely by her application of the SMR scales, the ultimate facts of a child pornography prosecution. The use of SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image, so Dr. Dully did not offer any medical opinions on the actual age of the individuals in the images she examined. *Dr. Dully's Deposition,* 46:13-18, 71:5-10. As such, the letters Dr. Dully wrote to Detective Preston speak only to the appearance and depiction of the individuals in the images. *Ex. F, G, and H.*  When providing her opinion to Detective Preston and any other law enforcement officers, Dr. Dully explained these limitations. *Dr. Dully's Deposition*, 33:6-13, 47:9-17. The medical opinions Dr. Dully provided in this matter were not the driving factor in the investigation; instead, Detective Preston stated that, even if Dr. Dully had refused to provide her services by reviewing the images, the case would not have stopped there. *Detective Preston's Deposition*, 192:6-195:7.

### D. Summary of Expert Testimony

Dr. Dully is the only witness identified in this case with any medical training that has reviewed the images. *Dr. Krugman's Deposition*, 8:23-25. While Plaintiff's

**Commented [JK2]:** I deleted that sentence...I think we can take this part out and still get same point across

8

expert offers some criticism of Dr. Dully's application of the SMR scale, Plaintiff offers no actual rebuttal of Dr. Dully's ultimate opinion that the individuals appear to be younger than 18. Plaintiff offers no evidence that Dr. Dully knew or had any reason to know that the individuals were over the age of 18 at the time she completed her review. *Dr. Krugman's Deposition*, 33:2.-34:8.

### III.    ARGUMENT

Dr. Dully's depositions and other evidence relevant to this case have consistently shown that Dr. Dully was acting in good faith and within the standard of care when she provided her medical opinions in this matter. Moreover, Plaintiff makes the case that Dr. Dully's willingness to use SMR scales, an inexact science, in a criminal case is malicious as a matter of law. In doing so, he conveniently forgets the testimony of his own expert pediatrician and instead favors stacking up inferences and insinuations. Plaintiff argues Dr. Dully's honesty about the limitations of her opinion demonstrates malice and points to no other evidence establishing that she knew her opinion was unsupported.

### A. No Willfully False Information is Contained in Dully's Report

Plaintiff alleged that Dr. Dully's opinions were willfully misleading and false. [Doc. 66, p. 9]. In support of this claim, Plaintiff quoted deposition language showing that: (1) Dr. Dully's opinions, alone, were insufficient to determine the actual age of the individuals; (2) Dr. Dully did not offer an opinion on the actual age

of the individuals; and (3) the images do not necessarily give an indication of the actual chronological age that may be discovered during the investigation. [Doc. 66, p. 9]. This is accurate.

Plaintiff showed repeatedly in his Motion that Dr. Dully's "opinions are in no way related to chronological age," and that the opinions were based entirely on the appearances of the individuals in the image. [Doc. 66, pp. 5, 7-8]. Plaintiff also quoted language showing that Dr. Dully expected that any factual determination of the actual age of an individual in a pornographic image would be established through the investigation by law enforcement, not through her opinion alone. [Doc. 66, p. 8]. Finally, Plaintiff quoted language demonstrating that Dr. Dully directly informed Detective Preston of the limitations of SMR and the unreliability of her opinion as to the chronological age of the individuals depicted in images. [Doc. 66, p. 10].

Considering this information, Plaintiff makes the remarkable leap in logic to conclude that Dr. Dully's reports "can *only* be explained by a malicious disregard for the truth or consequences of her actions…" [Doc. 66, pp. 10-11] (emphasis added). It is unclear what "truth" Plaintiff is referring to in this conclusion. Dr. Dully had no knowledge of the actual, chronological age of the individuals in the images. Her opinions spoke of the appearance of the individuals, and she made sure to convey the limitations of her opinions regarding chronological age directly to Detective Preston as she reviewed the images. Because fabrication of evidence

10

claims under the 14th Amendment as alleged by Plaintiff require *knowledge* that the evidence is false, the deposition testimony quoted by Plaintiff cannot satisfy the requirements of his claim. *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).

