UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CASE NO.:  3:24-cv-00044-MMH-MCR


WILLIAM LEE LAWSHE,
an individual,

    Plaintiff,

vs.

MIKAYLA PRESTON,
in her individual capacity
as a Detective for St. Johns
County Sheriff's office
and KATHLEEN DULLY, in her
individual capacity as
medical director of the UF
Child Protection Team,

    Defendants.
                    /


ZOOM VIDEOTAPED DEPOSITION OF:  KATHLEEN DULLY, M.D.

DATE:          April 28, 2025

TIME:          10:00 a.m. - 12:26 p.m.

LOCATION:      Via Zoom

REPORTED BY:  LISA K. PENKACIK, RMR

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 2**

A P P E A R A N C E S:


        MICHAEL K. ROBERTS, ESQUIRE
        Law Offices of Nooney, Roberts
        Hewett and Nowicki
        1680 Emerson Street
        Jacksonville, Fl  32207
        mroberts@nrhnlaw.com

             On behalf of the Plaintiff.


        AMY SHEVLIN, ESQUIRE
        Buchanan & Buchanan, P.A.
        1900 SE 18th Avenue
        Suite 300
        Ocala, FL 34471-8237
        ashevlin@rbtrial.com

             On behalf of the Defendant Kathleen Dully,
              M.D.

        MATTHEW CARSON, ESQUIRE
        Sniffen & Spellman, P.A.
        123 N Monroe Street
        Tallahassee, FL 32301-1509
        mcarson@sniffenlaw.com

             On behalf of Defendant Mikayla Preston.


        ALSO PRESENT:   Danny Holguin, videographer
                        Shayne A. Thomas, Esquire
                        (University of Florida)
                        Autumn Zepf, paralegal

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 3**

I N D E X

TESTIMONY OF:   KATHLEEN DULLY, M.D.

DIRECT EXAMINATION by Mr. Roberts . . . . . .  4

CERTIFICATE OF OATH . . . . . . . . . . . . . . 87
CERTIFICATE OF REPORTER . . . . . . . . . . . . 88

ERRATA SHEET. . . . . . . . . . . . . . . . . . 89

PLAINTIFF'S EXHIBITS:

1 (Articles). . . . . . . . . . . . . . . . . 85
2 (Dr. Krugman's report). . . . . . . . . . . 85
3 (Demonstrative image) . . . . . . . . . . . 85
4 (Dr. Dully's letters) . . . . . . . . . . . 85

S T I P U L A T I O N S

It is hereby stipulated and agreed by and between counsel for the respective parties and the deponent that the reading and signing of the deposition be reserved.

**Page 4**

                    P R O C E E D I N G S

THE VIDEOGRAPHER:  Good morning, this is the beginning of media one in the deposition of Dr. Kathleen Dully in the matter of William Lee Lawshe versus Mikayla Preston, case number 3:24-cv-00044-MMH.  Today's date is April 28, 2025 and the time is 10:01 a.m.  My name is Danny Holguin.  I am the videographer.  The court reporter is Lisa Penkacik.  We are here with Huseby Global Litigation.

Counsel please introduce yourselves after which the court reporter will swear in the witness.  Thank you.

MR. ROBERTS:  Michael Roberts for the plaintiff, Mr. Lawshe.

MS. SHEVLIN:  Amy Shevlin on behalf of Dr. Dully.

MR. CARSON:  Matt Carson representing Detective Preston.

                    KATHLEEN DULLY, M.D.,

having been first duly sworn by the reporter, thereupon testified upon her oath as follows:

THE WITNESS:  I do.

                    DIRECT EXAMINATION

BY MR. ROBERTS:

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 5

Q.   Okay.  Dr. Dully, I introduced myself a little bit earlier, my name is Michael Roberts, I'm here to ask some questions today.  I assume -- you've had your deposition taken before?

A.   Yes, but never as a defendant, but, yes.

Q.   Okay.  You've had it taken as an expert witness?

A.   Yes.

Q.   Well, a deposition is a deposition, same ground rules apply, you're under oath, and I'll be asking you questions.  At any time if you don't understand a question that I've asked you, please let me know and I'll try to rephrase it.  I don't have a script that I'm going from, so it's probable that I will ask a bad question, so don't hesitate to question me if you don't understand.  Also, there is a court reporter who is trying to take down everything that we say, question and answer, so we'll just try to be mindful of the job that she's trying to do and not speak over one another; sometimes that's difficult for me and sometimes it's difficult for witnesses.  So we'll do the best we can.  But the last thing that I'll say is, a lot of times we'll speak colloquially, we'll say uh-huh or uh-huh or they'll be a nod of the head, I'll ask for a verbal

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 6

response, if I catch it, just because the court reporter will not be able to describe un-huh, uh-huh, I'll know what you mean by a nod of the head, but she can't write that down so...

A.    Thanks.

Q.    With that, can you just state your full name for the record?

A.    Kathleen Mary Dully, D-u-l-l-y.

Q.    And where are you currently employed?

A.    The University of Florida College of Medicine in Jacksonville.

Q.    And I understand you work for the Child Protection Team?

A.    Yes, I'm the medical director of the Child Protection Team for the University of Florida.

Q.    And what does that mean; what is a medical director of the Child Protection Team?

A.    I supervise the medical care that we deliver on a case by case basis and solve problems and help hire people, essentially.

