UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,

      Plaintiff,

v.                             Case No. 3:24-CV-00044-MMH-MCR

MIKAYLA PRESTON, et al.,

      Defendants.

_____/

**DEFENDANT DETECTIVE PRESTON'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant DETECTIVE MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sheriff's Office, by and through undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure, and Local Rule 3.01(b), files her response in opposition to Plaintiff's motion for partial summary judgment [ECF No. 67].

Plaintiff's motion should be denied. Plaintiff has not presented undisputed facts that, when applied to applicable law, would entitle him to judgment in his favor as to his unreasonable search and unreasonable arrest claims against Detective Preston.[1]

**DETECTIVE PRESTON'S OPPOSING STATEMENT OF FACTS**

This case centers around digital images that resulted in criminal charges against

---

[1] Plaintiff also raised a first amendment claim in his second amended complaint. ECF No. 40, Count V, p. 32. Plaintiff does not seek partial summary judgment on that claim.

Plaintiff for possession of child sexual abuse material ("CSAM"). ECF No. 40, ¶¶ 19, 34, 37; ECF No. 77-1. For purposes of this response only, Detective Preston does not dispute the facts presented in the section of Plaintiff's motion titled "Factual Background," except as noted below.

### "Documentation" Regarding Age of Individuals Depicted in Subject Images

Plaintiff asserts that after his arrest, his "criminal defense team located the contact information of the website's records' custodian (published on the website) and promptly received records with documentation of the models' age." ECF No. 67, p. 8. This is incorrect. At no point from Plaintiff's arrest to the present has anyone provided "documentation" of the ages of the individuals in the subject images at the time they were captured.

Jeffrey Douglas purports to be the custodian of records for the website met-art.com. ECF No. 67-8, p. 7. Mr. Douglas provided Plaintiff's criminal defense team redacted photographs of "Kasey Lane" and "Milena D." holding foreign passports. Id., p. 6. Neither of these photographs contain the individuals' names. Id.

Three of the images at issue in this litigation (f6a487, 0059, and 0065(1)) contain a tiny "met-art.com" watermark. Throughout this litigation, Plaintiff has referred to the individual in these images as "Milena D." Id., p. 6. The f6a487 image comprised the NCMEC Cybertip, and supported the search warrant for Plaintiff's cell phone records. ECF No. 67-1, p. 2. The 0059 and 0065(1) images supported Counts I and II of the Information. ECF No. 67-15.

During Plaintiff's criminal case, Mr. Douglas provided an affidavit executed in

2

2015 wherein he averred "to the best of his knowledge and belief" that "Milena D."[2] was born in June 1991, and "[t]he earliest photography of her was recorded in February 2010" when "[s]he was eighteen years (and seven months) old…" ECF No. 67-8, p. 7. Mr. Douglas provided no concrete or meaningful information to establish: (1) her real name; (2) her date of birth; or (3) the date(s) on which the 0059, 0065(1), or f6a487 images were captured. This is far from "documentation" of the "model's" age at the time the images were taken.

Mr. Douglas noted "she has been the subject of many inquiries" and the subject of "cases…in England, Iowa, Holland, and France." Id., p. 6.[3] Mr. Douglas stated further that he has "asked when [the] 'Top Model' film shoot occurred…" Id. The record does not establish when that "film shoot" occurred, or which pictures at issue in this litigation, if any, were taken as part of the "Top Model" "shoot."

Plaintiff was also charged with possession of sexual performance of a child based on the DuckDuckGo image. ECF No. 67-15. Plaintiff has referred to the individual in this image as "Kacey Lane." ECF No. 67-8, p. 6. By all accounts, the DuckDuckGo image has no connection to met-art.com. Mr. Douglas provided no concrete or meaningful information to establish: (1) her real name; (2) her date of birth; or (3) the date on which the DuckDuckGo image was captured. Moreover, Mr.

---

[2] The affidavit is silent as to "Kacey Lane."

