

1260 North Ponce de Leon Blvd., Suite E
St Augustine, FL 32084
(904) 825-0570    www.staugcr.com

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:24-cv-00044-MMH-MCR


WILLIAM LAWSHE,

      Plaintiff,

vs.

MIKAYLA PRESTON, in her individual
capacity as a detective for St. Johns
County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity
as medical director of the UF Child Protection
Team,

      Defendants.
_____

                    VIDEO RECORDED

DEPOSITION OF:    WILLIAM LEE LAWSHE

DATE TAKEN:      Friday, March 14, 2025

PLACE TAKEN:     1260 North Ponce de Leon Boulevard
                 Suite E
                 St. Augustine, Florida 32084

TIME:           9:16 a.m. - 12:16 p.m

BEFORE:         LAURA DWYER PIERLE, RPR
                 STENOGRAPHIC COURT REPORTER
                 AND NOTARY PUBLIC - STATE
                 OF FLORIDA AT LARGE
**************************************************

ST. AUGUSTINE COURT REPORTERS
1260 NORTH PONCE DE LEON BOULEVARD, SUITE E
ST. AUGUSTINE, FLORIDA  32084
904-825-0570

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

APPEARANCES:


    On behalf of the Plaintiff:
        NOONEY AND ROBERTS, P.A.
        1680 EMERSON STREET
        JACKSONVILLE, FLORIDA  32207
        By:  MICHAEL KEITH ROBERTS, II, ESQUIRE


    On behalf of the Defendant Mikayla Preston:
        SNIFFEN & SPELLMAN, P.A.
        123 NORTH MONROE STREET
        TALLAHASSEE, FLORIDA  32301
        By:  MATTHEW J. CARSON, ESQUIRE
              AND
           CHRISTEN PETRUZZELLI, ESQUIRE
           (Present via videoconference)

    On behalf of the Defendant Dr. Dully:
        BANKER, LOPEZ, GASSLER, PA
        1900 SOUTHEAST 18th AVENUE
        SUITE 300
        OCALA, FLORIDA 34471-8237
        By:  AMY SHEVLIN, ESQUIRE
           (Present via videoconference)

ALSO PRESENT:

    DAN BISHOP, VIDEOGRAPHER

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

- - -
INDEX
- - -

WITNESS:                                                          PAGE
WILLIAM LEE LAWSHE

DIRECT EXAMINATION BY MR. CARSON                                 5
CROSS EXAMINATION BY MS. SHEVLIN                                 88
REDIRECT EXAMINATION BY MR. CARSON                              121


CERTIFICATE OF OATH                                             127
CERTIFICATE OF REPORTER                                         128

- - -
EXHIBITS
- - -

NUMBER                      DESCRIPTION                          PAGE

DEFENDANT'S EX. 10   PLAINTIFF'S ANSWERS TO DEFENDANT    40
                     MIKAYLA PRESTON'S INTERROGATORIES
DEFENDANT'S EX. 11   PLAINTIFF'S ANSWERS TO DEFENDANT    40
                     DR. DULLY'S INTERROGATORIES

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

- - -

VIDEOGRAPHER:  This begins media unit number one to the video recorded deposition of William Lee Lawshe in the matter of William Lee Lawshe versus Mikayla Preston, et al. being heard before the U.S. District Court, Middle District of Florida, Jacksonville Division.  Case Number is 3:24-cv-00044-MMH-MCR.

Today's deposition is being conducted at 1260 North Ponce de Leon Boulevard, Suite E, in St. Augustine, Florida.  Today is March 14th, year 2025.  The time is 9:16 a.m.

My name is Dan Bishop.  And I'm your videographer.  The court reporter this morning is Laura Pierle.

Counsel, will you please state your appearances for the record and then our court reporter may swear in the witness.

MR. ROBERTS:  Michael Roberts for Mr. Lawshe.

MR. CARSON:  Matthew Carson for Detective Mikayla Preston.

MS. SHEVLIN:  Amy Shevlin on behalf of Dr. Dully.

- - -

Thereupon,

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

WILLIAM LEE LAWSHE,

Being by the undersigned Notary Public first

duly sworn, was examined and testified as follows:

THE WITNESS:  I do.

DIRECT EXAMINATION

BY MR. CARSON:

Q    **Good morning, Mr. Lawshe.**

A    Good morning.

Q    **My name is Matt Carson.  I represent Detective Mikayla Preston one of the Defendants in this action. You and I just met a couple of minutes ago, correct?**

A    Yes, sir.

