**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**WILLIAM LEE LAWSHE,**

     **Plaintiff,**

**v.**                                   **Case No. 3:24-CV-00044-MMH-MCR**

**MIKAYLA PRESTON, et al.,**

     **Defendants.**

_____/

**DEFENDANT DETECTIVE PRESTON'S**
**MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sheriff's Office, by and through undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure, and Local Rule 3.01(b), files her motion for final summary judgment in her favor.

This case stems from the investigation and arrest of Plaintiff for possession of child sexual abuse material ("CSAM"). Plaintiff's second amended complaint [ECF No. 40] brings three counts against Detective Preston:

Count I – Fourth Amendment, Unreasonable Search

Count III – Fourth Amendment, Unreasonable Arrest

Count V – First Amendment

As detailed below, based on the undisputed facts in this case, Plaintiff's claims fail as a matter of law. Moreover, Detective Preston enjoys qualified immunity from

Plaintiff's claims. For these reasons, Detective Preston is entitled to summary final judgment in her favor.

<strong><u>STATEMENT OF UNDISPUTED FACTS</u></strong>

In or around February 2023, SJCSO Sgt. Eugene Tolbert assigned SJCSO Detective Mikayla Preston to investigate a CyberTip received from the National Center for Missing and Exploited Children (NCMEC). ECF Nos. 67-1, 67-2; ECF No. 5, 7:1-15. The NCMEC CyberTipline Report indicated that Synchronoss Technologies – the cloud-based storage provider for Verizon – had reported a file (f6a487) had been uploaded by a phone belonging to Plaintiff. ECF Nos. 67-1, 67-2. NCMEC classified the image as "Apparent Child Pornography (Unconfirmed)." ECF No. 67-1.

Sgt. Tolbert reviewed the CyberTip image before assigning it to Detective Preston and believed it constituted CSAM.[1] ECF No. 5, 7:1-10:7, 9:11-18, 10:25-11:24, 15:13-23, 16:12-13, 16:16-19, 17:13, 74:2-10.

Sgt. Tolbert accompanied Detective Preston to meet Dr. Kathleen Dully to get "an extra layer of confirmation" that the individual in the f6a487 image was a minor. ECF No. 5, 11:14-17, 11:25-12:14, 15:3-12, 57:8-19. Dr. Dully is the medical director of the Child Protection Team for the University of Florida. ECF No. 6, 6:9-15. The Child Protection Team is a body of experts that consults with agencies, including law enforcement agencies such as the St. Johns County Sheriff's Office. Id., 6:21-7:5. Dr.

---

[1] When reviewing NCMEC CyberTips for assignment to detectives, Sgt. Tolbert would try to "weed out as many [tips] as possible just to keep the detectives' case loads manageable," and estimates that he would only assign around 50 percent of the CyberTips received. ECF No. 5, 35:7-19.

Dully is board certified in both pediatrics and child abuse pediatrics. Id., 10:2-8. Dr. Dully knows that law enforcement agencies will consult with her on suspected CSAM cases to assist with determining the age of the individual in an image. ECF No. 7, 78:24-79:20, 80:7-81:8. Dr. Dully understands that law enforcement is going to use her opinion, at least in part, in their decision-making process, such as whether or not to seek a search warrant. Id., 82:11-83:14.

Dr. Dully agreed that the individual in the f6a487 image appeared to be a child. ECF No. 5, 15:22-25; ECF No. 67-9, p.1. Detective Preston believed Dr. Dully was a reliable source of information in estimating the age of the individuals in these images. ECF No. 3, 101:1-4, 105:19-106:19, 131:14-18. Detective Preston included the body of Dr. Dully's opinion verbatim in the search warrant affidavit. Compare ECF No. 67-1, pp. 2-3, and ECF No. 67-9, p. 1.

If Dr. Dully had not been willing to render her services, Detective Preston would have spoken to her supervisor, Sgt. Tolbert. ECF No. 5, 192:6-193:22. According to Sgt. Tolbert, if Dr. Dully would have told detectives that the individual in the image was not a minor, they "would have went with what Dr. Dully said." ECF No. 5, 16:13-16, 18:8-12, 15:23-25; see also ECF No. 6, 192:23-193:9.

