UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

     Plaintiff,

v.                                                                CASE NO: 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office,
and KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

     Defendants.

_____/

**DEFENDANT KATHLEEN DULLY'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Kathleen Dully ("Dr. Dully" or "Defendant"), by and through her undersigned counsel and pursuant to Federal Rules of Civil Procedure 56, hereby moves for summary judgment in her favor as to the claims in Plaintiff's Second Amended Complaint [Doc. 40]. In support therefore, Defendant states the following:

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On May 20, 2024, Plaintiff filed his Second Amended Complaint against defendants. [Doc. 40]. A singular count of the Second Amended Complaint—Count VII—was brought against Dr. Dully in her individual capacity, alleging a violation of the 14th Amendment Due Process Clause pursuant to 42 U.S.C. § 1983. [Doc. 40,

1

¶¶ 206-218]. This matter arose out of an investigation into Plaintiff's possession of child pornographic materials, and his subsequent arrest. Dr. Dully reviewed five images (*Exhibits A - E*) and authored three opinions (*Exhibits F - H*) at the request of law enforcement. Each opinion states that the individual pictured appears to be under 18 years of age based on their visible anatomical signs of sexual maturity.

Defendant Dully respectfully requests that this Court dismiss Count VII of the Second Amended Complaint alleging a violation of the Due Process Clause of the 14th Amendment by Dr. Dully for the following reasons: (1) Dr. Dully is entitled to complete immunity from liability for civil and criminal claims against her in this matter pursuant to 34 U.S.C. § 20342; (2) Dr. Dully is entitled to qualified immunity; and (3) Plaintiff effectively made a medical negligence claim against Dr. Dully under the guise of a constitutional violation, but he failed to comply with the presuit notice requirements of a medical negligence claim pursuant to chapter 766, Florida Statutes.

## II.    STATEMENT OF FACTS

### A. The St. Johns County Sheriff's Office initiated an investigation into Plaintiff's possession of child pornography and enlisted the aid of Dr. Kathleen Dully in offering her medical opinion regarding the images.

On or about February 20, 2023, the St. Johns County Sheriff's Office (the "Sheriff's Office") received a cyber tip (#153739160) from the National Center for Missing and Exploited Children reporting that Plaintiff was in possession of

"Apparent Child Pornography (Unconfirmed)." [Doc. 40, ¶¶ 35-36]. After receiving the tip, Detective Mikayla Preston was assigned to the case, and she reviewed the image of unconfirmed child sex abuse material ("CSAM") that accompanied the tip and initiated an investigation. [Doc. 40, ¶¶ 45-55].

Detective Preston presented the image to Dr. Dully on February 22, 2023, as part of the investigation to receive a medical evaluation of the images. [Doc. 40, ¶¶ 94-96, 99]. Before bringing the image to Dr. Dully, several investigators of the Sheriff's Office were already inclined to think that the image was CSAM. *Exhibit I - Eugene Tolbert's Deposition*, 15:13-25; *Exhibit J - Detective Preston's Deposition*, 263:17-264:3; 275:10-18. The investigators also understood that Dr. Dully's opinions could help as an initial assessment to analyze the appearance of the individuals in the unconfirmed CSAM. *Ex. I*, 15:8-12.

At all times relevant to this issue, Dr. Dully was the medical director of the University of Florida Child Protection Team, an agency of the State of Florida. [Doc. 40, ¶ 208]. The University of Florida Child Protection Team is an organization authorized and established by Florida Statute section 39.303 to aid state investigations into allegations of child abuse. [Doc. 40, ¶ 207]; Section 39.303, F.S.

Dr. Dully remains employed by the University of Florida College of Medicine as the medical director of the Child Protection Team ("CPT"), which assists with suspected or advertised child maltreatment cases for much of northern Florida.

3

*Exhibit K - Dr. Dully's Deposition*, 6:9-7:5. Dr. Dully and the CPT provide their services to law enforcement—both in this matter and in other matters—gratuitously. *Ex. I*, 75:10-13; *Ex. J*, 268: 14-16. Before assuming this position, Dr. Dully worked in various occupations related to child maltreatment starting as early as 1989 when she passed the general pediatric specialty board examinations, and she proceeded to receive her board certification in child abuse pediatrics in 2009. *Ex. K*, 7:6-10:8. Starting in 1994, Dr. Dully began using the sexual maturity rating ("SMR") or Tanner scale to review pornographic images to estimate the sexual maturity of the appearance of the individuals who were in them. *Ex. K*, 23:15-21.

