**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


CASE NO.:  3:24-cv-00044-MMH-MCR


WILLIAM LEE LAWSHE,
an individual,

        Plaintiff,

vs.

MIKAYLA PRESTON,
in her individual capacity
as a Detective for St. Johns
County Sheriff's office
and KATHLEEN DULLY, in her
individual capacity as
medical director of the UF
Child Protection Team,

        Defendants.
                                /


ZOOM VIDEOTAPED DEPOSITION OF:  KATHLEEN DULLY, M.D.

DATE:          April 28, 2025

TIME:          10:00 a.m. - 12:26 p.m.

LOCATION:      Via Zoom

REPORTED BY:  LISA K. PENKACIK, RMR

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

A P P E A R A N C E S:


       MICHAEL K. ROBERTS, ESQUIRE
       Law Offices of Nooney, Roberts
       Hewett and Nowicki
       1680 Emerson Street
       Jacksonville, Fl  32207
       mroberts@nrhnlaw.com

            On behalf of the Plaintiff.


       AMY SHEVLIN, ESQUIRE
       Buchanan & Buchanan, P.A.
       1900 SE 18th Avenue
       Suite 300
       Ocala, FL 34471-8237
        ashevlin@rbtrial.com

            On behalf of the Defendant Kathleen Dully,
             M.D.

       MATTHEW CARSON, ESQUIRE
       Sniffen & Spellman, P.A.
       123 N Monroe Street
       Tallahassee, FL 32301-1509
       mcarson@sniffenlaw.com

            On behalf of Defendant Mikayla Preston.


       ALSO PRESENT:   Danny Holguin, videographer
                       Shayne A. Thomas, Esquire
                       (University of Florida)
                       Autumn Zepf, paralegal

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

I N D E X

TESTIMONY OF:  KATHLEEN DULLY, M.D.

DIRECT EXAMINATION by Mr. Roberts ...............4

CERTIFICATE OF OATH..............................87
CERTIFICATE OF REPORTER .........................88

ERRATA SHEET. ...................................89

PLAINTIFF'S EXHIBITS:

1 (Articles). ...................................85
2 (Dr. Krugman's report). ......................85
3 (Demonstrative image) ........................85
4 (Dr. Dully's letters) ........................85

S T I P U L A T I O N S

It is hereby stipulated and agreed by and between counsel for the respective parties and the deponent that the reading and signing of the deposition be reserved.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

P R O C E E D I N G S

THE VIDEOGRAPHER:  Good morning, this is the beginning of media one in the deposition of Dr. Kathleen Dully in the matter of William Lee Lawshe versus Mikayla Preston, case number 3:24-cv-00044-MMH.  Today's date is April 28, 2025 and the time is 10:01 a.m.  My name is Danny Holguin.  I am the videographer.  The court reporter is Lisa Penkacik.  We are here with Huseby Global Litigation.

Counsel please introduce yourselves after which the court reporter will swear in the witness.  Thank you.

MR. ROBERTS:  Michael Roberts for the plaintiff, Mr. Lawshe.

MS. SHEVLIN:  Amy Shevlin on behalf of Dr. Dully.

MR. CARSON:  Matt Carson representing Detective Preston.

KATHLEEN DULLY, M.D., having been first duly sworn by the reporter, thereupon testified upon her oath as follows:

THE WITNESS:  I do.

DIRECT EXAMINATION

BY MR. ROBERTS:

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 5

Q.    Okay. Dr. Dully, I introduced myself a little bit earlier, my name is Michael Roberts, I'm here to ask some questions today.  I assume -- you've had your deposition taken before?

A.    Yes, but never as a defendant, but, yes.

Q.    Okay.  You've had it taken as an expert witness?

A.    Yes.

Q.    Well, a deposition is a deposition, same ground rules apply, you're under oath, and I'll be asking you questions.  At any time if you don't understand a question that I've asked you, please let me know and I'll try to rephrase it.  I don't have a script that I'm going from, so it's probable that I will ask a bad question, so don't hesitate to question me if you don't understand.  Also, there is a court reporter who is trying to take down everything that we say, question and answer, so we'll just try to be mindful of the job that she's trying to do and not speak over one another; sometimes that's difficult for me and sometimes it's difficult for witnesses.  So we'll do the best we can.  But the last thing that I'll say is, a lot of times we'll speak colloquially, we'll say uh-huh or uh-huh or they'll be a nod of the head, I'll ask for a verbal

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 6

response, if I catch it, just because the court reporter will not be able to describe un-huh, uh-huh, I'll know what you mean by a nod of the head, but she can't write that down so...

A.   Thanks.

Q.   With that, can you just state your full name for the record?

A.   Kathleen Mary Dully, D-u-l-l-y.

Q.   And where are you currently employed?

A.   The University of Florida College of Medicine in Jacksonville.

Q.   And I understand you work for the Child Protection Team?

A.   Yes, I'm the medical director of the Child Protection Team for the University of Florida.

Q.   And what does that mean; what is a medical director of the Child Protection Team?

A.   I supervise the medical care that we deliver on a case by case basis and solve problems and help hire people, essentially.

Q.   And just for those who may not know, what is the Child Protection Team?

A.   The Child Protection Team is the body of experts that consults for DCF usually and sometimes law enforcement as well on suspected or advertised

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

child maltreatment cases.  And offers them determinations on the likelihood of abuse or that it is not abuse.  We cover the eight counties -- this Child Protection Team covers the eight northeast counties of Florida.

**Q.   What is -- well, what is your training and background?**

A.   So in 1981 I graduated from Cornell University College of Arts and Sciences, in Ithaca, New York with a Bachelor of Arts and I graduated with distinction in all subjects and Cum Laude.  In 1986, I graduated from the F. Edward Hebert, H-e-b-e-r-t School of Medicine in Bethesda, Maryland, which is Fed Med or the military medical school.

And from there I went to pediatric internship followed by residency training at Naval Hospital Oakland, California from 1986 through 1989. In 1989, I was transferred to my first duty station as a pediatrician, and that was here at Naval Air Station Jacksonville, Florida where I served for two years.  I was assigned to be the Chair of the Child Abuse Case Review Committee here at this military region Navy Marine Corps while I was there.

At the time the only training that was available was in the conference format, so although I

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 8**

had seen and cared for children of possible child maltreatment before, I had only learned about it as a resident and on the job training is what that is and by reading and studying the cases in the medical literature.

Then in 1990 the Navy sent me to my first child abuse conference in January in San Diego, California, which was the child maltreatment conference that is offered by what is called now Navy Children's Hospital in San Diego and the American Academy of Pediatrics and the American Professional Society of Abusive Children.  The conference format for many years was all that was available in terms of getting additional medical training and consultation and so I continued to pursue that all the time every year, and then in 1980 -- sorry, during Desert Shield.  1991, the Navy moved me to Naval Medical Center San Diego.

In San Diego they made me in charge because I had the training, child abuse case review, subcommittees for physical abuse, sexual abuse and something they called the multi-problem family unit.  And those I was the Chair, but actually functioned as the medical consultant to a team of people doing case reviews for military commanders.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 9**

In 1993, there was some ability to propose to the military that specialized fellowships could be developed, and were slowly becoming available, and in 1994 the Navy sent me to the Chadwick Center for Children & Families, which was Rady Children's Hospital for a year of fellowship. And there I was able to see cases under supervision of people who had been working in the field for 30 and more years, and do the medical assessments on suspected child maltreatment cases, as well as that which is not. So that was a specialized opportunity.

When I finished that in 1994, the Navy moved me to the Naval Hospital Camp Pendleton, California, and there I was again the medical consultant for the child abuse case review committee for Marine Corps Commanders and then I was also the domestic violence consultant for their domestic violence case review committees.

In all of this time I had served as faculty and am a teacher for medical residents and positions in training at all levels in child maltreatment, be it radiology or orthopedics, or OB/GYN or pediatrics, of course, and emergency medicine.

And after 1994 when I finished the fellowship, my additional training went back to

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 10**

conferences and continuing medical education and then I was able -- though I had passed the general pediatric specialty boards in 1989, the first child abuse specialty board became available in 2009 and I was grandmothered into the field with about 200 others, and I was able to sit for and pass that EXAMINATION in 2009 to be a board certified specialist in child abuse pediatrics.

**Q.    Very good.  Thank you for that.**

**So currently at the Child Protection Team, do you -- do you see -- do you have patients; do you form a patient -- a doctor/patient relationship with the people that you examine?**

A.    On a case by case basis, yes.

**Q.    And tell me, what do you mean by that?**

A.    So I am consultant.  I don't become the child's pediatrician, but I consult for DCF and law enforcement and the hospitals and so I have a time of a doctor/patient relationship, but the relationship goes back to the primary care pediatrician.

**Q.    In the time that you consult, do you -- do you agree that you have to practice within the standard of applicable care, medical care?**

A.    Yes.

MS. SHEVLIN:  Form.

Page 11

Q.   And so this child abuse board certification, is that a medical/legal certification?

MS. SHEVLIN: Form.

A.   It's a medical from -- administered by the American Board of Pediatrics.

Q.   Is there a legal component to it?

MS. SHEVLIN: Form.

A.   No.

Q.   Okay. All right.  Is part of that curriculum designed to help you interface with law enforcement or DCF?

MS. SHEVLIN: Form.

A.   Not in any direct way, no. Of course you have to be able to do that.

Q.   Do you understand that the child abuse -- that the purpose of the child abuse certification is to aid DCF and law enforcement in investigations?

MS. SHEVLIN: Form.

A.   That is not the purpose, that is one of the practice points, I would say yes, but it is to take care of kids and try to stop whatever is going on, if, in fact, something is going on.

Q.   Okay.  Well, what do you mean by "trying to stop something that's going on"?

A.   If there is child maltreatment going on,

Page 12

sometimes it can be stopped and then the child can have a more normal life.

Q.   Do doctors stop that?

MS. SHEVLIN: Form, speculation.

Q.   Well, let me ask you a better way.

As a doctor, are you trained in your -- in your child abuse specialty, are you trained to stop child abuse in a home setting?

MS. SHEVLIN: Form.

You can answer, Dr. Dully.  I'm laying a record.  Unless I tell you not to answer a question, just go ahead and answer to the best of your ability if you understand the question, I'm just making some objections for the record.

A.   I was missing those completely.  I'm sorry, I didn't understand.

MS. SHEVLIN: That's okay.  I just objected to form.  If you understood the question and you can answer, you can go ahead and answer.

A.   I have no ability to stop it, but by helping to assess the evidence that is present that may contribute to stopping it.

Q.   Okay.  So who -- who stops it?  As a medical doctor, what are you talking about?

MS. SHEVLIN: Form.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 13

A.   The community, which involves responsible investigators and agencies.

**Q.   So is it not a fair statement to say that the child abuse board -- like that training exist to provide expertise to determine what is and what is not child abuse?**

MS. SHEVLIN:  Form.

A.   There is various levels of certainty, but at one end of the spectrum, it may not be child abuse and at the other end of the spectrum, it may only be child abuse.

**Q.   Right.  But to treat the condition or the injury, you were qualified to treat injuries or illnesses as a pediatrician without the child abuse specialty; do I understand that correctly?**

MS. SHEVLIN:  Form.

A.   I think I do, as a general pediatrician, I take care of kids.

**Q.   Right.  So the only -- what I'm trying to get at, the child abuse specialty is really solely aimed at the distinction or you making a distinction between what may or may not constitute abuse, correct?**

MS. SHEVLIN:  Form, mischaracterization of her prior testimony.

Page 14

A.   There are things that look like child abuse that are not and I'm consulted in those and there are things where we can't say for sure, and there are things that are child abuse and not something else. And that is part of the determination and diagnostic process.

Q.   **And that, grappling with those decisions, that is the job of a child abuse specialist, correct?**

MS. SHEVLIN: Form.

A.   That is what we do in the medical case, yes.

Q.   **And that's what I'm getting at, right.  I understand that you're a pediatrician, but the board certification specifically regarding child abuse, that is what gives you the purported expertise of making a determination or an opinion about whether something is or is not child abuse; is that a fair characterization of what that specialty is?**

MS. SHEVLIN: Form.

A.   The board certification is a board certification and I passed it because of a lot of other things, and so there's training, experience, literature and the years that go by and the things that children and parents have taught me.  So it doesn't distill down to an exam or a -- a yes or no

determination.

Q.   And I am sorry if you took that question as being like what the test entails.  What I'm trying to understand, and I'll just ask you the question.

What does it mean to be a child abuse -- do you consider you to be an expert on child abuse medicine?

MS. SHEVLIN:  Form.

A.   -- abuse pediatrics.

Q.   What does that mean?

A.   That is what the board -- American Board of Pediatrics decided to call it, and it is a specialty where we can see the children and put the time in, and whatever else is required to help determine how correct that concern may be or not.

Q.   And when you say concern, you're talking about abuse?

A.   Yes.

Q.   Concern for abuse, correct?

A.   So people report things and then I am in a position if there are medical concerns to bring those to bear on what they reported to help decide if they could be right or not right or we cannot say for sure.

Q.   And so how long have you been with the

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 16**

University of Florida?

A.   10 and a half years now.

Q.   **And other than the Navy is the University of Florida the only other employer that you had in your career?**

A.   No.  I also did the same work as a child abuse pediatrician and sex assault examiner for the Rady Children's Hospital before I came here.  There I was not medical director, and there, technically, I worked for their specialty group, not necessary -- not for the center -- not for the hospital. Although those are the patients that I saw.

Q.   **Do you -- and I'm going to use the term "moonlight"; do you know what that means?**

A.   Yes.

Q.   **Have you moonlighted anywhere else as a pediatrician or anything like that?**

MS. SHEVLIN:  Form.

A.   When I was active duty military, my work for Rady Children's, Chadwick Center for Children & Families as a child abuse pediatrician and sex assault examiner, that was considered moonlighting through 2006 and I retired upon my return from Iraq. The moonlighting after that, I did not do or need to do because I was able to work continuously in my

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

specialty.

Q.   So how many physicians currently work for your department that you're a medical director of?

A.   In the division, there are three of us and all three of us participate on the team.

Q.   And are you responsible for setting policies and procedures?

MS. SHEVLIN:  Form.

A.   I contribute to them.  I make recommendations about them, I may be the person who writes and signs them, but these other two pediatricians are also board certified child abuse pediatricians with many years experience and I consult with them before putting things in writing in general.

Q.   Okay.  So we're here today about a case that you consulted on -- do you understand that correctly; did you consult on the case against Mr. Lawshe?

MS. SHEVLIN:  Form.

A.   I did not know that person's name at the time.  I consulted for a detective at the St. Johns Sheriff's office.

Q.   Subsequently have you learned that Mr. Lawshe was the subject of that investigation?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 18

A.   Yes.

Q.   I have three letters; one is dated February 22nd; one is April 5th and the other is April 5th; do you have access to those as we sit here today?

A.   I do not have the February 22 letter.  I can't find it.

Q.   I'll share it with you when we get to that.

I want to ask you just to start off, some general -- some general questions.

So what is sexual maturity rating?

A.   Sexual maturity rating is a way of stating how close to puberty or in the middle of puberty or completed puberty may be progressing.

Q.   I've also seen it referred to as Tanner staging; is Tanner staging and SMR or sexual maturity, is that the same thing; are those two terms synonymous?

MS. SHEVLIN: Form.

A.   In the 1980s and 1990s early, it was called Tanner staging.  In about 1998 it changed because there had been so many other studies both before and after Tanner and Marshall and it was changed to sexual maturity rating.  As the years go by, there's more data than just Dr. Tanner's data.

Q.   All right.  And so when did you first

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 19

learn -- when you first learned about it, it was called Tanner staging?

MS. SHEVLIN: Form.

A.   Well, it didn't have a formal name and I actually don't remember what the other pediatricians were calling it in fellowship.

Q.   Okay. And do you know what the -- the test was designed to do?

MS. SHEVLIN: Form.

A.   In the clinical setting?

Q.   In the clinical setting, yes.

A.   Yes.

Q.   First of all, was it designed as a clinical test?

MS. SHEVLIN: Form, speculation.

A.   It was -- sexual maturity rating was designed to be able to monitor progress through puberty or a completion thereof or delay thereof, as well as early puberty.

Q.   So a pediatrician would be able to assess whether or not there were any delays or abnormal start to puberty in their patients; that was sort of the reason -- that was the function of Tanner staging or sexual maturity rating as you understand it?

MS. SHEVLIN: Form, prior

mischaracterization of prior testimony.

A.   For most pediatricians that is its function.

**Q.   Okay.  And what do you mean by that "for most pediatricians that's its function"?**

A.   Well, even newborns aren't Tanner two or SMR two, so it is normal to have some variability in the development of puberty.  Sometimes it's actually the sign of a tumor, so we want to have some idea of what's normal, so that we can identify deviations from normal.  For instance, a three year old who already has Tanner three or SMR three breast buds, plus pubic hair, that would not be normal.  So we use it on the very little kids as well as those who are approaching puberty and in reference to the concerns from the parents or the child, sometimes a teen-age child is worried that they're not normal.

**Q.   But that is not the way in which you employ sexual maturity rating in this case, is it?**

A.   In this case, the opportunity to assess the patient never occurred.

**Q.   But you did use the sexual maturity rating in forming your opinions in this case?**

A.   Yes.

**Q.   All right, okay.  So let me -- let's just**

**Page 21**

go back.

How long have you been using sexual maturity rating to -- let me ask you this.  Looking for predicate for this.

Do you use sexual maturity rating to chronologically estimate the age of individuals in digital pornographic photographs?

MS. SHEVLIN:  Form.

A.   It is not to estimate the age, it's to estimate the appearance of the age, yes.

Q.   What does that mean?

A.   The appearance of the age is not the same thing as knowing the chronological age.

Q.   What's the difference?

A.   One is in terms of years of age and has documents to go with it.  And the other is based on appearance and in this case, in photographs.

Q.   So I'm struggling with that distinction.  So you -- so you're -- you're not attempting to state or estimate how old the individual depicted in the photograph is, you are trying to estimate how old they appear to be?

A.   Yes.

Q.   So any type of -- you're aware that photographs can be digitally edited?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 22**

MS. SHEVLIN:  Form.

A.   Yes.

Q.   You're aware that models can remove pubic hair through multiple different modalities, correct?

MS. SHEVLIN:  Form.

A.   Yes.

Q.   Any digital altering of a photograph would render your opinion say -- would not make it a reliable opinion, correct?

MS. SHEVLIN:  Form.

MR. CARSON:  Join.

A.   That's not true, it will be a reliable opinion about the appearance of the image.

Q.   But it would not be a reliable opinion about the actual age of the individual that is depicted?

A.   It may not be.

Q.   And that's true as well as grooming.  If somebody had been groomed, it may not be -- it may be an -- you may be given an accurate depiction or opinion about the appearance, but if there were grooming that was undetectable to you, it would not be an accurate opinion or reliable opinion about the actual age of the individual?

MS. SHEVLIN:  Form.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 23

A.   The chronological age is a different question.  This is just the appearance of the image.

Q.   Okay.  So from a scientific -- you understand that -- let me just ask you.

Would you agree with me that that is a -- a limitation on what your opinion could be accurately understood to be?

A.   Yes.

MS. SHEVLIN:  Form.

Q.   Can you describe that limitation for me?

A.   It is not an opinion about chronological age, it is an opinion about the apparent appearance of the image and what its age may be.  It's not the same thing.

Q.   How long have you interacted with law enforcement -- let me ask you this question.

How long do you think you have been using SMR in this way, to look at a pornographic image and estimate the appearance of chronological age?

MS. SHEVLIN:  Form.

A.   Since shortly after 1994.

Q.   And is that sort of like the burst of the internet or like widely used internet, what was 1994?

MS. SHEVLIN:  Form.

A.   It was just my fellowship.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Q.  Okay.  What was special about that fellowship that that's what made you start doing that?

MS. SHEVLIN: Form.

A.  Law enforcement was bringing cases for evaluation to Rady Children's and my colleague pediatricians were also doing these evaluations.  I had not been aware of it before 1994.

Q.  And when is the last time you did an evaluation like this?

A.  2024.  Maybe Nassau County Sheriff.  I know I did at least one for them in 2024.

Q.  You don't think you've done any this year?

A.  I have not.

Q.  Has there been any change in your practice or policies since 2023 in regards to evaluation of these types of images?

MS. SHEVLIN: Wait, Dr. Dully, hang on a second.  Michael, we're getting into subsequent remedial measures, there's case law on this.  I'm not going to let her answer this question.

MR. ROBERTS: You can't direct her not to answer questions, whether it's relevant or not is not a reason for you to instruct her not to answer.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 25

MS. SHEVLIN: It's not relevant. It's subsequent remedial measures. There's case law on it.

MR. ROBERTS: That's not -- that's not the law. And you cannot -- and you can't -- you can, but there's two reasons why you can instruct the witness not to answer and they both deal with privilege.

MS. SHEVLIN: You're asking her for subsequent remedial measures.

MR. ROBERTS: And that is perfectly discoverable. That is perfectly discoverable.

MS. SHEVLIN: If you want to provide me case law on your position, I'm happy to look at it.

MR. ROBERTS: Are you instructing her -- are you instructing her not to answer that question?

MS. SHEVLIN: At this time I'm instructing her not to answer that question. If there is case law, tell me that I'm wrong, I'm happy to look at it.

MR. ROBERTS: I haven't briefed the issue, I've only done this for 21 years but --

Q. **Have you -- have you read my -- or Mr.**

Page 26

Lawshe's expert report in this case?

A.   I saw it on Friday, yes.

Q.   Okay.  What was your impression of that?

MS. SHEVLIN:  Form.

A.   I don't agree with it.

Q.   Have you read the article The Difficult Issue of Age Assessment on pedo-pornographic material?

A.   Not to my knowledge, no.

Q.   The last time you attempted to do any research on the reliability of applying sexual maturity rating to online pornographic images?

MS. SHEVLIN:  Form.

A.   I was reviewing what I already have last night.

Q.   What is it that you already have?

A.   I have the original Tanner and Marshall articles from 1959 and '70, the Noshney (ph) publication that came a decade or so later.  It's sort of an update on sexual maturity ratings.  The Herman and Giddens work that came about 10 years after that in the 1990s on sexual maturity in American girls.  I do have some other population evaluation articles such as from Switzerland or from Hong Kong or Asia, but those don't really apply in

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 27

this case to my knowledge, and I did not review them much at all. And what else? I did look at an American Academy of Pediatrics publication that summarizes all of the pubertal stage photographs from, I think it's from 1996 and then also the -- was there anything else good? There is another article that I reviewed. Let me see. I don't know if I have -- well, and of course, the standard textbook that I use which is the 15th Edition of Nelson's textbook of pediatrics.

Q.   So those sound like journals that are pediatric journals about Tanners staging or sexual maturity rating in the clinical setting?

A.   They -- they are and also a -- a publication, I think it's a desktop publication from the military from the Armed Forces Center for Child Protection in 1998, I think it was. I looked at it, that was -- I was actually asked to help get these images taken care of by the Armed Forces Center for Child Protection about that time when I was active duty.

Q.   And just so -- anyway, clinical setting by clinical setting, I mean and I want to make sure we're on the same page, a pediatrician who is treating a patient in the clinical or office setting;

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 28

is that -- is that a fair way to use clinical?

A.    Yes.  Except that all the work was done from photographs -- where most of the work was done from photographs as a study modality.  So it is a clinical tool, and if you ever get access to the child, then you can use it that way.  But sometimes in child abuse pediatrics, you do or do not have access to the child; you do have access to the images and are consulted to estimate the appearance of their sexual maturity based on photographs.

Q.    Okay.  So I want to share the screen here. This is an article that we disclosed to you a month ago, a couple months ago.  Can you see this on your screen?

A.    Okay.  Yeah, that's a lot of fine print.

Q.    Let me -- Forensic Science international; have you heard of that journal?

A.    Well, it's not a medical journal, but I have heard of it.

Q.    I just want to go down here to the conclusion.  I'm going to read some of these -- well, let me just read this.  We'll start with this.  Much pornographic, pedo-pornographic material depicts women who seem sexually mature and who may be late teenagers or women over the 18 years of age.  Our

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 29

study, in fact, proves that it is nearly impossible to say that adults who look like sub adults are indeed adults, which obviously may apply to all those sub adults who seem sexually mature.  Did I read that correctly?

A.    You read it out loud, yes.

Q.    And it says, forensic and medical experts should avoid using such unscientific behavior which may have drastic consequences in a Court of law; did I read that correctly?

A.    Yes.

Q.    Now, you're unfamiliar with this, but I'd ask you to get familiar with it.  This study shows that pediatricians who attempt to age pornographic images of women are wrong between 95 and 73 percent of the time when they do that; does that surprise you?

A.    Well, they're against it, so it doesn't surprise me.  I think that's what they wanted to find.

Q.    This study was funded by the E.U. Project to help develop ways of detecting child ponography online; why do you see that this is what they wanted?

MS. SHEVLIN:  Form, she has not had an opportunity to read the entire article.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 30

MR. ROBERTS: Stop, stop, I don't want a speaking objection. She said this article was published by people who wanted to find that.

Q.   **Dr. Dully, why do you think the people who wrote this article wanted to find that?**

MS. SHEVLIN: Form.

A.   Because their conclusion and their tables say that in what you have shown me. It needs to be read critically with a jaundiced eye because it appears on the surface that that is their aim. It's also a legal journal, not a medical journal. It would be read with a jaundiced eye.

Q.   **So you're discounting an article that you've never seen or read?**

MS. SHEVLIN: Form.

A.   I am discounting a journal that is not a medical journal and I would read it critically if you give me the chance.

Q.   **Well, you had a chance and you haven't done it, have you?**

MS. SHEVLIN: Form.

A.   I haven't seen this before.

Q.   **Well, you -- you -- you had access to the article last week.**

MS. SHEVLIN: Form.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 31

A.    I have never seen this before.

Q.    **Because you chose not to look at it.**

MS. SHEVLIN:  Form, mischaracterization of her prior testimony.

A.    I have never seen this before.

Q.    **Why have you not seen it before?**

A.    It was not provided to me.  I have never seen it before.

Q.    **It was in the expert's report that you said you read last week?**

A.    It's certainly not in there.

Q.    **Okay.  I'm going to share what we'll mark as Exhibit 2.  That will be Exhibit 1.**

**This is the report of Scott Krugman; does this look familiar to you?**

A.    Yes.

Q.    **See three here, The Difficult Issue of Age Assessment on Pedo Pornographic Material?**

A.    It is a reference, yes.

Q.    **You agree it was -- the name of the article, the journal and the citation was provided in his report?**

MS. SHEVLIN:  Form, mischaracterization of her prior testimony.

A.    The citation is there.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 32**

Q.   So why -- why didn't you look at it?

MS. SHEVLIN: Form.

A.   Because I know it's a difficult assessment. I know that it's difficult.

Q.   **Why do you say that it's difficult?**

A.   Because it is an appearance, it is not a chronicle age.  Chronological age, sorry, not enough syllables.

Q.   **So let me ask you this.  So if I was a person who had to make a legal determination about whether or not someone was, in fact, or -- let me re-ask the question.  If I was someone who was being asked to make a factual determination about whether or not a model depicted in a pornographic image on the internet was a minor; in fact, a minor, would your opinion about the appearance be a reliable opinion for me to base that decision on?**

MS. SHEVLIN: Form.

A.   No, that's what the investigation is for.

Q.   **That seems like a major limitation in your opinion about age; would you agree with that?**

MS. SHEVLIN: Form.

Q.   **I'm sorry, almost all of your answers are being interrupted by Amy's objection.  Was that a yes?**

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 33

A.   It was a correct.

MS. SHEVLIN:  Give us just like one second so I can make an objection and then we won't talk over other.

A.   Sorry, sorry.

Q.   And maybe I'm -- do you tell law enforcement officers about the limitations in your opinions before you give them to them?

MS. SHEVLIN:  Form.

A.   Yes.

Q.   It happened again.  It happened again.  So you said yes to that question, correct?

A.   Yes.

Q.   Can you tell me what you explain to law enforcement officers when you give them your opinion?

A.   That this is the appearance of the person in the image, and that is, if I can see the image; sometimes the images are too blurry or just not good enough to even see.  So they know quality of the image and they know that it is only an image and that the appearance depicts something that is based on sexual maturity rating that may or may not prove to be a minor.  They don't bring the little kids, they bring these borderline kids to be looked at or images and they investigate after that.  Because I can only

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 34

give them appearance.

Q.   So you're aware that a lot -- I mean, do you have any impression of how much or how many images that are published on the internet have been digitally altered in some way?

MS. SHEVLIN:  Form.

A.   I'm sure it's an astrological number.  I don't know the number.

Q.   As we sit here, I mean, you're -- I mean, you believe -- let me just -- you think that most images have some sort of digital altering on them for aesthetic purposes?

MS. SHEVLIN:  Form, mischaracterization of prior testimony.

A.   No.  A lot of images have -- may have alterations and a lot of images may not have alterations, I don't know what those numbers might be.

Q.   And that is a fair answer.  If you don't know the answer, just say I don't know.

But whether or not there were alterations would have a significant impact on the accuracy or the reliability of your opinion as to the actual age of the model?

MS. SHEVLIN: Form, speculation.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 35

A.    What I see on the image does not necessarily give an indication of the actual chronological age that may be discovered during investigations.

**Q.    So what is -- what do you see -- what is the value -- I mean, your -- your job is to consult with law enforcement in these cases, correct?**

A.    Yes.

**Q.    What do you see the value of your opinions being?**

MS. SHEVLIN:  Form.

A.    There are times when it leads to a real child or a trafficked child and it may be local; it may not have any bearing at all because it may turn out to be modified images that were made to look like an adolescent. So I don't know what direction it will go after I tell them, yes, they have an appearance of an adolescent going through puberty and that is its only value.

**Q.    So, okay.  I'm going to put a pin in that statement.  I want to go to actually sexual maturity rating.  In terms -- and let's just have this and just talk about females.  All of the images you reviewed in this case were females, correct?**

A.    Yes.

Q.   So and let's just start with a genital or vaginal appearance in females. Can you describe what the grades of sexual maturity -- first of all, what are the grades of sexual maturity rating?

A.   I, II, III, IV, V and for pubic hair there may be a VI.

Q.   Okay.  So can you just give me the pubic hair -- first of all, in the genital region is there any other factor other than pubic hair development in sexual maturity rating?

A.   There is another factor but we usually can't see it and that is the appearance of the hymen itself.

Q.   And that's an internal anatomical body part?

A.   It's a little bit internal; it's not -- it's still considered external, but it's not readily visible.

Q.   Did that have any bearing on your opinions in this case, the hymen?

A.   No, I could not see that structure.

Q.   So, the only, I guess anatomical appearance would be the appearance of pubic hair in terms of genital development?

A.   Generally speaking, yes.  I don't have the

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 37

images, so I haven't seen them in two years, so...

Q.   **Well, we'll talk about that because, Amy, I thought that's what we were doing, is you were going to give her the images.**

MS. SHEVLIN:  I meant to talk to you about that on Friday.  When we take a break, I'll call you.

MR. ROBERTS:  Okay.  All right.

Q.   **So, grade- -- what's grade I?  I'm sorry, we're just talking about genitals or pubertal hair --**

A.   For the female child, that's the little girl, so she will have fully developed labia majora if she's a term infant and that appearance will continue until she becomes -- developed some pubic hair.  So once she starts developing some pubic hair that is not vellus hair, different from the hair on her abdomen, she could be called SMR II.

Q.   **Okay. And grade -- what is grade III?**

A.   Grade III is a little bit more pubic hair on the labia and also where the labia come together up front that will no longer be clearly or plainly visible because there is pubic hair at the top of that, the labia majora where they come together, the interior commissure, and part of the mons pubis is covered with pubic hair that is not the same as

**Page 38**

vellus hairs on the abdomen.

Q.   And grade IV.

A.   Grade IV fills out the entire triangle shape of the labia majora, the anterior commissure and the mons pubis over to, but not involving where the thighs join at the pelvis.

