# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

      Plaintiff,

v.                                                          Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE TO PRESTON'S
## MOTION IN LIMINE (ECF 71)

Defendant Preston moves to exclude all opinions expressed in the expert

report of Partick Siewert, disclosed pursuant to Rule 26(a)(2)(b).  Defendant

Preston has chosen not to depose Mr. Siewert or disclose any experts of her own.

Therefore, all of Defendant's arguments are directed to the sufficiency of

information contained in Mr. Siewert's report. [1] The motion should be denied.

---

[1] "Mr. Siewert does not even meet the bare requirements of Rule 26(a)(2)(B)(i)) (Motion in Limine ECF 71 P. 11) Plaintiff notes that Defendant raises issues with the Rule 26(a)(2)(B) for the first time more than 7 months after Plaintiff disclosed Mr. Siewert's report.  To the extent that Defendant's arguments are based on a lack of compliance with Rule 26(a)(2)(B), Preston has waived all objections to its sufficiency. A party is required to object within a reasonable time to the sufficiency of expert reports. The failure to act constitutes as a waiver. *Johnson v. Stein Mart, Inc.*, 2007 U.S. Dist. LEXIS 104341, *4(Fla M.D. 2007) The purpose of expert reports and a deadline for serving them is to put an opposing party on notice of what it must contend with at trial.  Reese v. Herbert, 527 F.3d 1253, 1265 (11th Cir. 2008) ("[T]he expert disclosure rule is intended to provide opposing parties 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.) If

## I.    Expert Qualifications

Preston concedes that an expert may be qualified based on education,

experience and training. (ECF P. 71 P.11) Preston writes that:

> In the context of police practices, an opinion may be based on
> experience, as long as the expert's role is 'limited to describing
> sound professional standard and identifing departure from them...
> Moreover, "[a] police practices expert may present factors that
> might inform an officer's decision regarding standards such as
> probable cause ... because such testimony speaks to prevailing
> standards in law enforcement and may be quite helpful to the jury
> in conducting its own analysis of a false arrest claim."  (ECF 71 P.
> 10)

Plaintiff agrees with this statement of law. However, Plaintiff disagrees with

Preston's characterization of the opinions contained in the report and the

qualifications of Mr. Siewert.

### A.  Experience

As outlined in Mr. Siewert's C.V., and expanded upon in the attached

affidavit, Mr. Siewert has general and specific experience with investigations of

crimes involving CSAM. (Exhibit A) First, Mr. Siewert was a detective in an

Internet Crimes Against Children (ICAC) Unit from 2008-2013, as indicated on

the C.V.  Contrary to Defendants assertions, Mr. Siewert performed substantially

the same law enforcement duties as Det. Preston. (see Affidavit, Exhibit A ¶ 3)

While serving as a detective, Mr. Siewert's C.V. documents that he "participated

---

Preston had questions about the opinions or the qualifications listed in the report, an objection or
deposition would have been the appropriate avenue to explore those questions.

2

in multidisciplinary pilot program to incorporate best practices in child sex abuse investigations in coordination with law enforcement, social services and prosecutors which led to legislation being enacted in the Virginia General Assembly."

As shown in the C.V., and expanded upon in the attached affidavit, Mr. Siewert's work in the private sector has focused on consulting for both the government and private defendants in cases involving CSAM.  This work includes both forensic and investigative analysis of criminal investigations involving CSAM. Mr. Siewert testifies that:

> In my current role as Director of Digital Forensics and eDiscovery, I head our criminal practice group, which focuses our case assessment and analysis on electronically-facilitated crimes from both prosecution and defense perspectives. These cases include law enforcement investigations of CSAM allegations against clients where discovery is provided, reviewed and opined upon, including items such as cyber tips from the National Center for Missing and Exploited Children (NCMEC), search warrant affidavits, police reports, witness interviews and other case documentation.  I routinely provide input, advice and opinions about proper investigative procedures and potential avenues for litigation strategy to Counsel. (Exhibit A)

Mr. Siewert's current role requires him to work and evaluate criminal investigations of the exact type of criminal allegations made in the underlying case against Mr. Lawshe.

B.  Training

Mr. Siewert has "been trained by the ICAC task force in the appropriate methods by which to conduct both of these types of investigations…" (Exhibit A) Mr. Siewerts C.V outlines multiple specific ICAC training relevant training:

- February 2013: **Internet Crimes Against Children (ICAC) Ares-Roundup**, Forest, Virginia

- May 2010: **Internet Crimes Against Children (ICAC) National Conference,** Jacksonville, Florida

- June 2008: **Internet Crimes Against Children (ICAC) Peer Precision, Lynchburg, Virginia**

- May 2007: **Internet Crimes Against Children (ICAC) Investigative Techniques,** King of Prussia, Pennsylvania • 40-hour training detailing how to conduct effective, comprehensive investigations online using both opensource and law enforcement specific tools

This list of training was merely representative, not exhaustive.  The attached affidavit contains several additional training courses/seminars dealing with the investigation of CSAM.

