**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                                                    Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DULLY'S MOTION FOR SUMMARY JUDGMENT

Defendant Dully moves for summary judgment on three grounds: (1) application of 34USC § 20342 (2) qualified immunity and (3) failure to complete the pre-suit notice requirements of Florida's medical negligence statute. (MSJ ECF 85 P.2) None of the arguments are supported by application of the law to the undisputed facts and pleadings of this case. Therefore, Defendant Dully is not entitled to summary judgment.

## I.   STATEMENT OF FACT

### a)  The Reports

On February 22, 2023, Defendant produced a report offering opinions about the age and sexual maturity of a model depicted in a single image reported through

1

the NCMEC CyberTip system. (*Dully Report February 22, 2023*; ECF 66  Exhibit B)

This report was addressed to co-Defendant Det. Preston in her capacity as law

enforcement officer and made on Child Protection Team letterhead. *Id.* Dully's

opinions are as follows: "This female child appears younger than 18 years of age.

She would have reached this genital appearance of SMR IV at 12-15 years of age.

She does not appear to be shaved as her anterior pubic hair is still present." *Id.*

On April 5, 2023, Preston met once again with Dr. Dully to review four

additional images.  First, Preston identified two additional photographs from the

same photoshoot which was the subject of the CyberTip Report #153739160. *Id.*

These images depicted the same model in different poses. (see *Dully Report #1*

*April 5*, ECF 66; Exhibit C) These are identified as files 0059 and 0065(1). *Id.*

Again, Dr. Dully opined that the model initially depicted in NCMEC CyberTip

Report#153739160 was "at most SMR III or IV and therefore again ≤ 12-15 years of

age." *Id.*

At this April 5, 2023 meeting, Det. Preston presented another image of who

Dully believed was the same person depicted in the CyberTipline Report

#153739160.  (*Dully Deposition June 18, 2025* P.69 ln.16 – 70 ln.12; ECF 66 Exhibit

F) This image is identified as ycbLVVFQ_0.jpg. *Id.* (see *Dully Report #2 April 5*,

Exhibit D) This model was later identified by the name "Milena D."  (Age

Verification Exhibit; ECF 67 Exhibit H). Despite the fact that she appeared to have

adult breast, Dully opined that, in this picture, Milena D. was SMR I or

prepubescent. This is strikingly different than the SMR IV appearance of the same

model in the original NCMEC image.

Finally, Preston identified one last image.  This image depicted a model's body from the stomach to the knees, along with a partially exposed vagina. This image was identified as "Screenshot_20230122_174408_DuckDuckGo.jpg." *Id*. Again, Dully opined that because there appeared to be no pubic hair development, the model was SMR I, pre-pubescent, and therefore, was developmentally less than 9-13.5 years old.  (*see Dully Report #2 April 5*; ECF 66 Exhibit D) She described this model as a "female child." *Id*. This model was identified as "Sonija" on the image itself but also goes by the name Kacey Lane. (see Emails and Affidavit of Crawford Pierce, Age Verification Exhibit; ECF 67 Exhibit H)

In her Motion for Summary Judgment, Defendant Dully concedes that in the February 22, 2023 report, she "offered her medical opinion that the individual "appear[ed] to be younger than the age of 18." (Dully MSJ P.4) Dully admits that she "used SMR to evaluate the appearance of the individual in the image and provide an estimated age range." Id. See also (*Dully Deposition April 28, 2025* P.61 ln.20 – p.62 ln.21; ECF 66 Exhibit G)

Paradoxical, Dully claims, in her motion, that she "did not attempt to state or estimate the exact chronological age of the individual." (*Dully MSJ* ECF 85 P.4) This statement is incompressible in light of her prior admissions and the plain language of her report. The only relevant question of age in this investigation was whether the model was under the age of 18 and therefore, a child.  This is the issue upon which Dr. Dully opines. She makes the affirmative statement that the child is under 18 *chronological* years of age. Furthermore, in regard to Milena D., Dully states that she is "at most SMR III or IV and therefore again ≤ 12-15 years of age."

3

This is clearly an estimated chronological age range.  As to the model depicted in the "DuckDuckGo.jpg.", Dully describes the model as a "prepubescent" "female child" and provides the age range of less than 9-13.5. Again, a reasonable person would read this as an opinion that the model was not 18 years old.

b)  <u>Sexual Maturity Rating and Chronological Age</u>

Despite the fact that Dully admits to offering a medical opinions of the age of the models depicted, Dully concedes that "the use of a SMR[1] is not scientifically reliable in determining the actual chronological age of a model depicted in an image" (*Dully MSJ* ECF 85  P.7).  There is no factual dispute on this point (*Dully Deposition, April* P.46 ln.13-18; ECF 66 Exhibit G) and Dully has known there is no scientific support for age estimation using SMR for years prior to the subject events. (*Dully Deposition April 28, 2025* p. 45 ln. 19 – p.46 ln.18; ECF 66 Exhibit G)

At the time the reports were written, Dully did not believe that she had produced a reliable medical opinion of the ages of the models in the reviewed photographs.  Dully testifies:

> Q. You have not -- in these -- in these three
> reports that I have that you produced in this case,
> you have not rendered a reliable medical opinion on
> the actual age of the individuals depicted in this --
> in these images, correct?
>
> A.· ·Correct.

---

[1] Sexual Maturity Rating (SMR) (sometimes referred to as the Tanner Scale) is a clinical assessment designed to help doctors monitor a patient's progress through puberty. (*Dully Deposition April 28, 2025* p.19;  ECF 66 Exhibit G) It is not designed to estimate chronological age. (*Dully Deposition April 28, 2025* p.21 ln.5-17; ECF 66 Exhibit G) SMR applies Grade levels of 1-5 to both breast development (in females) and pubic hair growth. Grade 1 is pre-pubescent to Grade 5, which is fully developed. Although it should be noted that adult women, depending on certain variables, can appear Grade 4 for their entire life. (*Dully Deposition April 28, 2025* p.35-43: ECF 66 Exhibit G)

(*Dully Deposition April 28, 2025* p.71 ln.5-10; ECF 66 Exhibit G) Dully testifies that "What I see on the image does not necessarily give an indication of the actual chronological age that may be discovered during investigations." (*Dully Deposition, April* 28, 2025 p.35 ln 1-4, ECF 66 Exhibit G). There is no warning or disclaimer about the lack of reliability or scientific method underlying the "opinions" contained in these reports.

c)  "Appearance" of SMR and Age

In an attempt to defend the opinions expressed in these reports, Dully employes a rhetorical device. She claims that she was not offering an opinion about the actual age of the individuals, but rather, an opinion about the "appearance of age." (*Dully Deposition April 28,2025* p.21 ln.5-13; ECF 66 Exhibit G) Such a distinction does not exist and, whatever Dully chooses to call it, her opinion of the "appearance of age" is an equally unreliable basis to determine whether an individual depicted in a photograph is a minor or an adult. When asked about the value of such an opinion, Dully testifies:

> Q. If I was someone who was being asked to make a factual determination about whether or not a model depicted in a pornographic image on the internet was a minor; in fact, a minor, would your opinion about the appearance be a reliable opinion for me to base that decision on?
>
> A. No, that's what the investigation is for.

(*Dully Deposition, April 28,2025* p.30 ln.9-19; ECF 66 Exhibit G)

5

Shockingly, Dully testifies that this opinion of "appearance" means nothing more than if a model does not appear to have pubic hair in a digital photograph, for whatever reason, then that model would be a SMR I or pre-pubescent:

> Q.· ·Well, I guess for whatever reason, right,
> I'm just asking, brunette, red head or whatever, if
> you look at an image and you do not see any pubic
> hair, that would result in a sexual maturity rating
> of one in terms of appearance?
>
> A.· ·Yes.

(*Dully Deposition April 28, 2025* p.72 ln.6-11; ECF 66 Exhibit G) Such an opinion is patently unscientific and, in today's world, not remotely credible. Dully acknowledges this in a series of questions directed to the effects of cosmetic grooming and digital altering on photographs. (*Dully Deposition April 28, 2025* p. 78 ln.25 – p.80 ln.8; ECF 66 Exhibit G) Dully concedes that grooming or digital altering are plausible explanations for a lack of visible pubic hair on a photograph. *Id*. When asked why she felt sexual maturity was a more likely explanation for a lack of pubic hair than grooming or altering, Dully responds that "I am not saying how likely or unlikely it is, I'm only saying what the appearance is." *Id*. Dully knew her opinions were meaningless speculation and added no weight to an inquiry about the age of an individual depicted in a pornographic image.

This testimony shows that even offering an opinion about SMR, irrespective of what that means for chronological age, is inherently unreliable.  This is the point made by Plaintiff's expert, Dr. Scott Krugman. (*Report of Scott Krugman*, attached as Exhibit A to this Response) Dr. Krugman points to relevant scholarship that has tested this method of age estimation. (*Report of Scott Krugman*, attached as

6

Exhibit A to this Response) The medical professionals in this study incorrectly labeled models as a minor at rates as high as two thirds of the time. Even in the best instances (including lay people), the results were no better than a coin toss. The researchers write that the study "aims at stressing the problems and dangers associated with the postpubertal/sexually mature stages – which happen to be the developmental "scenario" most late teenagers and young adult women share (by adult we intend over 18 years of age). Much pornographic/pedo-pornographic material depicts women who seem sexually mature, and who may be late teenagers or women over 18 years of age. Our study in fact proves that *it is nearly impossible to say that adults who look like subadults are indeed adults – which obviously may apply to all those subadults who seem sexually mature."* (see The Difficult Issue of Age Assessment on Pedo-Pornographic Material, ECF 66 Exhibit D)  Dr. Krugman testifies that Dr. Dully participates in a list-serve email chain of medical doctors where these concerns have been repeatedly raised. (*Report of Scott Krugman*, attached as Exhibit A to this Response)

 d)  <u>Willfully False Information Contained in Dully's Report</u>

 Dully understood that the ages of the models were "indeterminate" from a medical perspective.  (ECF 75 P.12; see also *Dully Deposition June 18, 2025*  p.52 ln.2: ECF 66 Exhibit F)  In fact, she testifies in her original deposition that law enforcement does not "bring the little kids, they bring these borderline kids to be looked at…" (*Dully Deposition April 28, 2025* P. 33 ln. 23-24; ECF 66 Exhibit G) Dully knew these images were age difficult and she fully understood that she had the ability to tell law enforcement that she cannot help them with medical opinions

about SMR or age. (*Dully Deposition April 28, 2025* p.67; ECF 66 Exhibit G).

Instead of offering truthful opinions, Dully fabricated reports that she knew would

be used in judicial proceedings.  In fact, she fabricated probable cause.

If there was any doubt about her knowledge of the lack of scientific support or

reliability in her opinions, Dully testifies that she contemporaneously warned Det.

Preston of the lack of reliability prior to giving her the reports.  (*Dully Deposition*

*June 18, 2025* P. 12 ln.18 – p.13 ln.1; ECF 66 Exhibit F)

  e)  Plaintiff's Expert

Dully selectively quotes Dr. Krugman's testimony. Dr. Krugman testifies that:

> I don't think any of us have been trained to determine the age of a
> pers- -- like it's not -- I'm trying to think of a scenario -- like if
> someone came in as, like, a Jane Doe in a car crash and someone
> needs to know an age, you're
> still just going to be like guessing, right, based on height, weight,
> size, things like that. But there is no scenario in which I can think
> of where I would be like,
> "Okay, that's a 12-year-old, that's a" -- I don't know if you can. I
> mean, there are 12-year-olds out there who look like they're 18,
> and there's 18-year-olds out
> there who look like they're 12, and it's really hard. You can't just
> determine that.

(*Deposition of Krugman* P.33 ln.3-15; ECF 86 Exhibit 7) As pointed out by Dully,

Dr. Kruman does not testify that there is no correlation between age ranges and

SMR, although he clearly questions the strength of the correlations. What he

testifies to is that it is not scientifically reliable to make an accurate SMR from

digital pornographic material. (*Deposition of Krugman* P.51-55; ECF 86 Exhibit 7)

In other words, if the model depicted in the "DuckDuckGo.jpg." image was *in fact*

SMR I, everyone would agree that she would almost certainly be a minor. The

problem is, no one can say she is SMR I simply because there is no visible pubic

8

hair. Obviously, when the judicial officer read the opinion that an individual depicted is pre-pubescent, there is no question they could reasonably find that the individual is far younger than 18.  This is what makes Dully's opinions so dangerous.

    f)  <u>False Statements Regarding Grooming</u>

In all three reports, Dr. Dully offers the opinion that the models "do not appear to be shaved."  Despite offering this opinion, Dully does not consider herself an expert in grooming or appearance of grooming.  (*Dully Deposition June 18, 2025* P.44 ln.2-4; ECF 66 Exhibit F)  The willingness to offer opinions on topics without any expertise raises the inference that Dully has displayed a reckless indifference to the truth.

This point is not academic. Dully admits that the evidence suggests that at least one of the two models had practiced some form of grooming. (*Dully Deposition June 18, 2025* P.1-17 and P.70-73; ECF 66 Exhibit F).  This directly contradicts the affirmative statements that the models did not appear to be shaved: the basis for all her opinions of age and SMR.

    g)  <u>Intent to Deceive</u>

Dully intended for anyone reading her reports to believe that she was offering a medical opinion about the actual age of the individuals. First, in regards to the images depicting Milena D., Dr. Dully explicitly offers the opinion that she is younger than 18 years of age. This statement is clearly intended to communicate a factual assertion that the model is a child.

In regards to the "DuckDuckGo.jpg." image, Dully describes the model as pre-pubescent and a "female child."  Although the use of these terms infers the chronological age of the model, Dully offers direct proof of intent to communicate chronological minority:

> Q· · ·Right.· But did you call her a female
> child?· Do you see if I read that sentence how a
> person might interpret that as you saying that this
> person is a child, an actual child?
>
> A· · ·Well, I hope so, yes, but I don't know
> that.
>
> Q· · ·Wait, wait, wait, wait.· You hope that
> someone would interpret this as you -- as you
> offering the opinion that this was actually a child,
> like her actual age was under the age of 18?
>
> A· · ·Her age is indeterminant.· But she is well
> under the age of 18, and that is her appearance.

(*Dully Deposition June 18, 2025*  p.51-52: ECF 66 Exhibit F) Dully fully understood and intended to communicate that the models were children under the age of 18.

Contesting Plaintiff's interpretation of this evidence, Defendant writes in her response, "Dr. Dully clarified that the chronological ages were indeterminate." (ECF 75 P.12) What Defendant misses is that Dr. Dully clarified this point in her testimony given over two years after she produced the reports - *but she plainly does not clarify this in her reports*.

The truth was that from a medical standpoint, the chronological age of the models *was indeterminate.*  If her reports had been truthful, they would have said: the ages of the models are indeterminate.  But they did not.  To the contrary, her

reports clearly express an opinion about the chronological age of the models in question, specifically that they are children under the chronological age of 18.

The fabrication is not, as Dully suggests, that she knew the models were *adults* but maliciously described them *as minors*. The fabrication is that Dully knew that the chronological age of the models was *indeterminate*. Yet, she offered an inculpatory fabricated medical opinion that the models were *under 18 years old*, in total disregard of what she knew to be the truth.

h) <u>Reliance on Dully's Opinion for Criminal Charges</u>

Dully knew that her opinions were part of a criminal investigation and they may be presented to a judge and or jury. (*Dully Deposition April 28, 2025* P.50 ln.6-19; ECF 66 Exhibit G) There is no factual dispute that Dr. Dully's opinions were critical factors in deciding to move forward with the investigation, search warrant and charges. The opinions expressed in her reports were directly quoted in both search warrants. Tolbert testifies that Dr. Dully's opinion was the deciding factor and SJCO would have "gone with" Dully's determination, one way or the other. Preston testifies that she relied on Dully's opinion to make a probable cause determination. (*Preston Deposition April 28, 2025* p.125 ln.6 – p.125 ln.13; ECF 66 Exhibit G) Finally, ASA Payne indicates in her affidavit that she relied on Dully's opinions.

**MEMORANDUM OF LAW**

<u>Immunity and Presumptions Relating to 34 U.S.C. § 20342</u>

Dully has waived any immunity or defense contained in 34 U.S.C. § 20342. Dully raised, for the first time, in her response to Plaintiff's Motion for Partial

Summary Judgement this legal defense**.** She now raises it for the second time in her Motion for Summary Judgment (ECF 85 P.2)   Statutory defenses must be raised in an affirmative defense and failure to raise the issue results in waiver of the statutory defense. _Troxler v. Owens-Illinois, Inc._, 717 F.2d 530, 533 (11th Cir. 1983) (failure to raise workers compensation immunity as affirmative defense deemed a waiver.) _See Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp._, 684 F.2d 1383, 1386 (11th Cir. 1982); _Freeman_, 517 F.2d at 204; _see also_ 5 C. Wright & A. Miller, _Federal Practice and Procedure_ Sec. 1278, at 339 (1969) (failure to plead affirmative defense results in waiver and exclusion of defense from case); _Skrtich v. Thornton_, 280 F.3d 1295, 1306 (11th Cir. 2002) (Qualified immunity is an affirmative defense that must be pled, or else it is deemed waived.) The matter is not properly before the Court.  Discovery has ended and Plaintiff was not apprised of this statutory defense prior to the dispositive motion practice in this case.

Even if the statutory defense had not been waived, the statute's plain language applies to reports of "child abuse," not criminal investigation of possession of images of child pornography. Although clearly individuals can abuse and exploit children sexually – there was never an allegation that Mr. Lawshe had abused a child. In fact, there was never a child involved in this case. Pornographic images of adults is not a form of "abuse" or "neglect."   The only question is whether the individual was a minor and there is no reliable record evidence that the individual's depicted were minors.

Dully has admitted that the chronological ages of the individuals was indeterminate. She had no _medical_ reason to believe that children were involved in

12

this case.  Her defense in this case is that she never claimed that the models were chronologically minors. Dully cannot now claim that she offered the opinion that they were *in fact* actual minors, solely for the purpose of invoking a statutory immunity and it is not a credible argument that this statute applies to adults who merely subjectively "appear" to be children but in fact are adults.

Even if the Court were to apply the statute to this case, there is ample evidence that Dr. Dully has acted in bad faith.  In fact, all of the evidence, including the testimony of Dr. Dully, establishes that she offered medical opinions that she knew were inherently unreliable and not probative of the actual chronological age of the persons depicted in the subject images.  In fact, she knew the images depicted models of an indeterminate age and, in spite of this knowledge, offered the opinion that they were minors. This can fairly be characterized by a jury to be bad faith.

Qualified Immunity

Dully raises several arguments regarding qualified immunity.  First, she raises a statutory immunity found in Fla. Stat. Section 768.28(9)(a) and quotes *Eiras v. State Dep't of Bus. & Prof'l Regualtion Div. Of Alchoholic Bevs. & Tobacco,* 239 F. Supp. 3d 1331 (M.D. Fla. 2017).  This statutory defense was not raised in any affirmative defense and, for the reasons stated above, has been waived.

However, a review of *Eiras*, shows that the Florida Statute is only relevant to claims brought pursuant to Florida law.  Florida law does not operate to provide immunity from federal causes of action. *Id.*  Even if the statute applies to the present action, there is ample evidence of bad faith and actual malice, as shown above.

13

Next, Dully argues that Plaintiff "fails to assert a clearly established constitutional right." (Dully MSJ, ECF 85 P.19). In making this argument, Dully does not suggest that fabricating evidence does not violate the constitution or that such a rule has not been clearly established. In fact, Dully cites to multiple cases which hold that fabrication of evidence has long held to violate the constitution. Rather, Dully suggests that her "minimal involvement does not satisfy the requirements of a fabricated evidence claim" and that there is no evidence that Dully "knew her opinions were false." Her involvement was not minimal and she knew her opinions were false.

Government officials sued for violating constitutional rights under § 1983 may invoke qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The inquiry has two steps: first, the government official must show she was engaged in a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Second, the plaintiff must show: (1) the official violated his constitutional right; and (2) the right was clearly established at the time of the violation. *Id.* To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). *Aguirre-Jarquin v. Hemmert*, 2023 U.S. Dist. LEXIS 46013, *21 (Fla. M.D. 2023)

In the Eleventh Circuit, a fabrication-of-evidence claim is a species of malicious prosecution. *Watkins v. Session*, No. 19-60810, 2021 U.S. Dist. LEXIS 31032, 2021 WL 663762, at *10 & n.6 (S.D. Fla. Feb. 19, 2021) The right a

14

fabrication-of-evidence claim vindicates is the right not to be prosecuted with fabricated evidence. *See, e.g.*, *Kingsland*, 382 F.2d at 1234 ("Kingsland also asserts a § 1983 claim for malicious prosecution based on the defendants' alleged fabrication of evidence against her.) see also *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) ("Williams's malicious prosecution claim against Baaske is based upon Baaske's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and [*27] misleading evidence."). *accord Ashley v. City of New York*, 992 F.3d 128, 2021 WL 1149115, at *1 n.1 (2d Cir. 2021) ("[A] claim for fabricated evidence does not require that a plaintiff have been subjected to trial; it is enough that the fabrication results in a deprivation of the plaintiff's liberty."); [*16] *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) ("The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" (citation omitted)); *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016) ("[W]e hold that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged.")" *Foulke v. Morgan*, 2021 U.S. Dist. LEXIS 270319, *15-16.

When forensic experts, working as state employees, fabricate evidence used by law enforcement to bring charges, there is a violation of due process. The case of *Aguirre-Jarquin v. Hemmert,* although not binding, illustrates the application of

15

this principle. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023)  In that case, the District Court was presented with allegations that an FDLE forensic fingerprint expert had fabricated a false match with the plaintiff in an underlying criminal investigation and prosecution.   In denying summary judgment, for the defendant, the court writes that drawing all "inferences from this evidence in the light most favorable to Aguirre, reasonable jurors could conclude that Birks [the fingerprint expert] intentionally sent the print in Aguirre's case to McQuay for an unquestioned verification—indicating Birks knew the match was false or harbored serious doubts about the veracity of her findings." *Id.*  Unlike the defendant in *Aguirre,* Dully admits that she knew her reports were not reliable.

Dully argues that the fabrication of evidence claim arises out of the Fourth Amendment, not the Fourteenth. However, Defendant does not contest that a cause of action exists for fabrication of evidence under §1983 and has not suggested any flaw in the substantive factual elements pled.  Despite this argument, as explained in *Aguirre*: "It has long been clearly established that fabricating incriminating evidence violates the right to due process." *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023) Prior to ruling on the defendant's motion for summary judgment, the court in Aguirre summarized the relevant law:

> The fabrication of evidence by itself can constitute a due process violation in some circumstances. "[U]sing or planting false evidence in an effort to obtain a conviction violates the Constitution." *Jones v. Cannon*, 174 F.3d 1271, 1289-90 (11th Cir. 1999) (citations omitted); *see also Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1253 (11th Cir. 1997); *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977). And "it is established that a conviction obtained through use of false evidence,  known to be such by representatives of the State, must fall under the

16

Fourteenth Amendment." *See Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) (citations omitted). So allegations that Print Examiner Birks fabricated palmprint evidence used to convict him are enough to allege a due process violation. (*See* Doc. 45, ¶¶ 65-68, 154); *see also Jones*, 174 F.3d at 1289-90.

Mr. Aguirre-Jarquin alleged a violation of his constitutional rights based on Print Examiner Birks' fabrication of evidence, next is whether the right was clearly established. The answer here is simple: Yes... for the general fabrication-of-evidence due process violation, "[i]t was well-established in 1979 that fabricating evidence violates constitutional rights." *Diaz-Martinez*, 2009 U.S. Dist. LEXIS 88994, 2009 WL 2970471, at *11 (citing *Riley*, 104 F.3d at 1253). ***At bottom, it's hard to imagine any reasonable law enforcement official or analyst could believe fabricating evidence used to convict someone was constitutional—the question is far beyond debate.*** *See Priester*, 208 F.3d at 927; *Mullenix*, 136 S. Ct. at 308. So Print Examiner Birks is not protected by qualified immunity at this stage—Count I may proceed against her. *See Diaz-Martinez*, 2009 U.S. Dist. LEXIS 88994, 2009 WL 2970471, at *11-12. [emphasis added]

Aguirre-Jarquin v. Hemmert, 2020 U.S. Dist. LEXIS 269370 (Fla M.D. 2020) *See, e.g., Schneider,* 552 F.2d at 595 (police officer's manufacturing of evidence violates due process right to fair trial regardless of prosecutor's ignorance of the falsified evidence) *Riley v. City of Montgomery, 104 F.3d 1247, 1253* (11th Cir. 1997) (It was well established in 1989 that fabricating incriminating evidence violated constitutional due process rights to a fair trial.); Fabricating evidence used to deprive the rights of individuals violates due process and this has been clearly established for decades. *Id.*

In attempting to distinguish these cases, Dully argues that in order to succeed on the claim, Plaintiff must prove that Dully knew that the evidence was false when she produced the reports. While she did know that they were false, Dully overstates

17

the law. Plaintiff must prove that Dully intentionally *or recklessly* fabricated the reports. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, \*21 (Fla M.D. 2023)

Here, Dully concedes in her testimony and opposition to the present motion that she knew that SMR could not be used to estimate the chronological age of the individuals depicted. She admitted that from a medical perspective the model's age was "indeterminate." And to the extent that Dully is attempting to make a distinction of semantics, she admitted that her opinion of the "appearance" would not be a reliable basis to support a determination on whether the model depicted was a minor. (*Dully Deposition, April 28,2025* p.30 ln.9-19, ECF 66 Exhibit A) With this knowledge, she proceeded to write a report expressing the very opinions she knew were not supported by medical science. This is an intentional, knowing fabrication. At the very least, it is reckless.

Plaintiff does not suggest that Dully intended to deceive Preston. As Dully admits, she explained the lack of reliability of these opinions to Preston. Rather, Dully intended, by her own admission, that anyone *reading* the report would believe that she had expressed an opinion that the models were in fact minors. This is not only her testimony, it is obvious from the reports themselves. No reasonable juror could read these reports and come to any other conclusion than Dully has expressed opinions that the models were children, under the age of 18.

Finally, Dully admits that she knew these reports were part of a criminal investigation and may be used in front of a judge. (*Dully, April 28, 2025* P. 50 ln.6-10, ECF 66 Exhibit A) Setting aside for the moment the evidence of intent to

deceive, it is reckless to produce a knowingly false, or at the very least unreliable, inculpatory report which one knows will be used in a criminal investigation. Again, there is no plausible conclusion other than Dully consciously disregarded the risk that her reports may be used to support the contention that the models were in fact minors – when she knew that the reports were not reliable evidence upon which to make that determination.

<u>Compliance with Florida's Medical Malpractice<br>Pre-Suit Notice Requirements</u>

This is not a medical malpractice case. First, the issue was not raised in the affirmative defenses and, again, has been waived. Irrespective of the wavier, the mere fact that a doctor is involved in claim does not make it medical negligence. *McManus v. Gamez*, 276 So. 3d 1005, 1007 (Fla 2nd DCA 2019) In order to determine whether a claim is one grounded in medical malpractice, a court must first consider "whether the action arose out of 'medical . . . diagnosis, treatment, or care" of the Plaintiff. *Id.*  Plaintiff has not alleged that there was a doctor-patient relationship with Dr. Dully or that Dully rendered him medical care or treatment of any kind. These are the most basic tenants of medical malpractice claims. *Id.*

Plaintiff has alleged conduct which violated the United States Constitution resulting in a deprivation of liberty and consequential injuries.  The claim has been brought under 42 U.S.C. § 1983. Florida's medical negligence statute simply has nothing to do with the facts or allegations of this case.

## CONCLUSION

Dully does not deny the lack of scientific reliability in her reports.   Rather, she states plainly that they are not scientific or medically reliable opinions about the age of the models in question. Moreover, she admits that they would not be useful to a finder of fact in determining whether the models in question were in fact under the age of 18.

Despite this knowledge, she clearly and unequivocally labels the models as children and below the age of eighteen in her written report to law enforcement. When confronted in her deposition with the risk that readers may interpret these reports as an opinion on chronological age, Dully unabashedly acknowledges her intent and hope that they would. This conduct violates clearly established constitutional rights. Summary Judgment should be denied.


Dated: October 3, 2025


/s/ Michael K. Roberts
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff