**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                            Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

       Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT PRESTON'S**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Detective Preston's Motion for Summary Judgment should be denied. Defendant Preston has ignored the material facts of this case and mischaracterized those facts she claims to be undisputed. When considered in their totality, the facts of this case show that probable cause, or arguable probable cause, did not exist to effectuate a search or arrest of Mr. Lawshe. Moreover, the evidence proves that Det. Preston has offered false testimony and fabricated evidence which are material to a finding of probable cause. Her actions violate clearly established and fundamental principles of constitutional law.

1

## UNDISPUTED FACTS

In moving for summary judgment, Det. Preston ignores the material facts of this case and instead focuses on those self-serving facts which she insists, without evidentiary support, establish probable cause.

### a) Lack of Training

At the time of this investigation, Preston had been an ICAC detective for only a "couple of months." (*Preston Deposition, March 13th 2025*, p.88 ln.2 – P.89 ln.1 ECF 67 Exhibit F). She had not completed ICAC training (*Id.*) and had no specialized training in distinguishing images of minor children from those of adults. (*Preston Deposition, March 13th 2025*, P.88 ln2 – P.89 ln.1; ECF 67 Exhibit F) Likewise, Det. Tolbert had no training or expertise regarding distinguishing images of minors from those of adults. (Tolbert P.13 ln. 10 – P.15 ln. 12; ECF 67 Exhibit C)

### b) The Depiction of Age Difficult or Age Indeterminate Models

The models depicted in the subject images were "age-difficult" or of an indeterminate age from visual inspection. "Age-difficult" is a term used to describe an individual who may appear to be an adult. (*Preston Deposition, March 13th, 2025*, P.57, ln.25 – P.58, ln.3; p.181, ln.1-13; ECF 67 Exhibit F) There was no articulable reason to believe, from simply looking at the image that it depicted a minor, as opposed to legal and constitutionally protected adult material.

This investigation began when SJSO received the CyberTipline Report #153739160 from the National Center for Missing and Exploited Children (NCMEC). (*see Affidavit for Search Warrant February 28, 2023*; ECF 67 Exhibit

A) The CyberTipline Report, involved a single image characterized as "CP-unconfirmed."[1] (see *CyberTipline Report #153739160*; ECF 67 Exhibit B)

"Unconfirmed" "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted." (*NCMEC Corp. Rep. Deposition* p. 22 ln.18-24; ECF 67 Ex. E) In other words, NCMEC made the determination that it was not possible to look at the image and determine "whether they are under the age of 18 or over the age of eighteen." (*NCMEC Corp. Rep. Deposition* p. 28 ln.9-22; ECF 67 Ex. E)[2]

In her motion, Preston ignores the fact that at least two other detectives believed the subject models were potentially adults. Det. Preston testifies there was a material disagreement in SJSO about how to interpret the image. (*Preston Deposition, March 13th 2025*, P. 101, ln.5-16) An unidentified detective thought that the model was "age-difficult." (*Preston Deposition, March 13th, 2025*, P.96, ln.17-19; P.169, ln. 2-17; ECF 67 Ex. F). Although Det. Preston cannot recall who, among her colleagues, questioned whether the model was a minor, SJSO Det. Kevin Greene believed the model was age-difficult and that a reasonable person could view the model to be an adult or a minor. (*Greene Deposition* p.65 ln. 7-13; ECF 67 Ex. D)

---

[1] Preston did not understand what unconfirmed meant. (*Preston Deposition, March 13th, 2025*, P.27-28; P.169, ln. 2-17; ECF 67 Ex. F).

[2] Unconfirmed does not "indicated that the image appears to be child pornography," as Preston quotes from an unrelated case. That language is not the evidence of this case and clearly not an accurate recitation of NCMEC's definition of its terminology.

In fact, Det. Preston concedes that other people could have interpreted the individual depicted in the subject image as at least 18 years old. (*Preston Deposition, March 13th 2025*, P.93, ln. 6-23; ECF 67 Ex. F) She also agrees that those people would not be "wrong" in that opinion. *Id.* Likewise, the model in the image was not portrayed as or pretending to be a minor. (*Preston Deposition, March 13th 2025*, P.62, ln.7-25; ECF 67 Ex. F)

### c) Publication on a Public Website

The evidence then known to Det. Preston suggested that in all likelihood, the model had been portrayed as an adult. Based on the watermark, Preston had reason to believe that this image was published on a public website. Virtually all models published on public pornographic websites are represented to the public as being adults. (*Preston Deposition, March 13th, 2025*, P. 67, ln 23 – P.68, ln.1; ECF 67 Ex. F) Likewise, Det. Eugine Tolbert, testifies that the fact that a model is being represented to the public as an adult or a verified adult is an important factor in reaching a probable cause decision. (*Tolbert Deposition,* P.26 Ln. 1-12; ECF Ex. C) Her current supervisor, Det. Dennis Camden, also acknowledges that public websites almost always portray models as adults to the consumer. (*Camden Deposition* p. 23 ln.7-15, attached as Exhibit G)

### d) No Evidence to Support Material Element of the Crime

A conviction for the crime of possession of child pornography requires the State to prove beyond a reasonable doubt that the defendant knowingly possess a photograph or other presentation which, in whole or in part, he or she knows to

4

include any sexual conduct by a child. *§ 827.071(5), Fla. Stat.  Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020)

Det. Preston had no evidence to support a reasonable belief that Mr. Lawshe knew or believed that the image (*CyberTipline Report#153739160*, ECF 67 Ex. B) depicted a minor.  In fact, given the indeterminate age of the image, any cautious officer would doubt that such evidence would ever exist. Preston testifies that she could not say whether he thought the model was an adult or "something else." *Preston Deposition, March 13th, 2025*, P.172, ln. 20 – P.174, ln. 9; ECF 67 Ex. F) She states that any guess as to his knowledge or opinion of the model's age would require her to "speculate," something she was unwilling to do. *Id.*

e) <u>Reason for Consult with Dr. Dully.</u>

In her Motion for Summary Judgment, Preston suggests that the reason for consulting Dr. Dully was to gain an "extra layer of confirmation." (Preston MSJ; ECF 83 P.2). This is only half true. As Preston explained in her testimony, the reason she went to Dr. Dully was because there was a *disagreement among detectives about how to interpret the image*: "If it was one that I felt, hey, this is a child and I had somebody like in this case that had a difference of opinion, just to cover our bases, I would go to Dr. Dully." (Preston March 13, 2025 P.100 ln. 1-5; p.101 ln. 1-12; ) In fact, Dr. Dully confirms that law enforcement only brings her "borderline" cases for review. (Dully April P.33 ln.24)

f) <u>Dully's Fabricated Medical Report</u>

There is no dispute that Preston presented the opinions of Dully to the judicial officer in her sworn probable cause affidavit.  Even now, after Plaintiff has

explicitly raised this issue in his Motion for Partial Summary Judgment (ECF 67), Preston does not acknowledge the fact that Dr. Dully's opinions regarding estimated chronological age were not reliable. (*Dully Deposition, April 28, 2025 p.*46 ln.13-18, attached as Exhibit J) Dully testifies:

> Q        If I was someone who was being
>          asked to make a factual determination about whether
>          or not a model depicted in a pornographic image on
>          the internet was a minor; in fact, a minor, would
>          your opinion about the appearance be a reliable
>          opinion for me to base that decision on?
>
> A.       No, that's what the investigation is for.

(*Dully Deposition, April 28,2025* p.30 ln.9-19) Dully has conceded in her filed papers that from a medical science perspective, "the chronological ages were indeterminate" (ECF 75 P.12) and that "the use of a SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image." (ECF 85 P.7)

Preston claims that she "believed Dr. Dully was a reliable source of information in estimating the age of the individuals in these images." (Preston MSJ ECF 83 P.3) However, this statement is merely colorable. Preston does not recall any of the contents of her conversation or discussion with Dully. (Preston Deposition March 13, 2025, p. 102 ln.1-23; p.114; p.276 ln. 8: ECF 67 Ex. F) Other than knowing that Dully was a medical doctor, Preston knew almost nothing about Dully's qualifications, methods or reliability in estimating the chronological age of a model from review of digital images prior to the meeting. (*Preston Deposition, March 13, 2025* see generally p.101-106; ECF 67 Ex. F) She does not understand

6

what a Sexual Maturity Rating (SMR) is or how it relates to the opinions of Dr. Dully. (*Preston Deposition, March 13, 2025* see generally p.116; p.206;ECF 67 Ex. F) She does not think that Dr. Dully is an expert on grooming of pubic hair or determining whether a model is groomed from a digital image. (*Deposition of Preston, March 13, 2025* P.119, ln 1-11; P.120, ln.22 – P.121, ln.18; ECF 67 Ex. F) Preston admits that digital images are often modified or edited for aesthetic reasons, and she does not know whether the subject images were edited or modified. (*Preston Deposition, March 13, 2025* p.77-78; ECF 67 Ex. F*)*

When asked why she thought Dully's opinions regarding age was reliable, Preston confesses that it's a "personal opinion… which I don't know." (*Preston Deposition, March 13, 2025* p.103 ln. 22 – 104 ln.18: ECF 67, Exhibit F) This is not a basis for a professional law enforcement officer to accept scientific opinions in a probable cause investigation.

Preston is not a doctor. Tolbert is not a doctor. Payne is not a doctor. These witnesses cannot establish Dr. Dully is an expert in age estimation or that her opinions were reliable. Tolbert's suggestion to consult with Dully does not make her opinions scientifically reliable. The fact that Payne or any other law enforcement officer has previously relied on Dr. Dully's opinions about chronological age, does not make the opinions reliable.  The evidence in this case is that it is "not part of the ICAC Investigative Guidelines or training standards to obtain an opinion from a medical doctor as to the age of an individual, when the images involve age difficult

persons, published on the public internet." (Report of Siewert, attached as Exhibit A to this Response)

g)  Lack of Pubic Hair

A trained ICAC investigator should know that the lack of visible pubic hair on a digital image is not a scientifically reliable basis to estimate the age of a model in a pornographic image. *(Report of Siewert, attached as Exhibit A to this Response)* Every detective involved in this case has admitted that the mere lack of visible pubic hair, in-and-of-itself, is not a basis upon which to estimate the age of a female model. (*Greene Deposition* p.75 ln. 1-15; ECF 67 Ex. D) Even Preston acknowledges this fact (*Preston Deposition, March 13, 2025* p.123-124; ECF 67 Ex. F*)* and admits that the appearance of pubic hair can easily be altered by grooming or digital altering. *Id.*

Any reasonable Detective would know that the opinions expressed by Dully, to the extent that they purport to be based on pubic hair, were not scientifically reliable.  This is borne out by testimony of Det. Tolbert when questioned about Dully's opinions regarding the ycbLVVFQ_0.jpg image (Dully's Report April 5, 2023 ECF  Exhibit F[3])

> Q. Okay. Does that give you concern as an investigator, that this model has what may be interpreted as adult breasts, but this doctor, because of the lack of appearance of pubic hair, is saying that she is prepubescent, does that give you concern, as an investigator?
>
> A. So it's certainly a conversation I would want to have with her, to try to get that hashed out.·

---

[3] Quote the report

(*Tolbert Deposition,* P.65 Ln. 8-22; ECF Ex. C) Tolbert clearly understands the problem. This opinion does not pass the proverbial "smell test." When confronted with these facts, Tolbert agrees that Preston should have spent more time on this case prior to making a probable cause decision. (*Tolbert Deposition,* P.66 Ln. 18-23; ECF Ex. C)

It is important to note that this one image (ycbLVVFQ_0.jpg) was the only image found on Mr. Lawshe's phone and reviewed by Dully that was not charged in the criminal case. Under oath, Preston could not explain why. (*Preston Deposition, March 13, 2025* P.257 ln.15 259 - ln.2; ECF 67 Ex. F) However, a reasonable inference can be made that Preston understood that there was a complete lack of credibility to the opinion and, therefore, chose not to charge that image.  Such an act would evidence malicious conduct and there is no other explanation offered by Preston.

### h)  Dr. Dully's Warning to Preston

Dully unequivocally and repeatedly testifies that she warned Preston that her opinions were not scientifically reliable:

> Q· · ·All right.· And when you met with her, you
> explained to her that you could not offer her
> scientific reliable opinions regarding the actual age
> of the models depicted in these images, correct?
>
> A· · ·Yes.

(*Dully Deposition June 18, 2025* p. 12 ln.18 – p.13 ln.1, attached as Exhibit K)

Det. Preston has not refuted or contradicted the testimony of Dully regarding her verbal warning about the lack of reliability of her medical opinions.  If anything,

9

Preston's conspicuous lack of any recollection of the conversations she had with Dully raises an inference that she is being untruthful about the warnings she received.

  i)   History of Metart.com

Contrary to Preston's sworn affidavit, Metart.com is not a known source of CSAM and does not have a history of publishing child pornography. (*Douglas Affidavit*; ECF 67 Exhibit H)

Preston testified that she did not know if the statements about met-art.com from google were reliable. (*Preston Deposition, March 13, 2025* P.53 Ln. 12-17: ECF 67 Exhibit F)[4] Preston had no personal knowledge about whether or not there is a known history of illegal content on this site. (*Preston Deposition, March 13, 2025* P.5421-22;ECF 67 Ex. F) She had never heard of the website. *Id.*  When questioned, she states that she got the information from a "google" search.  (*Preston Deposition November 21, 2023* p.30 ln.3-19, attached as Exhibit L) She cannot recount any details of the source or the accuracy of this statement. In fact, she freely acknowledges, specifically regarding the history of metart.com, "you can't believe everything you read on google." *Id.*

Preston also identifies Det. Greene as a source of her statement. In her motion for summary judgement, she argues that it is "well established that observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their

---

[4] Preston never identified or produced this article from the supposed google search.

number." (Preston MSJ;ECF 83 P.11) While this may be a correct statement of the law, it is not supported by the facts of this case.

Preston admitted in her deposition testimony that she did not know if the statements from Det. Greene regarding met-art.com were reliable. (*Preston Deposition, March 13, 2025* P.54 9-12; ECF 67, Exhibit F).  Det. Greene has no personal knowledge of whether illegal content has ever been published on met-art.com.  (*Greene Deposition* p.52-53; p.80 ln24 – p.81 ln.4; p.87 ln.22 – p.88 ln.11; ECF 67 Ex. D) Greene claims to have read something about metart.com in an unknown source on the internet, over 10 years ago. *Id*. He does not know if the claims were credible. *Id*. Furthermore, he testifies that he would not be willing to swear to the truth of those assertions regarding metart.com. (*Greene Deposition* P.88 ln.5-11; ECF 67 Ex. D)  Preston's repeating of unreliable information, in the form of a sworn affidavit, does not make the information reliable.

### j)  Assistant State Attorney Kaitlyn Payne

The affidavit of Kaitlyn Payne adds little, if anything, to the material question of (1) whether or not Preston presented fabricated evidence in her affidavit or (2) whether Preston conducted a reasonable investigation under the circumstances. Ms. Payne, like Preston, ignores the glaring problem with the reliability of Dr. Dully's medical opinions.

In her affidavit, Payne insists that she believed the images were CSAM.  This is not true or least it is not the whole story. *Before learning of the age verification documents produced by metart.com*, Ms. Payne wrote to Mr. Peirce that "Ben and I have been talking about the case and I do see where you are coming from."  (Emails

11

from Payne attached as Exhibit B to this Response) Payne goes on to state that "I just feel like there is other information, like the various phone scrubbers, contained on the download that give me pause." Id. Thereafter, she began to attempt to resolve the case in earnest. *Id*. As called out in Mr. Pierce's response, this was a complete fabrication, designed to create leverage. Id. There was never any "scrubbers" on Mr. Lawshe's phone.

Moreover, after dropping the case, Payne consented to returning all evidence, including the images to Plaintiff. (Emails from Payne attached as Exhibit C to this Response) This is not the action of someone who believed the content was CSAM. Payne knew the models were adults and suspected as much prior to the age verification documents being produced.

### k) Unreasonable Investigation

Despite knowing that there was a reasonable disagreement about how to interpret the image, Preston never went to the website watermarked on the subject image (metart.com). (*Preston Deposition, March 13th 2025*, P.55, ln. 3-14; ECF 67 Ex. F) She has no explanation for this omission in her investigation. (*Preston Deposition, March 13th, 2025*, P.67, ln. 4-9; P.185, ln.25 – P.186, ln.13; ECF 67 Ex. F) When asked why she did not go to the website to further her investigation, Preston simply replies, "I don't know." *Id.*

A reasonable investigation would include visiting the website where the image was published. This is the testimony of Patrick Siewert, a former ICAC detective and the Plaintiff's retained expert. *(Report of Siewert, attached as Exhibit A to this Response)* SJSO officers have testified that a reasonable investigation of possession

of CSAM, under these circumstances, would include visiting the website identified on the images themselves. (*Greene Deposition, December 17th, 2024*, P.46, ln. 13-19; *Camden Deposition* p40 ln. 20-24)  ICAC investigators are trained to attempt to identify suspected victims of child sexual abuse. (*Tolbert Deposition, December 17th*, 2024, p.46, ln. 5-8; ECF 67 Ex. C) and every effort should be made to identify the victim in these cases. (*Greene Deposition* p. 61 ln. 15-24: ECF 67 Ex. D)

When asked about Preston's failure to attempt to identify the alleged victims, Tolbert described her conduct as "sloppy police work." (*Tolbert Deposition, December 17th*, 2024, P.46, ln. 9-16; ECF 67 Ex. C). Her colleague, Det. Greene expressed regret over the investigation and admitted *"I think they should have taken more time. Honestly, I think they have probably rushed a little bit and, you know, taken more time and -- and gone through things a little longer." (Greene P. 14 Ln. 2-13)*

This is not the argument of Plaintiff's counsel.  This is not an investigative "suggestion."  Experts and SJSO officers believe that additional investigation *should* have been done prior to making probable cause decisions.  Det. Preston refused to take a position on whether it was reasonable or not to investigate the image on met-art.com. (*Preston Deposition, March 13th, 2025,* P.185 ln. 25 – P.186 ln.13)

In other investigations of NCMEC CyberTips, Preston has visited pornographic websites as part of her investigation. (*Preston Deposition, March 13th 2025,* P. 66, ln. 18 – P.67, ln. 9; P.145, ln. 1-7;ECF 67 Ex. F) Furthermore, Preston admits that she had the ability to go to the website in this case and could have easily

verified that the subject model was on the website. (*Preston Deposition, March 13th, 2025*, P.68, ln.21 – P.69, ln. 1;ECF 67 Ex. F) Preston further admits that she was aware that federal age verification law requires producers and publishers of child pornography to maintain age documentation. (*Preston Deposition, March 13th, 2025,* P.141 ln.15-21; ECF 67 Ex. F)

### l) Exculpatory Information Readily Available

Only after Mr. Lawshe was arrested, did someone from SJSO attempt to locate the model(s) on the internet. (*Greene Deposition*, December 17th, 2024, p.33 ln.12 - p.35 ln.11: ECF 67 Ex. D) It took Det. Greene approximately 20-30 minutes to locate both models on two or three websites. *Id*. All of the information needed to locate the models on the internet was available and included on the images, themselves. Each of the websites described the subject models (both models) as verified adults and purported to comply with federal age verification laws. *Id*.

After the meeting with Det. Greene, Mr. Lawshe's criminal defense team located the contact information of the website's records' custodian (published on the website) and promptly received records with documentation of the models' age. The website's records custodian provided a statement that the models were adults at the time of the photographs. In the statement, the records custodian states that it is the policy of metart.com to obtain age verification documents at the time any content is obtained. (*Age Verification Documents,* ECF 67 Ex. H) He also provided redacted copies of photographs of the models holding passports. (*Age Verification Documents*, ECF 67 Ex. H)

14

Probable cause would not have existed for a search warrant or an arrest had SJSO been in possession of the age verification documentation from the records custodian. (*Tolbert Deposition* p. 53 ln.22 – p.54 ln. 13; ECF 67 Ex. C) Preston acknowledges that the age verification documents "obviously would have changed the entirety of the investigation." (*Preston Deposition, March 13th 2025*, P.154, ln. 12-20: ECF 67 Ex. F)

This age verification information was readily available, prior to the probable cause determination. (*Tolbert Deposition* p.54 ln. 14-24; ECF 67 Ex. C and *Greene Deposition* p. 41 ln. 6-11; ECF 67 Ex. D)  Even Det. Preston admits that she had all of the information that she needed readily available in order to reach out to met-art.com's record custodian to request age verification information prior to making a probable cause decision. (*Preston Deposition, March 13th, 2025* p.147 ln.12-18: ECF 67 Ex. F)

m) The DuckDuckGo Image

The fact that Det. Preston chose this image from Mr. Lawshe's phone and described it as CSAM is frankly outrageous. (ECF 72-4) There is nothing about this image that would lead any reasonable person to suspect that it portrayed a child. It's a cut-off image which was clearly not the subject of the screenshot. Because the image is cut-off, there is no face and no breasts shown.  It is marked with a publisher's name and appears to be the cover of a virtual magazine. It identifies the model by a stage name. It has a QR code on the image. The other images on the screenshot appear to be of adults.

15

Preston offers no cogent explanation of what made her think this cut-off image was CSAM. (*Preston Deposition, March 13th, 2025* P.157-159; ECF 67 Ex. F) The only suggestion ever produced that this model was a minor, was Dully's patently false opinion that because she did not appear to have pubic hair, she was prepubescent.  No reasonable person could look at this image and form an honest opinion that the individual depicted was pre-pubescent.

Preston now complains that it is difficult to confirm that the model Kacey Lane is the same model depicted in the "DuckDuckGo" image. This is because (1) the images is cut-off and (2) Preston never attempted to locate the complete image or identify this model. This is a problem of her own making. During her deposition, when shown the photograph of the model holding her passport, Preston admitted that she could be as old as 20. (*Preston Deposition, March 13th, 2025* P166 ln. 5-6; ECF 67 Ex. F) The fact that this image was picked out, apparently at random, and charged as criminal contraband raises an inference of malice.

n) Age Verification Documentation

Counsel for Preston attempts to minimize the significance of the documentation and information provided by Jeffry Douglas. (ECF 78 P.2-3) However, within a period of less than 24 hours, Douglas produced photographs of the two models holding passports along with additional relevant information. (see ECF 67, Exhibit H) The passports clearly show the birth date of the models. *Id.*  Mr. Douglas produced a sworn statement and email, which outlines metart.com's policy and procedures regarding compliance with age verification laws and, again, states that he has reviewed the relevant documents and states when the earliest

photographs of Milena D and Kacey Lane were taken, observing that they were an adults. *Id.* Mr. Douglas indicated that he had requested additional information and indicated that FBI Agent Terri Botterbush had previously investigated the identity of Milena D.[5] *Id.* The case was dropped without a request for additional information from the ASA.

If true, this information would be definitive proof of innocence and there is no evidence that it is not true. Preston questions the veracity of the information but has never done anything to investigate its veractity. (Response ECF P.4)

The only evidence which would prove that the models depicted were adults at the time of the images would be (1) evidence of their birthdate and (2) evidence that the date of the subject photography occurred more than 18 years after the date of birth. Mr. Douglas, whose job it is to be the records custodian, provided both pieces of information, along with a willingness to fully cooperate. Preston fails to articulate what more or additional information she would have expected with less than 24 hours notice, 6 days before Christmas. Crawford Pierce, Mr. Lawshe's criminal defense lawyer, has produced emails and an affidavit in this case, which clearly articulate the timeline and investigation of these images. (see ECF 67, Exhibit H) No objective officer in possession of this information could reasonably find probable cause that the models were in fact under the age of 18.

## II.    MEMORANDUM OF LAW AND INCORPORATED ARGUMENT

---

[5] The volume of Cybertip Reports is explained by the fact that the image has been erroneously included in an unknown CSAM hash list.

There exists material factual disputes in the evidence presented by Defendant which prohibits entry of summary judgment in favor of Det. Preston. In seeking summary judgement on any issue, the moving party bears the burden of establishing there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) Preston has not met this burden.

### a) Probable Cause

Probable cause was required to effectuate both the search warrants and arrest of Mr. Lawshe.  *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003); *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) Probable cause exists if the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing a criminal offense. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). However, mere speculation is insufficient to establish probable cause. *Whitaker v. Estelle*, 509 F.2d 194, 196 (5th Cir. 1975) "Probable cause requires more than mere suspicion..." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) It is clear that an inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required to establish probable cause. United States v. Perkins, 348 F.3d 965, 967 (11th Cir. 2003)

Here, there was never more than a possibility or suspicion that the images depicted minors. Even accepting Preston and Tolbert's self-serving testimony that they subjectively thought the models were minors, this is nothing more than a hunch or a gut-feeling.  Defendant has not offered any reliable evidence to suggest that her hunch was more probable than those who disagreed with her.  In fact, Preston concedes that others might have reasonably believed the models were adults.  She also testifies that she could not conclude that Mr. Lawshe knew the images depicted minors.

Virtually all young adults are age-difficult. It is not possible to distinguish between a 19-year-old from a 17-year-old by just looking at them. Everyone knows this.  If simply eye-balling age difficult images can establish probable cause, then millions of people in possession of vast qualities of legal adult content would be subject to search and arrest. This cannot be sufficient to warrant a prudent person to believe that an individual had committed a criminal offense.

b)  The Search Warrants - False and Fabricated Affidavit

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant violates the Fourth Amendment if the affidavit supporting the warrant contains statements are deliberately false or made with reckless disregard for the truth and such statements are necessary to a finding of probable cause. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). The rule in *Franks* extends to omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit" if the inclusion of such omissions "would have prevented a finding of probable

19

cause." *Id.* at 1326-27. More succinctly, officers may not lie about or conceal critical information. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019)

"When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003) (emphasis in original). While this condition does not dictate that the statements be objectively accurate, it does require that they "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

Defendant argues that "there is nothing to suggest that Detective Preston deliberately falsified or omitted any information with reckless disregard for truth or an intent to mislead the judge reviewing and signing the search warrant." (MSJ, ECF 83, P.14) Of course, this ignores the fact that at the time Preston swore out the affidavit, she knew that fellow law enforcement officers believed that the image possibly depicted an adult. It ignores evidence that Preston knew that Dr. Dully's opinions were not reliable estimates of the model's age. It also ignores the fact that Preston had no reliable source for her false assertions about metart.com's history.

The record evidence shows that Dully informed Preston the reports were not accurate or reliable opinions of the model's age prior to the submission of the affidavit. She knew the evidence and estimates of age were fabricated.

Likewise, the record evidence proves Preston did not subjectively believe that metart.com was a known source of CSAM at the time she submitted the affidavits for search warrants. She was just repeating uncorroborated information from an

20

unknown source. Preston's flippant remark that "you can't believe everything you read on google" is no joke. Rather, it shows her willingness to swear to assertions without regard for her obligation to present truthful reliable information to the court.

Preston omitted from the probable cause affidavit that NCME categorized the content as "unconfirmed." Finally, Preston knew at the time she submitted the affidavit that a reasonable person could interpret the image as depicting an adult and there was a disagreement about how to interpret this image within SJSO. This was obviously critical information for the judicial officer, who was asked to make a fair and impartial determination, without ever seeing the images in question.

When these false and fabricated statements are removed and the omitted evidence is considered, all that is left is evidence that Mr. Lawshe possessed a pornographic image which depicted a model of indeterminate age. The affidavit did not contain Preston, Tolbert or Payne's personal subjective opinions about the model's age. Preston knew, without having to go the website in question, that the image(s) was likely published on a public website and likely described the model as an adult on that website. She knew that the model was not portrayed or pretending to be a minor. In reality, without Dr. Dully's fabricated reports, Det. Preston would never have even sought a search warrant.

The facts supporting the second search warrant are substantially the same as those presented in the original affidavit. This affidavit fails for the same reasons the original affidavit fails.

c) Qualified Immunity - The Search Warrants

The law was clearly established that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest." *Cannon*, 174 F.3d at 1285. *See also Kelly*, 21 F.3d at 1554; *Garmon v. Lumpkin County*, 878 F.2d 1406, 1410-11 (11th Cir. 1989) (holding Lumpkin County sheriff was not entitled to qualified immunity where he directed an investigator to submit a warrant application that contained knowingly false statements). Holmes v. Kucynda, 321 F.3d 1069, 1083 "It is clearly established that officers cannot knowingly make false statements in a warrant application where those misstatements are necessary to probable cause. ..." *Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021)

Preston suggests that the right violated was not clearly established. Defendant cites specifically the case of *U.S. v. Gatherum*, 338 F. App'x 271, 272 (4th Cir. 2009). This case, and the few other cases cited, do not deal with false and fabricate evidence claims. There is no suggestion in the facts of *Gatherum* that the officer submitted knowingly false or fabricated evidence to the judicial officer. There is no suggestion that the arresting officer concealed other law enforcement officers' opinions that the images portrayed adults or were "age-difficult." There are no spurious accusations about the publishing website. The undisputed facts of that case seem to suggest unanimity that the image depicted a 12-14 year old child. That statement was not questioned or impeached by the evidence. To the contrary, the Court's decision turns on the observation that "while some 16- or 17-year-old

22

models might be difficult to distinguish from 18-year-olds, the physical differences between a 12-year-old model and an 18-year-old *model generally would be significant and readily apparent.*" [emphasis added] *Id.*  This illustrates the problem with Preston's conduct: she knew the age of the model(s) was not readily apparent and concealed that fact from the court.

Materially false statements, fabricated evidence and concealment of critical facts in a probable cause affidavit are patently unconstitutional and have long been recognized as such.  Any reasonably competent officer would be well aware of this.

d)  Probable Cause  - False Arrest

As outline above, the totality of the circumstances known to Det. Preston did not support probable cause that Mr. Lawshe had committed the crime of knowing possession of CSAM. The mere possibility or suspicion that a pornographic model of indeterminate age may appear to be under the age of 18 to some untrained people, cannot establish probable cause.

The probable cause analysis does not end with the facts known to Detective Preston at the time of the search warrant or arrest.  In establishing probable cause, an arresting officer is required to conduct a reasonable investigation. Rankin v. Evans, 133 F.3d 1425 (11th Cir. 1998) quoting *Tillman,* 886 F.2d at 321 and *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a "cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of

the information.").  In evaluating probable cause, an officer may not 'unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her or electing not to obtain easily discoverable facts' that might tend to exculpate a suspect." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004)). In other words, a detective "may not close his or her eyes to facts that would help clarify the circumstances of probable cause," nor are they "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami, 382 F.3d 1220, 1228* (11th Cir 2004)  *cf. Hernandez v. United States*, 939 F.3d 191, 208 (2d Cir. 2019) see also *Alcocer v. Mills, 800 Fed. Appx. 860, 866* (11th Cir. 2020) *also Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) ("Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest . . . must charge him with possession of all the information *reasonably discoverable* by an officer acting reasonably under the circumstances." (emphasis added)

Plaintiff has proffered expert testimony that under these circumstances, "standard investigative practice would involve visiting the website in question." *(Report of Siewert, attached as Exhibit A to this Response)* Plaintiff's expert, Mr. Siewert, goes on to state that "after visiting the website, Det. Preston should have requested age verification documentation from the website's record custodian. Investigators trained and experienced in the investigation of CSAM, should be aware of the potential availability of Federally mandated age verification

24

documentation. Compliance with these age verification laws makes this evidence readily available to investigators, such as Det. Preston." *Id*.  Det. Greene corroborates this testimony. Tolbert describes Preston's efforts as sloppy police work.  This testimony establishes that the investigation was not reasonable.

When one considers the exculpatory evidence readily available to Det. Preston at the time of her probable cause determinations, it quickly becomes apparent that probable cause never existed in this case. As cited above, Detective Greene establishes that both models could be located on multiple public websites within 20 -30 minutes. All of these websites described both models as "verified adults." All of these websites claimed compliance with federal age verification laws. The records custodian of metart.com promptly provided documents and affidavits that the models were adults.  Possession of this information would have prevented any objective police officer from seeking probable cause for an arrest.

e) Qualified Immunity – Arguable Probable Cause

Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) However, a qualified immunity analysis must charge the officer with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances. *Kingsland v. City of Miami*, 382 F.3d 1220, 1222 citing  *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)

As stated above, no reasonable officer would have believed probable cause existed under these circumstances and with all of the information readily available. Preston's sole argument that she is entitled to qualified immunity based on arguable probable cause is "there is little question that a reasonable officer in Detective Preston's position could have credited Dr. Dully's opinions and determined probable cause existed to arrest Plaintiff." (Motion ECF P. 24) Again, this argument is entirely detached from the evidence of this case. Dr. Dully warned Preston that her opinions are not reliable estimates of the ages of the models depicted.  No objectively reasonable officer would credit an unreliable expert report after being warned that it was not scientifically reliable *by the author of the report*.

    f)  <u>First Amendment</u>

Preston's motion fails as to Plaintiff's First Amendment claim, as there was neither probable cause nor arguable probable cause.

WHEREFORE, Plaintiff requests an order denying Preston's Motion for Summary Judgment.

Submitted this 3rd Day of October 2025

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff

26