# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## JACKSONVILLE DIVISION

|  |  |
|---|---|
| WILLIAM LEE LAWSHE, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sherriff's Office, and KATHLEEN DULLY, in her individual capacity as medical director of the UF Child Protection Team,<br><br><br>    Defendants. | 3:24-cv-00044-JAR-MCR<br><br><br>OPINION AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

## INTRODUCTION

Before the court are the parties' cross-motions for summary judgment[1] and responses and replies thereto.[2] Plaintiff William Lee Lawshe ("Lawshe") moves for partial summary judgment

---

[1] Mot. for Partial Summ. J. Against Def. Dully by William Lee Lawshe, ECF No. 66 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Dully"); Mot. for Partial Summ. J. Against Def. Preston by William Lee Lawshe, ECF No. 67 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Preston"); Mot. for Summ. J. by Mikayla Preston, ECF No. 83 (Sep. 12, 2025) ("Preston S.J. Mot."); Mot. for Summ. J. by Kathleen Dully, ECF No. 85 (Sep. 12, 2025) ("Dully S.J. Mot.").

[2] Resp. to Lawshe Mot. for Partial Summ. J. by Kathleen Dully, ECF No. 75 (Sep. 9, 2025) ("Dully Resp."); Resp. to Lawshe Mot. for Partial Summ. J. by Mikayla Preston, ECF No. 78 (Sep. 9, 2025) ("Preston Resp."); Reply as to Preston by William Lee Lawshe, ECF No. 90 (Sep. 16, 2025) ("Lawshe Reply to Preston"); Reply as to Dully by William Lee Lawshe, ECF No. 91 (Sep. 16, 2025) ("Lawshe Reply to Dully"); Resp. to Dully Mot. for Summ. J. by William Lee Lawshe, ECF No. 95 (Oct. 3, 2025) ("Lawshe Resp. as to Dully"); Resp. to Preston Mot. for Summ. J. by William Lee Lawshe, ECF No. 96 (Oct. 3, 2025) ("Lawshe Resp. as to Preston"); Reply to Lawshe Resp.

Case No. 3:24-cv-00044-JAR-MCR

on his 42 U.S.C. § 1983 claims against Defendant Dr. Kathleen Dully ("Dully") under the Due Process Clause of the Fourteenth Amendment and against Defendant Detective Mikayla Preston ("Preston") under the First and Fourth Amendments. See Mot. for Partial Summ. J. Against Def. Dully by William Lee Lawshe, ECF No. 66 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Dully"); Mot. for Partial Summ. J. Against Def. Preston by William Lee Lawshe, ECF No. 67 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Preston"). Dully and Preston oppose Lawshe's respective motions and individually move for final summary judgment. See Resp. to Lawshe Mot. for Partial Summ. J. by Kathleen Dully, ECF No. 75 (Sep. 9, 2025) ("Dully Resp."); Resp. to Lawshe Mot. for Partial Summ. J. by Mikayla Preston, ECF No. 78 (Sep. 9, 2025) ("Preston Resp."); Mot. for Summ. J. by Kathleen Dully, ECF No. 85 (Sep. 12, 2025) ("Dully S.J. Mot."); Mot. for Summ. J. by Mikayla Preston, ECF No. 83 (Sep. 12, 2025) ("Preston S.J. Mot.").

The court denies Lawshe's respective motions for partial summary judgment as to Defendants Dully and Preston and grants Defendant Dully's and Defendant Preston's respective motions for summary judgment.[3]

## BACKGROUND

The court takes the following facts as undisputed from the parties' various motions. On February 20, 2023, the St. Johns County Sherriff's Office ("SJSO") received a CyberTip from the National Center for Missing and Exploited Children ("NCMEC"). See CyberTipline Report, ECF No. 67-2 (Aug. 12, 2025) (the "CyberTip"); February 28, 2023 Search Warrant at 2, ECF 67-1 (Aug. 12, 2025) ("Feb. Search Warrant"). This CyberTip stated that Lawshe was in possession of

---

by Kathleen Dully, ECF No. 100 (Oct. 17, 2025) ("Dully Reply"); Reply to Lawshe Resp. by Mikayla Preston, ECF No. 101 (Oct. 17, 2025) ("Preston Reply").

[3] Because the court grants Defendant Dully's Motion for Summary Judgment, the court denies as moot Dully's Motion to Exclude the Expert Testimony of Patrick J. Siewert, ECF No. 71 (Sep. 5, 2025).

OPINION AND ORDER - 2

Case No. 3:24-cv-00044-JAR-MCR

a single image, "f6a487" (the "Cyber Tip Image"), which it described as the "lascivious exhibition" of a "prepubescent minor," but otherwise characterized as "CP-unconfirmed."[4]  See CyberTip. This image included a watermark for "met-art.com."[5]  See Feb. Search Warrant at 3.  Detective Tolbert, the supervisor of SJSO's Internet Crimes Against Children ("ICAC") division, reviewed the CyberTip before assigning the investigation to Defendant Detective Preston.  See Dep. of Eugene Tolbert at 7:1–15, ECF No. 67-3 (Aug. 12, 2025) ("Tolbert Dep.").  There was not a consensus at the Sherriff's Office as to whether the CyberTip Image depicted a minor or an adult. See, e.g., Mar. Dep. of Mikayla Preston at 96:12–19, 101:5–16, 169:2–17, ECF No. 67-6 (Aug. 12, 2025) ("Preston Dep.").

As customary in the SJSO when faced with a lack of consensus as to the age of an individual in a suspect image, Preston sought the opinion of Defendant Dully.  See Tolbert Dep. at 57:8–19; Dep. of Kevin Greene at 43:2–25, ECF No. 67-4 (Aug. 12, 2025) ("Greene Dep."). Dully is the medical director of the Child Protection Team for the University of Florida ("CPT"), Apr. Dep. of Kathleen Dully at 6:9–7:5, ECF No. 66-1 (Aug. 12, 2025) ("Apr. Dully Dep."), an organization authorized and established pursuant to Fla. Stat. § 39.303 to aid state investigations into allegations of child abuse.  Second Am. Compl. ¶ 207, ECF No. 40 (May 20, 2024).  Dully employs the sexual maturity rating ("SMR") scale[6] to review pornographic images to estimate the sexual maturity of the appearance of the individuals who are in them.  Apr. Dully Dep. at 18:7–

---

[4] "CP-Unconfirmed" means that an image "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted."  Dep. of Fallon McNulty at 22:18–24, ECF No. 67-5 (Aug. 12, 2025).

[5] Met-art.com is a publicly accessible website that published various images relevant to this case. See Second Am. Compl. at ¶¶ 51–52, 122, ECF No. 40 (May 20, 2024).

[6] The sexual maturity rating scale is "a way of stating how close to puberty or in the middle of puberty or completed puberty [an individual] may be progressing."  Apr. Dully Dep. at 18:7–13.

OPINION AND ORDER - 3

Case No. 3:24-cv-00044-JAR-MCR

24, 21:5–10, 23:15–21.  Dully offered her medical opinion that the CyberTip Image "depict[ed] what appears to be a naked pubertal female child . . . younger than 18 years of age."  Assorted Letters from Kathleen Dully at 1, ECF No. 67-9 (Aug. 12, 2025) ("Dully Rpts.").  Dully also told Detective Preston that she could not offer reliable information as to the actual age of the individual depicted in the image.  See Apr. Dully Dep. at 47:12–17; June Dep. of Kathleen Dully at 12:18–13:1, ECF No. 66-6 (Aug. 12, 2025) ("June Dully Dep.").

On February 28, 2023, Preston submitted an affidavit for a search warrant for Lawshe's cell phone records, which Preston's superior, Sgt. Eugene Tolbert ("Tolbert"), as well as then-assistant state attorney, Kaitlyn M. Payne ("Payne"), both reviewed before submission.  See Feb. Search Warrant; see also Tolbert Dep. at 28:9–22; Aff. of Kaitlyn M. Payne ¶ 5, ECF No. 82-8 (Sep. 12, 2025) ("Payne Aff.").  On the search warrant affidavit, Preston listed information from the CyberTip and from Dully's opinion.  Feb. Search Warrant at 2–3.  Preston further noted that the CyberTip Image included a watermark of "met-art.com" and stated that "[t]his site has a known history of displaying CSAM [Child Sexual Abuse Material] images of teenage girls" which had "been encountered by other ICAC investigators in past investigations."  Id. at 3.  A state circuit court judge signed the warrant on February 28, 2023.  See id. at 8.

On April 4, 2023, Lawshe's cell provider complied with the search warrant.  See Apr. 12, 2023 Search Warrant at 4, ECF No. 67-13 (Aug. 12, 2025) ("Apr. Search Warrant").  Lawshe's phone records uncovered three[7] additional images that Preston thought were CSAM, and for which Lawshe was later criminally charged: (1) the "0065(1)" image; (2) the "0059" image; and (3) the "DuckDuckGo" image (collectively, the "Images").  See Preston Dep. at 136:13–17; May 5, 2023

---

[7] Preston reviewed additional images for which she requested Dully's opinion.  See Dully Rpts. at 2–3.  No charges were brought in connection with these images.  See May 5, 2023 Information, ECF No. 67-15 (Aug. 12, 2025).

OPINION AND ORDER - 4

Case No. 3:24-cv-00044-JAR-MCR

Information at 1, ECF No. 67-15 (Aug. 12, 2025) ("Information").  Both the 0065(1) and 0059 images included a met-art.com watermark and appeared to depict the same individual as the CyberTip Image.  See Redacted Images, ECF Nos. 72-2, 72-3 (Sep. 8, 2025); Apr. Search Warrant at 3–4.  The DuckDuckGo image contained a QR code and depicted a different individual.[8]  See Redacted Image, ECF No. 72-4 (Sep. 8, 2025).

On April 5, 2023, Preston sought Dully's opinion as to the age of the individuals in the three Images.  Dully Rpts. at 2–3.  Dully opined that the 0059 and 0065(1) images depicted "the same female child" as the CyberTip Image, and that the DuckDuckGo image "show[ed] a female child" whose "developmental appearance" was under the age of 18.  Id.  Preston subsequently sought a search warrant for Mr. Lawshe's home.  See Apr. Search Warrant.  Payne confirmed to Preston that Payne would prosecute Lawshe for possession of these image.  Payne Aff. ¶ 11.  Following confirmation from SJSO command staff, Preston arrested Lawshe on April 12, 2023.  Preston Dep. at 192:2–5; Tolbert Dep. at 33:20–34:5.

On May 5, 2023, Payne filed an Information charging Lawshe with possession of the Images.  See Information.  After Lawshe was charged, his defense counsel contacted the records custodian for met-art.com, Jeffrey Douglas ("Douglas").  See Aff. of Jeffrey Douglas at 16–17, ECF No. 67-8 (Aug. 12, 2025) ("Douglas Aff.").  Douglas provided an affidavit stating that the two individuals in the images were adults at the time the photographs were taken.  See id. at 2, ¶ 9.  He also provided images of two individuals, purportedly those photographed, holding redacted copies of their passports.  Id. at 9–10.  After Lawshe's criminal defense counsel presented these

---

[8] The record is not clear as to where the DuckDuckGo image was published.  See Preston S.J. Mot. at 9 n.4.  While the image contains a QR code, it is not established to what website that code links.  See Redacted Image, ECF No. 72-4 (Sep. 8, 2025).  That said, met-art.com's custodian of records provided documents regarding the individual in the DuckDuckGo Image.  See Aff. of Jeffrey Douglas at 13, ECF No. 67-8 (Aug. 12, 2025) ("Douglas Aff.").

OPINION AND ORDER - 5

Case No. 3:24-cv-00044-JAR-MCR

documents to Payne, the State Attorney's Office dropped the charges. See Emails from Kaitlyn Payne at 1, ECF No. 67-16 (Aug. 12, 2025).

## LEGAL STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." Kerr v. McDonald's Corp., 427 F.3d 947, 951 (11th Cir. 2005) (per curiam) (citation modified) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of fact is genuine if the record taken as a whole could lead a reasonable juror to find for the nonmoving party. Anderson, 477 U.S. at 248.

On summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving party]." Scott v. Harris, 550 U.S. 372, 378 (2007) (citation modified) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Saucier v. Katz, 533 U.S. 194, 201 (2001)). When parties jointly move for summary judgment, the court has three options: grant summary judgment for the plaintiff under the defendant's best case, grant summary judgment for the defendant under the plaintiff's best case, or deny both motions for summary judgment and proceed to trial.[9] FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F.4th 939, 959 (11th Cir. 2023), cert. denied, 144 S. Ct. 103 (2023).

---

[9] The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. The court views the facts "in the light most favorable to the non-moving party on each motion." Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

OPINION AND ORDER - 6

Case No. 3:24-cv-00044-JAR-MCR

**DISCUSSION**

Lawshe asserts one claim against Defendant Dully and three claims against Defendant Preston pursuant to 42 U.S.C § 1983.  Specifically, Lawshe avers that Dully fabricated evidence in contravention of his Fourteenth Amendment due process rights, and that Preston committed an unreasonable search and an unreasonable arrest in contravention of his First and Fourth Amendment rights.  See Second Am. Compl. ¶¶ 132–44, 154–66, 183–92, 206–18.  He moves for partial summary judgment on the issue of liability for his Fourth and Fourteenth Amendment claims.  See Lawshe S.J. Mot. as to Dully; Lawshe S.J. Mot. as to Preston.  In turn, Dully and Preston move individually for summary judgment, arguing that they committed no constitutional violations and that they enjoy qualified immunity from Lawshe's claims.  See Dully S.J. Mot. at 17–25; Preston S.J. Mot. at 15–21, 23–25.

Qualified immunity protects public officers "from undue interference with their duties and from potentially disabling threats of liability."  Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982).  To establish qualified immunity, a defendant "first must show that she was acting within the scope of her discretionary authority at the time of the alleged misconduct."  Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019).  Once a defendant has established that she was acting within her discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Id. (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).  The plaintiff must establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  Aguirre v. Seminole Cnty., 158 F.4th 1276, 1296 (11th Cir. 2025) (citation modified) (citing Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).  To be clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent" such that "every reasonable official would interpret it to

OPINION AND ORDER - 7

Case No. 3:24-cv-00044-JAR-MCR

establish the particular rule the plaintiff seeks to apply." D.C. v. Wesby, 583 U.S. 48, 63 (2018) (citing Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam)). The court may decide which of the two prongs of this analysis to address first in the light of the circumstances in the case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first considers whether to grant Dully's and Preston's motions for summary judgment under Lawshe's "best case," considering the evidence "in the light most favorable" to him and "draw[ing] all inferences in [his] favor. FCOA LLC, 57 F.4th at 959 (citing Nunez v. Superior Oil Co., 572 F.2d 1119, 1123–24 (5th Cir. 1978)). Here, the parties agree that Dully and Preston were acting within the scope of their discretionary authority at the time of the alleged misconduct.[10] See Second Am. Compl. ¶¶ 134, 156, 185, 209–10; Preston's Ans. to Pl.'s Am. Compl. ¶¶ 134, 156, 185, ECF No. 43 (June 3, 2024); Dully's Ans. to Pl.'s Am. Compl. ¶¶ 209–10, ECF No. 54 (Nov. 13, 2024). The court thus considers whether Lawshe has established that either Dully or Preston violated a clearly established constitutional right. The court addresses each count in turn.

## A. Lawshe's Fourteenth Amendment claim against Dully fails

Lawshe asserts that Dully fabricated inculpatory evidence used to incriminate him in violation of the Due Process Clause of the Fourteenth Amendment. Lawshe S.J. Mot. as to Dully at 16–20. He argues that "fabricating evidence used to deprive the rights of individuals violates due process" and that "this has been clearly established for decades." Lawshe Resp. as to Dully at 17 (citing Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997)). Lawshe first asserts that Dully "clearly and unequivocally label[ed] the models as children" in her written

---

[10] Lawshe and Dully also agree that the University of Florida Child Protection Team, of which Dully was medical director, is an agency of the state of Florida. See Order at 19, ECF 53 (Oct. 29, 2024); Second Am. Compl. ¶ 208; Dully's Ans. to Pl.'s Am. Compl. ¶ 208, ECF No. 54 (Nov. 13, 2024).

OPINION AND ORDER - 8

Case No. 3:24-cv-00044-JAR-MCR

reports while acknowledging the risk that readers may have interpreted those reports as an opinion on biological age.[11]  Lawshe S.J. Mot. as to Dully at 19.  Second, he maintains that Dully's opinions as to the "appearance of age" are unreliable given that there is "no reliable scientific method to determine or estimate the chronological age of a model from a digital photograph."  Id. at 9; see also Lawshe Resp. as to Dully at 5–7.  In opposition to Lawshe's motion for partial summary judgment and in her cross-motion for summary judgment, Dully argues, in part, that she did not violate Lawshe's Fourteenth Amendment rights because she did not offer willfully or knowingly false information in her reports.  Dully S.J. Mot. at 11–12, 22–24; Dully Resp. at 9–15.

The Due Process Clause is "implicated when a state law enforcement officer offers false inculpatory evidence that the State uses to incriminate a suspect."  Aguirre, 158 F.4th at 1298 (citing Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977)).  Thus, "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the Due Process Clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."  Black v. Montgomery Cnty., 835 F.3d 358, 371 (3d Cir. 2016), as amended (Sep. 16, 2016) (citation modified).  The plaintiff must "draw a meaningful connection between her particular due process injury and the use of fabricated evidence against her."  Id. (citation modified).  It is "clearly established" in the Eleventh Circuit "that it is unlawful to knowingly incriminate a suspect by

---

[11] Lawshe also asserts that Dully offered a false opinion that the individuals "do not appear to be shaved."  See Lawshe Resp. to Dully at 9.  This argument is contradicted by the record.  See June Dully Dep. at 73:1–11 ("Q:  And yet you told Detective Preston that it did not appear that she had been shaved, right?  A:  It does not appear that she was shaved.  It does not appear, no.  Q:  But now your testimony is that it does appear that she may be shaved.  A:  No . . . . she does not appear to be shaved in this image.").

OPINION AND ORDER - 9

Case No. 3:24-cv-00044-JAR-MCR

falsely creating or falsely attesting to the existence of inculpatory evidence." Aguirre, 158 F.4th at 1298.

Dully authored three reports during Preston's investigation. In her first report, dated February 22, 2023, Dully opined that the CyberTip Image "depicts what appears to be a naked pubertal female child . . . [who] appears younger than 18 years of age. She would have achieved this developmental genital appearance of SMR IV at 12-15 years of age." Dully Rpts. at 1. On April 5, 2023, she authored two subsequent reports. In the first of these, Dully opined that the 0059 and 0065(1) images were also "of the same female child" and that these two images "confirm my previous determination that she is depicted to be . . . ≤12-15 years of age." Id. at 2. In the second of these, Dully opined that the DuckDuckGo image "shows a female child" with a "developmental appearance [of] ≤9-13.5 years of age." Id. at 3. Alongside these reports, Dully told Preston that her opinions did not constitute "reliable information about the actual age" of the individuals depicted. See Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1.

While it is clearly established that officers may not "knowingly incriminate a suspect by falsely creating or falsely attesting to the existence of inculpatory evidence," Aguirre, 158 F.4th at 1299, no reasonable juror could conclude that Dully offered false inculpatory evidence. The record is clear that she offered her opinion as to the apparent age of the individuals in the Images and told Preston that her reports did not constitute reliable information as to their biological ages. See Dully Rpts.; Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1. Lawshe has pointed to no evidence to substantiate that Dully fabricated her opinion as to the apparent age of the individuals in the Images.[12]

_____

[12] Lawshe's expert, Dr. Krugman, offers testimony that the SMR scale may not reliably be used to estimate chronological age based on digital images. See Expert Report of Dr. Scott Krugman at 2, ECF No. 66-5 (Aug. 12, 2025). He also testifies that it is within the standard of care when

OPINION AND ORDER - 10

Case No. 3:24-cv-00044-JAR-MCR

Lawshe's arguments to the contrary are belied by the record or otherwise not supported by law. While Lawshe zeroes in on the phrase "female child" in Dully's reports, he plucks this phrase from its context. Lawshe S.J. Mot. as to Dully at 12, 19; Lawshe Resp. as to Dully at 3–4, 10. In the February 22, 2023, report, Dully clearly states that the CybertTip image <u>depicts what appears to be</u> a . . . female child." Dully Rpts. at 1 (emphasis added). Dully then goes on to use the subjunctive mood—the "female child" "<u>would have</u> achieved this [] appearance"—to underscore that this is an opinion as to her appearance, not her actual age. Id. (emphasis added). The first April 5, 2023, report incorporates the February 22 report and again confirms that the individual is "<u>depicted</u> to be" underage. Id. at 2 (emphasis added). Likewise, the second April 5, 2023, report states that the image "<u>shows</u>" an underage individual with an underage "developmental <u>appearance</u>." Id. at 3 (emphasis added). While the court must take all inferences in Lawshe's favor, it is not beholden to an interpretation of the facts that is "blatantly contradicted by the record, so that no reasonable jury could believe it." See Harris, 550 U.S. at 378. Given these modifiers,[13] no reasonable juror could conclude that Dully was opining as to the actual age of those depicted.[14]

---

evaluating the age of any patient in any context to "go through" the SMR criteria and that it may be a "helpful piece of information" even if not conclusive. See Dep. of Dr. Scott Krugman at 27:12–28:6, ECF No. 76-7 (Sep. 9, 2025). As Dr. Krugman himself acknowledges, this testimony does not establish that Dully fabricated her opinion as to the apparent age of the individuals in the Images. See id. at 30:2–5 ("Q: [A]re you able to testify based on your review of the material that Dully provided deliberately false information? A: No.").

[13] See depict, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/depict (to represent by or as if by a picture); appear, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/appear (to have an outward aspect); appearance, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/appearance (outward aspect); show, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/show (to give indication or record of).

[14] Lawshe also places much emphasis on Dully's answer during her June 18, 2025, deposition that she would "hope so" when asked whether she could "see . . . how a person might interpret [the phrase "this image shows a female child"] as you saying that this person is a child, an actual child." See Lawshe S.J. Mot. as to Dully at 12–13. While this answer may be probative of negligence, it does not establish that Dully fabricated evidence. Irrespective, the record is undisputed that Dully

OPINION AND ORDER - 11

Case No. 3:24-cv-00044-JAR-MCR

And though Lawshe finds Dully's methodology unreliable, see Lawshe S.J. Mot. as to Dully at 9, unreliability is not equivalent to falsity. Further, the record does not support a conclusion that her statements were "willfully misleading." See id. To the contrary, it is undisputed that Dully explicitly told Preston that her opinions were not reliable information as to biological age. See Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1. In any event, Lawshe has not shown that the clearly established principle against creating or attesting to false evidence extends to negligently misleading statements.[15] Cf. Ross v. James, 861 F. App'x 770, 780 (11th Cir. 2021) (per curiam) ("[E]ven if we agreed with [plaintiff] that the inclusion of this information was 'misleading,' he cites no authority in support of his argument that accurate, yet arguably potentially misleading, information must be stricken from a . . . search warrant affidavit."). Dully accordingly is entitled to summary judgment on Lawshe's Fourteenth Amendment claim.[16]

_____

gave a warning to Preston that her opinions were not a substitute for determining the actual age of the individuals depicted. See Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1.

[15] Lawshe draws a parallel between this case and Aguirre-Jarquin v. Hemmert, 2023 WL 2558479 (M.D. Fla. Feb. 22, 2023), aff'd in part, rev'd in part, dismissed in part sub nom., Aguirre, 158 F.4th 1276, in which the Middle District of Florida denied summary judgment on qualified immunity for a fabrication-of-evidence claim. There, a forensic print examiner sent finger-print matches for verification to an older analyst with medical issues whom she "considered incompetent" and evidence suggested she did so to receive an unquestioned verification. Id. at *7. The court finds this parallel unconvincing. The Eleventh Circuit recently clarified that "[t]he purposeful failure to properly verify the results of a positive comparison" constituted "the absence of a step required to report incriminating forensic evidence" and thus was a "fabrication of a forensic result." Aguirre, 158 F.4th at 1299 (emphasis added). Aguirre's logic does not extend to Dully's conduct. Even construed in Lawshe's favor, the record does not show that Dully deviated from a required process in authoring her reports.

[16] Dully also asserts that she is entitled to federal immunity under 34 U.S.C. § 20342 and asks the court to award costs and reasonable attorney's fees pursuant to subsection 20342(3). See Dully S.J. Mot. at 17. Lawshe opposes the request, maintaining that Dully waived any defense under Section 20342 by failing to raise it as an affirmative defense. Lawshe Resp. to Dully at 11–12. 34 U.S.C. § 20342 provides immunity to certain persons who either report or who assist in the reporting of suspected child abuse or neglect. The court may award costs and reasonable attorney's fees where a defendant prevails in a federal civil action brought against them for their provision of

OPINION AND ORDER - 12

Case No. 3:24-cv-00044-JAR-MCR

### B. Lawshe's unreasonable search claim against Preston fails

Lawshe asserts that Preston violated his Fourth Amendment right to be free from an unreasonable search and seizure by making materially false statements and omissions on the search warrant affidavit.[17]  Second Am. Compl. ¶¶ 132–44; Lawshe S.J. Mot. as to Preston at 20–24. Specifically, he contends that Preston intentionally or recklessly (1) included Dully's opinion "as though [it] contained reliable opinions"; (2) stated that met-art.com had a known history of illegal content and that past investigators had encountered the website in question while lacking personal knowledge thereof; (3) omitted the CyberTip Image; (4) omitted that the NCMEC CyberTip had categorized the image as "unconfirmed" child pornography; (5) omitted that there was a disagreement among detectives about whether the image depicted an adult; and (6) omitted that the image was published on a publicly available website that claimed compliance with federal age verification laws.  Lawshe S.J. Mot. as to Preston at 12–13; see also Second Am. Compl. ¶ 111.

Lawshe contends that Preston is not protected by qualified immunity for these omissions and misstatements because it is "clearly established" that intentionally or recklessly omitting material information from a warrant affidavit violates the Fourth Amendment.  Lawshe S.J. Mot. as to Preston at 18.  In opposition to Lawshe's motion for partial summary judgment and in her cross-motion for summary judgment, Preston argues that she is immune from an unreasonable

---

"information or assistance" with respect to a "good faith report . . . of a suspected or known instance of child abuse."  34 U.S.C. § 20342(3).  It is not necessary to reach these issues in order to resolve the substance of this matter in Dully's favor.  Because the court would in its discretion deny attorney's fees in these circumstances, if the statute were to apply, it will not address these issues further.

[17] While Preston sought two search warrants, one in February for Lawshe's cell phone records and the other in April for Lawshe's residence, Lawshe focuses his claims on the February search warrant.  See Lawshe S.J. Mot. as to Preston at 1, 12–13.  To the extent he also asserts an unreasonable search claim in connection with the April affidavit, the evidence offered in support of the two warrants is materially similar.  Compare, Feb. Search Warrant, with Apr. Search Warrant.  See also Lawshe S.J. Mot. as to Preston at 15; Lawshe Resp. as to Preston at 21. Accordingly, the court's reasoning extends to any argument regarding the April search warrant.

OPINION AND ORDER - 13

Case No. 3:24-cv-00044-JAR-MCR

search claim because Lawshe has failed to assert a clearly established constitutional right which she has violated. Preston S.J. Mot. at 16–21; Preston Resp. at 13–16. She further denies making any materially false statement or omission and argues that, even absent these offending statements, the warrant would still be valid. Preston Resp. at 9–13.

The Fourth Amendment prohibits officers from making statements or omissions in a warrant application that are (1) material and (2) deliberate or made with reckless disregard for the truth. See Franks v. Delaware, 438 U.S. 154, 171 (1978); Ross, 861 F. App'x at 778 (citation omitted). A reckless disregard for the truth may be inferred where the affiant "should have recognized the error, or at least harbored serious doubts" about her representations. United States v. Kirk, 781 F.2d 1498, 1502–03 (11th Cir. 1986). To determine whether a misstatement or omission in a search warrant affidavit amounts to a Fourth Amendment violation, the court conducts a two-part test. First, "we ask whether there was an intentional or reckless misstatement or omission. Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." Paez, 915 F.3d at 1287. Allegations of deliberate falsehood or of reckless disregard for the truth must be accompanied by an offer of proof; allegations of negligence or innocent mistake are insufficient. Franks, 438 U.S. at 171.

Where qualified immunity is asserted as a defense, the court reviews for "arguable" probable cause, which asks whether a reasonable officer in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed.[18] Hooks v.

---

[18] The parties argue at length as to whether there was a clearly established right at play. Lawshe maintains that reckless or intentional misstatements or omissions of material information on a warrant affidavit are violations of clearly established constitutional rights. Lawshe S.J. Mot. as to Preston at 18. Preston counters that Lawshe has failed to identify precedent showing that Lawshe enjoyed a clearly established right here. Preston S.J. Mot. at 17. Preston maintains that there is

OPINION AND ORDER - 14

Case No. 3:24-cv-00044-JAR-MCR

Brewer, 818 F. App'x 923, 929–30 (11th Cir. 2020) (citing Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004); Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010)). Misstatements and omissions in affidavits are not entitled to qualified immunity only when the affidavit, as considered without the offending statements, lacks even arguable probable cause. Id. at 929 (citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997)).

Preston cited the following evidence in her warrant affidavit as establishing probable cause: (1) the CyberTip which advised that Lawshe "uploaded one (1) image of possible CSAM"; (2) an excerpt of the February 22, 2023 report of Dully, which included a description of the CyberTip image; (3) the "met-art.com" watermark, given that met-art.com "has a known history of displaying CSAM images of teenage girls and CSAM content from this site has been encountered by other ICAC investigators in past investigations."[19]  Feb. Search Warrant at 2–3.

_____

no instructive precedent on point, and cites to United States v. Gatherum, 338 F. App'x 271 (4th Cir. 2009), a Fourth Circuit case, to underscore that no clearly established right exists in the Eleventh Circuit. Id. at 17–20.  Lawshe paints with too broad a brush and Preston too narrow.  In the Eleventh Circuit, it is clearly established that constitutional rights are implicated where a warrant affidavit, devoid of intentional or reckless misstatements and omissions, lacks even arguable probable cause.  See Paez, 915 F.3d at 1288; Hooks v. Brewer, 818 F. App'x 923, 929 (11th Cir. 2020) (citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997)).  Accordingly, the court frames its analysis as whether the search warrant, absent intentional or reckless misstatements and omissions, lacked arguable probable cause.

[19] A potential issue of fact exists as to Preston's knowledge of met-art.com's alleged prior history of publishing CSAM.  Lawshe asserts that Preston had no personal knowledge of whether met-art.com had a history of publishing CSAM and that she did not know any investigators who had encountered the website during previous investigations.  See Lawshe S.J. Mot. as to Preston at 13. Lawshe supports these assertions with deposition testimony from Preston that she obtained knowledge of met-art.com's alleged history from a Google search, the contents of which she cannot recall.  Id. at 13, 23–24.  Further, Lawshe cites the deposition testimony of Detective Kevin Greene ("Greene"), who does not recall telling Preston about his past investigation.  Id. at 13; Lawshe Resp. as to Preston at 10–11.  Preston responds that Detective Greene did in fact encounter met-art.com during a previous investigation and that both she and Sgt. Tolbert recalled Greene recounting this previous investigation.  See Preston S.J. Mot. at 4.

OPINION AND ORDER - 15

Case No. 3:24-cv-00044-JAR-MCR

The court first considers whether Preston's affidavit contained intentional or reckless misstatements or omissions. Paez, 915 F.3d at 1287. Starting with the alleged misstatements, as already discussed, no reasonable juror could conclude that Dully's report offered false inculpatory evidence. Accordingly, the court rejects Lawshe's argument that Preston falsely or recklessly included Dr. Dully's opinion. The court, however, concludes that Preston's statement that met-art.com had a known history of illegal content encountered by other ICAC investigations is a potentially reckless misstatement. Construing facts in Lawshe's favor, Preston's knowledge was premised upon a Google search, the specifics of which she does not recall and the veracity of which she disclaims. See Lawshe S.J. Mot. as to Preston at 23–24. Asserting the contents of a cursory Google search as a "known" fact on a search warrant affidavit without investigative corroboration would likely constitute a reckless disregard for the truth. Whether corroboration existed is unclear because whether Detective Greene actually told Preston of his encounter with that website is disputed. See id. at 13; Preston S.J. Mot. at 4. Accordingly, this statement will not be considered as supporting probable cause.

The court now considers the remaining asserted defects, namely (1) the exclusion of the CyberTip Image itself; (2) the failure to state that the image was categorized as CP-unconfirmed; (3) the failure to mention the lack of consensus among investigators as to the age of the individual depicted; and (4) the failure to state that met-art.com was a public website that claimed compliance with federal law. In so doing, the court examines the information that undisputedly was included on the search warrant affidavit. See Feb. Search Warrant at 2–3. First, the omission of the CyberTip image was not intentional or reckless because Preston provided a description of the image. See Feb. Search Warrant at 2–3; United States v. Sparks, 806 F.3d 1323, 1337–38 (11th Cir. 2015) ("An issuing judge need not personally view photographs or images which are alleged

OPINION AND ORDER - 16

Case No. 3:24-cv-00044-JAR-MCR

to be contraband if a reasonably specific affidavit describing the contents can provide an adequate basis to establish probable cause."), overruled on other grounds by, United States v. Ross, 963 F.3d 1056 (11th Cir. 2020) (en banc).  Second, the omission of CP-unconfirmed was not an intentional or reckless omission because the search warrant affidavit clearly states that the image at issue constituted possible CSAM.[20]  Feb. Search Warrant at 2.  In any event, this court has previously held that a misrepresentation that "NCMEC classified [] files as child pornography when NCMEC actually designated those images as 'CP (unconfirmed)' . . . do[es] not undermine the validity of" an otherwise valid warrant.  See United States v. Williamson, 2023 WL 4056324, at *17 (M.D. Fla. Feb. 10, 2023).  Third, the omission of the lack of consensus was not intentional nor reckless.  The court struggles to see how failure to report a disagreement between officers could be an intentional or reckless omission where probable cause requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act."  Florida v. Harris, 568 U.S. 237, 244 (2013) (citation modified) (citation omitted).  And fourth, the omission that met-art.com was a public website that claimed compliance with federal age verification laws was not intentional or reckless.  Preston included the fact that the image was watermarked with "met-art.com" which establishes that it was published on that site.  See Feb. Search Warrant at 3.  Moreover, the fact that a site claims compliance with federal laws does not remove probable cause.  See Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (officers are "not required to

---

[20] Compare, Dep. of Fallon McNulty at 22:18–24, ECF No. 67-5 (Aug. 12, 2025) ("CP-Unconfirmed" means that an image "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/ or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted."), with possible, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/possible (being something that may or may not be true or actual).

OPINION AND ORDER - 17

Case No. 3:24-cv-00044-JAR-MCR

believe" a statement that, "if true," would be exculpatory nor "to weigh the evidence in such a way as to conclude that probable cause d[oes] not exist").

Second, the court determines whether the affidavit, excised of misstatements and omissions, lacks probable cause.  Paez, 915 F.3d at 1287.  Even omitting statements regarding met-art.com's prior CSAM investigations, there is clearly arguable probable cause to authorize a search warrant.  Preston sought the warrant in investigating whether Lawshe violated Fla. Stat. § 827.071(5).[21]  Feb. Search Warrant at 1.  Construed without the statements regarding met-art.com's prior CSAM investigation, the affidavit includes (1) a description of the CyberTip from NCMEC; (2) a description of the CyberTip Image, including the met-art.com watermark; and (3) an opinion from a statutorily authorized medical professional that the individual depicted in the image appeared younger than 18.  A reasonable officer could have believed that probable cause existed on this record given the CyberTip itself, which characterizes the image as "possible" child pornography, the detailed description of the CyberTip Image as depicting a nude individual who appears underage, and the opinion from a statutorily authorized medical professional that the individual in the Image appeared younger than eighteen.[22]  See Brewer, 818 F. App'x at 929.  It is likely that there was no constitutional violation at all.  But there was clearly qualified immunity because there was at least arguable probable cause to seek a search warrant on these facts.  Accordingly, the court grants Detective Preston summary judgment on Lawshe's unreasonable search claim.

---

[21] Fla. Stat. § 827.071(5) makes it unlawful for "any person to knowingly solicit, possess, control, or intentionally view a photograph, motion picture, exhibition, show, representation, image, data, computer depiction, or other presentation which, in whole or in part, he or she knows to include child pornography."

[22] The question of what amounts to probable cause is purely a question of law.  United States v. Allison, 953 F.2d 1346, 1350 (11th Cir. 1992).

OPINION AND ORDER - 18

Case No. 3:24-cv-00044-JAR-MCR

### C. Lawshe's unreasonable arrest claim against Preston fails

Lawshe next argues that Preston violated his Fourth Amendment rights by making an arrest without probable cause. Specifically, Lawshe contends that Preston "unreasonably disregard[ed] certain pieces of evidence by choosing to ignore" readily available exculpatory information and thus lacked probable cause. Lawshe S.J. Mot. as to Preston 20–22. Lawshe maintains that Preston does not enjoy qualified immunity from suit because Preston did not act with "arguable probable cause" in making the arrest. Id. at 22; Resp. to Preston Mot. for Summ. J. at 25–26, ECF No. 96 (Oct. 3, 2025) ("Lawshe Resp. as to Preston"). He argues that it is clearly established in the Eleventh Circuit that an officer may not "ignore" readily available information "in the face of obviously ambiguous facts." See Lawshe S.J. Mot. as to Preston at 19, 22–24 (citing Rankin v. Evans, 133 F.3d 1425 (11th Cir. 1998), Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989), and Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004)).[23] In opposition to Lawshe's motion and in her cross-motion for summary judgment, Preston argues that she is immune from an unreasonable arrest claim because she acted with arguable probable cause. Preston S.J. Mot. at 23–24; Preston Resp. at 19–20.

An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause to make the arrest. Garcia v. Casey, 75 F.4th 1176, 1186 (11th Cir. 2023) (citing Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)). Probable cause is established where facts, "derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Id. (citing Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)).

---

[23] Lawshe also relies on Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988), see Lawshe S.J. Mot. as to Preston at 22, but that is a Fourth Circuit decision, and "only decisions of the United States Supreme Court, this Court, or the highest court in a state can clearly establish the law." Crocker v. Beatty, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation modified) (citation omitted).

OPINION AND ORDER - 19

Case No. 3:24-cv-00044-JAR-MCR

To "evaluate whether an officer had probable cause to seize a suspect," the court must "ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." Washington, 25 F.4th at 902 (citation modified) (citing Wesby, 583 U.S. at 61).

Where an officer asserts the defense of qualified immunity for a false arrest claim, she "need not have actual probable cause, but only 'arguable' probable cause." Garcia, 75 F.4th at 1186 (11th Cir. 2023) (citation modified) (citing Brown, 608 F.3d at 734). An officer has arguable probable cause if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests here." Id. (citation modified) (citing Wesby, 583 U.S. at 68). An officer may lack probable cause because (1) an existing precedent establishes there was no actual probable cause for an arrest on similar facts; (2) the text of an applicable statute precludes arrest under that statute; or (3) the officer may have been so lacking in evidence to support probable cause that the arrest was obviously unconstitutional. Id. at 1187.

Here, Lawshe was criminally charged for the Images provided by Lawshe's cell service provider in compliance with the search warrant. See Information. Other detectives in the SJSO thought the individuals in the Images were potentially adults, and the parties agree that reasonable people could have thought the individuals were adults. See, e.g., Preston Dep. at 96:17–19; 101:5–16, 169:1–13. Preston thought these Images constituted child pornography. Id. at 136:13–15. She sought Dully's opinion as to the apparent age of the individuals in the Images. Dully Rpts. at 2–3. Preston further met with assistant state attorney Payne who confirmed that she would prosecute Lawshe for these images. Payne Aff. at ¶ 11. The decision to arrest Lawshe passed through Preston's superiors as well. Preston Dep. at 192:2–5; Tolbert Dep. at 33:23–34:5. Preston did not, however, attempt to visit met-art.com. Preston Dep. at 55:3–14. After Lawshe was arrested, Detective Kevin Greene was able to locate the source of the Images in a short amount of time.

OPINION AND ORDER - 20

Case No. 3:24-cv-00044-JAR-MCR

Greene Dep. at 34:1–5.  Lawshe's team located the contact information of met-art.com's custodian of records, who provided a statement that the individuals in the Images were adults when the images were taken.  See Douglas Aff. at 1–3.

Preston enjoys qualified immunity from Lawshe's claim because Lawshe has pointed to no existing precedent finding that probable cause would be lacking in similar circumstances.  His reliance on Rankin, 133 F.3d 1425, Tillman, 886 F.2d 317, and Kingsland, 382 F.3d 1220 is misplaced.  See Lawshe S.J. Mot. as to Preston at 19, 22–24.  In Rankin, the court found that probable cause existed.  133 F.3d at 1443.  Relevant here, the court rejected plaintiffs' argument that the "information available to [the arresting officer] at the time of the arrest should have created doubts as to the existence of probable cause and should have prompted further investigation" because "the evidence on which [the arresting officer] based his decision to arrest [the plaintiff] was sufficient to create probable cause as a matter of law."  Id. at 1437.  Moreover,

> [n]either [Kingsland nor Tillman] clearly establishes that every failure by an officer to discover 'easily discoverable facts' violates the Fourth Amendment.  Rather, Kingsland makes clear that officers cannot 'conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts . . . . [nor] choose to ignore information that has been offered to him or her . . . . Tillman, too, makes clear that an officer cannot be willfully blind to known facts that are exculpatory and give rise to 'serious doubts.'

Washington v. Rivera, 939 F.3d 1239, 1248 (11th Cir. 2019) (citation modified).

These cases do not extend to Preston's conduct.  Even when the facts are construed in Lawshe's favor, no reasonable juror could conclude that Preston (1) harbored significant doubts about Lawshe's culpability; (2) refused to consider information offered to her; or (3) was willfully blind to known facts.[24]

---

[24] Construing facts in favor of Lawshe, Preston knew that met-art.com was a publicly available website and should have known that it purported to comply with federal age verification laws.  See Lawshe S.J. Mot. as to Preston at 20–21.  By itself, this is not enough to defeat probable cause.

OPINION AND ORDER - 21

Case No. 3:24-cv-00044-JAR-MCR

Moreover, considering the totality of the circumstances, Preston likely had probable cause to arrest Lawshe.[25]  While Preston did not attempt to contact met-art.com's custodian of records, Preston did take extra investigatory steps to confirm that the individuals in the Images were minors. She personally reviewed the Images,[26] received the opinion of a statutorily authorized medical professional as to the apparent age of the individuals involved in those Images, and received confirmation from her superiors as well as an assistant state attorney.  Cf. Poulakis v. Rogers, 341 F. App'x 523, 533 (11th Cir. 2009) ("[I]t is altogether consistent with a totality of the circumstances analysis to consider pre-arrest consultation and advice of a district attorney as being one circumstance contributing to the objective reasonableness of an officer's conduct.").  While Preston's investigation may not have been exemplary, a reasonable officer could have interpreted the law as permitting Lawshe's arrest on these facts.  Because no clearly established precedents prevented arrest in these circumstances, Preston enjoys qualified immunity from Lawshe's unreasonable arrest claim.  Preston is therefore entitled to summary judgment on this issue.

### D.  Preston enjoys qualified immunity from Lawshe's First Amendment claim

Finally, Preston moves for summary judgment on Lawshe's First Amendment claim.  She argues that Lawshe's First Amendment claim falls within his Fourth Amendment claims and that she enjoys qualified immunity as a result.  Preston S.J. Mot. at 24–25.  Lawshe raises a First Amendment count in his complaint, Second Am. Compl. ¶¶ 183–92, but does not move for

---

Officers making a probable cause determination are not required "to rule out a suspect's innocent explanation for suspicious facts."  Wesby, 583 U.S. at 61; Davis v. City of Apopka, 78 F.4th 1326, 1342 (11th Cir. 2023) ("[T]he Supreme Court and this Court have consistently held in decisions spanning more than thirty years that where the initial facts show probable cause, officers are not required to forego making an arrest because the suspect offers an innocent explanation for those facts.").

[25] Whether probable cause exists is a question of law.  See supra, note 22.

[26] To a non-expert the individuals depicted in the Images would appear childlike.  See Redacted Images, ECF Nos. 72-2–4 (Sep. 8, 2025).

OPINION AND ORDER - 22

Case No. 3:24-cv-00044-JAR-MCR

summary judgment on his First Amendment claim.  See Lawshe S.J. Mot. as to Preston; Preston Resp. at 1 n.1.  He does, however, devote a single, conclusory sentence in opposition to Preston's First Amendment argument, contending that "there was neither probable cause nor arguable probable cause" as to the First Amendment violation.  Lawshe Resp. as to Preston at 26.

"When an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest." Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018).  As the court has already discussed, Lawshe's Fourth Amendment claims fail.  The court's analysis on the Fourth Amendment claims accordingly extends to the First Amendment claim.  Preston is therefore entitled to summary judgment on Lawshe's First Amendment claims.

OPINION AND ORDER - 23

Case No. 3:24-cv-00044-JAR-MCR

## CONCLUSION

For the foregoing reasons, the court:

1.     **GRANTS** Defendant Dully's Motion for Summary judgment, ECF No. 85 (Sep. 12, 2025);

2.     **GRANTS** Defendant Preston's Motion for Summary Judgment, ECF No. 83 (Sep. 12, 2025);

3.     **DENIES** Plaintiff Lawshe's Motion for Partial Summary Judgment as to Defendant Dully, ECF No. 66 (Aug. 12, 2025);

4.     **DENIES** Plaintiff Lawshe's Motion for Partial Summary Judgment as to Defendant Preston, ECF No. 67 (Aug. 12, 2025); and

5.     **DENIES AS MOOT** Defendant Preston's Motion to Exclude the Expert Testimony of Patrick J. Siewert, ECF No. 71 (Sep. 5, 2025).

The **Clerk** shall enter judgment in favor of Defendants Preston and Dully and against Plaintiff Lawshe, terminate any pending motions, and close the case.

So **ORDERED** this 18th day of December, 2025.

/s/ Jane A. Restani
Jane A. Restani, Judge[*]

Dated: December 18, 2025
New York, New York

_____

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER - 24