**B. Plaintiff Fails to Establish Intent to Deceive or Admission of Fabrication**

Plaintiff stated that Dr. Dully offered direct proof in deposition that she "intended for anyone reading her reports to believe that she was offering a medical opinion about the *actual age* of the individuals." [Doc. 66, p. 11] (emphasis added). Additionally, Plaintiff concluded that this direct proof constitutes a confession to "fabricating false and misleading evidence in a criminal investigation." [Doc. 66, p. 15]. The only proffered deposition testimony of these significant allegations fails to bear their weight. Plaintiff provided the following excerpt:

> Q· · ·Okay. I want to share again Exhibit 5 – I mean, I am sorry, Exhibit 4 from the original deposition, and let me go to the February 22nd. I am going to read a line. You say, "This female child appears younger than the age of 18." Is that what you mean when you say "appears," that makes it obvious that you are just talking about appearance, not her actual age?
>
> A· · ·Yes.
>
> Q· · ·Okay. April 5th, and I am moving down to the third letter in our exhibit, in the second paragraph you wrote, "This image shows a female child with her black top parted and her underwear down around her parted thighs, exposing her genital area clearly." You didn't use the word appear in that sentence. Why not?
>
> A· · ·I don't know why not. Maybe I did or maybe I didn't. What does it say? It is very easy to see. She has -- she's prepubertal.

Commented [JK3]: This is the first time this case comes up so we may want to just make a quick note of the standard...we cite it once later and could remove it from that string cite if we cite it here first

Q· · ·You say, "This image shows a female child with her black top parted and underwear down around her parted thighs, exposing her genital area clearly," but you don't say anything about appearances or appear in that.

A· · ·"She appears to have no pubic hair development in" --

Q· · ·Right. But did you call her a female child?· Do you see if I read that sentence how a person might interpret that as you saying that this person is a child, an actual child?

A· · ·Well, I hope so, yes, but I don't know that.

Q· · ·Wait, wait, wait, wait. You hope that someone would interpret this as you -- as you offering the opinion that this was actually a child, like her actual age was under the age of 18?

A· · ·Her age is indeterminant. But she is well under the age of 18, and that is her appearance.

Q· · ·So are you offering an opinion now on this image that the actual age of the model -- not just the appearance, but the actual age of the model is under the age of 18?

A· · ·No. Her appearance is under the age of 18 very clearly.

*Dr. Dully's Deposition*, 50:15-52:9.

Dr. Dully explicitly stated multiple times in this excerpt that she was opining on appearance and not actual age, which she considered to be indeterminate. Despite Plaintiff's attempts to characterize Dr. Dully's statements as being made with intent to deceive, it is clear from her testimony that she intended her opinion to convey that the individuals in the images she reviewed had the appearance of being underage. It is Plaintiff's counsel who misstates Dr. Dully's words in saying that she hoped or

12

intended that the reader(s) of her opinion would understand it to say that the individuals' actual, chronological ages were under 18.

Dr. Dully clarified that the chronological ages were indeterminate, but it was instead her conclusion that the appearances of the individuals were underage that she intended to convey. Plaintiff relies on one sentence in Dr. Dully's second April 5, 2023, letter that describes the individual in the image as a "female child," but he ignores that Dr. Dully concludes that same paragraph by stating that "[t]his developmental **appearance** is also ≤9-13.5 years of age. *Ex. H (emphasis added)*. In fact, throughout this short, two paragraph letter, Dr. Dully used the words "depicts," "appear," and "could be" seven times. *Ex. H*. Her other letters follow this same pattern.

Moreover, even if Dr. Dully did offer inaccurate opinions or used the SMR scale in a manner that was not scientifically supported as Plaintiff alleged, she still did not have any knowledge of the actual, chronological age of the individuals in the images, so Dr. Dully *could not* have intended to deceive anyone about their ages. What courts have found to constitute false evidence in violation of the 14th Amendment goes well beyond the scope of the medical opinions Dr. Dully provided in this matter. See *State v. Cayward*, 552 So. 2d 971 (Fla. 2d DCA 1989) (finding false evidence where police investigators deliberately manufactured *fake* laboratory reports and presenting them to a suspect during an interrogation to secure a

13

confession); *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) (finding false evidence where a crucial witness for the State in a murder prosecution offered false testimony that the State Attorney **_recognized as false when it was given_**, and they chose to not correct that false testimony); *Ashley v. City of New York*, 992 F.3d 128 (2021) (finding false evidence where police detective **_admitted to knowing the complaint was false_** when signed);

The evidence in the case shows that Dr. Dully did not deceive or intend to deceive law enforcement about the reliability of the SMR scale, as: (1) she directly informed Detective Preston of the limitations of SMR and the unreliability of her opinion as to the chronological age of the individuals depicted in the images; (2) evaluated the images in good faith with little investigatory context; and (3) she expected that any factual determination of the actual age of an individual in a pornographic image would be established through the investigation by law enforcement, not through her opinion alone. [Doc. 66, pp. 8, 10].

**C. Probative Value is Irrelevant**

Plaintiff quotes a limited portion of Dr. Dully's deposition to stand for the principle that she believes her opinions are not reliable or useful. This is a gross mischaracterization of her testimony. Plaintiff's quote highlights her insistence that her opinion should not stand alone. She was not admitting that it had no value at all. She states the exact opposite:

14

Q· · ·But that other purpose is not to provide reliable opinions on the actual age of models depicted in pornographic images, is it?

A· · ·Only appearance.

Q· · ·Right. And -- and appearance -- there's really no value to your opinion regarding appearance, is there?

A· · ·I am not sure -- I am not doing the investigation. I provide the consultation because I am required to and requested to.

Q· · ·But I am not -- I'm going to ask you the question again. There really is no value to your opinion regarding the appearance of a sexual maturity rating in a pornographic image, is there?

MR. WILSON:· Object to form.

A· · ·I don't –

Q· · ·It's a yes or no. Is there value or is there not value?

A· · ·There is value. In my opinion, there is value.

*Dr. Dully's Deposition*, 41:3-23.

Dr. Dully is not a detective or a prosecutor. The detectives approached her for an opinion, and they are free to reach their own conclusions about its probative value. Not every piece of evidence needs to be a smoking gun. The limited value of her testimony could mean many things as the case progressed, but it does *not* establish that her testimony is false.

**D. Plaintiff's Inapplicable Case Law**

The Complaint brings only a 14th Amendment Due Process claim against Dr. Dully, with Plaintiff's Motion focusing on the violation being Dr. Dully's alleged

15

deliberate fabrication of false evidence. However, Plaintiff's memorandum on fabrication of evidence refers to cases involving malicious prosecution. [Doc. 66, pp. 16-18]. While a fabrication of evidence claim most certainly is a "species of malicious prosecution," they are not the same. *Watkins v. Officer Davlin Session*, No. 19-60810-CIV, 2021 WL 66372 at *10 & n.6 (S.D. Fla. 2021); see *McDonough v. Smith*, 588 U.S. 109, 114-15 (2019); see also *Foulke v. Morgan*, No. 3:20-CV-5506-MCR-EMT, 2021 WL 12170573 at *5 (N.D. Fla. 2021). Moreover, "under the Fourteenth Amendment, there is no substantive due process right to be free from malicious prosecution without probable cause" because "[a] malicious prosecution claim arises under the Fourth Amendment, not Fourteenth Amendment substantive due process." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010).

Unsurprisingly, nearly all of Plaintiff's cases, including *Aguirre-Jarquin v. Hemmert*, the case that was singled out in Plaintiff's Motion as being particularly "instructive," only consider malicious prosecution claims pursuant to the Fourth Amendment. No. 6:20-CV-25-RBD-DCI, 2023 WL 2558479 at *6 (M.D. Fla. 2023); *Watkins v. Officer Davlin Session*, No. 19-60810-CIV, 2021 WL 66372 (S.D. Fla. 2021); *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004); *Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941 (11th Cir. 2008); *Ashley v. City of New York*, 992 F.3d 128 (2d Cir. 2021); *Mills v. Barnard*, 869 F.3d 473 (6th Cir.

16

2017); *Foulke v. Morgan*, No. 3:20-CV-5506-MCR-EMT, 2021 WL 12170573 (N.D. Fla. 2021).

The only exception to the list of 14th Amendment cases provided by Plaintiff is the notion that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against the state actors under the due process clause of the Fourteenth Amendment…" *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016). The Court further explains that, for this fabricated evidence claim to stand under the Fourteenth Amendment, the plaintiff must "draw a meaningful connection between [his] particular **due process injury** and the use of fabricated evidence against [him]." *Id*. at 371-72 (internal citations removed) (emphasis added). The Eleventh Circuit addressed this even more clearly by stating that a Fourteenth Amendment claim of fabrication of evidence must allege a procedural due process claim such as denying a plaintiff "the constitutionally required procedures necessary to challenge his indictments and arrest." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010). In fact, the Eleventh Circuit in *Rehberg* found that the plaintiff's successful challenges to the indictments brought against him demonstrated that there was no due process violation. *Id*.  Similarly, Plaintiff successfully used the legal system to challenge the allegations against him, and he made no procedural due process claims that would implicate the Fourteenth Amendment.

**Commented [JK4]:** This was supposed to say 14th amendment right? I changed it to be 14th but just wanted to be sure

**Commented [JW5R4]:** I think this is supposed to be 4th.

17

Even if Plaintiff's allegations were to improperly be considered under the Fourteenth Amendment, Dr. Dully's minimal involvement does not satisfy the requirements of a fabricated evidence or malicious prosecution claim. Each case cited by Plaintiff found that the state actor charged with fabricating evidence had **knowledge** of that evidence being false. For example, in *Aguirre-Jarquin* (although summary judgment on the fabrication of evidence claim in favor of the plaintiff was *still* denied) the court found that a state finger-print examiner could have violated the plaintiff's due process rights by fabricating evidence through the following: (1) repeatedly sending print matches to an older analyst with medical issues who was considered to be incompetent; (2) violating policy by sending print matches for verification after other examiners in the office had expressly disagreed with the identification; (3) and failing to get prints verified by anyone else at all. No. 6:20-CV-25-RBD-DCI, 2023 WL 2558479 at *7 (M.D. Fla. 2023).

Here, Plaintiff has only proven that Dr. Dully knew, at the time her opinions were written, that the SMR scale was not a reliable method to determine the exact chronological age of individuals in images. The evidence is undisputed that Dr. Dully went to lengths to explain these limitations directly to Detective Preston and include supporting language in her written opinions. In fact, Plaintiff's expert stated that he is unable to testify that Dr. Dully provided deliberately false information, conspired with law enforcement to achieve a specific result, or did anything beyond

what he would consider to be negligently applying medical standards. *Dr. Krugman's Deposition*, 30:2-21. It is also important to note that, in providing his expert report, Dr. Krugman did not review any of the images himself. *Dr. Krugman's Deposition*, 8:23-9:4. He does not and cannot make the claim that Dr. Dully's evaluation was wrong, or that she should have been able to identify the individuals as adults. In no way can Dr. Dully's actions, in light of her knowledge of SMR limitations, be construed as malicious or fabricated.

**Dr. Dully's Protections**

These protections will be addressed in greater detail in Dr. Dully's Motion for Summary Judgment, but she is entitled to the following:

**A. 34 U.S.C. § 20342 provides a Presumption of Good Faith**

Title 34 U.S.C. § 20342 shields Dr. Dully from civil liability for providing her medical opinions in this matter. The broad protections of section 20342 apply because Dr. Dully is an individual who provided medical opinions through consultations with law enforcement regarding an investigation pursuant to a good faith report of CSAM. It is commonly understood that cases involving children who are unlawfully brought into the pornography industry constitute child abuse. *Dr. Krugman's Deposition*, 9:25-10:4. Because Dr. Dully's role in this matter is covered by section 20342, she **must** be excluded from any civil liability, and further, she is entitled to a presumption of good faith.

Even if Plaintiff did provide evidence rebutting this presumption of good faith, determining whether a presumption has been rebutted requires a weighing and consideration of the evidence that "cannot be appropriately undertaken in summary judgment proceedings." *RBC Ministries v. Tompkins*, 974 So.2d 569, 571 (Fla. 2d DCA 2008) (quoting *Heisig v. Heisig*, 620 So.2d 1106, 1106 (Fla. 4th DCA 1993). "[W]here there is evidence supporting the existence of a rebuttable presumption with respect to a material issue and the moving party bears the burden of disproving the presumed fact, the moving party is precluded from obtaining summary judgment." *Leitner v. Leitner*, 391 So. 3d 1023, 1026 (Fla. 5th DCA 2024) (citing *RBC Ministries v. Tompkins*, 974 So.2d 569, 571 (Fla. 2d DCA 2008). Here, the rebuttable presumption of good faith is material, and as the moving party, Plaintiff bears the burden of disproving the presumption of good faith.  Therefore, summary judgment in Plaintiff's favor is **precluded**.

### B. Dr. Dully is entitled to Qualified Immunity

Pursuant to Section 768.28(9)(a), Fla. Stat., state officers, employees and agents are immune from lawsuits arising from "act[s], event[s], or omission[s] of action in the scope of [their] employment or functions." *Eiras v. State Dep 't of Bus. & Prof'l Regulation Div. of Alcoholic Bevs. & Tobacco*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). This immunity "may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose

20

or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Id*. (quoting Fla. Stat.§ 768.28(9)(a)). Thus:

In order to pierce the statutory immunity defense, Plaintiff must prove that the public official either acted outside the scope of their employment or in bad faith. The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement. This duty cannot be satisfied by mere conclusory allegations. Without support, the complaint must fail. *Id*. (quoting Brown v. McKinnon, 964 so.2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted)). In this case, Dr. Dully is entitled to a presumption of good faith. 34 U.S.C.A. § 20342(2).

As the Second Amended Complaint expressly states that Dr. Dully was at all times "acting under the color of State Law" and "[with]in the course and scope of her role," the burden of proof necessarily shifts to Plaintiff to show that Dr. Dully violated a clearly established constitutional right in bad faith—meaning actual malice—when she provided her medical opinions to the Sheriff's Office. [Doc. 40 ¶¶ 146-148]. Plaintiff has failed to prove either prong of this requirement.

## CONCLUSION

Because there are genuine disputes of material fact, and Plaintiff is attempting to rebut a presumption of good faith, Plaintiff's Motion for Partial Summary Judgment should be denied. Additionally, Plaintiff has failed to show that Dr. Dully was acting in bad faith or with malicious intent, so she is entitled to qualified

21

immunity protections. Finally, Plaintiff has improperly argued a violation of the 14th Amendment Due Process Clause for fabrication of evidence without arguing or showing evidence of a due process violation.

WHEREFORE, Defendant respectfully requests this Court deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

*/s/ Jami M. Kimbrell*
Jami M. Kimbrell, Esq.
Florida Bar No. 0657379
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Jami@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

*/s/ John Wilson*
John Wilson, Esq.
Florida Bar No. 84798
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Johnwilson@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

22

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by e-filing on September 9, 2025.


/s/ Jami M. Kimbrell
Jami M. Kimbrell, Esq.

/s/ John Wilson
John Wilson, Esq.

23