Q.    And just for those who may not know, what is the Child Protection Team?

A.    The Child Protection Team is the body of experts that consults for DCF usually and sometimes law enforcement as well on suspected or advertised

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

**Page 7**

child maltreatment cases.  And offers them determinations on the likelihood of abuse or that it is not abuse.  We cover the eight counties -- this Child Protection Team covers the eight northeast counties of Florida.

**Q.   What is -- well, what is your training and background?**

A.   So in 1981 I graduated from Cornell University College of Arts and Sciences, in Ithaca, New York with a Bachelor of Arts and I graduated with distinction in all subjects and Cum Laude.  In 1986, I graduated from the F. Edward Hebert, H-e-b-e-r-t School of Medicine in Bethesda, Maryland, which is Fed Med or the military medical school.

And from there I went to pediatric internship followed by residency training at Naval Hospital Oakland, California from 1986 through 1989. In 1989, I was transferred to my first duty station as a pediatrician, and that was here at Naval Air Station Jacksonville, Florida where I served for two years.  I was assigned to be the Chair of the Child Abuse Case Review Committee here at this military region Navy Marine Corps while I was there.

At the time the only training that was available was in the conference format, so although I

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 8**

had seen and cared for children of possible child maltreatment before, I had only learned about it as a resident and on the job training is what that is and by reading and studying the cases in the medical literature.

Then in 1990 the Navy sent me to my first child abuse conference in January in San Diego, California, which was the child maltreatment conference that is offered by what is called now Navy Children's Hospital in San Diego and the American Academy of Pediatrics and the American Professional Society of Abusive Children.  The conference format for many years was all that was available in terms of getting additional medical training and consultation and so I continued to pursue that all the time every year, and then in 1980 -- sorry, during Desert Shield.  1991, the Navy moved me to Naval Medical Center San Diego.

In San Diego they made me in charge because I had the training, child abuse case review, subcommittees for physical abuse, sexual abuse and something they called the multi-problem family unit. And those I was the Chair, but actually functioned as the medical consultant to a team of people doing case reviews for military commanders.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 9

In 1993, there was some ability to propose to the military that specialized fellowships could be developed, and were slowly becoming available, and in 1994 the Navy sent me to the Chadwick Center for Children & Families, which was Rady Children's Hospital for a year of fellowship.  And there I was able to see cases under supervision of people who had been working in the field for 30 and more years, and do the medical assessments on suspected child maltreatment cases, as well as that which is not.  So that was a specialized opportunity.

When I finished that in 1994, the Navy moved me to the Naval Hospital Camp Pendleton, California, and there I was again the medical consultant for the child abuse case review committee for Marine Corps Commanders and then I was also the domestic violence consultant for their domestic violence case review committees.

In all of this time I had served as faculty and am a teacher for medical residents and positions in training at all levels in child maltreatment, be it radiology or orthopedics, or OB/GYN or pediatrics, of course, and emergency medicine.

And after 1994 when I finished the fellowship, my additional training went back to

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 10

conferences and continuing medical education and then I was able -- though I had passed the general pediatric specialty boards in 1989, the first child abuse specialty board became available in 2009 and I was grandmothered into the field with about 200 others, and I was able to sit for and pass that EXAMINATION in 2009 to be a board certified specialist in child abuse pediatrics.

Q.   Very good.  Thank you for that.

So currently at the Child Protection Team, do you -- do you see -- do you have patients; do you form a patient -- a doctor/patient relationship with the people that you examine?

A.   On a case by case basis, yes.

Q.   And tell me, what do you mean by that?

A.   So I am consultant.  I don't become the child's pediatrician, but I consult for DCF and law enforcement and the hospitals and so I have a time of a doctor/patient relationship, but the relationship goes back to the primary care pediatrician.

Q.   In the time that you consult, do you -- do you agree that you have to practice within the standard of applicable care, medical care?

A.   Yes.

MS. SHEVLIN:  Form.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 87**

                    CERTIFICATE OF OATH


STATE OF FLORIDA   )

COUNTY OF ORANGE   )


        I, the undersigned authority, certify that

KATHLEEN DULLY, M.D. personally appeared before me

and was duly sworn.

        WITNESS my hand and official seal this 10th

day of May 2025.

_____

LISA K. PENKACIK, RMR
Notary Public - State Of Florida
My Commission expires 9/7/2026
Commission No.:  HH 289853

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 88**

CERTIFICATE OF REPORTER

STATE OF FLORIDA    )

COUNTY OF ORANGE    )

I, LISA K. PENKACIK, Registered Merit Reporter, certify that I was authorized to and did stenographically report the deposition of KATHLEEN DULLY, M.D.; that a review of the transcript was requested; and that the transcript is a true and complete record of my stenographic notes.

I, further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in this action.

Dated this 10th day of May, 2025.

_____
LISA K. PENKACIK, RMR