[3] The f6a487 image had been viewed by NCMEC staff prior to January 25, 2023. ECF No. 77-2, 17:3-6, 110:13-111:2. Prior to January 25, 2023, this image had been seen in over 200 CyberTipline reports. Id., 15:12-16. As of earlier this year, NCMEC still classified the image as "CP, unconfirmed." Id., 111:3-14; *see also* Plaintiff's Motion to Seal, Case No. 3:24-cv-00137-MMH-LLL, ECF No. 70.

Douglas provided no "documentation" that the individual in the DuckDuckGo image is, in fact, "Kacey Lane." To be sure, all Mr. Douglas provided was the thin promise that "[t]he earliest images of her" – whatever they may be – were taken when she was 18 years, 4 months, and 12 days old. Id.

Mr. Douglas did not assert that he was present when any of these images were captured. At best, he provided information of dubious veracity through multiple layers of hearsay. In any event, it fell well short of any definition of "documentation."

### First Affidavit for Search Warrant

This section of Plaintiff's motion contains legal arguments masquerading as "factual background." ECF No. 67, pp. 12-13. For example, Plaintiff asserts that "Preston knew that Dr. Dully's opinion was not a reliable medical opinion." Id., p. 13. To the contrary, Detective Preston testified that she believed Dr. Dully was a reliable source of information in estimating the age of the individuals in these images. ECF No. 77-3, 105:19-106:19, 131:14-18. Detective Preston included the body of Dr. Dully's opinion verbatim in the search warrant affidavit. Compare ECF No. 67-1, pp. 2-3, and ECF No. 67-9, p. 1.

Plaintiff also asserts that Detective Preston "made material false and/or misleading statements" in her search warrant affidavit, and that she "did not know any ICAC [Internet Crimes Against Children] investigators who had encountered this website in past investigations." ECF No. 67, p. 13. To the contrary, Detective Preston testified that SJCSO Detective Kevin Greene told her he had encountered met-art.com in other investigations. ECF No. 77-3, 51:10-24, 54:2-22. Further, Detective Greene

testified that he had read that met-art.com had "used 17 year old models from the Ukraine back years ago" when he "was doing investigations,"[4] although he doesn't remember talking with Detective Preston about it. ECF No. 77-4, 52:2-11, 53:12-21.[5]

But perhaps most egregiously, Plaintiff asserts that "[b]ased on these false statements and omissions of exculpatory evidence, the judge executed the Search Warrant." ECF No. 67, p. 13. There is no factual basis for this claim in the record.

### Undisputed Facts Omitted from Plaintiff's Motion

Detective Preston's investigation began when Sgt Eugene Tolbert assigned the investigation of the NCMEC Cybertip to Detective Preston. ECF No. 77-5, 7:1-15. Sgt Tolbert was the first person to believe that the individual in the Cybertip image was a minor. Id., 7:1-10:7, 10:25-11:2, 11:18-24, 15:13-18, 16:12-13, 16:16-19, 17:13, 74:2-10. When reviewing NCMEC Cybertips for assignment to detectives, Sgt Tolbert would try to "weed out as many [tips] as possible just to keep the detectives' case loads manageable," and estimates that he would only assign around 50 percent of the Cybertips received. Id., 35:7-19.

Sgt Tolbert accompanied Detective Preston to meet Dr. Dully. Id., 11:25-12:14. Dr. Dully agreed that the individual in the f6a487 image appeared to be a child. Id., 15:22-25; ECF No. 67-9, p.1.

---

[4] Detective Green was an ICAC investigator from 2015 until 2017, during which time he investigated crimes. ECF No. 77-4, 5:4-21. For the past five years, he has been a digital forensics detective. Id., 4:11-5:3.

[5] Sgt. Tolbert also remembers Detective Greene telling him that met-art had previously displayed images of underage females. ECF No. 77-5, 39:21-40:8.

Dr. Dully is the medical director of the Child Protection Team for the University of Florida. ECF No. 77-6 6:9-15. The Child Protection Team is a body of experts that consults with agencies, including law enforcement agencies such as the St. Johns County Sheriff's Office. Id., 6:21-7:5. Dr. Dully is board certified in both pediatrics and child abuse pediatrics. Id., 10:2-8. Dr. Dully knows that law enforcement agencies will consult with her on suspected CSAM cases to assist with determining the age of the individual in an image. ECF No. 77-7, 78:24-79:20, 80:21-81:8. Dr. Dully understands that law enforcement is going to use her opinion, at least in part, in their decision-making process, such as whether or not to seek a search warrant. Id., 82:11-83:14. If Dr. Dully had not been willing to render her services, Detective Preston would have spoken to her supervisor. ECF No. 77-3, 192:6-193:22. According to Sgt. Tolbert, If Dr. Dully would have told detectives that the individual in the image was not a minor, they "would have went with what Dr. Dully said." ECF No. 77-5, 16:13-16; *see also* ECF No. 77-3, 192:23-193:9.

In addition to consulting with Dr. Dully prior to filing her affidavit for search warrant, Detective Preston also consulted with Kaitlyn Payne, then-assistant state attorney with the State Attorney's Office for the 7th Judicial Circuit of Florida. ECF No. 77-3, 182:20-183:10; ECF No. 77-8, ¶¶ 1-5. At the time of Plaintiff's arrest, Ms. Payne had years of experience and had prosecuted hundreds of cases involving internet crimes against children. Id., ¶ 3. Ms. Payne routinely and regularly relied on Dr.

Dully's opinions regarding the ages of individuals in these types of images. Id., ¶ 6.[6]

Ms. Payne reviewed the unredacted version of image f6a487, and reviewed and approved Detective Preston's affidavit for search warrant to Verizon/Synchronoss. Id., ¶ 5. Ms. Payne believed there was probable cause to seek a search warrant to obtain images on Plaintiff's phone. Id., ¶ 5-7. She believed there was probable cause even if Detective Preston would have omitted references to met-art.com in her affidavit for search warrant. Id., ¶ 5.

Detective Preston also consulted with Ms. Payne prior to arresting Plaintiff. ECF No. 77-3, 192:2-5, 198:1-199:21, 201:2-5; ECF No. 77-8, ¶ 11. Ms. Payne reviewed unredacted versions of the images titled 0065(1), 0059, and DuckDuckGo, and confirmed to Detective Preston that she would prosecute Plaintiff for possession of those images. ECF No. 77-8, ¶ 11. The decision to arrest passed through a SJCSO sergeant and lieutenant, as well. ECF No. 77-3, 192:2-5; 198:1-11; ECF No. 77-5, 33:23-34:5. Ultimately, Sgt. Tolbert participated in the ruse to get Plaintiff to come to the Sheriff's Office. ECF No. 77-5, 28:9-25.

Sgt. Tolbert does not agree that a reasonable investigation necessarily includes visiting the website where the image was published. Id., 37:12-19. Oftentimes, the companies that publish these images are overseas. Id., 41:2-13. Sgt. Tolbert cannot remember a scenario where detectives in his unit pursued age verification

---

[6] Sgt. Tolbert met with Dr. Dully approximately six times for her assistance in his investigations of child pornography. ECF No. 77-5, 56:15-22, 75:20-76:4. He understood her to be qualified to provide an expert opinion. ECF No. 77-5, 59:4-21.

documentation as part of an investigation. Id., 47:12-22. Sgt Tolbert reviewed and notarized the affidavit for search warrant. Id., 28:9-22; ECF No. 67-1, pp. 1, 5.

On May 5, 2023, Ms. Payne filed an Information charging Plaintiff with three counts of possession of sexual performance by a child for the 0065(1), 0059, and DuckDuckGo images. ECF No. 77-8, ¶ 12-13; ECF No. 67-15. The State Attorney's Office later decided to drop those charges. ECF No. 77-8, ¶ 14; ECF No. 67-16, p. 5.

## MEMORANDUM OF LAW

The Court is familiar with the standard for evaluating motions for summary judgment. In the interest of brevity, Detective Preston moves directly into legal argument.[7]

### I.    Plaintiff's Unreasonable Search Claim Fails

#### a.  Detective Preston had probable cause to seek a search warrant

In his complaint, Plaintiff asserted that "[a]t no time did Det. Preston … have a reasonable basis to believe the image [was] CSAM." ECF No. 40, ¶57. In the instant motion, Plaintiff claims "[Detective] Preston never had probable cause to seek a search warrant or make an arrest because there was a complete lack of reasonably trustworthy information to support the search warrant." ECF No. 67, p. 23.

Probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish a

---

[7] Plaintiff does not clearly divide his legal argument into sections addressing the two counts (unreasonable search and unreasonable arrest) addressed in his Motion. Nonetheless, Detective Preston will attempt to organize her Response to Plaintiff's memorandum of law by claim.

probability or substantial chance of criminal activity. *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (*quoting District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). Probable cause "is not a high bar" and does not require an actual showing of criminal activity. *Wesby*, 583 U.S. at 57. It "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." *Id.*

Viewed from the perspective of a reasonable officer, Detective Preston had probable cause to seek a search warrant based on the f6a487 image. Sgt Tolbert, Dr. Dully, Ms. Payne, and Detective Preston all thought the image depicted a minor.[8]

### b. Detective Preston did not make materially false statements in the search warrant affidavit

Plaintiff asserts that Detective Preston "made material false and/or misleading statements" in the search warrant affidavit. ECF No. 67, p. 13. In support, Plaintiff asserts that Detective Preston "knew that Dr. Dully's opinion was not a reliable medical opinion." Id. Again, that statement is without any factual support in the record. Moreover, based on her training and experience, Dr. Dully's opinions were

---

[8] Plaintiff avers, based on "observation skills," that the girl in the image looks 23 or 24 years old. ECF No. 77-9, 61:8-24.

reliable, and, in fact, had been relied upon by law enforcement in northeast Florida for some time. ECF No. 77-8, ¶ 6.

Plaintiff also asserts that Detective Preston had "no personal knowledge about whether or not there is a known history of illegal content on this site." ECF No. 67, p. 4. As discussed above, Detective Preston recalled that Detective Greene told her he had encountered met-art.com in other CSAM investigations. And while Detective Greene does not specifically recall talking with Detective Preston about that, Sgt Tolbert also remembers Detective Greene telling him that met-art.com had previously displayed images of underage females. The fact that Detective Preston learned that information from her fellow officers has no bearing on the Court's analysis regarding probable cause. "It is well established that '[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.'" *Smith v. City of Fairburn, Georgia*, 679 Fed. Appx. 916, 922 (11th Cir. 2017) (*quoting United States v. Ventresca*, 380 U.S. 102, 111 (1965)). Detective Preston did not have any reason to question the reliability of Detective Greene's statements.

### c. Detective Preston did not omit exculpatory evidence in the search warrant affidavit

Plaintiff asserts that Detective Preston omitted from her affidavit that NCMEC categorized the f6a487 image as "unconfirmed" child pornography. ECF No. 67, p. 13. All "unconfirmed" means is NCMEC believes it "could be CSAM, but [their] team is … unaware of the age of the individual who is being depicted." ECF No. 77-2, 26:7-

10

13; 28:6-8. A large portion of the reports that come into the CyberTipline are "unconfirmed" child pornography, and NCMEC transmits reports of "unconfirmed" child pornography to law enforcement "on nearly a daily basis." Id., 63:18-21, 64:9-15. Moreover, the complete NCMEC classification is "Apparent Child Pornography (Unconfirmed)" [ECF No. 67-2, p. 1], "which indicates the image appears to be child pornography." *See, e.g., United States v. Lynch*, No. 3:21-CR-00236, 2025 WL 43552, at *6 (M.D. Tenn. Jan. 7, 2025) ("This classification [Apparent Child Pornography (Unconfirmed)] indicates that the image appears to be child pornography. That the label includes the qualifier 'unconfirmed,' does not convey that it is not possible to ascertain whether the image is in fact child pornography; it is merely a reflection of NCMEC's role as a national clearinghouse and resource center rather than an investigative agency.") Regardless, Detective Preston *did* include in the affidavit for search warrant that the CyberTip "advised that the user uploaded one (1) image of *possible* CSAM." ECF No. 67-1, p. 2 (emphasis added). Accordingly, NCMEC's categorization of the f6a487 image as "unconfirmed" was not "exculpatory," and certainly had no bearing on the issue of probable cause.

Similarly, Plaintiff asserts that Detective Preston omitted from the affidavit that some detectives disagreed whether the individual depicted in the image was underage. ECF No. 67, p. 13. With all due respect to these other detectives, their opinions are not "exculpatory evidence." Especially here, when both Dr. Dully and Ms. Payne opined that the individual depicted in the f6a487 image appeared to be a child.

Finally, Plaintiff appears to suggest that Detective Preston "omitt[ed] material

11

exculpatory evidence [because] [s]he did not attach or include the subject image [with her search warrant affidavit]." ECF No. 67, p. 13. This argument fails for at least two reasons. First, the subject image (which Plaintiff did not attach to his motion, but which Detective Preston is filing in support of her response) *supports* a finding of probable cause, as the individual depicted in the f6a487 image clearly appears to be a child. Second, it is undisputed that the judges Detective Preston worked with preferred search warrants be submitted electronically, which could not have included attaching the image. ECF No. 77-3, 133:11-20.

### d. Even if there were falsities or omissions, the search warrant was still valid

Even if the affidavit contained falsities or omissions, the search warrant still would have been supported by probable cause. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or ... reckless disregard" for the truth. However, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause[,]" then the warrant is valid. *Id.* at 171-72. Negligent or innocent mistakes do not violate the Fourth Amendment. *Id.* at 171.

Here, there is nothing to suggest that Detective Preston deliberately falsified or omitted any information with reckless disregard for truth or an intent to mislead the judge reviewing and signing the search warrant. More importantly, nothing that was

12

allegedly false or omitted would have been critical to the finding of probable cause or lack thereof. Considering the remainder of the information provided in the search warrant affidavit (a detailed description of the image; that the CyberTip advised one image of possible CSAM; that Dr. Dully reviewed the image and opined that the "female child" in the image "appears younger than 18 years of age"), removal of the allegedly "false" information and inclusion of the allegedly "omitted" information would have had no effect on the probable cause determination.

### e. Detective Preston enjoys qualified immunity from Plaintiff's unlawful search claim

Plaintiff's motion contains a section titled "Qualified Immunity" that provides two paragraphs of general overview of the doctrine, and the threadbare assertion that "the requirement of probable cause, an objectively reasonable investigation and the prohibition against false statements to judicial authorities were clearly established." ECF No. 67, p. 20 (*citing Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004)).

The only other place the phrase "qualified immunity" appears is in the "Conclusion" section, where Plaintiff states "Det. Preston is not entitled to qualified immunity…" ECF No. 67, p. 24.

Plaintiff has not presented sufficient (or really, any) argument to support his assertions that Detective Preston does not enjoy qualified immunity. Plaintiff does not even outline the analysis the Court must undertake. Accordingly, Plaintiff cannot meet his burden of establishing that qualified immunity does not apply. Even if Plaintiff had undergone a thorough analysis, he could not show qualified immunity would not

13

preclude his unlawful search claim against Detective Preston.

The qualified immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted). Qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To invoke qualified immunity, a public official must demonstrate that he was acting within the scope of his or her discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The term discretionary authority "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it cannot be disputed that Detective Preston was acting within the scope of her discretionary authority, as all of the challenged actions occurred while she was on duty as a law enforcement officer conducting investigative and arrest functions.

Because Detective Preston was acting within the scope of her discretionary

14

authority, the burden shifts to Plaintiff to demonstrate that qualified immunity is inappropriate. *See id.* To do that, Plaintiff must show that, when viewed in the light most favorable to him, the facts demonstrate that Detective Preston violated his constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officer's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223. The Court may decide these issues in either order, but to survive a qualified immunity defense, Plaintiff must satisfy both showings. *Maddox*, 727 F.3d at 1120 (citation omitted).

A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Gilmore v. Ga. Dep't of Corr.*, No. 23-10343, --- F.4th ---, 2025 WL 1911728, at *8 (11th Cir. July 11, 2025) (en banc) (*quoting T.R. by and through Brock v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877, 883 (11th Cir. 2022)).

Here, for the reasons discussed above, Plaintiff cannot establish that Detective Preston violated his constitutional rights in seeking a search warrant. Accordingly, Detective Preston enjoys qualified immunity under the first prong.

Additionally, Plaintiff cannot establish that the constitutional right allegedly violated was clearly established in light of the specific context of the case and not as a

15

broad general proposition. To be sure, Plaintiff asserts that "the requirement of probable cause, an objectively reasonable investigation and the prohibition against false statements to judicial authorities were clearly established." ECF No. 67, p. 20. But that is precisely the sort of "broad general proposition" that is insufficient to defeat qualified immunity. And Plaintiff makes no real effort to show a clearly established right under any of the aforementioned three ways.

Moreover, for purposes of qualified immunity, the lower standard of "arguable probable cause" applies. *Ross v. James*, 861 Fed. Appx. 770, 778 (11th Cir. 2021) (*quoting Paez*, 915 F.3d at 1288) ("If the affidavits, including the omitted information, 'would have demonstrated even arguable probable cause ... then the officers are entitled to qualified immunity.'"). Here, the evidence that Detective Preston had at the time she sought a search warrant – even with the allegedly omitted information – would have provided arguable probable cause.

For these reasons, Detective Preston enjoys qualified immunity from Plaintiff's unlawful search claim.

## II.    Plaintiff's Unreasonable Arrest Claim Fails

### a.  Detective Preston had probable cause to arrest Plaintiff

The return on the search warrant on Plaintiff's phone revealed three additional pictures that supported Plaintiff's arrest and became Counts I, II, and III of the Information. ECF No. 77-8, ¶ 12-13; ECF No. 67-15. Prior to arresting Plaintiff, Detective Preston conferred with Dr. Dully, who opined that the "female child" in the

16

0065(1) and 0059 images "is depicted to be…≤12-15 years of age," and "female child" in the DuckDuckGo image has the developmental appearance of ≤9-13.5 years of age." ECF No. 67-9, pp. 2-3. Detective Preston also met with Ms. Payne, who confirmed that she would prosecute Plaintiff for possession of those images. ECF No. 77-8, ¶ 11. All of this provides Detective Preston with ample probable cause to arrest Plaintiff.

Plaintiff's arguments regarding an alleged lack of probable cause are actually arguments for potential defenses to the charged crimes. An affirmative defense to an alleged crime does not necessarily vitiate probable cause. *Manners v. Cannella*, 891 F.3d 959, 971-72 (11th Cir. 2018). Indeed, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018). This is so, in part, because probable cause is a preliminary determination made initially in an ex parte proceeding. *Paez*, 915 F.3d at 1286. It does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence. *See Manners*, 891 F.3d at 968. A law enforcement officer is not required to resolve every inconsistency found in the evidence. *Paez*, 915 F.3d at 1286. Moreover, police officers aren't lawyers, and are not expected to resolve legal questions or to weigh the viability of most affirmative defenses. *See Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th

17

Cir. 1991). So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause. *Paez*, 915 F.3d at 1286. The touchstone remains the reasonableness of the officer's conduct. *Id.*

Detective Preston conducted a reasonable investigation. Plaintiff cites *Cozzi v. City of Birmingham*, 892 F.3d 1288, to support his argument that Detective Preston disregarded easily obtainable facts that might tend to exculpate a suspect. ECF No. 67, p. 19. *Cozzi* has been abrogated, as it applied a more demanding probable cause standard that Eleventh Circuit and Supreme Court precedent require. *See, e.g., Harris v. Hixon*, 102 F.4th 1120, 1128 (11th Cir. 2024) (*citing Washington*, 25 F.4th at 899–901 and *Garcia v. Casey*, 75 F.4th 1176, 1186 n.1 (11th Cir. 2023)). Moreover, in *Cozzi*, the perpetrator had multiple tattoos up and down his arm, while the suspect had only one tattoo which the arresting officer refused to look at. *Cozzi*, 892 F.3d at 1297. Here, Plaintiff has not identified similar "plainly exculpatory and easily verifiable information" that Detective Preston ignored. *Id.* Rather, he merely "points to additional steps in the investigation that he thinks would have been useful for [Detective Preston] to perform." *Harris*, 102 F.4th at 1129. "His investigative suggestions are not evidence of a constitutional violation." *Id.*

Moreover, the fact that Detective Preston consulted with Ms. Payne (an experienced prosecutor of internet crimes against children) also supports Detective Preston's belief that probable cause existed and that her investigation was sufficient.

18

*Poulakis v. Rogers*, 341 Fed. Appx. 523, 533 (11th Cir. 2009) ("It stands to reason that an officer who, prior to an arrest, presents the facts to an assistant state attorney in the course of his official duties, and receives the prosecutor's advice that there is probable cause to arrest, would have a stronger reason to believe that there was probable cause."). Notably, neither Detective Preston's supervisors nor Ms. Payne instructed Detective Preston to visit websites or seek age verification information. And even Plaintiff concedes that a website purporting to comply with age verification laws may still post pictures of underaged individuals. ECF No. 77-9, 84:20-85:3.

Plaintiff also argues that Detective Preston had "no evidence to support a reasonable belief that Mr. Lawshe knew or believed that the image … depicted a minor." ECF No. 67, p. 5. But Detective Preston was not required to definitively prove intent prior to arresting Plaintiff. A reasonable officer could infer Plaintiff's intention from his actions. *See United States v. Martinez*, 96 F.3d 473, 478 n. 7 (11th Cir.1996) ("'[A]cts indicate the intention' is an old maxim.").

### b. Detective Preston enjoys qualified immunity from Plaintiff's unlawful arrest claim

"[O]fficers who make an arrest ... are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland*, 382 F.3d at 1232 (*citing Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge ... could have believed that probable cause existed to arrest." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001). In other words, Plaintiff must establish that no reasonable

19

officer would have probable cause under the totality of the circumstances. *Kingsland*, 382 F.3d at 1232 (*citing Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)).

Here, Detective Preston had, at least, arguable probable cause. There is little question that a reasonable officer in Detective Preston's position could have credited Dr. Dully opinions and determined probable cause existed to arrest Plaintiff. In fact, Detective Preston's supervisors, as well as Ms. Payne, so agreed. For the foregoing reasons, Plaintiff's motion should be denied.

Respectfully submitted this 9th day of September, 2025.

/s/ Matthew J. Carson
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
mcarson@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Attorneys for Detective Mikayla Preston*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of September, 2025, a true and correct copy of the foregoing was electronically filed in the United States District Court for the Middle District of Florida using the CM/ECF system, which will serve counsel of record.

/s/ Matthew J. Carson
**MATTHEW J. CARSON**