Q    **Okay.  And you were having a little bit of a hard time maintaining your composure then, and, you know, you're just getting started and you're already a little bit upset.  I want you to know that if at any point during the deposition today you need to take a break for whatever reason, to use the restroom, to, you know, take a breath, take a walk outside, that's fine. You've just got to let me know.  All right.  As long as there is not a question pending that shouldn't be a problem.  Okay.**

**It's not my intent to unnecessarily prolong the deposition today or to make it any worse for you than it is, but I have to ask questions and this is my**

A    1969.

Q    Okay.  Where were you born?

A    Gainesville, Florida.

Q    Where else have you lived other than Gainesville and St. Augustine?

A    We spent some time in Miramar, Florida and Hollywood, Florida, Savannah, Georgia and I think that's most of -- well, I lived in Hawaii when I was in the military, too.

Q    Okay.  So you said that you've been in St. Augustine since roughly 1980?

A    Yes, sir.

Q    Okay.  And then have there been breaks where you've lived in other areas?

A    Once I become an adult I started living and I got my job with FWC, yes, but other than that I've lived here all of the time.  I was in Stuart, Florida for a little while when I got hired on with FWC.

Q    Okay.  When did you start working with FWC?

A    I'd probably have to look at some of my paperwork you-all sent me.  I don't -- I can't remember the date now.  It was roughly 15 years ago.  I worked for them 15 years.

Q    Okay.  And you worked -- that's Fish and Wildlife Commission, correct?

A    Yes, sir.

Q    And you were a certified law enforcement officer for them?

A    Yes, sir.

Q    What kind of work did you do?

A    Just what they do enforcement of the wildlife laws and, I mean, other laws because we do mainstream law enforcement as well.

Q    So I'm just trying to start our consideration in hopefully a lighthearted way so that, you know, we can get comfortable talking with each other.  Are you looking for people that are catching fish above the limit, undersized, that kind of thing?

A    That's the primary enforcement.  Anything to do with wildlife.  I was a -- I was a hill officer so I did more investigative stuff to where I was out in the woods working alone mostly listening for gunshots, going to gunshots, seeing if there any violations of that, DUI, BUI, all that kind of stuff.

Q    Did you say hill officer?

A    Hill officer.

Q    Okay.  And what does that mean?

A    I primarily worked in the woods and didn't work on the water.  They typically put the more seasoned officers on the hill because it's more difficult work,

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

part Indian, so maybe that is part of it.  Just tracking piece of it.  It takes a lot of attention to detail.

I need some more water.

MR. ROBERTS:  Yeah.  Just real quick I will grab some.  We don't need to go off the record.  I will just --

MR. CARSON:  No worries.  No worries.

MR. ROBERTS:  Is it right down here?

THE WITNESS:  Thank you.

BY MR. CARSON:

Q     So you're called by somebody with the St. Johns County Sheriff's Office?

A     Commander Strickland called me specifically.

Q     Okay.  The first time or the second time?

A     I am losing track.  First, second.

Q     Yeah.  Let me be clear then.  I am talking about in April 2023?

A     Okay.  No, he didn't call me for that.

Q     Yeah.

A     It was just Tolbert.

Q     You believe it was Tolbert?

A     Well, I think -- I think he said it was Tolbert on the phone when he called me.

Q     And he said need your help with a missing person, can you come in?

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

A    Yes, sir.

Q    Okay.  What phone did he call?

A    It would have been the phone that I had at that time which was, I guess, the phone that you-all got all the data off of still.

Q    Is that your personal phone?

A    That was my personal phone.

Q    Okay.  Because I understand at the time you had a personal cellphone and then you had a cellphone that had been issued by Fish and Wildlife, correct?

A    Yes, sir.  Yes, sir.

Q    So when he called you and said we need help with a missing person, did you believe that that was the purpose for you going to the Sheriff's Office to meet with him?

A    Of course.  I mean, I had no other reason not to believe it.

Q    All right.  You get there.  You said that you waited a while and then you went back and met with some folks; correct?

A    Yes, sir.

Q    Okay.  Who did you meet with?

A    The only one I know was Tolbert or deputy or Officer, Detective Tolbert, whatever his nomenclature is.

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

Q    I'll just tell you this, we have been calling everyone detective, because they have rank and then they get promoted.  And so detective, I think, covers it.

A    Okay.

Q    No one will fault you if you call everyone you dealt with detective.

A    Okay.

Q    All right.  Was anybody else in the room when you meet with Detective Tolbert?

A    Not at the time.

Q    What did Detective Tolbert and you talk about during the initial meeting?

A    Nothing really.  There wasn't time for it.  He asked me if I wanted to sit down.  I went to sit down and out of nowhere two other officers appeared and grabbed me by my left and right hand and told me don't move.  And asked me where my -- well, they didn't ask me where my gun was because they seen my gun.  But they basically stripped me of all my equipment.

Q    Do you know the two other officers that entered the room?

A    No, sir.

Q    Okay.  Did they appear to be uniformed deputies?

A    As best I can recall they were uniformed.  But

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

honestly as soon as it happened I was in such shock if I could have known them I wouldn't even be able to tell you I knew them.

Q   Sure.   You said that they took your gun, they took your other equipment?

A   Yes, sir.

Q   Okay.   Were you in full Fish and Wildlife Commission garb?

A   I was.

Q   Okay.   So you had your duty belt?

A   Vest, everything.

Q   Okay.

A   They took it all off.

Q   So before you and Detective Tolbert, or really anyone at the Sheriff's Office had any opportunity to talk that was the first thing that happened?

A   Yes, sir.

Q   Okay.   What did you think was going on?

A   I really had no idea I was in shock.  I kept asking, "What's going on?  What's going on?  What is this all about?"

And he kept telling me or he told me several times, "We'll get to that.  We'll get to that."

And I don't remember at what point they escorted me to a room and I actually started to deal

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

said, we'll get to that.  Just to sit tight.  And I think he had to ask -- he asked me something about my phone.  Like where is my phone, because I guess they went through my equipment and couldn't find the phone in question that they were looking for.

Q    Where was the phone?

A    I had forgotten it at home.

Q    Did you have your work issued phone?

A    I think I did, but I'm not positive.

Q    All right.  And a short time or some period of time later Detective Preston joins you and Detective Greene?

A    Yes, sir.

Q    And what, if anything, do you remember being said during that time?

A    It was all focused around the phone.  They came and asked me where is my phone and then they asked specifically where is my phone.  And it took me a little bit to realize that I left it -- I thought it was in my truck or on me.  But I guess in getting ready that morning I just forgot it.  Anyway I told them it must be at home.

And they were asking me maybe where.  And so I kind of went back through my mind where it could be. They left for a little bit.  They came back in.  They

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

said they were getting a search warrant.  That they needed to know specifically where it was at.  They left a little bit, they came back, they said they couldn't get into my house.  So I think I gave them a garage door number to get in the garage door.  And then some more time went by when they weren't in there.  And then they came back and said okay.  I don't know if they told me they got my phone or not.  I just assumed maybe they got it.  And I think that's when they started questioning. So, yeah, I think.  That's the best I can recall.

Q    And that's fine.  You know, the purpose of today is for me to find out what you remember.  And I don't expect you to remember everything.  But you are doing a really good job of trying and I appreciate that.

Other than what you've already said, do you remember anything that was said during your time being interviewed, questioned at the St. Johns County Sheriff's Office on April 12, 2023?

A    I mean, is there something I'm not saying?

Q    No.  Listen.  I'll be clear.  I'll just put this out there.  What I am trying to do and, you know, your lawyer may tell you the same kind of thing when you meet with him privately.  Lawyers like to know what the witnesses are going to say at trial.  And what I don't want to do is get to trial and have you all of a sudden

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

remember that Detective Greene or Detective Tolbert or Detective Preston said this or that.  I prefer to know that now.  So when I ask you those kind of questions saying is there anything else, I am not suggesting that there is anything else that you should remember, what I am trying to do is prevent me leaving here today not knowing everything I need to know.  Does that make sense?

A    Yes, sir.  Well, I think I'm pretty sure they were recording it.  So I don't want to say something that's inappropriate wrong.  I do remember at some point them asking me or them telling me finally what it was about.  And I don't remember how she said it.  I remember him kind of cracking a joke about something.  And I just thought that was weird about why is he cracking a joke with this going on.  And then that's when I told him I wanted a lawyer.  I wasn't going to talk to him anymore.

Q    Who cracked a joke?

A    Greene.

Q    Okay.  Do you remember what he said?

A    I don't.  It had something to do about the name of a school, the school or training center that we have in Tallahassee.

Q    What's the name of the school?

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

A    Now it's -- I don't even know if I can remember.  Tallahassee something Institute.  I can't remember.

Q    Is it the Old Pat Thomas?

A    Yeah.  He made a joke about the name of Pat Thomas versus what the new name is.  It was just weird.

Q    It wasn't inappropriate?  It wasn't rude --

A    I don't know.  Anything at that point in my life would have been inappropriate.

Q    Okay.

A    But, no, there was nothing like lude or lascivious about it.

Q    Gotcha.  What happened after you said that you wanted a lawyer?

A    They got up and walked out.

Q    Were you in handcuffs at this point?

A    I think they had taken -- I think they took them off once they put me in the room.

Q    At some point were you placed back in handcuffs?

A    And walked into the jail.  I'm fine.

Q    All right.  Do you remember anything being said either by you or the detectives as you were walked into the jail?

A    I don't.  I remember walking by a deputy and

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

A    Yeah.

Q    So Dr. Kaye told you that maybe to look at stories or pictures?

A    Yeah.  She just said have you tried pornography.  She didn't really -- I don't think she specified exactly what, but -- and she put me on testosterone and some other things to try to help.

Q    Showing you 8B and C.

A    Yes, sir.  That's the same girl.

Q    Yeah.  How old is that girl in that picture?

MR. ROBERTS:  Objection.  You can still answer.

THE WITNESS:  Oh, yeah.  Yeah.

BY MR. CARSON:

Q    You can answer.

A    23, 24.

Q    What makes you say that?

A    Just observation skills.  I mean, just looking at her she looks 23, 24 years old.

Q    Other than just observation skills anything else that leads you to believe that young lady is 23 or 24 years old?

A    No, sir, there is nothing else there.  I mean, I would say she's 23 or 24.

Q    Do you know what website that photograph is

that is the top of 8E?

A    No.

Q    And when I say -- when I ask you questions about the photographs obviously we've redacted these for purposes of being able to handle them and not, you know, unnecessarily embarrass the folks that need to look at these when they become part of the record.  But when I'm asking you these questions I'm talking about the unredacted version and stuff?

A    No, I understand.  Yeah, I know.  They're of legal age.

Q    Pardon me.

A    They're of legal age.

Q    Okay.  That's -- your testimony is that they are of legal age?

A    They look legal to me, yes.

Q    Do you know where any of those photographs were taken?

A    No, sir.

Q    In the whole of the internet, is it possible that a website that states it complies with all federal age verification law requirements and tries to comply with all federal age verification requirements might inadvertently fail to comply with federal age verification law requirements and inadvertently post a

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

picture of say a 17-year old model?

A    Is it possible?  Absolutely.  I guess it's possible.  Anything is possible.

Q    Have you received any medical, psychiatric, mental health treatment as a result of this incident?

A    No.  Can I get more water?

Q    Why don't we take another break.

MR. ROBERTS:  Yeah, I could use the restroom.

VIDEOGRAPHER:  All right.  We are off the record at 11:04.  End of media unit number one.

(Whereupon a recess was taken 11:04 to 11:16 a.m.)

VIDEOGRAPHER:  We are back on the record at 11:16 beginning of media number two.

BY MR. CARSON:

Q    Mr. Lawshe, I've asked you to provide a computation of the damages that you allege that you suffered as a result of this incident.  In your Rule 26 disclosure you've listed past loss of earnings, future loss of earnings, past and future cost of medical care, and pain and suffering, damaged reputation, loss of enjoyment of life, et cetera, past and future.

Let's talk about past loss of earnings.  Have you calculated your past loss of earnings you allege are a result of this incident?

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

THE STATE OF FLORIDA,        )
COUNTY OF ST. JOHNS.         )


     I, the undersigned authority, certify that

WILLIAM LAWSHE personally appeared before me and was

duly sworn this 14th day of March 2025.


          WITNESS my hand and official seal this 29th

day of July 2025.


                              Laura Dwyer Pierle, RPR
                              Notary Public-State of FL
                              My Commission #HH 598918
                              My Commission Expires
                              10/26/28

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

C E R T I F I C A T E


The State of Florida        )
County of St. Johns         )


        I, Laura Dwyer Pierle, Court Reporter, do hereby certify that I was authorized to and did report the above deposition in stenotype; and that the foregoing pages numbered from 1 to 126, inclusive, are a true and correct transcription of my stenotype notes taken during said deposition.


        I further certify that I am not attorney or counsel of any of the parties, nor am I a relative or employee of any attorney or counsel of party connected with the action, nor am I financially interested in the action.


        The foregoing certification of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying reporter.


        IN WITNESS WHEREOF, I have hereunto set my hand this 29th day of July, 2025.


                              Laura Dwyer Pierle, Notary
                              Public, in and for the State
                              of Florida at large.
                              My Commission Expires
                              10/26/28
                              My Commission #HH 598918