On February 22, 2023, Dr. Dully provided a letter to Detective Preston wherein Dr. Dully described the f6a487 image in some detail and stated her opinion that "[t]his female child appears younger than 18 years of age. She would have achieved this developmental genital appearance of SMR IV at 12-15 years of age." ECF No. 67-9, p. 1

3

On or around February 28, 2023, Detective Preston submitted an affidavit for search warrant for Plaintiff's cell phone records. ECF No. 67-1. She included in the affidavit information taken verbatim from the NCMEC CyberTip and information taken verbatim from Dr. Dully's February 22, 2023, opinion letter. Id. Detective Preston also noted "there is a watermark of www.met-art.com on the offending image. This site has a known history of displaying CSAM images of teenage girls and CSAM content from this site has been encountered by other ICAC investigators in past investigations." ECF No. 67-1, p. 3. Detective Preston recalls that she spoke with SJCSO Detective Kevin Greene who told her he had encountered met-art.com in other investigations. ECF No. 6, 51:10-24, 54:2-22. Sgt. Tolbert also remembers Detective Greene telling him that met-art had previously displayed images of underage females. ECF No. 5, 39:21-40:8. Detective Greene had read that met-art.com had "used 17 year old models from the Ukraine back years ago" when he "was doing investigations,"[2] although he doesn't remember talking with Detective Preston about it. ECF No. 4, 52:2-11, 53:12-21.

Detective Preston also consulted with Kaitlyn Payne, then-assistant state attorney with the State Attorney's Office for the 7th Judicial Circuit of Florida. ECF No. 5, 182:20-183:10; ECF No. 8, ¶¶ 1-5. At the time of Plaintiff's arrest, Ms. Payne had years of experience and had prosecuted hundreds of cases involving internet

---

[2] Detective Green was an ICAC investigator from 2015 until 2017, during which time he investigated crimes. ECF No. 4, 5:4-21. For the past five years, he has been a digital forensics detective. ECF No. 4, 4:11-5:3.

crimes against children. ECF No. 8, ¶ 3. Ms. Payne routinely and regularly relied on Dr. Dully's opinions regarding the ages of individuals in these types of images. ECF No. 8, ¶ 6.[3]

Ms. Payne reviewed the unredacted version of the f6a487 image, and reviewed and approved Detective Preston's affidavit for search warrant to Verizon/Synchronoss. Id., ¶ 5. Ms. Payne believed there was probable cause to seek a search warrant to obtain images on Plaintiff's phone. Id., ¶ 5-7. She believed there was probable cause even if Detective Preston would have omitted references to met-art.com in her affidavit for search warrant. Id., ¶ 5.

On or around February 28, 2023, a circuit court judge signed the warrant. ECF No. 67-1, p. 8. On April 4, 2023, Synchronoss complied with the search warrant. ECF No. 67-13, p. 4; ECF No. 3, 134:5-9. Detective Preston reviewed numerous images provided by Synchronoss. ECF No. 3, 135:17-136:2. Detective Preston found three images that she thought were child pornography and for which Plaintiff was criminally charged – 0065(1), 0059, and DuckDuckGo. ECF No. 3, 136:13-17, 137:20-24; ECF No. 67-9, pp. 2, 3. The 0065(1) and 0059 images appear to be of the same individual as the f6a487 image. ECF No. 3, 138:5-10; ECF No. 67-9, p. 2.

On April 5, 2023, Detective Preston met with Dr. Dully again and showed her the 0065(1), 0059, and DuckDuckGo images. ECF No. 67-9, pp. 2, 3. Dr. Dully

---

[3] Sgt. Tolbert met with Dr. Dully approximately six times for her assistance in his investigations of child pornography. ECF No. 5, 56:15-22, 75:20-76:4. He understood her to be qualified to provide an expert opinion. ECF No. 5, 59:4-21.

provided letters to Detective Preston wherein she described the images in some detail and stated her opinion that the "female child" in the 0065(1) and 0059 images "is depicted to be…≤12-15 years of age," and the "female child" in the DuckDuckGo image has the developmental appearance of ≤9-13.5 years of age." ECF No. 67-9, pp. 2, 3.

Detective Preston also consulted with Ms. Payne prior to arresting Plaintiff. ECF No. 3, 192:2-5, 198:1-199:21, 201:2-5; ECF No. 8, ¶ 11. Ms. Payne reviewed unredacted versions of the images titled 0065(1), 0059, and DuckDuckGo, and confirmed to Detective Preston that she would prosecute Plaintiff for possession of those images. ECF No. 8, ¶ 11. The decision to arrest passed through a SJCSO command staff, as well. ECF No. 3, 192:2-5; 198:1-199:21; ECF No. 5, 30:8-31:6, 32:16-33:3, 33:23-34:5, 34:12-17.

Sgt. Tolbert also participated in the ruse to get Plaintiff to come to the Sheriff's Office. ECF No. 5, 28:23-25. Sgt. Tolbert worked with Plaintiff in a law enforcement case in 2013. ECF No. 5, 29:1-29:10. Sgt. Tolbert called Plaintiff and said the Sheriff's Office needed his help locating a missing person. ECF No. 9, 23:16-24:1, 24:12-17. Plaintiff drove to the Sheriff's Office to meet with detectives. ECF No. 9, 24:18-21. Upon arrival, SJCSO deputies removed Plaintiff's gun and other duty equipment.[4] ECF No. 9, 25:11-26:13. Shortly thereafter, Detective Greene and Detective Preston began asking Plaintiff about his cell phone. ECF No. 9, 28:10-22. Plaintiff had

---

[4] Plaintiff was a certified law enforcement officer with Florida Fish and Wildlife Commission at the time. ECF No. 9, 8:24-9:4, 26:7-11.

forgotten it at home. ECF No. 9, 28:6-7. Detective Preston then sought and received a residential search warrant to enter Plaintiff's residence and seize the target phone. ECF No. 3, 251:6-12; ECF No. 9, 28:23-29:10. Detective Preston then arrested Plaintiff. ECF No. 9, 31:19-21; ECF No. 3, 6:21-7:1.

On May 5, 2023, Ms. Payne filed an Information charging Plaintiff with three counts of possession of sexual performance by a child for the 0065(1), 0059, and DuckDuckGo images.[5] ECF No. 8, ¶ 12-13; ECF No. 67-15. The state attorney's office attempted to secure a conviction. ECF No. 40, ¶ 30.

Following Plaintiff's arrest, his criminal defense team contacted Jeffrey Douglas who purports to be the custodian of records for the website met-art.com. ECF No. 67-8, p. 7. Mr. Douglas provided Plaintiff's criminal defense team redacted photographs of "Kasey Lane" and "Milena D." holding foreign passports. Id., p. 6. Neither of these photographs identify the individuals by name. Id.

Three of the images at issue in this litigation (f6a487, 0059, and 0065(1)) contain a tiny "met-art.com" watermark. Throughout this litigation, Plaintiff has referred to the individual in these images as "Milena D." ECF No. 67-8, p. 6. Mr. Douglas provided an affidavit executed in 2015 wherein he averred "to the best of his knowledge and belief" that "Milena D."[6] was born in June 1991, and "[t]he earliest photography of her was recorded in February 2010" when "[s]he was eighteen years

---

[5] The documents returned by Synchronoss did not include the f6a487 image. ECF No. 4, 137:25-138:4. Plaintiff was not criminally charged with possession of the f6a487 image. ECF No. 67-15; ECF No. 3, 252:1-13.
[6] The affidavit is silent as to "Kasey Lane."

(and seven months) old…" ECF No. 67-8, p. 7. Mr. Douglas provided no concrete or meaningful information to establish: (1) her real name; (2) her date of birth; or (3) the date(s) on which the 0059, 0065(1), or f6a487 images were captured.

Mr. Douglas noted in his affidavit that "she has been the subject of many inquiries" and the subject of "cases…in England, Iowa, Holland, and France." Id., p. 6.[7] Despite being the purported records custodian for met-art.com, Mr. Douglas stated he had to ask "when [the] 'Top Model'[8] film shoot occurred…" Id. The record does not establish when that "film shoot" occurred, or which pictures at issue in this litigation, if any, were taken as part of the "Top Model" "shoot."

Plaintiff was also charged with possession of sexual performance of a child based on the DuckDuckGo image. ECF No. 67-15. Plaintiff has referred to the individual in this image as "Kacey Lane." ECF No. 67-8, p. 6. By all accounts, the DuckDuckGo image has no connection to met-art.com. The record contains no admissible evidence to establish: (1) her real name; (2) her date of birth; or (3) the date on which the DuckDuckGo image was captured – or even that the individual in the

---

[7] The f6a487 image had been viewed by NCMEC staff prior to January 25, 2023. ECF No. ECF No. 2, 17:3-6, 110:13-111:2. Prior to January 25, 2023, this image had been seen in over 200 CyberTipline reports. Id., 15:12-16. As of earlier this year, NCMEC still classified the image as "CP, unconfirmed." Id., 111:3-14; *see also* Plaintiff's Motion to Seal, Case No. 3:24-cv-00137-MMH-LLL, ECF No. 70.

[8] Plaintiff's criminal attorney had requested information regarding "Milena D in 'Top Star…" ECF No. 67-8, p. 16.

DuckDuckGo image is, in fact, "Kacey Lane."[9]

To be sure, the record only contains Mr. Douglas' thin promise that "[t]he earliest images of her" (whatever they may be) were taken when she was 18 years, 4 months, and 12 days old. ECF No. 67-8, p. 15. Mr. Douglas does not aver that the DuckDuckGo image was ever published on met-art.com, or that he is the records custodian for whatever websites might have published the DuckDuckGo image.

Mr. Douglas did not assert that he personally knows the individuals in the images or when the images were captured. Nonetheless, following receipt of the information provided by Mr. Douglas, the State Attorney's Office dropped the criminal charges. ECF No. 8, ¶ 14; ECF No. 67-16, p. 5.

Plaintiff has alleged that Detective Preston "singled out Plaintiff William Lee Lawshe, at least in part, due to his position as a respected law enforcement officer and the potential for publicity associated with arresting a law such an officer." ECF No. 40, ¶ 80. Plaintiff has also alleged that Detective Preston "devised a scheme to manufacture the illusion of evidence in an attempt to thwart the judicial process, including but not limited to the search warrant requirement of the Fourth Amendment of the Constitution of the United State of America." ECF No. 40, ¶ 82. Plaintiff has also alleged that Detective Preston "conspired with Defendant, Dr. Kathleen Dully for the purpose of manufacturing false, misleading, unsupported evidence in the form of

---

[9] The image itself suggests her name is "Sanija." ECF No. 72-4. The image also contains a QR code. The record is silent as to where that QR code directs. The web address "www.met-art.com" does not appear on the image.

fake or pseudo-scientific opinions." Id., ¶ 83. These baseless accusations have no support in the record.

**MEMORANDUM OF LAW**

The Court is familiar with the standard for evaluating motions for summary judgment. In the interest of brevity, Detective Preston moves directly into legal argument.

**I.      Plaintiff's 4th Amendment Unreasonable Search Claim Fails**

**a. Detective Preston had probable cause to seek a search warrant**

Probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish a probability or substantial chance of criminal activity. *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (*quoting District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). Probable cause "is not a high bar" and does not require an actual showing of criminal activity. *Wesby*, 583 U.S. at 57. It "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." *Id.*

Viewed from the perspective of a reasonable officer, Detective Preston had

10

probable cause to seek a search warrant based on the f6a487 image. Sgt. Tolbert, Dr. Dully, Ms. Payne, and Detective Preston all thought the image depicted a minor.[10]

### b. Detective Preston did not make materially false statements or omit readily available exculpatory evidence in the search warrant affidavit

Plaintiff asserts that Detective Preston's affidavit contains multiple false and misleading statements. ECF No. 40, ¶ 111. First, Plaintiff claims Detective Preston made a false statement when she stated in her affidavit that the website met-art.com "has a known history of displaying CSAM of teenage girls…" Id., ¶ 111(a). As discussed above, Detective Preston recalled that Detective Greene told her he had encountered met-art.com in other CSAM investigations. And while Detective Greene does not specifically recall talking with Detective Preston about that, Sgt. Tolbert also remembers Detective Greene telling him that met-art.com had previously displayed images of underage females. The fact that Detective Preston learned that information from her fellow officers has no bearing on the Court's analysis regarding probable cause. "It is well established that '[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.'" *Smith v. City of Fairburn, Georgia*, 679 Fed. Appx. 916, 922 (11th Cir. 2017) (*quoting United States v. Ventresca*, 380 U.S. 102, 111 (1965)). Detective Preston did not have any reason to question the reliability of Detective Greene's statements.

---

[10] Plaintiff avers, based on "observation skills," that the girl in the image looks 23 or 24 years old. ECF No. 9, 61:8-24.

Plaintiff alleges that Detective Preston's affidavit represents that the image was not publicly available, when, in fact, it was. ECF No. 40, ¶ 111(b). Plaintiff also alleges that Detective Preston's affidavit did not inform the Court that "that the published image was purportedly that of an adult" or "that the publisher of the image claimed to be in compliance with 18 USC §2257 and the models were purportedly verified." Id., ¶111(e) and (f). However, Detective Preston did include in her affidavit for search warrant that the f6a487 image contained a "met-art.com" watermark. Moreover, if what Plaintiff has outlined here is material, it would have been noted by her supervisor, or Ms. Payne, or the judge reviewing and signing the search warrant – and, of course, it was not. But it really does not matter, as even Plaintiff concedes that a website purporting to comply with age verification laws may still post pictures of underaged individuals. ECF No. 9, 84:20-85:3.

Plaintiff also alleges that Detective Preston omitted from her affidavit that the CyberTip was "unconfirmed." ECF No. 40, ¶ 111(c). All "unconfirmed" means is NCMEC believes it "could be CSAM, but [their] team is … unaware of the age of the individual who is being depicted." ECF No. 2, 26:7-13; 28:6-8. A large portion of the reports that come into the CyberTipline are "unconfirmed" child pornography, and NCMEC transmits reports of "unconfirmed" child pornography to law enforcement "on nearly a daily basis." Id., 63:18-21, 64:9-15. Moreover, the complete NCMEC classification is "Apparent Child Pornography (Unconfirmed)" [ECF No. 67-2, p. 1], which "indicates that the image appears to be child pornography." *See, e.g., United States v. Lynch*, No. 3:21-CR-00236, 2025 WL 43552, at *6 (M.D. Tenn. Jan. 7, 2025)

("This classification [Apparent Child Pornography (Unconfirmed)] indicates that the image appears to be child pornography. That the label includes the qualifier 'unconfirmed,' does not convey that it is not possible to ascertain whether the image is in fact child pornography; it is merely a reflection of NCMEC's role as a national clearinghouse and resource center rather than an investigative agency.") Regardless, Detective Preston *did* include in the affidavit for search warrant that the CyberTip "advised that the user uploaded one (1) image of *possible* CSAM." ECF No. 67-1, p. 2 (emphasis added). Accordingly, Detective Preston's failure to specifically include NCMEC's categorization of the f6a487 image as "unconfirmed" was not a material omission.

Plaintiff alleges that Detective Preston "did not show the subject image to the Court making the determination of Probable Cause." ECF No. 40, ¶111(d). This argument is unavailing for at least two reasons. First, the subject image (which Plaintiff did not attach to his motion for partial summary, but which Detective Preston is filing in support of her motion for final summary judgment) *supports* a finding of probable cause, as the individual depicted in the f6a487 image clearly appears to be a child. Second, it is undisputed that the judges Detective Preston worked with preferred search warrants be submitted electronically, which could not have included attaching the image. ECF No. 3, 133:11-20.

Next, Plaintiff alleges that Detective Preston should not have included "the non-expert, subjective and false opinion of Dr. Dully who she knew or should have known is not an expert in determining the age of young women from a photograph with any

13

degree of certainty…" ECF No. 40, ¶ 111(g). There is no record evidence to suggest that Detective Preston "knew or should have known" that Dr. Dully could not provide an opinion regarding the appearance of age of an individual in an image. To the contrary, Detective Preston's supervisor had utilized Dr. Dully's expertise in prior similar cases, and Dr. Dully has provided this type of service to numerous law enforcement agencies in northeast Florida.

### c. Even if there were falsities or omissions, the search warrant was still valid

Even if the affidavit contained falsities or omissions, the search warrant still would have been supported by probable cause. In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or ... reckless disregard" for the truth. However, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause[,]" then the warrant is valid. *Id.* at 171-72. Negligent or innocent mistakes do not violate the Fourth Amendment. *Id.* at 171.

Here, there is nothing to suggest that Detective Preston deliberately falsified or omitted any information with reckless disregard for truth or an intent to mislead the judge reviewing and signing the search warrant. More importantly, nothing that was allegedly false or omitted would have been critical to the finding of probable cause or lack thereof. Considering the remainder of the information provided in the search

14

warrant affidavit (a detailed description of the image; that the CyberTip advised one image of possible CSAM; that Dr. Dully reviewed the image and opined that the "female child" in the image "appears younger than 18 years of age"), removal of the allegedly "false" information and inclusion of the allegedly "omitted" information would have had no effect on the probable cause determination.

### d. Detective Preston enjoys qualified immunity from Plaintiff's unlawful search claim

The qualified immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted). Qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To invoke qualified immunity, a public official must demonstrate that he was acting within the scope of his or her discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The term discretionary authority "include[s] all actions of a governmental official that (1) were undertaken pursuant to the

15

performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it cannot be disputed that Detective Preston was acting within the scope of her discretionary authority, as all of the challenged actions occurred while she was on duty as a law enforcement officer conducting investigative and arrest functions.

Because Detective Preston was acting within the scope of her discretionary authority, the burden shifts to Plaintiff to demonstrate that qualified immunity is inappropriate. *See id.* To do that, Plaintiff must show that, when viewed in the light most favorable to him, the facts demonstrate that Detective Preston violated his constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officer's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223. The Court may decide these issues in either order, but to survive a qualified immunity defense, Plaintiff must satisfy both showings. *Maddox*, 727 F.3d at 1120 (citation omitted).

A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Gilmore v. Ga. Dep't of Corr.*, No. 23-10343, --- F.4th ---, 2025 WL 1911728, at *8 (11th Cir. July 11, 2025) (en banc) (*quoting T.R. by and through Brock v. Lamar Cnty. Bd. of*

16

*Educ.*, 25 F.4th 877, 883 (11th Cir. 2022)).

Here, for the reasons discussed above, Plaintiff cannot establish that Detective Preston violated his constitutional rights in seeking a search warrant. Accordingly, Detective Preston enjoys qualified immunity under the first prong.

Additionally, Plaintiff cannot establish that the constitutional right allegedly violated was clearly established in light of the specific context of the case. In the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law. *Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002). Such precedent must be found in decisions from the Supreme Court, the controlling circuit court of appeals, or the pertinent state supreme court. *Id*. at 1351. Undersigned counsel has been unable to locate any materially similar case from the Supreme Court of the United States, the Eleventh Circuit, or the Supreme Court of Florida. There is a similar case from the Fourth Circuit Court of Appeals that is instructive on this issue. In *United States v. Gatherum*, 338 F. App'x 271, 272 (4th Cir. 2009) (unpublished), a law enforcement officer sought a search warrant for Gatherum's computer after observing images that the officer believed were child pornography. *Gatherum*, 338 F. App'x at 272-73.

> When [the officer] described the pictures at issue to Gatherum, Gatherum explained that he had gotten the pictures from a website called "Mike18.com" and that the website had a disclaimer stating that all of the models were at least 18 years old. (Each of the images had a Mike18.com logo in the corner, although [the officer] was not aware of that fact at the time). [The officer] refused Gatherum's offer to log-on to Mike18.com to show the troopers the age certification for the model the

17

troopers believed to be underage. At the [officer's] request, Gatherum accompanied them to the state police barracks for further questioning. Gatherum continued to maintain that the images all came from the Mike18.com website, and Gatherum told the troopers that the website included a picture of the apparently underage model holding a passport that showed his birth date.

*Id*. at 273.

The officer submitted an affidavit for search warrant that "did not include copies of the images themselves or otherwise describe the nature of the sexually explicit conduct pictured, nor did the affidavit recount Gatherum's claim about the age-disclaimer on Mike18.com." *Id*. A state-court judge concluded that the affidavit established probable cause. *Id*. Gatherum challenged the search warrant, raising many of the same arguments Plaintiff raises here.

The Fourth Circuit "reject[ed] any suggestion that a search-warrant affidavit must include copies of images giving rise to the request for a warrant." *Id*., at 274. This is also the law in the Eleventh Circuit. *See, e.g., United States v. Smith*, 459 F.3d 1276, 1291 (11th Cir. 2006) ("We are satisfied, moreover, that the magistrate judge relied upon the testimony of a sex crimes and child abuse expert in determining whether it could have been obvious to Officer Mayo that the photographs were of young girls. While it may have been prudent for the magistrate judge to view the photos independently, we cannot say that, as a matter of law, the court must view the evidence to determine whether probable cause existed."); *see also New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 n. 5 (1986) ("we have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the

18

contrary, we think that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue." (citation omitted)).

The Fourth Circuit in *Gatherum* also found "it was entirely reasonable for the magistrate to accept the officers' estimation of the child's age when determining whether probable cause existed. While some 16– or 17–year–old models might be difficult to distinguish from 18–year–olds, the physical differences between a 12–year–old model and an 18–year–old model generally would be significant and readily apparent. That both troopers believed the model at issue might be so young provided the magistrate with a reasonable basis for concluding that the images at issue involved a minor." *Id*. at 275 (*citing United States v. Battershell*, 457 F.3d 1048, 1053–54 (9th Cir.2006) (finding affidavit sufficient in child pornography case where officer described images as depicting "young female[s] (8–10 YOA)" and noting that "we have accepted, for purposes of an affidavit in support of a search warrant, the conclusory age estimates made by civilians and other untrained lay witnesses without demanding a detailed explanation of how the witnesses reached that conclusion")).

Finally, the Fourth Circuit in *Gatherum* rejected the argument that the search warrant must be voided under *Franks v. Delaware* "because [the officer] intentionally omitted from his affidavit any mention of the Mike18.com website or the website's disclaimer asserting that all of its models, including the one [the officer] believed to be a minor, were at least 18 years old." *Id*. at 277.

19

Beyond the mere fact of omission, the record is devoid of evidence suggesting that [the officer] intentionally or recklessly failed to disclose to the issuing magistrate the Mike18.com information. Moreover, even if information about the disclaimers on the website and Gatherum's belief about the age of the models had been included in the affidavit, their presence would not have defeated probable cause. As discussed above, [the officers] both looked at the images and concluded that one of the models was between 12 and 14 years old. That was enough to establish probable cause that the model was underage, even in the face of Gatherum's (and Mike18.com's) insistence to the contrary. The district court therefore properly denied Gatherum relief on his *Franks v. Delaware* claim. *See United States v. Shorter*, 328 F.3d 167, 171, n. 2 (4th Cir.2003) (explaining that "the fact of an omission, standing alone, is not sufficient to demonstrate intent or reckless disregard" in cases where the omitted material is not "clearly critical" to the probable-cause determination (internal quotation marks omitted)).

*Id*. at 277-78.

Admittedly, *U.S. v. Gatherum* is an unpublished opinion from another Circuit, and therefore is neither binding nor persuasive to this Court. However, the facts and legal arguments in *Gatherum* are nearly indistinguishable from the case at bar. The existence of *Gatherum* and the apparent non-existence of caselaw from the Supreme Court of the United States, the Eleventh Circuit, or the Supreme Court of Florida to the contrary strongly suggests that Detective Preston could not possibly have been on notice that her actions were potentially constitutionally problematic.

Finally, for purposes of qualified immunity, the lower standard of "arguable probable cause" applies. *Ross v. James*, 861 Fed. Appx. 770, 778 (11th Cir. 2021) (*quoting Paez*, 915 F.3d at 1288) ("If the affidavits, including the omitted information, 'would have demonstrated even arguable probable cause ... then the officers are entitled to qualified immunity.'"). Here, the evidence that Detective Preston had at the

20

time she sought a search warrant – even with the allegedly omitted information – would have provided arguable probable cause.

For these reasons, Detective Preston enjoys qualified immunity from Plaintiff's unlawful search claim.

## II.    Plaintiff's Unreasonable Arrest Claim Fails

### a.  Detective Preston had probable cause to arrest Plaintiff

The return on the search warrant on Plaintiff's phone revealed three additional pictures that supported Plaintiff's arrest and became Counts I, II, and III of the Information. ECF No. 8, ¶ 12-13; ECF No. 67-15. Prior to arresting Plaintiff, Detective Preston conferred with Dr. Dully, who opined that the "female child" in the 0065(1) and 0059 images "is depicted to be…≤12-15 years of age," and "female child" in the DuckDuckGo image has the developmental appearance of ≤9-13.5 years of age." ECF No. 67-9, pp. 2, 3. Detective Preston also met with Ms. Payne, who confirmed that she would prosecute Plaintiff for possession of those images. ECF No. 8, ¶ 11. All of this provides Detective Preston with ample probable cause to arrest Plaintiff.

Plaintiff's arguments regarding an alleged lack of probable cause are actually arguments for potential defenses to the charged crimes. An affirmative defense to an alleged crime does not necessarily vitiate probable cause. *Manners v. Cannella*, 891 F.3d 959, 971-72 (11th Cir. 2018). Indeed, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for

believing that an offense has been committed." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018). Probable cause does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence. *See Manners*, 891 F.3d at 968. A law enforcement officer is not required to resolve every inconsistency found in the evidence. *Paez*, 915 F.3d at 1286. Moreover, police officers aren't lawyers, and are not expected to resolve legal questions or to weigh the viability of most affirmative defenses. *See Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th Cir. 1991). So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause. *Paez*, 915 F.3d at 1286. The touchstone remains the reasonableness of the officer's conduct. *Id.*

Detective Preston conducted a reasonable investigation. Plaintiff has not identified plainly exculpatory and easily verifiable information that Detective Preston ignored. Rather, he merely "points to additional steps in the investigation that he thinks would have been useful for [Detective Preston] to perform." *Harris v. Hixon*, 102 F.4th 1120, 1129 (11th Cir. 2024). "His investigative suggestions are not evidence of a constitutional violation." *Id*.

Moreover, the information that has been provided (exclusively by Mr. Douglas) in Plaintiff's criminal case as well as through Plaintiff's motion for partial summary judgment suggests, at best, that the individuals holding passports (which may or may

22

not be the individuals in the images) are *currently* over 18 years old – **but we have no admissible evidence to establish when these images were captured**. Mr. Douglas has only provided vague and unverified information on information and belief regarding when "earliest images" or "earliest shoots" occurred. Even Plaintiff's criminal defense attorney, who submitted an affidavit in support of Plaintiff's motion for partial summary judgment (as part of what Plaintiff calls "Age Verification Documents") conditions his statement that "the models were adults at the time of the relevant photography" with "[b]ased on information and belief…" ECF No. 67-8, p. 12.

Moreover, the fact that Detective Preston consulted with Ms. Payne (an experienced prosecutor of internet crimes against children) also supports Detective Preston's belief that probable cause existed and that her investigation was sufficient. *Poulakis v. Rogers*, 341 Fed. Appx. 523, 533 (11th Cir. 2009) ("It stands to reason that an officer who, prior to an arrest, presents the facts to an assistant state attorney in the course of his official duties, and receives the prosecutor's advice that there is probable cause to arrest, would have a stronger reason to believe that there was probable cause."). Notably, neither Detective Preston's supervisors nor Ms. Payne instructed Detective Preston to visit websites or seek age verification information or conduct *any* additional investigation.

### b. Detective Preston enjoys qualified immunity from Plaintiff's unlawful arrest claim

"[O]fficers who make an arrest ... are entitled to qualified immunity if there was arguable probable cause for the arrest." *Kingsland*, 382 F.3d at 1232 (*citing Jones v.*

*Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge ... could have believed that probable cause existed to arrest." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001). In other words, Plaintiff must establish that no reasonable officer would have probable cause under the totality of the circumstances. *Kingsland*, 382 F.3d at 1232 (*citing Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003)).

Here, Detective Preston had, at least, arguable probable cause. There is little question that a reasonable officer in Detective Preston's position could have credited Dr. Dully's opinions and determined probable cause existed to arrest Plaintiff. Her supervisors agreed. Ms. Payne agreed. That Plaintiff appears to have conjured reasonable doubt (a different standard) and have the charges dropped is of no moment.

### III.    Plaintiff's First Amendment Claim Fails

Plaintiff's First Amendment claim falls with his Fourth Amendment claims. It is axiomatic that child pornography is not speech protected by the First Amendment. *New York v. Ferber*, 458 U.S. 747, 758 (1982); *United States v. Miller*, 776 F.2d 978, 980 n. 4 (11th Cir.1985); *see also P.J. Video*, 475 U.S. at 875 (1986) ("an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally."). As discussed above, so long as Detective Preston had arguable probable cause to seek a search warrant and arrest Plaintiff for possession of CSAM, Plaintiff's Fourth Amendment claims fail. Plaintiff cannot seek

24

recovery against Detective Preston through some unspecified "Violation of the First Amendment" based on these facts when Detective Preston cannot be liable for Plaintiff's Fourth Amendment claims. And just as she enjoys qualified immunity from Plaintiff's Fourth Amendment claims, Detective Preston also enjoys qualified immunity from Plaintiff's First Amendment claims.

## CONCLUSION

For the foregoing reasons, Defendant Detective Mikayla Preston respectfully requests this Honorable Court grant the instant motion, enter final summary judgment in her favor, and grant any other relief this court deems proper.

Respectfully submitted this 12th day of September, 2025.

/s/ Matthew J. Carson
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
mcarson@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Attorneys for Detective Mikayla Preston*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of September, 2025, a true and correct copy of the foregoing was electronically filed in the United States District Court for the Middle District of Florida using the CM/ECF system, which will serve counsel of record.

/s/ Matthew J. Carson
**MATTHEW J. CARSON**

25