### B. Dr. Dully reviewed the first image of CSAM and opined that the individual depicted appeared to be underage.

When Detective Preston presented the first image (*Exhibit A – Filename f6a487 (last six characters)*) to Dr. Dully, she explained the image was the subject of a law enforcement investigation into a NCMEC cyber tip. That is all Dr. Dully knew before viewing the image. After reviewing the image, Dr. Dully offered her medical opinion that the individual "appear[ed] to be younger than the age of 18" and could have been as young as 12. [Doc. 40, ¶ 106]. Dr. Dully used the SMR to evaluate the appearance of the individual in the image and provide an estimated age range; however, she did not attempt to state or estimate the exact chronological age of the individual. *Ex. K*, 21:2-23. It is within the standard of care for medical professionals to use SMR when evaluating the age of a patient in any context. *Exhibit*

4

*L - Dr. Krugman's Deposition*, 27:12-17. Dr. Dully provided a letter to Detective Preston on February 22, 2023, explaining that the developmental genital appearance of the individual in the image was SMR IV and would be achieved at 12-15 years of age. *Exhibit F – February 22 Letter*. SMR IV, when considering genital appearance, is reached when pubic hair covers the entire triangle shape of the labia majora, the anterior commissure, and the mons pubis up to where the thighs join at the pelvis. *Ex. K*, 38:2-6. It is more likely than not that an individual evaluated at SMR IV for breast development is younger than 18 years old. *Ex. L*, 26:1-20. This process of reviewing images to determine the SMR that Dr. Dully followed is the same—or at least similar to—the process the Plaintiff's expert, Dr. Krugman, follows when working with law enforcement on CSAM issues. *Ex. L*, 18:17-19:17.

## C. Search Warrant

Detective Preston proceeded to draft an affidavit for a search warrant on February 28, 2023, in order to obtain a search warrant from Plaintiff's Electronic Service provider and gain access to content on Plaintiff's phone, and the warrant was granted on April 4, 2023. [Doc. 40, ¶¶ 118, 120]; *Ex. K*, 130: 16-23. Dr. Dully was not consulted during the drafting of the search warrant. *Ex. K*, 48:14-24.

## D. Additional Images

Detective Preston returned to Dr. Dully on April 5, 2023, with additional images to review. *Exhibit B – Filename 0065(1) and C – Filename 0059*. Detective

Preston told Dr. Dully that two of the images appeared to depict the same individual as the first image she reviewed, but provided no other investigative information. Dr. Dully provided a second opinion letter to Detective Preston on April 5, 2023, explaining that Detective Preston showed her two additional images of the what appears to be the same individual in the first image, and that Dr. Dully opined that the appearance of the individual in those images depicts development of SMR III or IV which would be achieved at 12-15 years of age. *Exhibit G – First April 5 Letter.*

The same day, Detective Preston presented two additional images to Dr. Dully that were retrieved from Plaintiff's phone. *Exhibit D – Filename DuckDuckGo (last phrase) and E – Filename VVFQ_o (last six characters)*. After reviewing these images presented to her by Detective Preston, Dr. Dully offered her medical opinion that the individuals appeared to be "less than or equal to 9-13.5 years old." *Exhibit H – Second April 5 Letter*. Dr. Dully provided a separate letter to Detective Preston on April 5, 2023, explaining that she made this opinion based on the depicted appearance of the individuals' breasts and genital areas. *Exhibit H*.

### E. Dr. Dully offered her opinion only on the appearance of the individuals in the images and did not opine as to their chronological ages.

When offering these opinions, Dr. Dully assumed that other information outside of her opinions would be considered by Detective Preston in conducting the investigation, and Dr. Dully did not know that her opinions would be used in a probable cause affidavit to seek a search warrant. *Ex. K*, 48:14-24. Moreover, Dr.

6

Dully did not consider the opinions she offered about sexual maturity from the appearance of a model in a pornographic image to be reliable as a sole basis for law enforcement to base their decision to make an arrest, let alone for them to be a substitute for a full investigation. *Ex. K*, 32:9-19, 70:13-17. Similarly, the Plaintiff's expert, Dr. Krugman, would have expected law enforcement agents who requested his medical opinion to do more than solely request and review that opinion in their investigation. *Ex. K*, 14:4-12.

As required by statute, Dr. Dully provided assistance in a law enforcement investigation of suspected child abuse. She did not endeavor to establish as a scientific certainty, solely by her application of the SMR scales, the ultimate facts of a child pornography prosecution. The use of a SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image, so Dr. Dully did not offer any medical opinions on the actual age of the individuals in the images she examined. *Ex. K,* 46:13-18, 71:5-10. As such, the letters Dr. Dully wrote to Detective Preston speak only to the appearance and depiction of the individuals in the images. *Ex. F, G, and H.* When providing her opinion to Detective Preston and any other law enforcement officers, Dr. Dully explained these limitations. *Ex. K*, 33:6-13, 47:9-17. The medical opinions Dr. Dully provided in this matter were not the driving factor in the investigation; instead, Detective Preston stated that, even

if Dr. Dully had refused to provide her services by reviewing the images, the case would not have stopped there. *Ex. J*, 192:6-195:7.

**F. Dr. Dully had no role in the continued investigation of Plaintiff.**

After Dr. Dully provided her opinion letters to Detective Preston on April 5, 2023, she had no further involvement in the case. *Ex. K*, 84: 18-24. After April 5, 2023, Detective Preston and her office had no further meetings, phone calls, or correspondence of any sort with Dr. Dully concerning the images. *Ex. J*, 273:21-274:10. Moreover, Dr. Dully did not know Plaintiff or his relation to the images she reviewed when she offered her medical opinions. *Ex. K*, 84: 18-24. Accordingly, the final and ultimate responsibility for the investigation and charges brought against Plaintiff rested fully with the Sheriff's Office and Detective Preston. *Ex. J*, 105: 7-9; 286:7-20.

Detective Preston arrested Plaintiff for possession of CSAM pursuant to Florida Statute section 827.071(5) on April 12, 2023. [Doc. 40, ¶ 12]. This decision to bring charges against and arrest Plaintiff was not made through exclusive reliance on the medical opinions provided by Dr. Dully. *Ex. J*, 274:22 - 275:1. The probable cause necessary for this action was found through multiple factors, including: (1) Detective Preston and others in her office understanding the images to be CSAM; (2) Dr. Dully's medical opinions; and (3) Detective Preston's findings from searching Plaintiff's digital downloads and data. *Ex. J*, 274: 11-21.

### G. Summary of Dr. Dully's Involvement in the Investigation

Dr. Dully reviewed five images. *Exhibits A-E*. Dr. Dully employed her training and experience as a board-certified child abuse pediatrician to provide an opinion on the possible age of the individuals depicted based on the appearance of the image. She provided her opinions in the form of three single-page letters. *Exhibits F, G, and H*. Dr. Dully is the only witness identified in this case with any medical training that has reviewed the images. *Ex. L*, 8:23-25. Dr. Dully admits that the application of SMR is not an exact science, but she remains confident in her medical evaluation. While Plaintiff's expert offers some criticism of Dr. Dully's application of the SMR scale, Plaintiff offers no actual rebuttal of Dr. Dully's ultimate opinion that the individuals appear to be younger than 18. Plaintiff offers no evidence that Dr. Dully knew or had any reason to know that the individuals were over the age of 18 at the time she completed her review. *Ex. L*, 33:2.-34:8.

## MEMORANDUM OF LAW

### III.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). An

otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. *Butzer v. CoreCivic, Inc.*, 2018 WL 7144481 (M.D. Fla. Dec. 5, 2018). The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record. Failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

10

party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Moreover, when the record clearly contradicts the nonmovant's version of the facts, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## IV.    ARGUMENT

Plaintiff's single Count against Dr. Dully claiming a violation of the Due Process Clause of the 14th Amendment alleges the following: (1) Dr. Dully provided deliberately false and fabricated evidence which she knew would be used in the criminal charge and prosecution of Plaintiff; (2) Dr. Dully was deliberately indifferent to Plaintiff's innocence; (3) Dr. Dully was motivated by a malicious or reckless indifference to Plaintiff's rights; and (4) Dr. Dully intentionally applied techniques to yield false information. [Doc. 1, ¶¶ 151-155]. However, the evidence in this case has consistently shown that Dr. Dully was acting both in good faith and within the standard of care when she provided her medical opinions in this matter.

In Plaintiff's Motion for Partial Summary Judgment [Doc. 66], he makes the case that Dr. Dully's willingness to use SMR scales, an inexact science, in a criminal case is malicious as a matter of law. In doing so, he conveniently forgets the testimony of his own expert pediatrician and instead favors stacking up inferences and insinuations. Plaintiff argues Dr. Dully's honesty about the limitations of her

opinion demonstrates malice, and points to no other evidence establishing that she knew her opinion was unsupported.

Dr. Dully's conclusion – that the individuals in the images appear to be children – has not even been challenged by a contrary medical expert. She did not withhold any evidence, as the sole basis of her opinion is the images themselves. She honestly concedes that she cannot provide an exact age estimation due to the inherent limitations of the available medical science and the possibility an image has been altered. Since Dr. Dully concluded that the individuals in the images bore the appearance of children based on her medical evaluation and there was no contrary evidence available to her, then she cannot have deliberately or maliciously fabricated her opinion. A facial review of the images (*Exhibits A – E*) and Dr. Dully's reports (*Exhibits F – H*) supports the obvious conclusion that nothing malicious or constitutionally offensive occurred here.

Because Plaintiff has failed to provide any facts that support the allegations made in the Complaint against Dr. Dully, his legal claims must fail. Moreover, Dr. Dully is entitled to the following protections:

**A. 34 U.S.C. § 20342 provides a presumption of good faith and complete immunity from civil liability.**

Title 34 U.S.C. § 20342 acts as a complete bar in this case to the imposition of any civil liability on the part of Dr. Dully for providing her medical opinions in this matter. Section 20342 states as follows:

**(1) In general**

Notwithstanding any other provision of law, any individual making a good faith report to appropriate authorities of a suspected or known instance of child abuse or neglect, or who otherwise, in good faith, provides information or assistance, including medical evaluations or consultations, in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect shall not be subject to civil liability or criminal prosecution, under any Federal law, rising from making such report or providing such information or assistance.

**(2) Presumption of good faith**

In a Federal civil action or criminal prosecution brought against a person based on the person's reporting a suspected or known instance of child abuse or neglect, or providing information or assistance with respect to such a report, as described in paragraph (1), there shall be a presumption that the person acted in good faith.

**(3) Costs**

If the defendant prevails in a Federal civil action described in paragraph (2), the court may award costs and reasonable attorney's fees incurred by the defendant. *34 U.S.C.A. § 20342*.

Dr. Dully's involvement in this matter is explicitly included within the broad protections of section 20342 because she is an individual who provided medical opinions through consultations with law enforcement regarding an investigation pursuant to a good faith report of CSAM. It is commonly understood that cases involving children who are unlawfully brought into the pornography industry constitute child abuse. *Ex. L*, 9:25-10:4. Because Dr. Dully's role in this matter is covered by Section 20342, she **must** be excluded from any civil liability.

In providing her medical opinions to the Sheriff's Office, Dr. Dully was acting in good faith, and Plaintiff has yet to provide any evidence to overcome this statutory

13

presumption. The very limitations that form the foundation of Plaintiff's attack against Dr. Dully, that SMR is an inexact science, preclude his argument that she acted in bad faith. There was absolutely no way she could know, based on the images themselves, that the individuals were adults. If Dr. Dully did not know that the images were adults, she could not have provided knowingly false or fabricated evidence. In fact, Plaintiff's expert stated that he is unable to testify that Dr. Dully provided deliberately false information, conspired with law enforcement to achieve a specific result, or did anything beyond what he would consider to be negligently applying medical standards. *Ex. L*, 30:2-21. When explaining where Dr. Dully negligently erred in offering her medical opinion, Dr. Krugman stated:

> At a minimum in her report, having a line about the potential uncertainty of the images being altered, the child -- or adult in this case -- being, you know, groomed, whether it's waxing, shaving, or whatever, to look like a younger child should have been mentioned. And, additionally, I do think when there is such a discrepancy between genitals and breasts, you're probably better off not making the conclusion that there -- with certainty that this was a child and that this could be an adult. And I think if there was hedging, if there -- I don't mean hedging. If there was some sort of, you know, caveat to these conclusions, that these conclusions are based on what I saw, it just was too concrete and certain given the data that was presented.

*Ex. L*, 31:1-14. This is not a description of malicious conduct. It is also important to note that, in providing his expert report on Dr. Dully's review of the unconfirmed CSAM images in this case, Dr. Krugman did not review any of the images himself. *Ex. L*, 8:23-9:4. He does not and cannot make the claim that Dr. Dully's evaluation

14

was wrong, or that she should have been able to identify the individuals as adults. Plaintiff and his expert have not shown in any way that Dr. Dully was working in bad faith. This case is analogous to *Miami-Dade Cnty. v. Asad*, where the Florida's 3rd District Court overruled the trial court's denial of summary judgment on a malicious prosecution claim that proceeded to trial despite Plaintiff's own expert denying any malice on the part of the defendant. 78 So. 3d 660 (Fla. 3d DCA 2012). The Court provided the following evaluation of Plaintiff's decision to pursue his claim of malice despite the contrary conclusions of his own expert:

> The Plaintiffs presented absolutely no evidence of malice. In fact, the Plaintiffs' own expert, Philip Sweeting, admitted that Sgt. Sedano acted without malice. The Plaintiffs were not surprised by Mr. Sweeting's testimony because he unequivocally testified in his videotaped testimony, prior to trial, that there was no malice. Thus, the Plaintiffs should not, in good faith, have pursued their malicious prosecution claims, and the trial court erred in denying the Defendants' motion for summary judgment and their subsequent motion for a directed verdict as to the malicious prosecution claims.

*Miami-Dade Cnty. v. Asad,* 78 So. 3d 660, 664–65 (Fla. 3d DCA 2012).

Additionally, section 20342 specifically creates a presumption of good faith for individuals like Dr. Dully who assisted in investigations related to child abuse or neglect. *34 U.S.C.A. § 20342(2)*. At the time of her assistance in the investigation, Dr. Dully was the medical director of the CPT at the University of Florida, an organization expressly established by statute to aid state investigations into allegations of child abuse. Dr. Dully reviewed the images and provided her medical

15

opinions without payment, without knowledge of who the individuals in the images were, and without knowledge of Plaintiff's identity or why Detective Preston asked her to review the images. Despite Plaintiff's allegations in the Second Amended Complaint that Dr. Dully was motivated by a malicious or reckless indifference to Plaintiff's rights and that she provided deliberately false and fabricated evidence to be used to prosecute Plaintiff, the evidence does not support Plaintiff's claims, much less overcome a presumption of good faith. [Doc. 40, ¶¶ 213-217].

Dr. Dully did not know the ultimate goals of the detective's investigation, and she did not know Plaintiff's identity or what his connection might be to the images she reviewed for the Sheriff's Office. Moreover, there is no evidence that Dr. Dully created false evidence or fabricated images or evidence to be used against Plaintiff as alleged. Rather, Dr. Dully provided her medical opinion describing the appearance of individuals in the images that were brought to her by the Sheriff's Office. Dr. Dully reviewed the images through the use of SMR and her ample professional experience. Due to the inherent limitations of SMR, Dr. Dully's opinions both could not give and did not give the exact chronological age of the individuals in the images; instead, the opinions described the appearance of those individuals with SMR classifications. Because there is no evidence showing that Dr. Dully was acting in bad faith by assisting the Sheriff's Office in this investigation, Plaintiff failed to overcome the presumption of good faith provided by section 20342 through his

16

conclusory and unsupported allegations of malice and Dr. Dully is thus entitled to complete immunity from related civil claims brought against her as no reasonable jury could find that she was acting in bad faith.

Finally, section 20342 expressly states that a defendant who is found to be entitled to its protections from liability in a federal civil action may be awarded by the court costs and reasonable attorney's fees incurred. *34 U.S.C.A. § 20342(3)*. Because Dr. Dully has effectively been punished for making good faith efforts to assist law enforcement in a possible child abuse investigation, regardless of the outcome of that investigation, Dr. Dully respectfully requests that this Court grant her reasonable costs and fees incurred in her defense.

## B. Dr. Dully is entitled to Qualified Immunity.

Government officials are protected from civil lawsuits by qualified immunity unless their conduct violates a statutory or constitutional right that was clearly established when the alleged violation occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. See *Gonzalez v. Reno*, 325 F.3d 1228, 1230 (11th Cir. 2002). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. *Id*. Discretionary authority includes all actions that the official undertook as part of their duties that were within the scope of their authority. See, e.g., *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).

Pursuant to Section 768.28(9)(a), Fla. Stat., state officers, employees and agents are immune from lawsuits arising from "act[s], event[s], or omission[s] of action in the scope of [their] employment or functions." *Eiras v. State Dep 't of Bus. & Prof'l Regulation Div. of Alcoholic Bevs. & Tobacco*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). This immunity "may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Id*. (quoting Fla. Stat.§ 768.28(9)(a)). Thus:

> In order for plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public office official either acted outside the scope of his employment or in bad faith. The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement. This duty cannot be satisfied by mere conclusory allegations. Without support, the complaint must fail.

*Id*. (quoting *Brown v. McKinnon*, 964 so.2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted)). In this case, Dr. Dully is entitled to a presumption of good faith. *34 U.S.C.A. § 20342(2)*.

As the Second Amended Complaint expressly states that Dr. Dully was at all times "acting under the color of State Law" and "[with]in the course and scope of her role," the burden of proof necessarily shifts to Plaintiff to show that Dr. Dully did violate a clearly established constitutional right in bad faith—meaning actual malice—when she provided her medical opinions to the Sheriff's Office. [Doc. 40 ¶¶ 146-148]. Plaintiff has failed to prove either prong of this requirement to impose liability.

### a. Plaintiff fails to assert a clearly established constitutional right

To satisfy the clearly established constitutional right requirement of the exception to qualified immunity, a law should not be defined at a high level of generality, and this can be demonstrated in the following three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional rights was clearly violated, even in the total absence of case law." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016). Plaintiff alleged that Dr. Dully violated the 14th Amendment Due Process Clause by: (1) providing deliberately

19

false and fabricated evidence which she knew would be used in the criminal charge and prosecution of Plaintiff; (2) providing false or misleading evidence through deliberate indifference to Plaintiff's innocence which she knew would be used in the criminal charge and prosecution of Plaintiff; and (3) intentionally applied techniques which would yield false information which was then used to charge or prosecute Plaintiff. [Doc. 40 ¶¶ 213-215].

The Complaint brings only a 14th Amendment Due Process claim against Dr. Dully. The claim against Dr. Dully is constitutionally distinct from the claims against Detective Preston, which find their basis in the 1st and 4th Amendments. [Doc. 40 ¶¶ 132-205]. While a fabrication of evidence claim most certainly is a "species of malicious prosecution," they are not the same. *Watkins v. Officer Davlin Session*, No. 19-60810-CIV, 2021 WL 66372 at *10 & n.6 (S.D. Fla. 2021); see *McDonough v. Smith*, 588 U.S. 109, 114-15 (2019); see also *Foulke v. Morgan*, No. 3:20-CV-5506-MCR-EMT, 2021 WL 12170573 at *5 (N.D. Fla. 2021). Moreover, "under the Fourteenth Amendment, there is no substantive due process right to be free from malicious prosecution without probable cause" because "[a] malicious prosecution claim arises under the Fourth Amendment, not Fourteenth Amendment substantive due process." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010).

It is true that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against the state actors under the due process clause of the

20

Fourteenth Amendment…" *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016). However, the Court further explains that, for this fabricated evidence claim to stand under the Fourteenth Amendment, the plaintiff must "draw a meaningful connection between [his] particular **due process injury** and the use of fabricated evidence against [him]." *Id*. at 371-72 (internal citations removed) (emphasis added). The Eleventh Circuit addressed this even more clearly by stating that a Fourteenth Amendment claim of fabrication of evidence must allege a procedural due process claim such as denying a plaintiff "the constitutionally required procedures necessary to challenge his indictments and arrest." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010). In fact, the Eleventh Circuit in *Rehberg* found that the plaintiff's successful challenges to the indictments brought against him demonstrated that there was no due process violation. *Id*.  Similarly, Plaintiff successfully used the legal system to challenge the allegations against him, and he made no procedural due process claims that would implicate the Fourteenth Amendment.

Even if Plaintiff's allegations were to improperly be considered under the 4th Amendment, Dr. Dully's minimal involvement does not satisfy the requirements of a fabricated evidence or malicious prosecution claim. See *State v. Cayward*, 552 So. 2d 971 (Fla. 2d DCA 1989) (finding false evidence where police investigators deliberately manufactured *fake* laboratory reports and presenting them to a suspect

21

during an interrogation to secure a confession); *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) (finding false evidence where a crucial witness for the State in a murder prosecution offered false testimony that the State Attorney ***recognized as false when it was given***, and they chose to not correct that false testimony); *Ashley v. City of New York*, 992 F.3d 128 (2021) (finding false evidence where police detective ***admitted to knowing the complaint was false*** when signed);

Each case cited by Plaintiff in his Motion for Partial Summary Judgment show that the state actor charged with fabricating evidence had ***knowledge*** of that evidence being false. For example, in *Aguirre-Jarquin* (although summary judgment on the fabrication of evidence claim in favor of the plaintiff was *still* denied) the court found that a state finger-print examiner could have violated the plaintiff's due process rights by fabricating evidence and that Plaintiff arguably established knowledge through the following: (1) repeatedly sending print matches to an older analyst with medical issues who was considered to be incompetent; (2) violating policy by sending print matches for verification after other examiners in the office had expressly disagreed with the identification; (3) and failing to get prints verified by anyone else at all. No. 6:20-CV-25-RBD-DCI, 2023 WL 2558479 at *7 (M.D. Fla. 2023).

### a.  There is no evidence Dr. Dully knew her opinions were false

22

The cases above present a critical distinction to the case against Dr. Dully: each allege and prove actual knowledge that the defendant submitted false evidence. Disputed or even completely incorrect evidence does not constitute fabrication unless the defendant knows their statement was false at the time it was submitted. *Black v. Montgomery County*, 835 F.3d 358 (2016). In order to establish that Dr. Dully submitted "knowingly false" or "intentionally fabricated" evidence, Plaintiff must prove that Dr. Dully *knew* the girls depicted in the images were over the age of 18. It is not enough to call her opinions unscientific, ill-informed, overly limited, or negligent.

No evidence in this case demonstrates that Dr. Dully knew the images depicted adults prior to authoring her opinion. Dr. Dully reviewed the actual images under investigation and provided corresponding medical opinions based on her extensive experience and training. Dr. Dully explained the limitations of SMR analyses to Detective Preston and included language in her letters demonstrating that her review was based on appearances, and she fully anticipated that her opinion would be supplemented by a rigorous investigation by the Sheriff's Office. Moreover, the SMR analysis Dr. Dully used was not out of the ordinary for professionals in her field. *Ex. L*, 18:17-19:17. As such, it is unclear how Dr. Dully— in her limited involvement in the investigation—deliberately provided false or misleading evidence, was deliberately indifferent to Plaintiff's innocence, or

intentionally applied techniques to yield false information. Plaintiff has provided no evidence to show that Dr. Dully violated a clearly established right.

### b. Dr. Dully Acted in Good Faith

Even if Dr. Dully was considered to have violated a clearly established right by providing medical opinions to Detective Preston, she did not act in bad faith. The bad faith prong of § 768.28, Fla. Stat., has been construed using the actual malice standard, *Parker v. State Bd. of Regents ex rel. Fla. State Univ.*, 724 So.2d 163, 167 (Fla. 1st DCA 1998). This means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent." *Eiras*, 239 F. Supp. 3d at 1343 (quoting *Reed v. State*, 837 So.2d 366, 368-69 (Fla. 2002)). "Conduct meeting the wanton and willful standard is defined as "worse than gross negligence," *Sierra v. Associated Marine Insts., Inc.*, 850 So.2d 582, 593 (Fla. 5th DCA 2003), and "more reprehensible and unacceptable than mere intentional conduct." *Eiras*, 239 F. Supp. 3d at 1343 (quoting *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987). Likewise, to establish that an official acted with deliberate indifference, the plaintiff must prove that the official was subjectively aware of a serious risk, that the official disregarded that risk, and that the official acted with subjective recklessness. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).

Sometimes, actions have consequences. Plaintiff frequently downloaded teen pornography, purportedly due to his erectile disfunction. *Exhibit M - Plaintiff's*

24

*Deposition, 60:4-19*. Thousands of pornographic images were captured on his personal cell phone. Plaintiff downloaded so many images so frequently that he routinely had to delete older images to make space for new downloads. *Ex. M, 67:4-11*. One of those images was submitted to NCMEC, which led to an investigation. The images are *obviously* questionable as to their age and legality. Dr. Dully provided an opinion that matched what she saw in front of her. Plaintiff's argument that something malicious, evil, or reckless had to occur for him to be arrested is untenable.

Plaintiff failed to meet his affirmative duty of making a good faith allegation that Dr. Dully acted with actual malice or knowledge of potential harm to Plaintiff, relying instead on conclusory allegations to support his claims that Dr. Dully was acting in bad faith. As shown above, even Plaintiff's expert—after reviewing Dr. Dully's medical opinions—did not testify that Dr. Dully acted with anything more than negligence. *Ex. L*, 30:2-21. Even if this Court were to find that Dr. Dully acted negligently in providing her medical opinions, there is no evidence that this negligence rose to the level of malice that would overcome the protections of qualified immunity. Therefore, Dr. Dully is protected by qualified immunity and should be dismissed from this case in her individual capacity.

**C. The underlying factual allegations to Plaintiff's claims sound in medical negligence, and Plaintiff did not comply with the presuit requirements of a medical negligence claim pursuant to Chapter 766 of the Florida Statutes.**

25

Even though Plaintiff's singular Count against Dr. Dully arises entirely from Dr. Dully's medical judgment regarding the use of SMR and her decision to apply that judgment in a medical opinion concerning CSAM, Plaintiff improperly attempted to couch what is clearly a medical negligence claim into a 14th Amendment violation in an attempt to skirt the presuit requirements[1] of Chapter 766 of the Florida Statutes. Standard medical practices and their accompanying standards of care encompass medical professionals evaluating images and videos of patients. *Ex. L*, 23:9-18.

These presuit notice requirements are not limited by the labels of particular counts in a complaint because "when the factual allegations belie the conclusory legal allegations, the trial court is permitted to, indeed must, apply the law to the well-pleaded factual allegations and decide the legal issue of whether the complaint sounds in simple or medical negligence." *Dr. Navarro's Vein Ctr. of Palm Beach, Inc.*

---

[1] Chapter 766 of the Florida Statutes requires the following presuit actions: (1) a presuit investigation must be made by claimant pursuant to section 766.203 to ascertain that there are reasonable grounds to believe that the defendant was negligent and that the negligence resulted in injury to the claimant; (2) a notice of intent to initiate litigation must be mailed to each prospective defendant by verifiable means as specified in section 766.106(2); (3) a verified written medical expert opinion from a medical expert as described in section 766.202(6) must be provided at the time the notice of intent to initiate litigation is mailed; and (4) defendants must be allowed a 90-day tolling period to conduct their own investigation and respond to the claimant.

*v. Miller*, 22 So.3d 776, 778 (Fla. 4th DCA 2009) (quoting *Brandon v. Pinellas County*, 141 So.2d 278, 279 (Fla. 2d DCA 1962).

Likewise, in 2019, the First District Court of Appeals affirmed the ruling of trial court judge James Fensom in the Fourteenth Judicial Circuit when he held that the intentional infliction of emotional distress claim "ar[o]se out of the medical treatment and decisions made" by the Defendants who had allegedly performed a medical procedure without Plaintiff's consent. *Freeman v. Desilva*, 2018 Cir. LEXIS 8220, aff'd 266 So.3d 140 (2019).  Judge Fensom and the First District Court of Appeals disagreed with Plaintiff's broad argument that, because he was alleging an intentional tort, his claims were not subject to the presuit requirements of Chapter 766. *Id*.

As pointed out by Judge Fensom, "It is well settled that a claim falls under medical negligence or medical malpractice when the claim arises out of "the rendering of or the failure to render, medical care or services." *J.B. Sacred Heart Hosp. of Pensacola*, 635 So.2d 945, 949 (Fla. 1994).  The allegations of Plaintiffs' Second Amended Complaint in this case center around the rendering of Dr. Dully's medical services. Specifically, the Second Amended Complaint speaks to Dr. Dully's use of SMR to review the sexual development of the appearances of the individuals in the images presented to her by Detective Preston. [Doc. 40, ¶¶ 104-106, 213-215]. Plaintiff's expert affirms that this is a contention of medical negligence that

27

clearly qualifies as medical care or services under § 766.106(1)(a), Florida Statutes. *Ex. L*, 23:9-18. Even more directly, the Second Amended Complaint alleges that Dr. Dully "applied techniques which would yield false information…" [Doc. 40, ¶ 215]. These claims fit squarely within the rendering of medical services, and thus should be considered allegations of medical negligence in lieu of Plaintiff's stated 14th Amendment Due Process claim, and Plaintiff was required to comply with the presuit requirements of Chapter 766. Plaintiff did not comply with any of the presuit requirements of Chapter 766.

Moreover, Plaintiff can no longer initiate or engage in the required presuit process because the statute of limitations and the statute of repose have lapsed. Because Plaintiffs' claims against Dr. Dully sound in medical negligence and not in constitutional violations, the presuit screening process was required.  Due to Plaintiff's noncompliance with the presuit screening process and because Plaintiff cannot now engage in the presuit screening process due to the expiration of the statute of limitations and statute of repose, the claims against said Defendant are subject to dismissal with prejudice.

## V.    CONCLUSION

There can be no genuine dispute of material fact regarding Dr. Dully's involvement in Plaintiff's investigation. Plaintiff has not and cannot provide any evidence to support his claims of false and fabricated evidence provided deliberately

28

by Dr. Dully to be used against Plaintiff for the reasons stated above. Dr. Dully is entitled to qualified immunity and the complete protections of 34 U.S.C. § 20342. Additionally, Plaintiff failed to comply with the presuit requirements his claims necessitate, therefore Dr. Dully is entitled to summary judgment.

WHEREFORE, Defendant respectfully requests this Court enter final summary judgment in its favor and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Jami M. Kimbrell*
Jami M. Kimbrell, Esq.
Florida Bar No. 0657379
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Jami@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

*/s/ John Wilson*
John Wilson, Esq.
Florida Bar No. 84798
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Johnwilson@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by e-filing on September 12, 2025.

<u>*/s/ Jami M. Kimbrell*</u>
Jami M. Kimbrell, Esq.

<u>*/s/ John Wilson*</u>
John Wilson, Esq.