Q.   What do you mean by triangle?

A.   That is the shape when the legs are together of the hair bearing parts over the mons pubis in front of the anterior commissure and on either side it's wider and between the legs, it will come to appointment so it may look like an inverted triangle.

Q.   And grade IV?

A.   Grade IV will involve the inner thighs as well.  And also hair will be thicker or more abundant.

Q.   So, I mean, human beings are all different; the thickness is a very subjective evaluation, I would imagine?

MS. SHEVLIN:  Form.

A.   Is that a clinical question or --

Q.   Yeah, it is.  Between making the distinction between IV and V, I mean, how -- what is the thickness of a V versus the thickness of a IV?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 39

A.   I would look at the inner thighs to tell the difference.  And most -- most of the children are shaved, so we don't get to assess thickness, there isn't anything to see, there are whiskers there.

Q.   **Because most -- most people at that age do groom themselves at least at the thigh level?**

MS. SHEVLIN: Form, speculation.

Q.   **Well, I think that was just your testimony, wasn't it?**

A.   No, that wasn't my testimony, but --

Q.   **What did you say?  I'm sorry, can you just say it again, you don't get to see at the thigh, you said something about shaving?**

A.   There are whiskers.  We cannot judge the thickness of the pubic hair, we can only look at the location of the hair bearing parts by looking for the whiskers, the obvious shaving.

Q.   **So, really, the difference between four and five is whether or not you see over the inguinal notch, that crease between our thighs and the pubic level, the pubic area?**

A.   Practically speaking, it is the inner thighs.

Q.   **Yep, okay.  And if there were waxing or grooming such that you couldn't see whiskers or**

something, but it was obviously being groomed, you would not be able to distinguish between IV and V?

A.   So I can see whiskers on the inner thighs, that distinguishes V from IV.

Q.   But if you can't, because of the method of grooming or the digital altering, you would not be able to tell the difference between a IV and a V?

MS. SHEVLIN: Form.

A.   I'm talking about an actual patient. You're talking about images?

Q.   Oh, is there a difference?

MS. SHEVLIN: Form.

A.   An actual patient, I can see the difference because I can see the hair follicles.

Q.   So what's the difference when you're evaluating an image?

A.   There isn't as much fine focus or close view to necessarily be able to see and blond individuals may be less obvious as well.

Q.   So it's much more difficult or it's more difficult for you to make the distinction between a IV and a V on -- on a digital image?

MS. SHEVLIN: Form.

A.   On any image, yes.

Q.   Okay, okay. All right.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 41**

So this triangle of pubic hair, what -- what's the significance of that?  Why do you say a triangle?

A.  Because I'm trying to be descriptive.

Q.  No, but I mean, is that the way that pubic hair grows in on females is in a triangle -- is that the way it's supposed to grow in?

A.  At a certain maturity, it will look like a triangle.  Early on it does not look like a triangle.

Q.  But at the IV to V stage, an ungroomed female model should have a triangle shape to her pubic hair?

MS. SHEVLIN:  Form.

A.  Roughly, except for what's out on the inner thigh they're going more posterior.  Some people have it going up to their belly button as well, that's called a six.

Q.  Okay.  Pubic hair that goes up to your belly button would be a VI?  Grade VI; is that correct?

A.  In a straight line up the midline lafay (ph), there can be a VI, and it may go posterior around the anus, too.

Q.  How long can people appear to be -- well, before I ask that question.  Give me the same rundown

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 42**

with breasts.  Grades IV through V in breasts, just describe what those are.

A.    Grade IV, just grade IV and V?

**Q.    No, I'm sorry, grade I through V.  I'm sorry if I asked that question wrong.**

A.    Okay.  So most newborns are II, maybe III in their sexual maturity rating, they've been exposed to estrogen in utero.  Even the male infant has breast buds, so the newborn is, by definition, a sexual maturity rating of II and sometimes III.  As the estrogen effect from being a fetus goes down in their bloodstream in little girls that takes two to four years.  The breast buds become small and flat and no longer palpable.  So there will be a flat little pale nipple and if they're cold, they may have a papilla protruding in the middle.  As the -- that is an SMR I, which is sometime after birth until estrogen effects starts being produced by their own body.  The breast buds will then redevelop and when it's confined to just under the nipple and its areola, then that is an SMR II.

When there is a little bit more enlargement of a mound outside the area of the pink areola, then that's a III.  When the breast tissue is beginning to meet at the sternum and the midline, then it is a IV

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 43

when looking at it an anterior/posterior way, so we're looking directly at the person's chest.  If we look from the side, you -- or have a side view, you can see that a IV has two mounds; one mound for the breast tissue and a separate mound on top of it for the nipple for areola and papilla.  So IV, sexual maturity rating is two mounds instead of one.  V has become a single globular shape, and so it has a papilla at the top of the nipple, but there is one mound that is under the pink of the areola and the breast tissue all the way to the chest wall.

Q.   Okay.  So how long in chronological age can a female present as a grade IV on clinical exam?

MS. SHEVLIN:  Form.

A.   About 20 percent of women who are not pregnant revert to a IV.  And will be that way through parts of their adulthood.

Q.   So a female being a grade IV is not inconsistent with them being over the age of 18?

A.   Correct.

MS. SHEVLIN:  Form.

Q.   And when you meet with detectives, do you give them some explanation of what the -- the sexual maturity rating is; do you give them like a little primer course if you've never met them before?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 44

MR. STEWART: Form.

A.   In general, I don't -- I'm not the first pediatrician that they have met with, but I will ask them if they have any questions and show them what I use, my reference.

Q.   You show them a reference book or something like that?

A.   The pediatric, Nelson's Textbook of Pediatrics, yes.

Q.   Okay. Actually, and I'm just going to show you this. It's just -- and you can tell me if it's helpful or not helpful.  I guess that means it's a demonstrative aid, it just has -- it's like a textbook, I don't know if it's from your textbook or not, and you can tell me if it's not helpful.  Do you see this?

A.   I can see it.

Q.   Is that a visual depiction of what you just testified to, that image there?  What's that?

A.   Yes, they are trying to depict that here.

Q.   And I understand it's like -- it's a drawing, it's probably just a pen drawing, but this -- this is kind of -- I see a triangle at IV and I see a larger triangle at V; is this generally what you were testifying to earlier?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 45**

A.   Yes, roughly.

MS. SHEVLIN:  Are you making that as an exhibit?

MR. ROBERTS:  We can mark that as 3.  1 was the article.  2 was the expert report and 3 was that demonstrative image.

Q.   I want to go back to Exhibit 2, which is Dr. Krugman's report and you said you disagreed with the report, but I just want to maybe dial in on that.

For example, I just want to go to the -- the letter E here, Dr. Dully.  It's well-known and documented that adult females can exhibit and appear to be SMR IV; you would agree with Dr. Krugman on that point?

A.   Yes.

Q.   Do you know Dr. Krugman?

A.   I know Dick Krugman, I don't think I know Scott Krugman.

Q.   Okay.  In this he says that you're a member of a list serves that he's a member of and this issue about the concerns and limitations of using SMR in CSAM investigations has been raised in that -- in that e-mail list serve; is that true?

A.   It's been discussed off and on for at least a decade, yes.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 46

Q.   I mean, has anyone suggested on there that it is not scientific to be applying SMR ratings to the pornographic images on the internet to determine chronological age?

MS. SHEVLIN: Form.

A.   I don't remember anybody saying that it was unscientific, but we all agree that there are limitations to stating what the appearance may be versus what the age of the patient may actually be.

Q.   Let me ask a question in a different way, because we may be just ships passing in the nights here.

Do you agree that it is not scientifically reliable to use SMR ratings to determine the actual chronological age of a model depicted in a pornographic image on the internet?

MS. SHEVLIN: Form.

A.   Yes.

Q.   Yes.  Sorry.

So you agree that that's not scientific to say the actual age of the model?

A.   I agree.

Q.   What you are saying is, is that you can apply SMR and say what it appears to be, irrespective of the possibility of grooming or digital

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

manipulation?

MS. SHEVLIN: Form.

MR. CARSON: Join.

Q.   I didn't even -- I don't even know I know what your answer is there, so can you restate your answer?

A.   I said correct.

Q.   Correct, okay.

Do you think that you communicate that idea to law enforcement when they come to you?

A.   Yes.

Q.   So when Detective Preston came to you with these images and she left, you would have told her that you cannot give her any reliable information about the actual age of this individual depicted in this image?

A.   Yes.

Q.   All right.  So, in some ways, I think maybe you agree with Dr. Krugman if he is talking about actual age; is that fair enough -- is that a fair statement?

MS. SHEVLIN: Form, mischaracterization of prior testimony.

Q.   Do you understand my question, Dr. Dully?

A.   I'm -- I'm not sure how your question is

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 48

different from all the others.  I guess I'm not sure. I must be missing the nuance.

Q.   Well, you said originally that you disagreed with his opinions; do you remember that testimony?

A.   I disagreed with his opinion about my opinion.

Q.   If he thought that your opinion was stating the actual age of the individual, rather than just the appearance, would that be an explanation for the disagreement between Dr. Krugman and yourself?

MS. SHEVLIN: Form, speculation.

A.   Yes.

Q.   Okay.  So did you understand that your opinions were going to be used in a probable cause affidavit to seek a search warrant?

MS. SHEVLIN: Form.

A.   No.

Q.   What did you think that they were going to be used for?

A.   That there were probably other files to be looked at or other circumstances and there would be some determination on whether they would move forward or not.

Q.   Do you think -- I'm sorry, I didn't mean to

Page 49

cut you off.  Were you finished?  I'm sorry.

A.   I think I was finished.

Q.   Okay.  Sometimes on Zoom it's a little hard to know when people are finished or not, but...

Would you be comfortable with your opinions being used in a probable cause affidavit without the caveat --

MS. SHEVLIN: Form.

Q.   -- that you've just given us here about the limitations of your opinion?

A.   I don't think my comfort matters.  I'm just making a statement about the appearance.  And then there's decisions on whether to move forward with that or not.  Sometimes they do and sometimes they don't, and I don't know that one image is going very far ever; I don't know that.

Q.   Well, no, that's not my -- so it's, you know, as a child abuse expert that your opinion sometimes have serious legal consequences, correct?

A.   Yes.

MS. SHEVLIN: Form.

Q.   Parents lose their children sometimes because of your opinions.

A.   Yes.

Q.   In this case someone went to jail, in part,

because of your opinion; were you aware of that?

MR. STEWART: Form.

A.   I was informed after it was published in a newspaper. A colleague informed me that that had been in the newspaper, but I did not know that.

Q.   Did you suspect that your opinions might be used in front of a judge?

MS. SHEVLIN: Form.

A.   Sometimes they go before a judge, sometimes they go before a jury; that's not my determination.

Q.   But that's not my question.

My question was, when you gave this -- when you wrote these letters, did you expect that the law enforcement officer, Detective Preston, was -- was going to quote them in a probable cause affidavit for a judge?

A.   I know that she was going to investigate further, but I did not know what the next step might be.

Q.   All right. So I'm going to just pull up and share the -- you don't have the February 22nd report; did I understand that correctly?

A.   I did not.

Q.   So -- and we'll mark this as Plaintiff's Exhibit 4. And it will be a composite exhibit

Page 51

because I have them in a PDF that has all three of your letters. I'll represent to you that this letter is almost verbatim copy and pasted from your -- in your April 5th, so the words are going to probably look very similar, but just take a second and look at it. Just tell me when you're done.

A.   Okay.

Q.   So my first question is, why did you not include in your letter any commentary on the limitations of your opinion in regards to the actual age of the model or the ima- -- the person depicted in the photograph?

A.   I think the limitations are obvious, and I say what appears to be. And that is the appearance, the developmental genital appearance and she does not appear to be shaved; the whole thing is about appearance. I think that's pretty apparent.

Q.   Well, you told -- you've already testified that you would have told Detective Preston explicitly that I am not talking about the actual age of the individual, I'm only talking about the appearance?

A.   I'm only talking about the appearance that's --

Q.   And you would have communicated that to Detective Preston?

**Page 52**

A.   And it's in writing, yes.

Q.   And when you say it's in writing, you're talking about your use of the word "appears," you use the word appears over and over again?

A.   Yes.

Q.   Okay.  So I understand you don't have the images in front of you and we're going to take a break here in just a minute and I can talk to Amy about that, but I just want -- I want to go through this real quick, okay.

You, in this depict -- you describe the image that you're looking at, correct?

A.   Yes.

Q.   And can you describe for the record -- do you -- first of all, do you remember meeting for the first time Detective Preston?

A.   I remember that I met her, yes.

Q.   Do you remember -- you had that meeting in general, maybe not word for word, but in general do you remember that meeting?

A.   Only vaguely.

Q.   So she showed you an image on her laptop is what's related in this letter.  Can you describe what that image looked like?

A.   I can only read to you what I typed.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 53**

Q.   Please do.

A.   The image depicts what appears to be a naked pubertal female child wearing pink earrings and white lace socks on her feet.  She is on a wood floor in a knees to chest position with her lower legs and ankles parted to expose her genitalia for the camera.

Q.   So she was in a knees to chest position; is that correct?

A.   Yes.

Q.   Now, you were of the opinion -- Oh, I'm sorry, I didn't mean to stop sharing there, I'm sorry.

Your opinion was that she appeared to be SMR IV; is that correct?

A.   Just of her genitals, yes.

Q.   Because you -- you couldn't evaluate her breasts?

A.   I don't think I was able to see them or I would have put them in there.

Q.   Well, knees to chest, in theory, she would be covering her breasts with her knees or her legs, correct?

MR. KASS:  Form.

A.   That sounds right.

Q.   Yeah.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 54

You put that she would have achieved this developmental genital appearance of SMR IV at 12 to 15 years of age.  Why didn't you put that she could -- but she could be 18 or 19 or 20 with an SMR IV?

MS. SHEVLIN:  Form.

A.   Well, that would depend on the modifications and grooming, as you're calling it, that she would undertake, and I'm not assessing grooming, I'm assessing appearance of the photograph, which is what pornography is all about.

Q.   Well, you testified earlier and you agreed with Dr. Krugman that women can present as SMR IV for their entire life?

A.   For their breast development, yes.

Q.   And genital pubic hair?

A.   That depends on shaving and heritage or depilatories or waxing or other things.

Q.   You say that she (sic) did not assess her grooming, but you did in the next sentence assess the grooming?

A.   She did not appear to be shaved; that, again, is an appearance.

Q.   How -- what scientific basis do you have to make that determination?

MS. SHEVLIN:  Form.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 55

A.   I don't see any hair there and so she does not appear, you know, to be shaved.  I mean, there is or there isn't hair, right, why say that there is anterior pubic hair present.

Q.   But that's just a lay opinion, right, that's not a scientific opinion, you're just saying I don't see any hair?

A.   No, I think you mischaracterize it big time, clinically.

Q.   Tell me, I asked the question and you didn't answer it.

What is the scientific basis for your opinion that she does not appear to be shaved, medical, scientific basis for your opinion?

A.   The hair is still there.

Q.   I don't understand, you said the hair is still hair?

A.   Shaving removes hair, but the hair is still there; it's present or absent in the image.

Q.   Is that a medical opinion?

A.   That's a clinical medical assessment what the image looks like.

Q.   What about waxing or electrolysis or chemical hair removal?

MS. SHEVLIN: Form, speculation.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 56

A.    What about it?  The hair --

Q.    **Do those leave visible signs of hair?**

MS. SHEVLIN:  Same objections.

Q.    **Well, hold on.  You're saying as a medical expert, you can determine whether someone is groomed or not groomed, correct?**

MS. SHEVLIN:  Form, mischaracterization of her prior testimony.

A.    I know what shaving looks like because I see it all the time and it has been that way since the 90's so --

Q.    **Yeah, and I'm asking about go waxing or electrolysis; you're familiar that there are other types of grooming other than shaving, correct?**

A.    There are, yes.

Q.    **And they leave a different -- they look different; the results is different than shaving, correct?**

MS. SHEVLIN:  Objection, speculation.

A.    They're designed to be the same or they can be designed to be different.

Q.    **Right.**

**So, how can you look at a pornographic image and determine whether or not they have been waxed or electrolysis hair removal, some other form**

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

of hair removal?

A.   I'm not assessing the hair removal, I am saying the pubic hair is present.

Q.   But if she is groomed that would destroy any validity to your SMR rating as -- as regards to pubic hair, correct?

MS. SHEVLIN: Form.

A.   The hair is still present.  It can be assessed for its appearance.

Q.   We're going to follow back up with that. But before we take a break, I'm going to ask you this quick and I'm going to go back to this image.

Okay.  This is the general image and we talked were the triangle.  Dr. Dully, you've described this model in the February 22nd, 2023 as sitting towards the camera, knees to chest, correct?

A.   Yes.

Q.   It would have been impossible for you to determine whether this model had a triangle or not based on the way that she was sitting, correct?

A.   I do not know; I do not know what the image looks like.

Q.   You've described the image as knees to chest, sitting on the floor, that would obscure the inguinal notch or the inner thigh from your view,

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

correct?

MS. SHEVLIN:  Form.

A.   No, that depends on the image.

Q.   Well, if the image, because I've seen it, if the image obscured the inguinal notch, it would be impossible for you to determine whether or not the model had a triangle or the hair crossed the inguinal notch to the thigh, correct?

MS. SHEVLIN:  Form.

A.   Well, there is not -- there is no inguinal notch, I don't know what you're talking about, and I can see -- I state that I can see, but I don't have the image, you have an advantage over me, you're not seeing it, correctly.

Q.   Okay.  The thigh -- you testified -- tell me what was the difference between, again, IV and V?

A.   Can I see the image?

Q.   I am not actually comfortable because the image is still on a Nick Nick database because no one is doing their job, and I'm afraid that if we transmit it, we're all going to get investigated for child pornography even though it's an adult, so I'm just going to ask you questions right now based on the hypothetical and I will show you the image, but can you, once again, tell me what is the difference

**Page 59**

between a IV and a grade V pubic hair?

A.   The presence of hair or the shaved area of hair on the inner thighs, on either side of the fully developed roughly triangle shape of hair.

Q.   So if you could not see the inner thigh, you could not distinguish -- it would be impossible for you to even say what appears to be a grade IV versus a grade V?

MS. SHEVLIN: Form.

A.   I cannot see the image. I can't comment one way or the other.

Q.   You have to answer my questions unless you don't understand them.

A.   I can't see the image. You're asking me --

Q.   I'm asking you a hypothetical question, Dr. Dully.

A.   Okay. A hypothetical, not about this case, about something else, okay, try that.

Q.   Hypothetically, if the image did not show the inner thigh or the inner section of the inner thigh and the pubic region, you could not distinguish between a grade IV and a grade V in terms of sexual maturity rating appearance?

MS. SHEVLIN: Form.

A.   I would need to see the image, but I would

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 60

consider that as facts, yes.

Q.   Evaluating whether or not pubic hair has crossed the line onto the thigh is the distinguishing factor between a grade IV and grade V, pubic hair distribution for sexual maturity rating, correct?

A.   It is the most helpful distinction, yes.

Q.   Okay. All right. Why don't we take a break, we've been going for an hour and a half.

Amy, do you want to call me?

MS. SHEVLIN: Yeah, I'll you on your cell.

THE VIDEOGRAPHER: Going off the record the time is 11:29 a.m.

(Whereupon a break was taken.)

THE VIDEOGRAPHER: We're on the record, the time is 11:47 a.m.

Q.   Okay. So we had an off record discussion and through no fault of Dr. Dully, there's just a logistical issue with Miss Shevlin's office and the photographs did not get sent to her. So we are going to ask a few more questions, but then continue the deposition to a later time in which she will have access to those photographs and we will reschedule it, Matt raised the concern about him asking questions and that certainly will be accommodated when we reschedule the deposition. He also has the

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 61

ability to reset a deposition as well. Is that a fair summary, Matt and Amy?

MS. SHEVLIN: I think that's a fair summary.

MR. CARSON: Agreed.

MS. SHEVLIN: And I do also want to add just one thing. The questions that you'll be asking her are largely going to be hypothetical if we're talking about the images from this point forward and then when we have an opportunity for her to look at the images, they'll be specific to those images, correct?

MR. ROBERTS: Some of them may be hypothetical. I don't intend to go through every image in a hypothetical way, but I am going to ask about some general principles, you know, that maybe we don't even need the images for, but yeah, some may be hypothetical, but I don't intend to go through everything like that.

Q. All right, Dr. Dully, I want to ask you -- and this is not a hypothetical, when you were making these assessments at the request of law enforcement, do you use any other set of scientific principles or methods in rendering the opinion on the appearance of the model, other than sexual maturity rating?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 62

A.   Yes, sometimes I do.  It depends on the image. So sometimes I --

Q.   **What would those be?**

A.   So sometimes I can see the teeth, and I can tell if they're baby teeth or mixed dentition, which is adult teeth in some stage of eruption, sometimes with missing teeth as well.  And then sometimes if they're very young, I can look at it by proportion, if they're very young, images of the very young, I can look at body proportion which is head size to body size.  And most of the size or height is not visible in most images; sometimes they're standing next to an adult and I can look at approximate height, but most of these images are not that, and so occasionally, you know, there's more information or appearance information on the images and sometimes, there is not.

Q.   **If you relied on any other data such as proportion, height, teeth, would that be information that would be included in your report?**

A.   Yes.

Q.   **So if it's not included in your report, I can take from that that you did not consider other data in forming that opinion?**

A.   Not other image data. Sometimes I look at

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 63

the bio main or something that's printed on it, or for sexual content, but that's often not helpful either.  It's just all letters and numbers and asterisks, that doesn't help.

Q.    Yeah, I understand.  If -- if there was something, though, you would put that in your report?

A.   I would.

Q.    All right.  So I think when we left off, there was this hypothetical and I don't -- and I apologize, and I'm going to ask this hypothetical again, and I use inguinal notch, but I think it's inguinal -- what is it that --

MS. SHEVLIN: Form.

A.   I don't know.

Q.    It's -- I'm sorry, do you know the anatomical term that I'm talking about?

MR. CARSON: Groove.

Q.    Inguinal groove?

A.   Yeah, I don't know what you're referring to.

Q.    It's just an anatomy term.  It's the -- it's the -- it's the line between the abdominal wall and your hip, that groove, that crease.

A.   Oh, that would be -- you could call that an inguinal fold.

**Page 64**

Q.   Inguinal fold, yeah, I've seen notch, I've seen fold, I've seen groove, I've seen -- but that's the line that you're talking about in the distinction of -- between IV and V, correct?

A.   No, that is very anterior.  I'm talking about medial thighs, which is the inner surface of the upper thighs.

Q.   But if a picture did not -- if an image did not depict the upper thigh or the abdominal wall where it meets the thigh, it would be impossible for you to distinguish between a grade IV and a grade V pubic hair presentation, correct?

MS. SHEVLIN: Form.

A.   No, that's not the location.  The location isn't abdominal wall and it's not in the inguinal fold.  It is between where the thighs come together in the middle, so it's anterior and medial, the inner thigh.

Q.   Okay.  So if you cannot see in a digital image, the interior thigh, it would be impossible for you to distinguish between a grade IV and a grade V?

MS. SHEVLIN: Form.

A.   No, it's the anterior, a-n-t-e-r-i-o-r and medial thigh, m-e-d-i-a-l, which is where the legs come together between the upper thighs and on the

Page 65

front of the medial surface of the thighs.

Q.    If you cannot see that area, it would be impossible for you to distinguish between a grade IV or a grade V presentation, correct?

MS. SHEVLIN: Form.

A.    Probably, but grade IV and grade V are also a subjective determination of quantity amount of pubic hair.

Q.    You would not be able to, scientifically, with any degree of reliability distinguish between a grade IV and grade V if you had not seen the area that you have just described?

MS. SHEVLIN: Form.

A.    At a hundred percent level of certainty, probably not.

Q.    No, you can't ever say with 100 degree -- 100, you know, that's not -- that's not what I'm talking about.  And I want to -- I'm going to spend as much time on this as we need to.  What I'm going to do, is I'm going to pull back up our demonstrative aid.

Mr. Videographer, do you have this demonstrative aid?

THE VIDEOGRAPHER: Yes, sir, if I see it?

MR. ROBERTS: Yeah, can you do like a split

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 66

screen, the ability to do a split screen with the witness in this?

THE VIDEOGRAPHER: I see it now.  She's on the -- do you guys see it?  She's on the side right now.

MR. ROBERTS: That's fine, yeah, that's fine.

THE VIDEOGRAPHER: Okay.

Q.   So we have a -- can you see cursor, Dr. Dully?

A.   Yes.

Q.   So on grade IV, grade V; is my cursor, the area where my cursor on both the IV and the V, is that the area that you're talking about?

A.   Yes.  Also between the thighs.

Q.   Also between the thighs.

A.   To each other.

Q.   If you cannot see this area that I am running my cursor on, you cannot do a SMR rating to distinguish between a IV and a V on a pornographic image off the internet, can you?

MS. SHEVLIN:  Form.

A.   There can be a difference in quality, as you can see, and then also there's medial thighs which you can't see on these diagrams, so if I can

see better than just this, maybe.

Q.    At what point would you say to -- first of all, have you ever told a law enforcement officer, you know, there's just not enough here for me to reliably give you an opinion about the sexual maturity rating.

A.    Yes.

Q.    And what would be the criteria for that?

A.    Sometimes the image is too pixilated or blurry or the clothes are covering the vital structures.

Q.    What are the vital structures?

A.    The breast area from more than one view, and the pubic area as well.

Q.    Okay.  So if the breast area is obscured and the pubic area is obscured, those are circumstances in which you believe you have communicated to a law enforcement officer that this just isn't enough for me to reliably opine on the sexual maturity rating as it appears in the photograph?

MS. SHEVLIN:  Form.

A.    Correct. Maybe I can see the teeth, maybe it's an image that belongs to a bigger file that shows more information, but based on that one image

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 68

alone, I can't do the sexual maturity rating.

Q.   So you do have -- first of all, do you recall, I think you met with Detective Preston twice; is that what your rec- -- records indicate?

A.   Yes.

Q.   February 22nd and April 5th.  Do you have any calendars or anything in your possession that document those meetings?

A.   I have a date and a time on my Outlook calendar.

Q.   Have you gone back and checked that Outlook calendar and -- and found an April 5th and a February 22nd?

A.   I did not remember the February visit, so when I went back, I did find the February visit on my calendar.

Q.   Have you met with her any other times other than April 5th or April (sic) 22nd?

A.   Not met with her.  I may have seen her in the hallway, potentially, but, no, I didn't share any cases with her to my knowledge.

Q.   Okay.  Did you check for that?

A.   No.

Q.   So you just don't recall having any other cases that you consulted with her about?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 69

A.   I don't know that they were with her; sometimes it's a team.  I have seen other St. John's County cases at the hospital --

Q.   Right.

A.   -- but I don't remember her being a prominent figure in any of the others.

Q.   Okay.  So do you recall -- so you don't recall her -- meeting her in February with a single image as we sit here today?

A.   I do not.

Q.   Do you recall meeting her in April with multiple images?

A.   Yes, because we scheduled that.  And she had images, more than one, yes.

Q.   And we've talked a little bit about that meeting.  Do you recall the discussions that you had with her during that meeting?

A.   In any vivid way, no.

Q.   You testified earlier that you would have counseled her on the limitations of your opinions regarding appearance versus actual age; is that correct?

A.   In a simple way, yes, that's all I would have said.

Q.   In any way you wouldn't be misleading

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025

Page 70

anybody in what your opinions are, correct?

MS. SHEVLIN: Form.

MR. CARSON: Join.

A.   Correct, the investigation needs to occur.

Q.   What do you mean by that, the investigation need to occur?

A.   I have no access to actual -- any additional information at all about the case, the person depicted, other computer's images, I don't have any of that information, so if there is an investigation that's occurring, that I am not part of.

Q.   Do you mean that, in part, that your opinions are not enough to establish the actual age of the individuals depicted from a medical standpoint?

A.   Right.

MR. CARSON: Object to form.

MS. SHEVLIN: Join.

Q.   So, it's okay.  I got your answer that time.

MR. CARSON: If you don't mind, I didn't hear her.  I think I might have spoken over the witness.

Q.   I think you gave me another "correct"?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

A.   I think I did, yes.

MR. CARSON:  I apologize, Doctor.

A.   I'm sorry, I'm sorry.

Q.   I'll re-ask it.

You have not -- in these -- in these three reports that I have that you produced in this case, you have not rendered a reliable medical opinion on the actual age of the individuals depicted in this -- in these images, correct?

A.   Correct.

Q.   So let me ask you this and these are kind of hypothetical questions, but they are about the images, so does that mean when you're presented an image and, for example, the model appears, for whatever reason, to have no pubic hair, that in regards to sexual maturity rating is going to be -- that that is a sexual maturity rating of one?

A.   Probably, but I'll look to see if I can see the other areas, too, and countenance of the person.

Q.   Right.  But I mean, you're not, if you're not -- if you can't look at the breast and you don't have a picture of her face or anything like that and you just see a genital area and there's no pubic hair that is visible to you, that's a sexual maturity rating of what?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 72**

A.   That would be the appearance -- if the person is blonde, I will explain that I might not be able to see blonde pubic hair even if it's there, so I don't know the image, so I don't know if it was a blonde or not.

Q.   Well, I guess for whatever reason, right, I'm just asking, brunette red head or whatever, if you look at an image and you do not see any pubic hair, that would result in a sexual maturity rating of one in terms of appearance?

A.   Yes.

Q.   And do you make any effort to determine whether or not the image has been manipulated, touched up, edited in any way?

A.   No, I have no expertise in that.

Q.   Talk about shaving, do you have any expertise in the appearance of electrolysis, hair removal?

A.   Not to my knowledge, no.

Q.   Do you have any expertise in what an individual who has received electrolysis looks like when you take a picture of them -- of their pubic hair?

A.   No.

Q.   Same question with waxing; do you -- are --

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 73

do you have any expertise in determining whether or not from looking at a picture someone has been waxed?

A.   If there's folliculitis where the hairs are starting to grow back, maybe, otherwise, no.

Q.   Because your understanding is waxing pulls the hair follicles out of the skin in that process, correct?

A.   Yes. And there would be a period of time where the follicles look healed over.

Q.   And that would be the appearance of no growth of pubic hair?

A.   Yes.

Q.   Is there a reason why you only say in -- in these opio- -- in these letters that the model or she does not appear to be shaved rather than waxed?

A.   No, I just used shaved as the customary term.

Q.   So by shaved, you mean grooming of any type?

MS. SHEVLIN: Form.

A.   The after care is still present, not shaved in a general sense, not absent.

Q.   Hold on, I'm not understanding you. Let's not even look at the first letter, let's just look at April 5th, okay? You've got an April 5th. I can

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 74

pull it up.

MS. SHEVLIN: Could you pull it up, I want to make sure it's the correct one for all of us to pull up at the same time.

MR. ROBERTS: There's two April 5ths.

Q.    So I'm going to share your report again. I'm going to scroll down to the second -- so, I just want to go over here on the second paragraph, can you see this, the second image is imprinted with white script. That's the way it begins. You say she does not appeared to be shaved. What do you mean by that statement?

A.    That there's no shaving bumps or folliculitis that we might see, and I don't see -- you can see that I say she appears to have no pubic hair development.

Q.    So I guess what I'm saying, what I'm getting at is what if she was waxed?

MS. SHEVLIN: Form, speculation.

A.    I could have said she does not appear to be waxed, I would be saying the same thing.

Q.    Bill, but -- do you get bumps from waxing?

MS. SHEVLIN: Form, speculation.

A.    You can.

Q.    But I think we just established that there

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 75**

is a period after waxing where it appears that you have no pubic hair growth, correct?

A.   It may appear you have no hair growth wherever was waxed, I don't know how long that lasted.

Q.   So how could you rule out in giving your opinion here that she hadn't been waxed?

MS. SHEVLIN: Form.

A.   I'm not making any statement about waxing at all.

Q.   And that's my question, why not?  Why not?

A.   Because the presence of pubic hair is the presence of pubic hair; what cosmetic procedure is not part of the question.

Q.   She doesn't have any presence of pubic hair, so isn't it part of the question, why does she not have pubic hair; your answer is that she's prepubescent, there are other explanations, correct?

MS. SHEVLIN: Form.

A.   Correct, she has appearance of prepubescent or -- yes.

Q.   Or she has the appearance of one is who is just been waxed?

MS. SHEVLIN: Form, speculation.

A.   I can't see the image, but hypothetically,

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

that is one explanation.

Q.   Why is that explanation less likely than your given explanation that she's prepubescent?

MS. SHEVLIN:  Form.

A.   Which explanation?

Q.   That she's just been waxed?

MS. SHEVLIN:  Form, mischaracterization of prior testimony.

A.   I was a military doctor and all the young women are shaved, they're not waxed.  Waxing and electrolysis and laser hair treatments are expensive, and so in general, they're shaved.  So for me as a military physician, shaved is a general term.

Q.   Whatever happens in the military happens in the military.  I'm not asking about the military; you've been a U.F. physician for 10 years, correct?

A.   And a military physician since 1982.

Q.   And you had no reason to believe that this model was in the military, correct?

MS. SHEVLIN:  Form, speculation.

A.   Correct, but my customary vocabulary is definitely effected,

Q.   No, and I'm not talking semantics, Dr. Dully, and I -- I apologize if you think I am talking semantics, I am not.  You just testified that one

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

possible explanation for her not having the appearance of hair, is that she was waxed?

A.   Okay.

Q.   That's correct, right?

A.   Or shaved or something else, yes.

Q.   Or electrolysis, correct?

A.   Maybe.

Q.   Now, my question to you is, you offered the opinion that the reason why she does not have pubic hair is because she is less than nine to 13 years old, correct?

MS. SHEVLIN:  Form, mischaracterization of prior testimony.

A.   Based on the appearance.

Q.   But the appearance is also consistent with someone who's been waxed, correct?

MS. SHEVLIN:  Same objections.

A.   Correct, but I'm not seeing the image, so hypothetically, it could be.

Q.   Right, so here's my question.  What makes it more likely that your opinion, that it is her pubertal development that explains her lack of pubic hair, rather than waxing or electrolysis?

MS. SHEVLIN:  Form.

A.   The investigation will verify or refute.  I

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

have no ability to do that.

Q.   Well, I'm just asking you from a medical perspective, okay.  You get an image, right, from the internet, you knew this was an image from the internet, correct?

A.   No, I know it was a Nick Nick tip based on what I was told, I don't actually know.

Q.   Actually, and you may not know this, this was not a Nick Nick tip, this picture, you describe it, it had a file name, it's a screen shot and then there is Duck Duck Go dot -- did you not know that that was a screen shot from the internet?

MS. SHEVLIN:  Form.

A.   No, I didn't know where it came from.

Q.   Well, you'll look at it when you look at the image, you'll agree it is from the internet; it has the website.

MS. SHEVLIN:  Form.

Q.   Well, let's not get into that, we'll ask that later.

You're being asked a medical opinion by the detective, correct?

MS. SHEVLIN:  Form.

A.   Yes.

Q.   Now, you know, as a medical doctor that

Page 79

there can be multiple explanations for a model in an image not having the appearance of pubic hair, correct?

A.   There can be, yes.

Q.   Right.

One of those is that the image has just been digitally altered to remove evidence of pubic hair, correct?

A.   Yes.

MS. SHEVLIN:  Form.

Q.   One of those would be waxing or electrolysis or some form of hair removal that did not leave any visible evidence of hair, correct?

MS. SHEVLIN:  Form.

A.   Yes.

Q.   All right.  One of the explanations would be that the model has not reached a certain level of puberty, correct?

A.   Yes.

Q.   So as a medical doctor, this would be what we call kind of a differential diagnosis, correct? You got -- you got three different things that could explain what you are observing; is that a fair characterization?

MS. SHEVLIN:  Form.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 80

A.   Potentially, yes.

Q.   **What makes you think that pubertal development would be more likely than digitally altering the image or some sort form of hair removal that you couldn't see on the picture?**

MS. SHEVLIN: Speculation.

A.   I am not saying how likely or unlikely it is, I'm only saying what the appearance is.

Q.   **So when you're entering these opinions, you're not saying with any degree of reliability that they're correct?**

MS. SHEVLIN:  Form, mischaracterization of prior testimony.

A.   It's not chronological age, their appearance.

Q.   **Well, why didn't you -- I guess my question here is and I don't think you need to look at the image for this, you acknowledge that waxing can produce the same effect of no visual evidence of pubic hair; why would you as a doctor say that she is an SMR I rather than she just had a really good wax job?**

MS. SHEVLIN: Form, speculation.

A.   Again, I need to see the patient, which is the image.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 81

Q.   Okay.  Well, we'll certainly do that when we get the images and I guess we can answer those questions then.

In this same -- and this perhaps highlights what we've been going around today more than anything else.  In the first paragraph here you review another image, and this is -- let's just call it by its file name: YCBLVVFQ underscore O.JPG.  This is an image that you evaluated and I'm just going to read your opinion.  Her breasts are partially visible and could be SMR IV to V.  However, her genitals -- genitals are plainly visible and her thighs spread widely apart and showing she is SMR I with respect to pubic hair.  Then you say this developmental appearance is less than nine to 13 years of age.

So my first question is, what developmental appearance is less than nine to 13 and a half years of age with this model?

MS. SHEVLIN: Form.

A.   Absence of hair bearing parts.

Q.   Okay.  But what about her breasts?

A.   Well, I did not have a good view of her breasts, so that was the best that I could do was IV to V.

Q.   Yeah, but what's the developmental

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 82**

appearance of a V breast; what's the age ra- -- age range of that?

A.   Post pubertal or beyond.

**Q.   Greater than 18 years old, correct?**

A.   Well, no, not necessarily, because part of the sexual maturity rating is looking for disorders that involve estrogen exposure at any age, and the five can -- breast development sometimes starts first and finishes first and so you can have a V during puberty, so it's good to be able to see both areas if possible.

**Q.   What kind of disorder would that be called, someone who has an SMR rating of V breasts, but no pubertal hair development?**

A.   Well, it can be normal, and it can be normal based on the limitations of the photographs, and there are cases of precocious thelarche it's called where breast development happens without actual pubertal development.

**Q.   Your testimony here today is that it is normal for a female to have grade IV to V breasts, but no pubic -- pubertal hair development in a clinical setting?**

A.   It is possible, yes.

**Q.   And if that is possible, you would look at**

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 83**

it and say -- you would run some diagnostic tests to try to explain why that was happening, correct?

A.   No, not necessarily. It depends on the whole picture.

Q.   How many pictures have you seen -- have you ever treated that had grade V breasts, but no pubertal development; is that someone that you've treated before?

MS. SHEVLIN: Form.

A.   Yes.  I have seen one in the military and she had a sexual development disorder.

Q.   Okay.  So something that was not normal?

A.   It turned out that it was not normal, but when we started, that was not necessarily so.

Q.   How old was she when you stopped treating her?

A.   17.

Q.   So at 17 she had no pubertal hair development?

A.   That was why I was seeing her, yes.

Q.   Did she have pubertal development when she was 18?

A.   I didn't see her past 17, I don't know.

Q.   So it's possible for someone to present with an SMR IV -- IV or V breast, no pubertal hair

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 84

development and be 18 years-old?

MS. SHEVLIN:  Form, mischaracterization of prior testimony.

A.  Well, it's -- it's possible; it would depend on the underlying causes.

Q.  You would have to be in a clinical setting to diagnose and figure that out, right?

MS. SHEVLIN: Form.

A.  Yeah.

Q.  Why did you -- why in this one, though, would you have -- would you have relied on the pubic hair SMR rating, but not the breast development SMR rating?

A.  Because I can see the pubic hair development.

Q.  But there was enough for you to say SMR IV to V?

A.  I erred on the old side since I could not really see, so the breast development was potentially that mature.

MR. ROBERTS: Give me one second, okay.  I think it's probably a good point to just continue the deposition, go through the photographs and all that stuff, I'm sure there will be a lot more questions. Does that sound good to everybody?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

Page 85

MS. SHEVLIN:  Fine with me.

THE VIDEOGRAPHER:  Sorry, Mr. Roberts, no video orders right now?

MR. ROBERTS:  Yeah, no video orders.  I will actually order a copy of the transcript.

MS. SHEVLIN:  We'll take a copy as well, just E-Tran.

THE COURT REPORTER:  Mr. Carson, do you need a copy?

MR. CARSON:  I'm good for now.

THE COURT REPORTER:  Read or waive?

MR. ROBERTS:  You know, I don't even know if we're continuing it, if it's an official transcript.  It's up to you, Doctor, you can read it if you want.

MS. SHEVLIN:  I'm going to have her read, but given the circumstances, we'll make sure it gets to her as soon as possible as soon as we get it.

THE VIDEOGRAPHER:  The video recorded deposition of Dr. Kathleen Duffy, going off the record, the time is 12:26 p.m.  Thank you.

(Plaintiff's Exhibit Nos. 1 through 4 were marked by the reporter subsequent to the deposition.)

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 86**

(Whereupon the deposition terminated at 12:26 p.m.)

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 87**

CERTIFICATE OF OATH

STATE OF FLORIDA   )

COUNTY OF ORANGE   )

I, the undersigned authority, certify that KATHLEEN DULLY, M.D. personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 10th day of May 2025.

_____

LISA K. PENKACIK, RMR
Notary Public - State Of Florida
My Commission expires 9/7/2026
Commission No.:  HH 289853

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

CERTIFICATE OF REPORTER

STATE OF FLORIDA    )

COUNTY OF ORANGE    )

I, LISA K. PENKACIK, Registered Merit Reporter, certify that I was authorized to and did stenographically report the deposition of KATHLEEN DULLY, M.D.; that a review of the transcript was requested; and that the transcript is a true and complete record of my stenographic notes.

I, further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in this action.

Dated this 10th day of May, 2025.

_____
LISA K. PENKACIK, RMR

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**

**Page 89**

ERRATA SHEET

PAGE:      LINE:       CORRECTION:           REASON:

_____
DATE

_____
KATHLEEN DULLY, M.D.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025**          Index: 1..absent

### Exhibits

**Plt Exhibit 1**
3:8 31:13

**Plt Exhibit 2**
3:8 31:13
45:7

**Plt Exhibit 3**
3:9

**Plt Exhibit 4**
3:9 50:25

### 1

**1** 31:13
45:4 85:23

**10** 16:2
26:21
76:16

**100** 65:16,
17

**10:01** 4:7

**11:29** 60:12

**11:47** 60:15

**12** 54:2

**12:26** 85:22
86:2

**13** 77:10
81:15,17

**15** 54:3

**15th** 27:9

**17** 83:17,
18,23

**18** 28:25
43:19 54:4
82:4 83:22
84:1

**19** 54:4

**1959** 26:18

**1980** 8:16

**1980s** 18:19

**1981** 7:8

**1982** 76:17

**1986** 7:11,
17

**1989** 7:17,
18 10:3

**1990** 8:6

**1990s** 18:19
26:22

**1991** 8:17

**1993** 9:1

**1994** 9:4,
12,24
23:21,23
24:8

**1996** 27:5

**1998** 18:20
27:17

### 2

**2** 31:13
45:5,7

**20** 43:15

**54:4**

**200** 10:5

**2006** 16:23

**2009** 10:4,7

**2023** 24:16
57:15

**2024** 24:11,
12

**2025** 4:7

**21** 25:24

**22** 18:5

**22nd** 18:3
50:21
57:15
68:6,13,18

**28** 4:6

### 3

**3** 45:4,5

**30** 9:8

**3:24-cv-00044-mmh** 4:6

### 4

**4** 50:25
85:23

### 5

**5th** 18:3
51:4 68:6,
12,18

**73:25**

**5ths** 74:5

### 7

**70** 26:18

**73** 29:15

### 9

**90's** 56:11

**95** 29:15

### A

**a-n-t-e-r-i-o-r** 64:23

**a.m.** 4:7
60:12,15

**abdomen**
37:17 38:1

**abdominal**
63:22
64:9,15

**ability** 9:1
12:13,20
61:1 66:1
78:1

**abnormal**
19:21

**Absence**
81:20

**absent** 55:19
73:22

| | | | |
|---|---|---|---|
| **abundant** 38:17 | **acknowledge** 80:18 | **aesthetic** 34:12 | 47:19 78:16 |
| **abuse** 7:2,3, 22 8:7,20, 21 9:15 10:4,8 11:1,15,16 12:7,8 13:4,6,9, 11,14,20, 22 14:1,4, 8,14,17 15:5,6,9, 17,19 16:7,21 17:12 28:7 49:18 | **active** 16:19 27:20 **actual** 22:15,24 34:23 35:2 40:9,13 46:14,21 47:15,20 48:9 51:10,20 69:21 70:7,14 71:8 82:19 **add** 61:6 | **affidavit** 48:16 49:6 50:15 **afraid** 58:20 **age** 21:6,9, 10,12,13, 15 22:15, 24 23:1, 12,13,19 26:7 28:25 29:14 31:17 32:7,21 34:23 35:3 39:5 43:12,19 46:4,9,15, 21 47:15, 20 48:9 51:11,20 54:3 69:21 70:14 71:8 80:14 81:15,18 82:1,7 | **agreed** 54:11 61:5 **ahead** 12:12, 19 **aid** 11:17 44:13 65:21,23 **aim** 30:10 **aimed** 13:21 **Air** 7:19 **alterations** 34:16,17, 21 **altered** 34:5 79:7 **altering** 22:7 34:11 40:6 80:4 **American** 8:10,11 11:5 15:11 26:23 27:3 **amount** 65:7 |
| **Abusive** 8:12 | **additional** 8:14 9:25 70:8 | | |
| **Academy** 8:11 27:3 | **administered** 11:4 | | |
| **access** 18:4 28:5,8 30:23 60:22 70:7 | **adolescent** 35:16,18 | | |
| **accommodated** 60:24 | **adult** 45:12 58:22 62:6,13 | | |
| **accuracy** 34:22 | **adulthood** 43:17 | **agencies** 13:2 | **Amy** 4:16 37:2 52:8 60:9 61:2 |
| **accurate** 22:20,23 | **adults** 29:2, 3,4 | **agree** 10:22 23:5 26:5 31:20 32:21 45:13 46:7,13, 20,22 | **Amy's** 32:24 |
| **accurately** 23:6 | **advantage** 58:13 | | **anatomical** 36:14,22 63:16 |
| **achieved** 54:1 | **advertised** 6:25 | | |

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025          Index: anatomy..baby

**anatomy**
63:21

**ankles** 53:6

**answers**
32:23

**anterior**
38:4,10
55:4 64:5,
17,23

**anterior/
posterior**
43:1

**anus** 41:23

**apologize**
63:10 71:2
76:24

**apparent**
23:12
51:17

**appearance**
21:10,12,
17 22:13,
21 23:2,
12,19 28:9
32:6,16
33:16,21
34:1 35:18
36:2,12,
22,23
37:13 46:8
48:10
49:12
51:14,15,
17,21,22
54:2,9,22

57:9 59:23
61:24
62:16
69:21
72:1,10,17
73:10
75:20,22
77:2,14,15
79:2 80:8,
15 81:14,
17 82:1

**appeared**
53:13
74:11

**appears**
30:10
46:24
51:14
52:3,4
53:2 59:7
67:20
71:14
74:15 75:1

**applicable**
10:23

**apply** 5:10
26:25 29:3
46:24

**applying**
26:11 46:2

**appointment**
38:12

**approaching**
20:15

**approximate**

62:13

**April** 4:6
18:3 51:4
68:6,12,18
69:11
73:25 74:5

**area** 39:21
42:23 59:2
65:2,11
66:13,14,
18 67:13,
14,15,16
71:23

**areas** 71:19
82:10

**areola**
42:21,23
43:6,10

**Armed** 27:16,
19

**article** 26:6
27:6 28:12
29:25
30:2,5,13,
24 31:21
45:5

**articles**
26:18,24

**Arts** 7:9,10

**Asia** 26:25

**assault**
16:7,22

**assess** 12:21
19:20

20:20 39:3
54:18,19

**assessed**
57:9

**assessing**
54:8,9
57:2

**assessment**
26:7 31:18
32:3 55:21

**assessments**
9:9 61:22

**assigned**
7:21

**assume** 5:3

**asterisks**
63:4

**astrological**
34:7

**attempt**
29:14

**attempted**
26:10

**attempting**
21:19

**avoid** 29:8

**aware** 21:24
22:3 24:8
34:2 50:1

———————
**B**
———————

**baby** 62:5

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025                 Index: Bachelor..care

**Bachelor**
  7:10

**back**  9:25
  10:20 21:1
  45:7
  57:10,12
  65:20
  68:11,15
  73:4

**background**
  7:7

**bad**  5:15

**base**  32:17

**based**  21:16
  28:10
  33:21
  57:20
  58:23
  67:25
  77:14 78:6
  82:16

**basis**  6:19
  10:14
  54:23
  55:12,14

**bear**  15:22

**bearing**
  35:14
  36:19 38:9
  39:16
  81:20

**beginning**
  4:3 42:24

**begins**  74:10

**behalf**  4:16

**behavior**
  29:8

**beings**  38:18

**belly**  41:16,
  19

**belongs**
  67:24

**Bethesda**
  7:13

**big**  55:8

**bigger**  67:24

**Bill**  74:22

**bio**  63:1

**birth**  42:17

**bit**  5:2
  36:16
  37:19
  42:22
  69:15

**blond**  40:18

**blonde**  72:2,
  3,5

**bloodstream**
  42:12

**blurry**  33:18
  67:10

**board**  10:4,7
  11:1,5
  13:4
  14:13,20
  15:11

17:12

**boards**  10:3

**body**  6:23
  36:14
  42:19
  62:10,11

**book**  44:6

**borderline**
  33:24

**break**  37:6
  52:8 57:11
  60:8,13

**breast**  20:12
  42:9,13,
  19,24
  43:5,11
  54:14
  67:13,15
  71:21
  82:1,8,18
  83:25
  84:12,19

**breasts**  42:1
  53:17,21
  81:10,21,
  23 82:13,
  21 83:6

**briefed**
  25:23

**bring**  15:21
  33:23,24

**bringing**
  24:5

**brunette**

72:7

**buds**  20:12
  42:9,13,19

**bumps**  74:13,
  22

**burst**  23:22

**button**
  41:16,19

_____

C
_____

**calendar**
  68:10,12,
  16

**calendars**
  68:7

**California**
  7:17 8:8
  9:14

**call**  15:12
  37:6 60:9
  63:24
  79:21 81:7

**called**  8:9,
  22 18:19
  19:2 37:17
  41:17
  82:12,18

**calling**  19:6
  54:7

**camera**  53:6
  57:16

**Camp**  9:13

**care**  6:18

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025                Index: cared..close

10:20,23
11:21
13:18
27:19
73:21

**cared** 8:1

**career** 16:5

**Carson** 4:18
22:11 47:3
61:5 63:17
70:3,18,22
71:2 85:8,
10

**case** 4:5
6:19 7:22
8:20,24
9:15,18
10:14
14:10
17:16,18
20:19,20,
23 21:17
24:20
25:2,14,21
26:1 27:1
35:24
36:20
49:25
59:17 70:8
71:6

**cases** 7:1
8:4 9:7,10
24:5 35:7
68:21,25
69:3 82:17

**catch** 6:1

**caveat** 49:7

**cell** 60:10

**center** 8:18
9:4 16:11,
20 27:16,
19

**certainty**
13:8 65:14

**certification**
11:2,16
14:14,20,
21

**certified**
10:7 17:12

**Chadwick** 9:4
16:20

**Chair** 7:21
8:23

**chance**
30:18,19

**change** 24:15

**changed**
18:20,22

**characterizati
on** 14:18
79:24

**charge** 8:19

**check** 68:22

**checked**
68:11

**chemical**
55:24

**chest** 43:2,
11 53:5,7,
20 57:16,
24

**child** 6:12,
14,17,22,
23 7:1,4,
21 8:1,7,
8,20 9:9,
15,21
10:3,8,10
11:1,15,
16,25
12:1,7,8
13:4,6,9,
11,14,20
14:1,4,8,
14,17
15:5,6
16:6,21
17:12
20:16,17
27:16,20
28:6,7,8
29:22
35:13
37:11
49:18 53:3
58:22

**child's**
10:17

**children**
8:1,12 9:5
14:24
15:13
16:20 39:2
49:22

**Children's**
8:10 9:5
16:8,20
24:6

**chose** 31:2

**chronicle**
32:7

**chronological**
21:13
23:1,11,19
32:7 35:3
43:12
46:4,15
80:14

**chronologicall
y** 21:6

**circumstances**
48:22
67:17
85:17

**citation**
31:21,25

**clinical**
19:10,11,
13 27:13,
22,23,25
28:1,5
38:22
43:13
55:21
82:23 84:6

**clinically**
55:9

**close** 18:12
40:17

clothes
  67:10

cold   42:15

colleague
  24:6 50:4

College   6:10
  7:9

colloquially
  5:24

comfort
  49:11

comfortable
  49:5 58:18

commanders
  8:25 9:16

comment
  59:10

commentary
  51:9

commissure
  37:24
  38:4,10

committee
  7:22 9:15

committees
  9:18

communicate
  47:9

communicated
  51:24
  67:18

community
  13:1

completed
  18:13

completely
  12:15

completion
  19:18

component
  11:6

composite
  50:25

computer's
  70:9

concern
  15:15,16,
  19 60:23

concerns
  15:21
  20:15
  45:21

conclusion
  28:21 30:7

condition
  13:12

conference
  7:25 8:7,
  9,12

conferences
  10:1

confined
  42:20

consequences
  29:9 49:19

considered

16:22
36:17

consistent
  77:15

constitute
  13:22

consult
  10:17,21
  17:14,18
  35:6

consultant
  8:24 9:15,
  17 10:16

consultation
  8:14

consulted
  14:2
  17:17,22
  28:9 68:25

consults
  6:24

content   63:2

continue
  37:14
  60:20
  84:22

continued
  8:15

continuing
  10:1 85:13

continuously
  16:25

contribute

12:22 17:9

copy   51:3
  85:5,6,9

Cornell   7:8

Corps   7:23
  9:16

correct
  13:23 14:8
  15:15,19
  22:4,9
  33:1,12
  35:7,24
  41:20
  43:20
  47:7,8
  49:19
  52:12
  53:8,14,22
  56:6,14,18
  57:6,16,20
  58:1,8
  60:5 61:12
  64:4,12
  65:4 67:23
  69:22
  70:1,4,25
  71:9,10
  73:7 74:3
  75:2,18,20
  76:16,19,
  21 77:4,6,
  11,16,18
  78:5,22
  79:3,8,13,
  18,21
  80:11 82:4
  83:2

**correctly** 13:15 17:18 29:5,10 50:22 58:14

**cosmetic** 75:13

**Counsel** 4:11

**counseled** 69:20

**countenance** 71:19

**counties** 7:3,5

**County** 24:11 69:3

**couple** 28:13

**court** 4:8,12 5:17 6:1 29:9 85:8,11

**cover** 7:3

**covered** 37:25

**covering** 53:21 67:10

**covers** 7:4

**crease** 39:20 63:23

**criteria** 67:8

**critically** 30:9,17

**crossed** 58:7 60:3

**CSAM** 45:22

**Cum** 7:11

**curriculum** 11:10

**cursor** 66:9, 12,13,19

**customary** 73:16 76:21

**cut** 49:1

---

**D**

---

**D-U-L-L-Y** 6:8

**Danny** 4:7

**data** 18:24 62:18,24, 25

**database** 58:19

**date** 4:6 68:9

**dated** 18:2

**DCF** 6:24 10:17 11:11,17

**deal** 25:7

**decade** 26:19 45:25

**decide** 15:22

**decided** 15:12

**decision** 32:17

**decisions** 14:7 49:13

**defendant** 5:5

**definition** 42:9

**degree** 65:10,16 80:10

**delay** 19:18

**delays** 19:21

**deliver** 6:19

**demonstrative** 44:13 45:6 65:20,23

**dentition** 62:5

**department** 17:3

**depend** 54:6 84:5

**depends** 54:16 58:3 62:1 83:3

**depict** 44:20

52:11 64:9

**depicted** 21:20 22:16 32:14 46:15 47:15 51:11 70:9,15 71:8

**depiction** 22:20 44:18

**depicts** 28:23 33:21 53:2

**depilatories** 54:17

**deposition** 4:3 5:4,9 60:21,25 61:1 84:23 85:21,25 86:1

**describe** 6:2 23:10 36:2 42:2 52:11,14, 23 78:9

**descriptive** 41:4

**Desert** 8:16

**designed** 11:10 19:8,13,17

56:20,21

**desktop**
27:15

**destroy** 57:4

**detecting**
29:22

**detective**
4:19 17:22
47:12
50:14
51:19,25
52:16 68:3
78:22

**detectives**
43:22

**determination**
14:5,16
15:1
32:10,13
48:23
50:10
54:24 65:7

**determinations**
7:2

**determine**
13:5 15:14
46:3,14
56:5,24
57:19 58:6
72:12

**determining**
73:1

**develop**
29:22

**developed**
9:3 37:12,
14 59:4

**developing**
37:15

**development**
20:8 36:9,
24 54:14
74:16
77:22 80:3
82:8,14,
18,19,22
83:7,11,
19,21
84:1,12,
15,19

**developmental**
51:15 54:2
81:14,16,
25

**deviations**
20:10

**diagnose**
84:7

**diagnosis**
79:21

**diagnostic**
14:5 83:1

**diagrams**
66:25

**dial** 45:9

**Dick** 45:17

**Diego** 8:7,
10,18,19

**difference**
21:14
39:2,18
40:7,11,
13,15
58:16,25
66:23

**differential**
79:21

**difficult**
5:21 26:6
31:17
32:3,4,5
40:20,21

**digital** 21:7
22:7 34:11
40:6,22
46:25
64:19

**digitally**
21:25 34:5
79:7 80:3

**direct** 4:24
11:13
24:22

**direction**
35:16

**directly**
43:2

**director**
6:14,17
16:9 17:3

**disagreed**
45:8 48:4,
6

**disagreement**
48:11

**disclosed**
28:12

**discounting**
30:13,16

**discoverable**
25:12

**discovered**
35:3

**discussed**
45:24

**discussion**
60:16

**discussions**
69:16

**disorder**
82:12
83:11

**disorders**
82:6

**distill**
14:25

**distinction**
7:11 13:21
21:18
38:24
40:21 60:6
64:3

**distinguish**
40:2 59:6,
21 64:11,
21 65:3,10
66:20

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 98 of 230 PageID 2850

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025Index: distinguishes..evaluations**

**distinguishes**
  40:4

**distinguishing**
  60:3

**distribution**
  60:5

**division**
  17:4

**doctor** 12:6, 24 71:2 76:9 78:25 79:20 80:20 85:14

**doctor/patient**
  10:12,19

**doctors** 12:3

**document**
  68:8

**documented**
  45:12

**documents**
  21:16

**domestic**
  9:17

**dot** 78:11

**drastic** 29:9

**drawing**
  44:22

**Duck** 78:11

**Duffy** 85:21

**Dully** 4:4,
17,20 5:1 6:8 12:10 24:18 30:4 45:11 47:24 57:14 59:16 60:17 61:20 66:10 76:24

**duly** 4:21

**duty** 7:18 16:19 27:21

───────────
**E**
───────────

**e-mail** 45:23

**E-TRAN** 85:7

**E.U.** 29:21

**earlier** 5:2 44:25 54:11 69:19

**early** 18:19 19:19 41:9

**earrings**
  53:3

**edited** 21:25 72:14

**Edition** 27:9

**education**
  10:1

**Edward** 7:12

**effect** 42:11 80:19

**effected**
  76:22

**effects**
  42:18

**effort** 72:12

**electrolysis**
  55:23 56:13,25 72:17,21 76:11 77:6,23 79:12

**emergency**
  9:23

**employ** 20:18

**employed** 6:9

**employer**
  16:4

**end** 13:9,10

**enforcement**
  6:25 10:18 11:11,17 23:16 24:5 33:7,15 35:7 47:10 50:14 61:22 67:3,18

**enlargement**
  42:22

**entails** 15:3

**entering**
  80:9

**entire** 29:25 38:3 54:13

**erred** 84:18

**eruption**
  62:6

**essentially**
  6:20

**establish**
  70:14

**established**
  74:25

**estimate**
  21:6,9,10, 20,21 23:19 28:9

**estrogen**
  42:8,11,18 82:7

**evaluate**
  53:16

**evaluated**
  81:9

**evaluating**
  40:16 60:2

**evaluation**
  24:6,10,16 26:24 38:19

**evaluations**
  24:7

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025    Index: evidence..floor

**evidence**
12:21
79:7,13
80:19

**exam**  14:25
43:13

**EXAMINATION**
4:24 10:7

**examine**
10:13

**examiner**
16:7,22

**exhibit**
31:13
45:3,7,12
50:25
85:23

**exist**  13:4

**expect**  50:13

**expensive**
76:11

**experience**
14:22
17:13

**expert**  5:6
15:6 26:1
45:5 49:18
56:5

**expert's**
31:9

**expertise**
13:5 14:15
72:15,17,
20 73:1

**experts**  6:24
29:7

**explain**
33:14 72:2
79:23 83:2

**explains**
77:22

**explanation**
43:23
48:10
76:1,2,3,5
77:1

**explanations**
75:18
79:1,16

**explicitly**
51:19

**expose**  53:6

**exposed**  42:7

**exposure**
82:7

**external**
36:17

**eye**  30:9,12

---
**F**
---

**face**  71:22

**fact**  11:22
29:1
32:11,15

**factor**  36:9,
11 60:4

**facts**  60:1

**factual**
32:13

**faculty**  9:19

**fair**  13:3
14:17 28:1
34:19
47:20
61:2,3
79:23

**familiar**
29:13
31:15
56:13

**Families**  9:5
16:21

**family**  8:22

**fault**  60:17

**February**
18:2,5
50:21
57:15
68:6,13,
14,15 69:8

**Fed**  7:14

**feet**  53:4

**fellowship**
9:6,25
19:6 23:25
24:2

**fellowships**
9:2

**female**  37:11

41:11
43:13,18
53:3 82:21

**females**
35:23,24
36:2 41:6
45:12

**fetus**  42:11

**field**  9:8
10:5

**figure**  69:6
84:7

**file**  67:24
78:10 81:7

**files**  48:21

**fills**  38:3

**find**  18:6
29:20
30:3,5
68:15

**fine**  28:15
40:17
66:6,7
85:1

**finished**
9:12,24
49:1,2,4

**finishes**
82:9

**flat**  42:13,
14

**floor**  53:4
57:24

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 100 of 230
PageID 2852
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025          Index: Florida..globular

**Florida**
  6:10,15
  7:5,20
  16:1,4

**focus**   40:17

**fold**   63:25
  64:1,2,16

**follicles**
  40:14
  73:6,9

**folliculitis**
  73:3  74:14

**follow**   57:10

**Forces**
  27:16,19

**forensic**
  28:16  29:7

**form**   10:12,
  25  11:3,7,
  12,18
  12:4,9,18,
  25  13:7,
  16,24
  14:9,19
  15:8  16:18
  17:8,20
  18:18
  19:3,9,15,
  25  21:8
  22:1,5,10,
  25  23:9,
  20,24  24:4
  26:4,13
  29:24
  30:6,15,

  21,25
  31:3,23
  32:2,18,22
  33:9  34:6,
  13,25
  35:11
  38:21  39:7
  40:8,12,23
  41:13
  43:14,21
  44:1  46:5,
  17  47:2,22
  48:12,17
  49:8,21
  50:2,8
  53:23
  54:5,25
  55:25
  56:7,25
  57:7  58:2,
  9  59:9,24
  63:13
  64:13,22
  65:5,13
  66:22
  67:22
  70:2,18
  73:20
  74:19,23
  75:8,19,24
  76:4,7,20
  77:12,24
  78:13,18,
  23  79:10,
  12,14,25
  80:4,12,23
  81:19  83:9
  84:2,8

**formal**   19:4

**format**   7:25
  8:12

**forming**
  20:23
  62:24

**forward**
  48:23
  49:13
  61:10

**found**   68:12

**Friday**   26:2
  37:6

**front**   37:21
  38:10  50:7
  52:7  65:1

**full**   6:6

**fully**   37:12
  59:3

**function**
  19:23
  20:3,5

**functioned**
  8:23

**funded**   29:21

_____

          **G**
_____

**gave**   50:12
  70:25

**general**   10:2
  13:17
  17:15  18:9
  44:2  52:19

  57:13
  61:16
  73:22
  76:12,13

**generally**
  36:25
  44:24

**genital**
  36:1,8,24
  51:15
  54:2,15
  71:23

**genitalia**
  53:6

**genitals**
  37:10
  53:15
  81:11

**Giddens**
  26:21

**girl**   37:12

**girls**   26:23
  42:12

**give**   30:18
  33:2,8,15
  34:1  35:2
  36:7  37:4
  41:25
  43:23,24
  47:14  67:5
  84:21

**giving**   75:6

**Global**   4:10

**globular**

Case 3:24-cv-00044-JAR-SJH  Document 86-6  Filed 09/12/25  Page 101 of 230
PageID 2853
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025          Index: good..hold

43:8

**good**  4:2
10:9 27:6
33:18
80:21
81:22
82:10
84:22,25
85:10

**grade**  37:9,
18,19
38:2,3,14,
15 41:19
42:3,4
43:13,18
59:1,7,8,
22 60:4
64:11,21
65:3,4,6,
11 66:12
82:21 83:6

**grade-**  37:9

**grades**  36:3,
4 42:1

**graduated**
7:8,10,12

**grandmothered**
10:5

**grappling**
14:7

**Greater**  82:4

**groom**  39:6

**groomed**
22:19 40:1

56:5,6
57:4

**grooming**
22:18,22
39:25 40:6
46:25
54:7,9,19,
20 56:14
73:18

**groove**
63:17,18,
23 64:2

**ground**  5:10

**group**  16:10

**grow**  41:7
73:4

**grows**  41:6

**growth**  73:11
75:2,3

**guess**  36:22
44:12 48:1
72:6 74:17
80:16 81:2

**guys**  66:4

---

**H**

---

**H-E-B-E-R-T**
7:12

**hair**  20:13
22:4 36:5,
8,9,23
37:10,15,
16,19,22,
25 38:9,16

39:15,16
40:14
41:1,6,12,
18 54:15
55:1,3,4,
7,15,16,
17,18,24
56:1,2,25
57:1,2,3,
6,8 58:7
59:1,2,3,4
60:2,4
64:12 65:8
71:15,23
72:3,9,17,
23 73:6,11
74:16
75:2,3,12,
13,16,17
76:11
77:2,10,23
79:2,8,12,
13 80:4,20
81:14,20
82:14,22
83:18,25
84:12,14

**hairs**  38:1
73:3

**half**  16:2
60:8 81:17

**hallway**
68:20

**hang**  24:18

**happened**
33:11

**happening**
83:2

**happy**  25:14,
21

**hard**  49:3

**head**  5:25
6:3 62:10
72:7

**healed**  73:9

**hear**  70:23

**heard**  28:17,
19

**Hebert**  7:12

**height**
62:11,14,
19

**helpful**
44:12,15
60:6 63:2

**helping**
12:21

**heritage**
54:16

**Herman**  26:21

**hesitate**
5:15

**highlights**
81:4

**hip**  63:23

**hire**  6:20

**hold**  56:4
73:23

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 102 of 230
PageID 2854
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025        Index: Holguin..injuries

Holguin  4:8

home  12:8

Hong  26:25

hospital
  7:17 8:10
  9:6,13
  16:8,11
  69:3

hospitals
  10:18

hour  60:8

human  38:18

hundred
  65:14

Huseby  4:10

hymen  36:12,
  20

hypothetical
  58:24
  59:15,17
  61:8,14,
  15,18,21
  63:9,10
  71:12

hypothetically
  59:19
  75:25
  77:19

---
**I**
---

idea  20:9
  47:9

identify

20:10

II  36:5
  37:17
  42:6,10,21

III  36:5
  37:18,19
  42:6,10,24

illnesses
  13:14

ima-  51:11

image  22:13
  23:2,13,18
  32:14
  33:17,20
  35:1
  40:16,22,
  24 44:19
  45:6 46:16
  47:16
  49:15
  52:12,22,
  24 53:2
  55:19,22
  56:24
  57:12,13,
  21,23
  58:3,4,5,
  13,17,19,
  24 59:10,
  14,19,25
  61:15
  62:2,25
  64:8,20
  66:21
  67:9,24,25
  69:9 71:14

72:4,8,13
  74:9 75:25
  77:18
  78:3,4,16
  79:2,6
  80:4,18,25
  81:7,8

images  24:17
  26:12
  27:19 28:8
  29:15
  33:18,24
  34:4,11,
  15,16
  35:15,23
  37:1,4
  40:10 46:3
  47:13 52:7
  61:9,11,
  12,17
  62:9,12,
  14,16
  69:12,14
  70:9 71:9,
  13 81:2

imagine
  38:20

impact  34:22

impossible
  29:1 57:18
  58:6 59:6
  64:10,20
  65:3

impression
  26:3 34:3

imprinted

74:9

include  51:9

included
  62:20,22

inconsistent
  43:19

indication
  35:2

individual
  21:20
  22:15,24
  47:15 48:9
  51:21
  72:21

individuals
  21:6 40:19
  70:15 71:8

infant  37:13
  42:8

information
  47:14
  62:15,16,
  19 67:25
  70:8,10

informed
  50:3,4

inguinal
  39:19
  57:25
  58:5,7,10
  63:11,12,
  18,25
  64:1,15

injuries

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 103 of 230
PageID 2855
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025          Index: injury..knew

13:13

**injury** 13:13

**instance** 20:11

**instruct** 24:24 25:6

**instructing** 25:16,17, 19

**intend** 61:14,19

**interacted** 23:15

**interface** 11:10

**interior** 37:24 64:20

**internal** 36:14,16

**international** 28:16

**internet** 23:23 32:15 34:4 46:3,16 66:21 78:4,5,12, 16

**internship** 7:16

**interrupted** 32:24

**introduce** 4:11

**introduced** 5:1

**inverted** 38:12

**investigate** 33:25 50:17

**investigated** 58:21

**investigation** 17:25 32:19 70:4,5,11 77:25

**investigations** 11:17 35:4 45:22

**investigators** 13:2

**involve** 38:15 82:7

**involves** 13:1

**involving** 38:5

**Iraq** 16:23

**irrespective** 46:24

**issue** 25:23 26:7 31:17 45:20

60:18

**Ithaca** 7:9

**IV** 36:5 38:2,3,14, 15,24,25 40:2,4,7, 22 41:10 42:1,3,25 43:4,6,13, 16,18 44:23 45:13 53:14 54:2,4,12 58:16 59:1,7,22 60:4 64:4, 11,21 65:3,6,11 66:12,13, 20 81:11, 23 82:21 83:25 84:16

**J**

**Jacksonville** 6:11 7:20

**jail** 49:25

**January** 8:7

**jaundiced** 30:9,12

**job** 5:19 8:3 14:8 35:6 58:20

80:22

**John's** 69:2

**Johns** 17:22

**join** 22:11 38:6 47:3 70:3,19

**journal** 28:17,18 30:11,16, 17 31:21

**journals** 27:11,12

**judge** 39:14 50:7,9,16

**jury** 50:10

**K**

**KASS** 53:23

**Kathleen** 4:4,20 6:8 85:21

**kids** 11:21 13:18 20:14 33:23,24

**kind** 44:23 71:11 79:21 82:12

**knees** 53:5, 7,20,21 57:16,23

**knew** 78:4

**knowing**
  21:13

**knowledge**
  26:9 27:1
  68:21
  72:19

**Kong**  26:25

**Krugman**
  31:14
  45:13,16,
  17,18
  47:19
  48:11
  54:12

**Krugman's**
  45:8

— L —

**labia**  37:12,
  20,23 38:4

**lace**  53:4

**lack**  77:22

**lafay**  41:21

**laptop**  52:22

**largely**  61:8

**larger**  44:24

**laser**  76:11

**lasted**  75:5

**late**  28:24

**Laude**  7:11

**law**  6:25
  10:17

11:10,17
23:15
24:5,20
25:2,5,14,
21 29:9
33:6,14
35:7 47:10
50:13
61:22
67:3,18

**Lawshe**  4:5,
  15 17:19,
  25

**Lawshe's**
  26:1

**lay**  55:5

**laying**  12:10

**leads**  35:12

**learn**  19:1

**learned**  8:2
  17:24 19:1

**leave**  56:2,
  16 79:13

**Lee**  4:4

**left**  47:13
  63:8

**legal**  11:6
  30:11
  32:10
  49:19

**legs**  38:8,
  11 53:5,21
  64:24

**letter**  18:5
  45:11
  51:2,9
  52:23
  73:24

**letters**  18:2
  50:13 51:2
  63:3 73:14

**level**  39:6,
  21 65:14
  79:17

**levels**  9:21
  13:8

**life**  12:2
  54:13

**likelihood**
  7:2

**limitation**
  23:6,10
  32:20

**limitations**
  33:7 45:21
  46:8 49:10
  51:10,13
  69:20
  82:16

**Lisa**  4:9

**list**  45:20,
  23

**literature**
  8:5 14:23

**Litigation**
  4:10

**local**  35:13

**location**
  39:16
  64:14

**logistical**
  60:18

**long**  15:25
  21:2
  23:15,17
  41:24
  43:12 75:4

**longer**  37:21
  42:14

**looked**  27:17
  33:24
  48:22
  52:24

**lose**  49:22

**lot**  5:23
  14:21
  28:15
  34:2,15,16
  84:24

**loud**  29:6

**lower**  53:5

— M —

**m-e-d-i-a-l**
  64:24

**M.D.**  4:20

**made**  8:19
  24:2 35:15

**main**  63:1

**major** 32:20

**majora**
37:12,23
38:4

**make** 17:9
22:8 27:23
32:10,13
33:3 40:21
54:24
72:12 74:3
85:17

**makes** 77:20
80:2

**making** 12:14
13:21
14:16
38:23 45:2
49:12
61:21 75:9

**male** 42:8

**maltreatment**
7:1 8:2,8
9:10,21
11:25

**manipulated**
72:13

**manipulation**
47:1

**Marine** 7:23
9:16

**mark** 31:12
45:4 50:24

**marked** 85:24

**Marshall**
18:22
26:17

**Mary** 6:8

**Maryland**
7:13

**material**
26:8 28:23
31:18

**Matt** 4:18
60:23 61:2

**matter** 4:4

**matters**
49:11

**mature** 28:24
29:4 84:20

**maturity**
18:10,11,
16,23
19:16,24
20:19,22
21:3,5
26:12,20,
22 27:13
28:10
33:22
35:21
36:3,4,10
41:8 42:7,
10 43:7,24
59:23 60:5
61:25
67:6,20
68:1
71:16,17,

24 72:9
82:6

**means** 16:14
44:12

**meant** 37:5

**measures**
24:20
25:2,10

**Med** 7:14

**media** 4:3

**medial** 64:6,
17,24 65:1
66:24

**medical**
6:14,16,18
7:14 8:4,
14,17,24
9:9,14,20
10:1,23
11:4 12:24
14:10
15:21 16:9
17:3 28:18
29:7
30:11,17
55:14,20,
21 56:4
70:15 71:7
78:2,21,25
79:20

**medical/legal**
11:2

**medicine**
6:11 7:13
9:23 15:7

**meet** 42:25
43:22

**meeting**
52:15,18,
20 69:8,
11,16,17

**meetings**
68:8

**meets** 64:10

**member**
45:19,20

**met** 43:25
44:3 52:17
68:3,17,19

**method** 40:5

**methods**
61:24

**Michael** 4:14
5:2 24:19

**middle** 18:12
42:16
64:17

**midline**
41:21
42:25

**Mikayla** 4:5

**military**
7:14,22
8:25 9:2
16:19
27:16
76:9,13,
14,15,17,
19 83:10

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 106 of 230
PageID 2858
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025        Index: mind..objection

**mind** 70:22

**mindful** 5:19

**minor** 32:15 33:23

**minute** 52:8

**mischaracteriz ation** 13:24 20:1 31:3, 23 34:13 47:22 56:7 76:7 77:12 80:12 84:2

**mischaracteriz e** 55:8

**misleading** 69:25

**missing** 12:15 48:2 62:7

**mixed** 62:5

**modalities** 22:4

**modality** 28:4

**model** 32:14 34:24 41:11 46:15,21 51:11 57:15,19 58:7 61:25 71:14 73:14 76:19

79:1,17 81:18

**models** 22:3

**modifications** 54:7

**modified** 35:15

**monitor** 19:17

**mons** 37:24 38:5,9

**month** 28:12

**months** 28:13

**moonlight** 16:14

**moonlighted** 16:16

**moonlighting** 16:22,24

**morning** 4:2

**mound** 42:23 43:4,5,10

**mounds** 43:4, 7

**move** 48:23 49:13

**moved** 8:17 9:13

**multi-problem** 8:22

**multiple** 22:4 69:12

79:1

_____

**N**
_____

**naked** 53:3

**Nassau** 24:11

**Naval** 7:16, 19 8:17 9:13

**Navy** 7:23 8:6,9,17 9:4,12 16:3

**necessarily** 35:2 40:18 82:5 83:3, 14

**Nelson's** 27:9 44:8

**newborn** 42:9

**newborns** 20:6 42:6

**newspaper** 50:4,5

**Nick** 58:19 78:6,9

**night** 26:15

**nights** 46:11

**nipple** 42:15,20 43:6,9

**nod** 5:25 6:3

**normal** 12:2 20:7,10, 11,13,17 82:15,16, 21 83:12, 13

**northeast** 7:4

**Nos** 85:23

**Noshney** 26:18

**notch** 39:20 57:25 58:5,8,11 63:11 64:1

**nuance** 48:2

**number** 4:5 34:7,8

**numbers** 34:17 63:3

_____

**O**
_____

**O.JPG.** 81:8

**Oakland** 7:17

**oath** 4:22 5:10

**OB/GYN** 9:22

**Object** 70:18

**objected** 12:17

**objection** 30:2 32:24

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 107 of 230
PageID 2859
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025   Index: objections..pediatric

33:3 56:19

**objections**
  12:14 56:3
  77:17

**obscure**
  57:24

**obscured**
  58:5
  67:15,16

**observing**
  79:23

**obvious**
  39:17
  40:19
  51:13

**occasionally**
  62:15

**occur** 70:4,6

**occurred**
  20:21

**occurring**
  70:11

**offered** 8:9
  77:8

**offers** 7:1

**office** 17:23
  27:25
  60:18

**officer**
  50:14
  67:3,18

**officers**
  33:7,15

**official**
  85:13

**online** 26:12
  29:23

**opine** 67:19

**opinion**
  14:16
  22:8,9,13,
  14,21,23
  23:6,11,12
  32:16,17,
  21 33:15
  34:23
  48:6,7,8
  49:10,18
  50:1 51:10
  53:10,13
  55:5,6,13,
  14,20
  61:24
  62:24 67:5
  71:7 75:7
  77:9,21
  78:21
  81:10

**opinions**
  20:23 33:8
  35:9 36:19
  48:4,15
  49:5,23
  50:6 69:20
  70:1,14
  80:9

**opio-** 73:14

**opportunity**
  9:11 20:20

29:25
61:10

**order** 85:5

**orders** 85:3,
  4

**original**
  26:17

**originally**
  48:3

**orthopedics**
  9:22

**Outlook**
  68:9,11

─────────

        P
─────────

**p.m.** 85:22
  86:2

**pale** 42:15

**palpable**
  42:14

**papilla**
  42:16
  43:6,9

**paragraph**
  74:8 81:6

**parents**
  14:24
  20:16
  49:22

**part** 11:9
  14:5 36:15
  37:24
  49:25

70:11,13
75:14,16
82:5

**parted** 53:6

**partially**
  81:10

**participate**
  17:5

**parts** 38:9
  39:16
  43:17
  81:20

**pass** 10:6

**passed** 10:2
  14:21

**passing**
  46:11

**past** 83:23

**pasted** 51:3

**patient**
  10:12
  20:21
  27:25
  40:9,13
  46:9 80:24

**patients**
  10:11
  16:12
  19:22

**PDF** 51:1

**pediatric**
  7:15 10:3
  27:12 44:8

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025    Index: pediatrician..practice

**pediatrician**
 7:19
 10:17,20
 13:14,17
 14:13
 16:7,17,21
 19:20
 27:24 44:3

**pediatricians**
 17:12,13
 19:5 20:2,
 5 24:7
 29:14

**pediatrics**
 8:11 9:22
 10:8 11:5
 15:9,12
 27:3,10
 28:7 44:9

**Pedo** 31:18

**pedo-
pornographic**
 26:7 28:23

**pelvis** 38:6

**pen** 44:22

**Pendleton**
 9:13

**Penkacik** 4:9

**people** 6:20
 8:24 9:7
 10:13
 15:20
 30:3,4
 39:5
 41:15,24

 49:4

**percent**
 29:15
 43:15
 65:14

**perfectly**
 25:11,12

**period** 73:8
 75:1

**person** 17:10
 32:10
 33:16
 51:11 70:9
 71:19 72:2

**person's**
 17:21 43:2

**perspective**
 78:3

**ph** 26:18
 41:22

**photograph**
 21:21 22:7
 51:12 54:9
 67:21

**photographs**
 21:7,17,25
 27:4 28:3,
 4,10
 60:19,22
 82:16
 84:23

**physical**
 8:21

**physician**

 76:13,16,
 17

**physicians**
 17:2

**picture** 64:8
 71:22
 72:22 73:2
 78:9 80:5
 83:4

**pictures**
 83:5

**pin** 35:20

**pink** 42:23
 43:10 53:3

**pixilated**
 67:9

**plainly**
 37:21
 81:12

**plaintiff**
 4:15

**plaintiff's**
 50:24
 85:23

**point** 45:14
 61:9 67:2
 84:22

**points** 11:20

**policies**
 17:7 24:16

**ponography**
 29:22

**population**

 26:23

**pornographic**
 21:7 23:18
 26:12
 28:23
 29:14
 31:18
 32:14
 46:3,16
 56:23
 66:20

**pornography**
 54:10
 58:22

**position**
 15:21
 25:14
 53:5,7

**positions**
 9:20

**possession**
 68:7

**possibility**
 46:25

**Post** 82:3

**posterior**
 41:15,22

**potentially**
 68:20 80:1
 84:19

**Practically**
 39:22

**practice**
 10:22

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
Kathleen Dully, M.D. on 04/28/2025  Index: precocious..publication

11:20
24:15

**precocious**
82:17

**predicate**
21:4

**pregnant**
43:16

**prepubescent**
75:18,20
76:3

**presence**
59:2
75:12,13,
15

**present**
12:21
43:13
54:12
55:4,19
57:3,8
73:21
83:24

**presentation**
64:12 65:4

**presented**
71:13

**Preston**  4:5,
19 47:12
50:14
51:19,25
52:16 68:3

**pretty**  51:17

**primary**

10:20

**primer**  43:25

**principles**
61:16,23

**print**  28:15

**printed**  63:1

**prior**  13:25
19:25 20:1
31:4,24
34:14
47:23 56:8
76:8 77:13
80:13 84:3

**privilege**
25:8

**probable**
5:14 48:15
49:6 50:15

**problems**
6:19

**procedure**
75:13

**procedures**
17:7

**process**  14:6
73:6

**produce**
80:19

**produced**
42:18 71:6

**Professional**
8:11

**progress**
19:17

**progressing**
18:13

**Project**
29:21

**prominent**
69:6

**proportion**
62:8,10,19

**propose**  9:1

**Protection**
6:13,15,
17,22,23
7:4 10:10
27:17,20

**protruding**
42:16

**prove**  33:22

**proves**  29:1

**provide**  13:5
25:13

**provided**
31:7,21

**pubertal**
27:4 37:10
53:3 77:22
80:2 82:3,
14,19,22
83:7,18,
21,25

**puberty**
18:12,13

19:18,19,
22 20:8,15
35:18
79:18
82:10

**pubic**  20:13
22:3 36:5,
7,9,23
37:14,15,
19,22,25
39:15,20,
21 41:1,5,
12,18
54:15 55:4
57:3,6
59:1,21
60:2,4
64:12 65:8
67:14,16
71:15,23
72:3,8,22
73:11
74:15
75:2,12,
13,15,17
77:9,22
79:2,7
80:20
81:13
82:22
84:11,14

**pubis**  37:24
38:5,10

**publication**
26:19
27:3,15

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
Kathleen Dully, M.D. on 04/28/2025    Index: published..recorded

**published**
  30:3 34:4
  50:3

**pull**  50:20
  65:20
  74:1,2,4

**pulls**  73:5

**purported**
  14:15

**purpose**
  11:16,19

**purposes**
  34:12

**pursue**  8:15

**put**  15:13
  35:20
  53:19
  54:1,3
  63:6

**putting**
  17:14

───────────
        **Q**
───────────

**qualified**
  13:13

**quality**
  33:19
  66:23

**quantity**
  65:7

**question**
  5:12,15,
  16,18

  12:12,13,
  18 15:2,4
  23:2,16
  24:21
  25:18,20
  32:12
  33:12
  38:22
  41:25 42:5
  46:10
  47:24,25
  50:11,12
  51:8 55:10
  59:15
  72:25
  75:11,14,
  16 77:8,20
  80:16
  81:16

**questions**
  5:3,11
  18:9 24:23
  44:4 58:23
  59:12
  60:20,24
  61:7 71:12
  81:3 84:25

**quick**  52:10
  57:12

**quote**  50:15

───────────
        **R**
───────────

**ra-**  82:1

**radiology**
  9:22

**Rady**  9:5
  16:8,20
  24:6

**raised**  45:22
  60:23

**range**  82:2

**rating**
  18:10,11,
  23 19:16,
  24 20:19,
  22 21:3,5
  26:12
  27:13
  33:22
  35:22
  36:4,10
  42:7,10
  43:7,24
  57:5 59:23
  60:5 61:25
  66:19
  67:6,20
  68:1
  71:16,17,
  25 72:9
  82:6,13
  84:12,13

**ratings**
  26:20
  46:2,14

**re-ask**  32:12
  71:4

**reached**
  79:17

**read**  25:25
  26:6

  28:21,22
  29:4,6,10,
  25 30:9,
  12,14,17
  31:10
  52:25 81:9
  85:11,14,
  16

**readily**
  36:17

**reading**  8:4

**real**  35:12
  52:10

**reason**  19:23
  24:24
  71:15 72:6
  73:13
  76:18 77:9

**reasons**  25:6

**rec-**  68:4

**recall**  68:3,
  24 69:7,8,
  11,16

**received**
  72:21

**recommendation
s**  17:10

**record**  6:7
  12:11,14
  52:14
  60:11,14,
  16 85:22

**recorded**
  85:20

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025              Index: records..run

records   68:4

red   72:7

redevelop
  42:19

reference
  20:15
  31:19
  44:5,6

referred
  18:14

referring
  63:19

refute   77:25

region   7:23
  36:8  59:21

related
  52:23

relationship
  10:12,19

relevant
  24:23  25:1

reliability
  26:11
  34:23
  65:10
  80:10

reliable
  22:9,12,
  14,23
  32:16
  46:14
  47:14  71:7

reliably

67:5,19

relied   62:18
  84:11

remedial
  24:20
  25:2,10

remember
  19:5  46:6
  48:4
  52:15,17,
  18,20
  68:14  69:5

removal
  55:24
  56:25
  57:1,2
  72:18
  79:12  80:4

remove   22:3
  79:7

removes
  55:18

render   22:8

rendered
  71:7

rendering
  61:24

rephrase
  5:13

report   15:20
  26:1  31:9,
  14,22
  45:5,8,9
  50:22

62:20,22
  63:6  74:6

reported
  15:22

reporter
  4:9,12,21
  5:17  6:2
  85:8,11,24

reports   71:6

represent
  51:2

representing
  4:18

request
  61:22

required
  15:14

reschedule
  60:22,25

research
  26:11

reset   61:1

residency
  7:16

resident   8:3

residents
  9:20

respect
  81:13

response   6:1

responsible
  13:1  17:6

restate   47:5

result   72:9

results
  56:17

retired
  16:23

return   16:23

revert   43:16

review   7:22
  8:20  9:15,
  18  27:1
  81:6

reviewed
  27:7  35:24

reviewing
  26:14

reviews   8:25

Roberts
  4:14,25
  5:2  24:22
  25:4,11,
  16,23  30:1
  37:8  45:4
  61:13
  65:25  66:6
  74:5  84:21
  85:2,4,12

roughly
  41:14  45:1
  59:4

rule   75:6

rules   5:10

run   83:1

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025        Index: rundown..Shevlin

rundown
  41:25

running
  66:19

_____
        S
_____

San   8:7,10,
  18,19

scheduled
  69:13

school   7:13,
  14

Science
  28:16

Sciences   7:9

scientific
  23:3 46:2,
  20 54:23
  55:6,12,14
  61:23

scientifically
  46:13 65:9

Scott   31:14
  45:18

screen
  28:11,14
  66:1
  78:10,12

script   5:14
  74:10

scroll   74:7

search   48:16

section
  59:20

seek   48:16

semantics
  76:23,25

sense   73:22

sentence
  54:19

separate
  43:5

serve   45:23

served   7:20
  9:19

serves   45:20

set   61:23

setting   12:8
  17:6
  19:10,11
  27:13,22,
  23,25
  82:23 84:6

sex   16:7,21

sexual   8:21
  18:10,11,
  15,23
  19:16,24
  20:19,22
  21:2,5
  26:11,20,
  22 27:12
  28:10
  33:22
  35:21
  36:3,4,10

42:7,10
43:6,23
59:22 60:5
61:25 63:2
67:5,20
68:1
71:16,17,
24 72:9
82:6 83:11

sexually
  28:24 29:4

shape   38:4,8
  41:11 43:8
  59:4

share   18:7
  28:11
  31:12
  50:21
  68:20 74:6

sharing
  53:11

shaved   39:3
  51:16
  54:21
  55:2,13
  59:2
  73:15,16,
  18,21
  74:11
  76:10,12,
  13 77:5

shaving
  39:13,17
  54:16
  55:18
  56:9,14,17

72:16
74:13

Sheriff
  24:11

Sheriff's
  17:23

Shevlin   4:16
  10:25
  11:3,7,12,
  18 12:4,9,
  17,25
  13:7,16,24
  14:9,19
  15:8 16:18
  17:8,20
  18:18
  19:3,9,15,
  25 21:8
  22:1,5,10,
  25 23:9,
  20,24
  24:4,18
  25:1,9,13,
  19 26:4,13
  29:24
  30:6,15,
  21,25
  31:3,23
  32:2,18,22
  33:2,9
  34:6,13,25
  35:11 37:5
  38:21 39:7
  40:8,12,23
  41:13
  43:14,21
  45:2 46:5,

17 47:2,22
48:12,17
49:8,21
50:8 54:5,
25 55:25
56:3,7,19
57:7 58:2,
9 59:9,24
60:10
61:3,6
63:13
64:13,22
65:5,13
66:22
67:22
70:2,19
73:20
74:2,19,23
75:8,19,24
76:4,7,20
77:12,17,
24 78:13,
18,23
79:10,14,
25 80:6,
12,23
81:19 83:9
84:2,8
85:1,6,16

**Shevlin's**
60:18

**Shield** 8:17

**ships** 46:11

**shortly**
23:21

**shot** 78:10,

12

**show** 44:4,
6,10 58:24
59:19

**showed** 52:22

**showing**
81:13

**shown** 30:8

**shows** 29:13
67:25

**sic** 54:18
68:18

**side** 38:11
43:3 59:3
66:4 84:18

**sign** 20:9

**significance**
41:2

**significant**
34:22

**signs** 17:11
56:2

**similar** 51:5

**simple** 69:23

**single** 43:8
69:8

**sir** 65:24

**sit** 10:6
18:4 34:9
69:9

**sitting**
57:16,20,

24

**size** 62:10,
11

**skin** 73:6

**slowly** 9:3

**small** 42:13

**SMR** 18:15
20:7,12
23:18
37:17
42:17,21
45:13,21
46:2,14,24
53:14
54:2,4,12
57:5 66:19
80:21
81:11,13
82:13
83:25
84:12,16

**Society** 8:12

**socks** 53:4

**solely** 13:20

**solve** 6:19

**sort** 19:22
23:22
26:20
34:11 80:4

**sound** 27:11
84:25

**sounds** 53:24

**speak** 5:20,

24

**speaking**
30:2 36:25
39:22

**special** 24:1

**specialist**
10:8 14:8

**specialized**
9:2,11

**specialty**
10:3,4
12:7
13:15,20
14:18
15:12
16:10 17:1

**specific**
61:11

**specifically**
14:14

**spectrum**
13:9,10

**speculation**
12:4 19:15
34:25 39:7
48:12
55:25
56:19
74:19,23
75:24
76:20
80:6,23

**spend** 65:18

**split** 65:25

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025          Index: spoken..talking

66:1

**spoken**   70:23

**spread**   81:12

**St**   17:22
69:2

**stage**   27:4
41:10  62:6

**staging**
18:15,20
19:2,23
27:12

**standard**
10:23  27:8

**standing**
62:12

**standpoint**
70:16

**start**   18:8
19:22  24:2
28:22  36:1

**started**
83:14

**starting**
73:4

**starts**   37:15
42:18  82:8

**state**   6:6
21:19
58:12

**statement**
13:3  35:21
47:21
49:12

74:12  75:9

**stating**
18:11  46:8
48:8

**station**
7:18,20

**step**   50:18

**sternum**
42:25

**STEWART**   44:1
50:2

**stop**   11:21,
24  12:3,7,
20  30:1
53:11

**stopped**   12:1
83:15

**stopping**
12:22

**stops**   12:23

**straight**
41:21

**structure**
36:21

**structures**
67:11,12

**struggling**
21:18

**studies**
18:21

**study**   28:4
29:1,13,21

**studying**   8:4

**stuff**   84:24

**subcommittees**
8:21

**subject**
17:25

**subjective**
38:19  65:7

**subjects**
7:11

**subsequent**
24:19
25:2,10
85:24

**Subsequently**
17:24

**suggested**
46:1

**summarizes**
27:4

**summary**
61:2,4

**supervise**
6:18

**supervision**
9:7

**supposed**
41:7

**surface**
30:10  64:6
65:1

**surprise**
29:16,19

**suspect**   50:6

**suspected**
6:25  9:9

**swear**   4:12

**Switzerland**
26:24

**sworn**   4:21

**syllables**
32:8

**synonymous**
18:17

---

**T**

---

**tables**   30:7

**takes**   42:12

**talk**   33:4
35:23
37:2,5
52:8  72:16

**talked**   57:14
69:15

**talking**
12:24
15:16
37:10
40:9,10
47:19
51:20,21,
22  52:3
58:11  61:9
63:16
64:3,5
65:18
66:14

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 115 of 230
PageID 2867
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025                Index: Tanner..top

76:23,24

**Tanner**
18:14,15,
20,22
19:2,23
20:6,12
26:17

**Tanner's**
18:24

**Tanners**
27:12

**taught**  14:24

**teacher**  9:20

**team**  6:13,
15,17,22,
23 7:4
8:24 10:10
17:5 69:2

**technically**
16:9

**teen-age**
20:16

**teenagers**
28:25

**teeth**  62:4,
5,6,7,19
67:23

**term**  16:13
37:13
63:16,21
73:17
76:13

**terminated**
86:1

**terms**  8:13
18:16
21:15
35:22
36:23
59:22
72:10

**test**  15:3
19:7,14

**testified**
4:22 44:19
51:18
54:11
58:15
69:19
76:25

**testifying**
44:25

**testimony**
13:25 20:1
31:4,24
34:14
39:8,10
47:23 48:5
56:8 76:8
77:13
80:13
82:20 84:3

**tests**  83:1

**textbook**
27:8,9
44:8,14

**thelarche**
82:17

**theory**  53:20

**thereof**
19:18

**thicker**
38:16

**thickness**
38:19,25
39:3,15

**thigh**  39:6,
12 41:15
57:25
58:8,15
59:5,20,21
60:3 64:9,
10,18,20,
24

**thighs**  38:6,
15 39:1,
20,23 40:3
59:3 64:6,
7,16,25
65:1
66:15,16,
24 81:12

**thing**  5:23
18:16
21:13
23:14
51:16 61:7
74:21

**things**  14:1,
3,4,22,23
15:20
17:14
54:17
79:22

**thought**  37:3
48:8

**time**  4:7
5:11 7:24
8:15 9:19
10:18,21
15:13
17:22 24:9
25:19
26:10
27:20
29:16
52:16 55:9
56:10
60:12,15,
21 65:19
68:9 70:21
73:8 74:4
85:22

**times**  5:23
35:12
68:17

**tip**  78:6,9

**tissue**  42:24
43:5,11

**today**  5:3
17:16 18:4
69:9 81:5
82:20

**Today's**  4:6

**told**  47:13
51:18,19
67:3 78:7

**tool**  28:5

**top**  37:22

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 116 of 230
PageID 2868
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen Dully, M.D. on 04/28/2025          Index: touched..vivid

43:5,9

**touched**
72:14

**trafficked**
35:13

**trained**
12:6,7

**training**
7:6,16,24
8:3,14,20
9:21,25
13:4 14:22

**transcript**
85:5,14

**transferred**
7:18

**transmit**
58:21

**treat** 13:12,
13

**treated**
83:6,8

**treating**
27:25
83:15

**treatments**
76:11

**triangle**
38:3,7,13
41:1,3,6,
9,11
44:23,24
57:14,19
58:7 59:4

**true** 22:12,
18 45:23

**tumor** 20:9

**turn** 35:14

**turned** 83:13

**type** 21:24
73:19

**typed** 52:25

**types** 24:17
56:14

---

**U**

---

**U.F.** 76:16

**uh-huh** 5:24
6:2

**un-huh** 6:2

**underlying**
84:5

**underscore**
81:8

**understand**
5:12,16
6:12 11:15
12:13,16
13:15
14:13 15:4
17:17
19:24 23:4
44:21
47:24
48:14
50:22 52:6
55:16

59:13 63:5

**understanding**
73:5,23

**understood**
12:18 23:7

**undertake**
54:8

**undetectable**
22:22

**unfamiliar**
29:12

**ungroomed**
41:10

**unit** 8:22

**University**
6:10,15
7:9 16:1,3

**unscientific**
29:8 46:7

**update** 26:20

**upper** 64:7,
9,25

**utero** 42:8

---

**V**

---

**vaginal** 36:2

**vaguely**
52:21

**validity**
57:5

**variability**
20:7

**vellus** 37:16
38:1

**verbal** 5:25

**verbatim**
51:3

**verify** 77:25

**versus** 4:5
38:25 46:9
59:8 69:21

**VI** 36:6
41:19,22

**video** 85:3,
4,20

**view** 40:18
43:3 57:25
67:13
81:22

**violence**
9:17,18

**visible**
36:18
37:22 56:2
62:12
71:24
79:13
81:10,12

**visit** 68:14,
15

**visual** 44:18
80:19

**vital** 67:10,
12

**vivid** 69:18

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen Dully, M.D. on 04/28/2025     Index: vocabulary..Zoom**

vocabulary
 76:21

---

**W**

---

Wait   24:18

waive   85:11

wall   43:11
 63:22
 64:9,15

wanted
 29:19,23
 30:3,5

warrant
 48:16

wax   80:21

waxed   56:25
 73:2,15
 74:18,21
 75:4,7,23
 76:6,10
 77:2,16

waxing   39:24
 54:17
 55:23
 56:12
 72:25 73:5
 74:22
 75:1,9
 76:10
 77:23
 79:11
 80:18

ways   29:22
 47:18

wearing   53:3

website
 78:17

week   30:24
 31:10

well-known
 45:11

whiskers
 39:4,14,
 17,25 40:3

white   53:4
 74:9

widely   23:23
 81:12

wider   38:11

William   4:4

witnesses
 5:22

women   28:24,
 25 29:15
 43:15
 54:12
 76:10

wood   53:4

word   52:3,
 4,19

words   51:4

work   6:12
 16:6,19,25
 17:2 26:21
 28:2,3

worked   16:10

working   9:8

worried
 20:17

write   6:4

writes   17:11

writing
 17:14
 52:1,2

wrong   25:21
 29:15 42:5

wrote   30:5
 50:13

---

**Y**

---

YCBLVVFQ
 81:8

year   8:16
 9:6 20:11
 24:13

years   7:21
 8:13 9:8
 14:23 16:2
 17:13
 18:23
 21:15
 25:24
 26:21
 28:25 37:1
 42:13 54:3
 76:16
 77:10
 81:15,17
 82:4

years-old

84:1

York   7:10

young   62:8,9
 76:9

---

**Z**

---

Zoom   49:3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

  Plaintiff,

vs.                         CASE NO.:   3:24-cv-00044-MMH-MCP

MIKAYLA PRESTON,
in her individual capacity
as a Detective for St. Johns
County Sheriff's Office, and
KATHLEEN DULLY, in her individual
capacity as medical director of the
UF Child Protection Team,

  Defendant.

_____

CONTINUED
REMOTE VIDEO
DEPOSITION OF:     KATHLEEN M. DULLY, M.D.


DATE:              June 18th, 2025


TIME:              3:05 p.m. - 5:10 p.m.


PLACE:             Videoconference


STENOGRAPHICALLY
REPORTED BY:       Deborah J. Guest, RPR
                   Shorthand Reporter



                   (1 - 89)

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 2

A P P E A R A N C E S:

(All parties appearing via Zoom.)

MICHAEL K. ROBERTS, II, ESQUIRE
OF:  Nooney, Roberts, Hewett & Nowicki
1680 Emerson Street
Jacksonville, FL 32207-6104
Office:  904-398-1992
Cell:  904-398-1992
E-mail:  mroberts@nrhnlaw.com

   Appearing on behalf of the Plaintiff,
William Lee Lawshe

MATTHEW J. CARSON, ESQUIRE
OF:  Sniffen & Spellman, P.A.
123 North Monroe Street
Tallahassee, FL 32301-1509
Office: 850-205-1996
E-mail:  mcarson@sniffenlaw.com

Appearing on behalf of the Defendant,
Mikayla Preston

-and-

JOHN A. WILSON, ESQUIRE
OF:  Howell, Buchan & Strong
2898 Mahan Drive
Suite 6
Tallahassee, FL 32308-5462
Office:  850-877-7776
E-mail:  johnwilson@jsh-pa.com

   Appearing on behalf of the Defendant,
Kathleen M. Dully, M.D.

ALSO PRESENT:  Cameron Hodges, Videographer

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

**Page 3**

I N D E X

TESTIMONY OF KATHLEEN M. DULLY, M.D.

PAGE
Review of previously marked exhibits - no
video......................................... 4
Direct Examination by Mr. Roberts. ........... 7
Cross-Examination by Mr Carson. ............. 78
Cross-Examination by Mr. Wilson. ............. 84
Redirect Examination by Mr. Roberts. ........ 85
Certificate of Oath. ......................... 88
Certificate of Reporter. ..................... 89

INDEX OF EXHIBITS

PAGE
(DR. DULLY'S FIRST DEPOSITION)
(Previously marked - attached to first deposition)

No. 3 (a demonstrative diagram of the
pubertal stages)............................ 37

No. 4 (composite exhibit of three letters
written by Dr. Dully in this case)......... 18,50,69

(DETECTIVE PRESTON'S DEPOSITION)
(Previously marked - not attached)

8-A (image YCBLVVFQ). ........................ 69

8-B (image B06FE687). ........................ 23

8-C (0059). .............................. 15,25

8-D (0065(1)). ............................... 25

8-E (20230122_174408DuckDuckGo.jpg)......... 53

— — —

S T I P U L A T I O N S

It is hereby stipulated and agreed by and among the counsel for the respective parties and the Defendant that the reading and signing of the Zoom video deposition transcript be waived.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

**Page 4**

P R O C E E D I N G S

* * * *

MR. WILSON:  Counsel, will you be sharing exhibits today?

MR. ROBERTS:  Maybe.

MR. WILSON:  Maybe.

MR. ROBERTS:  I don't know that there will be any other ones, but I'll simply refer to the images either by their file name or -- and we can go on the record -- but they were attached in letter form to Detective Preston's deposition as lettered exhibits, and so we can refer to them in both ways.  But we'll make sure that we're on the same page before we begin discussing the exhibit. Fair enough?

MR. WILSON:  Yes.  Can we go through the exhibits for clarity that were attached to the first deposition?

MR. ROBERTS:  Yes.  Exhibit 1 was a journal article, Exhibit 2 was the affidavit of the Plaintiff's expert, Dr. Krugman, Exhibit 3 was a demonstrative diagram of the pubertal stages, and Exhibit 4 was the -- it's a composite exhibit of three letters written by Dr. Dully all in this case.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 5

MR. WILSON:  And you are prepared to show those on the screen as they come up, if necessary?

MR. ROBERTS:  Yes.  I mean, I am not going to plow the same field.  We're not going to -- you know, I may ask her a question about one or two, and it may become relevant.

But as this is a continuation of the prior deposition, you know, I will assume that these exhibits are going to be attached as exhibits to this deposition as well.

THE VIDEOGRAPHER:  Counselor, is this a continuation?

MR. ROBERTS:  It is a continuation, yes.

THE VIDEOGRAPHER:  All right, perfect.  Are there any other housekeeping matters?

MR. WILSON:  I believe Mr. Carson called in and dropped off of the call.  I do not know what has happened to Mr. Carson.

MR. CARSON:  I'm still here.

MR. WILSON:  Okay, thank you.

MR. CARSON:  I am trying not to clog the gallery.  I will probably just stay hidden until or unless I need to say anything.

MR. ROBERTS:  All right, thank you.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

Page 6

THE VIDEOGRAPHER:  All right, then.
Counsel, are we ready to begin?

MR. ROBERTS:  Yes.

(Discussion off the record.)

THE VIDEOGRAPHER:  Good afternoon.  We're now on the record at 3:10 p.m. this June 18th, 2025.  This begins the continued deposition of Dr. Kathleen Dully, taken in the matter of William Lee Lawshe versus Mikayla Preston, et al. This deposition is being conducted remotely via Zoom.

My name is Cameron Hodges.  I am the videographer.  The court reporter is Deborah Guest.  We represent Huseby Global Litigation.

Will counsel please introduce themselves, after which will the court reporter please swear in the witness.  Thank you.

MR. ROBERTS:  Michael Roberts for Mr. Lawshe, the Plaintiff.

MR. WILSON:  John Wilson for Dr. Dully.

MR. CARSON:  Matt Carson for Detective Mikayla Preston.

COURT REPORTER:  Doctor, would you raise your right hand, please.

Do you solemnly swear the testimony you're

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 7

about to give in this cause today will be the truth,
the whole truth, and nothing but the truth?

THE DEFENDANT:  I do.

COURT REPORTER:  Thank you.

KATHLEEN DULLY, M.D.,

having been duly sworn to tell the truth, testified
as follows:

DIRECT EXAMINATION

BY MR. ROBERTS:

**Q     All right.  Doctor, it is good to see you
again.  Where are you currently located?**

A     In this particular room?

**Q     What building?**

A     This is the Forensic Pediatrics Office,
sort of that administrative office which is one
building over from the clinic building.

**Q     And when you say "clinic building," what
are you referring to?**

A     Well, there's two buildings for this
division.  And one has the clinic where we actually
see children and have our offices and exam rooms and
equipment and medication, and then this is an
administrative building with a xerox machine and this
very nice Zoom/conference room.

**Q     And when you say -- and I just made this a**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 8

little more obvious, but this is the Child Protection Team.  When you say "division," you are talking about the Child Protection Team?

A    No, this is not the Child Protection Team office.  This is the Division of Forensic Pediatrics for the University of Florida, and the Child Protection Team is part of the division and major activity.

Q    What does forensics mean?

A    Open to debate.

Q    So that is what -- if you say, "I am a forensic PD -- pediatrician," that means it's up for debate, pediatrics?

A    That we specialize in the debates of pediatrics, yes.  In this case, I think that applies.

Q    Okay.  Sometimes I have heard -- maybe it's colloquially, but forensics as being a subspecialty of either medicine or engineering, some science which attempts to examine or offer opinions on legal questions.

Is that -- are you not familiar with that use of the word forensics?

A    No.  I use it as part of pediatrics.

Q    Okay.

A    I don't engage in those other activities.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 9

Q   You don't practice -- you don't offer opinions in legal proceedings?

A   I do if I am subpoenaed.

Q   Okay.  But isn't that like part of your job, to offer opinions in legal proceedings on behalf of the State of Florida?

A   That is part of my job as a pediatrician, and the American Board of Pediatrics does not like to use the term forensics.  That's why they call it child abuse pediatrics.

Q   And, in fact, the statute that establishes the Child Protection Team directs that the Child Protection Team will investigate and support law enforcement activities in regards to child abuse allegations, doesn't it?

A   I don't know the statute by heart.  It probably says that or something about like that.  It does establish the Child Protection Teams throughout Florida.

Q   Okay, all right. So have you -- this is a continuation of our prior deposition.

Since that time, have you spoken with any representatives of Detective Preston?

A   No.

Q   Have you spoken with Detective Preston?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 10

A     No.

Q     Have you spoken with anyone other than your attorney about the facts or circumstances arising out of this case?

A     No, but the attorneys did change.  So I have spoken to two attorneys, the previous and then also Mr. Wilson.

Q     Has anyone from Verizon or Synchronoss Corporations reached out to you about this case?

A     No.

Q     Have you made any statements or conducted any -- or have been part of any interviews regarding the facts and circumstances of this case since we last met?

A     No.

Q     All right.  So have you had an opportunity to review your deposition transcript prior to today's continuation of that deposition?

A     I went through it one time today.

Q     Okay, all right.  So we ended the last deposition because you did not have the photographs or the digital images which were the subject of your reports in this case.  Did I understand that correctly?

A     Yes.  And I had not seen them in two years

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 11

and could not recollect.

Q    Sure.  And today, do you have them?

A    I have them, yes.

Q    And have you had a chance to review them prior to us getting on the record here today?

A    Yes.

Q    Okay.  So let's -- I am just going to -- we left off in your deposition talking about opinions in general -- your opinions in general, and let's pick up today with your -- your interactions with -- just to set the scene, I guess, so to speak, with -- your interactions with Detective Preston and reviewing these particular photographs because you have them now, and that's really what I intend to go through today.

So at some point, you received an e-mail from Detective Preston introducing herself.  Do I understand that correctly?

A    At some point, she was introduced to me at CPT, but I don't remember the specifics.

Q    Do -- have you reviewed any e-mails she sent to you attempting to set up a meeting regarding this particular case?

A    She did send one e-mail between the two dates -- I don't know the date -- asking for another

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 12

appointment.

Q    So you had one meeting with her on February 22nd, 2023; is that correct?

A    Yes.

Q    And in that meeting, you examined a single colored photograph that she showed you on a law enforcement laptop; is that correct?

A    Yes.

Q    That file name -- I am not going to read the entire file name, but it begins with D263B; is that correct?

A    Yes.

Q    All right.  You met with her again on April 5th, 2023; is that correct?

A    Yes.

Q    And you reviewed additional photographs, which we'll get into a second.

So I believe you testified in your original deposition you do have some recollection of meeting with Detective Preston; correct?

A    Yes.

Q    All right.  And when you met with her, you explained to her that you could not offer her scientific reliable opinions regarding the actual age of the models depicted in these images, correct?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 13

A    Yes.

Q    You told her that you could only offer her an opinion about what the sexual maturity rating of the appearance of the image was, correct?

A    Yes.

Q    And I think we went through this in your prior deposition.  For example, if you were shown a photograph that just showed belly button to thighs and it showed genitals, if there was no pubic hair development, your opinion would be that that is a sexual maturity rating of a woman, correct?

A    In general, yes.

Q    You do not consider the possibility of digital altering of the photograph to make it appear as though there is no pubic hair?

A    That is not my expertise.

Q    And you do not consider that possibility in rendering your opinions?

A    That is always a possibility.  However, I am commenting on appearance, not knowing anything more about the photograph.

Q    And you made that clear to Detective Preston in your meeting on February 22nd?

A    I think that's obvious.  That's what the investigation is for, which is not something that I

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 14

do.

Q    Whether you think it is obvious or not, your testimony is that you made that clear to Detective Preston in your meeting?

A    Well, it's in writing that it's appearance, and I said it's appearance.

Q    Your prior testimony even today was that you explained to her that you could not give her a scientifically reliable opinion about the actual age of the model depicted, correct?

A    Well, those are your words. That's not my words. I never used the word scientific. It is not -- it's a medical question, and those are your words, not mine. And it has been two years, and I don't remember my exact words.

Q    I am not -- I am not asking you your exact words. I am asking if you related to her -- in whatever words you chose but related to her in what you consider to be a clear manner that you could not offer her a medical opinion about the actual age of the individual depicted in these images, correct?

A    Yes.

Q    All right. One second.

I would like for you to pull up on the laptop the file 0059, and just tell me when you have

**Page 15**

that image up for you to view.

A     And which letter is that?

(Exhibit 8-C, previously marked in Detective

Preston's deposition, was identified for the record.)

BY MR. ROBERTS:

Q     If you can just pull the image up, and then I'll ask questions and direct you.  While you are pulling it up, I am going to, for the record, identify this.

The redacted image was attached to Detective Preston's deposition as Exhibit C.  Do you have this pulled up in front of you, 0059?

A     That is what the label says, yes.

Q     Okay.  This depicts a female model with it looks like a pink lace lingerie -- wearing like a pink lace lingerie.  Do you see that?

A     Yes.

Q     A red background?

A     I would call that orange, but yes.

Q     Okay.  Maybe we got a different color tone on our screen.

All right.  And the model appears to even have her eyes closed or be looking down towards the floor?

A     Yes.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 16

Q      All right.  This model clearly has utilized some form of grooming of her pubic hair, correct?

A      She may have and so -- you know, maybe, yeah.

Q      It appears -- now, you are a medical doctor and you -- we talked a lot about this in your -- in your prior -- in your original testimony in the beginning of this case.

The appearance of pubic hair is the -- I guess the leading determining factor in the sexual maturity rating as it pertains to female individuals, correct?

A      Yes.

Q      All right.  And we went through diagrams about what Grade I, Grade II, Grade III, Grade IV, Grade V pubic hair development looks like, did we not?

A      Yes.

Q      This appearance of pubic hair does not match any of the diagrams that -- or the depictions on the diagrams that we saw, does it?

A      Not very well.  It is in the midline and anterior which is how it develops.

Q      Right.  But this clearly -- this model has clearly either shaven or waxed or groomed in some way

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 17

her pubic hair, correct?

A    I don't know if that is clearly, but I think that is a possibility, yes.

Q    Well, your medical opinions are based on the appearance of pubic hair in this case, correct?

A    Yes.  To a large degree, yes.

Q    Would you say that by looking at this you cannot determine whether or not this model has utilized some sort of grooming, shaving, waxing, some sort of hair removal process?

A    No.  I am saying that she may have --

Q    Okay.

A    -- but I don't know for sure.  Usually I ask the child.

Q    Okay.  You can't ask the child, though, when you are reviewing images pulled off of the internet, can you?

A    Correct. That's what the investigation is for.

Q    Right.  Your opinions were part of the investigation, though, correct?

A    I think I am assuming that they must be because here we are.

Q    Right?

A    But, no, I never know what role my

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 18

statements play.

Q    Well, what did you surmise when a detective, a law enforcement detective, asked you to render some opinions about some images, some pornographic images?  Did you not -- did you not surmise that they were contacting you as part of their investigation?

MR. WILSON:  Object to form, but go ahead.

A    They were contacting me, asking for an opinion. What they do next, I don't know.  And I don't know that they ever used these until now.

Q    Well --

A    You are telling me so.

Q    And I am sorry for cutting you off.  But you know that the detectives -- you knew that the detective was investigating a potential crime, correct?

A    Yes. By the 5th of April, I surmised that because she came back with more.

Q    Right.  And you knew that she was coming to you as part of that investigation, did you not?

A    It would be likely.

Q    Yes.

A    I did not pin her down.

(Plaintiff's Exhibit No. 4, previously marked, was

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 19

identified for the record.)

BY MR. ROBERTS:

    Q    Okay.  I am going to share my screen which is Plaintiff's Exhibit 4.

    I'm trying to move that.  I don't know what that is on there.  I don't know what this blue line is, I apologize, but do you see this?

    A    Yes.

    Q    Okay.  I am going to show you what is marked February 22nd.  That is the date that you have.  We looked at this letter, okay?

    April 5th, do you see this letter?

    A    Yes.

    Q    Do you agree that the first paragraph is largely a copy and paste from the February 22nd, 2023 letter?

    A    Oh.  It would appear that that is true, yeah.

    Q    Can you read the second paragraph of your letter --

    A    April --

    Q    -- from April 5th, 2023?

    A    "Today you have shown me two additional images" --

    Is that what you are referring to?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

**Page 20**

Q    Yes.

A    -- "of the same female child, and these confirm my previous determination that she is depicted to be at most sexual maturity of maybe III or IV and, therefore, again less than 12 to 15 years of age."

Q    There is one more sentence.

A    Oh.  "The file names for these photos are 0059 and 0065(1)."

Q    Now, the last sentence of the first paragraph says, "She does not appear to be shaved as her anterior pubic hair is still present."

But on April 5th, 2023, when you saw the 0059 image, you knew that this model had been shaved, waxed, or removed her pubic hair in some way, correct?

A    No.

MR. WILSON: Object to form.

A    No.

Q    You just testified that the 0059 -- that she very well may have used some form of hair removal process.  Did I understand that correctly?

A    You misstate my testimony.

Q    Please restate it --

A    It was --

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 21

Q    -- for me.  Please restate it.

A    It was possible, and that's what the investigation is for.

Q    **Well, you are the expert on pubic hair development, correct?**

A    Yes, but not depilatories, waxes, lasers, and you brought up electrolysis, as I recall.

Q    **Or chemical hair removal or just digital alterations of images or all the things that I brought up.  But you made the affirmative statement on April 5th, 2023 that this model does not appear to be shaved, correct?**

A    I said that on February 22, and I did not change it on April 5.

Q    **That was an untrue statement, though, correct?**

A    Not correct.

Q    **So is it your testimony that the model depicted in 0059 does not appear to be shaved?**

A    Is 0059 the same image as the D2635841644B390?  You know, I don't know if that is actually the same image or not.

Q    **It's not the same image.  It's an image taken from the exact same photo shoot.**

A    I don't know that.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 22

Q    Well, why don't you look -- why don't you open up the files for -- I'll give you the file number.  Why don't you just open up the file that starts in D263B, open that up for me, and also open up 0065.  And tell me when they are open.

A    Is this supposed to be --

COURT REPORTER: Ma'am, I can't hear.

THE DEFENDANT:  I don't know what I am looking at.  I am sorry, I am trying to figure out what I am looking at.  This is a different file.  I don't know what is what.  I don't know what is what.

BY MR. ROBERTS:

Q    So let me read the file name for you, okay?  It's B06F --

A    To what? A file name to what?  There is more than one file.  B06F, that is what that one says here.

Q    Knees-to-chest.  So the image that you are looking for is a female model with knees-to-chest.

A    That is not the file name that I looked it up as according to my statements in 2023.

MR. WILSON: Yes.  Mr. Roberts, if I may interject for a moment, the file names that we have as evidence in this case for Exhibit 8-B of

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 23

Detective Preston's interview and the one that is referenced in the first paragraph of the February 22nd letter, they are a different file name than is shown on Dr. Dully's letters here. But the description matches, and it is the image marked for identification purposes in other testimony in this case.

MR. ROBERTS: Thank you, John. I appreciate that.

(Exhibits 8-B and 8-D, previously marked in Detective Preston's deposition, were identified for the record.)

BY MR. ROBERTS:

Q    Let's look at the image that you are describing rather than the file name, okay?

Can you -- can you open the file where it shows the model sitting on a wooden floor in a knees-to-chest position with her lower legs and ankles parted to expose her genital for the camera. I have that -- and it may have been miswritten in the report, but I have that as B06FE687.

A    That is what is on this photo that says Exhibit 8-B.

Q    Okay. Do you agree that that photograph showing the female in the knees-to-chest position was

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 24

taken at the same photo shoot, the same time as the other two images --

A     I --

Q     -- that you reference in that letter, 0059?

A     I have no idea.

Q     Can you explain why -- can you explain that, why you have no idea?

A     I wasn't at the photo shoot.  I have no idea.

Q     Well, does she appear to be wearing the same clothes?

A     What is --

Q     Well, first of all -- sorry, strike that. Strike that.

        Is it the same model?

A     What is the second picture that you are referring to?

Q     Okay, all right.

        MR. WILSON:  I will go ahead and interject again.

        MR. ROBERTS:  Okay.

        MR. WILSON:  We have on the screen on this laptop Exhibit 8-B, which we were previously discussing, and Exhibit 8-D, which is also marked in Dr. Dully's reports as image 0065(1).  Those

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 25

are the two images that are currently on the laptop screen.

BY MR. ROBERTS:

Q    Okay.  So 0065(1), gotcha, 0059, that is the image that we were originally talking about today, let's just talk about those two images first, okay?

Do you agree that those two images were taken at the same photo shoot around the same time?

MR. WILSON:  Let -- let me pull up those two images.

(Exhibits 8-C and 8-D, previously marked in Detective Preston's deposition, were identified for the record.)

MR. WILSON:  All right, and now we have on the laptop screen Exhibit 8-C 0059 and Exhibit 8-D 0065(1), both displayed side by side.

MR. ROBERTS:  Okay.

BY MR. ROBERTS:

Q    Having a look at those, do they appear to be taken from the same photo shoot?

A    It is all the same accoutrements, so they could be.  But, otherwise, I don't actually know.

Q    It's the same model --

A    Probably.

Page 26

Q    -- correct?

Well, you say -- I think you say it is the same model in your letter of -- let's see.

A    Detective Preston told me that.

Q    April 5th, 2023, you indicate that you show me two -- pardon me, "Today you show me two additional images of the same female child." Did I read that correctly?

A    Yes.

Q    Okay. So it is the same female model that is depicted in the original image which you described as sitting on a wooden floor in a knees-to-chest position, correct?

A    She told me they were the same child, and I did not know any way to validate that. So I accepted it. I do think it looks like the same child, but I am not the investigating person, so...

Q    Okay. She's wearing the same earrings, correct?

A    Oh, I didn't notice the earrings. Sorry.

Q    Yes? Wearing the same earrings?

A    No, I don't know what the earrings are. Maybe you better go back to another screen.

Q    Oh, I am sorry.

MR. ROBERTS: Can you pull this back up?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 27

MR. WILSON:  They are up.

THE DEFENDANT:  No, he's talking back now about the one I saw in February.

MR. WILSON:  Oh, okay.

MR. ROBERTS:  I'm talking about -- let's pull all three up, okay, the image from February with the knees-to-chest and then the two subsequent images that you viewed April 5th, which are 0059 and 0065(1).  And just tell me when you have them up.

THE DEFENDANT:  Thank you.

MR. WILSON:  You're very welcome.

I am working on it.

THE DEFENDANT:  It's going to be very small.

MR. WILSON: All right.  I have got all three up, side by side, on the laptop screen.

MR. ROBERTS:  Okay.

BY MR. ROBERTS:

Q    **So, Dr. Dully, you weren't able to tell me whether or not these appeared to be from the same photo shoot taken at approximately the same time, so I am going to ask you:  Is the model wearing the same earrings in all three photographs?**

A    It looks like the same earrings, yes.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 28

Q     Is her hairstyle the same in all three photographs?

A     Well, with partial views, I -- I think they could be, but I can't really see her whole hairstyle in the first photo.

Q     Wearing the same clothes?

A     No, I don't see the same clothes. I see her knees and her legs and her bare arms.

Q     Do you see some pink lace on the floor?

A     There is something on the floor. I can't see what it is.

Q     Does it appear to be consistent with pink lace --

A     It could --

Q     -- lingerie?

A     Yeah, it could be. Yes.

Q     The same pink lingerie that she's wearing in 0059 and 0065(1)?

A     It could be, yes.

Q     Yeah. The wall color in the background is the same on all three images?

A     Yes.

Q     The drapes are the same in all three images?

A     They look like it, yes.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 29

Q  The house plants in the image all appear to be the same house plants?

A  The ones that I can see, yes.

Q  So all indicia seem to be that these were taken at the same location at approximately the same time?

A  No, I don't know that.

Q  Okay, all right.

A  This is a costume.

COURT REPORTER:  I'm sorry, ma'am.  Could you repeat that, please?

THE DEFENDANT:  This is a costume.

BY MR. ROBERTS:

Q  What does that mean?

A  Something that you can put on every time it's time to put it on.

Q  Sure.  All clothes are costumes in that way, though, right?

A  No.

Q  I mean, you can put on the dress that you are wearing any time that you want, right?

THE DEFENDANT:  Do I have to answer that?

MR. WILSON:  Yes.

MR. ROBERTS:  Yes, you do.

A  Yes.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 30

Q    Okay.  So to the extent that these appear to be -- and I guess I'll just have to ask it in a hypothetical way:  These appear to be part of the same photo shoot.  The model depicted does appear to have, as you put it, shaved her pubic hair, correct?

A    No, not in all three images.  I don't know that it's the same photo shoot.  I think it's likely it's not the same photo shoot, and it is not necessarily something that happened all at one time.  And you are putting words in my mouth, and I --

Q    Ms. Dully -- Dr. Dully, you realize you are under oath today, correct?

A    Yes, I am under oath --

Q    And you swore to tell the truth?

A    -- and you are telling me what I said, and that's not what I said.

Q    Okay.  And you are sworn to tell the truth.  What makes you believe in the original image, knees-to-chest, that her pubic hair grooming is any different than it is in 0059?

A    Because it is different, it is not the same view, and she looks younger to me.

Q    She looks younger to you?  What do you mean by that?

A    She has an immature face, she has large

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 31

eyes, she has a prominent forehead, she has her labia very well exposed, and she only has a little tiny bit of anterior pubic hair, which is exactly what early pubic hair in puberty looks like. She still looks young to me.

Q   Why --

A   She's not old- --

Q   Why didn't you include any of that in your letter?

A   No one asked. You didn't ask. I did not change my opinion. It's there in the letter.

Q   So let's just break it down.

On 0059, you agree that there is a -- as you put it, a possibility that she is groomed, correct?

A   Which one is 0059?

Q   That's the one where you can see what I think in common parlance is referred to as a landing strip of pubic hair.

A   Okay, that's the middle image here?

Q   Right. Do you agree that there is at least a possibility that that is -- that she has shaved or used some sort of grooming?

A   Yes, I said that. Yes.

Q   Yeah.  Generally, pubic hair doesn't grow

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 32

in that way, like in a straight line, a straight line up towards your belly button, does it?

A    Not as uniformly, no.

Q    No.  So -- just so we understand and it's clear for the record, if a model has groomed, you cannot offer any opinions about the sexual maturity rating of that model as it pertains to the development of pubic hair, correct?

MR. WILSON: Object to form.  But go ahead.

A    It is an appearance, and it was not just one photograph.

Q    Well, according to you, on the day that 0059 was taken -- because you, I think, testified earlier that it is likely that these were taken on different days, correct?

A    I think it's likely that the knees exposure is younger but not necessarily the same time.

Q    So like developmentally younger, like her facial features are different, things like that?

A    Yes.

Q    So we're talking years younger in your opinion?

A    No, not necessarily.  Puberty is all happening in a year or two.

Q    Okay. So I just want to make sure:  Under

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 33

oath, your testimony is it's your opinion right now that the knees-to-chest was taken how much earlier than 0059 and 0065(1)?

A    It appears to be earlier. I cannot say how many days or weeks or months.

Q    And so when I read your letter of February -- of April 5th where you write that these two additional photographs confirm your prior opinion, that would be incorrect then, correct?

A    No. She is older and she was younger, and that's consistent.

Q    But your prior opinion was that she was Grade IV in the -- in the February 22nd letter, correct, a sexual maturity rating IV?

A    That is what it says.

Q    You actually say in your letter that from the second two images, 0059, 0065(1) -- you say III to IV in those images. So you actually in your letter place her as being younger in the 0059 and the 0065 [sic] than in the knees-to-chest version of the image, correct?

A    Can you say that again? I didn't follow it.

Q    Yeah. So on the original image, the February letter that you wrote, you placed the sexual

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 34

maturity rating at Grade IV, correct?

A    That is what I typed.

Q    Now, you've testified today that you believe that the model was younger, developmentally younger --

A    Yes.

Q    -- in the knees-to-chest picture that was subject of the February 22nd letter, correct?

A    Yes, she appears younger.

Q    But in your letter, you actually put -- of April 5th, you actually state that it confirms your opinion that she's a Grade III or IV by looking at the 0059 and the 0065(1) images, correct?

A    Yes.

Q    So you actually have those as being developmentally younger than the original picture, of the knees-to-chest picture?

A    Well, I did not change my statement in terms of her age.  But based on those photographs, I didn't type the exact same thing, no.

Q    What is the appearance of the model -- sexual maturity rating -- what is the appearance of her genitals in terms of sexual maturity rating in the 0059?

A    Okay, which one is the 0059?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 35

Q     That's the one with the straight line of pubic hair --

A     Okay, sorry.

Q     -- anterior, I think, to her genitals.

A     She has midline pubic hair development and anterior, like a low maturity that could be a III. That is a distribution that we do see.

I do agree that there is a uniformity that suggests that she could also be altered in one of the ways you already suggested.

Q     And if she has altered her pubic hair, you could not offer any appearance -- any opinion even of her appearance, could you?

A     It's her appearance, and a III and a IV is possible. And I am told it's the same child, and I've already said she's a IV. And now this view, she could also be a III. But I don't think it fits perfectly, no.

Q     That is not my question.

A     She --

Q     Ma'am, that is not my question.

A     What is your question?

Q     In your -- the original part of your deposition, we went through, I thought, in quite a bit of detail regarding the difference between III,

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 36

IV, and V, the appearance of pubic hair development. And you made it very clear in your deposition that the distinction between a IV and a V or a III and a IV was the distribution of the pubic hair, correct?

A    Yes.

Q    All right.  If the pubic hair has been removed so that you cannot see the biological -- the natural distribution of pubic hair, how could you possibly offer an opinion about a sexual maturity rating based on the pubic hair distribution?

A    Because it's based on appearance.

Q    Right.  But the appearance here is that she has been shaved.

A    That is your opinion. I think it's possible --

Q    Well, you've acknowledged -- you've acknowledged that that is a -- that that is a possibility here that is consistent with grooming, that this image is consistent with grooming.

And my question to you is:  If you saw that she had been groomed, why would you not tell Detective Preston, "Hey, I can't help you here; she's being groomed; I don't know what her pubic hair distribution is"?

MR. WILSON: Object to form.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 37

A     I still have the first image.

Q     Let's talk about the first image. Before we do that, I want to share what was originally an exhibit.  It was Exhibit 3 -- Exhibit 3 to your -- to this deposition.

(Plaintiff's Exhibit No. 3, previously marked, was identified for the record.)

BY MR. ROBERTS:

Q     Now, you previously testified that this diagram roughly -- and it is a pen and ink drawing -- displays the development through the stages of pubic hair and breast development, correct?

A     It's close, yes.

Q     All right.  And we talked in detail that the development of -- and this is what you said, was a triangle or an inverted triangle in the area above the genitals was the determining or one of the determining factors in assessing whether or not someone was a sexual maturity rating of a III, IV, or a V, correct?

A     If you only have an anterior view, that is what you see.  And you see it on your diagram on III, IV, and V.

Q     Right.  So I want you to go back now to the knees-to-chest image, the original image that

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 38

Detective Preston brought to you on February 22nd.

MR. ROBERTS: Tell me when that's up. I know it takes some time.

MR. WILSON: It's up. All three images are still open.

MR. ROBERTS: Okay, they're still up.

BY MR. ROBERTS:

Q    Isn't it true, ma'am, that in the knees-to-chest position, you cannot see the anatomical area of the body which is displayed in these diagrams?

A    In your limited diagram, it does not show the same view.

Q    It does not show the area above the genitals, does it?

A    You mean the photograph?

Q    I mean the photograph, yes.

A    It does not. It's not showing the same view at all.

Q    It is impossible for you to tell whether or not that is a III, IV, or V distribution of pubic hair based on the positioning of that model in that photograph, correct?

A    No, not true.

Q    Can you see how the pubic hair is

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 39

distributed in the inverse triangle that you've described earlier in your testimony?

A      It is not the same view, no.

Q      So you can't?

A      Not with your limited diagram, no.

Q      Is there another diagram that you would refer me to?

A      There are lots of them.

Q      And are there any diagrams that would show females in a knee-to-chest positioning?

A      There certainly are, and there are other positions as well.

Q      Tell me about those. Can you tell me the names of those diagrams? Where can I find them?

A      There are some.

Q      I can't -- I can't see them. What -- can you just tell me the name of the book you are referring to?

A      "Assessment of Sexual Maturity Stages In Girls," American Academy of Pediatrics.

Q      And in that book, does it have diagrams of where doctors are assessing a sexual maturity rating of girls from images where they are on their knees-to-chest, in a knees-to-chest position?

A      It has similar exposures. But, no, they're

Page 40

certainly not in that position.

Q    Okay.  Why is that?

A    Because this is not pornography.  That is.

Q    Right.  The entire test that you are talking about was never intended to use it as you are using it, correct?

A    That is not necessarily true.

Q    Well, the book you just referred to me is a clinical -- clinical treatise, correct?

A    It has diagrams and photographs and answers your question.

Q    But you are not answering my question, Dr. Dully, which is:  The book that you are referring to is designed to help clinicians assess the sexual maturity rating of their patients in a clinical setting, does it not?

A    Including me, yes.

Q    And it's also designed to -- really what it's designed to do is to ensure that young people are appropriately developing through the stages of puberty and to help diagnose any sort of disorders that they may have in that regard?

A    In clinical medicine, that is how I use it.

Q    That is, in fact, what the test was designed to do, correct?

**Page 41**

A      That was what Dr. Tanner did in the 1950s. It certainly has another purpose now as well.

Q      **But that other purpose is not to provide reliable opinions on the actual age of models depicted in pornographic images, is it?**

A      Only appearance.

Q      **Right.  And -- and appearance -- there's really no value to your opinion regarding appearance, is there?**

A      I am not sure -- I am not doing the investigation.  I provide the consultation because I am required to and requested to.

Q      **But I am not -- I'm going to ask you the question again.**

**There really is no value to your opinion regarding the appearance of a sexual maturity rating in a pornographic image, is there?**

MR. WILSON: Object to form.

A      I don't --

Q      **It's a yes or no.  Is there value or is there not value?**

A      There is value.  In my opinion, there is value.

Q      **Okay.  You can't tell me if these pictures appear to be from the same day, can you?**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 42

A    I cannot.

Q    You can't really tell me -- you don't actually believe they are from the same photo shoot?

A    I do not.

Q    You think that in between some of these photographs, this model groomed her pubic hair; is that right?

A    I think that she matured, and she may have groomed. I cannot rule that out because I would normally ask the patient.

Q    And is there any evidence, like actual evidence, for that testimony that you have today?

A    Well, from many hours of it, I would say, yes.

Q    Tell me -- tell me: What is the evidence that -- between the original knees-to-chest photograph and 0059 that this model groomed her pubic hair?

A    I don't know that she groomed her pubic hair. I think you are testifying she did, but I don't know that. I --

Q    Okay. And I guess that is my point, right? That if you can't even tell if somebody has groomed or not groomed, what is the value of your testimony?

A    Ask law enforcement. They ask for these

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 43

all the time.

Q    I am asking you.  You -- you hold yourself out as an expert to law enforcement in sexual maturity rating, correct?

A    Yes.

Q    And you can't even tell me, as we sit here today with hindsight, whether or not this model in 0059 has groomed her pubic hair; you can't tell me that, can you?

A    No.

Q    So what -- if you can't even say that, how can you in good faith offer any -- any opinions about the sexual maturity rating of these models?

MR. WILSON: Object to form.  And your tone is getting awfully accusatory for a deposition.

MR. ROBERTS: All right.  Well, hold on. For the record, it is accusatory.

THE DEFENDANT: Yes, I would agree.

BY MR. ROBERTS:

Q    I am telling you, it is accusatory.  You cannot tell me whether or not this woman has groomed, can you?

A    That is what the investigation is for. Asked and answered.

Q    I am not asking about the investigation,

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 44

Dr. Dully.  I am asking you.

A     Not what I do.  That is not what I do, and I have never offered myself as an expert in pubic hair grooming.

Q     Ma'am, I am going to ask you to go back to your letters in this case.  You say, "She does not appear to be shaved."

A     She does not --

Q     You offered that opinion?

A     -- appear to be shaved.  Yes, she does not --

Q     And there's no basis for that opinion; is there?

COURT REPORTER:  Sir, I didn't get your question. This is the court reporter.

BY MR. ROBERTS:

Q     You offered the opinion to Detective Preston that this model was not shaved; isn't that true?

A     That's my opinion.  It is still true.

Q     But today you can't tell me whether or not she was shaved or not?

A     I cannot.  That is what the investigation is for.

Q     Do you understand that most people

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 45

generally understand that to be a false statement?

If you told the detective something and now you say, "I don't know if it is true or not," that would be a false statement, wouldn't it be?

A     No.  It is a statement for investigation.

Q     Do you endeavor to give truthful statements to an investigation?

A     Of course.

Q     Why would you say that this model does not appear to be shaved if you cannot tell whether or not she was shaved?

A     We're talking about two different images. So the first image, she does not appear to be shaved. The second image, she could be groomed.  I can't say for sure, and the investigation should clear that up.

Q     How would an investigation clear up whether or not she was shaved on the day of this image?

A     When they find her, they can ask her, if they find her.

Q     Why did you not include in your report when you were talking and describing 0059 that this image may represent that it appears she may have groomed or shaved, as you put it?

A     I find it is also possible that she is a III.  I did not know which it was, but it is based on

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 46

appearance.

Q    But the appearance -- in every other image, you talk about whether or not they appear to be shaved or not shaved.

I am asking you: In regards to 0059, why did you not include in your report that it may be that this model has shaved?

A    I don't know. I don't see that as my expertise. I think that that needed more investigation. And that was clearly what was, you know, probably underway because she was back for a second time.

Q    Is it true that you only include a notation on shaving when you say that they do not appear to be shaved?

A    No. I do that on every medical assessment.

Q    Well, then, why didn't -- I am going to ask you again. If you do that on every medical assessment, and 0059 you have acknowledged may be shaved, why did you not -- why did you not note that?

A    The comment I make is if they appear to be shaved and usually the answer is yes.

And in this case, I didn't think I could know that statement and the investigation needs to proceed. In photograph number one, she does not

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
*Kathleen M. Dully, M.D. on 06/18/2025*

Page 47

appear to be shaved.

Q     But you don't -- let me ask you this.  If you look at 0059 and the original image, knees-to-chest --

A     The knees-to-chest one, the first one -- yes.  Go ahead.

Q     -- and 0059 that has the very regular, vertical strip of pubic hair, okay, those two presentations of pubic hair are perfectly consistent, correct?

A     No.  They are consistent with a change in age and a change in habits, potentially, but they are not, you know, the same thing twice, no.

Q     The original knees-to-chest image does not show the area of pubic hair that is depicted in 0059, does it?

A     Ah, let me see here.  It's not exactly the same, but the views are -- I would say the second photo is a little more exposed than your diagrams, and then the first photo is a completely different view.

Q     It is a completely different view, and that view hides the area that is exposed in 0059, correct?

A     Partially.

Q     Yeah.  To the extent that you can't tell

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 48

what her pubic hair looks like above the area that is exposed, can you?

A    Above what area?

Q    There is an area of exposed pubic hair in the original knees-to-chest image, correct?

A    I --

Q    You can see pubic hair exposed in that image, can you not?

A    At the very top of her labial opening, yes.

Q    Above that area of exposed pubic hair, you cannot see that area because of her body positioning, correct?

A    Up towards her belly button and her lower abdomen, I cannot see those areas.

Q    And so it may be that her pubic hair is exactly the same in Image 1, where she has got the knees to the chest, as it is in 0059; there is no way for you to know because you just can't see that area, can you?

MR. WILSON: Object to form.

A    I disagree.

Q    Okay.  You said earlier that Detective Preston told you that this was the same model.  Do you recall that testimony?

A    Yes.

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
*Kathleen M. Dully, M.D. on 06/18/2025*

Page 49

Q   Were you not able to surmise from your review of these images that it was the same model?

A   I suspected they were the same, and she said yes.

Q   Do you agree?  Is there any question in your mind that they are the same model?

A   Well, they appear to be the same model. That's all I have.  But investigators would know better.

Q   When you say "investigators," ma'am, you are a forensic investigator in this case, are you not?

A   I am not.

Q   You didn't offer forensic opinions in this case to Detective Preston?

A   A forensic medical opinion.

Q   Did you offer a forensic medical opinion to Detective Preston in this case?

A   Yes.  On her request, yes.

Q   So you are part of the investigation; you agree with that?

A   It would appear that I am.

Q   Did you not know that at the time?  Did you not realize that at the time?

A   I knew that there was some likelihood, yes.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 50

Q    Okay.

A    I did not know what was happening next.

Q    Now, you say -- you have talked about -- and we talked about this in appearance. And you have testified, I think to be fair, that in your opinion it was obvious that you were not offering any opinions about the actual age of the models in question from the way you wrote your reports. Did I understand that correctly?

A    I think I am pretty clear that it is appearance.

(Plaintiff's Exhibit No. 4, previously marked, was identified for the record.)

BY MR. ROBERTS:

Q    Okay. I want to share again Exhibit 5 -- I mean, I am sorry, Exhibit 4 from the original deposition, and let me go to the February 22nd. I am going to read a line. You say, "This female child appears younger than the age of 18."

Is that what you mean when you say "appears," that makes it obvious that you are just talking about appearance, not her actual age?

A    Yes.

Q    Okay. April 5th, and I am moving down to the third letter in our exhibit, in the second

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 51

paragraph you wrote, "This image shows a female child with her black top parted and her underwear down around her parted thighs, exposing her genital area clearly."

You didn't use the word appear in that sentence. Why not?

A    I don't know why not. Maybe I did or maybe I didn't. What does it say? It is very easy to see. She has -- she's prepubertal.

Q    You say, "This image shows a female child with her black top parted and underwear down around her parted thighs, exposing her genital area clearly," but you don't say anything about appearances or appear in that.

A    "She appears to have no pubic hair development in" --

Q    Right. But did you call her a female child? Do you see if I read that sentence how a person might interpret that as you saying that this person is a child, an actual child?

A    Well, I hope so, yes, but I don't know that.

Q    Wait, wait, wait, wait. You hope that someone would interpret this as you -- as you offering the opinion that this was actually a child,

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 52

like her actual age was under the age of 18?

A    Her age is indeterminant.  But she is well under the age of 18, and that is her appearance.

Q    So are you offering an opinion now on this image that the actual age of the model -- not just the appearance, but the actual age of the model is under the age of 18?

A    No.  Her appearance is under the age of 18 very clearly.

Q    Because she doesn't have pubic hair?

A    We'll need to pull up the image because you are missing the basics.

Q    I am missing what?

A    The basics.

Q    I am missing the basics?  Like, what are the basis?

A    I am pulling up the image so I can review them with you. Would you like to pull yours up?  I'm not -- what is this one?  Is this the DuckDuckGo one?

Q    Correct.  This is the one with no face, no breasts, only a magazine cover with belly button to knees.  Tell me:  What am I leaving out?

        MR. WILSON: Before she answers, I am pulling up on the laptop screenshot 20230122_174408DuckDuckGo.jpg which was listed in

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 53

Detective Preston's deposition as 8-E. And it is focused on the top image that has been colloquially referred to in this case at the Bay Heart image.

MR. ROBERTS: Thank you, John.

(Exhibit 8-E, previously marked in Detective Preston's deposition, was identified for the record.)

BY MR. ROBERTS:

Q     **So you said that I was leaving stuff out. What am I leaving out?**

A     This child has no pubic hair. It is a very clear view. She has the labial majora that meet right in the middle. She does not have labial minora development as an older child or teen would have. And you can also see her hand. And she is a child by looking at this.

This is an appearance. This is what they look like on the exam table.

Q     **You keep saying this is a child. But you are not actually testifying that in chronological age, this person is under the age of 18, are you?**

A     I am not giving a chronological age. I am telling you what she looks like.

Q     **Right. And so when you say "what she looks like," you are talking about a frontal view of the**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 54

genitals where she is vertically standing I think on her knees, correct?

A      Yes.  It's not just frontal.  You can see her labial majora and the cleft between them and her buttocks behind those a little bit, just the medial portion, because her legs are parted.

Q      I want you to Zoom in on that image for me.

MR. WILSON:  On?

BY MR. ROBERTS:

Q      When you Zoom in, I want you -- I want you to see how far you can Zoom in before it becomes pixilated.

A      On this particular -- yeah.

Q      You testified earlier in your deposition that if the quality of the photograph isn't good enough, you wouldn't be able to see things like a razor burn or stuff like that.

I am going to ask your opinion:  Is quality of this photograph good enough for you to see whether or not there's evidence of grooming, shaving, waxing, those kinds of things?

A      Yes.

Q      It is good enough?

A      Yes.

Q      Okay.  And so was that a misstatement when

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 55

you said, "This image shows a female child with her black top parted and underwear down around her parted thighs, exposing her genital area clearly? Did you mean to say, "This is what appears to be a female child"?

A     This appears to be a female child, and I specified that. She has no pubic hair development. None.

Q     And you say here again, "She does not appear to be shaved"?

A     She does not.

Q     And what is that based on?

A     She is immature. She does not need to shave.

Q     Has anyone related -- you know that this is an adult, right?

        MR. WILSON: Form.

A     No, I don't know that. You are saying so.

Q     Well, not just me.

A     I don't know that.

Q     Okay. You are saying, though, that this child doesn't need to shave; that's your -- that's your medical opinion today?

A     My medical opinion is she is so immature, she does not need to shave and she does not appear

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**

**Page 56**

shaved.  She has all the immature anatomy appearance of a child who has not entered puberty.

Q     And you can tell all of that by this photograph?

A     Yes.

Q     And if I showed you a passport and the date of this picture, you would still say that she is prepubescent?

A     Well, I would not know when this picture was taken versus the passport picture taken that --

Q     No, I just said -- I just told that to you. I said if I -- if I showed you the passport and the date that this photograph was taken -- it's actually on the image that you are looking at.

But if I showed you that, you would disagree and you would say, "No, no, she's not an adult"?

A     I would -- I would not presume that those are the same two people.

Q     That is not my question.  You would say, "I don't care what her passport says, I don't care what the date of the photograph is, this is not an adult"?

A     This does not appear to be an adult, and I do not know if there is a passport linked to it or not or if it's a valid passport.  I don't know.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 57

Q Do you know whether or not she waxed?

A She does not need to wax.

Q Do you know if this image has been digitally altered?

A It doesn't appear so, but there are other experts to look at that.

Q When you say, "it doesn't appear so," what is that based on?

A How it looks.

Q Do you have any expertise in that?

A In how it looks? Yes.

Q In what a digitally altered photograph looks like?

A I do not have the expertise to find out if that's occurred or not.

Q Why would you be willing to offer an opinion about it appearing not to be digitally altered, then?

A Because it doesn't appear to be digitally altered.

Q What do you mean --

A But there are other experts that can look at that. It doesn't --

Q But I am asking you. You have said it. What is your basis for saying that?

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
*Kathleen M. Dully, M.D. on 06/18/2025*

Page 58

A   This is what little girls look like. No alteration required or involved.

**Q   So I'm very -- you're looking at me in this way and I will be honest with you, I am confused by your testimony, because now you seem to be very emphatically offering an opinion about the actual age of this person and not the appearance.**

A   Well, that's your opinion, but that's not what I have said. She appears to be a child, and she appears to be a child for the reasons that I have stated. And I have no burden to provide computer-based testimony or expertise in that area.

This is the beginning of looking at images. This is not necessarily -- sorry, the conclusion that would be reached if a good investigation occurred. I am not involved in that. I don't know how that went.

**Q   So you -- you indicate in this letter, you say, "She appears to have no pubic hair development." Why do you put that she does not appear to be shaved?**

A   Because she does not.

**Q   No, but today you have testified that she doesn't need to shave.**

A   She does not appear to need to shave. Her skin is perfectly smooth.

**Q   Why didn't you put that in your report?**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 59

A    Because that is more information for testimony.  I don't put all the transcript [sic] that I might say in the future in one letter.

Q    So these letters don't include the basis -- all of the bases for your opinions?

A    No.  It is not possible.

Q    Okay.  So "she does not appear to be shaved," that was just -- you just wrote that -- even though you didn't think that she needed to shave, you say "she does not appear to be shaved."  Because to me that sounds like you are saying, "Hey, she might shave but it appears like she hasn't shaved."

MR. WILSON:  Object to form if that -- if there was a question there.

THE DEFENDANT:  I think asked and answered would be good.

MR. ROBERTS:  I think you are not an attorney.

THE DEFENDANT:  I think you are right.

BY MR. ROBERTS:

Q    "She does not appear to be shaved" -- "she does not appear to be shaved," why did you write that?

A    Because she does not appear to be shaved.

Q    Does she appear to be waxed?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 60

A    No. She has perfectly smooth skin. There are no signs of a pubic hair that would still be there. There's no folliculitis. She does not have the signs of somebody who is doing things that they don't even need to do. She is a -- looks like a child.

**Q    We talked a little bit earlier in your deposition the last time we were here about your opinions regarding the model who had the Grade IV to V breasts, but you had her at sexual maturity I. Do you recall that testimony?**

A    Yes.

**Q    What do you recall about it? You are shaking your head for a reason, I guess. What do you recall about it?**

A    I said she could have mature breasts but I could not see them well, so I did not assess them for her maturity rating. So I can see in that statement that she could be mature which would be, you know, a IV or V.

**Q    You said you did not assess her breasts for a sexual maturity rating.**

A    Correct. You cannot see it, which is what my statement says, as I recall.

**Q    Well, you do --**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 61

A    That's what I said in the last deposition as well.

Q    **You do say that she could be a sexual maturity rating of a IV or V.**

A    Right.  I just said that.

Q    **I mean, it seems like that is an assessment.**

A    That she could be a IV or a V?

Q    **Correct.**

A    No, it is a concession.  It is not an assessment.  It is a concession.

Q    **What do you mean by concession?**

A    I am conceding that I cannot exactly assess her breast development because I cannot see that well, so she could be mature.  I cannot see that well.  And if she was mature, she could be a IV or a V.

Q    **Is that in the same way you couldn't really see the pubica -- pubert- -- pubic hair development in the knees-to-chest image?**

A    No.

Q    **Do you agree that you couldn't really see the area of pubic hair development in the knees-to-chest photograph?**

A    I do not agree.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 62

Q    You think you could see the lower abdomen above the genitals where the thighs meet the lower stomach; you think you could see that in that image?

A    We talked about that, no, and that is not the only thing to look at.

Q    Right.  But it is difficult to see that area, correct --

A    That area --

Q    -- in that image?

A    Yes.

Q    In that image?

A    In that image, that area is not well seen or seen at all, but the rest of the genitals are very well-exposed.

Q    Well, why didn't you give the same concession on that knees-to-chest image that you were talking about with the breasts?

A    Because the genitals are well-exposed, and I can see them and so can you.

Q    But the only opinion that you offer is to pubic hair development.

A    Right.

Q    And you cannot see the area where your pubic hair develops clearly in the knees-to-chest photograph, can you?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 63

A    Wrong.

Q    Well, I guess the image speaks for itself. I guess people can just make their own opinion about what it shows.

A    No.

Q    But your testimony is is that it does not show the area where pubic hair begins to develop in children?

A    Yes.

Q    Because your earlier testimony was that it begins in an inverse triangle above the genitals. That was your earlier testimony.

A    That is what you wanted from your diagram which is very limited. I am trying to help you with your diagram.

Q    Actually --

A    That is not the only exposure, and her knee-chest is not that exposure.

Q    I am going to share with you your deposition transcript. This is page 37 going into 38. I am asking you to describe the grades of sexual maturity rating. On page 37, I ask about III. And on 38, I ask about Grade IV. Can you read your answer for the jury, please?

A    I will read my answer, but there is no

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 64

jury.  Where am I starting?

Q    Ma'am, this very well may be played in front of a jury.  I hope you understand that.

But it is -- the question is:  At line 2 and Grade IV, can you read your answer at 3?

A    What is Grade IV?  Line 2, Grade IV.

Q    Line 3.

MR. WILSON:  Can you give us the page, please?

MR. ROBERTS:  38.

THE DEFENDANT:  Oh, 38.  Line 2 and Grade IV.  Grade IV, that was it on the end.  Okay, Grade IV --

BY MR. ROBERTS:

Q    Page 38, line 3, can you read your answer when I ask you to describe Grade IV?

A    "Grade IV fills out the entire triangle shape of the labial majora, the anterior commissure, and the mons pubis over to, but not involving, where the thighs join the pelvis."

Q    You could not see -- that's your answer, correct; that's not my -- my words?

A    That is my answering you on asking me what the stage is.  That is not about one of the photographs.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 65

Q    And then on -- keep that -- keep that there because I ask you:  "What do you mean by triangle?" Can you answer that?

A    Is that a question?

Q    Can you read your answer?  Can you read your answer?

A    "That is the shape when the legs are together of the hair-bearing parts over the mons pubis in front of the anterior commissure.  And on either side, it's wider.  In between the legs, it will come to" -- it's supposed to say -- "a point so that it may look like an inverted triangle."

Q    So I asked you to describe the difference between -- or what a Grade IV was.  You told me about an inverted triangle, correct?

A    From your diagram, yes.

Q    Actually, if you go back and look, I don't think I had shown the diagram at that point.

A    I don't know.

Q    Okay.  Are you answering this question on page 38 based on what my diagram was or were you just answering just what Grade IV is?

A    Well, we need to go back and read, then, because I don't --

Q    Take as much time as you'd like.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 66

THE DEFENDANT: Lower. I am getting paged. Let's see.

A     You were asking me for a basic description, so I was giving you a description by each grade.

Q     And you identified the triangle and distribution of the pubic hair within that triangle, inverted triangle, as the definition for Grade III, Grade IV, and Grade V, correct?

A     Well, that is how we teach the basics, yes.

Q     You cannot see the development of a triangle in the model depicted in the knees-to-chest image, can you?

A     No.

Q     And in the 0059, there is no triangle on that model, is there?

A     No.

Q     And that would indicate the possibility that she has groomed, correct?

A     There is a possibility that she groomed.

Q     And if the model had groomed, you would not be able to use what you described earlier in your testimony as the definition of Grade IV and Grade V? You would not be able to use that to sexual maturity -- to do a sexual maturity rating of her pubic hair, would you?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 67

A     I can't use your oversimplified, basic description that you asked me for as the sole source of information for a completely different exposure.

So the first image of the knee-chest is a different exposure and it is a good one, and she does not appear to have mature pubic hair there. It is not in the basic diagram that you have.

The subsequent photograph does not look like it is the same moment in time or the same photo shoot, and there is a possibility that she is groomed.

Also, there are children who can be a sexual maturity rating II to III, or III, and it is on either side of the cleft like this. I think it would be part of the investigation. Or had she been brought to me, I could have asked her and take it from there. I don't think that is different than anything I have tried to keep explaining.

Q     So on the date you reviewed these -- let me just ask you a hypothetical question, okay, because I guess we're just not going to agree.

If these images were taken during the same photo shoot at approximately the same time and location, would the fact or the possibility that this model had groomed alter your ultimate opinions that

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 68

you offered to Detective Preston?

A    I don't know if I had seen them all.  I don't think so because I do think this child in the knee-chest looks younger, and I don't think so.  But, of course, that is not what happened.

Q    Well, on April 5th, you did have all three images in front of you, correct?

A    Not at the same time, but it would appear I had several.  I am sorry, there are so many file names I don't know.

Q    So you are saying at the time of April 5th when you wrote the letter regarding 0059 and zero, zero, six, paragraph one [sic], you formed the opinion that these images were taken at different times?

A    Yes.

Q    And it was your opinion back then that she possibly had groomed between the first knees-to-chest image and then the 059 image?

A    No.  She had aged and developed more pubic hair and could have groomed.

Q    But you formed that opinion on April 5th, 2023?

A    Yes.

Q    You just didn't include it in your -- in

Page 69

your letter?

A   Well, it is included because it doesn't change my original determination on the first photo. But I didn't go on for pages about it, no.

Q   **Well, I am not asking if you went on for pages.  But you didn't say something like, "These pictures appear to be taken at different times, at different ages, of the same model"?**

A   I did not say that.

Q   **But that was, in fact, your opinion back then?**

A   Yes.

(Plaintiff's Exhibit No. 4, previously marked, was identified for the record.)

BY MR. ROBERTS:

Q   **Okay.  I am going to share again Exhibit 4, and I am going to go to the first paragraph this time.**

**This is the YCBLVVFQ.  Can you pull this image up?**

(Exhibit 8-A, previously marked in Detective Preston's deposition, was identified for the record.)

MR. WILSON:  I am pulling up on the laptop what was marked in Detective Preston's deposition as Exhibit 8-A, YCBLVVFQ, it looks like,

Page 70

underscore 0.

MR. ROBERTS: Thank you, John.

BY MR. ROBERTS:

Q     Have you had a chance to look at that, Doctor?

A     I see it, yes.

Q     Do you recognize this model as the same model which is the subject of the knees-to-chest and 0059 and 0065(1)?

A     I think she is the same model. She looks older to me, but I think she is the same model based on appearance.

Q     And the appearance to you is that this is an older version of the model, correct?

A     Yes.

Q     All right. Despite that, when in the knees-to-chest 0059 you have this model, we'll call her Melania D, as a Grade III or IV sexual maturity rating, now, even though you think that she appears older, you have the same model as a sexual maturity rating of I, prepubescent.

Can you please explain that?

A     That is based on the view of her pubic hair being completely absent.

Q     Right.  But you just testified under oath

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 71

that looking at her, she appears to be older than when she was depicted in 0059, correct?

A    I think so, yes.  That is my opinion.

Q    This isn't Benjamin Button, though, is it? I mean, she gets older over time; her puberty gets more developed over time, correct, not less developed?  Do I understand that correctly?

A    Yes.  That would be the normal sequence, yes.

Q    Yeah.  Can you please explain how an older version of Melania D has a lower sexual maturity rating, a prepubescent maturity rating?

A    Well, if she is the same child, then she would be altered.

Q    Is it your testimony that this is an altered image?

A    It could be.  I don't know that it is the same child.  I am assuming that --

Q    I -- sorry, sorry.  I didn't mean to cut you off.  Go ahead.

A    I don't know that it is the same child.  I am assuming that it is possible that she is the same child.

Q    So when you say "altered," what do you mean?

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 72

A    That her pubic hair is missing if she is the same child because it would appear she had it before.

Q    Well, in this letter, you specifically say she -- in regards to this image, that she does not appear to be shaved.  Was that a lie?

A    Which letter are you talking about?

Q    April 5th --

A    Oh --

Q    -- YCBL.  You told the detective that she does not appear to be shaved.  Today you are testifying that she must be altered in some way.  I am asking: Was that a false statement that you gave Detective Preston?

A    No, I didn't know it was the same child, if it is.

Q    You just testified, Doctor, that you believe that this is the same child but older.  Is that not your opinion?

A    I testified that this could be the same child in my opinion, but I don't know.

Q    So you don't know if this model has been shaved or waxed or the image has been digitally altered at all, do you?

A    No, I don't.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 73

Q    And yet you told Detective Preston that it did not appear that she had been shaved, right?

A    It does not appear that she was shaved.  It does not appear, no.

Q    But now your testimony is that it does appear that she may be shaved.

A    No, your testimony is.  She is -- if she is the same child and the child had pubic hair before, then we would know that she could be altered one way or the other, or grooming or computer manipulation.  But she does not appear to be shaved in this image.

I -- I don't know if she is the same child.  I do think that's possible that it could be her sister or some other child of a same heritage.  But the investigation should clear that up.

Q    So you had all of these images on the same day, April 5th, correct?

A    Eventually, there were more images, yes.

Q    On April 5th, you had both 0059 and the YCBLVVFQ, correct?

A    Yes.

Q    And at that time, you thought that they might be the same person, correct?

A    I did not know this was the same person but I thought that they could be.  The -- this is not the

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 74

same outfit, the same earrings, the same hair, the same background. None of that is there. This looks pretty different. I don't know if it is the same child or not at a different age in her time of growing up, and it looks pretty clearly like a different photo shoot. If --

Q     Okay. You already testified -- I am sorry. I am sorry.

Yeah, it is clearly a different photo shoot. I agree with you, yes. But I think you testified that you thought that this was an older version possibly of the Melania D that was described in 0059, correct?

A     I am conceding that that is possible.

Q     Right. And so on the day that you wrote this letter, April 5th, you knew -- you knew about this possibility that this was the same model and that she had shaved between the first photo shoot and then this photo shoot, correct? You knew that at the time that you wrote this letter?

A     No, I did not know that. I am still not sure of that. I --

Q     I am not asking you -- sorry, ma'am. I am not asking if you are sure. I said you knew about the possibility that this was the same model that was

Page 75

older; you knew that was a possibility on April 5th when you looked at all of these images, correct?

A    I don't remember assessing that, no.

Q    Well, as we assess it today, do you have any concerns about your affirmative statement to Detective Preston that she does not appear to be shaved?

A    No.  I mean, I would concede for a jury that this could have turned out to be the same child at a different age.  It's in the separate letter along with the other Bay Heart, and it is not one of the two that she told me was the same female child. And I don't remembering thinking that it was, and it is not the same photo shoot.

Q    Right.  Today you've testified that you think maybe it's the same model but she is older, correct?

A    Yeah.  And now that I see them in this sequence, it could be the same child.  But I said I did not know that.

Q    Well, you had all of these photographs on April 5th in front of you with Detective Preston, correct?

A    And she said the other two were the same child.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 76

Q    Right. What I am trying to understand, as we sit here today, is how is it possible that you have given the opinion that an older version of Melania D has a lower or more immature sexual maturity rating?

A    I have conceded that she could be the same person, but I did not know that and I do not know that. If she is the same person, then her pubertal development continued and that would be consistent with -- I'm introducing another term -- her using some sort of alteration, technique, or the computer being done for her.

This was not represented to me as the same person, and I don't know that it is. I am conceding that it could be, but I did not know that and I don't know that now.

Q    While we're conceding things, will you concede that the first three images -- the knees-to-chest, 0059, and 0065(1) -- could be all from the same photo shoot?

A    The child with the knee-chest position looks younger to me. It does not look like the same moment in time to me.

Q    Would you concede that it could be, though?

A    I don't think it looks that way. It is a

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 77

costume in a set, and the child looks different.

Q    Let me ask the converse.  Your entire opinion that you offered to Detective Preston is predicated on the opinion that these photographs were taken at different times, substantially different times?

A    I don't know what "substantially different times" means.  I've already said I don't know how many weeks or months might have gone by.

Q    But your entire opinion to Detective Preston is predicated on your opinion that the knees-to-chest photo was taken weeks, months, some time prior to 059 and 0065(1)?

A    That's how it appears to me, yes.

Q    Okay.  And when did you develop that opinion that they are different times -- that they were different times?  When did you develop that opinion?

A    I don't think I've changed it.

Q    That was your opinion on February -- on April 5th?

A    My assessment on April 5th did not change what I said on February 22.

        MR. ROBERTS: Okay.  We have been going for a little while. Let me take a break.  Everybody

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 78

take a comfort break.  We may not have that much longer.  Thank you.

THE VIDEOGRAPHER:  We're off the record at 4:48 p.m.

(Recess from 4:48 p.m. to 4:55 p.m.)

THE VIDEOGRAPHER:  This begins media unit 2.  We're back on the record at 4:55 p.m.

MR. ROBERTS:  Okay.  Dr. Dully, I do not have any other questions.  I will turn it over to Mr. Carson.

THE DEFENDANT:  Thank you.

CROSS-EXAMINATION

BY MR. CARSON:

**Q      Hi, Dr. Dully.**

A      Hello.  Good afternoon.

**Q      Yeah, good afternoon.  My name is Matt Carson.  We have met one other time I think at your deposition.  My law firm represents Detective Preston who has also been sued in this litigation.**

**I have just a few questions for you just to get on the record kind of what your overall experience is in helping law enforcement as a member of the Child Protective Team.**

**I think you testified about this a little bit at your first deposition, but there have been**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 79

other instances where you have had the opportunity to assist law enforcement, correct?

A    Yes.

Q    And would some of those have been when you have been shown pictures, images, videos, and asked to opine on the appearance of the age of the individual in the photograph image or video, correct?

A    Yes.

Q    And those -- have those been mostly close calls? Meaning, does law enforcement come to you when there is -- and, unfortunately, this is, I imagine, part of the work that you do as well as my client -- instances where it is a six-year-old or an eight-year-old or somebody who is, you know, clearly very, very young?

A    That has happened. It used to happen in the past. But now I think most law enforcement agencies are not bringing us the easy ones. They are bringing us the in between children where they might decide to use a medical opinion; they might not.

Q    And is it your understanding that that was a major -- I am sorry, there is background noise.

Is that your understanding, that that is what Detective Preston was asking you to help with?

A    Yes.

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 80

Q     We talked a little bit about an investigation maybe resulting in the location of the individual in the photograph, correct?

A     Possibly --

Q     Possibly.

A     -- yes.

Q     In your experience, if you know, how often is the individual that is in these photos and these images local or, otherwise, able to be identified and located?

A     I see the patients and am told about the images that have been found but don't see those.  But if they have a patient, they will bring me the patient and handle the images on their own.

However, I don't know a number of how many cyber tips go out there and how each law enforcement functions and what the different state laws and UCMJ may be saying now, so I follow law enforcement's leads since they know their local policies and procedures and laws.

Q     Do you understand that at least some of the time that you work with law enforcement in providing an opinion about the age of an individual and an image, that the individual will never be located?

A     I believe that that is probably true very

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 81

often but I don't know a number.

Q    Does it follow, then, that you understand that a lot of times the investigation is into potential charges for possession of child pornography?

A    That can happen.  That is really not my interest.  It is in finding the local victims which is the reason that I participate.

Q    Did Detective Preston ever tell you what she was investigating with respect to any of the photographs she showed you?

A    All I knew is this was a National Center For Missing and Exploited Children cyber tip, and that this law enforcement agency had been chosen because there might be proximity.  I mean, that is all I knew.

Q    And proximity to what, ma'am, or to who?

A    That maybe this ZIP Code or this area of Florida or that that particular office might have a role to play.  I don't know if that's the victim or the possessor or what, but it -- for some reason, the National Center would have picked St. John's Sheriff, and I assume there's a logical reason.

Q    You assist other law enforcement agencies in your general geographic area, correct?

Page 82

A    Yes.

Q    Like the Jacksonville Sheriff's Office,
Nassau Sheriff's Office, that sort of thing?

A    Yes.

Q    Okay.  Same --

A    Clay.

Q    Clay, right.  Same type of work, different
law enforcement agencies with a different
jurisdiction?

A    Yes.

Q    You understand that when these agencies
come to you and ask you to provide your opinion on
the appearance of an individual in these images, that
they are going to use that opinion, at least in part,
in their decision-making moving forward; is that
correct?

A    Yes.

Q    For example, if they are going to decide
whether or not they are going to seek a search
warrant, they might use your opinion in that
decision; is that correct?

A    Yes.

Q    In getting the search warrant, they might
tell the Judge, "We have shown this image to
Dr. Dully, she has these qualifications, and it was

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 83

her opinion that the individual appeared to be of X or Y age."

Do you understand that that happens from time to time?

A    Yes.

Q    You understand that if you would have looked at any of these pictures and said to Detective Preston that the individual -- let me -- let me start my question all over again.

If law enforcement comes to you and you give an opinion that you believe the individual in an image appears to be 18 years or older, that that would impact the course of the investigation?

A    Yes.

Q    Have you ever been deposed in any other case involving your opinions as it relates to the appearance of individuals in an image?

A    I have testified to them. The military doesn't do depositions. They do Article 32s. And California doesn't do depositions. I did three in 20 years there.

So, no, I was probably never deposed in these cases, but I was testifying in a handful of them.

Q    And in those cases, were any of those of

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 84

situations where the individual in the image was not found?

I can ask that in a different way.  Were these possession of child pornography cases?

A    To my knowledge, yes.

Q    Okay.  To your knowledge, was anybody -- law enforcement, anyone else -- ever able to locate the individuals in these photographs?

A    Not to my knowledge, no.

MR. CARSON:  Dr. Dully, that is all the questions I have for you.  Thank you very much.

THE DEFENDANT:  Thank you.

MR. WILSON: All right.  This is John Wilson for Dr. Dully.  I just have a couple questions for you.

CROSS-EXAMINATION

BY MR. WILSON:

Q    The first is:  Do you know the Plaintiff in this case, William Lee Lawshe?

A    No.

Q    After April 5th when you provided your letters to the detective on this case, did you have any further involvement in the case at all?

A    No.

Q    When was the next time you heard about the

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 85

case after you authored your April 5th letters?

A    In the Spring of 2024, I was told there had been an article in the newspaper about this particular case, and that's all I knew.

Q    So you didn't participate in a search warrant?

A    No.

Q    And you didn't participate in or were consulted beyond your letters in any sort of decision to make an arrest or file a charge?

A    Not at all.

MR. WILSON: Thank you.  That is all the questions I have.

MR. ROBERTS: I just have one -- kind of a follow-up with maybe one or two questions.

REDIRECT EXAMINATION

BY MR. ROBERTS:

Q    But, Dr. Dully, if you were told in this case after rendering your opinions that the models in question had been located and identified and that a licensed attorney in California who was a records custodian had produced age verification information, the dates of the photographs that established that the models were 18 at the time of the images, would you have testified in that case consistent with your

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 86

opinions that you wrote in these three letters?

MR. WILSON:  Object to form.  But go ahead.

MR. CARSON:  Join.

A    I would testify about my work, yes.  But I would concede that I am not the end of the case at all and not part of the investigation determinations.

MR. ROBERTS: Okay, thank you.  I don't have any other questions.

So we'll order a transcript.  And do you guys want to read or waive, Mr. Wilson?

MR. WILSON:  Do you know what that question is?

THE DEFENDANT:  Oh, I always waive.

MR. WILSON: Okay.  We'll waive.

THE VIDEOGRAPHER:  Any other transcript orders or video orders, Counsel?

MR. WILSON: Yes.  One for John Wilson, Dr. Dully's transcript.

THE VIDEOGRAPHER:  We are off the record at 5:06 p.m.  This concludes the deposition.

COURT REPORTER:  Mr. Wilson, are you ordering a copy, then, of the transcript?

MR. WILSON: Yes.

COURT REPORTER:  Mr. Carson, do you need a copy?

**Page 87**

MR. CARSON:  No, ma'am.

(Continued video Zoom deposition concluded at 5:10 p.m.)

                              *   *   *

**Page 88**

CERTIFICATE OF OATH

STATE OF FLORIDA            )

COUNTY OF HILLSBOROUGH   )

I, Deborah J. Guest, RPR, Notary Public, State of Florida, do hereby certify that the witness, KATHLEEN M. DULLY, M.D., remotely appeared before me on June 18th, 2025, and was duly sworn and showed her work identification.

Signed the 25th day of June, 2025.

*Deborah J. Guest*

_____
Deborah J. Guest
Notary Public, State of Florida
Commission Number:  HH 280696
Expires:  August 6th, 2026

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025

Page 89

CERTIFICATE OF REPORTER

STATE OF FLORIDA          )

COUNTY OF HILLSBOROUGH   )

I, Deborah J. Guest, RPR, Notary Public, State of Florida, certify that I was authorized to and did stenographically report the continued remote video deposition of KATHLEEN M. DULLY, M.D., that a review of the transcript was not requested; and that the foregoing transcript, pages 4 through 87, is a true and accurate record of my stenographic notes.

I further certify that I am not a relative, employee, or attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this the 25th day of June, 2025.

_Deborah J. Guest_

_____
Deborah J. Guest, RPR
Shorthand Reporter

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**        Index: 0..absent

---
#### 0
---

**0**  70:1

**0059**  14:25
15:12
20:9,14,20
21:19,20
24:4 25:4,
16 27:9
28:18
30:20
31:13,16
32:13
33:3,17,19
34:13,24,
25 42:17
43:8 45:21
46:5,19
47:3,7,15,
23 48:17
66:14
68:12
70:9,17
71:2 73:19
74:13
76:19

**0065**  22:5
33:20

**0065(1)**  20:9
24:25
25:4,17
27:9 28:18
33:3,17
34:13 70:9
76:19
77:13

**059**  68:19
77:13

---
#### 1
---

**1**  4:19
48:16

**12**  20:5

**15**  20:5

**18**  50:19
52:1,3,7,8
53:21
83:12
85:24

**18th**  6:6

**1950s**  41:1

---
#### 2
---

**2**  4:20
64:4,6,11
78:7

**20**  83:21

**2023**  12:3,
14 19:15,
22 20:13
21:11
22:22 26:5
68:23

**20230122_
174408duckduck
go.jpg**  52:25

**2024**  85:2

**2025**  6:7

**22**  21:13
77:23

**22nd**  12:3
13:23
19:10,15
23:3 33:13
34:8 38:1
50:17

---
#### 3
---

**3**  4:21
37:4,6
64:5,7,15

**32s**  83:19

**37**  63:20,22

**38**  63:21,23
64:10,11,
15 65:21

**3:10**  6:6

---
#### 4
---

**4**  4:23
18:25 19:4
50:12,16
69:13,16

**4:48**  78:4,5

**4:55**  78:5,7

---
#### 5
---

**5**  21:14
50:15

**5:06**  86:20

**5:10**  87:3

**5th**  12:14
18:18
19:12,22
20:13
21:11 26:5
27:8 33:7
34:11
50:24
68:6,11,22
72:8
73:17,19
74:16
75:1,22
77:21,22
84:21 85:1

---
#### 8
---

**8-A**  69:21,
25

**8-B**  22:25
23:10,23
24:23

**8-C**  15:3
25:12,16

**8-D**  23:10
24:24
25:12,17

**8-E**  53:1,6

---
#### A
---

**abdomen**
48:14 62:1

**absent**  70:24

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**        Index: abuse..appears

| | | | |
|---|---|---|---|
| **abuse** 9:10, 14 | **affidavit** 4:20 | 24:19 32:9 47:6 71:20 86:2 | 16:23 20:12 31:3 35:4,6 37:21 64:18 65:9 |
| **Academy** 39:20 | **affirmative** 21:10 75:5 | **allegations** 9:15 | **apologize** 19:7 |
| **accepted** 26:15 | **afternoon** 6:5 78:15, 16 | **alter** 67:25 | **appearance** 13:4,20 14:5,6 16:9,19 17:5 32:10 34:21,22 35:12,13, 14 36:1, 11,12 41:6,7,8, 16 46:1,2 50:4,11,22 52:3,6,8 53:17 56:1 58:7 70:12,13 79:6 82:13 83:17 |
| **accoutrements** 25:22 | **age** 12:24 14:9,20 20:6 34:19 41:4 47:12 50:7,19,22 52:1,2,3, 5,6,7,8 53:21,22 58:6 74:4 75:10 79:6 80:23 83:2 85:22 | **alteration** 58:2 76:11 | |
| **accusatory** 43:15,17, 20 | | **alterations** 21:9 | |
| **acknowledged** 36:16,17 46:19 | | **altered** 35:9,11 57:4,12, 18,20 71:14,16, 24 72:12, 24 73:9 | |
| **activities** 8:25 9:14 | | | |
| **activity** 8:8 | | **altering** 13:14 | |
| **actual** 12:24 14:9,20 41:4 42:11 50:7,22 51:20 52:1,5,6 58:6 | **aged** 68:20 | **American** 9:8 39:20 | |
| | **agencies** 79:18 81:24 82:8,11 | **anatomical** 38:10 | |
| **additional** 12:16 19:23 26:7 33:8 | **agency** 81:14 | **anatomy** 56:1 | **appearances** 51:14 |
| | **ages** 69:8 | **ankles** 23:19 | |
| | **agree** 19:14 23:24 25:8 31:13,21 35:8 43:18 49:5,21 61:22,25 67:21 74:10 | **answering** 40:12 64:23 65:20,22 | **appeared** 27:21 83:1 |
| **administrative** 7:15,23 | | | **appearing** 57:17 |
| **adult** 55:16 56:17,22, 23 | | **answers** 40:10 52:23 | **appears** 15:22 16:5 33:4 34:9 45:22 50:19,21 |
| | **ahead** 18:8 | **anterior** | |

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 209 of 230
PageID 2961
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025        Index: applies..bit

51:15 55:4,6 58:9,10,18 59:12 70:19 71:1 77:14 83:12

**applies** 8:15

**appointment** 12:1

**appropriately** 40:20

**approximately** 27:22 29:5 67:23

**April** 12:14 18:18 19:12,21, 22 20:13 21:11,14 26:5 27:8 33:7 34:11 50:24 68:6,11,22 72:8 73:17,19 74:16 75:1,22 77:21,22 84:21 85:1

**area** 37:16 38:10,14 47:15,23 48:1,3,4, 10,11,18 51:3,12

55:3 58:12 61:23 62:7,8,12, 23 63:7 81:18,25

**areas** 48:14

**arising** 10:3

**arms** 28:8

**arrest** 85:10

**article** 4:20 83:19 85:3

**assess** 40:14 60:17,21 61:13 75:4

**assessing** 37:18 39:22 75:3

**assessment** 39:19 46:16,19 61:7,11 77:22

**assist** 79:2 81:24

**assume** 5:9 81:23

**assuming** 17:22 71:18,22

**attached** 4:10,17 5:10 15:10

**attempting**

11:22

**attempts** 8:19

**attorney** 10:3 59:18 85:21

**attorneys** 10:5,6

**authored** 85:1

———————

**B**

———————

**B06f** 22:15, 17

**B06fe687** 23:21

**back** 18:19 26:23,25 27:2 37:24 44:5 46:11 65:17,23 68:17 69:10 78:7

**background** 15:18 28:20 74:2 79:22

**bare** 28:8

**based** 17:4 34:19 36:10,11 38:22 45:25 55:12 57:8

65:21 70:11,23

**bases** 59:5

**basic** 66:3 67:1,7

**basics** 52:12,14, 15 66:9

**basis** 44:12 52:16 57:25 59:4

**Bay** 53:3 75:11

**begin** 4:14 6:2

**beginning** 16:8 58:13

**begins** 6:7 12:10 63:7,11 78:6

**behalf** 9:5

**belly** 13:8 32:2 48:13 52:21

**Benjamin** 71:4

**biological** 36:7

**bit** 31:2 35:25 54:5 60:7 78:25 80:1

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025          Index: black..cleft

**black**  51:2, 11 55:2

**blue**  19:6

**Board**  9:8

**body**  38:10 48:11

**book**  39:17, 21 40:8,13

**break**  31:12 77:25 78:1

**breast**  37:12 61:14

**breasts** 52:21 60:10,16, 21 62:17

**bring**  80:13

**bringing** 79:18,19

**brought** 21:7,10 38:1 67:16

**building** 7:13,16, 17,23

**buildings** 7:19

**burden**  58:11

**burn**  54:17

**buttocks** 54:5

**button**  13:8

32:2 48:13 52:21 71:4

———————
C
———————

**California** 83:20 85:21

**call**  5:18 9:9 15:19 51:17 70:17

**called**  5:17

**calls**  79:10

**camera**  23:19

**Cameron**  6:12

**care**  56:21

**Carson**  5:17, 19,20,22 6:21 78:10,13, 17 84:10 86:3,24 87:1

**case**  4:25 8:15 10:4, 9,13,23 11:23 16:8 17:5 22:25 23:7 44:6 46:23 49:11,15, 18 53:3 83:16 84:19,22,

23 85:1,4, 19,25 86:5

**cases**  83:23, 25 84:4

**Center** 81:12,22

**chance**  11:4 70:4

**change**  10:5 21:14 31:11 34:18 47:11,12 69:3 77:22

**changed** 77:19

**charge**  85:10

**charges**  81:4

**chemical** 21:8

**chest**  48:17

**child**  8:1,3, 4,6 9:10, 12,14,18 17:14,15 20:2 26:7, 14,16 35:15 50:18 51:1,10, 18,20,25 53:11,14, 15,19 55:1,5,6,

22 56:2 58:9,10 60:6 68:3 71:13,18, 21,23 72:2,15, 18,21 73:8,12,14 74:4 75:9, 12,19,25 76:21 77:1 78:23 81:4 84:4

**children** 7:21 63:8 67:12 79:19 81:13

**chose**  14:18

**chosen**  81:14

**chronological** 53:20,22

**circumstances** 10:3,13

**clarity**  4:17

**Clay**  82:6,7

**clear**  13:22 14:3,19 32:5 36:2 45:15,16 50:10 53:12 73:15

**cleft**  54:4 67:14

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 211 of 230
PageID 2963
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025     Index: client..costume

client  79:13

clinic  7:16,
  17,20

clinical
  40:9,15,23

clinicians
  40:14

clog  5:22

close  37:13
  79:9

closed  15:23

clothes
  24:11
  28:6,7
  29:17

Code  81:18

colloquially
  8:17 53:3

color  15:20
  28:20

colored  12:6

comfort  78:1

comment
  46:21

commenting
  13:20

commissure
  64:18 65:9

common  31:18

completely
  47:20,22
  67:3 70:24

composite
  4:23

computer
  73:10
  76:11

computer-based
  58:12

concede  75:8
  76:18,24
  86:5

conceded
  76:6

conceding
  61:13
  74:14
  76:14,17

concerns
  75:5

concession
  61:10,11,
  12 62:16

concluded
  87:2

concludes
  86:20

conclusion
  58:14

conducted
  6:10 10:11

confirm  20:3
  33:8

confirms
  34:11

confused
  58:4

consistent
  28:12
  33:11
  36:18,19
  47:9,11
  76:9 85:25

consultation
  41:11

consulted
  85:9

contacting
  18:6,9

continuation
  5:8,13,14
  9:21 10:18

continued
  6:7 76:9
  87:2

converse
  77:2

copy  19:15
  86:22,25

Corporations
  10:9

correct
  12:3,7,11,
  14,20,25
  13:4,11
  14:10,21
  16:2,12
  17:1,5,18,
  21 18:17

20:16
21:5,12,
16,17
26:1,13,19
30:5,12
31:15
32:8,15
33:9,14,21
34:1,8,13
36:4
37:12,20
38:23
40:6,9,25
43:4
47:10,23
48:5,12
52:20 54:2
60:23 61:9
62:7 64:22
65:15
66:8,18
68:7 70:14
71:2,6
73:17,20,
23 74:13,
19 75:2,
17,23
79:2,7
80:3 81:25
82:16,21

correctly
  10:24
  11:18
  20:22 26:8
  50:9 71:7

costume
  29:9,12

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 212 of 230
PageID 2964
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025   Index: costumes..detective

77:1

**costumes**
29:17

**counsel** 4:3
6:2,15
86:16

**Counselor**
5:12

**couple** 84:14

**court** 6:13,
16,23 7:4
22:7 29:10
44:14,15
86:21,24

**cover** 52:21

**CPT** 11:20

**crime** 18:16

**CROSS-
EXAMINATION**
78:12
84:16

**custodian**
85:22

**cut** 71:19

**cutting**
18:14

**cyber** 80:16
81:13

---

**D**

---

**D2635841644b39
0** 21:21

**D263b** 12:10
22:4

**date** 11:25
19:10
56:6,13,22
67:19

**dates** 11:25
85:23

**day** 32:12
41:25
45:17
73:17
74:15

**days** 32:15
33:5

**debate** 8:10,
13

**debates** 8:14

**Deborah** 6:13

**decide** 79:20
82:18

**decision**
82:21 85:9

**decision-
making** 82:15

**DEFENDANT**
7:3 22:8
27:2,11,14
29:12,22
43:18
59:15,19
64:11 66:1
78:11
84:12

86:13

**definition**
66:7,22

**degree** 17:6

**demonstrative**
4:22

**depicted**
12:25
14:10,21
20:4 21:19
26:11 30:4
41:5 47:15
66:11 71:2

**depictions**
16:20

**depicts**
15:14

**depilatories**
21:6

**deposed**
83:15,22

**deposition**
4:11,18
5:9,11
6:7,10
9:21
10:17,18,
21 11:8
12:19 13:7
15:4,11
23:11
25:13
35:24 36:2
37:5 43:15
50:17

53:1,7
54:14 60:8
61:1 63:20
69:22,24
78:18,25
86:20 87:2

**depositions**
83:19,20

**describe**
63:21
64:16
65:13

**describing**
23:15
45:21

**description**
23:5 66:3,
4 67:2

**designed**
40:14,18,
19,25

**detail** 35:25
37:14

**detective**
4:11 6:21
9:23,25
11:12,17
12:20
13:22 14:4
15:3,11
18:3,16
23:1,10
25:12 26:4
36:22 38:1
44:17 45:2

48:23
49:15,18
53:1,6
68:1
69:21,24
72:10,14
73:1 75:6,
22 77:3,10
78:18
79:24 81:9
83:7 84:22

**detectives**
18:15

**determination**
20:3 69:3

**determinations**
86:6

**determine**
17:8

**determining**
16:10
37:17,18

**develop** 63:7
77:15,17

**developed**
68:20
71:6,7

**developing**
40:20

**development**
13:10
16:16 21:5
32:8 35:5
36:1
37:11,12,

15 51:16
53:14 55:7
58:18
61:14,19,
23 62:21
66:10 76:9

**developmentall
y** 32:18
34:4,16

**develops**
16:23
62:24

**diagnose**
40:21

**diagram** 4:22
37:10,22
38:12
39:5,6
63:13,15
65:16,18,
21 67:7

**diagrams**
16:14,20,
21 38:11
39:9,14,21
40:10
47:19

**difference**
35:25
65:13

**difficult**
62:6

**digital**
10:22
13:14 21:8

**digitally**
57:4,12,
17,19
72:23

**direct** 7:8
15:7

**directs** 9:12

**disagree**
48:21
56:16

**discussing**
4:14 24:24

**discussion**
6:4

**disorders**
40:21

**displayed**
25:17
38:10

**displays**
37:11

**distinction**
36:3

**distributed**
39:1

**distribution**
35:7 36:4,
8,10,24
38:21 66:6

**division**
7:20 8:2,
5,7

**doctor** 6:23

7:10 16:5
70:5 72:17

**doctors**
39:22

**drapes** 28:23

**drawing**
37:10

**dress** 29:20

**dropped** 5:18

**Duckduckgo**
52:19

**Dully** 4:24
6:8,20 7:5
27:20
30:11
40:13 44:1
78:8,14
82:25
84:10,14
85:18

**Dully's** 23:4
24:25
86:18

**duly** 7:6

---
**E**
---

**e-mail**
11:16,24

**e-mails**
11:21

**earlier**
32:14
33:2,4

39:2 48:22 54:14 60:7 63:10,12 66:21

**early** 31:3

**earrings** 26:18,20, 21,22 27:24,25 74:1

**easy** 51:8 79:18

**eight-year-old** 79:14

**electrolysis** 21:7

**emphatically** 58:6

**end** 64:12 86:5

**endeavor** 45:6

**ended** 10:20

**enforcement** 9:14 12:7 18:3 42:25 43:3 78:22 79:2,10,17 80:16,22 81:14,24 82:8 83:10 84:7

**enforcement's** 80:18

**engage** 8:25

**engineering** 8:18

**ensure** 40:19

**entered** 56:2

**entire** 12:10 40:4 64:17 77:2,10

**equipment** 7:22

**establish** 9:18

**established** 85:23

**establishes** 9:11

**et al** 6:9

**Eventually** 73:18

**evidence** 22:25 42:11,12, 15 54:20

**exact** 14:15, 16 21:24 34:20

**exam** 7:21 53:18

**EXAMINATION** 7:8 85:16

**examine** 8:19

**examined**

12:5

**exhibit** 4:14,19, 20,21,23 15:3,11 18:25 19:4 22:25 23:23 24:23,24 25:16,17 37:4,6 50:12,15, 16,25 53:6 69:13,16, 21,25

**exhibits** 4:4,12,17 5:10 23:10 25:12

**experience** 78:22 80:7

**expert** 4:21 21:4 43:3 44:3

**expertise** 13:16 46:9 57:10,14 58:12

**experts** 57:6,22

**explain** 24:6 70:22 71:10

**explained** 12:23 14:8

**explaining** 67:18

**Exploited** 81:13

**expose** 23:19

**exposed** 31:2 47:19,23 48:2,4,7, 10

**exposing** 51:3,12 55:3

**exposure** 32:16 63:17,18 67:3,5

**exposures** 39:25

**extent** 30:1 47:25

**eyes** 15:23 31:1

---

**F**

---

**face** 30:25 52:20

**facial** 32:19

**fact** 9:11 40:24 67:24 69:10

**factor** 16:10

**factors**

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025          Index: facts..grade

37:18

facts  10:3,
  13

fair  4:15
  50:5

faith  43:12

false  45:1,4
  72:13

familiar
  8:21

features
  32:19

February
  12:3 13:23
  19:10,15
  21:13 23:3
  27:3,6
  33:7,13,25
  34:8 38:1
  50:17
  77:20,23

female  15:14
  16:11 20:2
  22:20
  23:25
  26:7,10
  50:18
  51:1,10,17
  55:1,4,6
  75:12

females
  39:10

field  5:5

figure  22:9

file  4:9
  12:9,10
  14:25 20:8
  22:2,3,11,
  14,16,17,
  21,24
  23:3,15,16
  68:9 85:10

files  22:2

fills  64:17

find  39:14
  45:18,19,
  24 57:14

finding  81:7

firm  78:18

fits  35:17

floor  15:24
  23:17
  26:12
  28:9,10

Florida  8:6
  9:6,19
  81:19

focused  53:2

folliculitis
  60:3

follow  33:22
  80:18 81:2

follow-up
  85:15

forehead
  31:1

forensic

7:14 8:5,
  12 49:11,
  14,16,17

forensics
  8:9,17,22
  9:9

form  4:11
  16:2 18:8
  20:18,21
  32:9 36:25
  41:18
  43:14
  48:20
  55:17
  59:13 86:2

formed
  68:13,22

forward
  82:15

found  80:12
  84:2

front  15:12
  64:3 65:9
  68:7 75:22

frontal
  53:25 54:3

functions
  80:17

future  59:3

_____

G
_____

gallery  5:23

gave  72:13

general  11:9
  13:12
  81:25

generally
  31:25 45:1

genital
  23:19
  51:3,12
  55:3

genitals
  13:9 34:23
  35:4 37:17
  38:15 54:1
  62:2,13,18
  63:11

geographic
  81:25

girls  39:20,
  23 58:1

give  7:1
  14:8 22:2
  45:6 62:15
  64:8 83:11

giving  53:22
  66:4

Global  6:14

good  6:5
  7:10 43:12
  54:15,19,
  23 58:15
  59:16 67:5
  78:15,16

gotcha  25:4

grade  16:15,

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 216 of 230
PageID 2968
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025          Index: grades..III

16 33:13 34:1,12 60:9 63:23 64:5,6,11, 12,13,16, 17 65:14, 22 66:4,7, 8,22 70:18

**grades** 63:21

**groomed** 16:25 31:14 32:5 36:21,23 42:6,9,17, 19,23,24 43:8,21 45:14,22 66:18,19, 20 67:11, 25 68:18, 21

**grooming** 16:2 17:9 30:19 31:23 36:18,19 44:4 54:20 73:10

**grow** 31:25

**growing** 74:5

**guess** 11:11 16:10 30:2 42:22 60:14 63:2,3 67:21

**Guest** 6:14

**guys** 86:10

---

**H**

---

**habits** 47:12

**hair** 13:9, 15 16:2,9, 16,19 17:1,5,10 20:12,15, 21 21:4,8 30:5,19 31:3,4,19, 25 32:8 35:2,5,11 36:1,4,6, 8,10,23 37:12 38:22,25 42:6,18,20 43:8 44:4 47:8,9,15 48:1,4,7, 10,15 51:15 52:10 53:11 55:7 58:18 60:2 61:19,23 62:21,24 63:7 66:6, 25 67:6 68:21 70:23 72:1 73:8 74:1

**hair-bearing**

65:8

**hairstyle** 28:1,4

**hand** 6:24 53:15

**handful** 83:23

**handle** 80:14

**happen** 79:16 81:6

**happened** 5:19 30:9 68:5 79:16

**happening** 32:24 50:2

**head** 60:14

**hear** 22:7

**heard** 8:16 84:25

**heart** 9:16 53:4 75:11

**helping** 78:22

**heritage** 73:14

**Hey** 36:22 59:11

**hidden** 5:23

**hides** 47:23

**hindsight** 43:7

**Hodges** 6:12

**hold** 43:2, 16

**honest** 58:4

**hope** 51:21, 23 64:3

**hours** 42:13

**house** 29:1,2

**housekeeping** 5:16

**Huseby** 6:14

**hypothetical** 30:3 67:20

---

**I**

---

**idea** 24:5, 7,9

**identification** 23:6

**identified** 15:4 19:1 23:11 25:13 37:7 50:13 53:7 66:5 69:14,22 80:9 85:20

**identify** 15:9

**II** 16:15 67:13

**III** 16:15

20:4 33:17
34:12
35:6,14,
17,25 36:3
37:19,22
38:21
45:25
63:22 66:7
67:13
70:18

**image** 13:4
15:1,6,10
20:14
21:20,22,
23 22:19
23:5,14
24:25 25:5
26:11 27:6
29:1 30:18
31:20
33:21,24
36:19
37:1,2,25
41:17
45:13,14,
17,21 46:2
47:3,14
48:5,8,16
51:1,10
52:5,11,17
53:2,4
54:7 55:1
56:14 57:3
61:20
62:3,9,11,
12,16 63:2
66:12 67:4
68:19

69:20
71:16
72:5,23
73:11 79:7
80:24
82:24
83:12,17
84:1

**images** 4:9
10:22
12:25
14:21
17:16
18:4,5
19:24 21:9
24:2 25:1,
6,8,11
26:7 27:8
28:21,24
30:6
33:17,18
34:13 38:4
39:23 41:5
45:12 49:2
58:13
67:22
68:7,14
73:16,18
75:2 76:18
79:5 80:9,
12,14
82:13
85:24

**imagine**
79:12

**immature**
30:25

55:13,24
56:1 76:4

**impact** 83:13

**impossible**
38:20

**include** 31:8
45:20
46:6,13
59:4 68:25

**included**
69:2

**Including**
40:17

**incorrect**
33:9

**indeterminant**
52:2

**indicia** 29:4

**individual**
14:21 79:7
80:3,8,23,
24 82:13
83:1,8,11
84:1

**individuals**
16:11
83:17 84:8

**information**
59:1 67:3
85:22

**ink** 37:10

**instances**
79:1,13

**intend** 11:14

**intended**
40:5

**interactions**
11:10,12

**interest**
81:7

**interject**
22:24
24:19

**internet**
17:17

**interpret**
51:19,24

**interview**
23:1

**interviews**
10:12

**introduce**
6:15

**introduced**
11:19

**introducing**
11:17
76:10

**inverse** 39:1
63:11

**inverted**
37:16
65:12,15
66:7

**investigate**
9:13

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 218 of 230
PageID 2970
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025    Index: investigating..law

**investigating**
  18:16
  26:17
  81:10

**investigation**
  13:25
  17:18,21
  18:7,21
  21:3 41:11
  43:23,25
  44:23
  45:5,7,15,
  16 46:10,
  24 49:20
  58:15
  67:15
  73:15 80:2
  81:3 83:13
  86:6

**investigator**
  49:11

**investigators**
  49:8,10

**involved**
  58:2,16

**involvement**
  84:23

**involving**
  64:19
  83:16

**IV** 16:15
  20:5
  33:13,14,
  18 34:1,12
  35:14,16
  36:1,3,4

  37:19,23
  38:21
  60:9,20
  61:4,8,16
  63:23
  64:5,6,12,
  13,16,17
  65:14,22
  66:8,22
  70:18

———————
        **J**
———————

**Jacksonville**
  82:2

**job** 9:5,7

**John** 6:20
  23:8 53:5
  70:2 84:13
  86:17

**John's** 81:22

**join** 64:20
  86:3

**journal** 4:19

**Judge** 82:24

**June** 6:6

**jurisdiction**
  82:9

**jury** 63:24
  64:1,3
  75:8

———————
        **K**
———————

**Kathleen** 6:8

  7:5

**kind** 78:21
  85:14

**kinds** 54:21

**knee-chest**
  63:18 67:4
  68:4 76:21

**knee-to-chest**
  39:10

**knees** 28:8
  32:16
  48:17
  52:22 54:2

**knees-to-chest**
  22:19,20
  23:18,25
  26:12 27:7
  30:19
  33:2,20
  34:7,17
  37:25 38:9
  39:24
  42:16
  47:4,5,14
  48:5
  61:20,24
  62:16,24
  66:11
  68:18
  70:8,17
  76:19
  77:12

**knew** 18:15,
  20 20:14
  49:25
  74:16,19,

  24 75:1
  81:12,16
  85:4

**knowing**
  13:20

**knowledge**
  84:5,6,9

**Krugman** 4:21

———————
        **L**
———————

**label** 15:13

**labia** 31:1

**labial** 48:9
  53:12,13
  54:4 64:18

**lace** 15:15,
  16 28:9,13

**landing**
  31:18

**laptop** 12:7
  14:25
  24:23
  25:2,16
  27:17
  52:24
  69:23

**large** 17:6
  30:25

**largely**
  19:15

**lasers** 21:6

**law** 9:13
  12:6 18:3

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025**      Index: laws..maturity

42:25 43:3
78:18,22
79:2,10,17
80:16,18,
22 81:14,
24 82:8
83:10 84:7

**laws** 80:17,
20

**Lawshe** 6:9,
19 84:19

**leading**
16:10

**leads** 80:19

**leaving**
52:22
53:9,10

**Lee** 6:9
84:19

**left** 11:8

**legal** 8:19
9:2,5

**legs** 23:18
28:8 54:6
65:7,10

**letter** 4:11
15:2
19:11,12,
16,20 23:3
24:4 26:3
31:9,11
33:6,13,
16,19,25
34:8,10

50:25
58:17 59:3
68:12 69:1
72:4,7
74:16,20
75:10

**lettered**
4:12

**letters** 4:24
23:4 44:6
59:4 84:22
85:1,9
86:1

**licensed**
85:21

**lie** 72:6

**likelihood**
49:25

**limited**
38:12 39:5
63:14

**lingerie**
15:15,16
28:15,17

**linked** 56:24

**listed** 52:25

**litigation**
6:14 78:19

**local** 80:9,
19 81:7

**locate** 84:7

**located** 7:11
80:10,24

85:20

**location**
29:5 67:24
80:2

**logical**
81:23

**longer** 78:2

**looked** 19:11
22:21 75:2
83:7

**lot** 16:6
81:3

**lots** 39:8

**low** 35:6

**lower** 23:18
48:13
62:1,2
66:1 71:11
76:4

---

**M**

---

**M.D.** 7:5

**machine** 7:23

**made** 7:25
10:11
13:22 14:3
21:10 36:2

**magazine**
52:21

**major** 8:7
79:22

**majora** 53:12

54:4 64:18

**make** 4:13
13:14
32:25
46:21 63:3
85:10

**makes** 30:18
50:21

**manipulation**
73:10

**manner** 14:19

**marked** 15:3
18:25
19:10
23:6,10
24:24
25:12 37:6
50:12 53:6
69:13,21,
24

**match** 16:20

**matches** 23:5

**Matt** 6:21
78:16

**matter** 6:8

**matters** 5:16

**mature**
60:16,19
61:15,16
67:6

**matured** 42:8

**maturity**
13:3,11

16:11 20:4
32:6 33:14
34:1,22,23
35:6 36:9
37:19
39:19,22
40:15
41:16
43:4,13
60:10,18,
22 61:4
63:22
66:24
67:13
70:18,20
71:11,12
76:5

**Meaning**
79:10

**means** 8:12
77:8

**media** 78:6

**medial** 54:5

**medical**
14:13,20
16:5 17:4
46:16,18
49:16,17
55:23,24
79:20

**medication**
7:22

**medicine**
8:18 40:23

**meet** 53:12

62:2

**meeting**
11:22
12:2,5,19
13:23 14:4

**Melania**
70:18
71:11
74:12 76:4

**member** 78:22

**met** 10:14
12:13,22
78:17

**Michael** 6:18

**middle** 31:20
53:13

**midline**
16:22 35:5

**Mikayla** 6:9,
22

**military**
83:18

**mind** 49:6

**mine** 14:14

**minora** 53:13

**missing**
52:12,13,
15 72:1
81:13

**misstate**
20:23

**misstatement**
54:25

**miswritten**
23:20

**model** 14:10
15:14,22
16:1,24
17:8 20:14
21:11,18
22:20
23:17
24:15
25:24
26:3,10
27:23 30:4
32:5,7
34:4,21
38:22
42:6,17
43:7 44:18
45:9 46:7
48:24
49:2,6,7
52:5,6
60:9
66:11,15,
20 67:25
69:8 70:7,
8,10,11,
14,17,20
72:22
74:17,25
75:16

**models** 12:25
41:4 43:13
50:7
85:19,24

**moment** 22:24
67:9 76:23

**mons** 64:19
65:8

**months** 33:5
77:9,12

**mouth** 30:10

**move** 19:5

**moving** 50:24
82:15

N

**names** 20:8
22:24
39:14
68:10

**Nassau** 82:3

**National**
81:12,22

**natural** 36:8

**necessarily**
30:9
32:17,23
40:7 58:14

**needed** 46:9
59:9

**newspaper**
85:3

**nice** 7:24

**noise** 79:22

**normal** 71:8

**notation**
46:13

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 221 of 230
PageID 2973
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025    Index: note..parlance

**note** 46:20

**notice** 26:20

**number** 22:3
46:25
80:15 81:1

---
**O**
---

**oath** 30:12,
13 33:1
70:25

**Object** 18:8
20:18 32:9
36:25
41:18
43:14
48:20
59:13 86:2

**obvious** 8:1
13:24 14:2
50:6,21

**occurred**
57:15
58:15

**offer** 8:19
9:1,5
12:23 13:2
14:20 32:6
35:12 36:9
43:12
49:14,17
57:16
62:20

**offered**
44:3,9,17
68:1 77:3

**offering**
50:6 51:25
52:4 58:6

**office** 7:14,
15 8:5
81:19
82:2,3

**offices** 7:21

**old-** 31:7

**older** 33:10
53:14
70:11,14,
20 71:1,5,
10 72:18
74:11
75:1,16
76:3 83:12

**open** 8:10
22:2,3,4,5
23:16 38:5

**opening** 48:9

**opine** 79:6

**opinion**
13:3,10
14:9,20
18:10
31:11
32:22
33:1,9,12
34:12
35:12
36:9,14
41:8,15,22
44:9,12,
17,20

49:16,17
50:5 51:25
52:4 54:18
55:23,24
57:17
58:6,8
62:20 63:3
68:14,17,
22 69:10
71:3
72:19,21
76:3 77:3,
4,10,11,
16,18,20
79:20
80:23
82:12,14,
20 83:1,11

**opinions**
8:19 9:2,5
11:8,9
12:24
13:18
17:4,20
18:4 32:6
41:4 43:12
49:14 50:7
59:5 60:9
67:25
83:16
85:19 86:1

**opportunity**
10:16 79:1

**orange** 15:19

**order** 86:9

**ordering**

86:22

**orders** 86:16

**original**
12:18 16:7
26:11
30:18
33:24
34:16
35:23
37:25
42:16
47:3,14
48:5 50:16
69:3

**originally**
25:5 37:3

**outfit** 74:1

**oversimplified**
67:1

---
**P**
---

**p.m.** 6:6
78:4,5,7
86:20 87:3

**paged** 66:1

**pages** 69:4,6

**paragraph**
19:14,19
20:11 23:2
51:1 68:13
69:17

**pardon** 26:6

**parlance**
31:18

part 8:7,23
9:4,7
10:12
17:20
18:6,21
30:3 35:23
49:20
67:15
79:12
82:14 86:6

parted 23:19
51:2,3,11,
12 54:6
55:2

partial 28:3

Partially
47:24

participate
81:8 85:5,
8

parts 65:8

passport
56:6,10,
12,21,24,
25

past 79:17

paste 19:15

patient
42:10
80:13,14

patients
40:15
80:11

PD 8:12

pediatrician
8:12 9:7

pediatrics
7:14 8:5,
13,15,23
9:8,10
39:20

pelvis 64:20

pen 37:10

people 40:19
44:25
56:19 63:3

perfect 5:15

perfectly
35:18 47:9
58:24 60:1

person 26:17
51:19,20
53:21 58:7
73:23,24
76:7,8,14

pertains
16:11 32:7

photo 21:24
23:22
24:1,8
25:9,21
27:22 28:5
30:4,7,8
42:3
47:19,20
67:9,23
69:3 74:6,
9,18,19
75:14

76:20
77:12

photograph
12:6 13:8,
14,21
23:24
32:11
38:16,17,
23 42:17
46:25
54:15,19
56:4,13,22
57:12
61:24
62:25 67:8
79:7 80:3

photographs
10:21
11:13
12:16
27:24 28:2
33:8 34:19
40:10 42:6
64:25
75:21 77:4
81:11 84:8
85:23

photos 20:8
80:8

pick 11:9

picked 81:22

picture
24:16
34:7,16,17
56:7,9,10

pictures
41:24 69:7
79:5 83:7

pin 18:24

pink 15:15,
16 28:9,
12,17

pixilated
54:12

place 33:19

Plaintiff
6:19 84:18

plaintiff's
4:21 18:25
19:4 37:6
50:12
69:13

plants 29:1,
2

play 18:1
81:20

played 64:2

plow 5:5

point 11:16,
19 42:22
65:11,18

policies
80:19

pornographic
18:5 41:5,
17

pornography
40:3 81:5

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025        Index: portion..pubic**

84:4

**portion**   54:6

**position**
23:18,25
26:13 38:9
39:24 40:1
76:21

**positioning**
38:22
39:10
48:11

**positions**
39:12

**possession**
81:4 84:4

**possessor**
81:21

**possibility**
13:13,17,
19 17:3
31:14,22
36:18
66:17,19
67:10,24
74:17,25
75:1

**possibly**
36:9 68:18
74:12
80:4,5

**potential**
18:16 81:4

**potentially**
47:12

**practice**   9:1

**predicated**
77:4,11

**prepared**   5:1

**prepubertal**
51:9

**prepubescent**
56:8 70:21
71:12

**present**
20:12

**presentations**
47:9

**Preston**   6:9,
22 9:23,25
11:12,17
12:20
13:23 14:4
26:4 36:22
38:1 44:18
48:23
49:15,18
68:1 72:14
73:1 75:6,
22 77:3,11
78:18
79:24 81:9
83:8

**Preston's**
4:11 15:4,
11 23:1,11
25:13
53:1,7
69:22,24

**presume**

56:18

**pretty**   50:10
74:3,5

**previous**
10:6 20:3

**previously**
15:3 18:25
23:10
24:23
25:12
37:6,9
50:12 53:6
69:13,21

**prior**   5:8
9:21 10:17
11:5 13:7
14:7 16:7
33:8,12
77:13

**procedures**
80:20

**proceed**
46:25

**proceedings**
9:2,5

**process**
17:10
20:22

**produced**
85:22

**prominent**
31:1

**Protection**
8:1,3,4,7

9:12,13,18

**Protective**
78:23

**provide**
41:3,11
58:11
82:12

**provided**
84:21

**providing**
80:22

**proximity**
81:15,17

**pubert-**
61:19

**pubertal**
4:22 76:8

**puberty**   31:4
32:23
40:21 56:2
71:5

**pubic**   13:9,
15 16:2,9,
16,19
17:1,5
20:12,15
21:4 30:5,
19 31:3,4,
19,25 32:8
35:2,5,11
36:1,4,6,
8,10,23
37:11
38:21,25
42:6,17,19

WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025 Index: pubica..reference

43:8 44:3
47:8,9,15
48:1,4,7,
10,15
51:15
52:10
53:11 55:7
58:18 60:2
61:19,23
62:21,24
63:7 66:6,
25 67:6
68:20
70:23 72:1
73:8

**pubica** 61:19

**pubis** 64:19
65:9

**pull** 14:24
15:6 25:10
26:25 27:6
52:11,18
69:19

**pulled** 15:12
17:16

**pulling** 15:8
52:17,24
69:23

**purpose**
41:2,3

**purposes**
23:6

**put** 29:15,
16,20 30:5
31:14

34:10
45:23
58:19,25
59:2

**putting**
30:10

—————————

**Q**

—————————

**qualifications**
82:25

**quality**
54:15,18

**question** 5:6
14:13
35:19,21,
22 36:20
40:11,12
41:14
44:15 49:5
50:8 56:20
59:14 64:4
65:4,20
67:20 83:9
85:20
86:11

**questions**
8:20 15:7
78:9,20
84:11,15
85:13,15
86:8

—————————

**R**

—————————

**raise** 6:23

**rating** 13:3,
11 16:11
32:7 33:14
34:1,22,23
36:10
37:19
39:22
40:15
41:16
43:4,13
60:18,22
61:4 63:22
66:24
67:13
70:19,21
71:12 76:5

**razor** 54:17

**reached** 10:9
58:15

**read** 12:9
19:19
22:14 26:8
33:6 50:18
51:18
63:23,25
64:5,15
65:5,23
86:10

**ready** 6:2

**realize**
30:11
49:24

**reason** 60:14
81:8,21,23

**reasons**
58:10

**recall** 21:7
48:24
60:11,13,
15,24

**received**
11:16

**recess** 78:5

**recognize**
70:7

**recollect**
11:1

**recollection**
12:19

**record** 4:10
6:4,6 11:5
15:4,8
19:1 23:12
25:14 32:5
37:7 43:17
50:13 53:7
69:14,22
78:3,7,21
86:19

**records**
85:21

**red** 15:18

**redacted**
15:10

**REDIRECT**
85:16

**refer** 4:8,12
39:7

**reference**
24:4

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 225 of 230
PageID 2977
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025     Index: referenced..seek

**referenced**
  23:2

**referred**
  31:18  40:8
  53:3

**referring**
  7:18  19:25
  24:17
  39:18
  40:13

**regard**  40:22

**regular**  47:7

**related**
  14:17,18
  55:15

**relates**
  83:16

**relevant**  5:7

**reliable**
  12:24  14:9
  41:4

**remember**
  11:20
  14:15  75:3

**remembering**
  75:13

**remotely**
  6:10

**removal**
  17:10
  20:21  21:8

**removed**
  20:15  36:7

**render**  18:4

**rendering**
  13:18
  85:19

**repeat**  29:11

**report**  23:21
  45:20  46:6
  58:25

**reporter**
  6:13,16,23
  7:4  22:7
  29:10
  44:14,15
  86:21,24

**reports**
  10:23
  24:25  50:8

**represent**
  6:14  45:22

**representative
s**  9:23

**represented**
  76:13

**represents**
  78:18

**request**
  49:19

**requested**
  41:12

**required**
  41:12  58:2

**respect**
  81:10

**rest**  62:13

**restate**
  20:24  21:1

**resulting**
  80:2

**review**  10:17
  11:4  49:2
  52:17

**reviewed**
  11:21
  12:16
  67:19

**reviewing**
  11:12
  17:16

**Roberts**  4:5,
  7,19  5:4,
  14,25  6:3,
  18  7:9
  15:5  19:2
  22:13,23
  23:8,13
  24:21
  25:3,18,19
  26:25
  27:5,18,19
  29:13,24
  37:8  38:2,
  6,7  43:16,
  19  44:16
  50:14
  53:5,8
  54:9
  59:17,20
  64:10,14
  69:15

  70:2,3
  77:24  78:8
  85:14,17
  86:7

**role**  17:25
  81:20

**room**  7:12,
  24

**rooms**  7:21

**roughly**
  37:10

**rule**  42:9

————————

S
————————

**scene**  11:11

**science**  8:18

**scientific**
  12:24
  14:12

**scientifically**
  14:9

**screen**  5:2
  15:21  19:3
  24:22
  25:2,16
  26:23
  27:17

**screenshot**
  52:24

**search**
  82:19,23
  85:5

**seek**  82:19

Case 3:24-cv-00044-JAR-SJH    Document 86-6    Filed 09/12/25    Page 226 of 230
PageID 2978
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025          Index: send..source

**send** 11:24

**sentence**
20:7,10
51:6,18

**separate**
75:10

**sequence**
71:8 75:19

**set** 11:11,
22 77:1

**setting**
40:16

**sexual** 13:3,
11 16:10
20:4 32:6
33:14,25
34:22,23
36:9 37:19
39:19,22
40:14
41:16
43:3,13
60:10,22
61:3 63:21
66:23,24
67:13
70:18,20
71:11 76:4

**shaking**
60:14

**shape** 64:18
65:7

**share** 19:3
37:3 50:15
63:19

69:16

**sharing** 4:3

**shave** 55:14,
22,25
58:22,23
59:9,12

**shaved**
20:11,14
21:12,19
30:5 31:22
36:13
44:7,10,
18,22
45:10,11,
13,17,23
46:4,7,15,
20,22 47:1
55:10 56:1
58:19
59:8,10,
12,21,22,
24 72:6,
11,23
73:2,3,6,
11 74:18
75:7

**shaven** 16:25

**shaving** 17:9
46:14
54:20

**Sheriff**
81:22

**Sheriff's**
82:2,3

**shoot** 21:24

24:1,8
25:9,21
27:22
30:4,7,8
42:3
67:10,23
74:6,10,
18,19
75:14
76:20

**show** 5:1
19:9 26:5,
6 38:12,14
39:9 47:15
63:7

**showed** 12:6
13:8,9
56:6,12,15
81:11

**showing**
23:25
38:18

**shown** 13:7
19:23 23:4
65:18 79:5
82:24

**shows** 23:17
51:1,10
55:1 63:4

**sic** 33:20
59:2 68:13

**side** 25:17
27:17
65:10
67:14

**signs** 60:2,4

**similar**
39:25

**simply** 4:8

**single** 12:5

**Sir** 44:14

**sister** 73:14

**sit** 43:6
76:2

**sitting**
23:17
26:12

**situations**
84:1

**six-year-old**
79:13

**skin** 58:24
60:1

**small** 27:15

**smooth** 58:24
60:1

**sole** 67:2

**solemnly**
6:25

**sort** 7:15
17:9,10
31:23
40:21
76:11 82:3
85:9

**sounds** 59:11

**source** 67:2

Case 3:24-cv-00044-JAR-SJH   Document 86-6   Filed 09/12/25   Page 227 of 230
PageID 2979
WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.
Kathleen M. Dully, M.D. on 06/18/2025          Index: speak..testified

speak   11:11

speaks   63:2

specialize
  8:14

specifically
  72:4

specifics
  11:20

spoken   9:22,
  25 10:2,6

Spring   85:2

St   81:22

stage   64:24

stages   4:22
  37:11
  39:19
  40:20

standing
  54:1

start   83:8

starting
  64:1

starts   22:4

state   9:6
  34:11
  80:17

stated   58:11

statement
  21:10,15
  34:18
  45:1,4,5
  46:24

60:18,24
72:13 75:5

statements
  10:11 18:1
  22:22 45:6

statute
  9:11,16

stay   5:23

stomach   62:3

straight
  32:1 35:1

strike
  24:13,14

strip   31:19
  47:8

stuff   53:9
  54:17

subject
  10:22 34:8
  70:8

subpoenaed
  9:3

subsequent
  27:8 67:8

subspecialty
  8:17

substantially
  77:5,7

sued   78:19

suggested
  35:10

suggests

35:9

support   9:13

supposed
  22:6 65:11

surmise
  18:2,6
  49:1

surmised
  18:18

suspected
  49:3

swear   6:16,
  25

swore   30:14

sworn   7:6
  30:17

Synchronoss
  10:8

―――――――――
          T
―――――――――

table   53:18

takes   38:3

talk   25:6
  37:2 46:3

talked   16:6
  37:14
  50:3,4
  60:7 62:4
  80:1

talking   8:2
  11:8 25:5
  27:2,5

32:21 40:5
45:12,21
50:22
53:25
62:17 72:7

Tanner   41:1

teach   66:9

Team   8:2,3,
  4,7 9:12,
  13 78:23

Teams   9:18

technique
  76:11

teen   53:14

telling
  18:13
  30:15
  43:20
  53:23

term   9:9
  76:10

terms   34:19,
  23

test   40:4,
  24

testified
  7:6 12:18
  20:20
  32:13 34:3
  37:9 50:5
  54:14
  58:21
  70:25
  72:17,20

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/2025    Index: testify..understand**

74:7,11
75:15
78:24
83:18
85:25

**testify**  86:4

**testifying**
42:20
53:20
72:12
83:23

**testimony**
6:25 14:3,
7 16:7
20:23
21:18 23:7
33:1 39:2
42:12,24
48:24
58:5,12
59:2 60:11
63:6,10,12
66:22
71:15
73:5,7

**thighs**  13:8
51:3,12
55:3 62:2
64:20

**thing**  34:20
47:13 62:5
82:3

**things**  21:9
32:19
54:16,21
60:4 76:17

**thinking**
75:13

**thought**
35:24
73:22,25
74:11

**time**  9:22
10:19 24:1
25:9 27:22
29:6,15,
16,21 30:9
32:17 38:3
43:1 46:12
49:23,24
60:8 65:25
67:9,23
68:8,11
69:18
71:5,6
73:22
74:4,20
76:23
77:13
78:17
80:22 83:4
84:25
85:24

**times**  68:15
69:7 77:5,
6,8,16,17
81:3

**tiny**  31:2

**tip**  81:13

**tips**  80:16

**today**  4:4
7:1 10:19

11:2,5,10,
15 14:7
19:23 25:6
26:6 30:12
34:3 42:12
43:7 44:21
55:23
58:21
72:11
75:4,15
76:2

**today's**
10:17

**told**  13:2
26:4,14
35:15 45:2
48:23
56:11
65:14
72:10 73:1
75:12
80:11
85:2,18

**tone**  15:20
43:14

**top**  48:9
51:2,11
53:2 55:2

**transcript**
10:17 59:2
63:20
86:9,15,
18,22

**treatise**
40:9

**triangle**
37:16 39:1
63:11
64:17
65:2,12,15
66:5,6,7,
11,14

**true**  19:17
38:8,24
40:7
44:19,20
45:3 46:13
80:25

**truth**  7:1,2,
6 30:14,17

**truthful**
45:6

**turn**  78:9

**turned**  75:9

**type**  34:20
82:7

**typed**  34:2

---
**U**
---

**UCMJ**  80:17

**ultimate**
67:25

**underscore**
70:1

**understand**
10:23
11:18
20:22 32:4
44:25 45:1

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
Kathleen M. Dully, M.D. on 06/18/2025 Index: understanding..write

50:9 64:3
71:7 76:1
80:21 81:2
82:11
83:3,6

**understanding**
79:21,23

**underway**
46:11

**underwear**
51:2,11
55:2

**uniformity**
35:8

**uniformly**
32:3

**unit** 78:6

**University**
8:6

**untrue** 21:15

**utilized**
16:1 17:9

---
**V**
---

**valid** 56:25

**validate**
26:15

**verification**
85:22

**Verizon** 10:8

**version**
33:20

70:14
71:11
74:12 76:3

**versus** 6:9
56:10

**vertical**
47:8

**vertically**
54:1

**victim** 81:20

**victims** 81:7

**video** 79:7
86:16 87:2

**videos** 79:5

**view** 15:1
30:22
35:16
37:21
38:13,19
39:3
47:21,22,
23 53:12,
25 70:23

**viewed** 27:8

**views** 28:3
47:18

---
**W**
---

**wait** 51:23

**waive** 86:10,
13,14

**wall** 28:20

**wanted** 63:13

**warrant**
82:20,23
85:6

**wax** 57:2

**waxed** 16:25
20:15 57:1
59:25
72:23

**waxes** 21:6

**waxing** 17:9
54:20

**ways** 4:13
35:10

**wearing**
15:15
24:10
26:18,21
27:23
28:6,17
29:21

**weeks** 33:5
77:9,12

**well-exposed**
62:14,18

**wider** 65:10

**William** 6:9
84:19

**Wilson** 4:3,
6,16 5:1,
17,21 6:20
10:7 18:8
20:18
22:23

24:19,22
25:10,15
27:1,4,12,
16 29:23
32:9 36:25
38:4 41:18
43:14
48:20
52:23 54:8
55:17
59:13 64:8
69:23
84:13,14,
17 85:12
86:2,10,
11,14,17,
21,23

**woman** 13:11
43:21

**wooden** 23:17
26:12

**word** 8:22
14:12 51:5

**words** 14:11,
12,14,15,
17,18
30:10
64:22

**work** 79:12
80:22 82:7
86:4

**working**
27:13

**write** 33:7
59:22

**WILLIAM LEE LAWSHE vs MIKAYLA PRESTON, ET AL.**
**Kathleen M. Dully, M.D. on 06/18/20I2n5dex: writing..Zoom/conference**

**writing** 14:5

**written** 4:24

**Wrong** 63:1

**wrote** 33:25
  50:8 51:1
  59:8 68:12
  74:15,20
  86:1

---

**X**

---

**xerox** 7:23

---

**Y**

---

**YCBL** 72:10

**YCBLVVFQ**
  69:19,25
  73:20

**year** 32:24

**years** 10:25
  14:14 20:5
  32:21
  83:12,21

**young** 31:5
  40:19
  79:15

**younger**
  30:22,23
  32:17,18,
  21 33:10,
  19 34:4,5,
  9,16 50:19
  68:4 76:22

---

**Z**

---

**ZIP** 81:18

**Zoom** 6:11
  54:7,10,11
  87:2

**Zoom/
conference**
  7:24