C.  Education

As indicated on the C.V. Mr. Siewert obtained a Bachelor's degree in Criminal Justice from Virginia Commonwealth University.  In addition to this education, Mr. Siewert is an adjunct professor, teaching digital forensics, including basic law enforcement investigative techniques at VCU.

Mr. Siewert is qualified to evaluate and offer opinions regarding standard investigative practices involving internet crimes and CSAM.  This qualification is

based on education, training and experience in both law enforcement and private practice.  To the extent that Preston denies his qualification to speak on ICAC investigations, Plaintiff would point to the fact that Mr. Siewert has vastly more relevant experience than either Det. Preston or her supervisor Det. Tolbert had at the time of the events from which this case arises.[2]

## II.    RELIABILITY

Defendant argues that "nowhere does Mr. Siewert identify or describe any sound professional standards or point out departures from them, nor does he explain how his experience forms the basis of any of his opinions." (ECF 71 P.11) This is patently false.

Mr. Siewert clearly describes the applicable professional investigative standard: "Standard investigative practice would involve visiting the website in question." Mr. Siewert states that this "investigative technique would be standard for any image which was discovered to be published on a public website." Mr. Siewert provides five separate underlying reasons for the need for such an investigative technique.

The reliability of this opinion is supported by the fact that two detectives from SJSO's ICAC unit essentially agree with the substance of Mr. Siewert's opinion. Greene, an experienced detective and colleague, expressed the opinion that Preston should have taken more time and visited the websites in question. *(Greene* P. 14 Ln. 2-13 ECF 67

---

[2] At the time of the assignment, Det. Preston had been an ICAC detective for only a "couple of months." (*Preston Deposition, March 13th 2025*, p.88 ln.2 – P.89 ln.1, ECF 67 Exhibit F).  She had not completed ICAC training (*Id.*) (*Preston Deposition, March 13th 2025*, P.88 ln2 – P.89 ln.1, ECF 67 Exhibit F)

Tolbert worked in the ICAC unit for a combined total of 2 years. He had been working there for less than 2 years at the time of this investigation. (Tolbert Deposition P.6 In.2-25**,** ECF 67 Exhibit C )

Exhibit D). Preston's own supervisor has described Preston's failure to attempt to identify the individuals as "sloppy police work." (*Tolbert Deposition, December 17th*, 2024, P.46, ln. 9-16 ECF 67 Exhibit C)

Again, in opinion (f), Mr. Siewert clearly identifies ICAC Investigative Guidelines and training standards. As listed on his C.V., ICAC produces multiple training classes and seminars. Defendant Preston is fully aware that there are Guidelines: she produced a copy of ICAC guidelines in her responses to Plaintiff's Request for Production. In identifying the ICAC guidelines, Mr. Siewert opines that ICAC does not instruct or train investigators to use medical doctors to determine the age of individuals depicted in online pornographic images.

As to opinion (a), Preston seems to suggest that because Mr. Siewert did "not opine that Detective Preston should not have continued to investigate an 'age difficult' case," his opinions are somehow unreliable. Mr. Siewert did not testify to this, because it is not true. Clearly, Mr. Seiwert identifies the standard: the investigation should continue to the website in question when that information is known.

Not every opinion or observation offered by an expert has to conclude that the Defendant violated some standard. The "age difficult" observation is important, nevertheless. As Mr. Siewert explains in his report, the use of medical doctors to

determine the age of "age difficult" models is not taught or recommended by ICAC[3].

The use of medical doctors to "estimate" ages of models is a central issue in this case. Whether or not the national taskforce (ICAC) recommends or trains investigators to use medical doctors in this manner is relevant to understand the reasonableness of Preston's investigation and her reliance on what has been shown to be unreliable and unscientific opinions to make probable cause decisions.

As to opinion (b), Mr. Siewert opines "the fact that a nude image is published on the public internet and on a legitimate modeling website makes it likely that the model is being portrayed to viewers as an adult." It should be noted that every single Detective deposed in this case, including Defendant Preston has agreed with this opinion.[4] Unanimity on a particular point is a reasonable basis to find an opinion reliable.[5]

However, the fact that Preston is "entirely unclear" about the significance of this fact is troubling, especially at this stage of the litigation. Florida law requires that the

---

[3] Preston argues the significance of this opinion and suggests it may help Preston's defense: "Stated differently, Mr. Siewert opines that Det. Preston took the additional step of asking Dr. Dully for her opinion regarding the ages of the individuals in the images even though that step is not explicitly suggested (nor prohibited) by the Guidelines." (ECF 71 P. 13-14) Again, Preston is free to argue the significance of the expert opinion. The fact that Preston believes this opinion favors her is not a reason to exclude it.

[4] Virtually all models published on public pornographic websites are represented to the public as being adults. (*Preston Deposition, March 13th, 2025*, P. 67, ln 23 – P.68, ln.1 ECF 67 Exhibit F) Likewise, Det. Eugine Tolbert, Preston's supervisor at the time of this investigation, testifies that the fact that a model is being represented to the public or a potential suspect as a verified adult is an important factor in reaching a probable cause decision. (*Tolbert Deposition,* P.26 Ln. 1-12 ECF 67 Exhibit C). Her current supervisor, Det. Dennis Camden, also acknowledges that public websites almost always portray models as adults to the consumer. (*Camden Deposition* p. 23 ln.7-15, ECF 67 Exhibit G)

[5] The same analysis applies to opinion (e) regarding digital altering of images and common grooming practices. See *Shew v. Horvath*, 2017 U.S. Dist. LEXIS 21748, *18 (Fla M.D. 2017) (A law enforcement expert may present factors that might inform an officer's probable cause determination.)

possessor of CSAM know that the image depicts a minor. § 827.071(5), Fla. Stat. *Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020) If a suspect believes that a particular image *portrays* an adult, the suspect has not committed a crime, even if the model is chronologically a minor. Therefore, if an age difficult model is portrayed as a verified adult, pursuant to federal requirements, it weighs against the probability of criminal possession. See *Shew v. Horvath*, 2017 U.S. Dist. LEXIS 21748, *18 (Fla M.D. 2017) (A law enforcement expert may present factors that might inform an officer's probable cause determination.)

### III.    Helpful to the Trier of Fact

A law enforcement expert witness "may be quite helpful to the jury in conducting its own analysis of a false arrest claim." *Shew v. Horvath*, 2017 U.S. Dist. LEXIS 21748, *18 (Fla M.D. 2017)    Preston argues that Mr. Siewert's opinion's offer nothing more than what lawyers for the parties can argue in closing argument." (ECF 71 P.14) This argument is without merit.

It is axiomatic that Counsel cannot argue to a jury what investigative methods are standard in CSAM investigations, without some support from the record evidence. It would be objectionable and inappropriate for counsel to argue about what training the ICAC taskforce provides, without a witness or evidence to establish an evidentiary basis for that argument.

Preston argues that Mr. Siewert's opinions simply mirror arguments of Plaintiff's counsel.  In fact, it is the opposite.  The undersigned has worked very hard to make his legal arguments follow the evidence that has been produced in discovery.

8

Mr. Siewert's testimony offers opinions that require specialized knowledge. Preston concedes that the law allows for expert testimony on law enforcement standards and investigative practices.  ICAC investigators receive specialized training to investigate internet crimes involving CSAM. Being a detective is a profession that requires education, training and skill.  The average juror would not have any knowledge of ICAC investigation guidelines or training. No impartial juror would have knowledge about what investigative techniques are commonly used or recommended in investigations of online CSAM.

Finally, Preston complains that Mr. Siewert does not offer the opinion that Det. Preston "lacked probable cause."  The law is clear that a police investigative expert cannot offer such an opinion as it invades the role of the court.  *Kobie v. Fifthian,* No. 2:12-cv-98-FtM-29DNF, 2014 U.S. Dist. LEXIS 56438, 2014 WL 1652421, at \*9 (M.D. Fla. Apr. 23, 2014) (finding that a police practices expert could testify to relevant investigative practices and tactics, but could not state his opinion that the arresting officer lacked probable cause to arrest plaintiff and conduct a search)

## IV.    Conclusion

Mr. Siewert has specialized knowledge, experience and training in dealing with the investigation of crimes involving CSAM. He has offered opinions based on that experience and review of pertinent records. He has made relevant observations, expressed opinions about standard training and knowledge of investigators and identified standard investigative practices and industry specific guidelines.  He has only been asked to render

9

opinions on those investigative standards and factors that weigh on a probable cause determinations.

Preston has raised questions about the depth of experience or amount of training. She has questioned the significance of his opinions or how they might be argued to a jury. All of these questions or concerns go to the weight of the testimony, not its admissibility. *Briscoe v. White*, 2004 U.S. Dist. LEXIS 30690, *5 (Fla M.D. 2024) (Eleventh Circuit has held that any weaknesses or shortcomings in the underpinnings of the experts' opinions related to the quantity and/or quality of the facts used to form those opinions goes to the weight and not the admissibility of the expert's opinions.) The Motion should be denied.

Dated: September 19, 2025

**LAW OFFICES OF NOONEY,
ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff